UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ELYSE MCKENNA,

     Plaintiff,

v.

ROBERT F. RILEY, RILEY & HURLEY, P.C.,
and OLSMAN MACKENZIE PEACOCK, P.C.,

     Defendants.

Case No. 24-cv-12347

Hon. Brandy R. McMillion

Magistrate Judge Elizabeth A. Stafford

---

Kathleen Kalahar (P60301)
Goodman Kalahar
Attorneys for Plaintiff
1394 East Jefferson Avenue
Detroit, MI 48207
(313) 567-6165
(248) 310-0133 (mobile)
kkalahar@goodmankalahar.com

Randi McGinn
McGinn Montoya Love Curry &
Sievers PA,
201 Broadway Blvd SE
Albuquerque, NM 87102
randi@mcginnlaw.com

*Attorneys for Plaintiff*

KIENBAUM HARDY VIVIANO
 PELTON & FORREST, P.L.C.
Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com
*Attorneys for Defendants Robert F. Riley
and Riley & Hurley, P.C.*

DEBORAH GORDON LAW
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
*Attorneys for Defendant Olsman
MacKenzie Peacock, P.C.*

---

**Riley Defendants' Motion to Dismiss Under Rules 8, 10, 12(b)(6) and 12(f)**

Defendants Robert F. Riley and Riley & Hurley, P.C. move this Court under Rules 8, 10, 12(b)(6) and 12(f) to dismiss Plaintiff's Amended Complaint.

1.　　Plaintiff filed a 67-page, 325 paragraph Amended Complaint.

2.　　Plaintiff's excessively-detailed pleading does not set forth plausible claims for relief, and should be dismissed under Rule 12(b)(6).

3.　　That said, the Amended Complaint is not a notice pleading, but a piece of legal advocacy – including a four-page, unnumbered, narrative "introduction" – replete with argumentative subheadings that was not intended to be a short and plain statement of factual allegations and legal causes of actions.

4.　　The Amended Complaint violates the letter and spirit of Federal Rule of Civil Procedure 8, which requires that complaints consist of a "short and plain statement of [each] claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), that each allegation "be simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), and because its four-page introductory paragraph violates the rule that allegations be stated "in numbered paragraphs," Fed. R. Civ. P. 10(b).

5.　　The Riley Defendants therefore ask this Court to dismiss the Amended Complaint in full with prejudice under Rule 12(b)(6). And to the extent anything remains of the Amended Complaint, the Court should dismiss that remainder without prejudice and order Plaintiff to file a Second Amended Complaint that complies with Rules 8 and 10.

6.     On December 17, 2024, the Riley Defendants' counsel sought concurrence of Plaintiff's counsel in the relief sought here. Plaintiff's counsel responded stating that she did not concur, necessitating this motion.

KIENBAUM HARDY VIVIANO
 PELTON & FORREST, P.L.C.

By:  */s/Elizabeth Hardy*
       Elizabeth Hardy (P37426)
       Thomas Davis (P78626)
Attorneys for Defendants
Robert F. Riley and Riley & Hurley, P.C.
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

Dated: December 20, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ELYSE MCKENNA,

      Plaintiff,

v.

ROBERT F. RILEY, RILEY & HURLEY, P.C.,
and OLSMAN MACKENZIE PEACOCK, P.C.,

     Defendants.

Case No. 24-cv-12347

Hon. Brandy R. McMillion

Magistrate Judge Elizabeth A. Stafford

| | |
|---|---|
| Kathleen Kalahar (P60301)<br>Goodman Kalahar<br>Attorneys for Plaintiff<br>1394 East Jefferson Avenue<br>Detroit, MI 48207<br>(313) 567-6165<br>(248) 310-0133 (mobile)<br>kkalahar@goodmankalahar.com<br><br>Randi McGinn<br>McGinn Montoya Love Curry &<br>Sievers PA,<br>201 Broadway Blvd SE<br>Albuquerque, NM 87102<br>randi@mcginnlaw.com<br><br>*Attorneys for Plaintiff* | KIENBAUM HARDY VIVIANO<br> PELTON & FORREST, P.L.C.<br>Elizabeth Hardy (P37426)<br>Thomas J. Davis (P78626)<br>280 N. Old Woodward Ave., Suite 400<br>Birmingham, MI 48009<br>(248) 645-0000<br>ehardy@khvpf.com<br>tdavis@khvpf.com<br><br>*Attorneys for Defendants Robert F. Riley*<br>*and Riley & Hurley, P.C.*<br><br>DEBORAH GORDON LAW<br>Deborah L. Gordon (P27058)<br>Elizabeth Marzotto Taylor (P82061)<br>33 Bloomfield Hills Parkway, Suite 220<br>Bloomfield Hills, Michigan 48304<br>(248) 258-2500<br>dgordon@deborahgordonlaw.com<br>emarzottotaylor@deborahgordonlaw.com<br>*Attorneys for Defendant Olsman*<br>*MacKenzie Peacock, P.C.* |

**Riley Defendants' Brief in Support of Motion to Dismiss**
**Under Rules 8, 10, 12(b)(6) and 12(f)**

# Table of Contents

Table of Authorities ........................................................................ iii

Statement of Issues Presented ...................................................... vii

Controlling or Most Appropriate Authority.............................. ix

Introduction .....................................................................................1

Argument...........................................................................................2

I.   McKenna Fails to State Plausible Claims for Relief.......................2

    A.   McKenna's sexual harassment claims (Counts I, III, and
        VI) do not plausibly allege severe or pervasive
        "inherently sexual" conduct. ...............................................3

    B.   McKenna's Michigan statutory "stalking" claim (Count
        VII) improperly rests on alleged extraterritorial conduct
        and would fail to state a claim if the alleged conduct had
        occurred in Michigan.............................................................7

        1.   The statutes do not apply to extraterritorial conduct ................8

        2.   Even if the statutes had extraterritorial effect,
            McKenna does not state a claim. .................................9

    C.   McKenna does not state a valid claim for intentional
        infliction of emotional distress (Count VIII). ....................10

    D.   McKenna does not state an intrusion on seclusion claim
        (Count IX). ..........................................................................12

    E.   McKenna does not state a conspiracy claim (Count X)......................14

II.  McKenna's Amended Complaint Violates Rules 8 and 10...........................15

    A.   McKenna's Amended Complaint is neither short nor
        plain, and includes a four-page unnumbered narrative
        "introduction."....................................................................17

    B.   The improperly-pled Amended Complaint is prejudicial
        on its face—but particularly so given its ulterior motive...................21

Conclusion ...........................................................................................................25

# Table of Authorities

## Cases

*16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*,
   727 F.3d 502 (6th Cir. 2013) ...................................................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................3, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................3

*Bennett v. Schmidt*,
   153 F.3d 516 (7th Cir. 1998) ................................................................20

*Binion v. O'Neal*, No. 14-13454,
   2015 WL 3544518 (E.D. Mich. Apr. 2, 2015) ....................................13

*Branham v. Celadon Trucking Servs., Inc.*,
   744 N.E.2d 514 (Ind. Ct. App. 2001) ..................................................13

*Conley v. Gibson*,
   355 U.S. 41 (1957) .................................................................................2

*Cooney v. Bob Evans Farms, Inc.*,
   645 F. Supp. 2d 620 (E.D. Mich. 2009) .................................................6

*Corley v. Detroit Bd. of Educ.*,
   470 Mich. 274 (2004) .............................................................................4

*Cox v. Hatch*,
   761 P.2d 556 (Utah 1988) ...................................................................12

*Davenport v. Hrpka*, No. 321615,
   2015 WL 3604657 (Mich. Ct. App. June 9, 2015) ...............................11

*DeBrow v. Century 21 Great Lakes Inc.*, No. 161048,
   1996 WL 33360653 (Mich. Ct. App. Aug. 13, 1996) ..........................15

*Gamrat v. Allard*,
   320 F. Supp. 3d 927 (W.D. Mich. 2018) ..............................................14

*Gamrat v. McBroom*,
    822 F. App'x 331 (6th Cir. 2020)..........................................................14

*Hartleip v. McNeilab, Inc.*,
    83 F.3d 767 (6th Cir. 1996) ..................................................... 3, 4, 11

*Haynie v. State of Michigan*,
    468 Mich. 302 (2003) ..............................................................................4

*Iceberg v. Whole Foods Mkt. Grp., Inc.*,
    914 F. Supp. 2d 870 (E.D. Mich. 2012) ................................................5

*Jennings v. Emry,*
    910 F.2d 1434 (7th Cir. 1990) ..............................................................19

*Kalich v. AT & T Mobility, LLC*,
    679 F.3d 464 (6th Cir. 2012) ..................................................... 4, 5, 6

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ....................................................... 17, 19

*Mich. Paralyzed Veterans of Am. v. Charter Twp. of Oakland, Mich.*,
    2015 WL 4078142 (E.D. Mich. July 2, 2015).....................................16

*Moore v. Third Jud. Cir. of Michigan*,
    867 F. Supp. 2d 872 (E.D. Mich. 2011) ................................................6

*Morris v. Selectcare, Inc.*, No. 183483,
    1996 WL 33347946 (Mich. Ct. App. Dec. 6, 1996) ...........................14

*Nastal v. Henderson & Assocs. Investigations, Inc.*,
    471 Mich. 712 (2005)...........................................................................7, 9

*People v. Blume*,
    443 Mich. 476 (1993) ..............................................................................9

*Pobursky v. Gee*,
    249 Mich. App. 44 (2001) .......................................................................9

*Purveegiin v. York Cnty. Prison*, No. 3:CV-06-0524,
    2007 WL 320752 (M.D. Pa. Jan. 30, 2007) .......................................17

*Quinto v. Cross & Peters Co.*,
   451 Mich. 358 (1996) ........................................................................................4

*Roberts v Auto-Owners Ins*,
   422 Mich 594 (1985) .......................................................................................10

*Sabuda v. Kim*,
   No. 260495, 2006 WL 2382461 (Mich. Ct. App. Aug. 17, 2006) ........................9

*Salahuddin v. Cuomo*,
   861 F.2d 40 (2d Cir. 1988) .................................................................. 16, 18, 20

*Schied v. Daughtrey*, No. 08-cv-14944,
   2008 WL 5422680 (E.D. Mich. Dec. 29, 2008) .................................................17

*Sexton v. Ryder Truck Rental, Inc.*,
   413 Mich. 406 (1982 ...........................................................................................8

*Simmons v. Abruzzo*,
   49 F.3d 83 (2d Cir. 1995) ..................................................................................17

*Summerville v. Ross/ Abbott Laboratories*,
   1999 WL 623786 (6th Cir.1999) ........................................................................11

*Tobin v. Michigan Civ. Serv. Comm'n*,
   416 Mich. 661 (1982) .................................................................................. 12, 13

*Trudeau v. Fisher Body Div, Gen Motors Corp*,
   168 Mich App 14 (1988) ....................................................................................11

*Universal Health Grp. v. Allstate Ins.*, No. 09-12524,
   2010 WL 2278618 (E.D. Mich. May 12, 2010) ..................................... 16, 17, 19

*Verfuerth v. Orion Energy Sys., Inc.*,
   65 F. Supp. 3d 640 (E.D. Wis. 2014) ................................................................20

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
   20 F.3d 771 (7th Cir. 1994) ..............................................................................21

*Williams v. CSX Transp. Co.*,
   533 F. App'x 637 (6th Cir. 2013) .........................................................................6

*Wrobbel v. Hydaker-Wheatlake Co.*, No. 305535,
  2014 WL 310198 (Mich. Ct. App. Jan. 28, 2014)................................................15

**Statutes**

MCL 37.2701 ....................................................................................................14

**Rules**

Fed. R. Civ. P. 12 ............................................................................................17

Fed. R. Civ. P. 8 ....................................................................................... 15, 16

**Other Sources**

5 Wright & Miller, *Federal Practice and Procedure* § 1217 (3d ed.) ....... 16, 17, 20

5 Wright & Miller, *Federal Practice and Procedure* § 1281(1969) ......................20

Mich. Model Crim. JI 17.25 ...................................................................................7

Restatement (Second) of Torts § 46 (1965) ...........................................................10

## Statement of Issues Presented

1. To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to state a plausible claim—that is, the facts as pled must allow a reasonable inference that the defendant is liable for the misconduct alleged. But here, Plaintiff's claims against the Riley Defendants fail to meet this threshold:

   a. Three of Plaintiff's counts rest on state-law sexual harassment allegations. In Michigan, sexual harassment requires conduct that "inherently" pertains to sex, and that conduct must be severe or pervasive. But here, Plaintiff alleges conduct that she *implies* had romantic intent but which is not inherently sexual, and otherwise claims she once "saw" pornography, which is insufficient to show severe or pervasive conduct. Should these counts be dismissed?

   b. Plaintiff next alleges a stalking claim, resting primarily on a series of connected events that occurred in Florida over a single day. Michigan's stalking statutes, however, do not apply to extraterritorial conduct. Moreover, stalking requires at least two nonconsecutive occasions involving conduct that a reasonable person would find terrorizing or harassing, but Plaintiff alleges neither two nonconsecutive occasions nor conduct sufficient to satisfy this element. Should the stalking count be dismissed?

   c. Plaintiff also alleges intentional infliction of emotional distress, based primarily on "harassment" and "stalking." But she does not state valid claims for harassment or stalking. And even if she did, Michigan courts have routinely dismissed IIED claims involving actual harassment far more severe than what is alleged here. Should the IIED count be dismissed?

   d. Plaintiff next alleges the tort of intrusion upon seclusion. Her claim primarily relies on the allegation that Riley kept photographs of her taken off the internet, or photos taken in non-private places, none of which meets the required element of obtaining "secret and private subject matter." Nor does she plausibly allege any other conduct supporting this tort. Should the intrusion count be dismissed?

e.   Finally, Plaintiff alleges a conspiracy to commit stalking and
ELCRA violations with Defendant Olsman MacKenzie. But, as
explained, Plaintiff has not pled valid stalking or ELCRA claims and
so the conspiracy claims necessarily fail too. In any event, she does
not allege any agreement between anyone to commit stalking or
violate ELCRA, which is a necessary element of the tort. Should the
conspiracy claim be dismissed?

2.  Plaintiff filed a 67-page, 325-paragraph Amended Complaint that includes
an unnumbered, advocacy-laced "introduction" that fails to comply with
Rules 8 and 10. To the extent anything survives Rule 12(b)(6), should this
Court dismiss the Amended Complaint without prejudice, and require
Plaintiff to file a Second Amended Complaint that complies with the rules?

**Controlling or Most Appropriate Authority**

*Binion v. O'Neal*, 2015 WL 3544518 (E.D. Mich. 2015)

*Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514 (Ind. App. 2001)

*Cox v. Hatch*, 761 P.2d 556 (Utah 1988)

*Davenport v. Hrpka*, 2015 WL 3604657 (Mich. Ct. App. June 9, 2015)

*DeBrow v. Century 21 Great Lakes Inc.*, 11996 WL 33360653 (Mich. App. 1996)

*Kalich v. AT & T Mobility, LLC*, 679 F.3d 464 (6th Cir. 2012)

*Gamrat v. Allard*, 320 F. Supp. 3d 927 (W.D. Mich. 2018)

*Gamrat v. McBroom*, 822 F. App'x 331(6th Cir. 2020)

*Hartleip v. McNeilab, Inc.*, 83 F.3d 767 (6th Cir. 1996)

*Haynie v. State of Michigan*, 468 Mich. 302 (2003)

*Iceberg v. Whole Foods Mkt. Grp., Inc.*, 914 F. Supp. 2d 870 (E.D. Mich. 2012)

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996)

*Moore v. Third Jud. Cir. of Michigan*, 867 F. Supp. 2d 872 (E.D. Mich. 2011)

*Morris v. Selectcare, Inc.*, 1996 WL 33347946 (Mich. App. 1996)

*Nastal v. Henderson & Assocs. Investigations, Inc.*, 471 Mich. 712 (2005)

*People v. Blume*, 443 Mich. 476 (1993)

*Pobursky v. Gee*, 249 Mich. App. 44 (2001)

*Quinto v. Cross & Peters Co.*, 451 Mich. 358 (1996)

*Roberts v Auto-Owners Ins,* 422 Mich 594 (1985)

*Sabuda v. Kim*, No. 260495, 2006 WL 2382461 (Mich. App. 2006)

*Salahuddin v. Cuomo,* 861 F.2d 40 (2d Cir. 1988)

*Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406 (1982)

*Summerville v. Ross/ Abbott Laboratories*, 1999 WL 623786 (6th Cir.1999)

*Tobin v. Michigan Civ. Serv. Comm'n*, 416 Mich. 661 (1982)

*Trudeau v. Fisher Body Div, Gen Motors Corp*, 168 Mich App 14 (1988)

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771 (7th Cir. 1994)

*Williams v. CSX Transp. Co.*, 533 F. App'x 637 (6th Cir. 2013)

*Wrobbel v. Hydaker-Wheatlake Co.*, 2014 WL 310198 (Mich. App. 2014).

Fed. R. Civ. P. 8(a)

Fed. R. Civ. P. 10(b)

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(f)

## Introduction

Plaintiff Elyse McKenna filed a 67-page, 325-paragraph Amended Complaint that was not intended to serve as a notice pleading but as a piece of advocacy she could disseminate to the press and third parties as part of a campaign to ruin the personal and professional reputation of Robert F. Riley, a highly respected attorney in the Detroit legal community. But ironically, McKenna's exhaustive complaint confirms that she does not have a case. Some of her asserted facts do not state claims for relief as a matter of law, including notably her claims for state-law sexual harassment based on conduct that is *not* "inherently sexual" as required by Michigan law. In other instances, she merely offers a conclusory recitation of the claim's elements. McKenna's allegations thus fail to satisfy the *Iqbal* plausibility standard. The Court should dismiss the Amended Complaint with prejudice per Rule 12(b)(6).

That said, the impropriety of McKenna's complaint extends beyond its substantive deficiencies, warranting relief apart from Rule 12(b)(6). A complaint is meant to put a party on notice. It is not meant to serve as a lengthy argument-laden hit-piece that does not permit the defendant to practically and fairly respond. And this was no accident. McKenna abused this Court's processes in furtherance of a retaliatory effort to humiliate, demean, and destroy the career of Defendant Riley when she did not get what she wanted. This scheme included an unsuccessful effort to extort Riley for $400,000 in exchange for not publicizing her false and misleading

-1-

allegations (a course of conduct that ended with a threat that McKenna would have Riley "served in public" after not agreeing to her demands.) She then repeated the Amended Complaint's falsehoods and misleading half-truths to local media, Riley's clients, and to at least one state court, believing Riley would be unable to effectively respond to her improperly-framed allegations. Thus, if the Amended Complaint is not dismissed in full, the Court should dismiss the rest without prejudice and direct McKenna to file an amended complaint that complies with Rules 8 and 10.

## Argument

Complaints serve an important, but limited, role in federal litigation. They are not evidentiary pieces, meant to prove a plaintiff's case. They are not advocacy pieces, meant to persuade. They are meant to put the defendant on notice of the nature of the claims so that the substance of every allegation can be fairly answered over just a few weeks. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

As discussed, McKenna's complaint was not intended to do that. It does not state valid claims. It was intended to inject a misleading, inaccurate, and reputation-damaging document into the public sphere for ulterior purposes. It should be dismissed on the merits. But if not, it is procedurally improper and should be re-pled.

## I.     McKenna Fails to State Plausible Claims for Relief

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Non-conclusory claims are plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A "plausibility" determination is context-specific, requiring the Court to draw on its judicial expertise and common sense, and the strength of competing explanations for the defendant's conduct. *See Iqbal*, 556 U.S. at 679; *16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). McKenna does not state plausible claims for relief.

### A.     McKenna's sexual harassment claims (Counts I, III, and VI) do not plausibly allege severe or pervasive "inherently sexual" conduct.

McKenna's complaint identifies three duplicative claims against the Riley Defendants relating to sexual harassment by an employer: Counts I and III under Elliott-Larsen (*see* PageID.149-151 ¶¶ 247-249; PageID.153-154 ¶ 266); and Count VI, which recasts alleged sexual harassment as a "breach of contract" (*see* PageID.157-158 ¶¶ 289-291).[1]

---

[1] Count VI for "breach of contract" should also be dismissed in its entirety under *Hartleip v. McNeilab, Inc.*, 83 F.3d 767 (6th Cir. 1996). In *Hartleip*, the Sixth Circuit

In Michigan—unlike under federal law—sexual harassment is specifically defined as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." *Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 471–72 (6th Cir. 2012) (quoting what is now MCL § 37.2103(k)). The term "sexual nature" has been interpreted by the Michigan Supreme Court to require "conduct or communication that *inherently* pertains to sex." *Id.* (emphasis in original) (quoting *Corley v. Detroit Bd. of Educ.*, 470 Mich. 274 (2004)). Conduct or communication that does not inherently pertain to sex cannot support an ELCRA sexual harassment claim. *Id.* at 472-473; *Haynie v. State of Michigan*, 468 Mich. 302, 313-14 (2003). And even as to conduct of an inherently sexual nature, a plaintiff must show that the circumstances were objectively "sufficiently severe or pervasive" to create a hostile work environment. *Quinto v. Cross & Peters Co.*, 451 Mich. 358, 369 (1996); *Kalich*, 679 F.3d at 474 (recognizing this "reasonable person" standard). Here, McKenna does not allege facts that plausibly give rise to a claim of sexual harassment under Michigan law.

The allegations regarding McKenna's time as an employee of Riley & Hurley—the relevant timeframe for an employment-based claim like sexual

held that "a claim for breach of employment contract" that is "based on an unspecified contract which she alleges included an implied provision that she would not be sexually harassed in violation of the ELCRA" is preempted. *Id.* at 777. At best, that is all McKenna alleges here.

harassment—spans 42 paragraphs. *See* PageID.114-122, ¶¶ 44-86. She does not allege any sexual advances, requests for sexual favors, or even any explicit or derogatory language regarding women. Instead, her accusations are based almost entirely on Riley allegedly sending her notes, sponsoring dinners, providing birthday and Christmas gifts, asking about her "personal" life, and the like. *See id.* McKenna insinuates that these events reflect romantic desire, but her very need to spin facially neutral acts as romantically motivated itself establishes that the challenged conduct is not "inherently sexual" and thus not actionable.[2] *See Kalich,* 679 F.3d at 473 (6th Cir.2012) ("[T]he standard is not whether certain conduct or comments could arguably manifest sexual desire, but whether the conduct or comments *inherently pertain* to sex."); *Iceberg v. Whole Foods Mkt. Grp., Inc.*, 914 F. Supp. 2d 870, 882 (E.D. Mich. 2012) (defendant's request to "hang out" with the plaintiff—despite previous explicit sexual advances—was "too nebulous to pertain to sex 'inherently.'") And, in any event, perceived romantic interest that does not cross the line into sexual innuendo, unwanted physical contact, or the like is not objectively "severe or pervasive" conduct. *Moore v. Third Jud. Cir. of Michigan*, 867 F. Supp.

---

[2]For example, McKenna knows that Riley gave extremely generous gifts to *all* Riley & Hurley employees, particularly at Christmastime—including airline gift cards for $1,000 or more. And, as discussed *infra* at 23, McKenna's response to Riley's Christmas card containing the word "love" illustrates the obvious: the word "love" has non-sexual connotations. McKenna was effusive in expressing how happy the card made her, but presumably will not claim she was expressing sexual desire.

2d 872, 883 (E.D. Mich. 2011) (finding no severe or pervasive harassment where supervisor's conduct "reflects primarily romantic overtures in the form of unwanted affection, attention, compliments, and fruitless attempts to spend non-business time with her" but no "blatantly and overtly sexual or otherwise explicit" conduct).

McKenna's only allegation that even hints at something "inherently sexual" is the false—and, given the prolixity of her complaint otherwise, suspiciously detail-free—claim that Riley once was looking at pornography in his office which he "allowed" McKenna to see. PageID.118, ¶ 68. That never happened, but assuming it is so for purposes of this motion, a single incident of this nature would not be "severe or pervasive" as a matter of law. *See, e.g.*, *Williams v. CSX Transp. Co.*, 533 F. App'x 637, 642 (6th Cir. 2013) ("the mere presence of visible pornography in the workplace combined with a single confrontation involving sexist remarks" is not sufficient to establish a sexually hostile work environment.) (citing several cases); *cf. Kalich,* 679 F.3d at 474 ("Except in the case of extreme incidents such as rape or sexual assault, a single, isolated event is typically insufficient to create a hostile work environment" under Michigan law). McKenna fails to state a claim for sexual harassment, and Counts I, III, and VI should be dismissed accordingly.[3]

---

[3] Count I also uses the word "retaliation" in discussing the sexual harassment claim, but she does not plead any protected activity that took place during her employment. She thus does not plead facts stating a retaliation claim. *See Cooney v. Bob Evans Farms, Inc.*, 645 F. Supp. 2d 620, 635 (E.D. Mich. 2009).

**B.      McKenna's Michigan statutory "stalking" claim (Count VII)
improperly rests on alleged extraterritorial conduct and would fail
to state a claim if the alleged conduct had occurred in Michigan.**

McKenna next accuses Riley of "stalking" her in violation of MCL 750.411h,
with the "stalking" being his attempts to speak to her one evening at a joint client
conference in Orlando, Florida.[4] *See* PageID.135-137, ¶¶ 159-173.

MCL 750.411h is a criminal statute; however, MCL 600.2954 provides for a
civil action against an individual "who engaged in conduct that is prohibited under
section 411 of the Michigan penal code." The elements of stalking are (1) "two or
more willful, separate, and noncontinuous acts of unconsented conduct," (2) that the
contact "would cause a reasonable individual to suffer emotional distress," (3) that
it did cause emotional distress; (4) that the contact "would cause a reasonable
individual to feel terrorized, frightened, intimidated, threatened, harassed, or
molested," and (5) that the contact did cause the individual to feel terrorized, etc.
*See* Mich. Model Crim. JI 17.25; *Nastal v. Henderson & Assocs. Investigations, Inc.*,
471 Mich. 712, 722 (2005). McKenna has not pled a violation of this law.

---

[4]As discussed *infra* at 21-25, this section is an example of McKenna's blatant misuse
of her complaint as a vehicle to smear Riley and damage his reputation, believing he
could not adequately respond in an Answer. Omitted from McKenna's misleading
narrative is that McKenna had, earlier in the conference (1) *affirmatively sought out*
Riley's help after she claimed a conference attendee assaulted her; (2) that Riley
assisted McKenna as requested; (3) that McKenna then told Riley that she feared
retaliation from the attendee; and (4) Riley's attempt to communicate with McKenna
thereafter was due to Riley's fear that McKenna had been retaliated against.

1.     **The statutes do not apply to extraterritorial conduct.** McKenna's claim fails first because the conduct alleged occurred in Florida, not Michigan. State statutes presumptively are "intended to have no extraterritorial effect, but apply only within the territorial jurisdiction of the state or country enacting it. Thus, an extraterritorial effect is not to be given statutes by implication." *Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406, 435 (1982). Rather, in "order for a statute to have extraterritorial application, there must be clear legislative intent." *Id.* at 434. Here, McKenna seeks to apply *two* statutes extraterritorially: (1) MCL 600.2954, providing a civil cause of action; and (2) the underlying criminal statute MCL 750.411h, a violation of which must be proven to recover civilly.

Neither statute, however, facially expresses any intent that the statute apply to conduct outside of Michigan—let alone a clear intent as required. *See Sexton*, 413 Mich. at 434. The legislative history of the bills that gave rise to both statutes contain no such mention of extraterritoriality either, let alone a clear statement that they were intended to apply to conduct outside Michigan. *See* Ex. A, Michigan House Legislative Analysis; Ex. B, Michigan Senate Fiscal Agency Analysis. That should be the end of it; neither statute can apply to Florida conduct without such clear intent.

Moreover, as to the underlying criminal stalking statute (a violation of which McKenna must prove), the Michigan Supreme Court has held that for criminal statutes, there is "extraterritorial jurisdiction over acts committed outside Michigan"

-8-

only when "the acts are intended to and do have a detrimental effect within the state." *People v. Blume*, 443 Mich. 476, 477–78 (1993). It is not enough that the alleged victim was a Michigan resident; there must be "evidence that defendant intended to commit an act *with the intent to have a detrimental effect within this state.*" *Id.* (emphasis in original). But here, McKenna's allegations of alleged "stalking" while both parties were in Florida (and purportedly causing her "fear" there) does not allege a detrimental effect in Michigan, let alone Riley's *intent* to cause a detrimental effect in Michigan. *See* PageID.136, 159-160, ¶¶ 168, 294-299. And the only other act she alludes to as "stalking" – Riley's allegedly asking where she lived after she moved to Maryland, PageID.147 ¶¶ 228-231 – does not allege a detrimental effect in Michigan, let alone an intent to cause such an effect. She has not stated a claim.

**2.    Even if the statutes had extraterritorial effect, McKenna does not state a claim.** Stalking requires "two or more acts of unconsented contact that actually cause emotional distress to the victim and would also cause a reasonable person such distress." *Nastal*, 471 Mich. at 722. The plaintiff must allege "separate noncontinuous acts evidencing a continuity of purpose." *Sabuda v. Kim*, No. 260495, 2006 WL 2382461, at *4 (Mich. Ct. App. Aug. 17, 2006). Under this definition, McKenna does not state a claim. For one thing, the alleged "stalking" in Florida, all allegedly occurring on a single night, is a single event for purposes of the statute. *See Pobursky v. Gee*, 249 Mich. App. 44, 48 (2001) (physical attack and repeated

threats during a single evening is a "series of continuous acts" that cannot support a stalking claim). And she cannot rely on Riley allegedly asking where she lived after she moved to Maryland as a second "noncontinuous act," as she does not allege that she suffered "emotional distress" as a result, and does not allege that a reasonable person would have suffered such distress from being asked where she lived. Nor could she plausibly do so. Her complaint confirms that, at the time, she still voluntarily worked for a client on joint matters with Riley. Further, despite Riley having known her address the entire time she worked for him in Michigan, she never alleges that he came to her home unconsented or "stalked" her while at home in Michigan. Labeling this ordinary, inoffensive alleged communication as "stalking" is a further attempt to smear Riley, not a valid attempt to state a claim.

**C.   McKenna does not state a valid claim for intentional infliction of emotional distress (Count VIII).**

The Michigan Supreme Court has never formally adopted the tort of IIED, but held that the tort, if applicable, would require "conduct… so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts v Auto-Owners Ins,* 422 Mich 594, 603 (1985) (citing standard of the Restatement (Second) of Torts § 46). The tort "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* Indeed, the distress

must be "so severe no reasonable man could be expected to endure it." Restatement (2d) of Torts § 46, comment j (1965).

Courts thus have routinely rejected IIED claims arising out of alleged sexual harassment and conduct far more severe than what is alleged here. *Trudeau v. Fisher Body Div, Gen Motors Corp*, 168 Mich App 14, 19–20 (1988) (no IIED as a matter of law where supervisor asked female subordinate if he could "screw her," followed by his terminating her when she refused to sleep with him); *Summerville v. Ross/ Abbott Laboratories*, 1999 WL 623786 (6th Cir.1999) (no IIED claim as a matter of law despite allegations of "unwelcome lewd jokes, comments, body movements and baring of body parts, as well as sexual come-ons and unwelcome touching."); *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 777 (6th Cir. 1996) (no IIED as a matter of law despite allegations that defendant threatened plaintiff's employment stability, applied pressure on her weekly to engage in conduct that she had no interest in pursuing, constantly called and wrote to her, and discussed sexual fantasies with other employees about her) (applying Michigan law); *Davenport v. Hrpka*, No. 321615, 2015 WL 3604657, at *5 n.2 (Mich. Ct. App. June 9, 2015) (holding that incident of domestic violence not sufficient for an IIED claim).

Here, McKenna does not allege any explicitly sexual conduct or communication at all, does not allege threats of violence, or anything remotely

similar. Given that Courts have rejected IIED claims despite evidence of far more severe conduct than alleged here, McKenna has not stated a plausible IIED claim.

### D. McKenna does not state an intrusion on seclusion claim (Count IX).

Next, McKenna alleges the common-law tort of "intrusion into seclusion." *See* PageID.162-163, ¶¶ 311-319. This tort requires three elements: (1) the existence of a "secret and private subject matter," (2) a "right possessed by plaintiff to keep that subject matter private," and (3) the "obtaining of information about that subject matter by the defendant through some method objectionable to the reasonable" person. *Tobin v. Michigan Civ. Serv. Comm'n*, 416 Mich. 661, 672 (1982).

*First*, McKenna alleges "intrusion upon seclusion" because Riley allegedly had photos of her on his iPad taken in the office or downloaded off the internet. PageID.121, ¶ 84; PageID.162, ¶ 314. At the outset, McKenna's complaint fails to note a critical contextual fact, in line with her abuse of the federal pleading process described below: specifically, that Robert Riley is legally blind and uses the high-resolution screen of his iPad to magnify images so he can see people's faces. But putting that aside for purposes of the 12(b)(6) portion of this motion, (1) photos she placed on social media or that were otherwise on the internet; or (2) photos taken in the workplace in a non-private area are not "secret or private subject matter" as required for the tort. *See, e.g.*, *Cox v. Hatch*, 761 P.2d 556, 564 (Utah 1988) (employees could not state claim for invasion of privacy when they were

photographed in the workplace while in the company of others); *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 524 (Ind. Ct. App. 2001) (no liability for photographing employee who fell asleep in the workplace breakroom while he was not alone); *Binion v. O'Neal*, No. 14-13454, 2015 WL 3544518, at *3 (E.D. Mich. Apr. 2, 2015) ("Plaintiff had already posted his photograph publicly on his public Instagram account. Therefore, his photograph is not 'private.'"). Her claim cannot rest on such allegations.

Otherwise, McKenna attempts to reshape her Florida "stalking" allegations into an intrusion upon seclusion claim, claiming that he "listen[ed] to her phone calls" outside her Orlando hotel room. *See* PageID.162 ¶ 314. These claims relate to conduct outside of Michigan and thus fail for the reasons stated above. And merely alleging there was "stalking," "not leaving her alone," or asking where she lived does not reflect attempts to obtain "secret" or "private" information for purposes of an intrusion upon seclusion claim. *See, e.g.*, *Tobin*, 416 Mich. at 672 ("addresses are not ordinarily personal, intimate, or embarrassing pieces of information.").

The only "secret" thing she might refer to is the content of private phone calls, but she does not plausibly allege that Riley actually overheard any of her calls. The sole allegation to this effect is a single conclusory paragraph: "McKenna became aware that Riley was listening to her phone calls through the adjoining conference room door." PageID.134-135 ¶ 156. But she does allege facts from which one could

-13-

plausibly infer that Riley could hear her phone conversation through a conference room door. Given that she spends paragraphs on minutiae, the fact that this passively-worded sentence is all she can muster for an accusation of eavesdropping is telling. Such a "naked assertion devoid of further factual enhancement" does not satisfy the *Iqbal* pleading standard. *Iqbal*, 556 U.S. at 678; *see also Gamrat v. Allard*, 320 F. Supp. 3d 927, 942 (W.D. Mich. 2018) (finding bare claim of eavesdropping without supporting facts insufficient to plausibly plead a claim).

### E. McKenna does not state a conspiracy claim (Count X).

Finally, McKenna alleges a "conspiracy to commit stalking" and a conspiracy to violate ELCRA between the Riley Defendants and Olsman. PageID.163-165 ¶¶ 320-325. She also fails to state a conspiracy claim for several reasons.

*First*, a conspiracy claim requires proof of the underlying tort. But since, as discussed, McKenna has not stated a claim for stalking or an ELCRA violation, there is no viable conspiracy claim. *Morris v. Selectcare, Inc.*, No. 183483, 1996 WL 33347946, at *3 (Mich. Ct. App. Dec. 6, 1996); *Gamrat v. McBroom*, 822 F. App'x 331, 335 (6th Cir. 2020) ("Gamrat fails to state a plausible claim for any other actionable tort, so she also fails to state a claim for civil conspiracy.")

*Second*, as to ELCRA, conspiracy requires showing conspiring to "aid, abet, incite, compel, or coerce" someone to violate ELCRA. MCL 37.2701. But there are scarcely *any* allegations of communications between Riley and Olsman in the

-14-

complaint—and none of those allegations claim that Olsman told Riley to harass McKenna while she was at R&H, or vice-versa. There is likewise no allegation that Riley told Olsman or conspired with Olsman to fire McKenna. With no allegations that anyone told the other conspirator to violate ELCRA, there is no claim.

*Third*, as to "stalking," a conspiracy requires proof of an agreement or preconceived plan to do an unlawful thing. *Wrobbel v. Hydaker-Wheatlake Co.*, No. 305535, 2014 WL 310198, at *5 (Mich. Ct. App. Jan. 28, 2014). Again, there are no allegations that either side agreed with the other to "stalk" McKenna. All she claims is that the Olsman firm facilitated cases with Riley, and that this "permitted" the stalking to occur—not that anyone "agreed" that Riley should do something unlawful. *See* PageID.164, ¶ 323. The mere fact that Olsman purportedly had economic interests to work with Riley, absent some claim that Olsman made an agreement for Riley to engage in illegal conduct, is insufficient. *See DeBrow v. Century 21 Great Lakes Inc.*, No. 161048, 1996 WL 33360653, at *5 (Mich. Ct. App. Aug. 13, 1996) (rejecting conspiracy claim where "conspirator" wanted plaintiff fired, but solely to protect economic interests). She does not state a claim.

## II. McKenna's Amended Complaint Violates Rules 8 and 10.

Rule 8 requires plaintiffs plead a "short and plain statement of [each] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Emphasizing "clarity and brevity," 5 Wright & Miller, *Federal Practice and Procedure* § 1217

(3d ed.), Rule 8 requires that "[e]ach allegation must be simple, concise, and direct," Fed. R. Civ. P. 8(d)(1). And Rule 10(b) requires claims to be set forth "in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

Rule 8 also prescribes the defendant's responsive obligations. Rule 8(b) states that the defendant's responsibility is to answer every allegation in the complaint using one of three—and only three—responses: (1) admit, (2) deny, or (3) assert lack of information or knowledge sufficient to admit or deny. Fed. R. Civ. P. 8(b)(1)(B), (b)(5); *Mich. Paralyzed Veterans of Am. v. Charter Twp. of Oakland, Mich.*, No. 14-cv-14601, 2015 WL 4078142, at *1 n.2 (E.D. Mich. July 2, 2015) (Berg, J.) ("Rule 8 . . . requires that a Defendant respond to all allegations in one of the three ways listed in Rule 8(b)."). Defendant must "fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2). If that means that the defendant can admit only "part of an allegation," the defendant must parse the allegation and respond, as appropriate, to each separate allegation. Fed. R. Civ. P. 8(b)(4).

Rule 8(b) assumes that Rule 8(a) is followed. Complaints must be "short," so that they are concise enough to permit defendants to fairly respond to every part of every allegation in a timely fashion. *See Salahuddin v. Cuomo,* 861 F.2d 40, 41 (2d Cir. 1988); *Universal Health Grp. v. Allstate Ins.,* No. 09-12524, 2010 WL 2278618, at *2 (E.D. Mich. May 12, 2010). They must also be "plain," so that defendants can

identify and respond to the gist of the claims against them without having to sort through extraneous or argumentative factual and legal assertions. *Id*.

When a complaint is neither of those things, it fails to fulfill its fundamental purpose and prejudices the defendant with the unduly burdensome task of responding to an improper complaint. *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). In that case, the out-of-line allegations should be struck or, if that is impractical, the entire complaint should be dismissed without prejudice to plaintiff refiling one that meets Rule 8. *See* Fed. R. Civ. P. 12(f); *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir. 1995) ("When a complaint fails to comply with [Rule 8], the district court has the power . . . to dismiss the complaint or to strike such parts as are redundant or immaterial."); *Schied v. Daughtrey*, No. 08-cv-14944, 2008 WL 5422680 (E.D. Mich. Dec. 29, 2008) (dismissing complaint for violating Rule 8); *Purveegiin v. York Cnty. Prison*, No. 3:CV-06-0524, 2007 WL 320752, at *3 (M.D. Pa. Jan. 30, 2007) (dismissing complaint under Rule 10(b) as a lack of numbered paragraphs "precludes a point of reference for the Defendants' answer(s)"); *see generally* 5 Wright & Miller, *Federal Practice and Procedure* § 1217 (3d ed.). McKenna's Amended Complaint runs afoul of these rules, and should be dismissed.

> ### A.  McKenna's Amended Complaint is neither short nor plain, and includes a four-page unnumbered narrative "introduction."

Rule 8 requires complaints be "plain" statements so that defendants can identify and respond to the gist of the claims against them without having to sort

through extraneous or argumentative factual and legal assertions. *Salahuddin,* 861
F.2d at 42. The Complaint fails in this way for several reasons.

*First*, from its structure to its substance, the Complaint is a piece of legal
advocacy, not a notice pleading. Start with the structure. The Complaint opens with
an argumentative four-page "Introduction" that lacks numbered paragraphs. *See*
PageID.103-106. This is the sort of thing one would expect at the beginning of a
dispositive motion or appellate brief. It then sets forth a "Factual Allegations"
section containing 227 numbered paragraphs and 26 unnumbered argumentative
subheadings—again, something one would expect in a brief, not a notice pleading.
McKenna's use of 26 subheadings is a tacit acknowledgment that the Amended
Complaint is so unwieldy that it requires guideposts.

Next, the substance. The Amended Complaint is drafted as an advocacy piece.
It includes irrelevant digressions about McKenna's high-school grades, college
career, and law school accolades—things that have no bearing on the allegations but
are intended to cast McKenna in a sympathetic light, as one might when arguing to
a jury. *See* PageID.109. It spends pages on McKenna's career before starting her
employment with Riley & Hurley—that is, the relevant time for an employment
discrimination lawsuit—again, for narrative purposes rather than putting Defendants
on notice of the claims at issue. *See* PageID.110-113. It contains excruciating, multi-
paragraph descriptions of (non-sexual) workplace events or events not involving

-18-

Defendants when, when, at best, a single sentence would have done if the purpose was notice pleading. *See, e.g.*, PageID.114-117 ¶¶ 48-52, 57-60, 62-64. And at the same time it spends paragraph after paragraph on minor details, it often inserts lengthy paragraphs weaving together multiple distinct factual allegations. *See, e.g.*, PageID.108 ¶ 17; PageID.110 ¶ 25; PageID.114 ¶ 46; PageID.125 ¶ 94; PageID.140 ¶ 189; PageID.141 ¶ 196; PageID.143 ¶ 207.

Asking Defendants to sift through this heap of legal, rhetorical and quasi-factual allegations—including four pages and 26 subheadings of unnumbered argument—to identify the factual residue that they cannot fairly deny is an abuse of Rule 8. *See McHenry*, 84 F.3d at 1178 ("If the pleading contains prolix evidentiary averments, largely irrelevant or of slight relevance, rather than clear and concise averments stating which defendants are liable to plaintiffs for which wrongs, based on the evidence, then [Rule 8's] purpose is defeated."); *Jennings v. Emry,* 910 F.2d 1434, 1436 (7th Cir. 1990) (stating that a complaint "must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of what it is the plaintiff asserts); *see also Universal Health Grp. v. Allstate Ins.,* 2010 WL 2278618, at *3 (stating that a complaint that "reads more like a brief" "violates the letter and spirit of Rule 8(a) [.]").

*Second*, Complaints must be "short" statements because "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who

must respond to it[,] . . . forc[ing it] to select the relevant material from a mass of verbiage." *Salahuddin*, 861 F.2d at 42 (quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1281, at 365 (1969)). But here, the Complaint is anything but "short." Totaling 65 pages, 325 numbered paragraphs, and at least another 26 unnumbered "factual" subheadings, the complaint is between *five and sixteen* times longer than the average federal complaint. *See Verifiers v. Orion Energy Sys., Inc.*, 65 F. Supp. 3d 640, 652 (E.D. Wis. 2014) ("The typical complaint filed in federal court is somewhere between four and twelve pages.") (citing *Bennett v. Schmidt,* 153 F.3d 516, 517 (7th Cir. 1998)).

Complaints, of course, come in different sizes depending on the complexity of the case. 5 Wright & Miller, *Federal Practice and Procedure* § 1217 (3d ed). But there is nothing unusually complex about McKenna's claims to justify such a long-winded pleading. As just one example, the primary claim against the Riley Defendants is workplace hostile environment—with all the events that she alleges consisting of the harassment contained in a single paragraph containing about a dozen purported improper acts. *See* PageID.114 ¶ 46. McKenna might have unpacked that single complex paragraph into a few shorter ones and added two more paragraphs about when she started working at Riley & Hurley and when she left. By so doing, she would have put the Riley Defendants on full notice of the scope of the alleged harassment. Yet instead, McKenna spends a full *74 paragraphs* (many of

them lengthy and compound) describing how she came to work for Riley and the events that allegedly constitute harassment. *See* PageID.110-126 ¶¶ 23-97.

McKenna, herself a lawyer and litigator, knows how to properly plead a complaint. But the length and unorthodox nature of her complaint is a feature, not a bug. As described below, it reflects McKenna's intentional misuse of the Court's processes to demean, humiliate, and attempt to destroy the career of Riley.

### B. The improperly-pled Amended Complaint is prejudicial on its face—but particularly so given its ulterior motive.

A party's failure to conform to the requirements of Rules 8 and 10 is not a technicality; it has real and prejudicial consequences. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775–76 (7th Cir. 1994) (recognizing that a complaint that violates Rule 8 "makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation"). Riley must now comb through hundreds of rhetorically charged allegations—and somehow figure out how to address a four-page narrative argument section—simply to advance the litigation beyond the pleading stages.

That prejudice, however, is compounded when the pleading defects are intentional, and meant to serve an ulterior motive. McKenna's pleading was crafted as a means towards an end: placing a prejudicial narrative about Riley into the public sphere, in an effort to poison his reputation and goodwill in the legal community. Before filing this lawsuit, McKenna threatened to do just that, with her then-lawyer

suggesting that McKenna would have Riley "served in public" for not agreeing to her demands.[5] *See* Ex. C, Prescott Email. Once the lawsuit was filed, she repeated the same falsehoods and misleading allegations to the media. *See* Ex. D (Detroit News article). She included a complete copy of the Amended Complaint as an exhibit to a state-court filing related to a fee dispute with the Olsman firm, for no purpose other than further disseminating her allegations. And even after counsel warned McKenna of her pleading defects, she filed an Amended Complaint that was even more egregious than McKenna's original, *pro se* draft. *See* Ex. E, Hardy Letter to Kalahar. This was deliberate conduct done in violation of the federal rules.

The prejudice of McKenna's approach—using a complaint as an advocacy piece meant for public consumption rather than party-specific notice—is further exemplified by the fact that a party like Riley must either admit or deny the lurid paragraphs, without a clear mechanism for addressing or responding to the misleading nature of her narrative. And make no mistake: that is precisely what McKenna is doing here. Riley has provided several examples, as asides, in the first part of this motion. *See supra* at 5 n.2, 7 n.4, 12. Two more examples are warranted.

*First*, McKenna's narrative introduction paints Riley as having sent an inappropriate note regarding his "love" and "affection" for McKenna. PageID.104.

---

[5]Remarkably, McKenna (while acting *pro se*) labelled Riley's refusal to concede to McKenna's extortionate demands on her terms as a "breach of contract" – a theory her new lawyers dropped from the Amended Complaint. *See* PageID.43-44, 52-53.

McKenna's earlier, pro-se filing explained that this was written in a December 2019 Christmas card. *See* PageID.15, ¶ 109. And while McKenna's Amended Complaint tries to spin this note as repugnant and unwelcome harassment, McKenna's *actual* contemporaneous response to Riley was as follows:

> Your card really meant the world to me. I've read it over a number of times. It brought me a lot of happiness yesterday and today. I am very lucky to have you in my life…. I've decided on a reciprocal card to really detail my thoughts. I'm happy.

*See* Ex. F (McKenna-Riley Text Excerpts). McKenna, however, would have Riley simply "admit" that he sent the card—shorn from the context that shows McKenna led Riley to believe that the card, which referenced love and affection in a platonic sense, was welcome and that they shared a friendship.

*Second*, McKenna accuses Riley of showing her pornography, alleging specifically that "Riley sent McKenna a racy photograph of a scantily clad brunette woman from ultrafilms.com." PageID.130, ¶ 126. What McKenna omits is that Riley was forwarding to McKenna a communication received from a mutual contact of theirs.[6] The image in question had been inappropriately sent to their mutual contact in connection with that contact's advocacy work, the contact forwarded it to Riley explaining the context, and Riley identified that context when relaying it to

---

[6]Because of the nature of the communication, and to protect the contact's privacy, Riley does not attach them here. But McKenna knows full well the context of that photograph, which she omitted for the purpose of spinning a false narrative.

McKenna. Yet McKenna tries to spin this correspondence into unwelcome harassment, believing that Riley will be hampered in adequately responding.

Riley recognize that a motion to dismiss based on improper pleading is rare. But that says more about McKenna's Amended Complaint than it does Defendants' request for relief. The one and only purpose of a complaint is to put defendant on notice of the claims. Complaints that do that and then some—those that are directed at other audiences or serve ulterior purposes—violate Rule 8 just as much as one that fails to put a defendant on notice altogether. This follows not only from the letter of Rule 8, but from its guiding principle, reflected in Rule 8(e): "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). And it follows from Rule 12(f)'s instruction that a complaint should not contain "redundant, immaterial, impertinent, or scandalous matter." If McKenna insists on advancing false and meritless claims, she may do so—subject, of course, to sanctions if the Court determines she engaged in improper conduct. But justice demands that McKenna not be allowed to abuse the pleading process as she has: using the imprimatur of a federal complaint to lend weight to misleading and scandalous allegations to cause immediate reputational and financial harm to the opposing party. Her complaint should serve as a notice pleading in conformity with Rules 8 and 10, and nothing else. To the extent the Court does not dismiss the Amended Complaint in its entirety, the Court should strike the entire

Amended Complaint with leave to refile a complaint that complies with these Rules, and further shorn of any allegations that relate to any dismissed claims.

## Conclusion

For these reasons, Defendants ask this Court to dismiss the Amended Complaint with prejudice under Rule 12(b)(6). To the extent anything survives Rule 12(b)(6) review, the Court should dismiss the remainder without prejudice to filing an amended complaint that complies with Rules 8 and 10.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By:/s/Elizabeth Hardy
Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
Attorneys for Defendants Robert F. Riley &
Riley & Hurley, P.C.
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

Dated: December 20, 2024
552353

-25-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

<u>*/s/Elizabeth Hardy*</u>
Elizabeth Hardy (P37426)
Kienbaum Hardy Viviano Pelton
 & Forrest, P.L.C.
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com