# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**ELYSE MCKENNA**,

　　　　Plaintiff,

v.

**ROBERT F. RILEY,** *an individual,*
**RILEY & HURLEY, P.C.** *a domestic professional corporation,*
**OLSMAN, MACKENZIE, PEACOCK, P.C.** *a domestic professional corporation,*

　　　　Defendants.

Case No: 24-cv-12347
Hon. Judge Brandy R. McMillion

**DEFENDANT OLSMAN MACKENZIE PEACOCK'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

| | |
|---|---|
| Kathleen J. Kalahar (P60301)<br>1394 East Jefferson Avenue<br>Detroit, MI 48207<br>(313) 567-6165 (office)<br>(248) 310-0133 (mobile)<br>(313) 567-4827 (facsimile)<br>kkalahar@goodmankalahar.com<br>**Attorney for Plaintiff** | **DEBORAH GORDON LAW**<br>Deborah L. Gordon (P27058)<br>Elizabeth Marzotto Taylor (P82061)<br>Sarah Gordon Thomas (P83935)<br>33 Bloomfield Hills Parkway, Suite 220<br>Bloomfield Hills, Michigan 48304<br>(248) 258-2500<br>dgordon@deborahgordonlaw.com<br>emarzottotaylor@deborahgordonlaw.com<br>sthomas@deborahgordonlaw.com<br>**Attorneys for defendant Olsman, MacKenzie, Peacock, P.C.**<br><br>**Kienbaum Hardy Viviano**<br>**Pelton & Forrest, P.L.C.**<br>Elizabeth Hardy (P37426)<br>Thomas J. Davis (P78626)<br>280 North Old Woodward Avenue, Suite 400<br>Birmingham, MI 48009<br>(248) 645-0000<br>ehardy@khvpf.com<br>tdavis@khvpf.com<br>**Attorneys for Defendants Robert F. Riley and Riley & Hurley, P.C.** |

**Defendant Olsman MacKenzie Peacock ("OMP")** by and through its counsel, Deborah Gordon Law, states as follows for its Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint ("SAC"):

## INTRODUCTION

1.      During the time she worked for his law firm, Robert F. Riley ("Riley") treated Elyse McKenna ("McKenna") differently than other attorneys in his office because of her gender, creating a hostile work environment for this young lawyer. For the past five years Riley continued to sexually harass and stalk attorney McKenna.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of these allegations.**

For more than two of those years, Riley's harassment of McKenna occurred with the knowledge and constructive approval of McKenna's then- employer, the law firm of Olsman MacKenzie Peacock, which has a close and mutually beneficial business relationship with Riley and allowed Riley to influence and control McKenna's employment conditions.

**ANSWER: Defendant OMP denies these allegations.**

2.      Riley is the foremost mediator in Michigan for front-page sex abuse/harassment lawsuits and complex personal injury lawsuits. On the pretense of being McKenna's professional "mentor" and, later, as her employer, Riley – who first met McKenna when she was a twenty-one year-old law clerk – lured McKenna away from her job as an attorney to hire her at his firm, Riley & Hurley ("RH"). Riley then

subjected McKenna to intense sexual grooming and a sexually hostile work environment, in which her tolerance of Riley's inappropriate sexual behavior and obsession with her were conditions of her employment.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

3.      McKenna's life was taken over by Riley. From day one, Riley bombarded her with unwanted handwritten notes, text messages, phone calls, time spent in her office throughout the workday, lavish gifts, and mandatory monthly dinners with just him at expensive restaurants. He interrogated McKenna about her personal life and insisted on being part of it, attempted to kiss her when he was alone with her, wrote McKenna a romantic note saying he saw "no reason to be tentative" about his "love" and "affection" for her "no matter its implications," and wrote her another note saying, "I have already thought of you 662,112 times today."

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

4.      When McKenna rebuffed Riley or attempted to distance herself from him, as she did often, he questioned her loyalty, intimidated her, and reminded her that her professional success depended on him.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

5.      After McKenna discovered Riley had been secretly photographing her at

the office and stockpiling hundreds of other photographs of her on his iPad, she quit her job and went to work for her new employer, Olsman MacKenzie Peacock ("Olsman").

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

6.      With the knowledge, fostering and constructive approval of Olsman, Riley's sexual harassment of McKenna continued and escalated, including crying to her about her setting boundaries; duping her into being alone with him so he could discuss his feelings for her; threatening suicide; persistently contacting her; meddling in her personal and professional life; showing up uninvited; interfering with and sabotaging her work; and stalking McKenna and putting her in great fear for her physical safety.

**ANSWER: Defendant OMP denies "knowledge, fostering, and constructive approval" of any unlawful act by Riley. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations as to Riley's actions towards Plaintiff.**

7.      Throughout McKenna's employment at Olsman, Olsman and Riley regularly communicated with each other about McKenna, and Riley influenced Olsman's decisions regarding McKenna's employment.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

8.      McKenna repeatedly told Riley to leave her alone, but Riley was a man who would not take "no" for an answer.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

9.     The partners of Olsman disregarded McKenna's numerous reports of Riley's unwanted, inappropriate behavior and rejected her requests for help and to not be required to interact with Riley. Olsman warned McKenna that "we keep Bob Riley happy in this office," laughed at her for expressing her fear for her safety as Riley's behavior escalated, told McKenna not to "make a big stink" about it, allowed Riley's gossip to negatively influence McKenna's work conditions, told McKenna to stop talking about Riley, and, ultimately, fired McKenna, in retaliation, two days after she confronted Riley, through counsel, to try and get him to stop.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

10.     Riley and Olsman launched an ongoing concerted effort to ruin McKenna's reputation and destroy her livelihood. They disparaged her to clients and to her colleagues in the legal community, telling them she was "incompetent," having an "emotional breakdown" and "dishonest." They spread rumors about her.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

11.     All the while, Olsman and Riley have continued to mutually benefit from their close and longstanding relationship.

**ANSWER: Defendant OMP admits only that it has a professional relationship with the Riley Defendants. Defendant denies the remainder of the allegations in this paragraph.**

5

12.     As a result of standing up to Riley and Olsman, McKenna was forced to leave the state and had to start her legal career over. Because of Riley's prominent position in the community, McKenna was unable to find legal support in the metro-Detroit legal community that was the center of her once vibrant and promising professional life, and;

**ANSWER: Defendant OMP denies these allegations.**

she was ostracized by Riley's network of loyalists for revealing his misconduct. McKenna now lives in Maryland, in the home of her law partner, where she is trying to rebuild the nine-year career that Riley and Olsman took away from her and put the pieces of her shattered life back together.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of these allegations.**

13.     This action is brought by Plaintiff Elyse McKenna for discrimination, sexual harassment, hostile work environment, disparate treatment, retaliation, and other violations of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e, et seq. ("Title VII"); the Elliott-Larsen Civil Rights Act, as codified, M.C.L. § 37.2101 et seq. ("ELCRA"); and Michigan statutory and common law.

**ANSWER: Defendant OMP admits only that Plaintiff has brought the foregoing legal claims in this case but denies the merit and legal sufficiency of every claim brought against Defendant OMP.**

**PARTIES, JURISDICTION AND VENUE**

6

14.     Plaintiff Elyse McKenna, formerly known as Elyse Heid ("McKenna") is a 31 year-old attorney and is now a resident and citizen of the State of Maryland.

**ANSWER: Defendant OMP admits only Plaintiff's allegations as to her name and age but is without knowledge or information sufficient to form a belief about the truth of her allegations as to her residency and citizenship.**

15.     Defendant Riley & Hurley, PC, ("RH") is a general civil practice law firm and is incorporated in and has its principal place of business in Michigan.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

16.     Defendant Robert Riley ("Riley") is a 70 year-old attorney, the named and managing partner of RH and a resident and citizen of the State of Michigan.

**ANSWER: Defendant OMP admits only that Defendant Riley is an attorney, but is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

17.     William Hurley ("Hurley") is an attorney and a named partner of RH and is a resident and citizen of the State of Michigan.

**ANSWER: Defendant OMP admits only that William Hurley is an attorney, but is without knowledge or information sufficient to form a belief as to the truth as to the remaining allegations in this paragraph.**

18.     Defendant Olsman MacKenzie Peacock, PC ("Olsman") is a metro-Detroit personal injury law firm which is incorporated in and has its principal place of business in Michigan.

7

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

19.     Jules Olsman ("Jules Olsman") is a 71 year-old attorney and named partner at Olsman and is a resident and citizen of the State of Michigan.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

20.     Donna MacKenzie ("MacKenzie") is a 44 year-old attorney and named partner at Olsman and is a resident and citizen of the State of Michigan.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

21.     Emily Peacock ("Peacock") is a 45 year-old attorney and named partner at Olsman and is a resident and citizen of the State of Michigan.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

22.     This Court has personal jurisdiction over the parties to this Complaint.

**ANSWER: The allegations contained in this paragraph assert legal conclusions to which no response is required. To the extent a response is deemed required, Defendant OMP admits only this Court's personal jurisdiction over Defendant OMP, and is without knowledge or information sufficient to form a belief as to the truth as to the allegations as to the other parties to the case.**

23.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has subject matter jurisdiction over this matter, because Plaintiff's claims arise under federal law.

**ANSWER: The allegations contained in this paragraph assert legal conclusions to which no response is required. To the extent a response is**

**deemed required, Defendant OMP admits only that this Court has subject matter jurisdiction over Plaintiff's Title VII claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 and denies that these statutes provide subject matter jurisdiction over Plaintiff's claims arising under Michigan statute and common law.**

24.     Pursuant to 28 U.S.C. §1332(a)(1), this Court also has subject matter jurisdiction over this action, based on diversity of citizenship and an amount in controversy in excess of $75,000.00.

**ANSWER: The allegations contained in this paragraph assert legal conclusions to which no response is required. To the extent a response is deemed required, Defendant OMP denies the allegations in this paragraph.**

25.     Pursuant to 28 U.S.C. §1367, this Court should exercise supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same set of operative facts as Plaintiff's federal claims, such that all claims form part of the same case and controversy.

**ANSWER: The allegations contained in this paragraph assert legal conclusions to which no response is required. To the extent a response is deemed required, Defendant OMP denies the allegations in this paragraph.**

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action occurred in the Eastern District of Michigan.

**ANSWER: The allegations contained in this paragraph assert legal**

9

**conclusions to which no response is required. To the extent a response is deemed required, Defendant OMP denies the allegations in this paragraph.**

## PROCEDURAL BACKGROUND

27.    McKenna exhausted her administrative remedies at the U.S. Equal Employment Opportunity Commission ("EEOC").

**ANSWER: The allegations contained in this paragraph assert legal conclusions to which no response is required. Defendant OMP denies these allegations to the extent that Plaintiff claims disparate treatment under Title VII.**

28.    The EEOC found reasonable cause to believe violations of Title VII occurred.

**ANSWER: Defendant OMP denies this allegation.**

The EEOC issued McKenna a Notice of Right to Sue, which McKenna received on or about October 15, 2024. A true and correct copy of that notification is attached as **Exhibit A**.

**ANSWER: Defendant OMP admits only the existence of a "Dismissal and Notice of Rights" dated October 15, 2024, and denies the remainder of these allegations.**

## FACTUAL ALLEGATIONS

### Riley's Knowledge of the Elements of Sexual Harassment, Discrimination, Stalking.

29.    Riley has served as a mediator, facilitator, and arbitrator in hundreds of civil matters in various areas of law, including complex medical malpractice and personal

10

injury litigation and sex abuse/sex harassment litigation. Of note, Riley served as independent mediator in:

    a.  the UM/Anderson lawsuit involving 1,050 University of Michigan athletes and patients alleging they were sexually abused by Dr. Robert Anderson, a physician at the school;

    b.  the Northwestern University hazing lawsuits by numerous former football players alleging sexualized hazing, racial discrimination, and abuse within the football program; and

    c.  the Eastern Michigan University rape lawsuits by 24 current and former Eastern Michigan students alleging the university and several of its officials covered up students' reports of rape near campus.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

30.    Based on his experience as a lawyer and a mediator, Riley knew or should have known what was inappropriate conduct in the workplace, including conduct that constitutes sexual harassment, sexual discrimination, hostile work environment, disparate treatment in the workplace, retaliation, and stalking.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**July – October 2019: Riley Begins Sexually Grooming McKenna and Lures Her to Quit her Job and Work for Him**.

31.     Riley met McKenna in 2014 at a mediation. McKenna was a 21 year- old law student working as a law clerk at a Troy, Michigan medical malpractice law firm.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

32.     At the time, McKenna, who graduated as valedictorian of her Marine City, Michigan high school at age 17, was on track to graduate from Case Western Law School in 2015 at age 22, as the youngest person in her class.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

33.     While in law school, McKenna was a finalist in the school's moot court competition and won the awards for "best student in trial tactics" and "best litigator." She also was inducted into the Order of the Barristers, a national honor society with membership limited to graduating law students and practicing lawyers who demonstrate exceptional skill in trial advocacy, oral advocacy, and brief writing.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

34.     Between 2014 and the summer of 2019, while working as a law clerk and then as a lawyer, McKenna attended various facilitations that were mediated by Riley.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

35.     In the summer of 2019, Riley commenced an elaborate scheme to sexually

groom and acquire control over McKenna's career. He 1) lured McKenna away from her job as medical malpractice lawyer, 2) worked behind the scenes (and without McKenna's knowledge) to get McKenna several job offers, 3) became McKenna's "mentor" to guide her in her career choices, 4) misrepresented problems in the law firms she was considering to convince McKenna to reject the very job offers he had cultivated, and 5) presented McKenna with an attractive offer to work for his firm, RH, which she ultimately accepted.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

36. In July or August of 2019, an attorney from a respected Southfield, Michigan law firm contacted McKenna and asked if she was interested in a position with the firm. The attorney said she was reaching out based on the recommendation of a well-known attorney.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

37. Around the same time, Riley prompted a mutual professional acquaintance (a hospital claims representative) to contact McKenna and encourage her to leave her current firm. The claims representative told McKenna that Riley had asked her to share his contact information with McKenna. She said Riley had told her he did not want McKenna's current employer to think Riley was trying to "poach" McKenna, but that he would be happy to be a sounding board for McKenna as she made career decisions,

and, furthermore, that he had specific career advice for McKenna.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

38.     Shortly thereafter, McKenna was approached by other law firms, which resulted in job offers for medical malpractice associate positions from four prominent metro-Detroit firms, including the Southfield firm that had reached out to McKenna first, at Riley's suggestion.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

39.     Upon information and belief (but unknown to McKenna at the time), Riley recommended McKenna as a promising young attorney to these and many metro-Detroit law firms in the area.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

40.     Subsequently, Riley reached out to McKenna and invited her to his annual end-of-summer barbeque. The event is regarded as a party for the "who's who" of medical malpractice attorneys in Michigan.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

41.     On September 7, 2019, McKenna attended Riley's barbeque, after which they had numerous conversations regarding McKenna's job offers and career prospects.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

42.     Riley's first piece of advice for McKenna was that she should leave her current employer. He falsely told her the partners of the firm were subverting medical malpractice cases from being directly assigned to her.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

43.     Riley discouraged McKenna from taking any of the job offers that she had received (and, upon information and belief, that he had cultivated), stating that McKenna would not be afforded the opportunities she deserved at these other firms.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

44.     Throughout these early discussions about McKenna's job opportunities, Riley praised McKenna's legal skills and spoke very favorably of her potential, which he often described as being unlimited.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

45.     Riley also implored McKenna to tell him about her upbringing, telling her that he could only determine where she would be a good fit, whether she would make a good attorney, and how much promise she had if she was willing to share intimate details about her childhood and family.

15

**<u>ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.</u>**

46.    After discouraging her from taking a job with any of the other firms, Riley offered McKenna a job with his firm, RH, and coordinated an interview of McKenna by his law partner, Hurley.

**<u>ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.</u>**

47.    After much consideration, McKenna declined Riley's offer and accepted a position with the Southfield firm that had first contacted her. She tendered her notice of resignation to her employer.

**<u>ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.</u>**

48.    When McKenna told Riley of her decision, Riley became very upset with McKenna and cried throughout the meeting. He expressed concern for McKenna's legal career and told her she was making the wrong decision, but he refused to articulate why.

**<u>ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.</u>**

49.    Later that week, Riley asked McKenna and McKenna's then-husband to dinner, during which Riley falsely told them that female attorneys who had worked for the Southfield firm had been raped and sexually assaulted by colleagues. Riley warned McKenna that going to work for that firm would ruin her career.

16

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

50.     Riley also discussed the all-male board of directors at the Southfield firm and said he had a female attorney friend around his age who was a partner at the firm, and she was consistently mistreated and disparately compensated. Riley also discussed that female attorney's female associate, who he stated also was not fairly treated by the firm.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

51.     Riley explained that he had been hesitant to tell McKenna all this upfront, but that he felt he had to tell her once he knew she was making a mistake with her career.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

52.     On September 27, 2019, Riley sent McKenna an unsolicited term sheet detailing, *inter alia*, her potential to become a full owner of his RH law firm at no cost to her, other than recognition of outstanding accounts receivables to RH and existing stock reimbursement.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

53.     Alarmed at what Riley had shared about the Southfield firm, having already

put in her notice at her current employer, recognizing Riley's reputation in the legal field in Michigan, and excited about the opportunity to become a partner in a well-respected law firm in the metro-Detroit area, McKenna changed her mind and accepted Riley's offer of employment.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

54.     What should have been the start of a long and promising career at RH turned into a decision that McKenna will look back on and regret for the foreseeable future.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**October – December 2019: McKenna Begins Work at RH, Riley's Sexual Grooming Continues, and his Sexual Harassment of McKenna Commences.**

55.     On October 21, 2019, McKenna began working at RH.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

56.     RH had no human resources department, and Riley was its majority shareholder and McKenna' only supervisor.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

57.     Over the course of the next several months, Riley sexually groomed

McKenna and insinuated himself into every part of her life. Unlike the way he treated other lawyers in the office, he began a barrage of relentless and unwanted notes, text messages, and phone calls; spent lots of time in her office; left her lavish gifts; required her to attend mandatory monthly dinners with just him at expensive, romantic restaurants; isolated her from her friends and family; shared intimate details about his personal life; tried to kiss her; interrogated her about her personal life; asked her to treat him as her closest confidante; demanded that she be available to him at all times; told her to be happy that he thought about her hundreds of thousands of times per day; told her he loved her and tried to normalize it; sexualized the office environment and tried to normalize it; told her "E & B" was his "dream;" and got angry or intimidating when she failed or refused to reciprocate his affection or otherwise to do as he wanted.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

58.     Riley's behavior eventually escalated to secretly taking photographs of McKenna, secretly researching and collecting information about her online, and secretly saving hundreds of photographs of her on his iPad.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

59.     Riley also gave McKenna numerous gifts, including a pair of roundtrip plane tickets to anywhere in the world, expensive bottles of wine and earrings.

**ANSWER: Defendant OMP is without knowledge or information**

sufficient to form a belief about the truth of the allegations in this paragraph.

60.     McKenna did not know how to respond to Riley's unwanted gifts besides emphasizing to him that they were unnecessary. McKenna never used the plane tickets.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

61.     Sometime in November or December of 2019, Riley insisted on taking McKenna and her mother out to dinner. Following the dinner, McKenna's mother expressed concern regarding Riley's infatuation with McKenna.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

62.     Riley then sent McKenna's mother a card detailing how impressed he was with McKenna and how much he admired her. McKenna's mother again expressed concern that Riley was enamored with McKenna.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

63.     McKenna told her mother that she did not know how to make Riley stop.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**2020: Riley's Behavior Escalates.**

64.     In 2020, the sexual grooming continued, including more romantic hand-

written cards and mandatory dinners. There were at least five such dinners with Riley from January - March of 2020. Riley attempted to kiss McKenna at more than one of these dinners; McKenna physically recoiled from all attempts.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

65.    Beginning February 10, 2020, Riley initiated a two-week long scavenger hunt to celebrate McKenna's birthday. Each day, McKenna found a new birthday card on her desk from Riley with clues for where to find that day's gift. They were typically hidden in Riley's office.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

66.    The COVID-19 pandemic enabled McKenna to work from home, providing a reprieve from Riley's sexual grooming and advances and increasingly threatening behaviors and demands for attention.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

67.    However, a few months into the pandemic, Riley began complaining that he was not seeing enough of McKenna and insisted that she return to the office, which required McKenna to be alone with Riley due to the COVID lockdown.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

68.     Riley also required McKenna to eat dinner with him via Zoom and attend an alone and in-person dinner at his house during the pandemic, at which Riley tried to kiss McKenna when she was leaving, which she again resisted. Riley claimed the dinners would ensure that McKenna was still progressing according to Riley's expectations and "ensure McKenna's success."

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

69.     As the pandemic drew on, Riley became increasingly possessive of McKenna's time, often requiring after-hours Zoom meetings lasting until midnight "to discuss work."

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

70.     When McKenna attempted to end these Zoom meetings at reasonable hours, Riley would threaten McKenna that she wasn't taking the work seriously.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

71.     The work that Riley was requiring be worked on until the early hours of the morning was not pressing or urgent, and Riley would often veer off-topic, sharing personal details with McKenna about his life and his discussions with his therapist, and inquiring about the personal details of McKenna's life and her relationship with her husband at the time.

22

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

72.    On June 16, 2020, Riley sent McKenna the following message:

Good morning ELMH! It is the 16th day of the 6th month of 2020 AD. **I have already thought of you 662,112 times today.** I think I miss you.

Actually, I know I do.

Now that you know too, it can be a great day for both of us. (emphasis added).

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

73.    In the summer of 2020, Riley discussed partnership prospects with McKenna and asked her to personally guarantee a new lease for the RH office building.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

74.    McKenna declined and said she was uncomfortable with that level of financial commitment.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

75.    In furtherance of his sexual grooming, Riley became frustrated at McKenna, questioning her loyalty to him, and the work environment grew increasingly hostile.

**ANSWER: Defendant OMP is without knowledge or information**

**sufficient to form a belief about the truth of the allegations in this paragraph.**

76.    In December of 2020, Riley again gave McKenna numerous additional cards, expensive gifts, and roundtrip plane tickets to anywhere for Christmas. Again, McKenna never used the tickets.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**January - June 2021: Riley Continues to Monopolize McKenna's Personal Time, Again Hints at the Possibility of McKenna's RH Partnership, Then Watches Pornography on His Computer in McKenna's Presence.**

77.    In 2021, Riley required mandatory dinners with just him and McKenna on January 17, January 24, March 30, April 22, June 7. At least some of these dinners, Riley again tried to kiss McKenna when departing, which McKenna physically recoiled from.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

78.    At the April 22, 2021 dinner, Riley again spoke with McKenna about becoming a partner in the firm.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

79.    The sexual grooming continued to escalate. In May of 2021, Riley invited McKenna to his office under the guise of needing McKenna's help with technology issues. When McKenna arrived, Riley was watching pornography on his computer. He made no effort to remove it from view and it was clear he wanted McKenna to see it.

This made McKenna feel uncomfortable. She averted her eyes and left the office as soon as she could.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

80.     Also in May of 2021, McKenna learned that the other RH partner, Hurley, would be slowing down his work. McKenna became concerned she would be working solely with Riley. She did not like being alone with Riley because he would be more likely to try to kiss her and have intimate conversations with her.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

### June 2021 – Mid-August 2021: McKenna Discovers Riley is Taking Surreptitious Photographs of Her and Decides to Leave RH; Riley Choreographs McKenna Getting Hired by Olsman.

81.     In June of 2021, McKenna became increasingly suspicious that Riley was surreptitiously taking photographs of her with his iPad while she was sitting in his office, because she could see a reflection of herself on the iPad screen in the window behind his desk and he always instructed McKenna to sit in the chair that his iPad was facing.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

82.     Because of Riley's increasingly possessive and disparate behavior toward her, McKenna felt extremely threatened and unsafe and knew she could not continue working at RH. She decided to search for employment elsewhere, without informing

Riley.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

83.    When McKenna interviewed prospective employers, she was confronted repeatedly with the question of why she wanted to stop working for such a high profile mediator and lawyer. The attorneys were hesitant to hire McKenna away from Riley and expressed concern that doing so might affect their ability to resolve cases with Riley as their mediator. They wanted Riley's consent.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

84.    McKenna was left with no choice but to inform Riley that she would be leaving his firm. Because she needed Riley's blessing to get hired by other firms, McKenna premised her departure on Hurley's likely retirement and her desire to work for the plaintiff's bar.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

85.    Riley discouraged McKenna from leaving. He insisted RH could continue to pay McKenna's salary while she started her career as a plaintiff's lawyer at RH, even if her only source of revenue came from the hourly rate she was paid by an RH organizational client that Riley and McKenna both represented. Riley also told McKenna that he would return to working as a trial lawyer so that the two of them

26

could be a team and try cases together.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

86.     McKenna felt unsafe and was extremely uncomfortable at the thought of continuing to work with Riley and stressed to him that she wanted to work for a well-established plaintiff's medical malpractice firm where she could learn and grow.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

87.     Reluctantly, Riley encouraged McKenna to explore an opportunity to work for Olsman.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

88.     Riley also assured McKenna that he would not object to her continuing to represent the organizational client after she left RH.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

89.     Recognizing she needed Riley's consent before a prospective employer would hire her, and aware that Olsman was a reputable plaintiff's medical malpractice firm, McKenna agreed to explore the opportunity at Olsman.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

90.     Riley facilitated a meeting between MacKenzie and McKenna, after which McKenna met Jules Olsman, and Olsman offered McKenna a job at $75,000 a year, a significant pay cut for McKenna.

**ANSWER: Defendant OMP admits only that it offered Plaintiff "a job" and that OMP's initial offer was for $75,000. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

91.     When McKenna tried to negotiate a higher salary than offered, MacKenzie told McKenna every lawyer in the office was paid the exact same salary, regardless of experience or contribution, and that increases were made through year- end bonuses in recognition of the attorney's yearly contribution.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

92.     Shortly after this conversation, MacKenzie offered McKenna five thousand dollars more in salary. Riley later told McKenna that he had negotiated this on McKenna's behalf. McKenna did not know about or want this interference by Riley.

**ANSWER: Defendant OMP admits raising its initial salary offer by $5,000. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph.**

93.     McKenna accepted Olsman's offer. She was hopeful that because Olsman represented victims of Larry Nassar and had female partners, they would be in a position to understand the sexual harassment and grooming that McKenna had endured and be

in a position to shield her from more of the same.

**ANSWER: Defendant OMP admits only that Plaintiff accepted an offer of employment made by the firm. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the remainder of these allegations.**

94.    McKenna put in her two weeks' notice at RH at the beginning of August of 2021.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

### August 18, 2021: McKenna Discovers Riley Has a Large Collection of Photographs of Her Saved on His iPad.

95.    On August 18, 2021, McKenna accessed Riley's iPad and found what appeared to be hundreds of photographs of herself - including photographs downloaded off of the internet, taken of her during Zoom calls, taken of her while she was sitting in his office, taken of her walking down the hallway, downloaded from other people's social media accounts, downloaded from McKenna's social media accounts from at least seven years earlier when McKenna was younger, and in countless other situations when McKenna did not know Riley was photographing her.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

### August 20, 2021: Riley Uses His Relationship with the RH Organizational Client to Try to Keep Control Over McKenna at Olsman.

96.    McKenna's last day at RH was on August 20, 2021, two days after she found the photos on Riley's iPad. Riley gave McKenna yet another handwritten card to memorialize the occasion.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

97.    Just before leaving, McKenna received a letter drafted by Riley and signed by the organizational client's Executive Director. The letter stated that, in order for McKenna to continue representing the organizational client at Olsman, as Riley had promised, McKenna would be required to become Riley's independent contractor. The letter was designed to intimidate and force McKenna to continue to be subjected to Riley's sexual harassment, and required that she:

a.  recognize her "continued association with Bob Riley is important;"

b.  "work fully and completely under Bob's guidance and direction;"

c.  work for the organizational client "outside" of her employment with Olsman and only "through Riley & Hurley, P.C.;"

d.  agree that "Bob will serve as your supervisor for all [organizational client] activities, including assignments, projects, meetings, negotiations, etc.;"

e.  prepare all invoices for the client "through Riley & Hurley, P.C.;" and

f.  have all invoices "reviewed and approved by Bob."

**ANSWER: Defendant OMP is without knowledge or information**

**sufficient to form a belief about the truth of the allegations in this paragraph.**

98.     The organizational client was and is an extremely male-dominated organization. McKenna viewed Riley's letter (and his ability to get the Executive Director to sign it) as a clear sign of his disparate treatment of her and hostility toward her because of her rejection of his sexual advances.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**August 20-22, 2021: McKenna Contacts Attorneys to Request Help.**

99.     McKenna felt unsafe and threatened by Riley's secret surveillance of her, his sexual grooming, his attempt to intimidate and control her through the organizational client, and his other conduct.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

100.     McKenna contacted numerous attorneys in Michigan for help. They all told her she had viable sex discrimination claims against Riley and his firm but that they would not represent her because of Riley's prominent status in the legal community.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

101.     One of the attorneys assured McKenna that their communications and the information disclosed to her by McKenna would be kept confidential but said she could not represent McKenna, because she "would not touch Bob Riley with a ten-foot pole."

This attorney further advised McKenna not to file a lawsuit and warned her that if she did file a lawsuit, it would ruin her career. She informed McKenna that, at the very least, McKenna would have to leave the state of Michigan.

**<u>ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.</u>**

**August 22, 2021: McKenna Confronts Riley; Riley Accepts Responsibility for his Conduct and Actions and Promises to Leave McKenna Alone.**

102.    On August 22, 2021 (two days after leaving RH), McKenna confronted Riley about his behavior and actions. She told Riley she would not work in any capacity in which he was her "supervisor" and she would therefore step aside as counsel for the organizational client. She also expressed concern that Riley would retaliate against her for speaking up. McKenna's email to Riley stated as follows:

Bob,

I received the draft agreement regarding my proposed independent contractor status with Riley & Hurley, PC. I cannot agree to this arrangement.

<u>I am aware that you took photographs of me surreptitiously while I was in your office. This is extremely upsetting and inappropriate. This, in conjunction with your other behaviors and actions, including your romantic text messages, letters, and comments, has caused me to feel very uncomfortable and scared. I will not be working in any capacity in which you are my supervisor.</u>

I have attached a memo with the information necessary to transition my current [organizational client] projects and I will reasonably cooperate in transitioning these projects so as to protect the client's interests. Under the circumstances, I felt it better to not record a [organization client] annual meeting video and I leave preparation of such a video to you.

I received the $10,000 personal check from you. In light of this situation, I do

not feel comfortable cashing this check.

I want you to know that I feared speaking up for fear of retaliation due to your status and prominence in the legal field.

I trust that this fear will not be realized.

I have removed the rest of my personal items from the office. I left the laptop on my desk and the keys to the building and the office suite are located in the drawer on the right-hand side of my desk. I trust that we will move on without further complication.

Elyse Heid

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

103.    In his response that same day, August 22, 2021, Riley promised to "step aside as attorney" for the organizational client, rather than continue working for the client without controlling McKenna.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

104.    Riley also promised to "end any and all personal contacts" with McKenna and "make certain" he and McKenna would "have no personal dealings" going forward. He also assured McKenna she would have "nothing to fear" going forward.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

105.    Riley did not keep any of the above promises.

**ANSWER: Defendant OMP is without knowledge or information**

33

**sufficient to form a belief about the truth of the allegations in this paragraph.**

106.   Riley sent a second message later that day, with a "final personal note" of "wrongdoing." This time, Riley stated that he was "very sorry" but that "sorry" was "not enough." He conveyed his "unequivocal acknowledgment" of his "mistakes" and admitted his "mistakes" were "clear" and "unambiguous," and that they could not be "explained away." He admitted, "I am guilty" and that he had "let down" McKenna, and he further acknowledged, "I have frightened you." Riley further "absolutely assure[d]" Mckenna there would be "no retaliation in any manner of form" but said he recognized why his retaliation was a "concern" for McKenna. Riley further stated that he did "not merit forgiveness" and that he would "accept whatever consequences may follow."

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

107.   In the days, months and years that followed, Riley did not act in accordance with the above note of alleged contrition.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

108.   Riley's second email to McKenna of August 22, 2021, was not, as he stated, his "final personal note." Still later on August 22, 2021, Riley sent McKenna a third email.

**ANSWER: Defendant OMP is without knowledge or information**

34

**sufficient to form a belief about the truth of the allegations in this paragraph.**

109.    In the third email, Riley made an emotional plea devoted to his "intentions," his "goals," his "dreams," his expectations, and his desires. He insisted he "never intended" to hurt or harm McKenna and that he "always wanted" the best for McKenna. He claimed that "E&B" (i.e., Elyse & Bob) was his "dream" and that he had been "counting on" a "terrific friendship" with McKenna that would have lasted through his (age 67) and McKenna's (age 26) "remaining lives." Riley used the words, "I failed" six times. He then stated that, "however," what he had done to McKenna (his failure), and indeed, "no failure" could compare to his feelings of "regret." He ended with a perfunctory, "I remain very sorry Elyse."

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

### September 2021: McKenna Starts Work at Olsman, and Olsman Refuses McKenna's Request Not to Have to Work with Riley.

110.    McKenna began working at Olsman in September of 2021.

**ANSWER: Defendant OMP admits this allegation.**

She mistakenly believed she was escaping Riley's harassment and control and would be able to move on with her life and career.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

111.    McKenna told MacKenzie of the email exchange she had with Riley upon

departing RH and the history of sexually harassing conduct that preceded it, and that she wanted to continue to represent the organizational client only because Riley had promised to step aside as that client's attorney.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

112.   During this conversation, McKenna told MacKenzie that she had confronted Riley in writing and that he had acknowledged his inappropriate behavior in writing. MacKenzie told McKenna that she had "balls of steel." She said she wished McKenna had not told her about this, that McKenna was not to tell Jules Olsman (the senior partner in the firm) about it, and that she, MacKenzie, had endured far worse during her legal career.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

113.   McKenna offered to send MacKenzie the emails and the evidence of the photographs, but MacKenzie did not want to see any of it.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

114.   In speaking with MacKenzie, McKenna also asked that she not be forced to mediate cases with Riley.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

115.   McKenna quickly discovered Riley was Olsman's preferred mediator and that she was expected to have a close relationship with him despite informing Olsman of his harassment of her.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

116.    From September 2021 to February 2024, McKenna attempted to appease Olsman while simultaneously keeping her distance from Riley.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

117.    Riley did not keep his promise to step aside as an attorney for the organizational client following a "transition." Accordingly, RH and Olsman decided that the representation of the organizational client would be shared by Olsman and RH, with McKenna assigned to the client on behalf of Olsman.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations as to Riley's "promise" or conduct. Defendant OMP denies the remainder of the allegations in this paragraph.**

118.    This sharing arrangement required McKenna to talk with Riley multiple times per week.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

119.    At Olsman's direction, McKenna's invoices to the organizational client were on Olsman letterhead, and all payments for McKenna's work were deposited in Olsman's bank account.

**ANSWER: Defendant OMP admits only that Plaintiff's invoices to the organizational client were issued on OMP letterhead and that the firm collected payments from the organizational client. Defendant OMP denies the remainder of the allegations in this paragraph.**

37

120.    At first, Riley kept his promise not to have any personal contacts or in-person dealings with McKenna.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

121.    In December of 2021, when Riley learned that McKenna had contracted COVID-19, he broke those promises – sending McKenna a personal email with a New York Times article specifying what to do.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

122.    In May of 2022, Riley broke those promises again.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**May 2022: Riley's Behavior Escalates, and Olsman Again Deliberately Disregards McKenna's Concerns.**

123.    In May of 2022, McKenna attended the State Bar of Michigan Negligence Section meeting in Nashville with her then-husband Brandon Heid ("Heid").

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

124.    MacKenzie and her husband, Brandon MacKenzie, were also in attendance.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

38

125.    Riley also attended the meeting.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

126.    Riley and Olsman are past chairs of the Michigan State Bar Negligence Section, and MacKenzie is the current chair.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

127.    During the meeting, Riley repeatedly tried to have personal and private conversations with McKenna, which McKenna avoided and was threatened by.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

128.    One night at the meeting, the MacKenzies and McKenna and Heid got together in MacKenzie's hotel room to socialize. McKenna and Heid discussed Riley's inappropriate behavior with the MacKenzies, including Riley's refusal to step down from working for the organizational client that Olsman and RH shared, and Riley's continued interest in McKenna despite her many attempts to redirect him.

**ANSWER: Defendant OMP admits only that the MacKenzies socialized with Plaintiff and her ex-husband during the meeting. Defendant OMP denies the remainder of the allegations in this paragraph.**

129.    MacKenzie chose to downplay and do nothing about McKenna's concerns.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

130.    In June of 2022, while trying a case together in Clare County, McKenna

39

informed Emily Peacock about Riley's harassment and refusal to step aside as attorney for the RH/ Olsman organizational client.

**ANSWER: Defendant OMP admits that a case was tried in Clare County in June 2022 and denies the remainder of the allegations in this paragraph.**

131.    Peacock chose to do nothing about McKenna's concerns.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the remainder of these allegations.**

132.    In December of 2022, McKenna and Heid went to MacKenzie's home for dinner with MacKenzie and her husband. MacKenzie congratulated McKenna for her successful year and informed her she would receive a $30,000 end-of-year bonus for 2022.

**ANSWER: Defendant OMP admits only that Plaintiff and Heid went to the Mackenzie's home for dinner in 2022 and that Plaintiff received a $30,000 bonus in 2022. Defendant OMP denies the remainder of the allegations in this paragraph.**

133.    Riley later told McKenna that he advocated for and was responsible for McKenna receiving this bonus.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**January – Spring 2023: Riley's Behavior Continues to Escalate. Olsman Chooses to Disregard McKenna's Concerns and Condones Riley's Behavior.**

134.    In January of 2023, McKenna and Heid decided to get divorced.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

135.    McKenna informed Peacock of this decision.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

136.    In February of 2023, MacKenzie publicly praised McKenna for her work for the firm during MacKenzie's presentation to the 2022-2023 Michigan Association of Justice (MAJ) Leadership Academy Class. MacKenzie showcased a 5-star review that McKenna had received from a client.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

137.    Around this time, McKenna herself graduated from the MAJ Leadership Academy, an intensive, six-session program designed to prepare young MAJ members to assume leadership positions within MAJ or become members of the state legislature or judiciary.

**ANSWER: Defendant OMP admits that Plaintiff graduated from the MAJ Leadership Academy and is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

138.    In March of 2023, McKenna, at Peacock's urging, informed MacKenzie and Olsman of her decision to get divorced.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

139.    Someone at the firm told Riley about McKenna's divorce.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

140.    As a result, Riley attempted again, and more aggressively, to insert himself into McKenna's personal life and sexually groom and harass her, inviting McKenna to Easter at his home. Riley told McKenna he was aware that in previous years she had spent the holiday with Heid's family, suggesting he was doing her a favor by inviting her to spend the holiday with him. Riley also explained that he wanted to apologize for everything he had done. He reiterated his desire to apologize to McKenna in person, face-to-face, and he said he wanted to be McKenna's friend. McKenna felt threatened and promptly declined Riley's invitation.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

141.    Riley became very upset that McKenna declined his invitation and retaliated.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

142.    Shortly thereafter, Riley sent McKenna a racy photograph of a scantily clad brunette woman from ultrafilms.com.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

143.    Appalled and frightened by Riley's actions, McKenna again attempted to

enforce boundaries with Riley and tried to mediate her personal injury cases with other facilitators.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

144.   Because of her efforts to enlist Olsman to rebuff Riley's sexual harassment and stalking, McKenna's employment conditions at Olsman grew increasingly hostile.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

145.   McKenna told Peacock about Riley's Easter invitation and his reaction to her saying no, and that she felt threatened by Riley contacting her. Peacock advised McKenna to "forgive and forget."

**ANSWER: Defendant OMP admits only that Plaintiff told Peacock that Riley invited her to celebrate Easter with his family. Defendant OMP denies the remainder of the allegations in this paragraph.**

146.   Shortly after declining Riley's Easter invitation, McKenna learned that Riley and Olsman had been talking about McKenna, her divorce, and the alleged effects it had on her.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

147.   Olsman informed McKenna that she was no longer permitted to work from home because Riley had told him that McKenna was spending all of her time crying about her divorce. This was not true and was more retaliation by Riley.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

148.   Throughout McKenna's employment at Olsman, other attorneys were regularly granted special accommodations, for the stated reason of stress management, including working from home and taking weeks off at a time. Because of Riley's influence over her job at Olsman, McKenna was treated differently and also was required to take on work that was the responsibility of the attorney who was off work for stress management.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

149.   In the spring of 2023, McKenna was invited to the RH/Olsman organizational client's June 2023 Annual Conference in Orlando, Florida. The conference was mandatory and a requirement of her job to keep and service the organizational client.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations that in spring 2023 she was invited to the organizational client's June 2023 Annual Conference in Orlando, Florida. Defendant OMP denies that the conference was mandatory on the part of OMP or a requirement of Plaintiff's job at OMP and denies that keeping and servicing the organizational client was a requirement of her job at OMP.**

150.   Around this time, in further retaliation and to intimidate McKenna, Riley contacted McKenna and informed her that MacKenzie and Olsman had been talking

negatively about McKenna and that Riley allegedly was preserving her reputation with them. McKenna felt oppressed by Riley's pervasive influence over job.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

151.    When McKenna pressed Riley on what negative comments were supposedly being made and what McKenna had allegedly done wrong, Riley would not say.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

152.    In further effort to intimidate McKenna, Riley encouraged McKenna to reach out to Peacock to seek resolution of negative statements Peacock also allegedly had made about McKenna to Riley.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

153.    In further effort to sexually groom McKenna and remind her of his power over her, Riley informed McKenna that she and he would share a conference room suite at the Annual Conference. Riley assured McKenna that the privacy of their separate hotel rooms would not be compromised by the adjoining conference room. McKenna did not make the hotel arrangements and did not have authority to change them.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

154.   Concerned about this arrangement, when McKenna and Peacock had breakfast together, McKenna informed Peacock of the shared conference room suite and adjoining hotel rooms.

**ANSWER: Defendant OMP admits only that Plaintiff and Peacock had breakfast together in 2023 and that during one such meeting McKenna made reference to hotel room arrangements. Defendant OMP denies the remainder of the allegations in this paragraph.**

155.   McKenna expressed her discomfort with the hotel room arrangement and asked for Peacock's help and advice. Peacock again dismissed McKenna's concerns.

**ANSWER: Defendant OMP admits only that in 2023, Plaintiff made reference to hotel room arrangements in connection with the June 2023 Annual Conference. Defendant OMP denies the remainder of the allegations in this paragraph.**

156.   Immediately following that breakfast, Peacock set up an in-person facilitation with Riley on one of McKenna's cases, to be conducted on April 19, 2023, despite knowing that McKenna felt threatened by this arrangement, and then attended the facilitation with McKenna in an attempt to achieve early resolution.

**ANSWER: Defendant OMP admits only that a facilitation was scheduled in connection with one of Plaintiff's cases for April 19, 2023 and that Peacock attended along with Plaintiff. Defendant OMP denies the remainder of the allegations in this paragraph.**

157.     In the months after Easter, Jules Olsman routinely came into McKenna's office and made intimidating comments regarding Riley such as, "I was talking to Riley about you" and "we keep Bob Riley happy in this office."

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

158.     McKenna continued to repel Riley's advances and tried to navigate his control over her job, but treaded carefully, given that Riley and Olsman had been talking about her; Olsman had acted on Riley's false reports about her; and Olsman had refused to do anything to help her and had urged her to forget what Riley had done, forgive him, move on, and keep him happy.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of Plaintiff's allegation that she "continued to repel Riley's advances". Defendant OMP denies the remainder of the allegations in this paragraph.**

**June 2023: McKenna and Riley Attend the Annual Conference in Orlando, and Olsman Again Dismisses McKenna's Concerns About Riley's Behavior.**

159.     In June of 2023, in the course of her employment, McKenna flew to Orlando to attend the organizational client's mandatory Annual Conference.

**ANSWER: Defendant OMP admits only that in June of 2023, Plaintiff flew to Orlando to attend the organizational client's Annual Conference. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of Plaintiff's allegation that the Annual Conference was "mandatory" in the**

**organizational client's view and denies that it was "mandatory" as to OMP and Plaintiff's employment with the firm. OMP denies that Plaintiff's attendance at the Annual Conference was "in the course of her employment".**

160.   When McKenna discovered that she and Riley were scheduled to be on the same flight, McKenna changed her reservation to avoid contact with Riley.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

161.   On June 14, 2023, in advance of the trip, McKenna and Peacock went to breakfast again. McKenna again expressed concern that she would be sharing a conference room suite with Riley. Peacock told McKenna not to make a big stink about it.

**ANSWER: Defendant OMP admits only that Plaintiff and Peacock had breakfast together in 2023 and that during one such meeting McKenna made reference to hotel room arrangements. Defendant OMP denies the remainder of the allegations in this paragraph.**

162.   Upon arriving in Orlando on June 18, 2023, McKenna checked into her hotel room (part of the adjoining conference room suite arranged by Riley) and confirmed with the hotel receptionist that the door of each hotel room adjoining the conference room could be locked, and that, if locked, the hotel room could not be accessed from the adjoining conference room. Because she was assured she could lock her room from the inside and was worried about the consequences of making a stink

about the room arrangement, McKenna did not ask the client to change her assigned room.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**June 2023: Riley Uses the Adjoining Conference Room to Get McKenna Alone, Cries, Accuses McKenna of Ruining His Life, Suggests He Will Commit Suicide, Repeatedly Tries to Have Personal Contact with McKenna, and Eavesdrops on McKenna's Phone Calls.**

163.    On June 19, 2023, Riley told McKenna that he had set up a meeting for himself, McKenna, and the Executive Director of the organizational client, to take place at 8 pm in the conference room connecting Riley and McKenna's hotel rooms.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

164.    McKenna attended the meeting with Riley. While waiting for the Executive Director to arrive, Riley spoke tearfully about the photographs and McKenna confronting him, accused McKenna of ruining his life, told her that he no longer had the will to live, and requested McKenna's forgiveness.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

165.    McKenna repeatedly told Riley that his behavior made her feel uncomfortable and that it was not fair to blame her for "ruining his life," because all she wanted was for him to stop.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

166.    After an hour of waiting for the Executive Director and listening to Riley, McKenna concluded Riley had lied about there being a meeting scheduled with the Executive Director. She told Riley the Executive Director clearly was not showing up and returned to her room.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

167.    Upon information and belief, the Executive Director was not invited to or expected to attend the meeting.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

168.    The next day, the Annual Conference held a session regarding suicide.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

169.    During this presentation, Riley wrote a note to McKenna insinuating he was threatening suicide; he indicated that he related to the presentation more than she could ever guess and then told her that she would likely never see him again.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

170.    Riley then left the room, and McKenna became concerned he was going

50

to kill himself.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

171.    Following the presentation, Riley and McKenna were to conduct a meeting with the organizational client's executive committee. McKenna attended the meeting. Riley showed up late.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

172.    Riley asked McKenna to dinner numerous times during the Annual Meeting. Each time, McKenna declined and made sure she had dinner plans with other people to ensure her safety.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

173.    McKenna became aware that Riley was listening to her phone calls through the adjoining conference room door. Some of the conversations Riley was eavesdropping on were about his behavior.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**June 2023: McKenna Reports Riley's Behavior to Olsman; Olsman Again Rejects McKenna's Concerns.**

174.    While the Annual Meeting was still ongoing, McKenna called MacKenzie

to give her an update on a case McKenna was handling. During this conversation, McKenna informed MacKenzie of Riley's behavior and her discomfort. MacKenzie laughed it off and encouraged McKenna to get through the trip.

**ANSWER: Defendant OMP admits only that Plaintiff and McKenna spoke by telephone during the Annual Meeting. Defendant OMP denies the remainder of the allegations in this paragraph.**

175.    MacKenzie told McKenna that she did not want to hear any more about Riley.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

**June 2023: Riley Stalks McKenna All Night.**

176.    On the final night of the Annual Meeting, McKenna and Riley attended the closing dinner with the other meeting attendees.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

177.    McKenna left the banquet hall following dinner.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

178.    Riley called McKenna's cell phone repeatedly, accusing her of scaring him because she had left.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

52

179.   McKenna informed Riley that she was fine and asked him to leave her alone.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

180.   Over the next several hours, Riley continued to call and text McKenna, insisting that he needed to talk to her.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

181.   McKenna returned to her hotel room and locked the door.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

182.   Riley then showed up outside of McKenna's hotel room, knocking on the door and calling her cell phone repeatedly. He insisted that he wanted to speak to her.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

183.   McKenna told Riley, via text message from the other side of her door, that she wanted him to leave her alone.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

184.   Riley continued to try and force a confrontation, texting and calling McKenna repeatedly while standing outside of McKenna's hotel room door, where he

remained for hours.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

185.    When McKenna looked out of the peephole on the hotel room door, she saw Riley remaining outside of her door. She felt trapped and threatened and became fearful for her safety and desperate that Riley would not leave her alone.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

186.    McKenna called a mental health hotline to ask for help with handling Riley.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

187.    McKenna was scheduled to share a car with Riley to the airport the following morning. Instead, she changed her schedule to depart earlier, avoiding further interaction with Riley. The new flight required her to depart the hotel at approximately 5:00 am.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

188.    In order to access the elevators or staircase to get to the lobby entrance, where her Uber was picking her up to bring her to the airport, McKenna had to walk past Riley's hotel room.

**ANSWER: Defendant OMP is without knowledge or information**

**sufficient to form a belief about the truth of the allegations in this paragraph.**

189.    Riley's hotel room door was propped open with a shoe, and she could clearly see Riley asleep in an armchair that he had positioned to face the hallway.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

190.    McKenna walked quickly and quietly by Riley's room, trying not to wake him, and took the elevator to the lobby where she met her Uber.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**June – July 2023: McKenna Again Informs Olsman of Riley's Behavior and That It Makes Her Uncomfortable; Olsman Chooses to Do Nothing About Her Concerns.**

191.    Following the Annual Meeting in Orlando, McKenna had a conversation with MacKenzie. McKenna explained the terrifying stalking incident and again expressed that she did not feel comfortable mediating cases with Riley due to his sexually harassing behavior. MacKenzie again dismissed McKenna's concerns; it was clear to McKenna that MacKenzie was annoyed at McKenna for making this report.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

192.    Approximately a month after the Annual Meeting, McKenna had a facilitation scheduled with Riley, which McKenna attended via phone because she was uncomfortable attending via Zoom, given that Riley had previously secretly captured photographs of her via Zoom.

**ANSWER: Defendant OMP admits only that in July 2023 Plaintiff had a facilitation scheduled with Riley and is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

193.   McKenna spoke with MacKenzie about the facilitation beforehand and expressed her continued discomfort in having any contact with Riley. MacKenzie again dismissed her concerns.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

194.   Around this time, McKenna, sensing MacKenzie's growing hostility towards McKenna for her continuing complaints about Riley, set up a lunch with Olsman and suggested that McKenna stop working for the organizational client so that she could devote her entire time to medical malpractice and nursing home abuse cases. Olsman told McKenna that it was a terrible idea to give up a client that lauded her and that Olsman was enjoying McKenna's success with Riley.

**ANSWER: Defendant OMP admits only that Plaintiff and Jules Olsman attended lunch in 2023. Defendant OMP denies the remainder of the allegations in this paragraph.**

195.   McKenna came to the realization that her work environment would continue to become increasingly hostile if she kept asking Olsman to help her, and that she would need an attorney to confront Riley and/or explain her legal rights to MacKenzie and Olsman to get anything to change and again consulted numerous attorneys.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations about her "realizations", thoughts, perceived "needs" or "legal rights", and alleged consultation with "numerous attorneys". Defendant OMP denies the remainder of the allegations in this paragraph.**

196.   The attorneys McKenna consulted would not take her case due to Riley's prominent status in the legal field.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

197.   In August of 2023, Michigan SuperLawyers announced that McKenna had been selected to its "Rising Stars" list. No more than 2.5 percent of attorneys in Michigan are selected to receive this honor.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

**September 2023: Riley Again Refuses to Respect McKenna's Boundaries and Cries About McKenna Hurting His Feelings; McKenna Again Asks Riley to Leave Her Alone.**

198.   McKenna and Riley were required by the RH/Olsman organizational client to attend a workers' compensation conference in Niagara-on-the-Lake in early September of 2023.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

199.   Riley changed his flight itinerary to be on the same flight as McKenna

(Detroit to Buffalo).

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

200.    Riley orchestrated for McKenna and him to drive together in a rented car for a two-and-a-half-hour trip from Buffalo to Niagara-on-the-Lake. This was done without McKenna's consent.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

201.    During this drive, Riley again became tearful and insisted that McKenna's behavior hurt his feelings. McKenna told Riley she needed to be left alone and again reiterated that their relationship is a professional one. McKenna also told Riley that he made her feel uncomfortable with his behavior during the Orlando conference and the photographs and romantic overtures, and that he had told her that he was stepping down from representing the shared organizational client back in 2021, yet he still had not done so.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

202.    Riley specifically asked McKenna what she wanted from him, and McKenna stated that she would either stop working for the RH/Olsman organizational client or he needed to stop working for the client because he would not leave her alone and his feelings for her were not reciprocal.

58

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

203.    During the conference, Riley retaliated against McKenna for insisting that Riley keep his promise and respect her boundaries and stop harassing her. McKenna and Riley gave a presentation. Despite an agreement as to how the portions of the presentation would be handled, Riley presented McKenna's portions and then disparaged her to the Executive Director following the presentation.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

204.    At the end of the Niagara-on-the-Lake conference, Riley again agreed to step down from working for the shared organizational client and told McKenna she would never hear from him again.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

205.    Instead of stepping down, Riley again interfered with McKenna's employment. McKenna was identified as the point of contact to meet with workers' compensation lawyers from each state. On a call shortly after the conference, McKenna was questioned by the client's Executive Director about the meetings she had conducted related to this task. He asked why she was doing this work. She indicated that she had set up the meetings at Riley's direction. Riley, who was also on the call, lied and said he had not directed McKenna to set up the meetings. Riley then suggested that another

59

attorney take on the task, a male, despite the fact that the other attorney billed a higher hourly rate than McKenna and had no experience doing this type of work for the organizational client.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

206.   Riley's efforts to sabotage McKenna were effective. The Executive Director later called McKenna to discuss lightening her workload after being told by Riley that she was having an "emotional breakdown" because of her divorce, which was false. The Executive Director also questioned McKenna about her dating life in light of information provided to him by Riley.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

207.   McKenna became increasingly concerned that instead of stepping down, Riley was using his power and influence to have her fired from representing the organizational client. A significant portion of the income McKenna (now divorced) generated for Olsman came from the organizational client, which affected McKenna's year end bonus on her $80,000 salary.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations as to her "concerns". Defendant OMP admits only that all fees generated by Plaintiff impacted her year-end bonus, and denies the remainder of the allegations in this**

**paragraph.**

208.   McKenna again reached out to additional attorneys to ask if they would be willing to help her in her case, but upon learning the case was against Riley, those attorneys, like the others, refused to help given his status and prominence in the legal field.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**October 25, 2023: McKenna Continues to Ask Riley to Leave Her Alone; Riley Responds with Veiled Threats About his Power Over McKenna.**

209.   McKenna had a meeting with Riley on October 25, 2023 in another attempt to confront him regarding his sexually harassing behavior and with the hope of getting him to stop.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

210.   At the meeting, McKenna again explained to Riley that his inappropriate behavior made her feel uncomfortable and she could not continue to work with him.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

211.   McKenna told Riley she could not trust his word because he had agreed to step down from representing the RH/Olsman organizational client on numerous occasions but still had not done so.

61

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

212. Riley responded with veiled threats, mentioning numerous facets of McKenna's employment and life that Riley could control or influence, including:

a. whether McKenna would receive a year-end bonuses from Olsman (Riley told her he was responsible for McKenna receiving the $30,000 bonus in 2022);

b. whether McKenna would get a raise in her hourly billing rate with the organizational client (Riley told her he was responsible for McKenna getting a previous raise);

c. whether Riley would continue representing the organizational client (Riley told her he would not step down after all and would continue to represent the client);

d. what Riley could do with the photographs he had secretly taken of McKenna (Riley told her had destroyed them);

e. Riley's conversations with Olsman and MacKenzie about her (Riley told McKenna he had tried to have "positive" conversations with them about her);

f. Riley's general position of power over McKenna and his ability to interfere with her career;

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph or any of its subparts.**

213.   Following the conversation, McKenna realized she would have to continue to work with Riley if she continued to work at Olsman or continued to represent the organizational client.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations as to her "realizations". Defendant OMP denies that working with Riley or the organizational client were terms and/or conditions of her employment.**

214.   During this time, the partners at Olsman increasingly alienated McKenna.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

215.   McKenna began exploring potential career opportunities with other law firms and businesses, so as to get herself away from Riley and her hostile work environment.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

216.   All of the in-state opportunities McKenna found had ties to Riley and some made it clear that mediating cases with Riley would be a condition of McKenna's employment.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

217.   McKenna did not want to walk away from nine years of practicing and learning medical malpractice law in Michigan. Her passion is representing clients in

medical malpractice cases and standing up for those who need representation.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

218.   McKenna began seriously contemplating how she was going to continue to represent medical malpractice clients in Michigan. McKenna also understood that practicing medical malpractice law or any type of law in another state would not only require getting licensed in that state but also learning the legal technicalities of that particular state.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**December of 2023: Olsman Retaliates Against McKenna for Voicing Her Concerns About Riley's Behavior and Revokes Her Earned Year-End Bonus.**

219.   Conditions at Olsman became more hostile. It became clear to McKenna that Riley and partners of Olsman were routinely discussing her. MacKenzie, in particular, was openly hostile toward and easily angered by McKenna.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

220.   In December of 2023, McKenna learned from the accountant at Olsman that she would not receive an annual bonus.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

221.   Bonuses were earned when an attorney had accrued enough fees to cover their base salary.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

222.   Earlier in 2023, McKenna received an accounting report that showed she was on track to earn an end-of-year bonus based on case settlements alone. In December 2023, McKenna received an updated accounting that looked completely different from prior accountings, and which reflected that she would not receive a bonus.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

223.   This came as a shock to McKenna in light of the end-of-year bonuses paid to her in 2021 and 2022. In December of 2021, she received a $5,000 bonus despite having started working for Olsman in September 2021 and having only two cases in litigation and no settlements. In December of 2022 she received a $30,000 bonus based on her share of settlements in cases she personally managed, settlements in cases which she provided support to Olsman, and the money she brought into the firm from her hourly billings to the organizational client.

**ANSWER:  Defendant  OMP  is  without  knowledge  or  information sufficient  to  form  a  belief  about  the  truth  of  Plaintiff's  allegations  as  to  what "came as a shock" to her. Defendant OMP admits only that Plaintiff received a $5,000 bonus in 2021 and a $30,000 bonus in 2022. Defendant OMP denies the remainder of the allegations in this paragraph.**

224.   In 2023, McKenna more than doubled her settlements as well as her hourly billings, yet she did not receive a bonus.

**ANSWER: Defendant OMP admits only that Plaintiff did not earn a bonus in 2023. Defendant OMP denies the remainder of the allegations in this paragraph.**

225.    McKenna also did not receive a raise at any time during her employment at Olsman.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

226.    With the lack of a bonus from Olsman and the increasingly hostile work environment, McKenna became increasingly anxious to find employment that would not require her to work with or appease Riley.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations as to whether she "became increasingly anxious to find employment". Defendant OMP admits only that Plaintiff did not receive a bonus for the year 2023 and denies that there was an increasingly hostile work environment.**

227.    Concerned about her future with Olsman, and scared about how she would navigate stepping down from the RH/Olsman organizational client without further upsetting Olsman, coupled with fear and concern about how she would get Riley to leave her alone, McKenna finally found two attorneys to help her confront Riley.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**January of 2024: Olsman Changes the Rules on Bonuses After McKenna's**

### Increased Complaints about Riley

228.   On or around January 22, 2024, McKenna attended a scheduled meeting with partners MacKenzie and Peacock. McKenna presented them with her caseloads and annual bonuses over the prior two years. MacKenzie and Peacock said they were changing the bonus rules, that her work for the RH/Olsman organizational client that McKenna brought to the firm would no longer contribute to her bonus calculation the way it had the year prior.

**ANSWER: Defendant OMP admits only that MacKenzie and Peacock attended a meeting with Plaintiff in January 2024. Defendant OMP denies the remainder of the allegations in this paragraph.**

229.   MacKenzie and Peacock gave no business reason for this sudden change in how bonuses were calculated. Upon information and belief, the change was a result of McKenna's complaints that she was continuing to have to work with the man who had been sexually harassing and stalking her.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

230.   McKenna expressed concern that her complaints about Riley's sexual harassment were negatively affecting how she was being treated at Olsman. McKenna also expressed her fear of confronting Riley because of the ramifications it may have on her with Olsman.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

231.   MacKenzie got angry and insisted McKenna's treatment had nothing to

do with Riley and that she, MacKenzie, had never stood in the way of McKenna confronting him. MacKenzie further encouraged McKenna to do what she felt she had to do.

**ANSWER: Defendant OMP denies that MacKenzie became angry and admits the remainder of the allegations in this paragraph.**

232.    On or around January 29, 2024, McKenna and MacKenzie met to discuss McKenna's caseload. MacKenzie assigned new cases to McKenna. She also instructed McKenna to start learning about nursing home audit trails and begin drafting templates that could be used to request records in future cases.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

**January 31, 2023 – February 16, 2024: McKenna's Attorneys Confront Riley, Olsman Fires McKenna In Retaliation, and Olsman and Riley Tell Clients that McKenna is "Incompetent."**

233.    On January 31, 2024, McKenna's attorneys confronted Riley about his behavior and conduct toward McKenna.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

234.    On or around February 3, 2024, although she feared termination, McKenna informed Olsman's partners in writing that she had confronted Riley, through counsel, about his sexual harassment of her.

**ANSWER: Defendant OMP admits only that on February 3, 2024 Plaintiff advised OMP in writing of her claim that she experienced sexual harassment**

**while working for Riley, and that she had addressed Elliott-Larsen claims to him through counsel in confidence. Defendant OMP denies the remainder of the allegations in this paragraph.**

235.   On Sunday, February 4, 2024, MacKenzie, on behalf of Olsman, immediately terminated McKenna's employment.

**ANSWER: Defendant OMP admits only that on February 4, 2024, it accepted Plaintiff's February 3, 2024 resignation. Defendant OMP denies the remainder of the allegations in this paragraph.**

236.   Olsman's termination letter stated that its decision to fire McKenna was made due to "grave concerns" about McKenna's "honesty, integrity and judgment." Olsman defended Riley and made statements (intended to justify McKenna's termination) regarding McKenna's personal life, an alleged "romantic" relationship, and her divorce. Olsman acknowledged McKenna's reporting of the sexual harassment that she had endured at the hands of Riley.

**ANSWER: Defendant OMP admits that its decision to accept Plaintiff's resignation was due grave concerns that Plaintiff's conduct, including several specific instances enumerated in the letter, demonstrated a lack of honesty, integrity and judgment. Defendant OMP denies that it terminated Plaintiff's employment. Defendant OMP admits that its letter to Plaintiff enumerated several performance and conduct issues underlying its decision to accept Plaintiff's resignation, including but not limited to that: (a) despite receiving**

**multiple warnings that her out of state travel in 2023 was excessive, Plaintiff travelled to several events based on a romantic relationship she claimed to be having with a member of AAJ at the firm's expense; (b) Plaintiff later attempted to justify her 2023 travel by stating that it was her main source of socialization after her divorce; (c) despite these issues, requested that the firm fund a 2024 travel schedule that included five multi-day, out of town trips within six months, a number of which were not relevant to the firm's practice area and had no demonstrated benefit to the firm; and (d) Plaintiff failed to advise the firm she was running for office at the 2023 AAJ Annual Convention, falsely informed the firm that her opponent failed to timely announce her candidacy, and violated a pact with her opponent leading to her opponent's refusal to let Plaintiff drop out of the race and support Plaintiff's future candidacy, all of which were inconsistent with the firm's values and which negatively impacted its reputation. Defendant OMP denies the remainder of the allegations in this paragraph.**

237.   McKenna made a decision to start a firm with a friend, attorney Amanda Fox Perry. Fox McKenna, PLLC is based in the District of Columbia, with an office in Michigan.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

238.   McKenna subsequently contacted her clients to inform them of her departure from Olsman and her plan to start a firm in the near future. She informed

them of their right to either stay with Olsman, discharge Olsman and retain her new firm, or discharge Olsman and retain any other attorney.

**ANSWER: Defendant OMP denies that any of the clients Plaintiff contacted were her clients. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph.**

239.   Numerous clients elected to transition with McKenna, including the organizational client.

**ANSWER: Defendant OMP admits only that a few clients elected to transition with McKenna and denies the allegations in this paragraph.**

240.   Olsman then contacted a number of the clients that had chosen to move with McKenna and informed them that McKenna had been terminated from Olsman because she was "incompetent," and that McKenna did not have a firm or the resources with which to continue their representation, causing some of the clients to change their minds and go back to Olsman.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

241.   On information and belief, Olsman made similar statements to other clients.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

242.   Many of the cases McKenna was handling at the time of her termination and stayed with Olsman have since been settled. Had McKenna not been terminated or

71

subjected to a hostile work environment, she would have received bonus pay based on these and other matters and continued to increase her annual income.

**ANSWER: Defendant OMP admits only that some of the cases McKenna was handling and/or assisting with at the time of her termination have since been settled. Defendant OMP denies that Plaintiff would have received bonus pay based on these and other matters.**

243.   On or around February 16, 2024, the organizational client contacted McKenna and threatened to terminate her, citing false comments Riley had made regarding McKenna's competence and emotional well-being. McKenna defended herself and was essentially placed on probation.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**April 2024: McKenna Moves to Maryland**

244.   In late April of 2024, her career as a plaintiff's medical malpractice attorney ruined and her reputation tarnished in her home state of Michigan, McKenna moved to Maryland, away from her family, friends, professional ties, and connections.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

245.   McKenna's has no choice but to remain in Maryland.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

246.   Riley has reached out to McKenna on numerous occasions, asking where

she is living and where she intends to live.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

247.   Riley's questioning regarding McKenna's whereabouts, in light of her many requests to Riley that he leave her alone, is threatening, inappropriate, wrong, and a continuation of his stalking and sexually harassing behavior.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**June 2024: McKenna and Riley Attend the RH/Olsman Organizational Client's Annual Meeting in Orlando.**

248.   In June of 2024, the organizational client required Riley and McKenna's attendance at the Annual Meeting in Orlando, Florida.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

249.   McKenna's new law partner attended the conference with her as McKenna did not feel safe attending the conference alone, given Riley's behavior.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

250.   During the conference, Riley repeatedly tried to speak with McKenna in private.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

251.   Riley expressed remorse regarding his prior conduct and promised McKenna that he would act differently going forward, including that he would not make negative representations and comments regarding McKenna to the RH/Olsman organizational client.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

252.   McKenna maintained repeatedly that she needed Riley to leave her alone.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

253.   No matter, Riley continued to contact McKenna and shower her with compliments regarding her work performance and her legal knowledge, while simultaneously disparaging her to her colleagues and client behind her back.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

254.   Following this meeting, Riley also offered to mediate McKenna's fee disputes with Olsman MacKenzie Peacock.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**Ongoing: Olsman and Riley Continue to Act in Concert to Disparage McKenna.**

255.   Since this action was filed, Olsman continues to routinely facilitate cases

with Riley.

**ANSWER: Defendant OMP admits only that it has facilitated cases with Riley since this action was filed.**

256.    Since this action was filed, Olsman continues to support and speak highly of Riley in the legal community.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

257.    Since this action was filed, Olsman and Riley continue to mutually benefit from their close and longstanding relationship.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

258.    Since this action was filed, Riley has finally stepped down as counsel for the organizational client.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

259.    Riley and Olsman have an ongoing concerted effort to destroy McKenna's reputation and livelihood. They routinely disparage her to her colleagues in the legal community with falsehoods, telling them, for example, that McKenna had an "emotional breakdown" and is "dishonest." Gordon has told the media McKenna's lawsuit is a "sham," and has called McKenna "looney tunes."

**ANSWER: Defendant OMP denies Plaintiff's allegations as to the firm's actions. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations as to Riley's actions. Defendant**

**OMP admits that Gordon characterized Plaintiff's lawsuit as a "sham", but is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's other allegations regarding Gordon's statement/s.**

260.    Olsman also is engaged in retaliatory, harassing, bad faith litigation against McKenna in several state court "lien" actions for attorney fees earned in the few cases McKenna kept after Olsman terminated her. Riley's counsel has attended at least one of the state court hearings and also has threatened retaliatory litigation against McKenna.

**ANSWER: Defendant OMP admits only that it is engaged in legitimate and lawful state court litigation with McKenna regarding disputed attorney fees, and that Riley's counsel has attended at least one of the state court hearings. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations concerning litigation Riley's counsel has proposed against Plaintiff. Defendant OMP denies all other allegations in this paragraph.**

261.    Olsman recently retained the President of the State Bar of Michigan to sign and publish a document, written by Olsman, that falsely accuses McKenna of dishonesty. The document alleges McKenna "resigned" from Olsman and that "McKenna's claim that she was somehow improperly dismissed by Olsman is false and should be regarded by this Court as violative of MRPC 3.3, which prohibits an attorney from either making a false statement of material fact or law to a Court. MRPC 3.3(a)(3)

specifically prohibits an attorney from offering evidence that he or she knows is false."

**ANSWER: Defendant OMP admits only that it retained Larry Nolan to represent the firm in a state court proceeding regarding attorney fees, and that OMP's court filings in that proceeding speak for themselves. Defendant OMP denies the remainder of the allegations in this paragraph.**

**COUNT I**
**Elliott-Larsen Civil Rights Act**
**Sexual Harassment/Hostile Work Environment**
*Riley Defendants*

Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER: Defendant OMP incorporates by reference its answers to all preceding paragraphs.**

262.   Defendant Riley is liable for his negligent or intentional acts, and, as Defendant Riley's employer, Defendant Riley & Hurley is directly or vicariously liable for the negligent or intentional acts of Defendant Riley, as Defendant Riley at all times material hereto was an agent, partner and majority shareholder at Defendant RH.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

263.   From September of 2019 to September of 2021, Plaintiff was an employee, and Riley Defendants were employers covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

**ANSWER: Defendant OMP is without knowledge or information**

**sufficient to form a belief about the truth of the allegations in this paragraph.**

264.   From September of 2021 to February 4, 2024, Plaintiff was an individual and an employee, and Riley Defendants were employers covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, and Riley Defendants affected or controlled a term, condition, or privilege of Plaintiff's employment at Defendant Olsman, including but not limited to compensation, evaluation, terms and conditions of client relationships, work from home privileges, travel, and/or termination, covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

265.   During the course of McKenna's employment with Defendants, Defendants Riley subjected Plaintiff to unwanted comments, speech, touching, grooming, and other actions of an offensive and sexual nature, and by his words and conduct, explicitly or implicitly made Plaintiff's submission to the same a term or condition of her employment.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

266.   Defendant Riley's treatment of Plaintiff was different than the treatment of other attorneys in the office.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

78

267.    Plaintiff was highly qualified for her jobs with Defendants and was a member of a protected class.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations as to her qualifications for employment with the Riley Defendants.**

268.    Defendant Riley's treatment of Plaintiff was severe and/or pervasive and created an intimidating, hostile, abusive and offensive work environment.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

269.    Defendant Riley's unwanted conduct and communications were on the basis of and because of Plaintiff's sex.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

270.    Defendant Riley's unwelcome comments and conduct were intentional and willful, in deliberate disregard of, and with reckless indifference to the rights and sensibilities of Plaintiff.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

271.    As a direct and proximate result of Riley Defendants' unlawful conduct described above, the terms, conditions, and privileges of Plaintiff employment were adversely affected.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

272.   As a further direct and proximate result of Riley Defendants' unlawful actions against Plaintiff as described, she has suffered and will continue to suffer in the future, injuries and damages, including, but not limited to, loss of earnings and earning capacity, mental and emotional distress, including severe anxiety and mental anguish, humiliation and embarrassment, loss of professional and personal reputation, physical distress, loss of the ordinary pleasures of everyday life.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## COUNT II
### Elliott-Larsen Civil Rights Act
### Sexual Harassment/Hostile Work Environment
*Defendant Olsman*

Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER: Defendant OMP incorporates by reference its answers to all preceding paragraphs.**

273.   Defendant Olsman is vicariously liable for the negligent or intentional acts of all of its partners, including but not limited to MacKenzie, Jules Olsman, and Peacock.

**ANSWER: The allegations contained in this paragraph assert legal conclusions to which no response is required. To the extent a response is**

**deemed required, Defendant OMP denies the allegations in this paragraph.**

274.   From September of 2021 to February of 2024, Plaintiff was an employee and Defendant Olsman was an employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

275.   Plaintiff was highly qualified for her job and a member of a protected class.

**ANSWER: Defendant OMP denies that Plaintiff was highly qualified for her job, and admits that she was a member of a protected class.**

276.   During the course of her employment, Plaintiff informed MacKenzie and Peacock of the sexually harassing and grooming conduct by Defendant Riley and requested relief from his conduct and presence, but Defendant Olsman explicitly or implicitly made continued contact and dealing with Defendant Riley's sexually harassing and grooming conduct a condition of Plaintiff's employment with Defendant Olsman.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

277.   Based on its knowledge, Defendant Olsman could choose to protect its employee, Plaintiff, or use that knowledge to its advantage. Rather than protect its employee, Defendant Olsman chose the latter.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

278.   Upon information and belief, Defendant Olsman was aware of Defendant Riley's sexual infatuation with Plaintiff and hoped to use that to gain an advantage in mediating cases and otherwise.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

279.    Defendant Riley's unlawful mistreatment of Plaintiff was severe and/or pervasive and requiring Plaintiff to continue to work with Defendant Riley created an intimidating, hostile or offensive work environment while she was at Defendant Olsman.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

280.    Defendant Olsman's requirement that Plaintiff continue to work with, take out of town trips with and even stay in the same hotel with the man who it knew was sexually grooming, harassing and stalking her constituted an adverse action under circumstances that give rise to an inference of unlawful discrimination.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

281.    Defendant Olsman's conduct was on the basis of and because of Plaintiff's sex.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

282.    Defendant Olsman's actions and inactions were intentional, willful, in deliberate disregard of, and with reckless indifference to, the rights and sensibilities of Plaintiff.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

283.    As a direct and proximate result of Defendants Olsman's unlawful conduct described above, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

284.   As a further direct and proximate result of Defendants' unlawful actions against Plaintiff as described, she has suffered and will continue to suffer in the future, injuries and damages, including, but not limited to, loss of earnings and earning capacity, mental and emotional distress, including severe anxiety and mental anguish, humiliation and embarrassment, loss of professional and personal reputation, physical distress, loss of the ordinary pleasures of everyday life, reasonable attorney's fees and costs incurred in this litigation, and any other compensatory and equitable damages that the Court deems appropriate.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

## COUNT III
### Elliott-Larsen Civil Rights Act Retaliation and Retaliatory Harassment
*All Defendants*

Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER: Defendant OMP incorporates by reference its answers to all preceding paragraphs.**

285.   Defendant Riley is liable for his negligent or intentional acts, and, as Defendant Riley's employer, Defendant Riley & Hurley is directly or vicariously liable for the negligent or intentional acts of Defendant Riley, as Defendant Riley at all times material hereto was an agent, partner and majority shareholder at RH.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

83

286.    Defendant Olsman is vicariously liable for the negligent or intentional acts of all of its partners, including but not limited to MacKenzie, Jules Olsman, and Peacock.

**ANSWER: The allegations contained in this paragraph assert legal conclusions to which no response is required. To the extent a response is deemed required, Defendant OMP denies the allegations in this paragraph.**

287.    The Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, prohibits retaliation against an employee for engaging in activity protected under the Elliott-Larsen Civil Rights Act.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

288.    Plaintiff engaged in activity protected under the Elliott-Larsen Civil Rights Act, including but not limited to the reporting of, opposition to and confronting of the unlawful sexual harassment and grooming committed by Defendant Riley and repeatedly requesting that Defendant Riley stop or be stopped and/or the Plaintiff be protected from his conduct.

**ANSWER: Defendant OMP denies the allegations in this paragraph to the extent that they allege Plaintiff engaged in protected activity while she was a prospective employee or employee of OMP. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations as to Riley's conduct while she was an employee of the Riley Defendants.**

289.    Defendants were aware of and constantly updated on Plaintiff's concerns and opposition to Defendant Riley's sexual harassment and failed to act to stop the harassment.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

290.    Plaintiff's rejection and confrontation of Defendant Riley about his harassing and discriminatory behavior did not make it stop, but resulted in retaliation, during and after Plaintiff's employment, which adversely affected her career and ability to make a living.

**ANSWER: Defendant OMP denies the allegations in this paragraph to the extent that they are alleged against OMP. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations to the extent they are alleged against the Riley Defendants.**

291.    Defendants have continued to retaliate against and disparage Plaintiff and her abilities as a result of her opposing harassment and confronting Defendant Riley and asserting her rights to legal redress in this lawsuit.

**ANSWER: Defendant OMP denies the allegations in this paragraph to the extent that they are alleged against OMP. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations to the extent they are alleged against the Riley Defendants.**

292.    Defendants are liable under the ELCRA for retaliation based on sex and retaliatory harassment.

**ANSWER: Defendant OMP denies these allegations to the extent they are alleged against OMP. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations to the extent they are alleged against the Riley Defendants.**

293.    Plaintiff's rejection of and opposition to the unlawful sexual harassment and discriminatory behavior of Defendant Riley resulted in adverse employment action and including having to leave her employment and then, years of continued severe and pervasive retaliation and retaliatory harassment.

**ANSWER: Defendant OMP denies these allegations to the extent they are alleged against OMP. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations to the extent they are alleged against the Riley Defendants.**

294.    Defendants' failure to stop the offensive conduct and retaliation actions were willful, deliberate, and intentional.

**ANSWER: Defendant OMP denies these allegations to the extent they are alleged against OMP. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations to the extent they are alleged against the Riley Defendants.**

295.    The injuries to Plaintiff that arose as a consequence of Defendant Riley's conduct were foreseeable and intentionally caused by the Defendant.

**ANSWER: Defendant OMP denies these allegations to the extent they are**

86

**alleged against OMP. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations to the extent they are alleged against the Riley Defendants.**

296.   Plaintiff's protected activity was a significant factor in Defendants' retaliation and retaliatory harassment.

**ANSWER: Defendant OMP denies these allegations to the extent they are alleged against OMP. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations to the extent they are alleged against the Riley Defendants.**

297.   As a further direct and proximate result of Riley Defendants' unlawful actions against Plaintiff as described, she has suffered and will continue to suffer in the future, injuries and damages, including, but not limited to, loss of earnings and earning capacity, mental and emotional distress, including severe anxiety and mental anguish, humiliation and embarrassment, loss of professional and personal reputation, physical distress, loss of the ordinary pleasures of everyday life, reasonable attorney's fees and costs incurred in this litigation, and any other compensatory and equitable damages that the Court deems appropriate.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in that they are alleged against the Riley Defendants.**

## COUNT IV
## Elliott-Larsen Civil Rights Act Discrimination
### *All Defendants*

298.    Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER: Defendant OMP incorporates by reference its answers to all preceding paragraphs.**

299.    Defendant Riley is liable for his negligent or intentional acts, and, as Defendant Riley's employer, Defendant Riley & Hurley is directly or vicariously liable for the negligent or intentional acts of Defendant Riley, as Defendant Riley at all times material hereto was an agent, partner and majority shareholder at Defendant RH.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

300.    Defendant Olsman is vicariously liable for the negligent or intentional acts of all of its partners, including but not limited to MacKenzie, Jules Olsman, and Peacock.

**ANSWER: The allegations contained in this paragraph assert legal conclusions to which no response is required. To the extent a response is deemed required, Defendant OMP denies the allegations in this paragraph.**

301.    From September of 2019 to September of 2021, Plaintiff was an employee, and Riley Defendants were employers covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

**ANSWER: Defendant OMP is without knowledge or information**

**sufficient to form a belief about the truth of the allegations in this paragraph.**

302.   From September of 2021 to February of 2024, Plaintiff was an employee and Defendant Olsman was an employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

303.   From September of 2021 to February 4, 2024, Plaintiff was an individual and an employee, and Riley Defendants were employers covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, and Riley Defendants affected or controlled a term, condition, or privilege of Plaintiff's employment at Defendant Olsman, including but not limited to compensation, evaluation, terms and conditions of client relationships, work from home privileges, travel, and/or termination, covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act.

**ANSWER: Plaintiff denies the allegations in this paragraph.**

304.   Plaintiff was well qualified for her job and a member of a protected class. Plaintiff was discriminated against and harassed because of her sex.

**ANSWER: Defendant OMP denies that Plaintiff was well qualified for her job with OMP, and is without knowledge or information sufficient to form a belief about the truth of the allegations as to Plaintiff's qualifications for employment with the Riley Defendants.**

305.   Defendants' above-described conduct was on the basis of and because of

Plaintiff's sex.

**ANSWER: Defendant OMP denies these allegations to the extent they are alleged against OMP. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations to the extent they are alleged against the Riley Defendants.**

306.    Defendants' treatment of Plaintiff was different or disparate from the treatment of other attorneys in the law firm, who were not required to deal with persons who had threatened, stalked and sexually harassed them.

**ANSWER: Defendant OMP denies these allegations to the extent they are alleged against OMP. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations to the extent they are alleged against the Riley Defendants.**

307.    The conduct of Defendant Riley in sexually grooming and harassing Plaintiff constitutes sex discrimination and disparate treatment in violation of the Act.

**ANSWER: Defendant OMP denies these allegations to the extent they are alleged against OMP. Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations to the extent they are alleged against the Riley Defendants.**

308.    The intentional and reckless dismissal and disregard of Plaintiff's complaints related to Defendant Riley's misconduct reflects gender hostility toward Plaintiff and is an adverse action under circumstances that give rise to an inference of

unlawful discrimination.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

309.    Defendant Olsman's actions of promoting and condoning Defendant Riley and its attempt to secure negative information about Plaintiff following her repeated complaints regarding Defendant Riley's sexually harassing conduct reflect gender hostility toward Plaintiff.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

310.    The actions of Defendants were intentional, willful, in deliberate disregard of, and with reckless indifference to, the rights and sensibilities of Plaintiff.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

311.    As a direct and proximate result of those actions and failures to act, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

312.    As a further direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has suffered past and future injuries and damages including, but not limited to, the loss of earnings and earning capacity, mental and emotional distress, including severe anxiety and mental anguish, humiliation and embarrassment, loss of professional and personal reputation, physical distress, loss of the ordinary pleasures of everyday life, reasonable attorney's fees and costs incurred in this litigation, and any other compensatory and equitable damages that the Court deems appropriate.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

**COUNT V**
**Title VII—Discrimination and Retaliation on the Basis of Sex, Retaliatory Harassment**
*Defendant Olsman*

Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER: Defendant OMP incorporates by reference its answers to all preceding paragraphs.**

313.    Defendant Olsman is vicariously liable for the negligent or intentional acts of all of its partners, including but not limited to MacKenzie, Jules Olsman, and Peacock.

**ANSWER: The allegations contained in this paragraph assert legal conclusions to which no response is required. To the extent a response is deemed required, Defendant OMP denies the allegations in this paragraph.**

314.    Plaintiff is a member of a protected class on the basis of sex.

**ANSWER: Defendant OMP admits the allegations in this paragraph.**

315.    Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendant Olsman's legitimate business expectations.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

316.    During the course of Plaintiff's employment at Defendant Olsman, Defendant Olsman discriminated against Plaintiff as described above, including but not limited to subjecting her to harassment or disparate treatment on the basis of sex and

subjecting her to a hostile work environment.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

317.   Defendant Olsman also retaliated and engaged in retaliatory harassment against Plaintiff for engaging in activity protected under Title VII with Defendant Olsman's knowledge, including but not limited to reporting and opposing unlawful sexual harassment committed by Defendant Riley.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

318.   As a direct and proximate result of having engaged in the above protected activity regarding Defendant Olsman's favored mediator, Plaintiff was retaliated against by Defendant Olsman, including, but not limited to, the following materially adverse actions and severe and pervasive retaliatory harassment by Defendant Olsman:

a.   Denial of bonuses;

b.   Termination;

c.   Blacklisting Plaintiff in the legal community;

d.   Subjecting Plaintiff to disparate treatment and a hostile work environment;

e.   Revocation or denial of normal employment accommodations enjoyed by other similarly situated employees, such as working from home, work-related travel,

f.   Announcing a "change" in annual financial performance requirements at the end of the year without notice and then falsely claiming Plaintiff failed to meet financial performance requirements;

g.      Intimidation by MacKenzie and Jules Olsman;

h.      Falsification of performance evaluations;

i.      Fabrication of performance evaluations;

j.      Fabrication of claims of insubordination;

k.      Fabrication of claims of character issues;

l.      Intentional exposure of Plaintiff to further and worsening sexual harassment by Defendant Riley;

m.      Defamation and disparagement of Plaintiff with clients and throughout the legal community both inside and outside Michigan;

n.      Intrusive investigation of Plaintiff's private "romantic" life without cause.

o.      Filing of retaliatory claims against Plaintiff;

p.      Intentional interference with this court's authority over this action;

q.      Post-termination harassment and efforts to deprive Plaintiff of her ability to make a living;

r.      Other acts of discrimination and retaliation to be determined.

**ANSWER: Defendant OMP denies the allegations in this paragraph and all of its subparts.**

319.    Defendant Olsman's actions were taken with a willful and wanton disregard of Plaintiff's rights under Title VII.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

320.    As a direct and proximate result of those actions, the terms, conditions,

94

and privileges of Plaintiff's employment were adversely affected.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

321.    As a further direct and proximate result of Defendants' unlawful actions against Plaintiff as described, she has suffered and will continue to suffer in the future, injuries and damages, including, but not limited to, loss of earnings and earning capacity, mental and emotional distress, including severe anxiety and mental anguish, humiliation and embarrassment, loss of professional and personal reputation, physical distress, loss of the ordinary pleasures of everyday life, reasonable attorney's fees and costs incurred in this litigation, and any other compensatory and equitable damages that the Court deems appropriate.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

### COUNT VI
### Breach of Contract (Express)
*Defendants Riley and RH*

Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER: Defendant OMP incorporates by reference its answers to all preceding paragraphs.**

322.    Defendant Riley is liable for his negligent or intentional acts, and, as Defendant Riley's employer, Defendant Riley & Hurley is directly or vicariously liable for the negligent or intentional acts of Defendant Riley, as Defendant Riley at all times material hereto was an agent, partner and majority shareholder at Defendant RH.

**ANSWER: Defendant OMP is without knowledge or information**

sufficient to form a belief about the truth of the allegations in this paragraph.

323.   Plaintiff was employed by Defendant RH pursuant to an express employment contract, executed in writing in September of 2019.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

324.   Defendant Riley violated the terms of the employment contract between Plaintiff and Defendant RH.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

325.   Defendant Riley engaged in conduct that violated the employment contract.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

326.   Defendant Riley's sexual harassment, unwanted attention and stalking was severe, offensive, and abusive; was ongoing and pervasive; prohibited Plaintiff from doing her job, and in doing so breached the employment contract by creating a workplace that was intimidating, hostile, offensive, and ultimately, intolerable, to Plaintiff.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

327.   Defendant Riley's repeated and pervasive harassment of Plaintiff

constituted a breach of the contract.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

328.    A reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile, offensive, and/or abusive, as Plaintiff came to realize.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

329.    As a direct and proximate result of Defendants' breach, Plaintiff suffered damages including but not limited to loss of earnings and earning capacity, loss of the promised partnership opportunity, mental and emotional distress, including severe anxiety and mental anguish, humiliation and embarrassment, loss of professional and personal reputation, physical distress, loss of the ordinary pleasures of everyday life, and any other compensatory and equitable damages that the Court deems appropriate.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**COUNT VII**
**MCL § 600.2954 Stalking**
*Defendants Riley and RH*

Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER: Defendant OMP incorporates by reference its answers to all preceding paragraphs.**

330.    Defendant Riley is liable for his negligent or intentional acts, and, as Defendant Riley's employer, Defendant Riley & Hurley is directly or vicariously liable for the negligent or intentional acts of Defendant Riley, as Defendant Riley at all times material hereto was an agent, partner and majority shareholder at Defendant RH.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

331.    Defendant Riley's actions described in the factual statements set forth in the above paragraphs amount to conduct prohibited under section 411h and/or 411i of the Michigan Penal Code, Act No. 328 of the Public Acts of 1931, being sections 750.411h and 750.411i of the Michigan Compiled Laws.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

332.    More specifically, Defendant Riley's conduct constitutes harassment under section 750.411h of the Michigan Compiled Laws, in that his conduct included repeated or continuing unconsented conduct that would cause a reasonable individual to suffer emotional distress and that Defendant Riley's conduct actually caused Plaintiff to suffer emotional distress.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

333.    Defendant Riley's conduct, including, but not limited to photographing and collecting photos of Plaintiff and obsessively stalking her, also constitutes stalking

under section 750.411h of the Michigan Compiled Laws, in that Defendant Riley engaged in a willful course of conduct involving repeated or continuing harassment of Plaintiff that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, or harassed, and that Defendant Riley's conduct actually caused Plaintiff to feel terrorized, frightened, intimidated, threatened, or harassed.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

334.   Damages incurred by a victim as a result of conduct prohibited in sections 750.411h or 750.411i may be recovered, together with exemplary damages, costs of the action, and reasonable attorney fees. MCL § 600.2954.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

335.   As a direct and proximate result of Defendant Riley's prohibited conduct, Plaintiff has suffered lost earnings and earning capacity, humiliation, mortification, embarrassment, sleeplessness, and anxiety, among other damages that may arise during the course of discovery, and any other compensatory and equitable damages that the Court deems appropriate.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**COUNT VIII**
**Intentional Inflection of Emotional Distress**
*All Defendants*

99

Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER: Defendant OMP incorporates by reference its answers to all preceding paragraphs.**

336.   Defendant Riley is liable for his negligent or intentional acts, and, as Defendant Riley's employer, Defendant Riley & Hurley is directly or vicariously liable for the negligent or intentional acts of Defendant Riley, as Defendant Riley at all times material hereto was an agent, partner and majority shareholder at RH.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

337.   Defendant Olsman is vicariously liable for the negligent or intentional acts of all of its partners, including but not limited to MacKenzie, Jules Olsman, and Peacock.

**ANSWER: The allegations contained in this paragraph assert legal conclusions to which no response is required. To the extent a response is deemed required, Defendant OMP denies the allegations in this paragraph.**

338.   Upon information and belief, the Defendants conspired together to intentionally inflict emotional distress upon the Plaintiff.

**ANSWER: OMP denies the allegations in this paragraph.**

339.   The above-described conduct of Defendants was extreme, outrageous, and beyond all possible bounds of decency, and of such character as to be intolerable in a civilized society.

**ANSWER: OMP denies the allegations in this paragraph.**

340.    Defendants promoted and fostered the continued misconduct and contact between Defendant Riley and Plaintiff while knowing the contact was unwanted by Plaintiff and placed Plaintiff at risk of serious injury.

**ANSWER: OMP denies the allegations in this paragraph.**

341.    The above-described conduct of Defendants was reckless and/or intentional.

**ANSWER: OMP denies the allegations in this paragraph.**

342.    Defendants' conduct was not for any proper purpose, nor was it within the scope of Defendants' authority.

**ANSWER: OMP denies the allegations in this paragraph.**

343.    The above-described conduct of Defendants caused Plaintiff severe emotional distress.

**ANSWER: OMP denies the allegations in this paragraph.**

344.    Defendants are liable to Plaintiff for intentional infliction of emotional distress.

**ANSWER: OMP denies the allegations in this paragraph.**

345.    Defendants' conduct in this matter, which proximately caused Plaintiff's injuries and damages, was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for Plaintiff's physical and emotional wellbeing.

**ANSWER: OMP denies the allegations in this paragraph.**

346.   As a direct and proximate result of Defendants' prohibited conduct, Plaintiff has suffered lost earnings and earning capacity, humiliation, mortification, embarrassment, sleeplessness, and anxiety, among other damages that may arise during the course of discovery, and any other compensatory and equitable damages that the Court deems appropriate.

**ANSWER: OMP denies the allegations in this paragraph.**

347.   Defendants' conduct deliberately and intentionally injured Plaintiff; their acts were willful and malicious and are not dischargeable in bankruptcy.

**ANSWER: OMP denies the allegations in this paragraph.**

**COUNT IX**
**Intrusion Into Seclusion**
*Riley Defendants*

Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER: Defendant OMP incorporates by reference its answers to all preceding paragraphs.**

348.   Defendant Riley is liable for his negligent or intentional acts, and, as Defendant Riley's employer, Defendant Riley & Hurley is directly or vicariously liable for the negligent or intentional acts of Defendant Riley, as Defendant Riley at all times material hereto was an agent, partner and majority shareholder at RH.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

349.   Plaintiff maintained privacy concerning details of her personal professional life.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

350.   Plaintiff had a right to keep those intimate details and matters private.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

351.   Defendant Riley invaded Plaintiff privacy, including but not limited to surreptitiously photographing her, secretly maintaining a cache of photographs of her; stalking her outside of her hotel room in Orlando; refusing to listen to her many requests to be left alone; and listening to her phone calls, some of which were about Defendant Riley's behavior, while she was in her hotel room.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

352.   Defendant Riley's conduct was objectionable and would be objectionable to a reasonable person.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

353.   Defendant Riley's conduct as outlined above was objectionable, extreme, outrageous, and beyond all possible bounds of decency, and of such character as to be intolerable in a civilized society.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

354.   Defendant Riley's conduct was not for any proper purpose, nor was it within the scope of Defendant's authority or otherwise immune or privileged.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

355.   As a direct and proximate result of Defendant Riley's conduct, Plaintiff has suffered lost earnings and earning capacity, humiliation, mortification, embarrassment, sleeplessness, and anxiety, among other damages that may arise during the course of discovery, and any other compensatory and equitable damages that the Court deems appropriate.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

356.   Defendant Riley's conduct deliberately and intentionally injured Plaintiff; his acts were willful and malicious and are not dischargeable in bankruptcy.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

### COUNT X
### Conspiracy to Permit Stalking and to Violate the ELCRA
*All Defendants*

Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER: Defendant OMP incorporates by reference its answers to all**

**preceding paragraphs.**

357.   Defendant Riley is liable for his negligent or intentional acts, and, as Defendant Riley's employer, Defendant Riley & Hurley is directly or vicariously liable for the negligent or intentional acts of Defendant Riley, as Defendant Riley at all times material hereto was an agent, partner and majority shareholder at RH.

**ANSWER: Defendant OMP is without knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

358.   Defendant Olsman is vicariously liable for the negligent or intentional acts of all of its partners, including but not limited to MacKenzie, Jules Olsman, and Peacock.

**ANSWER: The allegations contained in this paragraph assert legal conclusions to which no response is required. To the extent a response is deemed required, Defendant OMP denies the allegations in this paragraph.**

359.   Defendant Riley and Co-Conspirator Defendant Olsman agreed and conspired together to allow Defendant Riley to continue to sexually harass and stalk Plaintiff, to subject Plaintiff to a hostile work environment at Defendant Olsman, and to retaliate against Plaintiff for exercising her right to oppose the harassment and hostile work environment that she was subjected to at Defendant Olsman, in violation of the ELCRA.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

360.   Despite Plaintiff's repeated requests that she not be forced to use

Defendant Riley as a mediator or have professional contact with the man because of his inappropriate sexual conduct, stalking, and obsession with her, Defendant Olsman had conversations with and conspired with Defendant Riley to continue to allow Defendant Riley to have contact with, harass and stalk Plaintiff, including but not limited to conspiring to warn Plaintiff that Defendant Olsman had been "talking to Bob [Riley] about" her and that Plaintiff was to "keep Bob [Riley] happy" and conspiring to reject and disregard Plaintiff's reasonable fear of Defendant Riley with knowledge that her fear was reasonable and well-founded. This conspiracy permitted Defendant Riley's stalking and sexual harassment and Defendant Olsman's hostile work environment to continue.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

361.   Because Plaintiff resisted, reported and confronted the unlawful misconduct of Defendant Riley, Defendants Riley and Olsman agreed to conspire to fire Plaintiff from her position at Defendant Olsman in further violation of the ELCRA, including but not limited to conspiring to threaten Plaintiff based on false information that she was "spending all of her time crying about her divorce" rather than doing her work; conspiring to rescind Plaintiff's 2023 year-end bonus; conspiring to concoct pretextual reasons to fire Plaintiff; and conspiring to retaliate against Plaintiff.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

362.   As a direct and proximate result of the Defendants' conspiracy, Plaintiff suffered damages including but not limited to loss of earnings and earning capacity,

mental and emotional distress, including severe anxiety and mental anguish, humiliation and embarrassment, loss of professional and personal reputation, physical distress, loss of the ordinary pleasures of everyday life, and any other compensatory and equitable damages that the Court deems appropriate.

**ANSWER: Defendant OMP denies the allegations in this paragraph.**

**GENERAL DENIAL**

Defendant OMP denies any and all allegations in the Second Amended Complaint that are not specifically admitted or denied above. Defendant OMP denies any and all allegations in the Second Amended Complaint that refer to all "Defendants" – meaning, both the Riley Defendants and Defendant OMP.

**AFFIRMATIVE DEFENSES**

1.      Plaintiff failed to state claims upon which relief can be granted.

2.      Plaintiff's claims are barred, in whole or in part, because she failed to comply with legally mandated processes and/or procedures and/or failed to exhaust administrative remedies.

3.      To the extent Plaintiff claims disparate treatment under Title VII, such a claim is time barred because Plaintiff failed to exhaust her administrative remedies within the time allowed under the statute.

4.      Plaintiff did not engage in protected activity within the meaning of Title VII or the ELCRA.

5.      Defendant OMP was not aware of any protected activity that Plaintiff

engaged in within the meaning of Title VII or the ELCRA.

6. Defendant OMP did not engage in any adverse employment action against Plaintiff within the meaning of Title VII or the ELCRA.

7. Defendant OMP did not treat Plaintiff differently than similarly situated employees of the opposite sex who engaged in similar conduct.

8. Plaintiff was not subjected to unlawful harassment, discrimination, or retaliation within the meaning of Title VII or ELCRA.

9. Plaintiff was not subjected to unlawful harassment or discrimination because of or based on sex within the meaning of Title VII or ELCRA.

10. Plaintiff was not subjected to treatment that was severe and pervasive within the meaning of Title VII or ELCRA.

11. Plaintiff did not place Defendant OMP on notice that she experienced unlawful harassment, discrimination, or retaliation within the meaning of Title VII or ELCRA.

12. Defendant OMP did not fail to take appropriate action with regard to any purported allegation of unlawful harassment, discrimination, or retaliation within the meaning of Title VII or ELCRA.

13. Defendant OMP did not know of, and should not have known of any unlawful harassment, discrimination, or retaliation against Plaintiff.

14. Any adverse employment action Defendant OMP took against Plaintiff was solely based on Plaintiff's own misconduct, unacceptable behavior, and poor

performance.

15.     Defendant OMP had legitimate, lawful business reasons for all employment actions taken against Plaintiff.

16.     Defendant OMP did not engage in any extreme and outrageous conduct toward Plaintiff.

17.     Defendant OMP did not engage in any tortious misconduct toward Plaintiff.

18.     Defendant OMP did not engage in any concerted action with regard to Plaintiff to accomplish any criminal or unlawful purpose or to accomplish any lawful purpose by criminal or unlawful means.

19.     Defendant OMP did not share any single plan or general conspiratorial objective with any other party, nor did it commit any overt acts in furtherance of any conspiracy causing injury to Plaintiff.

20.     The doctrine of after-acquired evidence makes Plaintiff's claims invalid, both as to their substantive merit and as to recoverable damages.

21.     Plaintiff's claims are barred, in whole or in part, because Plaintiff started her own law firm before her employment with Defendant OMP ended, rendering her substantive claims and claims for damages invalid.

22.     Plaintiff has not suffered any damages attributable to any conduct or action by Defendant OMP.

23.     Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean

109

hands.

24.     Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

25.     Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

26.     Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to mitigate her damages as required by law.

27.     Plaintiff has failed to join a necessary party under Fed. R. Civ. P. 19.

28.     At all relevant times, Defendant OMP acted in conformity with all applicable laws, rules, and regulations, and any actions taken with respect to Plaintiff were taken for legitimate, lawful business reasons.

29.     All decisions made by Defendant OMP with respect to Plaintiff and her employment and all of Defendant OMP's actions towards Plaintiff were made without malice, ill-will, fraud, oppression, or any other improper motive or intent.

30.     Any award of damages should be offset by amounts received by Plaintiff from other sources, including, but not limited to, unemployment compensation or other income.

31.     Defendant OMP reserves the right to rely on or assert other defenses that may become available or apparent throughout the course of this action.

WHEREFORE, Defendant OMP respectfully requests that this Honorable Court:

A.     Dismiss the Second Amended Complaint with prejudice;

B.     Award Defendant OMP its attorney fees and costs incurred in defending

against this action; and

C.     Any other relief for Defendant OMP that that this Honorable Court

determines is just and equitable.

Dated: March 5, 2025                              Respectfully submitted,

                                                  **DEBORAH GORDON LAW**
                                                  /s/ Deborah L. Gordon
                                                  Deborah L. Gordon (P27058)
                                                  Attorney for Attorneys for defendant
                                                  Olsman, MacKenzie, Peacock, P.C.
                                                  33 Bloomfield Hills Parkway, Suite 220
                                                  Bloomfield Hills, Michigan 48304
                                                  (248) 258-2500
                                                  dgordon@deborahgordonlaw.com

## RELIANCE ON JURY DEMAND

**Defendant Olsman MacKenzie Peacock** by and through their attorneys,

Deborah Gordon Law, and hereby rely upon the jury demand previously filed in this

matter.

Dated: March 5, 2025                              Respectfully submitted,

                                                  **DEBORAH GORDON LAW**
                                                  /s/ Deborah L. Gordon
                                                  Deborah L. Gordon (P27058)
                                                  Attorney for Attorneys for defendant
                                                  Olsman, MacKenzie, Peacock, P.C.
                                                  33 Bloomfield Hills Parkway, Suite 220
                                                  Bloomfield Hills, Michigan 48304
                                                  (248) 258-2500
                                                  dgordon@deborahgordonlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 5, 2025 I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
<u>/s/ Deborah L. Gordon</u>
Deborah L. Gordon (P27058)
Attorney for Attorneys for defendant
Olsman, MacKenzie, Peacock, P.C.
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
<u>dgordon@deborahgordonlaw.com</u>

112