UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELYSE MCKENNA,

              Plaintiff,                            Case No. 24-cv-12347

v.

                                            Hon. Brandy R. McMillion

ROBERT F. RILEY and
RILEY & HURLEY, PC and                   Magistrate Judge Elizabeth
OLSMAN MACKENZIE PEACOCK, PC     Stafford

              Defendants.

_____/

## PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT OLSMAN MACKENZIE PEACOCK, P.C.'S COUNSEL

Plaintiff Elyse McKenna moves this Court to disqualify Defendant Olsman MacKenzie Peacock P.C.'s counsel.

As set forth in the accompanying Brief, attorney Deborah Gordon must be disqualified for two reasons. First, her representation of Defendant Olsman MacKenzie Peacock violates Rule 1.18 of the Michigan Rules of Professional Conduct. The Rule provides that a lawyer who has learned information from a prospective client with respect to a matter shall not represent a client with interests materially adverse to the prospective client in the same or a substantially related matter if the information received from the prospective client "could be significantly harmful" to the person. A lawyer who is in position to use information obtained from a prospective client in a case against the prospective client must be disqualified.

In two separate consultations with Plaintiff about the possibility of representing her with respect to this very matter, Deborah Gordon received disqualifying information from Plaintiff. The first consultation was conducted by Gordon herself; the second by Teresa D'Costa (an assistant heavily involved in the present case). Each consultation made Plaintiff akin to a client and required that Gordon not represent another client with interests materially adverse to Plaintiff. Ms. Gordon nevertheless later announced she represents Defendant Olsman MacKenzie Peacock with respect to this matter. Rule 1.18 prohibits such representation.

Rule 1.18 further provides that all other lawyers associated with the disqualified lawyer also must be disqualified absent exceptional circumstances not present here. Here, Ms. Gordon's associates, Elizabeth Marzotto Taylor and Sarah Gordon Thomas, have filed appearances in this case and must also be disqualified.

Second, Deborah Gordon should be disqualified under the advocate-witness rule, Michigan Rule of Professional Conduct 3.7, because her client, Olsman MacKenzie, has made an aspect of Gordon's confidential and privileged conversation with Plaintiff material to this dispute. Rule 3.7 provides that a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless certain inapplicable exceptions apply. After acknowledging that Riley's conduct was improper, Gordon advised Plaintiff that she would have to leave the state of Michigan if she sued Bob Riley.

Based on the advice she received from Ms. Gordon, Plaintiff later took preliminary steps towards starting a law firm shortly before her attorneys presented Riley with her claims. She did so to protect herself should she be forced to leave Michigan, as Gordon advised. Defendant Olsman MacKenzie contests Plaintiff's reasons and alleges that Plaintiff took those preliminary steps for "innately dishonest" reasons. Given Gordon's bias against Plaintiff, she is a likely necessary witness on this contested issue whether she admits giving the advice or not,.

On October 15, 2024 and March 3, 2025, there was a conference between Plaintiff's counsel and Olsman MacKenzie Peacock's counsel in which Plaintiff explained the nature of this motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Accordingly, to preserve the public trust in the integrity of the bar and protect the truth-seeking function of the proceedings, Plaintiff respectfully asks that Deborah Gordon and all lawyers at all firms with which Ms. Gordon is associated be disqualified in this case. Plaintiff further requests that the Court decide this Motion before the start of discovery in this case, due to the risk that "potentially conflicted counsel's confidential information could infect the evidence presented to the district court." *Bowers v. Ophthalmology Grp.*, 733 F.3d 647 (6th Cir. 2013).

Respectfully submitted,

_/s/ Kathleen Kalahar_
Kathleen Kalahar (P60301)
Goodman Kalahar
Attorneys for Plaintiff
1394 East Jefferson Avenue
Detroit, MI 48207
(248) 310-0133 (mobile)
kkalahar@goodmankalahar.com

_/s/ Randi McGinn_
Randi McGinn
McGinn Montoya Love Curry &
Sievers PA
Attorneys for Plaintiff
201 Broadway Blvd SE
Albuquerque, NM 87102
randi@mcginnlaw.com

Dated: March 12, 2025

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELYSE MCKENNA,

       Plaintiff,               Case No. 24-cv-12347

v.

                                  Hon. Brandy R. McMillion

ROBERT F. RILEY and
RILEY & HURLEY, PC and           Magistrate Judge Elizabeth
OLSMAN MACKENZIE PEACOCK, PC    Stafford

       Defendants.
_____/

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY
DEFENDANT OLSMAN MACKENZIE PEACOCK, P.C.'S COUNSEL**

Table of Contents

INTRODUCTION………………………………………………………  1

FACTS………………………………………………………………..  3

   1.  Plaintiff's August 2021 consultation with Gordon………………  3

   2.  Plaintiff's February 2024 consultation with Gordon……………  4

   3.  Gordon's appearance on behalf of Olsman MacKenzie, and Plaintiff's immediate objection…………………………………..  7

   4.  Gordon's public comments about her confidential consultation with Plaintiff……………………………………………………..  7

   5.  Defendants' acknowledgement that Plaintiff's claims against Olsman MacKenzie and Riley are substantially related…………..  8

   6.  Gordon's failure to disclose the information she claims was received during Plaintiff's consultations…………………………  8

   7.  Defendant OMP's claim that Plaintiff "started a new law firm"…  9

ARGUMENT……………………………………………………………...  9

   A.    Legal Standards……………………………………………  9

   B.    Plaintiff was a "prospective client" of Gordon………………..  12

   C.    Deborah Gordon Law represents Olsman MacKenzie Peacock, a client with interests "materially adverse" to those of Plaintiff……………………………………………………….  14

   D.    Plaintiff consulted with Gordon regarding "the same or a substantially related matter" now before this Court…………  14

i

E.      Gordon acquired information from Plaintiff "that could be
        significantly harmful" to Plaintiff in the present matter…….....  20

F.      Gordon also must be disqualified under Rule 3.7 of the
        Michigan Rules of Professional Conduct……………………  24

CONCLUSION…………………………………………………………  25

Table of Authorities

| Cases | |
|---|---|
| *Allstate Ins. Co. v. Inscribed PLLC*<br>571 F. Supp. 3d 823 (E.D. Mich. 2021)…………………………............ | 9, 10 |
| *Ancient Brands, LLC v. Planet Stuff, LLC*<br>No. 18-11647, 2018 WL 5885502 (E.D. Mich. Nov. 9, 2018)………….... | 23 |
| *Atmosphere Hosp. Mgmt. Servs., LLC v. Royal Realties, LLC*<br>28 F. Supp. 3d 692 (E.D. Mich. 2014)………………………………… | 2 |
| *Banner v. City of Flint*<br>99 Fed. App'x 29 (6th Cir. 2004)…………………………………… | 11-13 |
| *Benevida Foods, LLC v. Advance Mag. Publishers Inc.*<br>No.15-CV-02729 (LTS) (DF), 2016 WL 3453342<br>(S.D.N.Y. June 15, 2016)……………………………………………... | 22 |
| *Bowers v. Ophthalmology Grp.*<br>733 F.3d 647 (6th Cir. 2013)…………………………………………... | 18, 19, 25 |
| *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*<br>900 F.2d 882 (6th Cir.1990)…………………………………………... | 12 |
| *DeBiasi v. Charter Cnty. of Wayne*<br>284 F. Supp. 2d 760  (E.D. Mich. 2003)………………………………… | 10 |
| *Eaton v. Meathe*, No.<br>1:11-CV-178, 2011 WL 5921207 (W.D. Mich. Nov. 27, 2011)………… | 12 |
| *Factory Mut. Ins. Co. v. APComPower, Inc.*<br>662 F.Supp.2d 896 (W.D. Mich. 2009)………………………………... | 12, 19 |
| *First NBC Bank v. Murex, LLC*<br>259 F. Supp. 3d 38 (S.D.N.Y. 2017)…………………………………... | 13 |
| *Freedman v. Rakosi*<br>674 F. Supp. 3d 105  (S.D.N.Y. 2023)………………………………….... | 23 |

*Glenn v. Nasscond*
      No. 15-cv-10270, 2016 WL 409409 (E.D. Mich. Feb. 3, 2016)…………  10, 12
                                                                        20, 21

*Haworth, Inc. v. Wickes Mfg. Co.*
      1994 WL 16099352 (W.D. Mich. 1994)…………………………………  2

*Keith v. Keith*
      140 So.3d 1202 (La. Ct. App. 2014)………………………………..  3

*Kuntz v. Disciplinary Bd. of Supreme Court of North Dakota*
      869 N.W.2d 117 (N.D. 2015)……………………………………  21, 22

*McCool v. Operative Plasterers*
      No. 13-13614, 2014 WL 635797  (E.D. Mich. Feb. 18, 2014)…………..  23

*Natn'l Union Fire Ins. Co. v. Alticor, Inc.*
      466 F.3d 456, 458 (6th Cir. 2006)………………………………  10

*S.D. Warren Co. v. Duff-Norton*
      302 F. Supp. 2d 762  (W.D. Mich. 2004)………………………  17-18

*Sturdivant v. Sturdivant*
      241 S.W.3d. 740 (Ark. 2006)……………………………………  22-23

*Zalewski v. Shelroc Homes, LLC*
      856 F. Supp. 2d 426  (N.D.N.Y. 2012)…………………………...  22

Rules and Opinions:
ABA Formal Opinion 492……………………………………………  2-3

E.D. Mich. LR 83.20(j)………………………………………………  10

Mich. R. Prof. Conduct 1.18(a), (c)………………………………  1-2 11-12, 20

Mich. R. Prof. Conduct 1.9 (a)……………………………………  12

Mich. R. Prof. Conduct 5.3…………………………………………..  13-14

Mich. Prof'l & Judicial Ethics Comm, Op RI-95 (1991)…………………………  17-18

<u>Index of Exhibits</u>

| <u>Exhibit</u> | <u>Description</u> |
|---|---|
| 1. | Plaintiff Affidavit |
| 2. | 2/4/24 MacKenzie Letter |
| 3. | 11/8/24 Gordon Email |
| 4. | 2/10/24 Gordon/Prescott Emails |
| 5. | 10/14/24 Detroit News Story |
| 6. | 10/18/24 Hardy Email |
| 7. | 10/15/24 Kalahar Letter |
| 8. | 3/5/25 Gordon Email |

## **INTRODUCTION**

A duty to avoid disqualifying conflicts of interest does not depend on the actual formation of an attorney-client relationship. Rather, in any discussion with a person in which there is a possibility of forming an attorney-client relationship, a lawyer must be careful because, if she learns information from the prospective client "that could be significantly harmful to that person in the matter" under discussion, the lawyer cannot represent another client in the same or a substantially related matter if that client's interests are materially adverse to those of the prospective client.

Attorney Gordon and her associates must be disqualified in this case. On two separate occasions, Gordon consulted with Plaintiff for the explicit purpose of forming an attorney-client relationship concerning *this case*. In the course of the consultations, Gordon received confidential, sensitive information from Plaintiff – information Plaintiff has not disclosed in this case and would not have disclosed to Ms. Gordon and her staff if she had known they would end up representing Olsman Mackenzie. (**Ex.1**, Plaintiff Affidavit ¶ 27) Gordon's decision to take on Olsman MacKenzie as her client under the circumstances present here creates an unacceptable risk to Plaintiff that Gordon and her staff might use or reveal Plaintiff's information to her detriment, which exposes Plaintiff to a risk of significant harm.

Plaintiff submits her sworn affidavit in support of this Motion. (**Ex.1**) She has had to walk a fine line of disclosing enough information to establish that Gordon received disqualifying information from Plaintiff, while at the same time not revealing information that is privileged or sensitive, because it would waive its confidentiality. The policy of disqualifying a lawyer who acquired harmful information from a prospective client would be self-defeating if, in order to obtain the protection, the prospective client was required to reveal in a public record proceeding the particular communication or other confidential information that could be used in the subsequent representation.

For this reason, in seeking disqualification of a lawyer based on a conflict of interest, the moving party has "no obligation to specifically identify the confidential information he seeks to protect." *Atmosphere Hosp. Mgmt. Servs., LLC v. Royal Realties, LLC*, 28 F. Supp. 3d 692, 697 (E.D. Mich. 2014). *See Haworth, Inc. v. Wickes Mfg. Co.*, 1994 WL 16099352 (W.D. Mich. 1994) (conducting *in camera* review of privileged documents relating to former representation and declining to disqualify attorney because client had shared only "general information . . . rather than any specific knowledge of facts pertaining to the issues in this lawsuit."). ABA Formal Opinion 492, regarding "Obligations to Prospective Clients: Confidentiality, Conflicts and "Significantly Harmful" Information," states:

> With respect to what must be shown to establish that a person
> is entitled to the protections of Model Rule 1.18, evidence

> beyond the mere fact of a consultation is generally required. The fact that the prospective client must come forward with some evidence concerning the contents of the consultation with the lawyer does not mean, however, that the prospective client must disclose confidential information or detail the substance of the discussions. The cases and other authorities support the conclusion that only certain disclosures are required, for example, the date, duration and manner of communication (i.e., in person, email, over the phone, etc.), and a summary description of the topics discussed.

*See also Keith v. Keith*, 140 So.3d 1202, 1211-1212 (La. Ct. App. 2014) (discussing the use of *in camera* proceedings in Rule 1.18 decisions).

Should the Court determine that more detailed information is needed in order to determine whether to grant the Motion, Plaintiff requests an opportunity to produce, for an *in camera* review, detailed information for the Court's eyes only.

## FACTS

### 1. Plaintiff's August 2021 consultation with Gordon

On or about August 20, 2021, Plaintiff called attorney Deborah Gordon's office. (**Ex.1** at ¶ 2) At the start of the conversation, Ms. Gordon asked Plaintiff for the name of her employer. Plaintiff expressed concern about disclosing it because of Riley's prominence in the legal community. Gordon assured her she would not disclose anything Plaintiff told her, so Plaintiff provided Riley's name and proceeded to answer Gordon's questions about the situation. (**Ex.1** at ¶ 4-5)

Plaintiff gave Gordon a detailed, confidential account of Riley's conduct during the time she had known and worked for him, and how she had managed it.

(**Ex.1** at ¶ 5) She told Gordon about her new position at Olsman MacKenzie Peacock and sensitive details about her transition from Riley & Hurley to Olsman MacKenzie, and Riley's continued presence and role in her new job and career. (**Ex.1** at ¶ 6) She provided privileged, sensitive, and critical information about Riley's surreptitious photographs of her that were on his iPad. (**Ex.1** at ¶ 7) She also provided sensitive information about her family's financial status and her husband's work. (**Ex.1** at ¶ 8) Throughout the conversation, Plaintiff shared her private thoughts and impressions regarding her case. She discussed her risk tolerance for suing Bob Riley, her purpose in considering claims against him, and how the situation was affecting her. (**Ex.1** at ¶ 9)

Gordon participated and asked questions. She gave Plaintiff advice on "how to handle certain immediate concerns," some of which Plaintiff later followed. (**Ex.1** at ¶ 10) After receiving all this sensitive information from Plaintiff, Gordon told Plaintiff she "wouldn't touch Bob Riley with a ten-foot pole," advised Plaintiff not to file a lawsuit against Riley, warned Plaintiff that doing so could ruin her legal career, and stated that if Plaintiff did sue Riley, she would have to leave Michigan. (**Ex.1** at ¶ 11-12)

### 2. Plaintiff's February 2024 consultation with Gordon

Over the course of the next two years, the situation with Riley persisted, worsened, and negatively impacted Plaintiff's work at Olsman MacKenzie Peacock.

4

In the fall of 2023, Plaintiff retained attorneys to negotiate a resolution of Riley's unwanted harassment and his involvement in Plaintiff's work. (**Ex.1** at ¶¶ 13-14)

Plaintiff feared she would be fired by Olsman MacKenzie when they learned about her decision to pursue claims against Riley. Based in part on the advice she had received from Gordon, in mid-January, shortly before her attorneys' meeting with Riley, Plaintiff filed paperwork to incorporate a law firm in Washington, D.C. and obtained a domain name for a website. She had not decided to start the law firm and filed the paperwork only as a back-up plan, in the event she was fired and unable to find employment in Michigan, i.e., only in the event she was *forced* to start a new firm. ECF No. 27-3.

Plaintiff's attorneys met with Riley on January 31, 2024. ECF No. 29 at PgID 1127. Olsman MacKenzie fired Plaintiff on Sunday, February 4, 2024. (**Ex.1** at ¶ 16; **Ex.2**, 2/4/24 MacKenzie Letter) Because of the limited scope of Plaintiff's attorneys' representation, Plaintiff had to find other counsel regarding her potential claims against OMP, including its retaliatory discharge. (**Ex.1** at ¶ 17)

On or about February 5, 2024, Plaintiff exchanged phone calls with Deb Gordon's office. Though she did not speak with Ms. Gordon that day, she provided Ms. Gordon's staff with her name and informed them she had previously spoken with Gordon about the facts giving rise to the present matter. Plaintiff was told that a member of Gordon's intake team would be available the next day. (**Ex.1** at ¶ 18)

On or about February 6, 2024, Plaintiff called Ms. Gordon's office again and spoke with an intake associate, Teresa D'Costa. (**Ex.1** at ¶ 19) Ms. D'Costa is Ms. Gordon's assistant in the present case. (**Ex.3**, 11/8/24 Gordon Email ["Please be sure to copy . . . Teresa [D'Costa] on all emails per above email addresses."]) Before disclosing any confidential information to Ms. D'Costa, Plaintiff specifically asked whether Ms. Gordon represented any law firms. D'Costa informed Plaintiff that the firm did not represent any law firms and assured Plaintiff that the information she provided would be kept confidential and was privileged. (**Ex.1** at ¶ 20)

They proceeded to have an in-depth consultation, during which Plaintiff provided a detailed account of OMP's conduct, including in relation to Riley. This included details regarding her complaints of sexual harassment and the circumstances of her termination. Plaintiff also provided information regarding her financial status, and, throughout the conversation, she shared her private thoughts and feelings regarding the matter. This included her personal thoughts as to why she was no longer employed and how the situation had affected her. (**Ex.1** at ¶¶ 21-24)

After Plaintiff shared all of this sensitive information, D'Costa told her one of the attorneys would call her back later that day, but no one did. (**Ex.1** at ¶ 25)

During both of the above consultations, Plaintiff disclosed privileged and sensitive information that she has not disclosed in this case and that she would not

have disclosed to Gordon had she known Gordon would later become counsel for Olsman MacKenzie Peacock. (**Ex.1** at ¶ 27)

### 3. Gordon's appearance on behalf of Olsman MacKenzie, and Plaintiff's immediate objection

On Saturday, February 10, 2024, Deb Gordon advised that she was representing Olsman MacKenzie regarding this matter. Ms. Gordon was immediately asked to remove herself from the situation in light of her conflict, but she refused. (**Ex.4**, 2/10/24 Gordon/Prescott Emails; **Ex.1** at ¶ 26)

On September 9, 2024, Plaintiff filed this *pro se* action. ECF No. 1. On October 10, 2024, Deborah Gordon and the other two Deborah Gordon Law attorneys, Elizabeth Marzotto Taylor and Sara Gordon Thomas, filed appearances on behalf of Defendant Olsman MacKenzie Peacock. ECF Nos. 7-9.

### 4. Gordon's public comments about her confidential consultation with Plaintiff

On about October 14, 2024, the Detroit News published a new story that quoted Deborah Gordon, as follows:

> McKenna said **she went to several attorneys trying to file a lawsuit against her former boss, although because nobody would take the case, she filed the suit herself.** "The attorneys that McKenna contacted informed her that although she had a viable legal claim, they were not comfortable with pursuing a case against him given his prominent status in the legal communit**y**," the 60-page filing said. Riley did not return a phone call seeking comment. **Deborah Gordon**, attorney for Olsman, MacKenzie, Peacock & Wallace, called McKenna's lawsuit "**a sham.**"

7

(**Ex.5**, 10/14/24 Detroit News Story) Olsman MacKenzie admits Gordon was accurately quoted. ECF No. 30 at PgID 1273-1274.

### 5. Defendants' acknowledgement that Plaintiff's claims against Olsman MacKenzie and Riley are substantially related

On October 18, 2024, Riley's counsel acknowledged that "McKenna's claim against the Olsman firm involves [Riley]." (**Ex.6**, 10/18/24 Hardy Email) On December 20,2024, Olsman MacKenzie alleged "Plaintiff's claims against Olsman MacKenzie "emanate from" her "interaction with Riley" ECF No. 19 at PgID258.

### 6. Gordon's failure to disclose the information she claims was received during Plaintiff's consultations

On October 15, 2024, the undersigned filed her appearance and a stipulated order substituting as counsel for Plaintiff. ECF Nos. 12-13. Plaintiff's counsel immediately asked Ms. Gordon to step away from the case. (**Ex.7**, 10/15/24 Kalahar Letter) Before filing this Motion, Plaintiff's counsel again attempted to meet and confer with Gordon on the issue of her disqualifying conflict of interest. Gordon again refused to withdraw, but she declined to take a position in writing as to what she claims was said during the consultations. Instead, Gordon alleges Plaintiff's summary of the August 2021 consultation is "flatly false" and "made up;" and that she "never took" Plaintiff's call in February 2024 . Gordon further warned Plaintiff's counsel that her efforts to meet and confer regarding the present Motion constituted "threats" that "are extremely ill advised." (**Ex.8**, 3/5/25 Gordon Email)

**7.   Defendant OMP's claim that Plaintiff "started a new law firm"**

On December 20, 2024, Olsman MacKenzie falsely alleged that Plaintiff "started a new law firm" while she was employed by Olsman MacKenzie and further alleged that Plaintiff's "failure to tell" the Olsman MacKenzie lawyers about it was "innately dishonest." ECF No. 19 at PgId 263-64.

On March 11, 2025 (yesterday), Olsman MacKenzie alleged that, before Plaintiff separated from Olsman MacKenzie, she "started a new law firm" and concocted "to extract money from OMP." ECF No. 34 at PgID 1424, 1420-21. In other words, Olsman MacKenzie challenges the credibility of Plaintiff's sworn affidavit dated February 27, 2025, ECF No. 27-3, that she took the preliminary steps toward starting an out of state law firm out of fear that she would be fired by Olsman MacKenzie for confronting Riley, and based on Deborah Gordon's advice that Plaintiff would have to leave Michigan if she brought a lawsuit against Riley. Such a challenge is Olsman MacKenzie's prerogative, but it does have consequences.

**ARGUMENT**

**A.   Legal Standards**

"A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention." *Allstate Ins. Co. v. Inscribed PLLC*, 571 F. Supp. 3d 823 (E.D. Mich. 2021) This is because "federal courts have inherent powers to supervise the conduct of attorneys practicing before them, and

9

vital interests in protecting the integrity of their judgments, maintaining public confidence in the integrity of the bar, eliminating conflicts of interest, and protecting confidential communications between attorneys and their clients." *Id*. In considering a motion to disqualify, "[t]he paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar, so the recognizably important right to choose one's counsel must yield to the ethical considerations that embody the moral principles of our judicial process." *Id*. (internal cites and quotes omitted). An attorney should be disqualified where "there is a reasonable possibility that some specifically identifiable impropriety actually occurred, and the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *DeBiasi v. Charter Cnty. of Wayne*, 284 F. Supp. 2d 760, 770 (E.D. Mich. 2003).

The Michigan Rules of Professional Conduct set forth the "appropriate standards against which to measure the propriety of an attorney's conduct for the purpose of determining whether a lawyer should be disqualified in a particular case." *Glenn v. Nasscond*, No. 15-cv-10270, 2016 WL 409409 at *2 (E.D. Mich. Feb. 3, 2016) (citing *Natn'l Union Fire v. Alticor, Inc.*, 466 F.3d 456, 458 (6th Cir. 2006) *vact'd on other grnds*, 472 F. 3d 436 (6th Cir. 2006)). Attorneys that practice in this Court must follow the Michigan Rules of Professional Conduct. E.D. Mich. LR 83.20(j).

Michigan Rule of Professional Conduct Rule 1.18, which became effective on September 1, 2018, addresses duties to prospective clients.[1] The rule forbids an attorney from "represent[ing] a client with interests materially adverse to those of a prospective client," that is, "a person who consults with a lawyer about the possibility of forming a client-lawyer relationship," in "the same or a substantially related matter," but only if "the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." Mich. R. Prof. Conduct 1.18(a), (c).

The Rule "tracks Sixth Circuit precedent, which recognizes that "[w]hen a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client." *Banner v. City of Flint*, 99 Fed. App'x

---

[1] Mich. R. Prof. Conduct 1.18 provides, in relevant part:

(a) A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

29, 36 (6th Cir. 2004). Before Rule 1.18 was adopted, courts in this district had already found that a "motion to disqualify an attorney who has met with, but was not retained by, a prospective client 'should be analyzed the same as a motion to disqualify pursuant to a former client relationship, with the additional requirement that the lawyer receive information that could be 'significantly harmful,' rather than merely confidential as required by the Sixth Circuit's three-prong *Dana Corp*. test." *Nasscond, Inc.* 2016 WL 409409 at *3 (citing *Factory Mut. Ins. Co. v. APComPower, Inc.*, 662 F.Supp.2d 896, 900 (W.D. Mich. 2009); *Eaton v. Meathe*, No. 1:11-CV-178, 2011 WL 5921207, at *3 (W.D. Mich. Nov. 27, 2011)).[2]

## B.    Plaintiff was a "prospective client" of Gordon.

As shown, the question of Gordon's disqualification does not depend on whether an attorney-client relationship was established. Under Rule 1.18(a), "a person who consults with a lawyer about the *possibility of* forming a client-lawyer

---

[2] The *Dana* test, regarding former clients, is: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir.1990). Likewise, Mich. R. Prof. Conduct 1.9 (a), provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Rule 1.18, the "prospective client" rule, simply adds the additional requirement that the lawyer receive information that "could be significantly harmful." *Nasscond* at *3.

relationship with respect to a matter is a prospective client." *Banner,* 99 F. App'x at 36 ("When a potential client consults with an attorney, the consultation establishes a relationship *akin to that* of an attorney and existing client.") There is no genuine question that Plaintiff consulted with Deborah Gordon in August of 2021, and with Gordon's assistant, Teresa D'Costa, in February of 2024, about the possibility of representing Plaintiff as to her claims in the present matter. (**Ex.1** at ¶¶2, 20-21)

The intake consultation is no different than a lawyer's consultation for purposes of disqualification. Ms. D'Costa established a confidential relationship with Plaintiff, and that relationship is imputed to the law firm as a whole. Whether the person who receives the disqualifying information is a lawyer is "irrelevant for conflict-imputation purposes. Disqualification may be based on information known by persons in a firm other than practicing lawyers." *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 73 (S.D.N.Y. 2017). *See id.* ("[D]isqualification extends to individuals associated with a firm in a lesser capacity, for example, a law clerk. And we have never believed that labels alone [of] partner, clerk, co-counsel should control our decisions in so sensitive an area.") (quotes and cites omitted).

Under Rule, 1.18(c), "[i]f a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter ." The same must be true as to legal assistants. Comment to Mich. R. Prof. Conduct 5.3 provides that

13

law firm assistants, such as "secretaries, investigators, law student interns, and paraprofessionals . . . act for the lawyer in rendition of the lawyer's professional services." Presumably, Ms. D'Costa shared the information she received from Plaintiff with Gordon, since Plaintiff's previous consultation with Gordon was referenced during the call. If not, her knowledge is imputed, especially given that she is involved in this case. Regardless, as shown below, Plaintiff's initial consultation with Gordon in 2021, alone, clearly warrants Gordon's disqualification because it was "substantially related to" the present matter.

### C. Deborah Gordon Law represents Olsman MacKenzie Peacock, a client with interests "materially adverse" to those of Plaintiff.

There can be no question that the interests of Plaintiff McKenna on one hand and Defendant Olsman on the other hand are "materially adverse."

### D. Plaintiff consulted with Gordon regarding "the same or a substantially related matter" now before this Court.

The present matter is "the same" as or "substantially related" to the matter that Plaintiff and Gordon consulted about in 2021 and 2024. Plaintiff's consultations with Gordon were specifically for the purpose of seeking Gordon's representation of Plaintiff in the present action. Plaintiff's affidavit attests to this. (**Ex.1** at ¶¶ 2, 17-19) The timing alone of the consultations establishes they were regarding the present case: the first consultation occurred as Plaintiff was departing Riley & Hurley, and the second one occurred right after Plaintiff was terminated from Olsman

14

MacKenzie. Gordon obtained sensitive, confidential, potentially damaging information from Plaintiff, who is actually present in this litigation in which Gordon represents Plaintiff's adversary, Defendant Olsman MacKenzie. Clearly, the "matter" that Gordon confidentially consulted with Plaintiff about is the same "matter" in which Gordon now represents Plaintiff's adversary.

Plaintiff's affidavit (**Ex.1**) establishes she had confidential and sensitive consultations with Gordon touching on the following subjects:

- her potential claims against Bob Riley

- her potential claims against Olsman MacKenzie

- Riley's conduct during the time Plaintiff had known and worked for him

- how Plaintiff handled Riley's conduct

- how Riley's conduct was affecting Plaintiff

- Plaintiff's transition from Riley & Hurley to Olsman MacKenzie Peacock

- Riley's role in Plaintiff's future employment at Olsman Mackenzie

- Riley's role in Plaintiff's professional development

- Riley's surreptitious photographs of Plaintiff

- Plaintiff's financial status

- Plaintiff's husband's work

- Plaintiff's transition to Olsman MacKenzie

- Plaintiff's risk tolerance for suing Riley

- Plaintiff's purpose in considering potential claims against Riley

- the of viability and advisability of a lawsuit against Riley

- the likely effects on Plaintiff's career and life of filing a sexual harassment lawsuit against Riley

- Olsman MacKenzie's conduct during Plaintiff's employment there

- Plaintiff's complaints to Olsman MacKenzie about sexual harassment

- The circumstances of Plaintiff's separation form Olsman MacKenzie

- Olsman MacKenzie's relationship with and conduct in relation to Riley

- The reason or reasons Plaintiff's employment was terminated

- How the entire situation affected Plaintiff

Each topic – and all of the sensitive, potentially harmful information that Plaintiff provided to Gordon on them – are clearly substantially related to (or the same as) the subjects of the present action. There is a clear and obvious substantial risk that the sensitive and confidential information as would normally or typically have been obtained in Gordon's consultation with Plaintiff could materially advance Olsman's position in the present case.

In her "meet and confer" email (**Ex.8**), Gordon suggests that Olsman MacKenzie might argue that Gordon's consultation with Plaintiff in 2021 (which pertained to Plaintiff's potential claims against Riley) is irrelevant to this Motion because Gordon "do[es] not represent Bob Riley." Such an argument would not be plausible. The information Gordon acquired in her 2021 consultation is clearly substantially related to Plaintiff's claims against Olsman MacKenzie.

16

The present action involves claims of sexual harassment, hostile work environment, retaliation, retaliatory harassment, discrimination, IIED, and conspiracy against all Defendants. Plaintiff's claims in this case include allegations that Olsman MacKenzie condoned and supported Riley's conduct, worked in concert with Riley to enable him to accomplish it, disregarded Plaintiff's complaints about Riley, and retaliated against Plaintiff for opposing it. Riley's conduct and Olsman Mackenzie's conduct are intertwined and interdependent. Indeed, Riley admits Plaintiff's "claim against the Olsman firm involves [Riley]" (**Ex.6**), and Olsman MacKenzie admits that Plaintiff's claims against Olsman MacKenzie "emanate from" her "interaction with Riley" ECF No. 19 at PgID258.

The notion that Gordon's 2021 is not relevant merely because she "do[es] not represent Bob Riley" is foreign to the law. Although the term "substantially related matter" is not defined in Rule 1.18 or the comments thereto, opinions issued by Michigan Professional & Judicial Ethics Committee have discussed the meaning of "substantially related" in the context of former clients. According to the Committee:

> a subsequent matter is substantially related to the subject matter of a former representation **if the factual or legal issues overlap** or if there is a likelihood that confidential information obtained in the former representation **will have relevance to the subsequent representation. In the case of doubt, and absent the consent of the former client, a lawyer should decline representation.**

*S.D. Warren Co. v. Duff-Norton*, 302 F. Supp. 2d 762, 768 (W.D. Mich. 2004)(citing

Mich. Prof'l & Judicial Ethics Comm, Op RI-95 (1991)(emph. added).

The Sixth Circuit interprets "substantial relationship" broadly. In *Bowers v.*

*Ophthalmology Grp.*, 733 F.3d 647 (6th Cir. 2013), the Court found that a lawyer's

representation of a partner in an ophthalmology practice regarding her attempt to

start a separate practice outside the partnership was a matter "substantially related"

to the partner's later lawsuit against the partnership for alleged gender discrimination

and retaliation in violation of Title VII. *Id*. at 652. The lawyer was disqualified from

representing the partnership in the Title VII case even though the facts and issues in

that case were different than the former matter. The Court explained:

> In determining whether a substantial relationship exists, the
> court **evaluates the similarities between the factual bases** of
> the two representations. **A commonality of legal claims or
> issues is not required**. At a functional level, the inquiry is
> whether the attorneys were trying to acquire **information
> vitally related to the subject matter of the pending
> litigation**. To accomplish this inquiry, the court must be able
> to reconstruct the attorney's representation of the former client,
> to infer what confidential information could have been
> imparted in that representation, and to decide whether that
> information has any relevance to the attorney's representation
> of the current client. What confidential information could have
> been imparted involves considering what information and facts
> ought to have been or would typically be disclosed in such a
> relationship. **Consequently, the representations are
> substantially related if they involve the same client and the
> matters or transactions in question are relevantly
> interconnected or reveal the client's pattern of conduct**.

*Bowers*, 733 F.3d at 652 (quotes and cites omitted)(emph. added).

In *Factory*, the Court granted a motion to disqualify counsel. In rejecting an argument on the subject of who the lawyer did or did not represent at the time he acquired the confidential information, the Court emphasized: "**The pertinent issue is that [the lawyer's] receipt of confidential information . . . concerning this matter created a conflict of interest and may prejudice [defendant's] defense**." 662 F. Supp. 2d at 901 (emph. added).

Here, there are obvious similarities between the factual bases of the 2021 consultation and the present case against Olsman MacKenzie. *Bowers* at 652. It is immaterial that Gordon was consulting with Plaintiff in 2021 regarding the case against Riley and that she does not represent Riley in this case. The "pertinent issue" is that Gordon received confidential information from Plaintiff concerning the present case that is substantially related to her claims against Olsman MacKenzie.

Olsman MacKenzie's awareness of Riley's conduct is central to Plaintiff's claims against it, including, for example, events and communications that occurred at the time of Plaintiff's transition from Riley & Hurley to Olsman MacKenzie. See ECF 23 at PgID 559-566. Plaintiff consulted with Gordon about this in 2021. The 2021 consultation clearly has relevance to the Gordon's representation of Olsman MacKenzie. Information Plaintiff shared with Gordon could potentially be used

against Plaintiff in this case by all[3] Defendants, including Gordon's client, Olsman MacKenzie. The 2024 consultation makes the relevance all the more undeniable.

### E. Gordon acquired information from Plaintiff "that could be significantly harmful" to Plaintiff in the present matter.

Gordon received information from Plaintiff "that could be significantly harmful to" Plaintiff in the present matter.

As stated, Rule 1.18(c) bars a lawyer from representing a client with interests materially adverse to those of a prospective client "if the lawyer received information from the prospective client that could be *significantly harmful* to that person" in the subsequent matter. Mich. R. Prof. Conduct 1.18(c) (emphasis added). The term has been interpreted broadly.

In *Nasscond*, the plaintiff owned a condominium subject to a mortgage. She sued Defendants to have the mortgage set aside on the ground that their assignments of the mortgage were defective. The plaintiff moved to disqualify counsel for one of the defendants, claiming she had previously hired an attorney at the same law firm concerning a possible short sale of the condo. She claimed she discussed with that lawyer the possibility of litigation concerning the mortgage on her condo. In other words, she consulted with him about the present case. The Court held:

---

[3] There are indications that Riley and Olsman MacKenzie are coordinating their defense in this case.

The Court finds that, utilizing the tests set forth above, there is a conflict of interest in this matter. Plaintiff previously retained the Linnell firm to negotiate a short sale of her condominium. In the course of this representation, the Linnell firm obtained confidential financial information from Plaintiff, including records pertaining to her mortgage and the recording/assignments of that mortgage. **In other words, the Linnell firm received information from Plaintiff touching on the precise legal questions at issue in this litigation. Furthermore, the emails submitted by Plaintiff indicate that she consulted Attorney Linnell for the explicit purpose of soliciting legal advice concerning her mortgage. Clearly, there would be an impermissible conflict of interest if Attorney Linnell were seeking to represent Defendant Kondaur in this matter**.

2016 WL 409409 at *3 (emph added).

*Nasscond* stands for the commonsense proposition that a lawyer simply should not represent a client in the very case in which the lawyer consulted with the client's adversary and obtained confidential information. Such situations are rife with impermissible opportunities for the lawyer to acquire and use information against the former prospective client.

Identical language has been similarly interpreted by other courts. In *Kuntz v. Disciplinary Bd. of Supreme Court of North Dakota*, 869 N.W.2d 117 (N.D. 2015), the Court interpreted North Dakota Rule 1.18, which is analogous to the Michigan counterpart. The Court held:

Information may be "significantly harmful" if it is sensitive or privileged information that the lawyer would not have received in the ordinary course of due diligence; or if it is information that has long-term significance or

> continuing relevance to the matter, such as motives, litigation strategies or potential weakness. "Significantly harmful" may also be the premature possession of information that could have a substantial impact on settlement proposals and trial strategy; the personal thoughts and impression about the facts of the case; or information that is extensive, critical, or of significant use.

*Id.* at 125.

In *Benevida Foods, LLC v. Advance Mag. Publishers Inc.*, No. 15-CV-02729 (LTS) (DF), 2016 WL 3453342, at *11 (S.D.N.Y. June 15, 2016), the court found that in preliminary consultations with a prospective law firm, the plaintiff had disclosed "sensitive information regarding [its] assessment of its own claims, its financial situation and risk tolerance, and its litigation and settlement strategies" — in short, "precisely the type of information that, if shared, can provide an opposing party with a substantial, unfair advantage." *Id.* at *14. The court disqualified the firm, which had been engaged by the defendants in the same case after the plaintiffs declined to retain it. *Id.* at *14–15. *See Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 436 (N.D.N.Y. 2012) (disqualifying the plaintiffs' attorney, who, in a prior, preliminary consultation with the defendants, had acquired "intimate knowledge of their views and impressions of th[e] litigation," including their "thoughts on the differences between the [architectural] designs [at issue in the copyright infringement action,] and the strengths and weaknesses of the parties' respective positions"); *Sturdivant v. Sturdivant*, 241 S.W.3d 740, 742 (Ark. 2006) (prospective client provided "significantly harmful information" when he told

22

divorce attorney "everything he knew regarding the children and his concerns about his former wife"); *Freedman v. Rakosi*, 674 F. Supp. 3d 105, 114 (S.D.N.Y. 2023) ("Just having Defendants' opinions and impression of even public documents and facts would establish privileged communication and if revealed, in any form or fashion, would constitute significant harm."). *Cf. Ancient Brands, LLC v. Planet Stuff, LLC*, No. 18-11647, 2018 WL 5885502, at *5 (E.D. Mich. Nov. 9, 2018) (prospective client "only provided information about how he 'conducts his re-selling business,'" to attorney, "which appears to be general business information. The Court does not see how general knowledge of Goldman's business model could be significantly harmful."); *McCool v. Operative Plasterers*, No. 13-13614, 2014 WL 635797, at *7 (E.D. Mich. Feb. 18, 2014)(statements to counsel that "are not confidential information" are not "significantly harmful).

Plaintiff shared information with Gordon that could be significantly harmful to her in the present matter. Gordon acquired information touching on the precise legal questions at issue in this litigation, as well as sensitive information that Plaintiff would not have disclosed had she known Gordon could have ended up on the other side of the present case. Gordon learned about Plaintiff's concerns, her risk tolerances, her personal thoughts and impressions about the facts of the case, and critical information regarding the photographs. She learned sensitive information about Plaintiff's financial condition and her husband's job details. She learned some

information that should not be known to anyone but *Plaintiff's* attorneys. Plaintiff also made it clear that she did not want to disclose any information if Gordon represented Olsman MacKenzie, Riley or any law firm wanted total confidentiality.

### F.   Gordon also must be disqualified under Rule 3.7 of the Michigan Rules of Professional Conduct.

Defendant Olsman MacKenzie has embraced a litigation strategy in this case that falsely alleges Plaintiff is "innately dishonest." According to Olsman MacKenzie, Plaintiff should have told it that she took preliminary steps towards starting her own law firm in another state while she was still employed by Olsman MacKenzie and that her failure to do so "was innately dishonest." Plaintiff took these preliminary steps to prepare for a "worst case" scenario that Deborah Gordon had warned her about. Plaintiff was concerned that, once her attorneys confronted Riley, she might be fired t (which she was), and that she might not be employable in the Michigan legal community because of Mr. Riley's relationships with prospective employers (which she is not). Gordon told Plaintiff she would have to leave Michigan if she sued Bob Riley, and now Gordon is publicly calling Plaintiff "dishonest" and a "sham" for doing what Gordon said Plaintiff would have to do.

Because Defendant Olsman MacKenzie challenges Plaintiff's credibility on this issue and has squarely made the alleged nefarious reason for Plaintiff's filing of the paperwork a central part of its defense, Deborah Gordon is a necessary witness.

24

She should be disqualified under the advocate-witness rule, which "prohibits an attorney from representing a party where the attorney will be called as a witness."

## CONCLUSION

Deborah Gordon must be disqualified. Her improper presence in this case risks the disclosure and use of confidential and sensitive information Plaintiff shared with her. Ms. Gordon certainly had the right not to touch Bob Riley with a 10-foot pole, and she could have correctly declined to represent Plaintiff. Where she went wrong was in deciding she could come into this case and act against Plaintiff.

Accordingly, to preserve the public trust in the integrity of the bar and protect the truth-seeking function of the proceedings, Plaintiff respectfully asks that Deborah Gordon and all lawyers at all firms with which Gordon is associated be disqualified. Plaintiff further requests that the Court decide this Motion prior to the start of discovery in this case, due to the risk that "potentially conflicted counsel's confidential information could infect the evidence presented to the district court." *Bowers v. Ophthalmology Grp.*, 733 F.3d 647 (6th Cir. 2013).

Respectfully submitted,

*/s/ Kathleen Kalahar*
Kathleen Kalahar (P60301)
Goodman Kalahar
Attorneys for Plaintiff
1394 East Jefferson Avenue
Detroit, MI 48207
(248) 310-0133 (mobile)
kkalahar@goodmankalahar.com

*/s/ Randi McGinn*
Randi McGinn
McGinn Montoya Love Curry &
Sievers PA
Attorneys for Plaintiff
201 Broadway Blvd SE
Albuquerque, NM 87102
randi@mcginnlaw.com