# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELYSE MCKENNA,

      Plaintiff,

v.

ROBERT F. RILEY and
RILEY & HURLEY, PC and
OLSMAN MACKENZIE PEACOCK, PC

      Defendants.

Case No. 24-cv-12347

Hon. Brandy R. McMillion

Magistrate Judge Elizabeth Stafford

_____/

## AFFIDAVIT OF ELYSE MCKENNA

I, Elyse McKenna, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit based on personal knowledge.

2. On or around August 20, 2021, I called attorney Deborah Gordon's office to discuss the possibility of her representing me regarding my potential claims against Bob Riley and his firm for sexual harassment. The call was several minutes in duration.

3. I had recently decided to leave Bob Riley's firm because his behavior towards me had become increasingly inappropriate and I discovered he was secretly taking photographs of me.

1

4. Ms. Gordon asked me for the name of my employer. I expressed my concern about disclosing it. She assured me she would not disclose anything I told her.

5. I told Ms. Gordon the name of the potential defendant and then answered her questions about the situation. I gave her a detailed, confidential account of Bob Riley's conduct during the time I had known and worked for him and how I had handled it.

6. I also informed Ms. Gordon of the identity of my future employer and shared sensitive details regarding my transition to my new position, and Mr. Riley's continuing role in my future employment and career.

7. I also provided Ms. Gordon with privileged and critical information about the surreptitious photographs on Mr. Riley's iPad.

8. I also provided sensitive and private information regarding my family's financial status and my husband's work.

9. Throughout our conversation, I shared my personal thoughts and impressions regarding the matter, including regarding the facts, my risk tolerance for suing Bob Riley, my purpose in considering claims against him, and how the situation was affecting me.

10. Ms. Gordon provided me with advice on how to handle certain immediate concerns that I shared with her regarding the matter. The topics

2

included the photographs, finances, and my transition to OMP. I followed some of the advice.

11. Ms. Gordon told me she "wouldn't touch Bob Riley with a ten-foot pole." She advised me not to file a lawsuit against Bob Riley and warned me that it could ruin my legal career.

12. Ms. Gordon also stated that if I did file suit against Mr. Riley, I would have to leave the state of Michigan.

13. Over the course of the next two years, the situation with Mr. Riley persisted, worsened and negatively impacted my work at Olsman MacKenzie Peacock.

14. In the fall of 2023, I retained attorneys to negotiate a resolution of Mr. Riley's unwanted harassment and involvement in my work at OMP.

15. On January 31, 2024, my attorneys met with Mr. Riley.

16. I was terminated from OMP on February 4, 2024.

17. Because of the limited scope of my attorneys' representation, I had to find counsel regarding my potential claims against OMP, including its retaliatory discharge of me.

18. The day after I was terminated, I exchanged phone calls with Deborah Gordon's office. Though I did not speak with Ms. Gordon that day, I provided a member of her staff with my name and informed them that I had previously spoken

with Ms. Gordon about a case and I was calling about a related matter. I was advised that a member of the intake team would be available the next day.

19. On Tuesday, February 6, 2024, I called Ms. Gordon's office again and spoke with an intake person named Teresa D'Costa. I told her I was calling about a potential claim and that the situation had changed since I last spoke with Ms. Gordon.

20. Before disclosing any confidential information to Ms. D'Costa, I specifically asked her whether Ms. Gordon's firm represented any law firms. She informed me that their law firm did not represent any law firms. She assured me that the information I provided would be kept confidential and was privileged.

21. We proceeded to have an in-depth consultation, during which I provided a detailed confidential account of OMP's conduct during the period of my employment there, including details regarding my complaints about sexual harassment and the circumstances of my separation from employment.

22. I also provided a detailed account regarding the connection between OMP and Bob Riley.

23. I also provided information regarding my financial status.

24. Throughout our conversation, I shared my private thoughts and feelings regarding the subjects that were discussed, including my thoughts as to the

reason or reasons my employment was terminated and how the situation had affected me.

25. After I shared all of this sensitive information, Ms. D'Costa told me that one of the attorneys would call me back later that day. No one from Ms. Gordon's office called me back.

26. On Saturday, February 10, 2024, I learned that Deb Gordon was representing Olsman MacKenzie.

27. In my conversations with Deb Gordon and the intake person, I disclosed privileged and sensitive information that I have not disclosed in this case and that I would not have disclosed to them if I had known they would become counsel for OMP.

Further affiant sayeth not.

*Elyse McKenna*
_____
Elyse L. McKenna
03/12/2025

Florida Polk Elyse McKenna  DRIVER LICENSE

Subscribed and sworn before me this 03/12/2025 day of March, 2025.

ALVARO EDMUNDO NIEVES      Online Notary

Notarized remotely online using communication technology via Proof.



ALVARO EDMUNDO NIEVES
Notary Public - State of Florida
Commission # HH630180
Expires on January 23, 2029

5