# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**ELYSE MCKENNA**,

      Plaintiff,

v.

**ROBERT F. RILEY,** *an individual,*
**RILEY & HURLEY, P.C.** *a domestic*
   *professional corporation,*
**OLSMAN, MACKENZIE,**
**PEACOCK, P.C.** *a domestic professional*
   *corporation,*
Defendants.

Case No: 24-cv-12347

Hon. Judge Brandy R. McMillion

> **DEFENDANT OMP'S**
> **RESPONSE TO**
> **PLAINTIFF'S MOTION TO**
> **DISQUALIFY**
> **DEFENDANT OLSMAN**
> **MACKENZIE PEACOCK,**
> **P.C.'S COUNSEL**

---

Kathleen J. Kalahar (P60301)
1394 East Jefferson Avenue
Detroit, MI 48207
(313) 567-6165 (office)
(248) 310-0133 (mobile)
(313) 567-4827 (facsimile)
kkalahar@goodmankalahar.com
**Attorney for Plaintiff**

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
**Attorneys for defendant Olsman, MacKenzie,**
**Peacock, P.C.**

**Kienbaum Hardy Viviano**
**Pelton & Forrest, P.L.C.**
Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
280 North Old Woodward Avenue, Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com
**Attorneys for Defendants Robert F. Riley and**
**Riley & Hurley, P.C.**

# TABLE OF CONTENTS

Index of Authorities ------------------------------------------------------------------- iii

I.      Overview ----------------------------------------------------------------------1

II.     Facts----------------------------------------------------------------------------2

        A. 2021 Call as To Riley -----------------------------------------------------2

        B. February 2024 Call from Mckenna ------------------------------------------6

        C. Mckenna Makes False Statements About Her New Firm and Her
           Circumstances -----------------------------------------------------------8

III.    Legal Standard----------------------------------------------------------------9

IV.     IV. No Attorney-Client Relationship Existed Between Plaintiff and Deborah
        Gordon Law ------------------------------------------------------------- 11

V.      Deborah Gordon Law's Representation of OMP Is Not Substantially
        Related to Plaintiff's Claims Against Riley as of 2021 ------------------------ 13

VI.     Deborah Gordon Law Never Acquired Confidential Information
        About Plaintiff's Case ------------------------------------------------- 14

        A. Plaintiff Failed to Carry Her Heavy Burden to Prove That
           Information Shared with Ms. Gordon Could Be "Significantly
           Harmful" In This Case Within the Meaning of MRPC 1.18 ------------ 16

        B. Plaintiff Cannot Be a Prospective Client Insofar as She Contacted
           Deborah Gordon Law In 2024 For the Purposes of Disqualifying
           the Firm ------------------------------------------------------------- 18

VII.    Plaintiff Waived Any Right to Seek Disqualification --------------------------- 18

VIII.   Ms. Gordon Is Not A "Necessary Witness" Within the Meaning of
        MRPC 3.7 ------------------------------------------------------------------- 20

IX.     Conclusion -------------------------------------------------------------- 22

# INDEX OF AUTHORITIES

## Cases

*Alexander v Primerica Holdings, Inc.,*
  822 F. Supp. 1099 (D.N.J. 1993) ................................................................ 19

*Ancient Brands, LLC v. Planet Stuff, LLC,*
  2018 WL 5885502 (E.D. Mich. Nov. 9, 2018) .......................................... 11

*Bowers v. Ophthalmology Group,*
  733 F.3d 647 (6th Cir. 2013) ..................................................................... 13

*Bowman v. Bank of Del.,*
  1988 WL 54669(D. Del. May 24, 1988) .................................................... 10

*Cohen v. Strouch,*
  2011 WL 1143067 (S.D.N.Y. 2011) .......................................................... 12

*Courser v. Allard,*
  2016 WL 10520134 (W.D. Mich. Nov. 28, 2016)....................................... 10

*Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio,*
  900 F.2d 882 (6th Cir. 1990) ..................................................................... 11

*DeBiasi v. Charter Cnty. of Wayne,*
  284 F.Supp.2d 760 (E.D. Mich. 2003) ...................................................... 10

*Eaton v. Meathe,*
  2011 WL 5921207 (W.D. Mich. Nov. 27, 2011)......................................... 16

*Factory Mut. Ins. Co. v. APComPower, Inc.,*
  662 F. Supp. 2d 896 (W.D. Mich. 2009) ................................................... 16

*First NBC Bank v. Murex, LLC,*
  259 F. Supp. 3d 38 (S.D.N.Y. 2017)........................................................... 12

*Freeman v. Chi. Musical Instrument Co.,*
  689 F.2d 715 (7th Cir. 1982) ..................................................................... 10

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*,
    567 F.2d 225 (2d Cir. 1977) ............................................................................ 12

*Glenn v. Nasscond, Inc.*
    2016 WL 409409 (E.D. Mich. Feb. 3, 2016) ................................................... 11

*Harris v. Agrivest Ltd. P'ship II*,
    818 F. Supp. 1035 (E.D. Mich. 1993) .............................................................. 11

*Hutto v. Charter Tp. of Clinton*,
    2014 WL 1405216 (E.D. Mich. Apr. 11, 2014) ............................................... 11

*Kubiak v. Hurr*,
    143 Mich.App. 465 (1985) ............................................................................... 20

*Manning v. Waring, Cox, James, Sklar & Allen*,
    849 F.2d 222 (6th Cir. 1988) ........................................................................... 10

*McCool v. Operative Plasterers' & Cement Masons' Intern. Ass'n of U.S. & Canada, AFL-CIO*,
    2014 WL 635797 (E.D. Mich. Feb. 18, 2014) ................................................ 14

*MJK Family LLC v. Corp. Eagle Mgmt. Servs., Inc.*,
    676 F. Supp. 2d 584 (E.D. Mich. 2009) .......................................................... 10

*People v. Tesen*,
    276 Mich.App. 134 (2007) ............................................................................... 20

*Smith v. Arc-Mation, Inc.*,
    402 Mich. 115 (1978) ....................................................................................... 20

*U.S. ex rel. Guzall v. City of Romulus*,
    2014 WL 5090856 (E.D. Mich. 2014) ............................................................. 13

*Valley-Vulcan Mold Co.*,
    237 BR 322 (B.A.P. 6th Cir. 1999) ................................................................. 19

*Woods v. Michigan Dep't of Corr.*,
    2015 WL 7075922 (E.D. Mich. Nov. 13, 2015) .............................................. 11

**Rules**
MRPC 1.18 ............................................................................................................. 2

MRPC 1.18. *Id.* at 7 ................................................................................................................... 15

MRPC 3.7 ...................................................................................................................................... 22

I. **<u>OVERVIEW</u>**

Deborah Gordon Law has no conflict of interest as to its representation of Olsman McKenzie and Peacock, PC (OMP). Plaintiff's motion is contrived for an improper purpose. It contains multiple false statements, is frivolous and is sanctionable.

In 2021, unsolicited, McKenna contacted and spoke briefly to Gordon about possible claims against her then employer, Defendant Robert F. Riley of Riley & Hurley, PC. (Riley). Gordon does not represent Riley. During the call McKenna stated that she would shortly be starting a new position with the firm Olsman, Mackenzie and Peacock (OMP). Gordon told McKenna that it appeared she did not have a viable legal claim. That was the first and only time Gordon ever spoke to McKenna. McKenna's rendition of the 2021 call is mainly false. McKenna now attempts to use the 2021 call as a basis to disqualify Gordon from representing OMP.

McKenna called Gordon's office again, unsolicited, on February 5 and 6, 2024, allegedly to talk about a case against OMP. It is uncontested that McKenna had already retained legal counsel at the time of these calls; it appears likely that McKenna intended to disqualify Gordon. Gordon did not take the calls and never spoke to McKenna about OMP. McKenna's theory is that because she left basic information later incorporated into her public filings with the assistant who answered the phone, Gordon should be disqualified.

Because her theory as to disqualification is not supported by fact or law, McKenna also argues that Gordon will be a witness in the case. She falsely claims that

1

in 2021, as to the call about Riley, Gordon told her she would have to move out of the state of Michigan if she sued Riley. In a bizarre twist, she claims that as an experienced attorney, and almost three years later, she acted on Gordon's alleged advice. She claims that she plans to call Gordon as a witness to ask, "whether she admits to giving this advice or not." ECF No. 36 PageID.1586. This theory is also devoid of factual and legal merit.

Plaintiff's legal arguments fail. MRPC 1.18, "Duties to Prospective Client" governs here. For a lawyer to be disqualified after speaking to a "prospective client" the lawyer must have been given information that could be "significantly harmful to that person in that matter." Nothing McKenna said in her call with Gordon in 2021 or Gordon's assistant in 2024 could be construed as "significantly harmful." In addition, based on the passage of time Plaintiff has waived the issue before the Court.

## II.   FACTS

### A.   2021 Call as to Riley

For over 40 years Deborah Gordon has specialized in civil rights and employment discrimination claims. She takes cases solely for litigation. Gordon's firm receives approximately five to eight potential new client contacts a day. Her firm rejects approximately 98% of all potential new clients. **Ex. 1**, Gordon Affidavit at ¶ 1.

Plaintiff claims that on August 21, 2021, Plaintiff contacted Deborah Gordon via an unsolicited call to her office. Gordon cannot and does not confirm that the call occurred on that date. Gordon agrees that she had one unsolicited, brief call with

2

McKenna in 2021. The 2021 call was the only time Gordon ever spoke to McKenna about any topic. **Ex. 1**, Gordon Affidavit at ¶ 2.

The call was about McKenna's then employer – Robert F. Riley.  Gordon does not represent Riley or his firm. McKenna states that the call lasted "several minute[s]." ECF No. 36-2, PageID.1621 ¶ 2. Gordon's typical questions are straightforward. Gordon does not ask potential clients to tell their story or start from the beginning of the employment relationship. Her goal is to decide as quickly as possible whether there is a possible case she would consider taking. **Ex. 1**, Gordon Affidavit at ¶ 3. She is interested in whether an "adverse action" has occurred, whether there was a legal violation, and if the caller has economic damages based on the adverse action. All three of those elements must be present for Gordon to move forward with a case, or indeed, a conversation with a potential client. Gordon quickly ascertained that McKenna had not been terminated or disciplined by her employer; hence, there was no adverse action. McKenna referenced acts she described as creating a "hostile environment."  None of the acts included sexual conduct. There was nothing that Gordon believed would meet the legal standard of "severe and pervasive" acts of sexual harassment necessary to prove a hostile environment claim. Gordon so advised McKenna. **Ex. 1**, Gordon Affidavit at ¶ 4. McKenna claims that during the call she told Gordon that she had taken a new job at OMP. ECF No. 36 PageID.1597. Assuming that was said, Gordon would have explained that the attainment of new employment would cut off most if not all damages. Even where there is liability, Gordon would not take such a case.  **Ex.**

3

**1**, Gordon Affidavit at ¶ 4. Gordon provided no advice on "how to handle certain immediate concerns such as "photographs", "finances", and her "transition" to OMP. **Ex. 1**, Gordon Affidavit at ¶ 6. Nor would Gordon be interested in McKenna's "family's financial situation and her husband's work." Such information is not relevant in an employment discrimination claim. **Ex. 1**, Gordon Affidavit at ¶ 5. The only relevant question on a prospective plaintiff's damages is whether she has economic damages in the form of lost pay and /or benefits due to an adverse action by the employer. As a rule, Gordon does not ask about the caller's "private thoughts and impressions", nor does she engage in such discussions with prospective callers. **Ex. 1**, Gordon Affidavit at ¶ 3;5. At this stage such information is wholly irrelevant to Gordon's analysis of a potential claim. **Ex. 1**, Gordon Affidavit at ¶ 5. Accordingly, allowing a caller to provide their "private thoughts" is a poor use of an attorney's time, is not a practice Gordon has ever engaged in, and is in fact one she studiously avoids. **Ex. 1**, Gordon Affidavit at ¶ 5. Moreover, McKenna's complaint is replete with references to her private thoughts, feelings and impressions. By way of example, *see* ECF No. 23, Paragraphs 64, 80,81,82, 86, 93, 99, and 110.

McKenna alleges that Gordon told her "that if she did file a suit against Mr. Riley she would have to leave the state of Michigan" and that "it could ruin my legal career." ECF No. 36-2 PageId.1263 ¶ 11;12. In that McKenna claims she told Gordon that she had already secured new employment in Michigan and would not be looking for employment, this is illogical.  Moreover, Gordon has never and would never tell anyone

that they would have to "move out of state" or that their career "would be ruined" if a lawsuit was filed.  It is not Gordon's experience that plaintiffs, including attorneys, must "leave the state" because they sue a former employer, no matter how prominent. To the contrary. **Ex. 1**, Gordon Affidavit at ¶ 7. McKenna also falsely claims that Gordon told her that "she would not touch Bob Riley with a ten-foot pole". **Ex. 1**, Gordon Affidavit at ¶ 7. No such statement was made.[1] **Ex. 1**, Gordon Affidavit at ¶ 7. Per McKenna, in spite of Gordon's alleged statement about a "ten-foot pole", she shared information with her. Again, this is illogical. The fact is that Gordon quickly realized that McKenna did not have a viable claim and remained on the call only long enough to be polite.  Nor does McKenna set forth any facts that support her theory that Gordon would not sue Riley if a viable case existed.  There are no such facts; McKenna has no idea what Riley's relationship was with Gordon, if any.   McKenna did not provide Gordon with "sensitive details" about her position at OMP or Riley's "continuing role." **Ex. 1**, Gordon Affidavit at ¶ 5. And in any event, McKenna's three lengthy complaints set forth McKenna's position on this topic in minute detail.

The instant motion does not set forth any "confidential" a "significantly harmful" information McKenna allegedly shared with Gordon. To the contrary. McKenna has filed an overly lengthy, 363 paragraph Second Amended Complaint (after

---

[1] At the time McKenna claims she spoke to Gordon in 2021, Gordon was in the midst of a lawsuit against Geoffrey Fieger, a far more prominent attorney than Mr. Riley, on behalf of an associate attorney who had been discriminated against.  Gordon prevailed on the claim in the U.S. Sixth Circuit Court of Appeals.  The attorney successfully continued her career in Michigan. Ex. 1, Gordon Affidavit at ¶ 7

two other overly lengthy complaints); Everything she told Gordon in 2021 is included. For example, *see* paragraphs 57, 59, 64, 68, 69, 72, 76, 77, and 96 for Riley's alleged actions; 58 and 95 as to alleged "photos"; 64, 80, 81, 82, 86, 93, 99; 110 for "thoughts and impressions," among other paragraphs.

In spite of speaking to Gordon for the first time, and only for several minutes, McKenna claims that more than two years later, in January 2024, she acted on Gordon's alleged life-changing advice that she would have "to leave Michigan if she sued Bob Riley" and on that basis she formed a new firm in Washington D.C. ECF No. 36 PageID.1617. This theory is inherently unbelievable. As set forth below, McKenna never left Michigan. She continues to practice exclusively and reside in Michigan, per her website.  McKenna does not explain how Gordon's testimony is relevant to her legal claims pursuant to MRE 401.  It is not.  Moreover, Gordon will not confirm that she told McKenna she would have to move out of Michigan.  On the contrary; she denies ever making such a statement.  **Ex. 1**, Gordon Affidavit at ¶ 7.

**B. February 2024 call from McKenna**

McKenna states that she left the Riley firm and started a new position with OMP in "September 2021." ECF No. 23 PageID.565. She concedes that by "fall 2023" she "had retained attorneys".  ECF No. 36 PageID.1598. While still employed at OMP, and without telling the firm, in "mid -January," 2024, McKenna "filed paperwork" to incorporate a new law firm with a friend, and "obtained a domain name" for a website

6

for the new firm - Fox McKenna.  ECF No. 36 PageID.1598.  McKenna states that her "attorneys" met with Riley on January 31, 2024.  ECF No. 36 PageID.1598. Presumably this was to make a demand as to the claims she has filed here.

On Saturday, February 3, 2024, Gordon received a call from Jules Olsman, a longtime friend, and his partner, Donna MacKenzie.  They had received a threatening email from McKenna, their then employee, that was of concern.  McKenna told them that if "terms" could be worked out to her satisfaction, she would leave the firm.  She did not tell Olsman and MacKenzie that she had already established a new law firm. Gordon consulted with them in detail on February 3 and 4, 2024, and established an attorney-client relationship.  **Ex. 1**, Gordon Affidavit at ¶ 18.

Despite having already retained counsel, on Monday, February 5, 2024, Mckenna called Gordon's office. Gordon did not take the call. On February 6 McKenna called again.  She spoke to Gordon's administrative legal assistant, Teresa D' Costa, who answered the phone. Ms. D' Costa obtained basic intake information **Ex. 6**, D' Costa Affidavit. McKenna alleges that she "had an in-depth consultation [with the assistant] during which [she] provided a detailed confidential account of OMP's conduct …including details of my separation from employment… information regarding my financial status…[and] shared my private thoughts and feelings …and how the situation had affected me." ECF No. 36-2 ¶ 21, 23, 24. This is contrived.  Notably, these are identical terms McKenna used to describe her call in 2021, as set forth above. Gordon's firm did not seek or obtain information about any of these topics. The rudimentary

facts McKenna provided were entered into an intake document by Ms. D' Costa, which is date and time-stamped. **Ex. 2**, Intake Notes. Notably, all these facts were later pled by McKenna. McKenna conspicuously failed to advise Ms. D' Costa of information of extreme importance to any attorney – McKenna had already retained counsel. Gordon did not return McKenna's call or speak to her. Gordon only reviewed the perfunctory intake notes for the purpose of responding to Plaintiff's instant motion.

### C. McKenna Makes False Statements About her New Firm and her Circumstances

McKenna claims that because she
"feared she would be fired by Olsman Mackenzie when they learned about her decision to pursue claims against Riley. … She had not decided to start the law firm and filed paperwork only as a back- up plan, in the event she was fired and unable to find employment in Michigan, i.e., only in the event she was *forced* to start a new firm. " No. 36, p. 1598 (emphasis in original).

This claim is demonstrably false.  Well before she emailed OMP on February 3, she and her new partner had designed a firm website, had professional photos taken of themselves, created website content and started an Instagram account. The new firm was formally announced on Wednesday, February 7, 2024: "foxmckennaplc We are excited to announce the opening of Fox McKenna, PLLC!"  February 7, 2024  **Ex. 3,** Instagram Post. On February 8, 2024, McKenna posted a blog on the new firm's website. **Ex. 4**, Website Blog Post.

Mckenna's claim that she would only start her new firm "if she was fired and unable to find employment in Michigan, i.e. only in the event she was *forced* to start a

new firm" is flatly false. Obviously, McKenna never looked for any jobs in Michigan. Her false statements are sanctionable.

In addition, McKenna's statements about having to "leave the state of Michigan" and that she did so are patently false. She states in her Second Amended Complaint "In late April of 2024...her career as a plaintiff's medical malpractice attorney ruined and her reputation tarnished in her home state of Michigan, McKenna moved to Maryland, away from her family, friends, professional ties and connections." In the next paragraph she alleges she "has no choice but to remain in Maryland." ECF No. 23, ¶ 244, 245. None of this is true. McKenna practices law only in Michigan, where she resides, per her website: "*Elyse resides in Michigan and practices exclusively in Michigan. She is not licensed in the District of Columbia." **Ex. 5**, Website Page. Her website and the State Bar of Michigan confirm that her office address is 625 Purdy, Brimingham, Michigan. She practices in the same areas of law as she did previously: injury claims, and medical malpractice. **Ex. 5**, Website Page. She retains the same "professional ties and connections." Her website states that she is an Executive Committee Member of the Michigan Association of Justice, and a member of the American Association of Justice. **Ex 5**, Website Statement as to McKenna's Location, Page 2.

## III.   <u>LEGAL STANDARD</u>

"Motions to disqualify are 'viewed with disfavor,' and a party seeking to disqualify opposing counsel carries a heavy burden and must satisfy a high standard of proof." *Courser v. Allard*, 2016 WL 10520134, at *1 (W.D. Mich. Nov. 28, 2016) (citing *In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999)) (internal quotation marks omitted). Such motions must be closely scrutinized because the "ability to deny one's opponent the services of capable counsel is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988); *see also Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982) (noting that motions to disqualify "should be viewed with extreme caution for they can be ***misused as techniques of harassment***") (emphasis added); *Bowman v. Bank of Del.*, No. 87-44-CMW, 1988 WL 54669, at *3 (D. Del. May 24, 1988) ("The Court must be wary so as to ***prevent motions to disqualify from being used as just another weapon*** in the litigation arsenal.") (emphasis added). A court does not possess "unfettered discretion to disqualify counsel." *DeBiasi v. Charter Cnty. of Wayne*, 284 F.Supp.2d 760, 770 (E.D. Mich. 2003).

The Sixth Circuit applies a three-part test for determining whether disqualification is warranted: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. *MJK Family LLC v. Corp. Eagle Mgmt. Servs., Inc.*, 676 F. Supp. 2d 584, 592 (E.D. Mich. 2009) (citing *Dana*

10

*Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990)). Courts deny motions to disqualify where any one of the *Dana* elements is not met. *See e.g., Harris v. Agrivest Ltd. P'ship II*, 818 F. Supp. 1035, 1041 (E.D. Mich. 1993); *Woods v. Michigan Dep't of Corr.*, No. 15-10324, 2015 WL 7075922, at *5 (E.D. Mich. Nov. 13, 2015).

Courts in this district have found that a "motion to disqualify an attorney who has met with, but was not retained by, a prospective client 'should be analyzed the same as a motion to disqualify pursuant to a former client relationship, with the additional requirement that the lawyer receive information that could be 'significantly harmful,' rather than merely confidential as required by the Sixth Circuit's three-prong *Dana Corp.* test.' " *Ancient Brands, LLC v. Planet Stuff, LLC*, No. 18-11647, 2018 WL 5885502, at *4 (E.D. Mich. Nov. 9, 2018) (quoting *Glenn v. Nasscond, Inc.* 2016 WL 409409 at *3 (E.D. Mich. Feb. 3, 2016)).

Plaintiff has failed to meet any of the three *Dana* prongs in this case, therefore the Court should deny her motion to disqualify Defendant's counsel.

## IV. NO ATTORNEY-CLIENT RELATIONSHIP EXISTED BETWEEN PLAINTIFF AND DEBORAH GORDON LAW

No attorney-client relationship ever existed between Plaintiff and Ms. Gordon as a result of either the 2021 or 2024 phone call. *See Hutto v. Charter Tp. of Clinton*, 2014 WL 1405216, at *2 (E.D. Mich. Apr. 11, 2014) (finding that a telephone call during which the defendant allegedly shared certain confidences with the attorney was not

enough, for purposes of the disqualification analysis, to find that an attorney-client relationship between the attorney and defendant had been formed).

Plaintiff improperly relies on *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 73 (S.D.N.Y. 2017) and the line of cases it descends from to establish that the brief intake phone call with Teresa D'Costa in 2024 should automatically disqualify Ms. Gordon's entire firm, let alone Ms. Gordon herself, from representing OMP in this case. Plaintiff appears to draw this principle from a single footnote in the cited case (a fact she omits from her citation) directing the reader to a line of cases from the second circuit court of appeals. *See First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 73 n.24 (S.D.N.Y. 2017)(*See, e.g.*, *Cohen v. Strouch*, 2011 WL 1143067 (S.D.N.Y. 2011)(citing *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 235 (2d Cir. 1977).

The "non-lawyer capacities" that these cases appear to contemplate do not explicitly extend to law firm employees whose job functions, like Ms. D'Costa's, fall completely outside the scope of forming any type of legal opinion or providing any type of legal advice. Indeed, all of the positions explicitly named in these cases as automatically imputing a conflict onto a firm, "partner, clerk, co-counsel", *Fund of Funds, Ltd. v. Arthur Anderson & Co.*, 567 F.2d 225, 235 (2d Cir.1977), are those requiring either a significant degree of formal legal education or a license to practice law. Ms. D'Costa is an exemplary employee and an invaluable asset to Ms. Gordon's firm in her role as a administrative legal assistant But she has never fulfilled any of the roles contemplated in the line of cases.

12

Plaintiff improperly relies on Ms. D'Costa  attempt to paint Ms. Gordon and her firm as conflicted in the instant case.

## V.   DEBORAH GORDON LAW'S REPRESENTATION OF OMP IS NOT SUBSTANTIALLY RELATED TO PLAINTIFF'S CLAIMS AGAINST RILEY AS OF 2021

To determine whether the purported attorney-client relationships are substantially related, the Court "must look to the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the now adverse client." *Bowers v. Ophthalmology Group*, 733 F.3d 647, 652 (6th Cir. 2013); *see also U.S. ex rel. Guzall v. City of Romulus*, 2014 WL 5090856 at * 6 (E.D. Mich. 2014) (applying *Bowers*'s "substantial relationship" test to the MRPC). Thus, the Court "must examine whether there is a substantial risk that confidential information as would normally or typically have been obtained in [the attorney]'s prior representation [of the former client] would materially advance [the opposing party]'s position in the present case." *Bowers*, 733 F.3d at 653.

Plaintiff falls woefully short of meeting the "substantially related" prong of the *Dana* test. Plaintiff's 2021 call with Ms. Gordon took place before Plaintiff began working at OMP. Nothing Plaintiff could have said to Ms. Gordon in August 2021 could have possibly related to her employment at OMP. Any information that Plaintiff may have relayed to Ms. Gordon in 2021 would have necessarily related strictly to

13

allegations against Defendant Riley and her time employed at the Riley & Hurley Law Firm.

Further, the allegations Plaintiff made on the 2021 phone call involving Defendant Riley and his law firm have been incorporated into Plaintiff's several complaints in the instant case. Once Plaintiff chose to file this lawsuit, creating a public record of her allegations, she voluntarily waived any protections of confidentiality she may have had surrounding those allegations. Simply stated, there is no risk, let alone a substantial risk, that any confidential information allegedly transmitted during the 2021 phone call could materially advance OMP's position in the instant case because none of the information related whatsoever to OMP's conduct, and as of the filing of this lawsuit (as well as her voluntary participation with media outlets), Plaintiff voluntarily waived any right to keep that information confidential.

## VI.   DEBORAH GORDON LAW NEVER ACQUIRED CONFIDENTIAL INFORMATION ABOUT PLAINTIFF'S CASE

The facts in *McCool v. Operative Plasterers' & Cement Masons' Intern. Ass'n of U.S. & Canada, AFL-CIO*, No. 13-13614, 2014 WL 635797 (E.D. Mich. Feb. 18, 2014), particularly in relation to the confidential and significantly harmful element of the *Dana* test, are analogous to those here. The plaintiff in *McCool* contacted an attorney and expressed his belief that he would face an adverse employment action from his employer, that he felt age discrimination was a factor in his employer's decision, and that he was contemplating filing a lawsuit against his employer should that take place.

14

*Id.* at 2. The lawyer declined representation; eventually, the lawyer's firm ended up representing the defendant employer in the plaintiff's subsequent age discrimination lawsuit. Plaintiff then moved for disqualification of defense counsel on grounds of conflict of interest stemming from his previous communications with one of the firm's attorneys, in which plaintiff claimed to have conveyed confidential information about his case. *Id.* The Court denied plaintiff's motion to disqualify, paying specific attention to plaintiff's failure to satisfy the third prong of the *Dana* test or the additional higher 'significantly harmful' burden under MRPC 1.18. *Id.* at 7. Significantly, the Court held that "the Complaint that was ultimately filed in this lawsuit, disclose[d] the very information that Plaintiff conveyed during his conversation with [defense counsel]." *Id.*

Ms. McKenna's motion to disqualify must be denied for the same reason. Even if the Court were to determine she sought out Ms. Gordon's representation for purposes other than strategic disqualification, any information she relayed to Ms. Gordon or members of Ms. Gordon's office in the "several minutes" of phone communication that took place in either 2021 or 2024 is included in the combined 205 pages of Ms. McKenna's original and subsequently amended complaints in this lawsuit. Every single one of the 22 bullet pointed "subjects" Ms. McKenna lays out in her brief in support of her motion to disqualify (ECF No. 36, PageID.1608-1609) appear in one of her complaints filed in this case. Ms. McKenna has failed to point to any confidential information that might have been transmitted from her to Ms. Gordon or Ms. Gordon's firm, or how that information could be 'significantly harmful' to her case. None of the

15

information she herself disclosed to the public when she filed this lawsuit can constitute either confidential information or significantly harmful information within the meaning of MRPC 1.18. She has failed to bear her heavy legal burden, and her motion should be denied.

A. **PLAINTIFF FAILED TO CARRY HER HEAVY BURDEN TO PROVE THAT INFORMATION SHARED WITH MS. GORDON COULD BE "SIGNIFICANTLY HARMFUL" IN THIS CASE WITHIN THE MEANING OF MRPC 1.18**

When determining whether information shared with prospective counsel is "significantly harmful" courts have looked at whether and to what degree the allegedly "significantly harmful" information could be used to the movant's disadvantage, and have indicated that "[p]erceived harms are simply too speculative to support a disqualification." *Eaton v. Meathe*, 2011 WL 5921207, at *3 (W.D. Mich. Nov. 27, 2011)(*citing In re Modanlo*, 342 B.R. 230, 237 (D. Md. 2006)).

In cases where courts found information from a prospective client to be "significantly harmful", they often emphasize the nature and breadth of the information at issue. *Factory Mut. Ins. Co. v. APComPower, Inc.*, 662 F. Supp. 2d 896, 901 (W.D. Mich. 2009)(finding a prospective client transmitting a professionally researched expert report to attorney could be significantly harmful to that individual in subsequent adverse proceedings between the parties, specifically relating to information contained in the report.)

16

Plaintiff offers no explanation as to how any of the allegedly confidential information she provided to Ms. Gordon could cause any harm to her position in this lawsuit. Plaintiff provided no documents to Ms. Gordon. No written recollection of events. No photographs. No written records of any kind. The entire universe of potential evidence that could possibly be used to harm Plaintiff's position in this case is limited to two phone calls, each lasting "several minutes", two and a half years apart.

Not only is the possible breadth of information limited to those two phone calls, but all of the information—from either of the calls—has been voluntarily shared by Plaintiff with not only the defense in this case, but with the public at large, by virtue of Plaintiff filing this lawsuit. Said another way, any harm, significant or otherwise, being perpetrated against Plaintiff's case is being done by her own hand.

Plaintiff is unable to provide any harm or disadvantage to her case with any degree of particularity. All she can offer are speculative, presumptive, and hollow statements, because all the information she claims could be harmful is information that she has voluntarily shared with the world. She is unable to point to a single legal question, no precise legal issue where she may be disadvantaged. There is simply no risk of harm to her case, and she has failed to satisfy the third prong of *Dana*.

## B. <u>PLAINTIFF CANNOT BE A PROSPECTIVE CLIENT INSOFAR AS SHE CONTACTED DEBORAH GORDON LAW IN 2024 FOR THE PURPOSES OF DISQUALIFYING THE FIRM</u>

This Court must deny Plaintiff's motion because Plaintiff sought to establish an attorney-client relationship with Ms. Gordon and her firm for the purpose of disqualification[2]. When Plaintiff called Ms. Gordon's office in 2024, she was already represented by counsel. Plaintiff admits this representation dated back to fall of 2023. The attorney representing Plaintiff attempted to contact OMP by phone on February 9 and established adversarial communications with OMP through email on February 10, 2024. (ECF No. 36-5, PageID.1635-1636). Six minutes after receiving Ms. Gordon's reply in which she states she is representing OMP, Plaintiff's attorney threatened Ms. Gordon with what appears to be a manufactured conflict of interest. (ECF No. 36-5, PageID.1634). The sequence of events at the very least raises legitimate concerns as to Plaintiff's intentions in contacting Ms. Gordon's office when she did in 2024, when Plaintiff already had an attorney representing her in the matter.

## VII.   **PLAINTIFF WAIVED ANY RIGHT TO SEEK DISQUALIFICATION**

Even if McKenna had a right to seek disqualification of Ms. Gordon in this case—which she does not—she has waived that right through her substantial delay in moving to disqualify Ms. Gordon or her law firm. "Disqualification from subsequent representation is for the protection of clients and can be waived by them." Comment to MRPC 1.9. "[C]ourts have disallowed disqualification on the basis of waiver or

---

[2] *See* MRPC 1.18 cmt. ("[A] person who communicates with a lawyer for the purpose of disqualifying the lawyer is not a "prospective client.")

18

estoppel where the moving party has failed to move for disqualification in a timely manner." *In re Valley-Vulcan Mold Co.*, 237 BR 322, 337 (B.A.P. 6th Cir. 1999). The *Valley-Vulcan* court explained:

> [A] finding [of waiver] is justified … when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had the opportunity. In [this] circumstance, the person whose confidences and secrets are at risk of disclosure or misuse is held to have waived his right to protection from that risk.

In determining whether the moving party has waived its right to object to the opposing party's counsel, the court must consider: "(1) the length of the delay in bringing the motion to disqualify, (2) when the movant learned of the conflict, (3) whether the movant was represented by counsel during the delay, (4) why the delay occurred, and (5) whether disqualification would result in prejudice to the non-moving party." *Id.* (quoting *Alexander v Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1115 (D.N.J. 1993)). "In particular, consideration should be given and inquiry made as to whether the motion was delayed for tactical reasons." *Id.*

Applying these factors, there can be no question that Plaintiff waived her right to bring the instant motion to disqualify. Plaintiff filed her first complaint in September of 2024. She waited until March 2025—nearly a full half a year—to bring this motion. Beyond that, she first learned of Ms. Gordon's representation of OMP in February of 2024—seven months before she even filed her first complaint, and thirteen months until she brought this motion. Plaintiff has been represented by counsel since October 2023. She has provided absolutely no explanation or even a suggestion of an explanation

19

as to why it has taken her this long to bring this motion. To deny OMP its right to the counsel of its choosing this far into litigation would fly in the face of equity. The only plausible answer as to why Plaintiff waited six months into litigation to bring this motion is that she seeks to manufacture a strategic advantage for herself in this litigation. She has offered no alternative explanation.

## VIII.  MS. GORDON IS NOT A "NECESSARY WITNESS" WITHIN THE MEANING OF MRPC 3.7

Perhaps Ms. McKenna's most baldly tactical maneuver in improperly seeking to disqualify OMP's counsel is her attempt to paint Ms. Gordon as a "necessary witness" in her case. Notably, Ms. McKenna cites no legal authority in the form of case law to support this claim. Michigan's Professional Rules state that "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a **necessary witness** except where…disqualification of the lawyer would work substantial hardship on the client." MRPC 3.7(a)(3) (emphasis added). Michigan courts have explicitly eschewed parties wielding MRPC 3.7 as a strategic sword—as Plaintiff here seeks to do; the rule's purpose is "not to permit the opposing party to seek disqualification as a tactical device to gain an advantage." *People v. Tesen*, 276 Mich.App. 134, 143, 739 N.W.2d 689 (2007)(*citing Smith v. Arc-Mation, Inc.*, 402 Mich. 115, 119, 261 N.W.2d 713 (1978); *Kubiak v. Hurr*, 143 Mich.App. 465, 471, 475, 372 N.W.2d 341 (1985). The party seeking disqualification under MRPC 3.7 bears the burden of showing the attorney is a necessary witness.

Plaintiff claims that Gordon is a witness as to Gordon allegedly telling Plaintiff that she would have to "move out of Michigan" if she sued Riley, and that she relied on that advice over two years later. That is nonsensical. A third party allegedly offering McKenna an opinion as to moving is not relevant to any issue in her case. Moreover, McKenna did not move out of state to practice law. As set forth above, her office is in Birmingham, Michigan, she is only licensed to practice in Michigan and her website states that she "resides" in Michigan. There is no reason for her to testify that she moved because Gordon told her to where she did not move. If Gordon were to testify, she will state that she said no such thing. Finally, Plaintiff has no legal theory as to how testimony from Gordon would prejudice her.

Plaintiff gives no reason why Ms. Gordon's testimony may somehow be relevant under the rules of evidence to proving her case. The simple explanation is that Ms. Gordon is not a necessary witness by any stretch of the imagination to Plaintiff proving the elements of her case. Ms. Gordon has no knowledge of any alleged sexual harassment, or harassment of any kind experienced by Plaintiff. Ms. Gordon has no knowledge that is in any way relevant to any alleged retaliation that Plaintiff alleges she experienced.

Seeking to disqualify Ms. Gordon as a necessary witness under MRPC 3.7 is nothing more than a desperate attempt to yet again create some strategic advantage. Perhaps that's why Plaintiff provides no support besides the existence of the rule.

21

## IX.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Elyse McKenna's Motion to Disqualify should be denied.

Dated: March 26, 2025                      Respectfully submitted,

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon
Deborah L. Gordon (P27058)
Attorneys for defendant Olsman, MacKenzie, Peacock, P.C.
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 26, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon
Deborah L. Gordon (P27058)
Attorneys for defendant Olsman, MacKenzie, Peacock, P.C.
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
