# EXHIBIT 7

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1794 Filed 03/26/25 Page 2 of 52

Ancient Brands, LLC v. Planet Stuff, LLC, Not Reported in Fed. Supp. (2018)

2018 WL 5885502

2018 WL 5885502
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

ANCIENT BRANDS, LLC, Plaintiff,

v.

PLANET STUFF, LLC, and
Howard B. Goldman, Defendants

Case No: 18-11647
|
Signed 11/09/2018

**Attorneys and Law Firms**

Mary Hyde, Honigman Miller Schwartz and Cohn LLP,
Chicago, IL, Leigh C. Taggart, Honigman Miller Schwartz
and Cohn LLP, Bloomfield Hills, MI, for Plaintiff.

Ethan R. Holtz, Jaffe Raitt Heuer & Weiss, Southfield, MI,
for Defendants.

**ORDER DENYING DEFENDANT
GOLDMAN'S AMENDED MOTION TO
DISQUALIFY HONIGMAN, MILLER,
SCHWARTZ, AND COHN, LLP (ECF No. 15)**

Sean F. Cox, United States District Judge

**\*1** Plaintiff's attorney is from Honigman. Before Plaintiff
filed its Complaint, Defendant Howard B. Goldman met
with other Honigman attorneys to discuss hiring them for
a different litigation and to sell some of his businesses.
Goldman alleges that, during these discussions, he disclosed
confidential information about his business model, and that
this information is relevant to this action. Now, Goldman
seeks to disqualify Honigman because it has a conflict of
interest with him, either as a former client or as a prospective
client. The Court heard oral arguments on this motion on
October 18, 2018.

For the reasons below, the Court will DENY Goldman's
motion to disqualify.

**BACKGROUND**

**I. Generally**

Plaintiff Ancient Brands sells dietary supplements that adhere
to the "foundational nutritional principles" that have "best
served human health and wellness needs throughout history."
Compl. ¶ 19, 21. Ancient Brands has established trademarks
and trade dress for these supplements, which "are associated
with a single source in the minds of the consuming public,
and Ancient Brands has developed substantial and valuable
goodwill in its [trademarks and trade dress]." *Id.* at ¶ 33.

Ancient Brands requires its authorized distributors to sign
a Non-Diversion Agreement, which prohibits distributers
from intentionally diverting Ancient Brands products to
unauthorized retailers. *Id.* at ¶ 37, 39. T he Agreement also
prohibits distributers from selling Ancient Brands products
on any e-commerce platform, including Amazon.com. *Id.* at
¶ 39.

This non-diversion policy is significant because Ancient
Brands offers a 100% customer-satisfaction guarantee for
its products when they are sold by authorized retailers or
through Ancient Brands's online store. *Id.* at ¶ 42. After
purchasing an Ancient Brands product from an authorized
source, an unsatisfied customer has 60 days to return the
product for a full refund. *Id.* at ¶ 42-43. This guarantee does
not attach to Ancient Brands products sold by unauthorized
sources because Ancient Brands has "no way to ascertain the
authenticity, genuineness, or quality of such products." *Id.* at
¶ 44.

Sometime in 2017, Ancient Brands discovered that Defendant
Planet Stuff, LLC, was selling products marked with Ancient
Brands trademarks and trade dress on its Amazon store.
Neither Planet Stuff nor its principal, Defendant Howard
Goldman, [1] is an authorized distributor of Ancient Brands
products. *Id.* at ¶ 48. As such, Defendants' products are not
covered by the satisfaction guarantee and, therefore, are not
authentic Ancient Brands products. *Id.* at ¶ 49.

Ancient Brands's counsel, Honigman, Miller, Schwartz, and
Cohn LLP ("Honigman") sent a cease-and-desist letter to
Defendants on November 26, 2017. *Id.* at ¶ 53. Defendants
did not respond. *Id.* at ¶ 54. Honigman sent a second letter
on February 15, 2018. *Id.* at ¶ 55. Again, Defendants did
not respond. *Id.* Both of these letters were on Honigman's
letterhead. (ECF No. 1-4, PageID 40; ECF No. 1-5, PageID
46)

Ancient Brands, LLC v. Planet Stuff, LLC, Not Reported in Fed. Supp. (2018)
2018 WL 5885502

 **\*2** On May 24, 2018, Ancient Brands filed its Complaint, alleging violations of the Lanham Act and tortious inference with a contractual relationship. Compl. ¶ 1. The parties are currently in discovery, which is set close on December 12, 2018.

## II. The Current Motion

On September 4, 2018, Defendant Goldman filed this motion to disqualify Honigman from representing Ancient Brands. (ECF No. 15). Goldman argues that Honigman has a conflict of interest because he previously met with Honigman attorneys to discuss his other businesses and other pending litigation.

Goldman states that, in or about January 2017, he repeatedly met with Honigman attorney Joshua Opperer to discuss selling certain companies. Goldman Aff. ¶ 5-6. At the hearing on this motion, defense counsel stated that Planet Stuff was not a subject of these conversations. Instead, Goldman was interested in selling one of his other businesses, H&H Wholesale Services, Inc. During these meetings, and in several e-mails and telephone conversations, Goldman says he "provided Opperer with extensive confidential information about how [he] conduct[s his] reselling business," so that Opperer could help market his companies. *Id.* at ¶ 7. Goldman does not say that these conversations led to a formal attorney-client relationship.

Goldman also states that, in 2017, he was sued by Abbott Laboratories ("the Abbott action"), and considered hiring Honigman attorney Jeffrey Lamb to file an indemnification suit against an upstream distributer. *Id.* at ¶ 12. To this end, Goldman "sent numerous emails to Lamb containing confidential information, including but not limited to attorney-client privileged communications with [his] New York counsel" for the purpose of obtaining legal advice for the Abbot action and the possible indemnification suit. *Id.* at ¶ 13. He also had extensive phone calls with Lamb, during which he disclosed confidential information about how he conducts his reselling business. *Id.* at ¶ 14. Ultimately, Goldman "chose not to engage" Lamb for the indemnification suit. *Id.* at ¶ 15. [2]

## ANALYSIS

### I. Motions to Disqualify

A motion to disqualify counsel is the proper method for a party to bring to the court's attention an alleged conflict

of interest or breach of ethical duty by opposing counsel. *DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d 760, 770 (E.D. Mich. 2003). However, "motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999), *aff'd*, 5 F. App'x 396 (6th Cir. 2001) (citation and internal quotation marks omitted).

Disqualification should only be utilized when there is a "reasonable possibility that some specifically identifiable impropriety" actually occurred. *Moses v. Sterling Commerce (America), Inc.*, 122 F. App'x 177, 183-184 (6th Cir. 2005) (quoting *Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 257 (S.D. Ohio 1991) ). "The party seeking disqualification bears the burden of demonstrating specifically how and as to what issues in the case the likelihood of a prejudice will result." *Rymal v. Baergen*, 262 Mich. App. 274, 319; 686 N.W.2d 241 (2004). When confronted with a motion to disqualify, the court "must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988).

 **\*3** The Michigan Rules of Professional Conduct (MRPC) are the proper guidelines against which to measure the appropriateness of an attorney's conduct for the purpose of determining whether he should be disqualified. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Alticor, Inc.*, 466 F.3d 456, 457-58 (6th Cir. 2006), *vacated on other grounds*, 472 F.3d 436 (6th Cir. 2007).

### II. The Standard for Conflicts Arising from Former Clients

MRPC 1.9 governs conflicts of interest arising from a former client:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client consents after consultation.

Case 2:24-cv-12347-BRM-EAS   ECF No. 40-8, PageID.1796   Filed 03/26/25   Page 4 of 52

Ancient Brands, LLC v. Planet Stuff, LLC, Not Reported in Fed. Supp. (2018)

2018 WL 5885502

The Sixth Circuit applies a three-part test for disqualification pursuant to MRPC 1.9: (1) a past attorney-client relationship; (2) the subject matter of the prior attorney-client relationship is substantially related to the subject matter of the present action; and (3) the attorney acquired confidential information from the party seeking disqualification. *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882, 889 (1990).

### A. A Past Attorney-Client Relationship

Goldman does not argue that he ever had an express attorney-client relationship with Honigman. Rather, he argues that he had an implied attorney-client relationship. (ECF 21, PageID 456-457). To determine whether an implied attorney-client relationship existed, the Court must focus on "the putative client's subjective belief that he is consulting a lawyer in his professional capacity, and on his intent to seek professional legal advice." *MJK Family, LLC v. Corporate Eagle Management Services, Inc.*, 676 F.Supp.2d 584, 592 (E.D. Mich. 2009) (citations omitted). The Court must also determine whether "the purported client reasonably believes an attorney-client relationship has been created." *Id.*

#### i. Selling H&H Wholesale (Opperer)

Based on Goldman's affidavit, he did not intend to seek legal advice when he supposedly provided confidential information about his other business to Opperer. Rather, he provided this information so that "Opperer could assist with marketing these companies." Goldman Aff. ¶ 7. Thus, Goldman has failed to establish that he reasonably believed he had an attorney-client relationship with Honigman at that time.[3]

#### ii. The Indemnification Action (Lamb)

For the indemnification action, Goldman acknowledges that "[u]ltimately, [he] chose not to engage [Honigman]...." *Id. at* ¶ 15. This statement shows that, during Goldman's conversations with Lamb, he understood that Lamb was not his attorney.[4] Goldman was, admittedly, in the process of deciding whether or not to hire Lamb. Thus, Goldman has also failed to establish that he believed he had an attorney-client relationship with Honigman at that time.

**\*4** For these reasons, the Court concludes that Goldman has not met *Dana*'s first prong.

### B. Substantially Related Subject Matter & Confidential Information

Moreover, Goldman has failed to show that he meets either the second or third prong of the *Dana* test. The Sixth Circuit has articulated a test for whether matters are substantially related that also incorporates the use of confidential information. As such, the Court will address the second and third *Dana* prongs together.

To determine whether the purported attorney-client relationships are substantially related, the Court "must look to the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the now adverse client." *Bowers v. Ophthalmology Group*, 733 F.3d 647, 652 (6th Cir. 2013); *See also U.S. ex rel. Guzall v. City of Romulus*, 2014 WL 5090856 at * 6 (E.D. Mich. 2014) (applying *Bowers*'s "substantial relationship" test to the MRPC). Thus, the Court "must examine whether there is a substantial risk that confidential information as would normally or typically have been obtained in [the attorney]'s prior representation [of the former client] would materially advance [the opposing party]'s position in the present case." *Bowers*, 733 F.3d at 653.

Although a former client has no obligation to specifically identify the confidential information he seeks to protect, *Atmosphere Hospitality Mgmt. Serv., LLC v. Royal Realties, LLC*, 28 F.Supp.3d 692, 698 (E.D. Mich. 2014), general information about business practices does not raise confidentiality concerns that mandate disqualification. *Marks One Car Rental, Inc. v. Auto Club Group Ins.*, 2014 WL 12721922 at *3 (E.D. Mich. 2014); *See also Quicken Loans v. Jolly*, 2008 WL 2566373 *5 (E.D. Mich. 2008); *Haworth, Inc. v. Wickes Mfg. Co.*, 1994 WL 16099352 (W.D. Mich. 1994) (finding, after an *in camera* review, that the information acquired by the law firm was much more akin to general information than to specific knowledge of facts pertaining to the current lawsuit); *Int'l Paper Co. V. Lloyd Mfg. Co.*, 555 F.Supp. 125, 136 (N.D. Ill. 1982) (general knowledge of a company's inner workings acquired during another representation is not sufficient to warrant disqualification).

Ancient Brands, LLC v. Planet Stuff, LLC, Not Reported in Fed. Supp. (2018)
2018 WL 5885502

Here, Goldman has not given any details about what kind confidential information he provided to Honigman or how this information could be used against him. Although Goldman is not obligated to do so, he still bears the "burden of demonstrating specifically how and as to what issues in the case the likelihood of a prejudice will result." *Rymal*, 262 Mich. App. at 319. The only evidence offered by Goldman is his affidavit, wherein he states that he provided Opperer and Lamb with confidential information about how he "conducts his re-selling business." Goldman Aff. ¶ 6, 14. This disclosure appears to be general information about business practices, which does not amount to confidential information for the purposes of disqualification. For these reasons, the Court concludes that Goldman has not satisfied the second or third prong of *Dana*.

### III. Standard for Conflicts Arising from Prospective Clients

**\*5** In the alternative, Goldman argues that, even if he does not satisfy *Dana*'s first prong by establishing a past attorney-client relationship, Honigman is still conflicted because he was a prospective client. (ECF No. 21, PageID 457 n.1).

This argument implicates the recently promulgated MRPC 1.18, which became effective on September 1, 2018. In full, MRPC 1.18 reads

(a) A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be **significantly harmful** to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:

(1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:

(2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and

(i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(ii) written notice is promptly given to the prospective client.

(emphasis added)

MRPC 1.18 tracks Sixth Circuit precedent, which recognizes that "[w]hen a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client." *Banner v. City of Flint*, 99 Fed. App'x 29, 36 (6th Cir. 2004). Courts in this district have found that a "motion to disqualify an attorney who has met with, but was not retained by, a prospective client 'should be analyzed the same as a motion to disqualify pursuant to a former client relationship, with the additional requirement that the lawyer receive information that could be 'significantly harmful,' rather than merely confidential as required by the Sixth Circuit's three-prong *Dana Corp.* test.' " *Glenn v. Nasscond, Inc.* 2016 WL 409409 at \*3 (E.D. Mich. Feb. 3, 2016).

Goldman has not satisfied the high bar of showing that the information he disclosed would be significantly harmful. As explained above, Goldman only provided information about how he "conducts his re-selling business," Goldman Aff. ¶ 6, 14, which appears to be general business information. The Court does not see how general knowledge of Goldman's business model could be significantly harmful.

Second, it appears that Honigman has adequately screened Opperer and Lamb from this matter, pursuant to MRPC 1.18(d). Lamb was screened, and Goldman was notified of this screen, on August 31, 2018—the day before MRPC 1.18(d) actually imposed a screening obligation. (ECF No. 18-7, PageID 451) Opperer was screened on September 5,

2018 WL 5885502

2018, the day after Goldman filed the current motion and first notified Honigman of that potential conflict. (ECF No. 18-7, PageID 450). Given that MRPC 1.18 just went into effect, the Court concludes that Honigman complied with its ethical obligations.

### CONCLUSION

**\*6** Goldman has failed to establish that he had an attorney-client relationship with Honigman or that he provided information that would raise confidentiality concerns.

Goldman has also failed to show that, as a former prospective client, he would be significantly harmed by information he provided during his consultations with Honigman. For these reasons, the Court DENIES Goldman's Motion to Disqualify Honigman (ECF No. 15).

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 5885502

---

### Footnotes

1    Although the pleadings do not clearly establish the relationship between Goldman and Planet Stuff, at the hearing on this motion, defense counsel stated that Goldman is Planet Stuff's "principal."

2    Goldman also notes that he has "a long history with [Honigman], who has served as his counsel and/or counsel for companies he is involved with dating back many years, including in trademark related/re-selling matters in 2009, 2005, and earlier." Def.'s Mem. 2 (ECF No. 15, PageID 160). Goldman does not provide any more detail, and, at the hearing, defense counsel stated that these matters were not material to this motion.

3    Moreover, given Goldman's "long history" with Honigman, the Court doubts that Goldman subjectively believed an attorney-client relationship existed when, apparently, no engagement letter was signed, no fee structure was formally discussed, and no fees were actually billed.

4    This statement also shows that, as described in Footnote 3, Goldman *actually knows* how hiring a lawyer works.

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Bowman v. Bank of Delaware, Not Reported in F.Supp. (1988)

1988 WL 54669

1988 WL 54669
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

Cyril BOWMAN, Plaintiff,

v.

BANK OF DELAWARE, Defendant.

CIV.A. No. 87–44–CMW.
|
May 24, 1988.

**Attorneys and Law Firms**

Leo John Ramunno, Wilmington, Del., for plaintiff.

Sheldon N. Sandler, Young, Conaway, Stargatt & Taylor of Wilmington, Del. and Lydia C. Blancato, Bank of Delaware, Wilmington, Del., for defendant.

*OPINION*

CALEB M. WRIGHT, Senior District Judge.

 **\*1** This motion to disqualify one of defendant's attorneys arises out of an employment discrimination suit in which plaintiff Cyril Bowman alleges that defendant Bank of Delaware unlawfully terminated his employment because of his national origin. Bowman contends that Sheldon Sandler should be disqualified as counsel for defendant because of a potential conflict of interest created by a telephone conversation Bowman allegedly had with Sandler.

Bowman claims that he called Sheldon Sandler on March 4, 1986, after being referred by two acquaintances, to inquire whether Sandler would represent him in a suit against defendant. Bowman alleges that he spoke to Sandler for 25 to 30 minutes about the details of his case, and that Sandler asked him several questions concerning the length of his employment, the circumstances of his dismissal, and the people involved with his termination. Bowman further alleges that Sandler said that he would take the case but that it would cost plaintiff $30,000 plus costs. Bowman claims that he then ended the conversation because he did not have that much money. He contends that he had assumed throughout the conversation that the content was confidential between attorney and client.

Sandler tells quite a different story, however. He does not recall any contact with Bowman during March of 1986, nor at any time before he was retained by defendant on March 13, 1987. His memory has not been jogged despite having worked on the case for fourteen months, during which time he briefed defendant's motion to dismiss and prepared for two depositions of Bowman, each of which was cancelled by Bowman. Sandler found no record of the alleged telephone call, which Bowman claims was 25 to 30 minutes long, in his time sheets for that day or for the surrounding days, even though he did find records of telephone conversations with other people who sought his services during the same period of time.

Sandler does recall, however, a telephone call he received during May or June of 1987, from a person with a Caribbean accent who called about an employment problem. After Sandler asked who the caller's employer was and learned that it was the Bank of Delaware, he ended the conversation by telling the caller, who never identified himself, that he could not represent him because he already represented the Bank. Sandler believes that the call could have been from Bowman because he does have an accent, although Bowman denies having made such a call.

The possibility of a conflict of interest was first broached in a letter from Sheryl Rush–Milstead, plaintiff's first attorney, to Sandler on July 8, 1987. Sandler responded by letter with his version of the facts. Rush–Milstead replied by letter on July 13, 1987, that "I accept your statement that you had no telephonic conversation with Bowman prior to his retaining my services. I will add that Bowman was quite emphatic in that he did have said consultation with you." Raymond Radulski, another attorney contacted by Bowman, later discussed the possibility of a conflict with Lydia Blancato, Sandler's co-counsel, who replied that the matter had been resolved. Consequently, no motion to disqualify was filed at that time. Bowman's current attorney, Leo John Ramunno, entered his appearance in this case on December 11, 1987. On January 20, 1988, Bowman filed this Motion to Disqualify Sandler on the basis that, because Sandler had received confidences during the alleged telephone conversation, it would be unfair and unethical for Sandler to continue his involvement in the case.

The Court has a duty to examine all charges of ethical violations in cases before it, and may disqualify an attorney for acting unethically or for failing to avoid the appearance of impropriety. *Richardson v. Hamilton Int'l Corp., 469 F.2d*

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1800 Filed 03/26/25 Page 8 of 52
Bowman v. Bank of Delaware, Not Reported in F.Supp. (1988)

1988 WL 54669

1382, 1385–86 (3d Cir.1972), *cert. denied,* 411 U.S. 986 (1973). Although Bowman has not relied on any particular authority in his motion, the most applicable rule is Delaware Lawyer's Rule of Professional Conduct 1.9, which states:

**\*2** RULE 1.9. CONFLICT OF INTEREST: FORMER CLIENT.

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Rule 1.9 is designed to protect a client from having his attorney reveal confidences obtained during his representation to his disadvantage in a later proceeding. Under the substantial relationship test adopted by this Court, *Satellite Fin. Planning v. First Nat'l Bank,* 652 F.Supp. 1281, 1293 (D.Del.1987) ("Disqualification is appropriate when the subject of the new litigation is substantially related to the subject matter of the past representation."); *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.,* 632 F.Supp. 418, 422 (D.Del.1986), it is clear that if Bowman were indeed a former client of Sandler, the Court should disqualify Sandler because the matter involved is the same litigation, and Sandler's conduct would amount to the serial representation of two parties on opposite sides of the same lawsuit. The question the Court must answer is thus whether Bowman was ever a client of Sandler.

The only contact Bowman alleges to have had with Sandler was a single disputed telephone call during which he claims to have sought Sandler's representation. If this contact established an attorney-client relationship, then the Court would be required to disqualify Sandler because the Court must presume that confidences are communicated to an attorney during the representation of a client. *Satellite,* 652 F.Supp. at 1283. Although a fiduciary relationship in which client confidences must be protected may arise from a "preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment

does not result," *Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1319 (7th Cir.), *cert. denied,* 439 U.S. 955 (1978), it is not clear whether such a consultation occurred in this case. Therefore, the Court will take a practical approach and examine the facts of this case along with the policies behind the rules of professional conduct. *See Nemours,* 632 F.Supp. at 423 ("Resolving the question of whether to disqualify counsel cannot be accomplished through mechanical means, but requires a careful balancing of the goals and objectives of professional conduct.").

Sandler does not recall such a conversation ever occurring and he does not recall any information that may have been communicated by Bowman. He has been deeply involved in the case for fourteen months, has not yet had any recollection of such a telephone conversation, and believes it to be extremely unlikely that he would remember it in the future. Consequently, there is no chance that confidences might be revealed during Sandler's representation of defendant and there would be no detriment to Bowman if Sandler were to remain in the case.

**\*3** The fact that there is a dispute concerning whether the telephone conversation ever occurred, combined with the facts that the case has been progressing for fifteen months and Bowman's prior attorney did not previously file a motion to disqualify, lead the Court to deny Bowman's motion. Although the Court must protect against the appearance of impropriety, the Court must also be cautious when deciding motions to disqualify when the facts are not clear. A litigant should, absent a genuine conflict of interest, be able to choose his counsel. The Court must be wary so as to prevent motions to disqualify from being used as just another weapon in the litigation arsenal. Motions to disqualify are subject to abuse because they can greatly delay an action and can cause great expense and inconvenience to a client whose counsel has been disqualified. The integrity of the legal system could be damaged if attorneys could be disqualified on the basis of a single, disputed, undocumented telephone call.

Under the circumstances of this case as presented in the affidavits of Bowman and Sandler, plaintiff did not make a sufficient showing that the alleged conversation took place to warrant disqualifying Sandler under Rule 1.9.

An Order will issue in conformity with this Opinion.

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1801 Filed 03/26/25 Page 9 of 52

**Bowman v. Bank of Delaware, Not Reported in F.Supp. (1988)**
1988 WL 54669

**All Citations**

Not Reported in F.Supp., 1988 WL 54669

---

**End of Document**                                       © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:24-cv-12347-BRM-EAS    ECF No. 40-8, PageID.1802    Filed 03/26/25    Page 10 of 52
Cohen v. Strouch, Not Reported in F.Supp.2d (2011)
2011 WL 1143067

2011 WL 1143067
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Zena COHEN, Plaintiff,
v.
Marci B. STROUCH and Daiichi
Sankyo, Inc., Defendants.

No. 10 Civ. 7828(DLC).
|
March 24, 2011.

**Attorneys and Law Firms**

David Jaroslawicz, Jaroslawicz & Jaros, LLC, New York, NY, the plaintiff.

Bryon L. Friedman, Littleton, Joyce, Ughetta, Park & Kelly, LLP, New York, NY, James C. Ughetta, Littleton, Joyce, Ughetta, Park & Kelly LLP, Purchase, NY, the defendants.

*OPINION & ORDER*

DENISE COTE, District Judge.

**\*1** Defendants Marci B. Strouch ("Strouch") and Daiichi Sankyo, Inc. ("DSI," and together, "Defendants") have moved to disqualify counsel for plaintiff Zena Cohen ("Cohen") in this action. For the following reasons, the motion is granted.

BACKGROUND
This action arises out of a September 27, 2010 motor vehicle accident. Cohen, the driver of one of the vehicles, claims that she suffered severe injuries as a result of the crash. There was also a passenger in Cohen's vehicle, Jeny Wiskautan ("Wiskautan"), who is not a party to this action. The driver of the other vehicle involved in the accident was defendant Strouch. Cohen alleges that at the time of the accident, Strouch was driving her vehicle within the scope of her employment for defendant DSI. Cohen alleges that the defendants' negligence resulted in her physical injury and emotional damages.

Wiskautan has brought a separate action in state court arising out of the same car accident against Cohen, Strouch and DSI, alleging that these parties' negligence resulted in her severe physical injury and emotional damages (the "State Court Action"). Wiskautan's complaint alleges that all three defendants should be jointly and severally liable for her injuries.

Cohen concedes that her counsel in this action, the firm Jaroslawicz Jacobs, LLC ("Jaroslawicz Jacobs"), is affiliated with Elizabeth Eilender ("Eilender"), who represents Wiskautan in the State Court Action. The website of Jaroslawicz Jacobs lists Eilender as "of counsel" and states that she is "one of the firm's senior trial attorneys."

Cohen filed this action on October 13, 2010. Defendants answered in November 2010 and filed this motion to disqualify on February 7, 2011. The motion was fully submitted on February 14. [1]

DISCUSSION

I. Attorney Disqualification in the Context of Concurrent Representation of Parties with Adverse Interests
"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Incorporated Village of Valley Stream,* 409 F.3d 127, 132 (2d Cir.2005) (citation omitted). Furthermore, a "court is under a continuing obligation to supervise the members of its Bar." *Dunton v. County of Suffolk, State of New York,* 729 F.2d 903, 909 (2d Cir.1984) (citation omitted).

"In deciding whether to disqualify an attorney, a district court must balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *GSI Commerce Solutions, Inc. v. Babycenter L.L.C.,* 618 F.3d 204, 209 (2d Cir.2010) (citation omitted). Motions to disqualify counsel are subject to strict scrutiny because of their potential to be used for tactical purposes. *Murray v. Metropolitan Life Ins. Co .,* 583 F.3d 173, 178 (2d Cir.2009). "[E]ven when made in the best of faith, such motions inevitably cause delay" in the litigation. *Bd. of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979). As the Second Circuit has explained:

> **\*2** [D]isqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's

*Cohen v. Strouch, Not Reported in F.Supp.2d (2011)*

2011 WL 1143067

conflict of interests ... undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation.

*Bobal v. Rensselaer Polytechnic Inst.,* 916 F.2d 759, 764–65 (2d Cir.1990) (quoting *Nyquist,* 590 F.2d at 1246). In reviewing disqualification motions, courts "often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules," however, "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video,* 409 F.3d at 132. "Instead, disqualification is warranted only if an attorney's conduct tends to taint the underlying trial." *GSI,* 618 F.3d at 209 (citation omitted).

When a conflict of interest is found, "[a]n attorney's conflicts are ordinarily imputed to his firm based on the presumption that associated attorneys share client confidences." *Hempstead Video,* 409 F.3d at 133. Therefore,

if one attorney in a firm is disqualified from representing a client, then all attorneys in the firm are disqualified. This is so because there is an irrebuttable presumption of shared confidences among attorneys employed by the firm which forecloses the firm from representing others in the future in substantially related matters.

*Solow v. W.R. Grace & Co.,* 83 N.Y.2d 303, 306 (1994) (citation omitted). "[D]isqualification extends to individuals associated with a firm in a lesser capacity, for example, a law clerk. And we have never believed that labels alone [of] partner, clerk, co-counsel should control our decisions in so sensitive an area." *Fund of Funds, Ltd. v. Arthur Anderson & Co.,* 567 F.2d 225, 235 (2d Cir.1977) (citation omitted).

"One established ground for disqualification is concurrent representation, an attorney's simultaneous representation of one existing client in a matter adverse to another

existing client." *GSI,* 618 F.3d at 209. "Because concurrent representation is prima facie improper, it is incumbent upon the attorney to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation. [The Second Circuit has] noted that this is a burden so heavy that it will rarely be met." *Id.* (citation omitted).

The New York Rules of Professional Conduct, as adopted on April 1, 2009, includes Rule 1.7, entitled "Conflict of Interest: Current Clients":

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:

(1) *the representation will involve the lawyer in representing differing interests;* or

(2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

**\*3** (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) *the representation does not involve the assertion of a claim by one client against another client* represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

22 NYCRR § 1200.7 ("Rule 1.7") (emphasis supplied). Comment 17 to Rule 1.7 describes conflicts under Rule 1.7(b)(3) as "nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal." New York State Bar Association, *Comments to the New York Rules of Professional Conduct* 38 (amended January 28, 2011), *available at* http:// www.nysba.org/ Content /NavigationMenu/ForAttorneys/ProfessionalStanda

Cohen v. Strouch, Not Reported in F.Supp.2d (2011)

2011 WL 1143067

rdsforAttorneys/NYRulesofPro fessionalConductupdatedcommentsjan2011.p. Rule 1.10(a) of the New York Rules of Professional Conduct provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8 or 1.9, except as otherwise provided therein." 22 NYCRR § 1200.10(a) ( "Rule 1.10(a)").

New York courts have found that it is a "well-established rule that a lawyer may not represent a client in a matter and thereafter represent another client with interests materially adverse to interests of the former client in the same or a substantially related matter." *Kassis v. Teacher's Ins. & Annuity Ass'n,* 93 N.Y.2d 611, 615–16 (1999). Rule 1.7 shows that this principle holds with equal, and perhaps greater, force when the representations are concurrent. New York courts have applied this principle specifically to concurrent representation of both the driver of an automobile involved in an accident as well as a passenger in the same automobile. Even when the driver and passenger are family members and co-plaintiffs in an action, concurrent representation of these parties will result in a conflict of interest due to their differing interests. *Sidor v. Zuhoski,* 690 N.Y.S.2d 637, 638–39 (2d Dep't 1999); *Pessoni v. Rabkin,* 633 N.Y.S.2d 338, 338–39 (2d Dep't 1995).

The concurrent representation of Cohen and Wikautan in actions arising out of the same motor vehicle accident by attorneys associated with each other at Jaroslawicz Jacobs is a violation of Rule 1.7, prima facie improper and requires disqualification in this Circuit. [2] *See GSI,* 618 F.3d at 209; Rule 1.7. It is undisputed that Wiskautan has brought a claim against Cohen in the State Court Action seeking to hold Cohen jointly and severally liable for her injuries related to the motor vehicle accident. There is an actual conflict of interest because Jaroslawicz Jacobs concurrently represents clients whose interests are clearly adverse to one another, an even more obvious conflict than the hypothetical ones addressed by *Sidor* and *Pessoni,* where counsel were also disqualified. *Sidor,* 690 N.Y.S.2d at 638–39; *Pessoni,* 633 N .Y.S.2d at 338–39. Thus, Jaroslawicz Jacobs cannot meet the "heavy" burden of showing that there is "no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *GSI,* 618 F.3d at 209.

II. Standing

**\*4** Cohen argues that this motion should be denied because Defendants have no standing. Defendants are not current or former clients of Jaroslawicz Jacobs, and Cohen correctly points out that many of the leading cases on the issue of concurrent representation, including those cited by Defendants, addressed motions to disqualify brought by parties who themselves were current or former clients of the law firm they sought to disqualify. *See GSI,* 618 F.3d 204; *Hempstead Video,* 409 F.3d 127.

Even if Defendants lack standing, however, this does not mean that the conflict issues should not be addressed or that Defendants brought the motion in bad faith. Quite to the contrary, "[a]ttorneys are officers of the court, and are obligated to adhere to all disciplinary rules and to report incidents of which they have unprivileged knowledge involving violations of a disciplinary rule." *Dunton,* 729 F.2d at 909 (citation omitted). Even when the interests of their client are unaffected by a violation of ethical disciplinary rules, opposing counsel should call them to the attention of the court. *Id.* Any lack of standing is moot, since the court should exercise its "inherent power to preserve the integrity of the adversary process" when possible conflicts arise. *Hempstead Video,* 409 F.3d at 132 (citation omitted).

III. Unavoidable Conflict

Cohen also argues that any possible conflict is avoidable, as Wiskautan's claim against Cohen is dependent on whether the Defendants, which are also defendants in the State Court Action, claim that Cohen was negligent or otherwise culpable for the motor vehicle accident. Therefore, Cohen, her husband, and Cohen's counsel all affirm that they believe that the Jaroslawicz Jacobs will be able to avoid any conflict during the concurrent representation, because, they allege, the fault clearly lies with Defendants alone. Cohen further argues that it is beneficial for there to be coordination between her attorneys and Wiskautan's counsel, and that they are "united in interest" against the Defendants.

But Wiskautan, as might be expected from someone in her position, has levied claims against all parties who might be responsible for her damages and who could be a source of recovery, including Cohen. The State Court Action complaint clearly seeks to hold Cohen jointly and severally liable with the Defendants. Wiskautan thus has an interest directly contrary to Cohen's—namely, her recovery at Cohen's expense.

2011 WL 1143067

Where, as here, an attorney or firm takes on multiple representations that will require advocating a position for one client that would directly adversely affect another client's interest, there is an "imminent threat of a serious conflict," making disqualification appropriate from the start of the proceedings. *Dunton,* 729 F.2d at 907. Even where a firm "strenuously ... labor[s] to avoid any prejudice to the interests" of the clients it is concurrently representing, participation in a lawsuit by one client against the other will result in a violation of professional standards." *Fund of Funds,* 567 F.2d at 233. Even if an actual conflict is somehow avoided, a firm must be disqualified to "avoid not only the fact, but even the appearance, of representing conflicting interests." *Cinema 5 Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1387 (2d Cir.1976) (citation omitted).

 **\*5** Even where a passenger has *not* brought a claim against the driver of the car they were in at the time of an accident, a conflict arises from the concurrent representation of driver and passenger because there is the potential for such a claim. *See, e .g., Sidor,* 690 N.Y.S.2d at 638–39; *Shaikh ex rel. Shaikh v. Waiters,* 710 N.Y.S.2d 873, 875 (Nassau County Sup.Ct.2000) ("[m]erely because [a passenger] fails to assert a counterclaim against [a driver], does not resolve the issue of [the driver's] negligence, so to eliminate the potentially differing interests" of these clients). This conflict, therefore, is unavoidable.

This conflict is evident even within the briefing on this motion. Jaroslawicz Jacobs filed with its opposition memorandum of law an affidavit by Cohen which describes Wiskautan's injuries as "minor." The affidavits of both Cohen and Cohen's husband also state that recovery by Wiskautan could not possibly exceed Cohen's insurance coverage. These statements appear to be against the interest of Wiskautan, who has alleged in the State Court Action that she suffered "severe and permanent injuries," and who, it can be assumed, would not want to admit at this early stage in the State Court Action a limitation of her potential recovery. It is precisely this type of conflict that is meant to be avoided by the rule against concurrent representation of clients with adverse interests.

IV. Non–Waivablility of This Conflict

Cohen argues that even if there is an actual conflict of interest, it can be waived, and that she does indeed waive it through her affidavit. But, Rule 1.7 states that a conflict is non-waivable when "the representation ... involve[s] the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before

a tribunal." Rule 1.7(b). Even when "both affected clients have provided affidavits stating that each has been fully informed by counsel of the implications of the simultaneous representation, and each consents," New York law "also requires a belief under a reasonable lawyer standard ... that the attorney will be able to provide competent and diligent representation to each affected client." *Paladino v. Skate Safe, Inc.,* 2010 WL 3359550, at \*2 (Nassau County Sup.Ct. Aug. 16, 2010) (citation omitted). When one party's interest could adversely affect the other, a court may conclude that "such a belief would not be reasonable." *Id.* at \*3. Therefore, "client consent that is given is not valid if the objective test of a disinterested lawyer is not met." *Shaikh,* 710 N.Y.S.2d at 876 (finding that "a disinterested lawyer would not believe that there can be competent representation" where a firm concurrently represents a driver and passenger involved in a motor vehicle accident). [3]

Cohen is correct that some of the cases relied upon by Defendants found that disqualification was necessary only in the absence of client consent. *See, e.g., GSI,* 618 F.3d at 212–14. But these cases addressed conflicts arising from representation of a client who is adverse either to the interests of another client in *unrelated* matters, or to the interests of a *former* client. Here, however, Jaroslawicz Jacobs concurrently represents two clients with adverse interests in the same matter, albeit in different courts. [4]

V. Delay

 **\*6** Cohen argues that her counsel's concurrent representation of Wiskautan is "not a surprise" to the Defendants, and that Defendants impermissibly delayed by bringing this motion two months after first mentioning the potential conflict during a December 6, 2010 conference before the Court. There was no delay here; Defendants promptly raised this issue at the December 6 conference, and after Jaroslawicz Jacobs was given time to withdraw and failed to do so, Defendants filed this motion. [5]

CONCLUSION

Jaroslawicz Jacobs's concurrent representation of Cohen in this action and Wiskautan in the State Court Action is a violation of Rule 1.6 and of the standards in this Circuit for professional conduct. [6] Defendants' motion to disqualify Jaroslawicz Jacobs as counsel for Cohen is granted. The Clerk of Court shall terminate the appearance of any attorneys associated with Jaroslawicz Jacobs in this action.

Cohen v. Strouch, Not Reported in F.Supp.2d (2011)

2011 WL 1143067

Cohen may proceed in this action *pro se* or find new counsel. A scheduling order accompanies this Opinion.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1143067

---

## Footnotes

1    Cohen's recitation of the parties' discovery disagreements is irrelevant to this motion to disqualify.

2    Cohen does not argue that Eilender is not sufficiently associated with Jaroslawicz Jacobs for her representation of Wiskautan to create a potential conflict. The evidence presented, including Eilender's biography on the Jaroslawicz Jacobs website and Cohen's husband's affidavit stating that he values the coordination of strategy between counsel for Cohen and Wiskautan, indicate that Eilender is a close affiliate, and perhaps an integral member, of Jaroslawicz Jacobs.

3    Even if the conflict of concurrent representation in related matters were waivable, Jaroslawicz Jacobs could not cure it without the waiver of Wiskautan. Jaroslawicz Jacobs has not presented any evidence that Wiskautan has waived this conflict, or is even aware of it.

4    Cohen argues that it is "misleading and inappropriate" for Defendants to cite to cases in which disqualification motions were denied, and likens this to the ethical violation of failing to cite controlling authority, as in *Cicio v. City of New York,* 469 N.Y.S.2d 467 (2d Dep't 1983). This inflammatory charge is itself misleading and inappropriate, as Defendants cited to these cases appropriately for general principles of professional responsibility rules, and do not misrepresent their holdings.

5    Cohen also seems to argue that this motion was brought in order to prevent this case from proceeding. This argument, of course, misunderstands the effect of a motion to disqualify. Although Jaroslawicz Jacobs is disqualified from continuing this representation, Cohen may proceed in this suit *pro se* or find replacement counsel to represent her for the remaining proceedings and, if necessary, trial.

6    The motion for sanctions is frivolous. It was Defendants' duty to bring this conflict to the Court's attention.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1807 Filed 03/26/25 Page 15 of 52
Courser v. Allard, Not Reported in Fed. Supp. (2016)
2016 WL 10520134

2016 WL 10520134
Only the Westlaw citation is currently available.
United States District Court, W.D.
Michigan, Southern Division.

Todd COURSER, Plaintiff,
v.
Keith ALLARD, et al., Defendants.

Case No. 1:16-CV-1108
|
Signed 11/28/2016

**Attorneys and Law Firms**

Matthew S. Deperno, Deperno Law Office PLLC, Kalamazoo, MI, for Plaintiff.

Sarah Riley Howard, H. Rhett Pinsky, Pinsky Smith Fayette & Kennedy LLP, Grand Rapids, MI, Douglas E. Mains, Gary P. Gordon, Jason Thomas Hanselman, Kyle Michael Asher, Dykema Gossett PLLC, Lisa M. Geminick, MI Dept. Attorney General Civil Litigation, Employment & Elections, Mark E. Donnelly, MI Dept. Attorney General (Employ, Elect, Torts), Rock A. Wood, Michigan Department of Attorney General, Lansing, MI, Cameron Jezewski Evans, Evans Law Group, P.C., Rochester, MI, Andrew Michael Pauwels, James E. Stewart, Honigman Miller Schwartz and Cohn LLP, Detroit, MI, Leonard M. Niehoff, Butzel Long PC, Ann Arbor, MI, for Defendants.

## MEMORANDUM ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ATTORNEYS DONNELLY, GEMINICK AND WOOD

GORDON J. QUIST, UNITED STATES DISTRICT JUDGE

**\*1** Plaintiff, Todd Courser, has filed a motion to disqualify attorneys Mark Donnelly, Lisa Geminick and Rock Wood, all of whom are employed by the Michigan Department of Attorney General and represent Defendants William Schuette, the Michigan State Police (MSP), Jeremy Brewer, Kraig Britvec, and David Dwyer (collectively the non-legislative State Defendants). Courser argues that disqualification is required pursuant to Michigan Rule of Professional Conduct (MRPC) 1.7 and possibly Rules 1.6 1.8, 1.9, 1.10, 1.11, 3.3, and 3.4 because: (1) the same attorneys cannot represent all of the non-legislative State Defendants; (2) an attorney from the

law firm of Dickinson Wright, PLLC cannot represent those Defendants; and (3) employees of the Michigan Attorney General's Office cannot represent Defendant Schuette in his individual capacity.

The motion will be denied.

Motions to disqualify are "viewed with disfavor," and a party seeking to disqualify opposing counsel carries a heavy burden and must satisfy a high standard of proof. *In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999) (internal quotation marks omitted). Courts have recognized that, while motions to disqualify can serve a legitimate purpose in maintaining the integrity of both the legal profession and the judicial process, *see, e.g.*, *Lee v. Todd*, 555 F. Supp. 628, 630 (W.D. Tenn. 1982) ("In dealing with a Motion to Disqualify, this Court is charged with the responsibility of supervising the members of its bar ... [,] the duty to maintain pubic confidence in the legal profession, and the duty to insure [sic] the integrity of the judicial proceeding."), it is also true that such motions are closely scrutinized because the "ability to deny one's opponent the services of capable counsel is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988); *see also Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982) (noting that motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment"); *Bowman v. Bank of Del.*, No. 87-44-CMW, 1988 WL 54669, at \*3 (D. Del. May 24, 1988) ("The Court must be wary so as to prevent motions to disqualify from being used as just another weapon in the litigation arsenal."). "[A] party's right to have counsel of choice is a fundamental tenet of American jurisprudence, and therefore a court may not lightly deprive a party of its chosen counsel." *Am. Special Risk Ins. Co. ex rel. S. Macomb Disposal Auth. v. City of Centerline*, 69 F. Supp. 2d 944, 953 (E.D. Mich. 1999) (internal quotation marks omitted). Thus, in deciding a motion to disqualify, a court must balance the public interest of upholding the integrity of the legal profession against the litigant's right to choose its own counsel. *Manning*, 849 F.2d at 225.

### Standing

Citing cases from the Sixth Circuit, this district, and other courts, the non-legislative State Defendants argue that Courser lacks standing to seek disqualification because Courser never had an attorney-client relationship with their counsel. In fact, courts generally require the moving party

*Courser v. Allard*, Not Reported in Fed. Supp. (2016)

2016 WL 10520134

to have had an attorney-client relationship with the attorney it seeks to disqualify. *See Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 ( 6th Cir. 1990) (listing "a past attorney-client relationship ... between the party seeking disqualification and the attorney it seeks to disqualify" as the first part of a three-part test for disqualification); *Bialik v. Raddatz*, No. 1:12-CV-522, 2012 WL 2913201, at *2 (W.D. Mich. June 6, 2012) ("Generally, a party does not have standing to bring a motion to disqualify on the ground of a conflict of interest unless an attorney-client relationship existed between the moving party and the attorney."); *Factory Mut. Ins. Co. v. APComPower, Inc.*, 662 F. Supp. 2d 896, 898 (W.D. Mich. 2009) (citing *Dana Corp.*). In his reply, Courser cites *Health Alliance Plan of Michigan v. Blue Cross Blue Shield of Michigan Mutual Insurance Co.*, No. 14-13788, 2015 WL 5697682 (E.D. Mich. Set. 29, 2015)—a case the non-legislative State Defendants cited in their response—for the proposition that Courser has standing to move for disqualification, even though he did not have an attorney-client relationship with the non-legislative State Defendants' attorneys. Although the *Health Alliance Plan* court cited the three-part test from *Dana Corp.*, it also concluded, based on the comments to MRPC 1.7 and a statement by the Sixth Circuit in *Gordon v. Norman*, 788 F.2d 194 (6th Cir. 1986), that a party without an attorney-client relationship may raise a conflict of interest issue. However, this is not a universal view. For example, in *Winchester v. Education Management Corp.*, No. 5:10-CV-12-TBR, 2010 WL 2521465 (W.D. Ky. June 18, 2010), the court held that the plaintiff lacked standing to disqualify opposing counsel. *Id.* at *2. The *Winchester* court noted that while the Sixth Circuit has not expressly decided the issue, it found the Sixth Circuit's statement in *Willis v. First Bank National Association*, Nos. 89-3834, 89-3838, 1990 WL 155366, at *2 (6th Cir. Oct. 15, 1990), that the "plaintiff's standing to assert opposing counsel's alleged conflict of interest is questionable at best," an indication that the Sixth Circuit would follow the majority rule that requires an attorney-client relationship for standing. *See* 2010 WL 2521465, at *2. The *Willis* court noted what while a minority of courts have permitted a non-client to raise opposing counsel's conflicts, such courts have required the moving party to have a personal stake in the motion in order to satisfy Article III's standing requirements. *Id.* (citing *Colyer v. Smith*, 50 F. Supp. 2d 966, 969 (C.D. Cal. 1999)).

**\*2** The Court need not decide whether a non-client can ever have standing to bring a motion to disqualify because, as set forth below, Courser's arguments lack merit.

### Grounds

Although Courser cites a number of Rules, he primarily relies upon MRPC 1.7, which provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

MRPC 1.7.[1]

Courser first argues that attorneys Donnelly, Geminick, and Wood cannot represent the non-legislative State Defendants because Courser alleges a broad ranging conspiracy in which Defendant Schuette is failing to perform his duty to prosecute Defendants Brewer and Dwyer for perjury, and perhaps other Defendants for certain unidentified crimes. Courser explains that: (1) Defendants Brewer and Dwyer swore in state district court that a violation of house Rule 41 is a crime; (2) Defendant Schuette is prosecuting the crime; (3) Defendant Britvec said a violation of House Rule 41 is not a crime; (4) Defendant Britvec sent the police report to the Attorney General; and (5) the Michigan House stated that violating Rule 41 is not a crime. (ECF no. 26 at PageID.291.) Courser points out that in his complaint he requests a writ of mandamus compelling the non-legislative State Defendants to perform their duty and investigate and prosecute the crimes charged in the complaint, including the possible perjury committed by Defendants Brewer and Dwyer in stating that violating House Rule 41 is a crime. There is no conflict in this

case. Courser's argument is specious because this Court will not be issuing writs of mandamus to compel state officials to perform their duties. "[F]ederal courts have no authority to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties." *Haggard v. Tenn.*, 421 F.2d 1384, 1386 (6th Cir. 1970) (citing *Clark v. Washington*, 366 F.2d 678 (9th Cir. 1966); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S. Ct. 900, 911 (1984) (stating that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"); *Noble v. Cain*, 123 Fed.Appx. 151, 152 (6th Cir. 2005) (per curiam) ("[T]he remedy sought by Noble is in the nature of mandamus relief, which is not available to federal courts to direct state officials in the performance of their duties and functions."). [2] Courser fails to offer any other specific basis for concluding that a conflict of interest exists that could conceivably affect Courser or the integrity of these proceedings based on the joint representation of the non-legislative State Defendants.

**\*3** Courser's second ground—that an attorney from the Dickinson Wright law firm cannot represent the non-legislative State Defendants—is, as Courser admits, based an incorrect assumption that attorney Rock Wood is employed by that Dickinson Wright firm. There is no question that attorney Wood is employed by the Michigan Department of Attorney General. [3]

Courser's final argument is that attorneys from the Michigan Department of Attorney General cannot represent Defendant Schuette in his individual capacity because the MSP—a state agency—is also a party. Courser cites *Attorney General v. Michigan Public Service Commission (MPSC)*, 243 Mich. App. 487, 625 N.W.2d 16 (2000), in support of his argument. However, *MPSC* does not support Courser's argument. In *MPSC*, the conflict at issue was the attorney general acting on both sides of the dispute. The Attorney General was a party, and attorneys from the Attorney General's office were representing the state agency. *See id.* at 490, 500–02, 625 N.W.2d 19–20, 25. Such is not the case here. While Defendant Schuette is a party, attorneys from the Michigan Department of Attorney General are representing other Defendants, both individuals and the MSP, on the same side of the dispute. When State agencies and individual employees are sued by a plaintiff, there is no real conflict of interest—for example, the State could be held liable only for the actions of its employees, so they are on the same side. Indeed, the Court sees none in this case. [4]

Therefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to Disqualify Attorneys Donnelly, Geminick, and Wood (ECF No. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a reply brief (ECF No. 64) is **GRANTED**.

### All Citations

Not Reported in Fed. Supp., 2016 WL 10520134

---

## Footnotes

1 Courser raises no specific arguments regarding Rules 1.6, 1.8, 1.9, 1.10, 1.11, 3.3, and 3.4, and thus fails to satisfy his heavy burden of showing that disqualification is required under those Rules.

2 Courser's contention that testimony about whether violation of a House Rule constitutes a crime can be the basis for a perjury charge lacks merit. Whether something is a crime is an issue of law for the court, not an issue of fact. Any such testimony was a pure legal opinion that is not subject to a charge of perjury. *See* 66 A.L.R. 2d 791 *Statement of belief or opinion as perjury* (1959).

3 It appears that the information on the docket report showing that attorney Wood is still with the Dickinson Wright firm was the result of out-of-date information in this Court's database.

**Courser v. Allard, Not Reported in Fed. Supp. (2016)**
2016 WL 10520134

4    The non-legislative State Defendants state in their opposition to Plaintiff's motion to file a reply that they have signed consent forms, which they are willing to submit to the Court for *in camera* review. (ECF No. 70 at PageID.567.) The Court finds no need to review such consents in light of its rejection of Plaintiff's arguments.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2011 WL 5921207

2011 WL 5921207
Only the Westlaw citation is currently available.
United States District Court,
W.D. Michigan,
Southern Division.

A. Gregory EATON, and Lansing Farms, LLC, Plaintiffs,
v.
Cullan F. MEATHE, Defendant.

No. 1:11–CV–178.
|
Nov. 27, 2011.

**Attorneys and Law Firms**

C. William Garratt, Garratt & Bachand P.C., Bloomfield Hills, MI, for Plaintiffs.

Marc E. Thomas, Bendure & Thomas (Bingham Farms), Bingham Farms, MI, for Defendant.

*OPINION*

ROBERT HOLMES BELL, District Judge.

 **\*1** This fraud action between two members of a limited liability company comes before the Court on Defendant's motion to disqualify Plaintiffs' counsel. (Dkt. No. 24.) For the reasons that follow, the motion will be denied.

**I.**

Plaintiff A. Gregory Eaton and Defendant Cullan F. Meathe each own a 50% interest in Lansing Farms Properties, LLC (identified by Plaintiffs as Lansing Farms, LLC) ("Lansing Farms"). Plaintiff Eaton and Lansing Farms filed this action, alleging that Meathe engaged in fraudulent or oppressive conduct, breach of the parties' operating agreement, and conversion by embezzling and/or converting the property of Lansing Farms for his personal benefit. Defendant Meathe and Lansing Farms have filed a counterclaim against Eaton, alleging that Eaton breached his fiduciary duties to Meathe when he took over the management of Lansing Farms in 2009. [1]

Defendant Meathe has moved to disqualify Plaintiff's counsel, C. William Garratt, based on discussions between Meathe and Garratt on January 28–29, 2010. In 2009, Garratt obtained a judgment of over $1 million against Meathe and his co-defendant in *TGINN Jets, LLC v. Hampton Ridge Properties, LLC,* Case No. 07–082312–CK (Oakland County Cir. Ct.) (Dkt. No. 33, Pls.' Resp., Ex. C, Am. J.) Garratt conducted a post-judgment creditor's examination of Meathe on January 28, 2010, pursuant to a court order directing Meathe to appear at Garratt's office for examination as a judgment debtor. (Dkt. No. 33, Pl.Ex.E.) Meathe was represented at the creditor's examination by James M. O'Reilly, his counsel in the *TGINN* litigation. During the examination, Meathe testified that he had a potential claim against Eaton and others regarding the formation of Great Lakes Transportation Holdings, LLC ("GLT") and its acquisition of the assets of Metro Cars without the knowledge or consent of Meathe. (Dkt. No. 24, Def.'s Br. Ex. B, Meathe Dep. 26–33). When the issue of the potential claim against Eaton was raised, they went off the record. Meathe's motion to disqualify Garratt is based on his off-the-record discussions with Garratt on January 28–29, 2010. The parties have presented conflicting evidence on what occurred during those discussions.

Meathe contends that they spent approximately two hours on January 28 and an additional three hours on January 29 exploring the possibility of Garratt pursuing Meathe's cause of action against Eaton regarding Great Lakes' purchase of Metro Cars on a contingent fee basis, with the goal of crediting any recovery, after Garratt's fee, against the judgment that had been entered in the *TGINN* litigation. Meathe contends that the conversation included a discussion of potential counter-claims that Eaton might raise against Meathe, including claims based on the distributions Meathe received from Lansing Farms, which are the same claims that have been asserted in this case. Meathe contends that in the course of the discussions, Garratt obtained substantial privileged, confidential, and secret information about strategy and tactics in handling the Lansing Farms claims from Meathe and his attorneys. (*See generally* Dkt. No. 24, Def.'s Mot., Exs. C–F, O'Reilly, Meathe, Shanaman and Obeid Affidavits.) According to Meathe, Garratt is unfairly and unethically using that information against Meathe in this litigation. Meathe requested Garratt to withdraw as Eaton's attorney in this litigation, and Garratt refused.

 **\*2** Garratt contends that he did not learn anything on January 28 or 29, 2010, that warrants his disqualification. He denies ever representing that he would represent Meathe against

2011 WL 5921207

Eaton; he denies that there was any discussion about any potential counterclaim Eaton might have against Meathe for money Meathe had taken from Lansing Farms; and he denies learning any confidences, strategy or tactics in handling the Lansing Farms claims. Garratt contends that the focus of the discussion was on Metro Cars rather than on Lansing Farms, and that his only purpose was to ascertain whether there were legal claims or other valuable rights that TGINN could obtain to satisfy its judgment against Meathe. (*See generally* Dkt. No. 34, Pls.' Affs. in Opp'n, Garratt Aff.; Tritt Aff.)

## II.

Meathe contends that Garratt's representation of Eaton in this action violates Rules 1.6 and 1.9 of the Michigan Rules of Professional Conduct ("MRPC")[2] relating to client confidences and conflicts of interest. Rule 1.6 provides that a lawyer shall not knowingly "use a confidence or secret of a client to the disadvantage of the client." MRPC 1.6(b)(2). Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."

Motions to disqualify opposing counsel raise two competing public policy interests: preserving client confidences, and permitting a party to retain counsel of his choice. *Manning v. Waring, Cox., Jame, Sklar and Allen,* 849 F.2d 222, 224 (6th Cir.1988). "[D]isqualification is a "drastic" remedy and should not be employed lightly." *Factory Mut. Ins. Co. v. APComPower, Inc.,* 662 F.Supp.2d 896, 898 (W.D.Mich.2009) (Quist, J.) "A court should only disqualify an attorney when there is a reasonable possibility that some specifically identifiable impropriety actually occurred." *Moses v. Sterling Commerce (America), Inc.,* 122 F. App'x 177, 183–84 (6th Cir.2005) (internal quotations omitted). The Sixth Circuit has articulated a three-part test for determining whether disqualification is warranted:

> 1) the party seeking disqualification had a past attorney-client relationship with the attorney it seeks to disqualify; 2) the subject matter of that relationship is substantially related to the instant case; and 3)

the attorney acquired confidential information from the party seeking disqualification.

*Factory Mut.,* 662 F.Supp.2d at 898 (citing *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio,* 900 F.2d 882, 889 (6th Cir.1990)). The burden is on the party seeking disqualification to prove that opposing counsel should be disqualified. *S.D. Warren Co. v. Duff–Norton,* 302 F.Supp.2d 762, 767 (W.D.Mich.2004) (Quist, J.).

**1. Attorney/Client Relationship**

 **\*3** The first *Dana* test asks whether the party seeking disqualification had a past attorney-client relationship with the attorney it seeks to disqualify. Meathe acknowledges that he never entered into a written retainer agreement with Garratt. However, Meathe contends that he disclosed confidences to Garratt while consulting about potential future representation.

"When a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client." *Banner v. City of Flint,* 99 F. App'x 29, 36 (6th Cir.2004). Accordingly, prospective clients who meet with an attorney but do not retain the attorney are entitled to "at least some of the protections afforded former clients." *Factory Mut.,* 662 F.Supp.2d at 899. A motion to disqualify an attorney who has met with, but was not retained by, a prospective client "should be analyzed the same as a motion to disqualify pursuant to a former client relationship, with the additional requirement that the lawyer receive information that could be 'significantly harmful,' rather than merely confidential as required by the Sixth Circuit's three-prong *Dana Corp.* test." *Id.* at 900.

The parties have filed conflicting affidavits as to the nature of these discussions. The Court cannot weigh the credibility of these conflicting affidavits. However, the Court does find relevant the undisputed evidence that can be gleaned from the evidence provided. The discussions occurred in the context of a creditor's examination where Garratt represented the opposing party, where Meathe was obligated to respond to inquiries about his assets, where Meathe was represented by his own counsel, and where third parties were present during at least some of the discussions. In addition, no one asserts that Garratt offered to represent Meathe in an action against Eaton. At most, Meathe's affidavits indicate that

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1813 Filed 03/26/25 Page 21 of 52
Eaton v. Meathe, Not Reported in F.Supp.2d (2011)
2011 WL 5921207

Garratt showed an interest in representing Meathe, subject to his need to check with his current client, TGINN, or his law partner. (O'Reilly Aff. ¶ 10; Shanaman Aff. ¶ 9; Obeid ¶ 6.) Meathe stated that because he was "anticipating" that Garratt would accept the case, he and his attorneys were "very candid, forthcoming, and thorough" in providing him with "all of the facts, opinions, and tactical impressions of the case." (Meathe Aff. ¶ 20.) Under Michigan law, "a putative client's subjective belief is insufficient to establish an attorney-client relationship where none exists." *Jackson v. Pollick,* No. 90–2271, 991 WL 157247, 2 (6th Cir. Aug. 16, 1991) (citing *Scott v. Green,* 140 Mich.App. 384, 400, 364 N.W.2d 709 (1985) (Kirwan, J., concurring in part), and noting that the majority explicitly adopted the concurring opinion on this issue). Under the circumstances, the creation of an attorney-client relationship is questionable at best.

## 2. Substantially Related?

Assuming there was a qualifying attorney-client consultation, the second *Dana* test asks whether the subject matter of that consultation is substantially related to the instant case; "[A] substantial relationship is measured by the allegations in the complaint, and by the nature of the evidence that would be helpful in establishing those allegations." *Anchor Packing Co. v. Pro–Seal, Inc.,* 688 F.Supp. 1215, 1220 (E.D.Mich.1998) (quoting *Trone v. Smith* 621 F.2d 994, 1000 (9th Cir.1980)).

**\*4** Meathe contends that he made disclosures to Garratt concerning Eaton's potential claim against Meathe concerning distributions from Lansing Farm and how such a claim could be defended. (O'Reilly Aff. ¶ 15.) If such disclosures were made, there can be no doubt that they were substantially related to the issues in this lawsuit.

Garratt, however, contends that this lawsuit is not substantially related to Meathe's disclosures because Meathe's disclosures related to Metro Cars. Eaton's complaint in this action does not refer to Metro Cars, or to the sale of Metro Cars' assets to Great Lakes. Garratt denies having any discussions on January 28–29 relating to any potential counterclaim of Eaton against Meathe for money Meathe had taken from Lansing Farms. (Garratt Aff. p. 8.)

The Court cannot judge the credibility of the parties on the basis of the affidavits presented, nor can it speculate on the content of the parties' discussions. For purposes of evaluating this motion, the Court will assume that the parties discussed the Lansing Farm distributions.

### 3. Confidential and Significantly Harmful?

The third *Dana* test asks whether the attorney acquired confidential information from the party seeking disqualification. Because Meathe is only asserting that he consulted with, not that he retained, Garratt, the Court must also consider whether any information Garratt received could be "significantly harmful" to Meathe. *Factory Mut.,* 662 F.Supp.2d at 900.

Eaton contends that Meathe did not impart any "confidential" information to Garratt because Garratt was entitled to information about Meathe's potential claims during the creditor examination and, in any event, Garratt already knew about the large distributions from Lansing Farms to Meathe through post-judgment collection proceedings before the January 28–29 meeting. (Garratt Aff. ¶ 6.) Garratt avers that he has not told Eaton what was said in that discussion, and "nothing was said that I did not already know that might benefit Mr. Eaton or Lansing Farms in this action." (Garratt Aff. p. 7.)

Meathe contends that Garratt was not only told facts about the Lansing Farms distributions, but also privileged and confidential information about strategy and tactics in handling Eaton's potential Lansing Farms claims. (O'Reilly Aff. ¶ 16; Shanaman Aff. ¶¶ 10, 11.) Although Meathe has not specified what confidential information was divulged to Garratt, Meathe contends that because he provided Garratt information that was substantially related to the claims in this case, a presumption arose that confidential, secret or privileged information was divulged. *See Gen. Elec. Co. v. Valeron Corp.,* 608 F.2d 265, 267–68 (6th Cir.1979). *See also Quicken Loans v. Jolly,* 2008 WL 2566373 (E.D.Mich.2008) (noting that Rule 1.9 implies that former counsel acquired confidential information in the prior representation when the subject matter of the two suits is substantially similar).

**\*5** Because the issue of disqualification has been submitted on affidavits, and because the affidavits contain directly conflicting information, the Court cannot make any definitive findings regarding the content of the January 28–29 discussions. Nevertheless, certain facts are clear from the record. The January 28–29 discussions arose in the middle of a creditor's examination where Garratt was aggressively pursuing collection on the judgment against Meathe. Meathe was required to make disclosures about his assets to Garratt under oath. Meathe was represented by counsel. There is no suggestion that Meathe or his counsel ever discussed or

2011 WL 5921207

entered into a confidentiality or protective order with Garratt regarding the use of any information discussed off the record. Garratt already had substantial information about Lansing Farms from other sources. Given this context, the Court is reluctant to presume that Meathe disclosed any confidential information to Garratt that he was not required to disclose. Moreover, even if the Court were to presume that confidential information was disclosed, Meathe has made no showing that any of the information disclosed could be significantly harmful to him in this action. *See In re Modanlo,* 342 B.R. 230, 237 (D.Md.2006) (denying motion for disqualification in part because debtor failed to show that any information shared with creditor's attorney was significantly harmful).

Because the creation of an attorney-client relationship is questionable, and because Meathe has not identified the specific confidences disclosed or how they might significantly harm him in this litigation, the Court concludes that Meathe has not met his burden of showing that there is a reasonable possibility that Garratt engaged in some specifically identifiable impropriety that warrants his disqualification from representing Eaton in this action. The Court will accordingly deny Meathe's motion to disqualify. In making this determination, the Court has confined itself to the present record. Should additional information be disclosed during the course of this litigation that suggests a violation of the rules of professional conduct, the Court will not hesitate to revisit this issue.

An order consistent with this opinion will be entered.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 5921207

---

### Footnotes

1    Lansing Farms is both a Plaintiff and a Counter–Plaintiff in this action. For purposes simplicity and clarity in this opinion, the Court will refer to Plaintiff and Defendant in the singular.

2    Attorneys practicing before this Court are "subject to the Rules of Professional Conduct adopted by the Michigan Supreme Court," i.e., the Michigan Rules of Professional Conduct ("MRPC"). W.D. Mich. LCivR 83.1(j).

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:24-cv-12347-BRM-EAS  ECF No. 40-8, PageID.1815  Filed 03/26/25  Page 23 of 52
Glenn v. Nasscond, Inc., Not Reported in Fed. Supp. (2016)
2016 WL 409409

2016 WL 409409
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Dana GLENN, Plaintiff,

v.

NASSCOND, INC., Notes Forever Inc.,
National City Mortgage Co., National City
Bank, Kondaur Capital Corp., Oumrow Singh,
National City Mortgage Services Co., Defendants.

CIV. NO. 15-10270
|
Signed 02/03/2016

**Attorneys and Law Firms**

Dana L. Glenn, The Glenn Law Firm, Alexandria, VA, Peter
Gojcaj, Beier Howlett, Bloomfield Hills, MI, for Plaintiff.

William G. Asimakis, Jr., Bethany G. Stawasz, Clark Hill,
PLC, Detroit, MI, Andrew J. Herold, Herold and Associates,
PLC, West Bloomfield, MI, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL FOR DEFENDANT KONDAUR CAPITAL CORP. (DKT. 21)

TERRENCE G. BERG, UNITED STATES DISTRICT
JUDGE

**\*1** This matter is before the Court on Plaintiff Dana Glenn's
("Plaintiff") motion to disqualify counsel for Defendant
Kondaur Capital Corp. ("Kondaur") (Dkt. 21). Kondaur filed
a response brief (Dkt. 23) and Plaintiff filed a reply brief (Dkt.
24). The Court heard oral argument on Plaintiff's motion on
December 3, 2015.

For the reasons set forth below, Plaintiff's motion
is **GRANTED**. Attorney Andrew Herold is hereby
**DISQUALIFIED** from representing Defendant Kondaur in
this matter, due to a conflict of interest between a member
of his law firm and Plaintiff. Kondaur is directed to find
substitute counsel within 21 days of the date of this order.

## FACTS AND PROCEDURAL HISTORY

This case concerns a mortgage on a condominium owned
by Plaintiff. Plaintiff claims that the mortgage on her condo
was assigned between Defendants and that those assignments
were faulty and should be set aside. Furthermore, Plaintiff
claims that certain mortgage payments that she made to
Defendants should be refunded to her, due to the alleged
defects in the mortgage assignments.

In her motion to disqualify counsel for Defendant Kondaur,
Plaintiff states that she previously hired an attorney – Richard
Linnell – to represent her concerning a possible short sale of
the condo at issue in this litigation. Plaintiff claims that she
discussed with Attorney Linnell the possibility of litigation
concerning the mortgage on her condo. In other words,
Plaintiff consulted with Attorney Linnell about the present
case.

This case was filed in the Wayne County Circuit Court on
October 29, 2014. At the time the case was filed, Plaintiff
was represented by Attorney Peter Gojcaj. [1] The case was
subsequently removed to this Court on January 22, 2015,
on the basis of diversity jurisdiction. Also in January 2015,
counsel for Defendant Kondaur, Andrew Herold, joined the
law firm of Linnell & Associates. Mr. Herold characterizes
his relationship with the Linnell firm as "of counsel."

Following oral argument on the motion to disqualify Mr.
Herold, Plaintiff filed an exhibit containing several emails
between herself and the Linnell firm (Dkt. 32) which had
also presented to the Court during the hearing. In these emails,
representatives of the Linnell firm tell Plaintiff not to have any
contact with Defendant Roy Singh, PNC Bank or any of their
attorneys, and that all communications concerning Plaintiff's
condominium or mortgage should instead flow through the
Linnell firm. This directive is clearly suggestive of an attorney
client relationship between Plaintiff and the Linnell firm.
Furthermore, Plaintiff provided the Court with an email that
she sent directly to Mr. Linnell, in which she asks for legal
advice concerning the recording of her mortgage – potentially
a key legal issue in this case.

## ANALYSIS

A motion to disqualify counsel is the proper method for a
party to bring to the court's attention an alleged conflict of

2016 WL 409409

interest or breach of ethical duty by opposing counsel. *See DeBiasi v. Charter County of Wayne*, 284 F.Supp.2d 760, 770 (E.D. Mich. 2003). Courts have the inherent authority to prevent individuals from practicing before it. *See D.H. Overmyer Co., Inc. v. Robson*, 750 F.2d 31, 33 (6th Cir. 1984). "Unquestionably, the ability to deny one's opponent the services of capable counsel, is a potent weapon. Confronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice." *Manning v. Waring, Cox, James, Sklar and Allen*, 849 F.2d 222, 224 (6th Cir. 1988). In determining whether disqualification is necessary, the Court must account for "'the traditional concerns of the legal profession that client confidences be protected and that appearances of professional impropriety be avoided.'" *DeBiasi v. Charter County of Wayne*, 284 F.Supp.2d 760, 770–71 (E.D. Mich. 2003) (quoting *Manning v. Waring, Cox, James Sklar and Allen*, 849 F.2d 222, 225 (6th Cir. 1988)).

**\*2** "Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Valley–Vulcan Mold Co. v. Ampco–Pittsburgh Corp.*, 237 B.R. 322, 337 (B.A.P. 6th Cir.1999), aff'd, 5 Fed. App'x 396 (6th Cir. 2001) (citation and internal quotation marks omitted). The Court must balance the interest of the Court and the public in upholding the integrity of the legal profession against the right of a party to retain counsel of its choice. *See Manning*, 849 F.2d at 225. "[T]he party seeking disqualification must carry a heavy burden and must meet a high standard of proof' before a lawyer is disqualified, because although a party has no right to specific counsel, a party's choice of counsel is entitled to substantial deference." *Valley–Vulcan*, 237 B.R. at 337, (citation and internal quotations omitted); *see also MJK Family LLC v. Corporate Eagle Mgmt. Servs.*, 676 F.Supp.2d 584, 592 (E.D. Mich. 2009) ("The movant bears the burden of proving that opposing counsel should be disqualified"). A decision to disqualify counsel must be based on a factual inquiry conducted in a manner allowing appellate review. *See General Mill Supply Co. v. SCA Servs.*, 697 F.2d 704, 710 (6th Cir. 1982).

A state's ethics rules are appropriate standards against which to measure to propriety of an attorney's conduct for the purpose of determining whether a lawyer should be disqualified in a particular case. *See National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Alticor, Inc.*, 466 F.3d 456, 458 (6th Cir. 2006), vacated on other grounds, 472 F.3d 436 (6th Cir. 2007) (citing *Evans & Luptak, PLC v. Lizza*, 251 Mich. App. 187, 650 N.W.2d 364, 368–69 (2002)).

A court may disqualify an attorney for possessing a conflict of interest. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc.*, 472 F.3d 436, 437 (6th Cir. 2007). Rule 1.7 of the Michigan Rules of Professional Conduct provides that:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless:

> (1) the lawyer reasonably believes the representation will not be adversely affected; and

> (2) the client consents after consultation.

The comments to this rule note "If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." Comment to Rule 1.7.

When a conflict of interest arises as to a member of a law firm, the rules require disqualification of the entire firm: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[ ] 1.7...." MRPC 1.10(a); *see also National Union Fire Ins. Co.*, 472 F.3d at 438. The comments to the rules make the following observation about the definition of "firm":

> For example, two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the rules.

Commentary, MRPC 1.10(a). Plaintiff argues that she was a "former client" of Mr. Linnell, thereby precluding the Linnell firm from representing Defendant Kondaur in a matter such as this, adverse to a former client. As to former clients, the

Case 2:24-cv-12347-BRM-EAS  ECF No. 40-8, PageID.1817  Filed 03/26/25  Page 25 of 52
Glenn v. Nasscond, Inc., Not Reported in Fed. Supp. (2016)
2016 WL 409409

Sixth Circuit applies the following three-part test for attorney disqualification: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of that relationship is substantially related to the subject matter of the present case; and (3) the attorney acquired confidential information from the party seeking disqualification. *See Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990).

**\*3** Additionally, the Sixth Circuit recognizes that "[w]hen a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client." *Banner v. City of Flint*, 99 Fed. App'x 29, 36 (6th Cir. 2004). Thus, federal district courts in Michigan have found that a "motion to disqualify an attorney who has met with, but was not retained by, a prospective client 'should be analyzed the same as a motion to disqualify pursuant to a former client relationship, with the additional requirement that the lawyer receive information that could be 'significantly harmful,' rather than merely confidential as required by the Sixth Circuit's three-prong *Dana Corp.* test." *Eaton v. Meathe*, No. 1:11-CV-178, 2011 WL 5921207, at \*3 (W.D. Mich. Nov. 27, 2011) (citing *Factory Mut. Ins. Co. v. APComPower, Inc.*, 662 F.Supp.2d 896, 900 (W.D. Mich. 2009)).

The Court finds that, utilizing the tests set forth above, there is a conflict of interest in this matter. Plaintiff previously retained the Linnell firm to negotiate a short sale of her condominium. In the course of this representation, the Linnell firm obtained confidential financial information from Plaintiff, including records pertaining to her mortgage and the recording/assignments of that mortgage. In other words, the Linnell firm received information from Plaintiff touching on the precise legal questions at issue in this litigation. Furthermore, the emails submitted by Plaintiff indicate that she consulted Attorney Linnell for the explicit purpose of soliciting legal advice concerning her mortgage. Clearly, there would be an impermissible conflict of interest if Attorney Linnell were seeking to represent Defendant Kondaur in this matter. That same conflict must be imputed to Attorney Herold under MRPC 1.10(a) and consequently he must be disqualified from representing Kondaur in this matter. [2]

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to disqualify (Dkt. 21) Attorney Andrew Herold from representing Defendant Kondaur in this matter is **GRANTED**. Defendant Kondaur is directed to find substitute counsel within 21 days of the date of this order.

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 409409

---

## Footnotes

1  On March 30, 2015, the Court granted Mr. Gojcaj's motion to withdraw as counsel for Plaintiff (Dkt. 15). Plaintiff, herself an attorney, is now proceeding in pro per (Dkt. 16).

2  This conclusion in no way suggests any finding of misconduct or impropriety on the part of Attorney Herold. His association with the Linnell firm gives rise to a conflict of interest between Defendant Kondaur and Plaintiff and consequently he may no longer represent Kondaur.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1405216
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Susan Brooks and Claudia HUTTO, Plaintiffs,
v.

CHARTER TOWNSHIP OF CLINTON,
a Michigan municipal corporation, and
George Fitzgerald, an individual, sued in his
official and personal capacity., Defendants.

No. 12–CV–12880.
|
Signed April 11, 2014.

**Attorneys and Law Firms**

Sarah Prescott, Deborah L. Gordon, Deborah L. Gordon
Assoc., Bloomfield Hills, MI, for Plaintiffs.

Peter W. Peacock, Plunkett & Cooney, Mount Clemens, MI,
Timothy S. Ferrand, Cummings, McClorey, Sterling Heights,
MI, for Defendants.

*ORDER DENYING DEFENDANT,
GEORGE FITZGERALD'S MOTION
TO DISQUALIFY PLAINTIFFS'
COUNSEL [# 61], WITHOUT PREJUDICE*

DENISE PAGE HOOD, District Judge.

**I. INTRODUCTION**

**\*1** Plaintiffs filed this suit against Defendants for retaliatory
constructive discharge in violation of Plaintiffs' state and
federal rights to freedom of speech, for wrongful discharge
in violation of public policy, violation of the Michigan
Whistleblowers' Protection Act, retaliation in violation of
the Michigan Elliott–Larsen Civil Rights Act, defamation,
assault, intentional infliction of emotional distress, and
retaliation. **[Docket No. 42]** Plaintiffs brought suit against
the Charter Township of Clinton, a Michigan Municipal
Corporation, and George Fitzgerald, in both his personal
and official capacity. Now before the Court Defendant,
George Fitzgerald's, Motion to Disqualify Plaintiffs' Counsel.
**[Docket No. 61, filed June 12, 2013]** Plaintiffs filed a
response to this Motion on June 28, 2013, **[Docket No. 67]**

to which Defendant Fitzgerald filed a reply. **[Docket No. 70,
filed July 5, 2013]** For the reasons stated below, Defendant
Fitzgerald's motion is **DENIED,** without prejudice.

**II. BACKGROUND**

Plaintiffs Susan Brooks and Claudia Hutto brought this
action against their employer, Clinton Township, and their
immediate supervisor, George Fitzgerald. Plaintiffs allege
that Defendant Fitzgerald subjected them to harassment,
abusive language, physical intimidation and threats, and
retaliation after they refused to help him perpetrate a sexual
harassment scheme. Plaintiffs allege they instead reported the
harassment to Clinton Township officials. In addition to these
claims, Plaintiff Brooks claims that Defendant Fitzgerald
directed her to falsify press reports and keep him apprised
of the activities of his political rivals, something that she
expressed she did not want to do. Plaintiff Brooks claims that
when she refused to engage in these dishonest political acts,
Defendant Fitzgerald retaliated against her. Plaintiffs allege
that Defendant Fitzgerald's hostility and threatening behavior
towards them escalated after they filed sheriffs' reports
against him, requested the aid of law officials, complained
about his behavior to Township officials, and participated
as complainants and witnesses in a township investigation
against him. Plaintiffs contend that Defendant Township has
since isolated them and removed them from doing any work
related to their previous positions.

**III. ANALYSIS**

A motion to disqualify counsel may be a legitimate tool
to protect the integrity of judicial proceedings. Because the
ability to deny an opponent the services of capable counsel
is a potent weapon, *see Manning v. Waring, Cox, James,
Sklar & Allen,* 849 F.2d 222, 224 (6th Cir.1988), "courts
must be vigilant in reviewing disqualification motions."
*MJK Family LLC v. Corporate Eagle Mgmt. Servs., Inc.,*
676 F.Supp.2d 584, 592 (E.D.Mich.2009). The movant
bears the burden of proving that opposing counsel should
be disqualified, *see S.D. Warren Co. v. Duff–Norton,* 302
F.Supp.2d 762, 767 (W.D.Mich.2004), and any decision to
disqualify counsel must be based on "a factual inquiry
conducted in a manner allowing appellate review." *MJK
Family,* 676 F.Supp.2d at 592 (citing *General Mill Supply
Co. v. SCA Servs.,* 697 F.2d 704, 710 (6th Cir.1982)). When
deciding a motion to disqualify an attorney, this Court
must consider whether: (1) a past attorney-client relationship
existed between the party seeking disqualification and the
attorney it seeks to disqualify; (2) the subject matter of those

Hutto v. Charter Tp. of Clinton, Not Reported in F.Supp.3d (2014)

2014 WL 1405216

relationships was substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. *See Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio,* 900 F.2d 882, 889 (6th Cir.1990).

 **\*2** The existence of a previous attorney-client relationship between Plaintiffs' counsel and the Defendant may be express or implied. *See Dalrymple v. Nat'l Bank & Trust Co. of Traverse City,* 615 F.Supp. 979, 985 (W.D.Mich.1985). Here, it appears that Defendant Fitzgerald is alleging that he had an implied relationship with Attorney Gordon based on a telephone call with her during which he purports to have shared certain confidences. To determine if an implied relationship has been formed, this Court must look to Defendant Fitzgerald's "subjective belief that he [was] consulting a lawyer in [her] professional capacity, and on his intent to seek professional legal advice." *MJK Family,* 676 F.Supp.2d at 592 (citing *See Dalrymple,* 615 F.Supp. at 982). Assuming without deciding that Defendant Fitzgerald believed he was seeking professional legal advice when calling Attorney Gordon's officer, this Court must also determine whether Defendant Fitzgerald *"reasonably believes* an attorney-client relationship has been created." *Id.* (emphasis added). Based on the facts before it, this Court cannot determine that Defendant Fitzgerald could *reasonably believe*—either at the time of the call or presently—that an attorney relationship was created.

Defendant Fitzgerald contends that Plaintiff's counsel, Deborah Gordon, should be disqualified because of his "perceived [ ] conflict of interest arising out of information he disclosed to Plaintiffs' attorney at a time he believed she was providing legal advice to him." **[Docket No. 61, Pg ID 804]** Defendant Fitzgerald states that, on or about May 25, 2011, he was referred by Attorney Steven Fishman to Attorney Gordon, a labor and employment specialist. **[*Id.* at 802]** Mr. Fitzgerald alleges to have spoken to Attorney Gordon "for approximately twenty minutes" and that, during the conversation he "advised Ms. Gordon that a long time employee (Susan Brooks) filed a complaint with Human Resources in which she alleged he used foul language[,] ... revealed to Ms. Gordon that Ms. Brooks (his secretary at the time) stated that he was 'going to lose' the next election[,] ... [and] told Ms. Gordon, in confidence, that he became angry when Ms. Brooks said this to him and he discussed with Ms. Gordon the specific language which he directed towards Ms. Brooks in response." **[*Id.* at 802, Ex. A at 815–18]**

Defendant Fitzgerald further alleges that during his conversation with Ms. Gordon, he "specifically mentioned by name Susan Brooks and Claudia Hutto ... and Kimberly Irvine" and that Ms. Gordon "provided legal advice," telling him to begin to "document everything," and instructing him to "send certified letters to employees in the Clerk's and Supervisor's office seeking their explanation of the events in question as well as the Supervisor's attempts to intervene in the operation of the Clerk's Office." **[*Id.* at 802]** Defendant Fitzgerald claims that Ms. Gordon advised him to "garner written statements from employees regarding the Township Supervisor's allegations of bullying behavior" and that "[o]n the advice of Ms. Gordon, [he] sent letters to several employees of the Clerk's Office." **[*Id.* at 802–803]**

 **\*3** In response, Plaintiff's Counsel, Deborah Gordon, vehemently denies Defendant Fitzgerald's claims. Ms. Gordon states that she "never assumed any attorney-client relationship with Fitzgerald" because they never met in person, she never invited him to her office, and, further, because she "does not represent management-side or employers, as a rule." **[Docket No. 67, Pg ID 1120]** Ms. Gordon claims that "it is not unheard of for [her] to take a call briefly, explain that she cannot assist with a matter, and move on" but that when a client is actually contemplating representation, "he or she is invited to the office ... where Ms. Gordon (usually with her partners or associate) personally meets with the client and discusses the matter in detail." [*Id.*] Attorney Gordon notes that "unless a retainer is executed, the firm does not undertake to advise [a] would-be client" and a retainer was not signed therefore she "did not give him 'legal advice.' " **[*Id.* at 1121]**

As evidence that Defendant Fitzgerald could not have reasonably believed that she had entered in to an attorney-client relationship with him, Attorney Gordon states that while she and Mr. Fitzgerald spoke on May 25, 2012 (and he supposedly shared confidences expecting her to represent him), on May 31, 2012, Attorney David F. Greco prepared a statement for Fitzgerald and communicated with Clinton Township officials on Fitzgerald's behalf showing that Defendant Fitzgerald had already retained other counsel "at the time of, before, or immediately after speaking with Ms. Gordon." [*Id.*] In her response, Attorney Gordon includes a lengthy timeline of the occurrences in this case that preceded the instant motion to bolster her argument that between July 27, 2012, (the date that Defendant Fitzgerald was served) and May 28, 2013, (the date Defendant gave notice of the alleged conflict) Defendant Fitzgerald gave no

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Hutto v. Charter Tp. of Clinton, Not Reported in F.Supp.3d (2014)

2014 WL 1405216

indication that he had at any time viewed her representation of Plaintiffs to be a conflict based on the phone conversation that they had on May 25, 2012. **[***Id.*** at 1123–26]** Attorney Gordon argues that Defendant Fitzgerald may be "lying for purposes of generating an excuse" to remove her from the case or "mistaken about the source of advice he purportedly received" because she "did not undertake to advise" him. **[***Id.*** at 1126]**

The Court notes that a trial court does not possess "unfettered discretion to disqualify counsel." *DeBiasi v. Charter Cnty. of Wayne,* 284 F.Supp.2d 760, 770 (E.D.Mich.2003). Instead, the "extreme sanction of disqualification should only be utilized when there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *Id.* Based on the facts of this case and the information before the Court, the Court is unpersuaded that Defendant has met his burden of showing that the alleged phone conversation between Defendant and Attorney Gordon rises to the level that requires disqualification of Plaintiffs' counsel at this time.

**\*4** Defendant Fitzgerald cites to *Banner v. City of Flint,* 136 F.Supp.2d 678 (E.D.Mich.2000) *aff'd in part, rev'd in part,* 99 F. App'x 29 (6th Cir.2004), for the proposition that "[a] single preliminary consultation with a potential client during which confidential information is provided to an attorney is enough to bar that attorney from subsequently deposing that potential client concerning the issues for which the attorney is consulted, even if the attorney was never formally retained." **[Docket No. 61, Pg ID 807]** In *Banner,* the City of Flint and an intervening employee moved for sanctions against the attorney for the Plaintiff and his law firm alleging that they committed ethical violations because the attorney attempted to question the intervening employee during a deposition using information and disclosures the attorney had gathered during a prior conversation with the employee. The Sixth Circuit Court of Appeals upheld sanctions against the attorney for his deposition questioning. That case, however, is distinguishable from the present case. Here, Defendant has not shown that Plaintiffs' counsel has in any way used or attempted to use any alleged confidences to Defendant Fitzgerald's detriment, either in the filing of papers or during his deposition as his deposition has not yet been taken.

The Michigan Rule of Professional Conduct 1.6 states that a lawyer may not "reveal a confidence or secret of a client" or "use a confidence or secret of a client to the disadvantage of the client." Additionally, Courts recognize that "prospective clients who meet with an attorney but do not retain the attorney are entitled to at least some of the protections afforded former clients ." *Factory Mut. Ins. Co. v. APComPower, Inc.,* 662 F.Supp.2d 896, 899 (W.D.Mich.2009). However, the "primary concern is whether and to what extent the attorney acquired confidential information." *Id.* at 900. The court has reviewed the evidence presently before it and concludes that though Defendant Fitzgerald and Plaintiffs' counsel had a phone conversation, at this time, Defendant has failed to show that the statements he shared were matters other than those of public record or concerned issues that would not have become moot upon filing the lawsuit and the required initial disclosures. The Court also takes into consideration (though it does not wholly rely on this fact to make its decision) that almost a year elapsed between the time at which Defendant Fitzgerald received notice of this lawsuit and the identity of Plaintiffs's counsel and his filing of the instant motion. The Court appreciates Defendant Fitzgerald's argument that he has not waived his right to prevent Plaintiffs' counsel from representing them based on the conversation that he had with her in which he alleges to have shared certain confidences. However, Defendant has not provided the Court with any reason as to why he waited almost a year to raise this issue.

Disqualification is a " 'drastic' remedy and should not be employed lightly." *Factory Mut. Ins. Co.,* 662 F.Supp.2d at 898 (citing *Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, 146 (4th Cir.1992)). At this time, the Court is not persuaded that Defendant Fitzgerald reasonably believed he had an attorney-client relationship with Plaintiffs' counsel or that he shared confidences which may prejudice him in this matter. For these reasons, Defendant Fitzgerald's Motion to Disqualify Plaintiffs' Counsel is denied. However, if at any time during the pendency of this case Defendant Fitzgerald believes that Plaintiffs' counsel is in fact using actual confidences to his detriment, he may renew this motion and the Court may re-evaluate his claim.

### IV. CONCLUSION
**\*5** Accordingly,

**IT IS ORDERED** that Defendant, George Fitzgerald's, Motion to Disqualify Plaintiffs' Counsel **[Docket No. 61, filed June 12, 2013]** is **DENIED,** without prejudice.

**IT IS SO ORDERED.**

2014 WL 1405216

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1405216

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:24-cv-12347-BRM-EAS   ECF No. 40-8, PageID.1822   Filed 03/26/25   Page 30 of 52

McCool v. Operative Plasterers' & Cement Masons Intern...; Not Reported in...

2014 WL 635797

2014 WL 635797
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan.

Jack McCOOL, Plaintiff,
v.
OPERATIVE PLASTERERS' & CEMENT
MASONS' INT'L ASS'N OF the UNITED
STATES & CANADA, AFL–CIO, Defendant.

No. 13–13614.
|
Feb. 18, 2014.

**Attorneys and Law Firms**

Eric I. Frankie, Law Office of Eric I. Frankie, Detroit, MI, for Plaintiff.

Keith R. Bolek, O'Donoghue & O'Donoghue LLP, Washington, DC, Richard G. Mack, Miller, Cohen, Detroit, MI, for Defendant.

*ORDER ON PLAINTIFF'S MOTION
FOR PROTECTIVE ORDER [17] AND
MOTION TO DISQUALIFY COUNSEL [31]*

LAURIE J. MICHELSON, United States Magistrate Judge.

**\*1** This is an employment discrimination case. Plaintiff Jack McCool ("Plaintiff") formerly worked for local affiliates of Defendant Operative Plasterers and Cement Masons International Association of the United States and Canada, AFL–CIO ("Defendant" or "Union"). He alleges that he was demoted and ultimately terminated from his position due to his age. Prior to his termination, Plaintiff spoke with a lawyer for the Union's local affiliate. Plaintiff advised the lawyer that he was going to be replaced with someone younger who "would last longer" and that he was considering filing a lawsuit. Plaintiff did sue, and the lawyer's law firm, Miller Cohen, PLC ("Miller Cohen"), appeared as local counsel for Defendant. Four months later, and only after the parties encountered difficulties in scheduling depositions and filed discovery motions against one other, Plaintiff moved to preclude Miller Cohen from participating in his deposition (Dkt.17) and, further, to disqualify the firm on the basis of a conflict of interest (Dkt.31). These two motions were referred

to this Court for hearing and determination. (Dkts.18, 32.) The Court conducted oral argument and heard testimony from Plaintiff on February 12, 2014. [1] For the reasons set forth below, the motions are **DENIED.**

**I. BACKGROUND**

On March 5, 2001, Plaintiff was hired by Defendant as a Business Agent for its affiliated Local 67. (Dkt.1, Compl., ¶ 5.) Plaintiff was subsequently promoted to Business Manager. (*Id.*) In the summer of 2012, Local 67 merged with Defendant's affiliated Local 514. At that time, Plaintiff was 59 years old. On June 27, 2012, Plaintiff was allegedly advised by Defendant's Vice President, Dan Rauch, that a younger, less experienced individual (Joel Santos) would become the Business Manager of the merged entity effective November 1, 2012. (*Id.* at ¶¶ 6, 7.) According to Plaintiff, Rauch believed Plaintiff was too old for the job and wanted to replace him with someone younger who "would last longer." (*Id.* at ¶¶ 7, 9; Mot. to Disqualify at 4–5.)

Plaintiff contends that, following his discussion with Rauch, he immediately contacted labor lawyer Robert Fetter ("Fetter"), a partner with the Michigan law firm of Miller Cohen. The law firm is counsel to the Union's affiliated Local 514 and also represented Local 67 prior to the merger.

Plaintiff testified that, in his capacity as Business Manager for Local 67, he had occasion to interact with Fetter. The two also went golfing and had other interactions. Thus, Plaintiff expressed that he had a "relationship" with Fetter. Plaintiff further testified, however, that he was aware Fetter was counsel for Local 67 and that he never thought Fetter was his personal lawyer. During a short telephone call, Plaintiff informed Fetter about Rauch's statements and advised Fetter that he was thinking about filing a lawsuit against the Union. Plaintiff does not know what Fetter did with the information, but believes it is "reasonable to assume Fetter told Rauch and other members of Miller Cohen...." (Dkt. 31, Pl. Mot. to Disqualify at 4.)

**\*2** A few months later, on October 25, 2012, Mr. Eric Frankie, Plaintiff's counsel in this matter, sent a letter to Rauch and Union President Patrick Finley that stated, "Please be advised that I represent Mr. Jack McCool concerning his age discrimination claims against your Union. For your ease of reference, I have enclosed herewith, a copy of Mr. McCool's [October 16, 2012] EEOC charge of discrimination. By this letter, I am notifying you and your union that no

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1823 Filed 03/26/25 Page 31 of 52
McCool v. Operative Plasterers' & Cement Masons Intern...; Not Reported in...
2014 WL 635797

further actions of discrimination should be taken against Mr. McCool." (Dkt. 35, Pl. Resp. to Mot. to Compel, Ex. A.)

On November 1, 2012, Plaintiff was demoted from Business Manager to Business Agent for the merged Local 514. (Dkt. 1, Compl. at ¶¶ 5, 6, 12.) Plaintiff was ultimately terminated on July 22, 2013. (*Id.* at ¶ 13.) He brought this age discrimination lawsuit on August 21, 2013. The Complaint discloses the information that Plaintiff discussed with Fetter—i.e., that, according to Rauch, Plaintiff was not going to be the Business Manager of the post-merger Local 514 "because of his age and because he was too old, or words to that effect." (Dkt. 1, Compl. at ¶ 9.) The Union answered the complaint on September 23, 2013. (Dkt.5.) The Union is represented by Fetter's partner, Mr. Richard Mack of Miller Cohen, as well as a firm in Washington D.C.

Defendant acknowledges that Plaintiff and Fetter had two communications regarding the subject matter of this litigation. As explained by Defendant in its December 2013 interrogatory answers:

> a. The first communication occurred around the time of the merger of Local 67 and Local 16 into Local 514. Plaintiff mentioned that the merger was going to take place and Plaintiff further stated that Vice President Daniel Rauch stated that Plaintiff would not be the [B]usiness [M]anager. Plaintiff also stated that Vice President Rauch told the Plaintiff that Joel Santos would be the Business Manager because he would be around longer. McCool indicated that he believed that age may have been a factor. Fetter replied that he was not getting involved in the matter.

> b. The second communication took place a month or two ago [October or November 2013]. Plaintiff called Fetter and asked if they were still friends. Plaintiff further asked how Fetter's law firm could be representing "Danny," i.e., Vice President Daniel Rauch. Fetter responded that his firm represents the Local Union, i .e., Local 514. Plaintiff stated to Fetter something to the effect of "I talked to you about this" and Fetter replied that is why he is not handling the matter. Fetter then told McCool that he could not talk about the matter.

(Dkt. 11, Def. Mot. to Quash at 4, Ex. J.)

The parties conducted their Rule 16 Scheduling Conference on October 8, 2013, and Plaintiff did not raise any conflict of interest issue based upon Miller Cohen's (September 23, 2013) appearance and representation of the Union. The parties

then began discovery. After initiating written discovery, they encountered difficulties in scheduling depositions. This resulted in Defendant's Motion to Quash and for Protective Order seeking to preclude Plaintiff from taking certain depositions of Defendant's representatives that he had noticed (Dkt.11), and Plaintiff's Motion to Compel, which sought to compel those depositions (Dkt.13). On January 5, 2014, Plaintiff's counsel wrote to Defendant's counsel that "in preparing Plaintiff's response to Defendant's Motion to Quash and for Protective Order, it has become clear to me that Miller Cohen PLC has a conflict of interest under the [Michigan Rules of Professional Conduct] and should be disqualified from representing Defendant in this case." (Mot. to Disqualify at 7, Ex. A.) As a result, Plaintiff's counsel did not think it was appropriate for his client to be deposed by any lawyer from Miller Cohen. He initially filed a Motion for Protective Order to preclude Miller Cohen from participating in his deposition on the sole ground that they have a conflict of interest under several provisions of the Michigan Rules of Professional Conduct ("MRPC") and then filed a Motion to Disqualify asserting the same reasons. (Dkts.17, 31.) [2]

**\*3** On the same day that Plaintiff filed the Motion to Disqualify, January 23, 2014, he also submitted the following complaint to the Attorney Grievance Commission:

> My name is Jack McCool.... I have a pending discrimination suit that was filed on August 21, 2013 against the Operative Plasterers and Cement Masons International Association (OPCMIA) in the U.S. District Court for [the] Eastern District of Michigan....

> I was the Business Manager of OPCMIA Local 67 and Business Agent of Local 514 of this organization.

> The defendant of this case has hired the law firm of Miller/Cohen 600 W. Lafayette Blvd 4th floor Detroit, Michigan 48226. Which I had a business relationship with this firm for over 10 years as the senior officer of Local 67, and had direct contact with senior partner Bruce Miller and attorney Robert Fetter of this firm.

> I had a conversation about this case with Robert Fetter before Miller/Cohen was hired by the defendant and I think that conversation is being discussed with the defendant and other attorneys from this firm, therefore I think this a conflict of interest and this law firm should not be a part of this case.

(Mot. to Disqualify, Ex. C.)

Case 2:24-cv-12347-BRM-EAS   ECF No. 40-8, PageID.1824   Filed 03/26/25   Page 32 of 52

McCool v. Operative Plasterers' & Cement Masons Intern...., Not Reported in...

2014 WL 635797

Miller Cohen contends that there is no conflict of interest because Fetter, as attorney for Local 67, did not have an attorney-client relationship with Plaintiff and because Plaintiff did not reveal any confidences to Fetter. (Dkts.30, 36, Def.Resp.)[3]

## II. ANALYSIS

### A. Legal Standard

A motion to disqualify counsel is the proper method for a party to bring to the court's attention an alleged conflict of interest or breach of ethical duty by opposing counsel. *See DeBiasi v. Charter County of Wayne,* 284 F.Supp.2d 760, 770 (E.D.Mich.2003) (citing *Musicus v. Westinghouse Elec. Corp.,* 621 F.2d 742 (5th Cir.1980)). The court, however, must be vigilant in reviewing such a motion, as the "ability to deny one's opponent the services of capable counsel is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen,* 849 F.2d 222, 224 (6th Cir.1988). Indeed, "[m]otions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Valley–Vulcan Mold Co. v. Ampco–Pittsburgh Corp.,* 237 B.R. 322, 337 (B.A.P. 6th Cir.1999), *aff'd,* 5 F. App'x 396 (6th Cir.2001) (citation and internal quotation marks omitted). The court must balance the interest of the court and the public in upholding the integrity of the legal profession against the right of a party to retain counsel of its choice. *Manning,* 849 F.2d at 225. A party seeking disqualification carries a heavy burden and must meet a high standard of proof. *Valley–Vulcan,* 237 B.R. at 337, (citation omitted); *see also MJK Family LLC v. Corporate Eagle Mgmt. Servs.,* 676 F.Supp.2d 584, 592 (E.D.Mich.2009) ("The movant bears the burden of proving that opposing counsel should be disqualified."). A court should only disqualify an attorney "when there is a reasonable possibility that some specifically identifiable impropriety actually occurred." *Moses v. Sterling Commerce (America) Inc.,* 122 F. App'x 177, 184 (6th Cir.2005) (citations omitted).

**\*4** A state's ethics rules are appropriate standards against which to measure the propriety of an attorney's conduct for the purpose of determining whether he or she should be disqualified. *Nat'lUnion Fire Ins. Co. of Pittsburgh, Pennsylvania v. Alticor, Inc.,* 466 F.3d 456, 457–58 (6th Cir.2006), *vacated on other grounds,* 472 F.3d 436 (6th Cir.2007); *see also Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.,* No. 09–11783, 2011 U.S. Dist. LEXIS 51115, at *18, 2011 WL 1812505 (E.D.Mich. May 12, 2011)

("In finding that a 'reasonable probability' exists that some "specifically identifiable impropriety" occurred, it is appropriate for this Court to look to the applicable rules of professional conduct."). The "Rules of Professional Conduct adopted by the Michigan Supreme Court ... apply to members of the bar of this court and attorneys who practice in this court." E.D. Mich. L.R 83.22.

Here, Plaintiff relies upon the following Michigan Rules of Professional Conduct to support his motions:

Rule 1.7 Conflict of Interest: General Rule

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

Rule 1.8 Conflict of Interest: Prohibited Transactions

(b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by Rule 1.6 or Rule 3.3.

Rule 1.9 Conflict of Interest: Former Client

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

(b) Unless the former client consents after consultation, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated has previously represented a client

(1) whose interests are materially adverse to that person, and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

Case 2:24-cv-12387-BRM-EAS   ECF No. 40-8, PageID.1825   Filed 03/26/25   Page 33 of 52

McCool v. Operative Plasterers' & Cement Masons Intern....; Not Reported in...

2014 WL 635797

(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

MRPC 1.10 Imputed Disqualification: General Rule

**\*5** (a) While lawyers are associated in a firm none of them shall knowingly represent a client when anyone of them practicing alone would be prohibited from doing so by Rule[ ] ... 1.9(a).

(Mot. to Disqualify at 5–6.) Plaintiff contends that "[w]hile it is not fully known at the present time how these rules are implicated by Fetter and Miller Cohen's conduct, it is clear that Miller Cohen P.LC should not be representing Defendant in the claims brought by Plaintiff because Fetter, due to Plaintiff's consultation with him about Defendant's discriminatory behavior and the actions he should take, individually could not represent Defendant in this case." (*Id.* at 6.)

At oral argument, Plaintiff continued to argue that McCool was a "former client" of Fetter, thereby precluding Fetter's law firm from representing Defendant in this matter. As to former clients, the Sixth Circuit applies the following three-part test for attorney disqualification: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of that relationship is substantially related to the subject matter of the present case; and (3) the attorney acquired confidential information from the party seeking disqualification. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio,* 900 F.2d 882, 889 (6th Cir.1990). At issue here are the first and third prongs of the *Dana* test. [4]

**B. Disqualification is Not Warranted**
As the senior officer (Business Manager) of Local 67, Plaintiff had a business relationship with Local 67's law firm, Miller Cohen, and he had direct contact with senior partner Bruce Miller as well as attorney Fetter. (Mot. to Disqualify, Ex. C, Grievance Compl.) With knowledge of this relationship, Plaintiff called Fetter after his June 2012 meeting with Rauch. The discussion lasted approximately four (4) minutes. Plaintiff clearly knew Fetter was counsel for Local 67. Indeed,

Plaintiff testified that he never thought Fetter was his personal lawyer and was not going to ask Fetter to represent him. Plaintiff further testified that he was just looking for some insight. Plaintiff testified that he advised Fetter that he was going to be demoted because of his age and that he was thinking about filing a lawsuit. According to Plaintiff, Fetter told him that litigation was a long, hard road. Recognizing that Fetter represented Local 67 (and not wanting to involve him in a conflict of interest), Plaintiff says he told Fetter, "I won't involve you in this," and Fetter said, "thank you." According to Defendant's interrogatory response, Fetter simply told Plaintiff he was not getting involved.

Of course, Plaintiff's relationship with Fetter in Plaintiff's capacity as a representative of Local 67 was not personal to Plaintiff and therefore cannot create a conflict of interest. Thus, the dispositive question is whether, through their four-minute conversation where Plaintiff recounted what Rauch had said, Plaintiff formed a personal attorney-client relationship with Fetter.

**\*6** Unfortunately, there does not appear to be a definitive test for when a preliminary consultation creates an attorney-client relationship. Defendant relies on a Michigan ethics opinion that analyzed a somewhat analogous situation. In Mich. Bar Ass'n, Ethics Op. No. RI–154 (Feb. 1, 1993), a lawyer had been approached by a company to pursue the recovery of money from a former employee pursuant to a tax reimbursement policy. Three years earlier, however, the former employee had been referred to another lawyer at the same law firm. The former employee had a half-hour conversation with this lawyer about the tax reimbursement issue. The former employee told the lawyer that the company had asserted a claim against him and that he disagreed with the claim. The lawyer responded that the issues were involved and complex and required a more detailed development of the facts. The two discussed the costs, fees, and other terms of the law firm's potential representation, but the former employee decided not to retain the law firm. In analyzing Rule 1. 10, the ethics opinion advised that

> no client-lawyer relationship was established in connection with the lawyer colleague's bar association referral contact with the former employee. No agreement was reached between the lawyer colleague and the former employee whereby the

McCool v. Operative Plasterers' & Cement Masons Intern....; Not Reported in...

2014 WL 635797

Case 2:24-cv-12347-BRM-EAS   ECF No. 40-8, PageID.1826   Filed 03/26/25   Page 34 of 52

lawyer colleague expressly undertook to provide legal services to the former employee on the tax reimbursement issue. Nor was the content of the consultation sufficiently specific to imply a client-lawyer relationship [.] While the subject of a tax reimbursement claim was raised, in a very general manner, there was no legal advice imparted to the former employee regarding the tax reimbursement issue; instead, the former employee was told that no advice could be provided without further information and study.

(*Id.*) The advisory opinion further concluded that "the law firm's adherence to its duties under MRPC 1.6 and 1.9(c) would not have any impact on the law firm's representation of the company on the tax reimbursement issue." (*Id.*)

*MJK Family LLC v. Corporate Eagle Mgmt. Servs.,* 676 F.Supp.2d 584 (E.D.Mich.2009), provides another possibly-applicable test for determining the existence of an attorney-client relationship in this case. There, District Judge John Feikens analyzed whether, as a result of their consultation with the corporation's lawyer, individual members of a corporate entity had established an independent attorney-client relationship with the corporation's law firm. Judge Feikens found instructive the law governing claims of attorney-client privilege asserted by corporate employees. He reasoned, "Generally, there is no individual attorney-client privilege between a corporation's attorney and an individual within the corporation unless there is a clear showing that he consulted the corporate counsel in his individual capacity." (*Id.* at 594); *see also* MRPC 1.13 (providing that "[a] lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders, or other constituents."). He then identified the following factors that should be considered in making that determination:

**\*7** 1. Whether the employee approached counsel for the purpose of seeking legal advice;

2. When he approached counsel, did he make it clear that he was seeking legal advice in his individual rather than representative capacity;

3. Counsel saw fit to communicate with him in his individual capacity, knowing that a possible conflict could arise;

4. His conversations with counsel were confidential; and

5. The substance of the conversations with counsel did not concern matters within the company or the general affairs of the company.

*Id.* (citing *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.,* 805 F.2d 120, 123 (3d Cir.1986); *Ross v. City of Memphis,* 423 F.3d 596, 605 (6th Cir.2005)); *see also Ross, 423 F.3d at 605* (recognizing that the Bevill test, which "has been adopted by many circuits," requires an individual to show that he "made it clear" that he was seeking individual advice).

Additionally, the Sixth Circuit recognizes that "[w]hen a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client." *Banner v. City of Flint,* 99 F. App'x 29, 36 (6th Cir.2004). Thus, federal district courts in Michigan have found that a "motion to disqualify an attorney who has met with, but was not retained by, a prospective client 'should be analyzed the same as a motion to disqualify pursuant to a former client relationship, with the additional requirement that the lawyer receive information that could be 'significantly harmful,' rather than merely confidential as required by the Sixth Circuit's three-prong *Dana Corp.* test." *Eaton v. Meathe,* No. 11–178, 2011 U.S. Dist. LEXIS 135838, at \*7–8, 2011 WL 5921207 (W.D.Mich. Nov. 27, 2011) (citing *Factory Mut. Ins. Co. v. APComPower, Inc.,* 662 F.Supp.2d 896, 900 (W.D.Mich.2009)). [5]

The Court finds that, utilizing any of these tests, Plaintiff has failed to demonstrate a disqualifying conflict of interest on the part of Miller Cohen. Plaintiff acknowledges that Fetter was counsel for Local 67 and that he contacted Fetter in that capacity. This resulted in one short phone conversation. They did not discuss any terms of individual representation, no legal advice was given, and there was no agreement Fetter would render legal services to Plaintiff. Indeed, Plaintiff did not believe Fetter was his personal counsel. Plaintiff told Fetter he was not going to involve him and Fetter agreed that he was not getting involved. Plaintiff subsequently retained Mr. Frankie who sent a letter to the Union disclosing the EEOC charge and ultimately filed this lawsuit. There

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1827 Filed 03/26/25 Page 35 of 52

McCool v. Operative Plasterers' & Cement Masons Intern...., Not Reported in...

2014 WL 635797

is simply no objective manifestation of an attorney-client relationship between Plaintiff and Fetter.

Additionally, Plaintiff has not established that Fetter has revealed any confidential information from their conversation or, even assuming otherwise, that the disclosures have been or will be "significantly harmful" to Plaintiff. *See Eaton,* 2011 U.S. Dist. LEXIS 135838 at *10–11, 2011 WL 5921207 (explaining that "[t]he third *Dana* test asks whether the attorney acquired confidential information from the party seeking disqualification" and where the party seeking disqualification is "only asserting that he consulted with, not that he retained" the opposing lawyer, "the Court must also consider whether any information [Defendant] received could be 'significantly harmful' to [Plaintiff]."). Plaintiff testified that the confidential information he disclosed to Fetter includes the alleged statements by Rauch that Plaintiff was going to be replaced as the Business Manager because Mr. Santos would be around longer (i.e., because of his age), and that Plaintiff was thinking of filing a lawsuit. Rauch's statements are not confidential information. Rauch, as a Union officer, was certainly free to share this information with Fetter, counsel for the Union's local affiliate. Within days of Plaintiff filing an EEOC complaint, his lawyer sent a copy directly to Defendant. That complaint, and the Complaint that was ultimately filed in this lawsuit, disclose the very information that Plaintiff conveyed during his conversation with Fetter. Moreover, counsel for the Union represented that Fetter did not disclose to the Union any of the content of his communication with Plaintiff. They have further represented that any inability to use this information has not materially impacted their representation of the Union, especially since the information all became public in the litigation.

**\*8** Because it appears that no attorney-client relationship was created and the information disclosed was not confidential, and because Plaintiff has not identified how the disclosures that occurred might significantly harm him in this litigation, the Court finds that, on the present record, Plaintiff has not met his burden of showing that there is a "reasonable possibility that some specifically identifiable impropriety actually occurred." *Moses,* 122 F. App'x at 184; *see also Eaton,* 2011 U.S. Dist. LEXIS 135838 at *13, 2011 WL 5921207.

Plaintiff's arguments do not alter the Court's conclusion. According to Plaintiff, Defendant admitted the existence of an attorney-client relationship between Fetter and Plaintiff in one of its interrogatory responses. (Mot. to Disqualify at

8.) In particular, Defendant objected to the interrogatory "on the grounds that it is not tailored to lead to the discovery of admissible evidence. Mr. Fetter is a partner in the law firm of opposing counsel. Further, Mr. Fetter cannot disclose any attorney-client privileged communication, and objects to the extent the question involves legal advice from Mr. Fetter to Mr. McCool, Defendant will keep the information confidential and will not broadcast it further." (*Id.*)

Defendant counters that Plaintiff is misreading its response. Defendant explains that in objecting to the disclosure of attorney-client privileged communications, it was not referring to legal advice Fetter gave to Plaintiff for his personal legal issues—because there was none. (Resp. at 13.) Instead, it was referring to the disclosure of communications from Fetter to Local 67. (*Id.*) As Business Manager, Plaintiff was the principal officer of Local 67. Thus, if Fetter provided legal advice about the merger of the local unions to Plaintiff, that would have been advice to the local union.

Defendant's interrogatory objection is suspect, but it does not create an attorney-client relationship. Plaintiff's Interrogatory No. 20 asked for the substance of any communication between Plaintiff and Fetter regarding Plaintiff's claims of age discrimination. It had nothing to do with legal advice to the local union about the merger. However, the fact that Defendant interposed an unwarranted objection, an all-too-common occurrence in discovery responses, cannot create an attorney-client relationship between Fetter and Plaintiff (in his individual capacity). And here, Plaintiff's testimony makes clear that there was no such relationship.

Plaintiff also contends that this case is indistinguishable from *DeBiasi v. Charter County of Wayne,* 284 F.Supp.2d 760 (E.D.Mich.2003), in which the plaintiff's counsel was found to have a disqualifying conflict of interest. The Court disagrees. In *DeBiasi,* the plaintiff was a white male lieutenant who claimed reverse discrimination when the defendant county promoted a black female lieutenant, Pamela McClain, over him. The plaintiff believed that McClain should not have received the promotion. The potential conflict arose because the plaintiff's counsel was also general counsel to the union that both the plaintiff and McClain were members of. In that role, the plaintiff's counsel had served as McClain's union representative and had thereby obtained information about her fitness for the promotion that the plaintiff could use against the defendant county. In issuing an advisory opinion as to the lawyer's potential conflict of interest, the State Bar stated:

Case 2:24-cv-12347-BRM-EAS  ECF No. 40-8, PageID.1828  Filed 03/26/25  Page 36 of 52

McCool v. Operative Plasterers' & Cement Masons Intern...; Not Reported in...

2014 WL 635797

**\*9**  Even though the labor union [and not individual union member McClain] is and was your client, it is possible that you could have received some confidential communications from an agent of your client ... during your representation as general counsel during labor negotiations.

\* \* \*

Therefore, the test is whether or not you obtained any privileged and confidential information from the agent of your client during a former representation that could be used against her in this matter. If the answer is "yes", the conflict of interest rules could prevent your current representation. If the answer is "no", the ethics rules would permit your current representation.

*Id.* at 762. The court adopted this test and found "Plaintiff's counsel's knowledge of matters confided to him in the course of his service as general counsel for the Union-particularly with regard to the qualifications of Pamela McClain ...—are central to the defense of this case." *Id.* at 771. Significantly, the Court found that the conflict of interest rules prevented the attorney's concurrent representation of the plaintiff and the local union. Indeed, the court noted that "when an attorney concurrently represents two clients with adverse positions, impropriety is presumed." *Id.* at 771 n. 8.

This case is not like *DeBiasi*. First, Fetter's position is different from the plaintiff's counsel in *DeBiasi*. This is not a case of concurrent representation. As discussed, Fetter has never represented McCool individually. Second, unlike the information that the plaintiff's counsel in *DeBiasi* obtained about McClain, Plaintiff has not adequately demonstrated that the information he disclosed to Fetter was not otherwise available to Defendant. Plaintiff arguably made public the fact that he was thinking of filing a lawsuit when he filed the EEOC charge or when his lawyer sent the letter to the Union. At a minimum he made it public when he filed this suit. Plaintiff offers no explanation for how his intent to file a lawsuit against the Union was used or is now being used against him in this litigation. Likewise, Plaintiff does not explain how disqualifying Miller Cohen at this point in the litigation would prevent any harm to his case.

In sum, Plaintiff falls short of meeting the demanding standard for disqualification. He has failed to establish the requirements of the *Dana* test or a violation of the similar requirements set forth in MRPC 1.7, 1.8, 1.9, or 1.10.

**C. MRPC 3.7 Does Not Require Disqualification**

Lastly, Plaintiff contends that "MRPC 3.7(a) mandates that Fetter and Miller Cohen PLC not act as attorneys for Defendant because Fetter is also a necessary witness to Plaintiff and none of the listed exceptions to MRPC 3.7(a) apply." (Mot. to Disqualify at 13.)

Rule 3.7(a) is inapplicable. It provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

**\*10**  (1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Fetter is not involved in the defense of the Union. He is not and will not be trial counsel. Thus, this rule does not support disqualification of Miller Cohen.

**III. CONCLUSION**

Accordingly, Plaintiff's Motion for Protective Order to preclude Miller Cohen from taking Plaintiff's deposition and Plaintiff's Motion to Disqualify Miller Cohen as counsel for Defendant are **DENIED.**

**IT IS SO ORDERED.**

The attention of the parties is drawn to Fed.R.Civ.P. 72(a), which provides a period of fourteen days from the date of receipt of a copy of this order to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 635797

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1829 Filed 03/26/25 Page 37 of 52

McCool v. Operative Plasterers' & Cement Masons Intern...., Not Reported in...

2014 WL 635797

---

## Footnotes

1    The Court's Notice of Hearing advised the parties that "[t]he Court is prepared to conduct an evidentiary hearing on the Motion to Disqualify Counsel if that is how the parties wish to proceed." (Dkt.33.) Mr. McCool was the only witness presented. At the hearing, Defendant requested a continuance because they did not bring Mr. Fetter to testify. The request was denied.

2    Courts have disallowed disqualification on the basis of waiver or estoppel where the moving party has failed to move for disqualification in a timely manner. *In re Valley–Vulcan Mold Co.,* 237 B.R. at 337 ("It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." (citing *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87 (9th Cir.1983)* (denying motion for disqualification where it was asserted just prior to the scheduled trial date))). Here, because of the parties' discovery disputes, they have not yet conducted any depositions, no dispositive motions have been filed, and the Court has granted Defendant's motion to extend the scheduling order. Thus, while Plaintiff certainly could have raised the disqualification issue sooner, the court cannot say it is untimely given the current posture of the case.

3    Because of the overlap in the motions, the Court indicated that it would treat Defendant's Response to the Motion for Protective Order as its Response to the Motion to Disqualify. (Dkt.32.)

4    At the hearing, Plaintiff's counsel argued that the only issue in determining disqualification is whether Plaintiff expected Fetter to keep the disclosed information confidential. This is not a correct recitation of the law. Michigan Rule of Professional Conduct 1.6, which is Plaintiff's primary support, defines "confidence" as "information protected by the client-lawyer privilege under applicable law" and states that "a lawyer shall not knowingly reveal a confidence or secret of a client" or "use a confidence or secret of a client to the disadvantage of the client." MRPC 1.6(a), (b)(1) and (2). In other words, Rule 1.6 applies only where a lawyer-client relationship exists.

5    This is based upon Model Rule of Professional Conduct 1.18 which has not yet been adopted in Michigan. That Rule provides, in part:

      (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

      (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.

      (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d)....

      ABA Mod. Rules Prof. Cond. Rule 1.18.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 5090856

2014 WL 5090856
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

UNITED STATES of America, ex-rel Marianne
D. GUZALL, and Marianne D. Guzall a/k/
a Marianna Guzall, individually, Plaintiff,
v.
CITY OF ROMULUS, Alan R. Lambert,
and Betsey Krampitz, Defendants.

Civil Case No. 13–cv–11327.
|
Signed Oct. 9, 2014.

**Attorneys and Law Firms**

Raymond Guzall, III, Law Offices of Raymond Guzall III, P.C., Farmington Hills, MI, Peter A. Caplan, United States Attorney's Office, Detroit, MI, for Plaintiff.

Carolyn M. Jereck, Plunkett & Cooney, Bloomfield Hills, MI, John J. Gillooly, Garan Lucow, Detroit, MI, for Defendants.

*AMENDED OPINION AND ORDER GRANTING DEFENDANTS' JOINT MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL AND STAYING CASE FOR THIRTY DAYS*

LINDA V. PARKER, District Judge.

**\*1** Marianne D. Guzall ("Mrs.Guzall"), a former employee of Defendant City of Romulus, filed this lawsuit against Defendants as a qui tam action alleging violations of the False Claims Act, and as an individual action alleging violations of her rights under federal and state law. Specifically, Mrs. Guzall alleges the following counts in her four hundred and twelve paragraph Amended Complaint:

(I) Retaliation and Retaliatory Discharge in Violation of 31 U.S .C. § 3730(h), public policy, and the First Amendment to the U.S. Constitution;

(II) Violation of Federal False Claims Act–Qui Tam and (RICO) Racketeer Influenced and Corrupt Organizations Act;

(III) Promissory Estoppel;

(IV) Due Process Violation and Hostile Work Environment Claim;

(V) Intentional Infliction of Emotional Distress;

(VI) Fraud–Intentional and/or Constructive Fraud– Conspiracy and Concert of Actions.

(Pl.'s Am. Compl., ECF No. 4.) Defendants are the City of Romulus (the "City" or "Romulus"), the City's former Mayor Alan R. Lambert ("Mayor Lambert"), and the City's former Chief of Staff Betsey Krampitz ("Ms.Krampitz"). Mrs. Guzall is represented in this action by her husband, attorney Raymond Guzall III ("Mr.Guzall").

Presently before the Court is Defendants' joint motion to disqualify Mr. Guzall as Mrs. Guzall's counsel based on the fact that he acted as an Assistant City Attorney for Romulus during the period relevant to Mrs. Guzall's lawsuit, while employed by and/or a partner, director, and officer of Seifman & Guzall, P.C. The motion has been fully briefed and the Court held a motion hearing on August 13, 2014. For the reasons discussed below, the Court concludes that Mr. Guzall should be disqualified from serving as Mrs. Guzall's counsel in this matter.

**I. Factual and Procedural Background**
According to Mrs. Guzall's Amended Complaint, she was employed by the City as the Administrative Secretary to Mayor Lambert for approximately ten years, with her employment beginning on or about November 20, 2001 and terminating on or about March 11, 2011. (Am. Compl. ¶¶ 11– 14, ECF No. 4.) In 2000, Mr. Guzall started working with Attorney Barry Seifman ("Mr.Seifman") at the latter's law firm, Barry A. Seifman, P.C. ("firm"). (Defs.' Mot., Ex. 1 ¶ 4, ECF No. 31) Effective August 1, 2006, Mr. Guzall obtained an ownership interest in the firm and the firm then became known as Seifman & Guzall, P.C. (*Id.* ¶ 5.)

Mr. Seifman began serving as the City's attorney in approximately 2001. (*Id.* ¶ 3.) Mr. Guzall served as Assistant City Attorney while employed with Seifman & Guzall. (*Id.* ¶ 8.) In that capacity, he actively represented and advised the City through its employees and public officials, and served as the City's prosecutor. (*Id.* and Ex. 3 at 28.) According to Mr. Seifman, he and Mr. Guzall routinely met and discussed various legal matters and/or issues relating to

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1831 Filed 03/26/25 Page 39 of 52
U.S. ex rel. Guzall v. City of Romulus, Not Reported in F.Supp.3d (2014)

2014 WL 5090856

their representation of the City. (*Id.,* Ex. 1 ¶ 9.) Mr. Seifman states that their discussions included confidential matters related to the City, its employees, and its public officials. (*Id.*)

 **\*2** Mrs. Guzall alleges that her employment with the City was terminated in whole or in part due to her speech on matters of public concern, specifically Mayor Lambert's and Ms. Krampitz's abuse of their positions and/or power and misuse of funds. (*See,* Am.Compl.¶¶ 26, 27.) For example, Mrs. Guzall alleges that Mayor Lambert used his position to coerce business owners to hire his wife's company, his children, and his friends for employment. (*Id.* ¶¶ 30–31.) Mrs. Guzall also alleges that Mayor Lambert violated campaign finance laws. (*Id.* ¶¶ 73, 78–87.) Further, she claims that she received kick backs from City businesses. (*Id.* ¶¶ 88, 91–94.)

According to Mrs. Guzall, she "constantly informed City Attorney Seifman and other City officials about what seemed to her to be the failure of Defendants to discharge their governmental responsibilities and/or wrongdoing (illegal and/or improper acts) and/or breach of public trust." (*Id.* ¶ 27; *see also, e.g. id.* ¶ 154.) For example, Mrs. Guzall claims that she told Mr. Seifman that several people were listed on Mayor Lambert's campaign finance reports as having given money to his campaign, when they in fact did not, and that Mr. Seifman did nothing to cure the illegal campaign finance report. (*Id.* ¶¶ 84–85.) She also indicates that she informed Mr. Seifman of the kick backs and bribes Mayor Lambert was to receive, Mayor Lambert's "tax benefit" schemes, and improper use of campaign finances. (*Id.* ¶¶ 88, 140, 143–144, 148–150.) Although Mrs. Guzall does not name Mr. Seifman as a defendant in her lawsuit, she devotes a considerable portion of her Amended Complaint describing how he "did nothing to cure th[e] improprieties and/or illegalities" she reported and that he "supported and aided in Alan Lambert's improper and/or criminal acts by drafting documents and contracts for Alan Lambert to be allowed to obtain those 'kick backs.' " (*See, e.g., id.* ¶¶ 89, 90.)

In her Amended Complaint, Mrs. Guzall also alleges that she "was forced by Defendants" to tell her husband that Mayor Lambert expected him to defend the mayor's son when he was arrested and help the mayor's son and other children with legal matters for free. (*Id.* ¶¶ 113, 114.) Mrs. Guzall claims that her job and Mr. Guzall's job as prosecuting attorney in Romulus were threatened if they did not comply. (*Id.*) Mrs. Guzall asserts, however, that she "did not tell her husband that." (*Id.*)

Mr. Guzall resigned from Seifman & Guzall, P.C. on or about February 6, 2012. (*Id.* ¶ 7.) Mr. Seifman has charged Mr. Guzall with wrongfully taking various firm client matters and litigation between the two former partners is currently pending in the Circuit Court for Oakland County, Michigan ("Oakland County litigation"). (*Id.* ¶ 10.) On April 16, 2012, Mr. Guzall was deposed in the Oakland County litigation.

During his deposition, Mr. Guzall testified that he "acted as an attorney for the city" while employed at Seifman & Guzall. (Defs.' Mot. Ex. 3 at 26, ECF No. 31–4.) In the resignation letter that he wrote to Mr. Seifman, Mr. Guzall accused Mr. Seifman of engaging in wrongdoing and wrote, specifically, with respect to the City:

> **\*3** Further, there have been so many problems with the Romulus account that I really fear that you may be looked at in terms of criminal charges, if any of the things I have heard are true. I am very upset that you have put the Firm and my name at risk.

(*Id.* at Attach. 5.) When asked about this allegation at his deposition in the Oakland County litigation, Mr. Guzall asserted the attorney-client privilege and refused to testify, stating:

A. Well, the things that I heard. I mean, there were things that Barry and I discussed, but the other issue I have is, I mean, I–I don't hold the attorney/client privilege, so things that I heard came from employees of the City of Romulus and/or employees, officials, whatever you want to call them.

Q. Okay. Let's start with who those employees are. Who did you hear whatever it is that you were talking about from?

A. From my wife.

Q. Okay. What did you hear from your wife?

A. That—again, that's—she's employed by the city.

...

A. There were things that I learned when she was an employee and there were things I learned when she was laid off, and whether she was still employed at that time-

Case 2:24-cv-12347-BRM-EAS  ECF No. 40-8, PageID.1832  Filed 03/26/25  Page 40 of 52
U.S. ex rel. Guzall v. City of Romulus, Not Reported in F.Supp.3d (2014)
2014 WL 5090856

and I can't remember specifically which month, but I know there were conversations between Seifman and myself in regards to some of those issues. If the city wants to waive that privilege, I'd be more than happy to tell you everything I know.

Q. But right now the only people—the only question before you really iswell, I'm sorry. I did ask what your wife told you, and you're asserting the attorney/client privilege with regard to what your wife told you?

A. It's not my privilege. It's the city's privilege. If the city wants to waive their privilege as to anything that I know, I'm more than happy to tell you everything I know.

Q. One of the people that told you whatever it is that you interpreted to mean something criminal was your wife. Who else at the city told you—employees of the city—who else told you about something that you think put Mr. Seifman at risk of criminal charges?

A. There were other employees—various other employees, but, specifically—I can't remember specifics other than, I mean, possibly Betsy Krampitz.

...

Q. Okay. Anybody else?

A. Yeah. You know, I had lots of conversations with police officers, the former chief of police, various other employees in the city, Rendall Wooden.

...

A.... I mean, the mayor himself. I talked to, you know, the council people. I talked to a lot of employees there.

Q. And what was [sic] the criminal charges that you think Seifman was [sic] subject to?

A. Again, I don't know if I'm—if I'm getting into issues of attorney/client privilege or not, and I don't—I don't want to have an issue with me giving up information. If the city wants to waive it, I'll tell you everything you want to know. I don't want to have an issue with someone coming after me for attorney/client privilege matters.

**\*4**  Q.... Did you confront Mr. Seifman regarding these potential charges?

A. Yes.

Q. Okay. What did you say?

A. Well, that's the problem, because he's city attorney and I'm a city attorney. We're both representing the client at the same time. That's fine. But for me to tell you, that's a problem.

(*Id.,* Ex. 3 at 60–65, ECF No. 31–4.) Defendants attach the affidavit of the City's current mayor, LeRoy D. Burcroff, to their pending motion, in which Mayor Burcroff asserts the City's position with respect to Mr. Guzall's representation of Mrs. Guzall in the pending matter:

> Given the nature of Mr. Guzall's previous relationship with the City of Romulus as well as conceivable use and/or reference to information obtained in this capacity and thus, subject to the attorney-client privilege, while representing the named Plaintiff's interests against the City in this case, the City of Romulus has not consented and does not consent to Mr. Guzall's representation of Marianne Guzall in this action pursued directly against his former client, the City of Romulus.

(*Id.,* Ex. 2 ¶ 10, ECF No. 31–3.)

## II. Defendants' Arguments & Mrs. Guzall's Response

In their motion, Defendants identify several bases that they believe justify the disqualification of Mr. Guzall as Mrs. Guzall's counsel in this matter. They first argue that, in his position as City Attorney, Mr. Guzall had confidential communications and obtained confidential information from City employees and officials regarding the matters that are at issue before this Court which he is precluded from divulging without the City's consent pursuant to Michigan Rule of Professional Conduct 1.6. Further, Defendants contend that Michigan Rule of Professional Conduct 1.9 precludes Mr. Guzall from representing Mrs. Guzall in a matter that is materially adverse to the interests of his former client, the City. Defendants maintain that Mr. Guzall also will likely be a witness in this action and thus Michigan Rule of Professional Conduct 3.7 prohibits him from acting as Mrs. Guzall's

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1833 Filed 03/26/25 Page 41 of 52
U.S. ex rel. Guzall v. City of Romulus, Not Reported in F.Supp.3d (2014)
2014 WL 5090856

counsel. Finally, Defendants argue that Mr. Guzall has a financial interest in this litigation because he is married to the plaintiff, and therefore Michigan Rule of Professional Conduct 1.8(j) precludes him from acting as Mrs. Guzall's counsel.

As she did in her Amended Complaint, Mrs. Guzall devotes a substantial portion of her response brief discussing Mr. Seifman's alleged misdeeds. (*See, e.g.,* Pl.'s Resp. Br. at 7–11, ECF No. 32.) Addressing Defendants' arguments, Mrs. Guzall contends that the matters at issue in her lawsuit are not substantially related to the matters for which Mr. Guzall represented the City. Mrs. Guzall indicates that Defendants have not provided the Court with any claimed privileged or confidential information (i.e., facts) that Mr. Guzall obtained during his representation of the City that would justify his disqualification or that would be deemed relevant as testimony here. She seems to also suggest that any relevant information Mr. Guzall obtained through his representation of the City could be revealed in this lawsuit pursuant to the exceptions to the attorney-client privilege set forth in Michigan Rules of Professional Conduct 1.6(c)(3) and (4). (*Id.* at 12.)

### III. Applicable Law

 **\*5** All courts have the inherent authority to disqualify an attorney from a case. *D.H Overmyer Co. v. Robson,* 750 F.2d 31, 33–34 (6th Cir.1984). This power should be exercised with great caution, however, as "the ability to deny one's opponent the services of capable counsel, is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen,* 849 F.2d 222, 224 (6th Cir.1988). "[C]ourts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice." *Id.*

A court may disqualify an attorney based on a conflict of interest. *See, Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Alticor, Inc.,* 466 F.3d 436, 437 (6th Cir.2006). Rule 1.9 of the Michigan Rules of Professional Responsibility sets forth the restrictions on an attorney to represent a party where a conflict of interest with a former client exists:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

(b)Unless the former client consents after consultation, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated has previously represented a client

(1) whose interests are materially adverse to that person, and

(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

MRPC 1.9. Similar to this rule, the Sixth Circuit holds that an attorney should be disqualified where:

> (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification.

*Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio,* 900 F.2d 882, 889 (6th Cir.1990) (citations omitted).

It is the movant's burden to prove that opposing counsel should be disqualified. *S.D. Warren Co. v. Duff–Norton,* 302 F.Supp.2d 762, 767 (W.D.Mich.2004) (citing *Bartech Indus., Inc. v. Int'l Baking Co.,* 910 F.Supp. 388, 392 (E.D.Tenn.1996)). When making the decision whether to disqualify counsel, the court must conduct a factual inquiry

2014 WL 5090856

in a manner affording appellate review. *Gen. Mills Supply Co. v. SCA Servs., Inc.,* 697 F.2d 697, 710 (6th Cir.1982). This requirement is satisfied where the court's inquiry is "conducted on affidavits and documents that would be acceptable under [Federal Rule of Civil Procedure 56] ... and if the district judge does not undertake to decide disputed issues of fact." *Id.*

## IV. Analysis

 **\*6** There can be no dispute that a past attorney-client relationship between Mr. Guzall and the City existed and that Mr. Guzall acquired confidential information during that relationship. Mr. Guzall admitted these facts during his deposition in the Oakland County litigation. *See supra.* Whether he should be disqualified from currently representing Mrs. Guzall, therefore, is dependent on whether he represented the City in matters "substantially related" to the present case.

The Sixth Circuit recently "explored ... the contours of what constitutes 'substantially related' " in *Bowers v. Ophthalmology Group,* 733 F.3d 647, 651–53 (2013). The *Bowers* court began its discussion by emphasizing that a former client need not reveal the confidential information learned by its counsel in order to establish that the attorney should be disqualified. *Id.* at 651–52. As stated in a treatise relied on by the court:

> A concern to protect a former client's confidential information would be self-defeating if, in order to obtain its protection, the former client were required to reveal in a public proceeding the particular communication or other confidential information that could be used in the subsequent representation.

*Id.* (quoting Restatement (Third) of the Law Governing Lawyers § 132 cmt. d(iii) (2000)). Thus this Court finds no merit to Mrs. Guzall's assertion that Defendants have not met their burden of proof due to their failure to provide the Court with any "confidential information (facts) they claim attorney Guzall possesses that may allow for disqualification of him as an attorney in this case." (*See* Pl.'s Resp. Br. at 3, ECF No. 32, emphasis removed.)

The *Bowers* court next reviewed sources defining when a "substantial relationship" exists between the attorney's current and former relationships. 733 F.3d at 651–52. The Sixth Circuit concluded that whether a "substantial relationship" exists should be determined by looking "to the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the now adverse client." *Id.* at 652. Thus a court "must examine whether there is a substantial risk that confidential information as would normally or typically have been obtained in [the attorney]'s prior representation [of the former client] would materially advance [the opposing party]'s position in the present case." *Id.* at 653. Using these contours, this Court finds a substantial relationship between Mr. Guzall's current and former relationships

The allegations in the Amended Complaint and the evidence attached to the parties' pleadings reflect that Mr. Guzall was exposed to confidential information during his representation of the City that would materially advance Mrs. Guzall's position in the instant case. Mr. Guzall expressly represented during his deposition in the Oakland County litigation that he obtained information protected by the attorney-client relationship during his representation of the City related to wrongdoings connected with the City. As Mr. Guzall stated during his deposition, he learned about problems "with the Romulus account" from its employees and officials during his representation of the City. Mr. Seifman attests that he and Mr. Guzall routinely met and discussed various legal matters and issues relating to their representation. Although Mr. Seifman does not specifically state that the partners discussed misconduct by Defendants, Mrs. Guzall asserts in her Amended Complaint that she "constantly" informed Mr. Seifman of Defendants' alleged wrongdoings and there is a presumption that associated attorneys share client confidences. *See United States v. Baird,* No. CRIM.A. 6:05–30–DCR, 2005 WL 1676898, at \*1 (E.D.Ky. July 15, 2005) (quoting *Hempstead Video Inc. v. Incorporated Village of Valley Stream,* 409 F.3d 127, 133 (2d Cir.2005)); *see also Harris v. Agrivest Ltd. P'ship II,* 818 F.Supp. 1035, 1040 (E.D.Mich.1993) ("The reason for disqualifying a partner of a firm from performing work adverse to a former client of that firm is that because of that partner's access to information, he is imputed with all knowledge contained in the firm's files."). This alleged misconduct is the basis for Mrs. Guzall's lawsuit against Defendants and her interests are undoubtedly directly adverse to the City's interests.

2014 WL 5090856

**\*7** Mr. Guzall confirmed the substantial relationship between his past and current representations at the motion hearing. At the hearing, Mr. Guzall told the Court that the confidential information he obtained as an attorney for the City, to which he was referring in his state-court deposition, related to only two matters. He contended that both matters are unrelated to the instant litigation. He described the first matter as concerning a City employee who obtained drugs illegally and the second matter as involving person(s) who improperly appeared on the mayor's campaign finance report. Yet substantial paragraphs of Mrs. Guzall's Amended Complaint assert illegalities with respect to Mayor Lambert's campaign finance reports. [1]

Mrs. Guzall argues that there in fact is not a substantial relationship between the present matter and Mr. Guzall's representation of the City and therefore this case is similar to several cases where no conflict of interest was found: *Eternal Preservation Associates, LLC v. Accidental Mummies Touring Co., LLC,* 759 F.Supp.2d 887 (E.D.Mich.2011); *McKane v. City of Lansing,* 861 F.Supp. 47 (W.D.Mich.1994); and, *Ackerman v. Miotke,* No. 265004, 2006 WL 859471 (Mich.Ct.App. Apr.4, 2006). In *Eternal Preservation Associates,* the Honorable David M. Lawson in this District found that a conflict existed but did not disqualify the firm representing the defendant because the conflict was not between the defendant and the firm's former client. 759 F.Supp.2d at 888–89. Similarly, the Michigan Court of Appeals in *Ackerman* found no conflict of interest between clients separately represented by the defendant-attorney in connection with the possible sale of the clients' properties for use in the construction of casinos. 2006 WL 859471, at \*2–3.

Of the three cases cited by Mrs. Guzall, *McKane* is most similar to the present matter. There, the attorney representing the plaintiff—Lansing's former mayor who claimed his early retirement benefits under the city's early retirement plan were wrongfully terminated—had represented the city previously in a lawsuit filed by a different former mayor, Gerald Graves. *McKane,* 861 F.Supp. at 47. Mayor Graves' lawsuit against the city concerned his entitlement to compensation for unused sick and vacation days accumulated during his tenure. *Id.* at 49. The District Court for the Western District of Michigan's discussion as to why the attorney's representations of the two former mayors were not substantially related illustrates how the present matter is distinguishable:

... in the *Graves* case, Mr. Graves alleged he was entitled to compensation for unused sick and vacation days accumulated during his tenure as Mayor and previously as a member of the City Council. Payment for unused sick and vacation days was a benefit available to all regular, full-time employees of the City. Thus, the case turned upon whether Mr. Graves was a public employee or a public official. The instant case, Mr. McKane submits, is quite different. Here the issue is whether Mr. McKane is entitled to early retirement benefits under an early retirement incentive plan adopted by the City in 1992. The Plan had not even been enacted at the time of the prior representation. Mr. McKane insists that he is not disputing his employment status. At issue, instead, is the intent of the City Council regarding inclusion of elected officials in the retirement plan.

**\*8** At oral argument, Mr. Blaine represented to the Court that his representation of the City in *Graves* did not afford him knowledge of any confidential information. Counsel for the defendants responded that they were not claiming that Mr. Blaine possessed any confidential information from the prior representation that he could bring to bear on the instant case.

*Id.* at 49.

There is no exception that permits Mr. Guzall to reveal the City's confidential information. Contrary to Mrs. Guzall's suggestion, the exceptions in subsection (3) and (4) of Michigan Rule of Professional Responsibility 1.6 are not applicable here. Those provisions state:

(c) A lawyer may reveal:

...

(3) confidences and secrets to the extent reasonably necessary to rectify the consequences of a client's illegal or fraudulent act in the furtherance of which the lawyer's services have been used;

(4) the intention of a client to commit a crime and the information necessary to prevent the crime ...

MRPC 1.6. Mrs. Guzall has not suggested that *Mr. Guzall 's* services were used by the City to engage in illegal or fraudulent conduct or that Mr. Guzall would be revealing confidential information to rectify the consequences of such conduct. There also is no suggestion that the

2014 WL 5090856

disclosure would prevent a future crime. *SeePeople v. Paasche,* 207 Mich.App. 698, 525 N.W.2d 914, 917–18 (Mich.Ct.App.1994) (explaining that it is "advice [that] refers to future, not past, wrongdoing" to which the crimefraud exception to the attorney-client privilege applies); *Laethem Equip. Co. v. Deere & Co.,* 261 F.R.D. 127 (E.D.Mich.2009) (same).

## V. Conclusion

In summary, Mr. Guzall formerly represented the City and obtained confidential information during that representation which is relevant to the present litigation. His current client's interests are materially adverse to the interests of his former client. The City does not consent to Mr. Guzall's representation of Mrs. Guzall in this litigation. For these reasons, he must be disqualified from serving as Mrs. Guzall's attorney.

Accordingly,

**IT IS ORDERED,** that Defendants' Joint Motion to Disqualify Plaintiff's Counsel is **GRANTED;**

**IT IS FURTHER ORDERED,** that Plaintiff shall obtain new counsel who shall enter his or her appearance within thirty (30) days of this Opinion and Order or Plaintiff will be presumed to be proceeding pro se;

**IT IS FURTHER ORDERED,** that this matter is **STAYED** for thirty (30) days to permit Plaintiff to obtain new counsel, or to allow any party to file a motion in the United States Court of Appeals for the Sixth Circuit for permission to appeal under Federal Rule of Appellate Procedure 5. *See* Fed. R.App. P. 4(a)(1)(A), 5(a)(2). If no such motion is filed within that time, the stay will be dissolved. If such a motion is filed, the stay will continue until the motion is resolved by the court of appeals.

## All Citations

Not Reported in F.Supp.3d, 2014 WL 5090856

---

## Footnotes

1    Mrs. Guzall also refers to Ms. Krampitz' alleged illegal drug throughout the Amended Complaint. (*See, e.g.,* Am. Compl. ¶¶ 52–53, 56, 97.) Whether this was the same employee Mr. Guzall referred to at the hearing, however, is unclear.

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Woods v. Michigan Department of Corrections, Not Reported in Fed. Supp. (2015)

2015 WL 7075922

2015 WL 7075922
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Shannon WOODS, Plaintiff,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS,
Ryan Johnson, and Monica Burton, Defendants.

Case No. 15-10324
|
Signed 11/13/2015

**Attorneys and Law Firms**

Sarah Marie Thomas, Jonathan R. Marko, The Rasor Law
Firm, PLLC, Royal Oak, MI, for Plaintiff.

Brittany A. Campbell, Department of Attorney General,
Jared Warner, Michigan Attorney General's Office, Lisa M.
Geminick, State of Michigan, Lansing, MI, for Defendants.

**MEMORANDUM AND ORDER DENYING
DEFENDANTS' MOTION TO DISQUALIFY
PLAINTIFF'S ATTORNEYS AND LAW FIRM**

AVERN COHN, UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

 **\*1** This is an employment discrimination case under
Title VII, 42 U.S.C. § 2000e and 42 U.S.C. §§ 1981
and 1983. Plaintiff Shannon Woods (Woods) is suing the
Michigan Department of Corrections (MDOC) and two of
its employees, Ryan Johnson (Johnson) and Monica Swain
(Swain) [1], asserting she was subjected to sex discrimination
and a hostile work environment. Woods filed two complaints
based on employment discrimination, one in state and one
in federal court. The only difference between the federal and

state complaints is that Woods is suing the MDOC as well as
Johnson and Swain in federal court while the MDOC is the
sole defendant in state court. Swain is a key witness in the
state court case. The state court case was filed on September
18, 2014. The federal case was filed on January 24, 2015.

Now before the Court is the MDOC's motion to disqualify
Woods' attorneys, James B. Rasor (Rasor) and Jonathon
Marko (Marko), and their law firm, Rasor Law Firm, [2] on
the basis of a conflict of interest pursuant to MRPC 1.7(a),
because the Rasor Law Firm for a time simultaneously
represented Swain in an automobile injury case and Woods in
her cases against the MDOC. A similar motion to disqualify
the Rasor Law Firm was brought in the state court case.
Following an extensive hearing on the motion, the state court
denied the motion because the MDOC failed to meet its
burden in establishing whether a conflict existed.

On September 2, 2015, the Court held a hearing on the
motion to disqualify. The Court asked the MDOC to submit a
chronology of events to provide the Court with further insight
into whether the Rasor Law Firm was (a) aware of the conflict
of interest prior to terminating representation of Swain and
(b) whether it had confidential information as a result of its
representation of Swain.

After reviewing the submitted chronology and exhibits, the
Court finds that the motion to disqualify was improperly
brought under MRPC 1.7(a), the conflict of interest rule
relating to a current client, and that the motion should have
been brought pursuant to MRPC 1.9(a), the conflict of interest
rule applied when a former client is involved.

For the reasons that follow, the MDOC's motion to disqualify
the Rasor Law Firm and its attorneys will be denied.

**I. BACKGROUND**

Below is a table of dates and events relevant to the motion
before the Court.

| | |
|---|---|
| 08/06/2014 | Woods meets Marko of the Rasor Law Firm and signs a contract for representation. |
| 09/18/2014 | The Rasor Law Firm, on behalf of Woods, files a state court action, Woods v. MDOC, in Wayne County Circuit Court, case # 14-012000-CD, alleging employment discrimination and intentional infliction of |

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1838 Filed 03/26/25 Page 46 of 52
Woods v. Michigan Department of Corrections, Not Reported in Fed. Supp. (2015)
2015 WL 7075922

|  |  |  |
|--|--|--|
|  |  | emotional distress. In the complaint, Woods claims that she told her then-supervisor, Swain, about alleged sexual harassment in the workplace and that Swain did nothing to protect Woods. |
|  | 01/05/2015 | Marko and Swain have a telephone conversation regarding potentially representing Swain in an automobile injury case. |
|  | 01/13/2015 | In an email to Marko regarding her automobile injury case, Swain notes her occupation as "Supervisor-MDOC." (Doc. 35, Ex. 1) |
|  | 01/24/2015 | The Rasor Law Firm, on behalf of Woods, files a federal claim, <u>Woods v. MDOC, Ryan Johnson, and Monica Burton</u>, case # 15-10324, for employment discrimination alleging the same set of general allegations as in the state court action filed in September 2014. (Doc. 1) |
|  | 02/24/2015 | Swain meets with Marko for a consultation on her automobile injury case. Because Swain only identifies herself as Monica Swain and not Monica Burton or Monica Swain-Burton, a conflict check fails to reveal that Woods represented by the Rasor Law Firm sued her in federal court.

[The initial consultation is the only time that Marko and Swain meet in person to discuss the automobile injury case. Swain is not aware of her involvement in any action between Woods, the Rasor Law Firm and the MDOC, either as a defendant or as a witness. (Transcript of State Court Hearing at 20-21) Marko and Swain do not discuss any confidential or proprietary information related to Woods' case during the consultation. (Doc. 31, Ex. B, Swain Deposition at 13, 16) Further, Marko does not attempt to elicit information about Woods' case. (Doc. 31, Ex. B, Swain Deposition at 14, 17) ] |
|  | 03/05/2015 | Swain sends the Rasor Law Firm an e-mail regarding service of process in the federal case. The email indicates that Monica Burton now goes by the name Monica Swain. |
|  | 03/06/2015 | Swain emails Marko a detailed description of her medical treatment and Henry Ford Hospital sends her medical records to the Rasor Law Firm. (Doc. 35, Ex. 3) |

Woods v. Michigan Department of Corrections, Not Reported in Fed. Supp. (2015)
2015 WL 7075922

| | | |
|---|---|---|
| | 03/11/2015 | The MDOC files its witness list in the state court case listing "Monica Swain, MDOC (f/k/a Monica Burton)" as a witness. (Doc. 34, Ex. 4) |
| | 03/13/2015 | Swain is personally served with a summons and complaint in the federal case as an individually named defendant. (Doc. 34, Ex. 5) |
| | 03/26/2015 | Swain emails Marko and the Rasor Law Firm her medical records from Botsford Hospital for her automobile injury claim. (Doc. 35, Ex. 6) |
| | 04/03/2015 | An answer is filed on behalf of "Monica Swain (Burton)" in the federal case. (Doc. 13) |
| | 04/28/2015 | Swain signs authorization forms for the Rasor Law Firm to obtain her Personal Injury Protection (PIP) file, insurance files, police records, and employment records. (Doc. 35, Ex. 7) |
| | 05/19/2015 | The Rasor Law Firm, on behalf of Woods, files its witness list in the state court case and includes "Monica Burton aka Monica Swain, Supervisor" as a witness. (Doc. 34, Ex. 8) |
| | 06/19/2015<br><br>06/25/2015 | The Rasor Law Firm obtains authorizations from Swain for the release of her insurance and police records. (Doc. 35, Ex. 9) |
| | 06/29/2015 | Marko emails Swain about scheduling an appointment with a physician in regards to her automobile injury case. In closing, Marko states, "See you next Tuesday!" referring to Swain's upcoming deposition in the federal case. (Doc. 34, Ex. 10) |
| | 06/30/2015 | Marko telephones Swain regarding her automobile injury case. (Doc. 29, Ex. 1, ¶ 10) During the conversation, Marko informs Swain that he will be deposing her for the federal and state cases the following week. (Doc. 29, Ex. 1, ¶ 10) Until the phone conversation with Marko, Swain is unaware that the Rasor Law Firm is the same firm representing Woods. (Doc. 29, Ex. 1, ¶ 12)<br><br>That same day, Swain contacts her counsel at the Attorney General's Office to inquire about a possible conflict of interest. (Doc. 29, Ex. 1, ¶ 11) |

2015 WL 7075922

| | |
|---|---|
| 07/06/2015 | Assistant Attorney General Jared Warner calls the Rasor Law Firm and sends a follow up email to Marko in which he explains the conflict of interest and advises that if the conflict is not resolved, he plans to file a motion to disqualify. (Doc. 34, Ex. 11)<br><br>The MDOC files a motion to disqualify Marko and the Rasor Law Firm based on MRPC 1.7 in the federal case. (Doc. 25). The Rasor Law Firm faxes to the MDOC Lawton Parole Office (Swain's employer) Human Resources a request for Swain's entire un-redacted records, specifically: payroll and tax records; employment applications; medical reports and files; insurance, benefit, and retirement records; and all correspondence. (Doc. 35, Ex. 12). |
| 07/07/2015 | The Rasor Law Firm sends Swain additional document release forms for Progressive Insurance. (Doc. 34, Ex. 13) |
| 07/14/2015 | The Rasor Law Firm sends a termination letter to Swain stating that the Rasor Law Firm will no longer represent her for her automobile injury case. (Transcript of State Court Hearing at 16, 49) |

## II. STANDARD OF REVIEW

**\*2** A motion to disqualify counsel is the proper method for a party to bring to the court's attention an alleged conflict of interest or breach of ethical duty by opposing counsel. DeBiasi v. Charter County of Wayne, 284 F. Supp. 2d. 760, 770 (E.D. Mich. 2003). However, "motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp., 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999), aff'd, 5 F. App'x 396 (6th Cir. 2001) (citation and internal quotation marks omitted). Disqualification should only be utilized when there is a "reasonable possibility that some specifically identifiable impropriety" actually occurred. Moses v. Sterling Commerce (America), Inc., 122 F. App'x 177, 183-184 (6th Cir. 2005)(quoting Kitchen v. Aristech Chem., 769 F. Supp. 254, 257 (S.D. Ohio 1991)). Specifically, "[t]he party seeking disqualification bears the burden of demonstrating specifically how and as to what issues in the case the likelihood of a prejudice will result." Rymal v. Baergen, 262 Mich. App. 274, 319; 686 N.W.2d 241 (2004). When confronted with a motion for disqualification, the court

"must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice." Manning v. Waring, Cox, James, Sklar & Allen, 849 F.2d 222, 224 (6th Cir. 1988).

**\*3** The Michigan Rules of Professional Conduct (MRPC) are the proper guidelines against which to measure the appropriateness of an attorney's conduct for the purpose of determining whether he should be disqualified. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Alticor, Inc., 466 F.3d 456, 457-58 (6th Cir. 2006), vacated on other grounds, 472 F.3d 436 (6th Cir. 2007).

The MDOC relies on MRPC 1.7(a) to support its motion. The rule states:

> **1.7. Conflict of Interest: General Rule.** (a) [A] lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless: (1) the lawyer reasonably believes the representation will not adversely affect

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1841 Filed 03/26/25 Page 49 of 52
Woods v. Michigan Department of Corrections, Not Reported in Fed. Supp. (2015)
2015 WL 7075922

relationship with the other client; and (2) each client consents after consultation.

MRPC 1.7 is used to address conflicts of interest between <u>current clients</u>.

In the case of a conflict of interest between a current client and a <u>former client</u>, MRPC 1.9 is applied. The rule states:

> **1.9. Conflict of Interest: Former Client.** (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the **same or a substantially related matter** in which that person's interests are **materially adverse** to the interests of the former client unless the **former client consents** after consultation.

The Sixth Circuit applies a three-part test for disqualification pursuant to MRPC 1.9: (1) a past attorney-client relationship; (2) the subject matter of the prior attorney-client relationship is substantially related to the subject matter of the present action; and (3) the attorney acquired confidential information from the party seeking disqualification. Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio, 900 F.2d 882, 889 (1990).

### III. DISCUSSION

#### A. Application of MRPC 1.9(a)

The MDOC says that the Rasor Law Firm violated MRPC 1.7(a) because at the time the MDOC filed its motion to disqualify, the Rasor Law Firm represented both Swain in her automobile negligence claim as well as Woods in her case against the MDOC. However, the Rasor Law Firm no longer represents Swain. As such, an analysis for a conflict of interest between current clients under MRPC 1.7(a) is no longer proper. Instead, the proper analysis to determine disqualification is for a conflict of interest between a current and a former client. As such, the Court will decide this motion based on MRPC 1.9(a).

#### 1. Past Attorney-Client Relationship

In this case, it is undisputed that a very recent past attorney-client relationship existed between Swain and the Rasor Law Firm. The Rasor Law Firm acknowledges that Marko, one of the firm's attorneys, had a consultation with Swain regarding her automobile negligence case. Further, it has been established that Swain signed several authorization forms permitting the release of her personal medical history and insurance coverage to the Rasor Law Firm. However, it is noted that the Rasor Law Firm never filed a case on Swain's behalf for the automobile injury claim.

#### 2. Substantially Related Subject Matter

With regard to the second factor, the subject matter of the prior attorney-client relationship is not substantially related to the subject matter of the complaint in this case.

**\*4** The MDOC says that the automobile injury action and the employment discrimination action are substantially related because the Rasor Law Firm can use the medical information it obtained for the automobile injury case to its advantage in the case against the MDOC. However, the MDOC fails to explain how Swain's medical records in reality are related to proving employment discrimination. As noted by the state court, the MDOC's motion "is not going to rise or fall based on the medical records unless you show me why and how. But it doesn't, on its face, appear to be that way." (Transcript of State Court Hearing at 33).

In addition, the MDOC says that because many of the issues in this case will come down to credibility determinations by the jury, the Rasor Law Firm will be unable to zealously represent Woods because it will be required to attack the credibility of the MDOC employees, including Swain. According to the MDOC, the Rasor Law Firm could not maintain the duty of loyalty it owed Swain by virtue of its representation of her in her own civil suit while simultaneously attacking her credibility and arguing that she failed to do her job in the interim. This argument lacks merit because the Rasor Law Firm no longer represents Swain and, therefore, it can represent Woods without concern for a duty of loyalty to Swain.

Woods v. Michigan Department of Corrections, Not Reported in Fed. Supp. (2015)

2015 WL 7075922

Further, the MDOC says that the dual representation gave the Rasor Law Firm the opportunity to speak with Swain without the presence of either the MDOC's or Woods' counsel. Accordingly, there is no way to know with certainty what was discussed between them. Such access is in conflict with the goal of the MRCP which is to protect the attorney-client relationship. However, this concern is unwarranted for two reasons. First, Swain stated repeatedly during her deposition that she and Marko had not discussed any aspect of Woods' case while he represented her. (Doc. 31, Ex. B, Swain Deposition at 13, 14, 16, 17, 18) Second, the Rasor Law Firm no longer represents Swain, so there will be no future opportunities for private communications between any members of the Rasor Law Firm and Swain.

In sum, while both the automobile injury action and the employment discrimination action involve Swain, the "alleged wrongs are totally different and remote in time." Quicken Loans v. Jolly, 2008 WL 2566373, *4 (E.D. Mich. June 24, 2008). The wrongdoing implicit in the automobile injury case involved Swain alone while the alleged wrongs in the current case involve the MDOC as a whole as well as Johnson, the third defendant in the case. There is no showing that anything the Rasor Law Firm learned in representing Swain in the automobile negligence action could give an advantage in representing Woods in this case. "This total lack of overlapping facts demonstrates the simple fact that the two cases are not substantially similar within the meaning of Rule 1.9." Id.

### 3. Confidential Information

With regard to the third factor, the Court finds that the Rasor Law Firm did not obtain confidential information during the course of its representation.

The MDOC points to the fact that the Rasor Law Firm is in possession of Swain's medical records as reason to disqualify the firm. However, the MDOC failed to establish how the Swain's personal medical records will be related to or detrimental to the employment discrimination case before the Court. Disqualification is inappropriate when counsel has only obtained general knowledge of the prior client. Int'l Paper Co. v. Lloyd Mfg. Co., 555 F. Supp. 125, 136 (N.D. Ill. 1982).

Further, the MDOC says that the Rasor Law Firm is in possession of Swain's personal employment records which would prove to be prejudicial to the MDOC in the case before the Court. However, while the MDOC established that the Rasor Law Firm requested Swain's employment records and Swain signed the required authorization forms in order for the files to be released, the MDOC failed to establish that the Rasor Law Firm actually received the employment records. The mere request without the receipt of the actual records does not establish a basis to assert that the Rasor Law Firm has Swain's confidential employment records.

**\*5** Even if the Court finds that the Rasor Law Firm is in possession of confidential material in the form of Swain's personal medical records, the remaining two Dana factors are not satisfied. Furthermore, because the disqualification remedy is viewed with caution due to the fact that it can involve substantial costs, delays and other hardships, "even if a violation is found, the Court may choose a remedy other than disqualification." Quicken Loans v. Jolly, 2008 WL 2566373, *3 (E.D. Mich. June 24, 2008). [3]

### B. Candor

The MDOC states that the Rasor Law Firm should have been, and in fact was, aware of the conflict in representation prior to receiving the motion to disqualify on July 6, 2015. The MDOC bases this assertion on the following facts:

• On January 13, 2015, in an email to Marko regarding her automobile injury case, Swain included her occupation as "Supervisor-MDOC." (Doc. 35, Ex. 1);

• On March 5, 2015, Swain sent the Rasor Law Firm an e-mail regarding service of process in the federal case. The email indicates that Monica Burton now goes by the name Monica Swain;

• On March 11, 2015, the MDOC filed its witness list in the state court case listing "Monica Swain, the MDOC (f/k/a Monica Burton)" as a witness (Doc. 34, Ex. 4);

• Medical records obtained in March 2015 by the Rasor Law Firm contain reference to both Monica Swain and Monica Burton;

• On April 3, 2015, Swain's name was written as "Monica Swain (Burton)" in her answer to the complaint in the federal case;

Case 2:24-cv-12347-BRM-EAS ECF No. 40-8, PageID.1843 Filed 03/26/25 Page 51 of 52

Woods v. Michigan Department of Corrections, Not Reported in Fed. Supp. (2015)

2015 WL 7075922

• On May 19, 2015, the Rasor Law Firm included "Monica Burton aka Monica Swain, Supervisor" in Woods' witness list for the state court case;

• On May 27, 2015, during her deposition, Woods was asked about her supervisor, who she identified as Monica Burton. Counsel clarified that Monica Burton now goes by Monica Swain no less than four times during the deposition. Marko was present at the deposition;

• On July 30, 2015, Marko called Swain regarding her automobile injury case and advised her that he would be deposing her in the federal and state case the following week.

It is difficult to believe that the Rasor Law Firm "had no idea that there was any possible conflict" in light of the facts presented. MRPC 3.3 requires that "[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." MRPC 3.3(a) (1). According to the facts before the Court, the Rasor Law Firm was aware of, or in the very least should have been aware of, the dual representation prior to receiving the motion to disqualify. The Rasor Law Firm's assertions to the contrary are dubious at best.

The Sixth Circuit has acknowledged that courts are "vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." In re Smothers, 322 F.3d 438, 442 (6th Cir. 2003)(internal citations omitted). In Smothers, the court

suggested penalties, other than criminal contempt, that may more appropriately fit conduct of attorneys that falls below the expected standards of members of the bar. For example, the court suggested a lecture from the court regarding the offending behavior, recommending to the appropriate bar association that the attorney be subject to disciplinary action such as a public reprimand, and public disciplinary postings on a page associated with the court's website listing the attorney's name, details of the misconduct, and the court's disapproval. Further, sanctions of attorney fees and/or costs are available and within in the discretionary power of the trial court. Jones v. Continental Corp., 789 F.2d 1225, 1228-29 (6th Cir. 1986).

**\*6** Nevertheless, the Rasor Law Firm's failure to identify – or complete disregard of – the conflict of interest does not on its own satisfy the requirements for disqualification. As noted above, the factors outlined under MRPC 1.9(a) fall in the Rasor Law Firm's favor. Further, disqualification of the Rasor Law Firm would place an unduly heavy burden on Woods because disqualification would require her to find new representation for the federal case but not the state case. [4]

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to disqualify is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 7075922

---

## Footnotes

1    Collectively "MDOC" where appropriate. Note that Monica Swain's married name was Monica Burton. She currently identifies herself as Monica Swain.

2    Collectively "Rasor Law Firm" where appropriate.

3    The Court assumes that upon termination of its representation of Swain, the Rasor Law Firm either returned Swain's medical records to her or destroyed them. Accordingly, the Rasor Law Firm is directed to file with the Court a statement within 10 days declaring that it is no longer in possession of Swain's medical records because it either returned the records to Swain or destroyed them.

4    Consideration for appropriate penalty will be deferred until the conclusion of the case.

---

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Woods v. Michigan Department of Corrections, Not Reported in Fed. Supp. (2015)**

2015 WL 7075922

---

**End of Document**                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---