UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELYSE MCKENNA,

        Plaintiff,

v.

ROBERT F. RILEY and
RILEY & HURLEY, PC and
OLSMAN MACKENZIE PEACOCK, PC

        Defendants.

Case No. 24-cv-12347

Hon. Brandy R. McMillion

Magistrate Judge Elizabeth Stafford

_____/

**PLAINTIFF'S REPLY TO OLSMAN MACKENZIE PEACOCK'S RESPONSE TO PLANTIFF'S MOTION TO DISQUALIFY OLSMAN MACKENZIE PEACOCK'S COUNSEL**

The Gordon law firm ("Gordon") must be disqualified. The record overwhelmingly establishes this. Should the Court disagree, it should conduct an appropriate evidentiary hearing to decide disputed issues of fact. *See Gen. Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 710 (6th Cir. 1982).

McKenna's affidavit establishes that she shared confidential and sensitive information with Gordon and D'Costa that could be significantly harmful to her in this case. Her affidavit is largely corroborated by Gordon and D'Costa. It is also corroborated by her former counsel, Sarah Prescott. Prescott spoke with McKenna shortly after McKenna's February 6, 2024 consultation with D'Costa and shared with her the content of the consultation, as well as the content of her previous

1

consultation with Deb Gordon regarding Bob Riley. Prescott states in her sworn affidavit that "both consultations clearly included the disclosure of privileged, confidential and sensitive information." **Ex.2**, 4/4/25 Prescott Affidavit ¶ 6. She also states that she believes "it could be detrimental to Ms. McKenna's interests if this information were publicly disclosed" and that she would be willing to provide a description of the substance of what McKenna told her regarding the consultations for the Court's *in camera* review. *Id*. at ¶ 10.

In its response to McKenna's motion, OMP and the Gordon have revealed that **Gordon had a substantive consultation with McKenna regarding her potential claims against OMP while Gordon was representing OMP regarding McKenna's potential claims against OMP.** Gordon consulted with McKenna **after** Gordon helped OMP write the letter firing McKenna. That letter denied that OMP had acted in retaliation for McKenna's opposition of Bob Riley's sexual harassment and defended the claimed "issues" that McKenna "allegedly had" with Riley as having "no factual or legal basis." **Ex. 4**, 2/4/24 Termination Letter. Gordon did this long before the Complaint in this case was filed, and her own affidavit shows that she did it having consulted with McKenna about Riley and formed opinions about his sexual harassment of McKenna based on what McKenna told her in strictest confidence. ECF No. 40-2.

2

All indications are that Gordon intentionally induced McKenna, a directly adverse party, to unwittingly share confidential information, in the guise of treating her like a potential client. McKenna was **not** told that Gordon was representing Olsman MacKenzie when she spoke in depth with D'Costa, even though McKenna specifically asked D'Costa if the firm represented any law firms. Instead, D'Costa falsely told McKenna that the firm did **not** represent any law firms and assured McKenna that all information she provided to her would be kept confidential and was privileged. ECF No. 36-2 PgID 1624 ¶ 20. In reliance on these assurances, McKenna proceeded to share confidential, sensitive information that could potentially be used against her in this case. McKenna had no idea she was speaking with opposing counsel and never would have done so voluntarily. **Ex.1**, 4/4/25 McKenna Affidavit at ¶¶ 5-9.

Gordon had advance notice that McKenna would be calling on February 6, 2024, because McKenna spoke with Gordon on February 5, provided her name, said she had previously spoken with Ms. Gordon, and said she would call back the next day. ECF 36-2 at PgID 1624-25 ¶ 18. Gordon did the consultation anyway. A few days later, Deb Gordon revealed that she represented OMP but hid the fact that the firm's consultation with McKenna occurred while Gordon was representing OMP. Gordon admits in her affidavit having personal knowledge about D'Costa's call with McKenna, but she assigned D'Costa to work on this this case anyway. OMP now

3

brags in its response brief that D'Costa is "an invaluable asset to Ms. Gordon's firm." Indeed.

OMP and Gordon offer absolutely no excuse or explanation for any of this. Instead, they do what they always do: they blame and attack McKenna. They first claim that McKenna should have told Gordon that she was "already represented by counsel" when she met with D'Costa, because, for some reason, this would be of "extreme importance" to any attorney. This bears repeating: Gordon, who did not tell McKenna that it was representing Olsman when it met with McKenna regarding the feigned possibility of representing her against Olsman, claims that McKenna should have told Gordon that she was "already represented." This is straight out of Alice in Wonderland. It also is not true. It is undisputed that McKenna consulted with Gordon because **she needed a lawyer to represent her against Olsman MacKenzie**. Prescott was not able to serve in that role; that is why McKenna called Gordon. See **Ex.1,** 4/4/25 McKenna Affidavit at ¶¶ 10 and **Ex.2**., 4/4/25 Prescott Affidavit at ¶¶ 2-5, 8-15.

OMP and Gordon also devote a section of their brief their usual random, baseless attacks on McKenna's integrity. ECF No. 40 at PgID 1758-59. They go back to their same old saw about "Fox McKenna," and they make a new claim McKenna does not live in Michigan. McKenna's affidavit establishes otherwise. **Ex.1** at ¶¶ 2-4.

4

OMP and Gordon also try to minimize the D'Costa consultation with McKenna. They claim that McKenna's sworn statement – that she had an in-depth consultation with D'Costa, provided a detailed confidential account of OMP's conduct, and shared her private thoughts and feelings and how the situation had affected her and other sensitive subjects – is "contrived," because the "intake note" is the "real" summary of the consultation. This is incorrect. McKenna's affidavit on this subject is uncontested. D'Costa states in her sworn affidavit that she "**does not recall**" whether she learned any facts or information during the February 6, 2024 that are not contained in her notes." As reflected in her affidavit, McKenna **does** recall the information she shared with D'Costa, and Prescott confirms McKenna's recollection. Furthermore, McKenna's latest affidavit filed with this Reply states that the perfunctory intake note is not an accurate or complete summary her conversation with D'Costa. **Ex.1** at ¶ 11. In addition, while Deborah Gordon claims in her affidavit that she has personal knowledge that McKenna had only "brief conversation" with D'Costa, in fact, the duration of McKenna's call with D'Costa was 30 minutes, as reflected her the Verizon phone record of the call. **Ex.3**, Phone Record.  This is much longer than D'Costa's perfunctory "intake note" suggests.

OMP and Gordon also claim that "everything" McKenna shared with Gordon and D'Costa has already been disclosed by McKenna in her Complaint and "public

5

filings." This is incorrect, as both McKenna and Prescott have testified. **Ex.1** at ¶¶ 13-15; **Ex.2** at ¶¶ 6, 10. See also ECF No. 36-2 at ¶27.

Finally, notwithstanding the "response" to this motion, the following facts also remain **undisputed**:

- McKenna shared her **private thoughts and feelings** regarding the subjects that were discussed with D'Costa.

- McKenna disclosed **privileged and sensitive information that she has not disclosed in this case** and that she would not have disclosed to D'Costa if she had known they would become counsel for OMP.

- McKenna and D'Costa had a detailed in-depth consultation.

- McKenna provided a detailed confidential account of OMP's conduct.

- McKenna provided details regarding her complaints about sexual harassment and the circumstances of her separation from employment.

- McKenna provided a "a detailed account regarding the connection between OMP and Bob Riley."

Similarly, although OMP's brief is a lot of bluster, Gordon in fact does not deny or dispute McKenna's sworn testimony that the following occurred during their 2021 consultation:

- McKenna provided Gordon Ms. Gordon with **privileged and critical information about the surreptitious photographs on Riley's iPad**. ¶ 7

- McKenna disclosed **privileged and sensitive information that she has not disclosed in this case** and that she would not have disclosed to Gordon if she had known they would become counsel for OMP. ¶ 27

- Gordon learned enough detailed information from McKenna to advise her not to file a lawsuit against Bob Riley. ¶ 11

6

Gordon also does not actually deny or dispute that she told McKenna that if she filed suit against Riley, she would have to "leave the state of Michigan." ¶ 12 Instead, Gordon merely states that she has "not found that clients 'must leave the state of Michigan' if they bring a lawsuit," and she offers an irrelevant "example," of a client (an attorney) who sued Geoffrey Fieger and then "successfully continued her legal career in the local area." ¶ 3.

Gordon also does not actually deny or dispute that McKenna gave Gordon a "detailed, confidential account of Bob Riley's conduct" and "how [she] had handled it." ECF 36-2 at PgID 1622 ¶ 5. Rather, Gordon describes her alleged general practice of not asking "potential clients **to tell their story or begin at the start of their employment relationship**." She testifies that her "goal is to determine as quickly as possible whether the caller has a viable legal claim as described in the Response brief," and that " [t]his is how I handled the call with McKenna." ¶ 3 McKenna did not aver that she "told her story" or that she "began at the start of the employment relationship." Rather, McKenna averred that she gave Gordon a "detailed confidential account of Bot Riley's conduct" and "how [she] had handled it." This is information Gordon presumably would have needed if, as Gordon claims, she "formed the opinion that [McKenna] did not have a viable claim of sexual harassment hostile environment." ¶ 4

Plaintiff requests that the Court disqualify Ms. Gordon and her colleagues.

7

Respectfully submitted,

| | |
|---|---|
| */s/ Kathleen Kalahar* | */s/ Randi McGinn* |
| Kathleen Kalahar (P60301) | Randi McGinn |
| Goodman Kalahar | McGinn Montoya Love Curry & |
| Attorneys for Plaintiff | Sievers PA |
| 1394 East Jefferson Avenue | Attorneys for Plaintiff |
| Detroit, MI 48207 | 201 Broadway Blvd SE |
| (248) 310-0133 (mobile) | Albuquerque, NM 87102 |
| kkalahar@goodmankalahar.com | randi@mcginnlaw.com |