# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELYSE MCKENNA,

        Plaintiff,

v.

ROBERT F. RILEY and
RILEY & HURLEY, PC and
OLSMAN MACKENZIE PEACOCK, PC

        Defendants.
_____/

Case No. 24-cv-12347

Hon. Brandy R. McMillion

Magistrate Judge Elizabeth Stafford

## AFFIDAVIT OF SARAH PRESCOTT

I, Sarah Prescott, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit on personal knowledge.

2. I began representing Elyse McKenna in 2023. The scope of my representation was limited to her dispute with Bob Riley and negotiation of resolution of that dispute. Our sole retainer agreement was reduced to writing and specifically stated that litigation was not then intended and would require a subsequent amendment, and it specifically was limited to claims against Mr. Riley. I had three of three associates in my office and two of two paralegals all on leave or pregnant and planning lengthy parental leaves, and was not able to take the case to litigate. Moreover, given the extensive evidence of harassment and Mr. Riley's written admissions, I believed a resolution would be likely without litigation.

3. When I undertook to represent Ms. McKenna, I did not anticipate or expect that her employment would be unlawfully and abruptly terminated by Olsman MacKenzie Peacock. While I did give Ms. McKenna confidential legal advice in relation to her employment at Olsman

MacKenzie Peacock, the advice was limited to advancing my representation of her regarding Bob Riley.

4. When Ms. McKenna's employment at Olsman MacKenzie Peacock was unexpectedly terminated on February 4, 2024, I was in the midst of wrapping up the already-agreed settlement with Bob Riley on her behalf. I informed her that I was not able to litigate regarding various claims against Olsman MacKenzie Peacock. My reasons had nothing to do with my views regarding the merits of Ms. McKenna's potential claims against Olsman MacKenzie Peacock. They had to do with my very busy practice and staffing issues as noted above.

5. As a courtesy, I agreed to assist Ms. McKenna with respect to Olsman MacKenzie Peacock, specifically and only on a temporary and preliminary basis while she tried to retain counsel and insofar as doing so would be needed to close out the Riley settlement. This was solely an effort to keep the settlement with Mr. Riley on track and to protect any of Ms. McKenna's interests until she retained counsel.

6. I learned from Ms. McKenna that she consulted with Deborah Gordon's office about the possibility of representing her against Olsman MacKenzie Peacock and was awaiting a call from Ms. Gordon. She confidentially shared with me the content of the consultation, as well as the content of her earlier consultation with Deb Gordon regarding Bob Riley. Both consultations clearly included the disclosure of privileged, confidential, and sensitive information.

7. On or about February 10, 2024, I received an email from Deborah Gordon advising that she represented Olsman MacKenzie Peacock. I immediately asked her to remove herself from the situation due to her clear conflict of interest, and I asserted privilege for Ms. McKenna in writing, see the attached true and correct copy.

8. My representation of Ms. McKenna ended when the settlement with Bob Riley collapsed and he breached by refusing to pay, which occurred after Ms. Gordon got involved in that process on behalf of Olsman MacKenzie Peacock.

9. I was not fired by Ms. McKenna, and I did not resign from representing her. The course of my limited representation simply ended when the settlement negotiations with Mr. Riley ended, pursuant to our retainer agreement.

10. I continue to have a positive professional relationship with Ms. McKenna and take seriously my responsibility to maintain the confidentiality of our protected communications. I have no intention to waive the privileged aspects of our relationship with this affidavit and have no ability to do so as I am not the privilege holder. If directed by Ms. McKenna, I would be willing to provide a description of the substance of what Ms. McKenna told me regarding her consultations with the Gordon law firm, for the Court's *in camera* review. I believe it could be detrimental to Ms. McKenna's interests if this information were publicly disclosed.

11. I understand that Deborah Gordon and her client, Olsman MacKenzie Peacock, have made a claim that Ms. McKenna sought to establish an attorney-client relationship with Ms. Gordon and her firm in February of 2024 "for the purpose of disqualifying the firm," on the alleged ground that Ms. McKenna was "already represented" by me. As seen above, the premise of this supposition is just plain false, because Ms. McKenna did need counsel for the representation and never had a retainer with me for this purpose.

12. Moreover, I was employed with Deb Gordon as an attorney for almost 11 years, from 2006 to 2016. During that time, I worked with her daily, and filed and prosecuted countless Plaintiffs' suits. Ms. Gordon is known as a Plaintiffs' lawyer, and I do not recall her representing any defendants whatsoever in all the years we worked together (other than when she

herself was sued on one occasion and she represented herself with my help).

13. I could not know (in order to hatch a secret plan to "conflict" her out) that (a) she'd randomly pick this moment to defend a matter, and (b) the Olsman firm would pick *her* out from among the many defense firms they know to defend them, and (c) Ms. Gordon would be willing to do so, in violation of the MRPC and glaring conflict she'd be stepping into.

14. I was informed earlier this week that Ms. Gordon has recently disclosed that she was already representing Olsman MacKenzie Peacock when Ms. McKenna consulted with her office in 2024 regarding her claims against Olsman MacKenzie Peacock. The fact that Ms. Gordon's staff consulted with Ms. McKenna about Olsman MacKenzie Peacock *without disclosing they were at that same time representing her employer as the opposing party* flies in the face of the suggestion that Ms. McKenna or I tried to "conflict out" Deb Gordon.

15. It is my professional opinion that if Ms. Gordon/her staff failed to or chose not to disclose their then-existing conflict with Ms. McKenna, they have no one to blame but themselves for not having a functional conflict system in place (or for their choice to flout the MRPC).

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Sarah Prescott_ 4-4-25
Sarah Prescott

 Gmail

Sarah Prescott <prescott@spplaw.com>

## Re: FW: McKenna

Sarah Prescott <sprescott@spplawyers.com>   Sat, Feb 10, 2024 at 12:06 PM
To: Deborah Gordon <dgordon@deborahgordonlaw.com>

Hi Deb,

I will preserve all arguments that you are engaged in a conflict of interest. Consider this a request to remove yourself from the situation.

Please have her send the files by Monday. She is digging a hole daily.

Sarah

On Sat, Feb 10, 2024, 12:00 PM Deborah Gordon <dgordon@deborahgordonlaw.com> wrote:

> Sarah,
>
> Please be advised that I represent Donna and the firm, and that all communications should be directed to me.
>
> As you would expect, my clients are aware of their professional conduct responsibilities. They have been properly advised as to the other matters you raise. I will get back to you as to the personnel record.
>
> I am available next week if you would like to get on a call. Let me know what works.
>
> Deb
>
> Deborah Gordon | Attorney & Counselor |
>
> DEBORAH GORDON LAW
>
> | phone: (248) 258-2500
>
> | fax: (248) 258-7881
>
> | website: www.deborahgordonlaw.com

**From:** Sarah Prescott <sprescott@spplawyers.com>
**Sent:** Saturday, February 10, 2024 9:01:33 AM
**To:** Donna MacKenzie <DMacKenzie@olsmanlaw.com>
**Subject:** McKenna

\*EXTERNAL\*

Dear Donna,

Elyse McKenna has asked me to reach out and discuss her employment with your firm. I tried to do so yesterday near COB to set up a call, by text to your cell. I do not have a grasp on the full picture yet to discuss, but her immediate concern is that agents and partners of the firm are sure not to disparage her, which could be actionable retaliation for protected conduct. Moreover, untrue statements could be intentional infliction or tortious interference. Any suggestion that she has violated any rule, that she has violated any agreement, that she has violated any ethical standard or professional standard, let alone that she is not allowed to work for clients or ask clients to continue working with her after her separation would fit this category. It is not inappropriate to solicit work from a client upon leaving a firm. As you know, the client chooses whom to work with and is free to elect his/her counsel. I think you'll also find that you are obliged not to contact people once they have separated from you and have other counsel. Suggesting that Elyse is not a qualified attorney or that you fired her for poor legal work would be a bad idea, too. You did not fire her for poor legal work.

Look, I'm getting my arms around this situation and I do not have all the answers, but with respect I urge you look at this from a lens of making sure you're always on the high road, protecting yourself and your firm, which we have always considered friends. I'm not here as your friend, obviously, but if I were, the suggestion would be the same, honestly. The fact, is the better you are at stripping away work, the bigger her damages are. The more you salt the earth as to referrals, the bigger her damages are.

I'd like to talk about this with you personally, but without hearing back I had to write it.... this is the sort of thing that needs immediately to stop if it is occurring.

Two other important requests...Please promptly send client files to Elyse upon client request. I am also requesting a copy of her personnel file under Bullard Plawecki. I assume you don't want her to review in office first, but she can if you require that. Copy costs will be reimbursed.

Sarah