UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELYSE MCKENNA,

    Plaintiff,

v.

ROBERT F. RILEY,
RILEY & HURLEY, PC, and
OLSMAN MACKENZIE
PEACOCK, PC,

    Defendants.
_____/

Case No. 2:24-cv-12347
Hon. Brandy R. McMillion

## ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT OLSMAN MACKENZIE PEACOCK, P.C.'S COUNSEL (ECF NO. 36)

Before the Court is Plaintiff Elyse McKenna's ("McKenna") Motion to Disqualify Defendant Olsman MacKenzie Peacock, P.C.'s Counsel. ECF No. 36. The Motion has been adequately briefed so the Court will rule without a hearing. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court **DENIES** the Motion to Disqualify (ECF No. 36).

**I.**

This case concerns years of alleged sexual harassment by Defendant Robert F. Riley ("Riley") against McKenna before and after she worked at his law firm.

1

McKenna brings the instant Motion seeking to disqualify Deborah Gordon, the attorney for Defendant Olsman MacKenzie Peacock ("OMP").

In August 2021, McKenna called Gordon about her possibly representing McKenna in a case against Riley, a call that allegedly included revelations about Riley's conduct, and McKenna's impressions about her potential case and her employment with OMP. *See* ECF No. 36, PageID.1596-1597; ECF No. 36-2, PageID.1621-1623. McKenna didn't end up retaining Gordon as her attorney.

Though McKenna no longer worked for Riley, he played a "continuing role" in her new job at OMP because he was a local mediator. ECF No. 36-2, PageID.1622. Things worsened between the two from 2021 to 2023, which led McKenna in the fall of 2023 to retain Sarah Prescott to "negotiate a resolution" with Riley. *Id.* at PageID.1623; ECF No. 44-3. Prescott met with Riley in late January 2024. ECF No. 36-2, PageID.1623.

Several events then happened in early February 2024. McKenna emailed her bosses at OMP about her claims against Riley and separating from the OMP firm (ECF No. 34-3, PageID.1459); Gordon spoke with attorneys at OMP about their concerns relating to McKenna and gave them legal advice (ECF No. 40-2, PageID.1778); and OMP accepted McKenna's separation (ECF No. 36-3). McKenna also called Gordon's office on two occasions to see if Gordon would represent her with respect to OMP and Riley (ECF No. 36-2, PageID.1623-1625;

2

ECF No. 40-7; ECF No. 44-4); and Prescott texted and emailed Donna MacKenzie (of OMP) trying to discuss McKenna's employment at the firm (ECF No. 36-5). Prescott's email to MacKenzie led to the revelation that Gordon represented OMP, which prompted Prescott to reply—within six minutes of receiving Gordon's response—that she was "preserv[ing] all arguments" that Gordon had a conflict of interest. ECF No. 36-5, PageID.1634.

Between February 2024 and early September 2024, Prescott represented McKenna in negotiations with OMP (represented by Gordon). *See* ECF No. 46-2. Those negotiations proved unsuccessful because on September 9, 2024, McKenna filed this lawsuit *pro se*. ECF No. 1. Gordon waived service for OMP on September 23, 2024, and then filed her appearance on October 10, 2024. ECF Nos. 5, 7, 8, 9. McKenna had retained Kathleen Kalahar as her attorney at some point; Kalahar entered her appearance on October 15, 2024. ECF Nos. 12, 13. That same day, Kalahar sent a letter to Gordon that, among other things, flagged Gordon's conflict of interest and asked whether she had "reconsidered" stepping away from the case. ECF No. 36-8, PageID.1646.

From there, litigation proceeded without mention to the Court of any potential conflict-of-interest issue. McKenna amended her complaint by stipulation, which prompted motions to dismiss from Defendants. *See* ECF Nos. 14, 16, 17, 19. The Court allowed McKenna to amend her complaint a second time, which she filed on

January 31, 2025. ECF No. 23. The parties stipulated to give Defendants more time to answer the Second Amended Complaint, but before they could do so, McKenna, on February 27, 2025, filed an emergency motion to stay state-court proceedings related to liens filed by OMP (that motion is still pending while the Court decides this Motion). ECF No. 27. At a status conference the next day, the parties appeared before the Court to discuss the emergency motion but failed to raise any issues of a conflict of interest with the Court. *See* ECF No. 28.

On March 3, 2025, Kalahar emailed Gordon "again asking" her to remove herself from the case and seeking concurrence in the instant Motion—which Gordon refused. ECF No. 36-9, PageID.1652. On March 5, 2025, OMP answered the Second Amended Complaint. ECF No. 30. Gordon also responded to Kalahar's March 3rd email, stating that Kalahar and McKenna were trying to conflict her out of the case. ECF No. 36-9, PageID.1651. About a week later, OMP responded to the emergency motion and McKenna filed her Motion to Disqualify. *See* ECF Nos. 33, 34, 35, 36. The Motion to Disqualify is now fully briefed. ECF Nos. 44, 46. Having reviewed the parties' briefs, the Court finds oral argument unnecessary and will decide the Motion based on the record before it.[1] *See* E.D. Mich. LR 7.1(f).

---

[1] McKenna asks for an evidentiary hearing pursuant to *Gen. Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704 (6th Cir. 1982). The Court *can* but doesn't *have to* hold such a hearing. *See id.* at 710. And here, the Court declines to do so for two reasons. First, it is deciding this on the waiver issue. Second, based on the tone of the two status conferences (and apparent disagreement over discovery that almost spurred a third), the Court is concerned that any such hearing would devolve

4

## II.

A motion to disqualify is the proper method for alerting a court to an alleged breach of ethical duties. *DeBiasi v. Charter Cnty. of Wayne*, 284 F. Supp. 2d 760, 770 (E.D. Mich. 2003). Courts reviewing disqualification motions "must be vigilant" in doing so, because "the ability to disqualify one's opponent of capable counsel is a potent weapon that can be misused as a technique of harassment." *Moses v. Sterling Commerce (Am.), Inc.*, 122 F. App'x 177, 183 (6th Cir. 2005) (cleaned up). Thus, such a motion is considered a "drastic measure" generally "viewed with disfavor . . . ." *Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999), *aff'd* 5 App'x 396 (6th Cir. 2011) (citation and internal quotation marks omitted).

Courts considering disqualification must weigh "the public interest in requiring professional conduct by an attorney" with the "competing interest of allowing a party to retain counsel of his choice." *DeBiasi*, 284 F. Supp. 2d at 770-71 (citations omitted); *see Am. Special Risk Ins. Co. ex rel. S. Macomb Disposal Auth. v. City of Centerline*, 69 F. Supp 2d 944, 953 (E.D. Mich. 1999) (explaining that it is a "fundamental tenet of American jurisprudence" that parties have a right to their choice of counsel, so courts must "not lightly deprive" parties of their chosen

---

into a "mud-slinging match," and would be a "distasteful, even obnoxious procedure, besides being a waste of judicial resources and a prolonger of the litigation." *Id.* at 711.

5

attorney). Thus, while disqualifying counsel protects one attorney-client relationship, it "destroy[s]" another by "depriving a party of representation of their choosing." *Am. Special Risk Ins. Co.*, 69 F. Supp. 2d at 953 (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721-22 (7th Cir. 1982)). And while there "obviously are situations where [motions to disqualify] are both legitimate and necessary," "such motions should be viewed with extreme caution for they can be misused as techniques of harassment." *Id.* (quoting *Freeman*, 689 F.2d at 722).

### III.

McKenna argues that Gordon should be disqualified under Rules 1.18 and 3.7 of the Michigan Rules of Professional Conduct ("MRPC"). The Court reaches neither argument because McKenna has waived her right to object to Gordon as OMP's attorney.

"Courts have disallowed disqualification on the basis of waiver or estoppel where the moving party has failed to move for disqualification in a timely manner." *In re Valley-Vulcan Mold Co.*, 5 F. App'x 396, 401 (6th Cir. 2001). One "entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Id.* (quoting *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983)). Five factors guide the waiver analysis in this context:

(1) the length of the delay in bringing the motion to disqualify;

6

(2) when the movant learned of the conflict;

(3) whether the movant was represented by counsel during the delay;

(4) why the delay occurred; and

(5) whether disqualification would result in prejudice to the non-moving party.

*See Valley-Vulcan Mold Co.*, 237 B.R. at 337-38 (quoting *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1115 (D.N.J. 1993)). "In particular, consideration should be given and inquiry made as to whether the motion was delayed for tactical reasons." *Id.*

To begin, McKenna has forfeited the waiver argument. When a moving party fails in its reply to address an argument from a response, courts have deemed those arguments forfeited. *See United States ex rel. Am. Sys. Consulting, Inc. v. ManTech Advanced Sys. Int'l*, 600 F. App'x 969, 978-79 (6th Cir. 2015) (deeming argument forfeited when the plaintiffs failed in their reply to address an argument made in the defendant's response). Here, McKenna didn't address OMP's waiver argument, so she has forfeited the issue. *See generally* ECF No. 44. Still, in analyzing the waiver factors for completeness, the Court finds that each favors a finding that McKenna has waived her objection to Gordon's representation of OMP.

*Factor One: Length of Delay*

Five months elapsed between Gordon's appearance (October 10, 2024) and McKenna's filing of the Motion to Disqualify (March 12, 2025). *See* ECF Nos. 7, 36. But the length of delay can be increased to six months considering that Gordon

7

executed a waiver of service on September 23, 2024 and would have had to return that waiver to McKenna.  *See* ECF No. 5.  In those five-to-six months, significant litigation has occurred.  Gordon drafted and filed a motion to dismiss; attended two separate status conferences before the Court; participated in several meet and confers with McKenna's counsel; answered the Second Amended Complaint; drafted a Joint Discovery Plan; and responded to several motions.  *See* ECF Nos. 19, 28, 30, 32–35, 38, 40–42, 46.  So while still in its infancy, this case has had substantial litigation occur during McKenna's delay in filing the motion to disqualify.

*Factor Two: When McKenna Learned of Alleged Conflict*

At a minimum, McKenna knew of the alleged conflict from the start of her case in September 2024.  However, the Court believes that she learned of this alleged conflict much earlier.  McKenna reached out to Gordon's firm in 2021 as she was considering claims against Riley and again in early February 2024 after she separated from OMP.  Her attorney at the time she left OMP, Prescott, flagged the potential conflict as an issue on February 10, 2024 in an email to Gordon.[2]  Consequently, McKenna knew of Gordon's representation of OMP more than 13

---

[2] What is interesting to the Court is that Prescott sent the "notice of conflict" a mere six minutes after Gordon sent an email indicating, for the first time, that she represented OMP.  That near immediate response suggests that this was an issue already known by McKenna and her counsel.  *See* ECF No. 36-5, PageID.1634.

months before the instant Motion was filed; and therefore, could have immediately raised this issue with the Court upon the filing of this suit.

*Factor Three: Representation During Delay*

McKenna has been represented by counsel in this case since October 15, 2024. ECF No. 12. Before that, though technically *pro se*, McKenna—an attorney herself—filed this lawsuit. And although she disputes that she was represented earlier than that, evidence shows that McKenna had an attorney helping her with aspects of this case since at least the fall of 2023 and up until early September 2024, right before McKenna filed suit. That same attorney (Prescott) even emailed Gordon to notify her of the potential conflict and had communications with Gordon in an attempt to try to resolve the claims at issue prior to the lawsuit being filed. *See* ECF No. 46-2.

*Factor Four: Why the Delay Occurred*

There's no explanation for the delay. As an attorney, McKenna could have moved to disqualify Gordon after Gordon executed the waiver of service or filed her appearance. She didn't. And in her October 15, 2024 letter, Kalahar asked Gordon to advise whether she had "reconsidered" "voluntarily step[ping] away from the case," or "whether we need to file a motion to disqualify [her] from this case." ECF No. 36-8, PageID.1646. But Kalahar didn't raise the disqualification issue during the February 28, 2025 status conference. That issue has instead lain dormant for five

9

months before erupting last month.  Also, McKenna provides no explanation for the silence, despite OMP raising the waiver issue in its Response and calling out McKenna not only for delaying her motion to disqualify Gordon for a strategic advantage but also failing to offer an alternative explanation.  *See generally* ECF No. 44; *see* ECF No. 40, PageID.1769-1770.

*Factor Five: Prejudice to OMP*

Although the case is still in its infancy, OMP would be prejudiced by depriving it of its counsel of choice.  *Am. Special Risk Ins. Co.*, 69 F. Supp 2d at 953.  Gordon represented OMP with regard to McKenna's employment even before this case was filed.  She advised on McKenna's termination, she attempted to negotiate a resolution with McKenna on OMP's behalf, and she has expended substantial time litigating this matter in the six months that it has been pending.  To now disqualify her, would prejudice OMP.

The Court therefore finds that these five factors support a finding that McKenna has waived the right to object to Gordon as OMP's attorney.

*Concerns of Gamesmanship*

To reiterate, motions to disqualify demand judicial vigilance.  *See Moses*, 122 F. App'x at 183.  And that's because "the ability to disqualify one's opponent of capable counsel is a potent weapon that can be misused as a technique of harassment." *Id.* (cleaned up).  The Court has concerns of misuse here.

McKenna says that after she left OMP, she called Gordon's firm in February 2024 to ask about retaining Gordon, discussed the connection between OMP and Riley, and gave her thoughts on why she was fired. ECF No. 36-2, PageID.1623-1625. But the Court has trouble squaring this with McKenna's claims about Gordon's comments during their August 2021 consultation. On that call, Gordon allegedly told McKenna that she "*could not represent* [*her*] because she 'would not touch Bob Riley with a ten-foot pole'"; and "advised McKenna not to file a lawsuit," "warn[ing] her" that doing so would "ruin her career" and essentially force her to "leave the state of Michigan." ECF No. 23, PageID.562 (emphasis added); ECF No. 36-2, PageID.1622-1623. Despite these alleged statements by Gordon—including that she "could not represent [her]"—McKenna returned to Gordon to again ask her to represent her in a case still involving Riley? The Court has its doubts.

The Court is also dubious about certain conduct surrounding the February 2024 calls to Gordon. It's questionable that within six minutes of receiving Gordon's email on February 10, 2024—when McKenna apparently first learned that Gordon was representing OMP (ECF No. 36-2, PageID.1625)—Prescott had forwarded Gordon's email to McKenna; discussed with McKenna the entirety of her phone calls with Gordon (both from 2021 and the apparently 30-minute one from earlier in February 2024); researched and evaluated whether there was a colorable argument for a conflict of interest; and then responded to Gordon. These claims

11

smack of gamesmanship; and for that added reason, the Court finds disqualification improper.

## IV.

Accordingly, the Court **DENIES** Plaintiff's Motion to Disqualify Defendant Olsman MacKenzie Peacock, P.C.'s Counsel (ECF No. 36).

**IT IS SO ORDERED.**

Dated: April 23, 2025  
    Detroit, Michigan

s/Brandy R. McMillion  
BRANDY R. MCMILLION  
United States District Judge