UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELYSE MCKENNA,

    Plaintiff,

v.

ROBERT F. RILEY,
RILEY & HURLEY, PC, and
OLSMAN MACKENZIE
PEACOCK, PC,

    Defendants.
_____/

Case No. 2:24-cv-12347
Hon. Brandy R. McMillion

### OPINION AND ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR IMMEDIATE AND TEMPORARY STAY OF STATE COURT PROCEEDINGS ON SIX ATTORNEY FEE LIENS FILED BY DEFENDANT OLSMAN MACKENZIE PEACOCK, P.C. (ECF NO. 27)

Before the Court is Plaintiff Elyse McKenna's ("McKenna") Emergency Motion for Immediate and Temporary Stay of State Court Proceedings on Six Attorney Fee Liens Filed by Defendant Olsman MacKenzie Peacock, P.C. (ECF No. 27). The Motion has been adequately briefed so the Court will rule without a hearing. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court **DENIES** the Motion (ECF No. 27).

1

## I.

This case concerns years of alleged sexual harassment by Defendant Robert F. Riley ("Riley") against McKenna before and after she worked at his law firm. McKenna brings the instant Motion seeking to stay state-court lien proceedings filed by Defendant Olsman MacKenzie Peacock, PC ("OMP").

Between 2019 and 2021, McKenna worked for Riley's law firm. *See* ECF No. 23, PageID.552-565. She eventually left the firm because of Riley's sexual harassment and took a job with OMP. *Id.* at PageID.558-565. Though McKenna left Riley's firm, he played a continuing role in her new job at OMP because he was a local mediator. *Id.* at PageID.565-566. Things worsened between the two from 2021 to 2023. *Id.* at PageID.565-585. During this time, McKenna informed attorneys at OMP about her issues with Riley but was ignored. *Id.* All this led McKenna to retain counsel to help her resolve the issues with Riley. *Id.* at 565-585.

In early February 2024, McKenna separated from OMP and started her own law firm with a friend.[1] ECF No. 27-3, PageID.681-684. When she left OMP, five clients she had represented while with OMP chose to remain with her. *Id.* at PageID.683-684; ECF No. 27-5. A sixth client joined McKenna approximately six months later. ECF No. 27-3, PageID.684; ECF No. 27-5. Each of these clients had

---

[1] The parties dispute whether McKenna resigned or was fired from OMP, and when she started her new firm. Neither issue is of consequence to resolving this Motion; they are issues mentioned simply for background purposes.

2

a case pending in a Michigan state circuit court. *See* ECF No. 27, PageID.624-625. Those six cases are the subject of the instant Motion.

Because McKenna worked on these clients' cases while with OMP, OMP filed attorney liens in each case for "costs and quantum meruit attorney fees." *See* ECF Nos. 27-6, 27-9. Although all six cases had settled as of late February 2025, each case was still subject to OMP's liens. *See* ECF No. 27, PageID.641-642. Resolution of those liens is in various stages in each case.

Though OMP initially "act[ed] civilly" in the state-court proceedings, McKenna alleges that things changed once she instituted this lawsuit on September 9, 2024. ECF No. 27, PageID.642-644; *see* ECF No. 1. As McKenna tells it, OMP has since used the state-court proceedings to retaliate against her for filing this lawsuit and to "thwart this Court's ability to reach and resolve the merits" of this case. *See* ECF No. 27, PageID.645-659 (outlining various acts of alleged retaliation by OMP against McKenna in the lien proceedings).

This alleged conduct by OMP prompted McKenna to file the instant Motion in late February 2025. *See* ECF No. 27. The Motion is fully briefed. ECF Nos. 34, 37. Having reviewed the parties' briefs, the Court finds oral argument unnecessary and will decide the Motion based on the record before it. *See* E.D. Mich. LR 7.1(f).

## II.

Under the All Writs Act, federal courts may issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). But this power is restrained by the Anti-Injunction Act, which prohibits injunctions against state-court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The "core message" of the Anti-Injunction Act is "one of respect for state courts"; it "broadly commands" that state courts shall be "free from interference by federal courts." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (internal quotation marks and citation omitted). And for that reason, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Id.* (internal quotation marks and citation omitted).

## III.

McKenna asks the Court to stay the lien proceedings for each of the six state-court cases while this federal case proceeds. She asserts that doing so will prevent any further abuse of those proceedings by OMP to retaliate against her for filing this lawsuit. The Court declines to issue such extraordinary relief.

McKenna relies on the Anti-Injunction Act's "expressly authorized" exception. *See* ECF No. 27, PageID.663-670. The test under that exception is

"whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 238 (1972).

Here, several reasons support a finding that an injunction staying the state court proceedings isn't the *only* way to give any right created by Title VII its intended scope. *See Mitchum*, 407 U.S. at 238. First, McKenna's Second Amended Complaint includes a claim that OMP is using the lien proceedings to retaliate against her in violation of Title VII. *See* ECF No. 23, PageID.590-591, 601-604. Resolution of the retaliation claim in this case would therefore give Title VII its intended scope.

Second, if McKenna believes the state court proceedings are being used as a weapon of retaliation, she can raise those concerns in the state court proceedings and seek appropriate relief there. Indeed, she already has. *See* ECF No. 27-31, PageID.961-962 and ECF No. 27-32, PageID.969 (flagging that the dates and circumstances of her employment were irrelevant to the lien proceedings); ECF No. 27-33, PageID.998 (asking state court to "preclude evidence and argument of irrelevant matters at [an evidentiary] hearing," including "that Ms. McKenna 'resigned' from OMP" and "other irrelevant allegations relating to Ms. McKenna's employment."). And if McKenna disagrees with how the lower state courts handle her concerns and requests for relief, she can seek state court appellate review.

5

Third, attorney liens are a mechanism of recovering attorney fees common to civil litigation. *See, e.g., Dunn v. Bennett*, 846 N.W.2d 75, 81 (Mich. Ct. App. 2013). The six clients in the state court cases were clients of OMP before they left with McKenna, and significant progress took place while those clients were represented by OMP. So OMP understandably seeks fees it believes it's entitled to. And everything McKenna describes as retaliatory behavior occurs within the context of litigation not before this Court. It would create an "unseemly situation" if this Court "had to evaluate the conduct of litigators before a different judge"—in a state court no less—so this is a matter better suited to resolution by the court rules, not by Title VII. *Baird v. Gotbaum*, 888 F. Supp. 2d 63, 74 (D.D.C. 2012) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 486 (7th Cir. 1996)); *see also Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) (stating that "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by" Title VII or other statutes prohibiting discrimination); *McKenzie*, 92 F.3d at 486 ("An attempt to obstruct the litigation of the underlying discrimination complaint, like oppressive discovery requests and the withholding of other evidence, is inseparable from the litigation of the claim."). All this casts doubt on the propriety of an injunction. And, in such circumstances, it's better for a federal court to decline

to issue an injunction than to overstep by pausing a state court proceeding. *See Smith*, 564 U.S. at 306.[2]

### IV.

Accordingly, the Court **DENIES** Plaintiff's Emergency Motion for Immediate and Temporary Stay of State Court Proceedings on Six Attorney Fee Liens Filed by Defendant Olsman MacKenzie Peacock, P.C. (ECF No. 27).

**IT IS SO ORDERED.**

Dated: April 23, 2025　　　　　　　　　　　s/Brandy R. McMillion
　　　Detroit, Michigan　　　　　　　　　　BRANDY R. MCMILLION
　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[2] The Court doesn't share McKenna's concerns over issue preclusion. One element of issue preclusion is that a "question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment." *Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 426 (6th Cir. 2018) (internal citations omitted). "Essential to the judgment" means that determination of the issue was "necessary to the outcome of the prior proceeding[.]" *Aircraft Braking Sys. Corp. v. Local 856*, 97 F.3d 155, 161 (6th Cir. 1996) (citation omitted). Both parties seem to agree that whether McKenna resigned or was fired is immaterial (*i.e.*, *not* necessary) to the lien proceedings. *See* ECF No. 27, PageID.672; ECF No. 37-5, PageID.1674 (email from OMP's attorney to McKenna's attorney stating that "resolution of the lien has nothing to do with the federal court claims as a matter of fact or law."). The Court agrees. In deciding the attorney-fee dispute related to the liens, the state courts will likely consider when McKenna left her employment with OMP. *See Pirgu v. United Servs. Auto. Ass'n*, 884 N.W.2d 257, 264-65 (Mich. 2016) (considering among other factors "the nature and length of the professional relationship with the client" when evaluating attorney-fee disputes). But the Court has found no indication—and the parties haven't provided any—that the *reason* her employment with OMP ended is relevant to the lien proceedings. So, whether McKenna resigned or was fired from OMP would not be *necessary* to determining the attorney-fee dispute in the lien proceedings. As a result, it isn't essential to the judgments in the state courts and, thus, issue preclusion wouldn't apply. *See Aircraft Braking Sys. Corp.*, 97 F.3d at 161.