```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3   ELYSE MCKENNA,

 4              Plaintiff,
                                    HONORABLE BRANDY R. McMILLION
 5        v.
                                    No. 24-12347
 6   ROBERT F. RILEY, ET AL.,

 7              Defendants.
     _____/
 8
                 MOTION TO WITHDRAW AND FOR TEMPORARY STAY
 9                      Wednesday, June 25, 2025

10   Appearances:

11   Michael Alan Schwartz          Thomas W. Cranmer
     Schwartz Law Firm              Miller Canfield
12   30300 Northwestern #113        840 W. Long Lake Road, #200
     Farmington Hills, MI  48334    Troy, Michigan  48098
13   248.932.0100                   248.879.2001
     phrog@schwartzlawyer.com       cranmer@millercanfield.com
14     On behalf of Plaintiff        On behalf of Defendants

15   Deborah L. Gordon              Elizabeth P. Hardy
     Deborah L. Gordon, PLC         Kienbaum Hardy Viviano
16   33 Bloomfield Hills Pkwy, #220 280 N. Old Woodward, #400
     Bloomfield Hills, MI  48304    Birmingham, MI  48009
17   248.258.2500                   248.645.0000
     dgordon@deborahgordonlaw.com   ehardy@khvpf.com
18     On behalf of Def. Olsman      On behalf of Defs. Riley

19   ALSO PRESENT:  Elyse McKenna
                     Kathleen Kalahar
20                   Randi McGinn

21             To obtain a certified transcript, contact:
                    Timothy M. Floury, CSR-5780
22                     Official Court Reporter
               Theodore Levin United States Courthouse
23                  231 West Lafayette Boulevard
                      Detroit, Michigan  48226
24             (313)234-2607 · floury@transcriptorders.com

25    Transcript produced using machine shorthand and CAT software.
```

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

1

2                         **I  N  D  E  X**

3      Motion Hearing                                    Page

4      Argument by Mr. Schwartz  ........................6

5      Argument by Mr. Cranmer  .......................15

6      Argument by Ms. McKenna  .......................20

7      Argument by Ms. Hardy  .........................27

8      Argument by Ms. Gordon  ........................29

9      Argument by Ms. McKenna  .......................32

10     Argument by Ms. Gordon  ........................36

11     Ruling of the Court ............................39

12     Certification of Reporter ......................43

13                        -   -   -

14

15

16

17                    **E  X  H  I  B  I  T  S**

18      Number       Description              Id'd Rcvd Vol.

19

20     ***None Marked, Offered or Received***

21

22

23

24

25

            *24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 3*

1              Detroit, Michigan

2              Wednesday, June 25, 2025

3              11:08 a.m.

4                    -   -   -

5          **THE CLERK:**  Please rise.

6          The United States District Court for the Eastern

7    District of Michigan is now in session.  The Honorable

8    Brandy R. McMillion presiding.

9          You may be seated.

10         Court calls Case No. 24-cv-12347, McKenna vs. Riley,

11   et al.

12         Please state you're appearance beginning with the

13   plaintiff.

14         **MR. SCHWARTZ:**  Well, actually, there are two of them,

15   so who wants to go first?

16         All right.  I'm here on a limited basis, Michael Alan

17   Schwartz, and I'm for my client, McKenna.

18         **THE COURT:**  Good morning.

19         **MR. CRANMER:**  Your Honor, good morning.  My name is a

20   Tom Cranmer of the Miller, Canfield law firm and I'm here on

21   behalf of attorneys Kathleen Kalahar and Randi McGinn.

22         **THE COURT:**  Good morning.

23         **MR. CRANMER:**  Morning.

24         **THE COURT:**  Okay.  I think we have -- do we also have

25   defense counsel here and present?

       *24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 4*

1      **MS. GORDON:**  Yes, your Honor.  Good morning.  Deborah

2  Gordon and Elizabeth Marzotto Taylor on behalf of the Olsman,

3  MacKenzie and Peacock defendants.

4      **MS. HARDY:**  Good morning, your Honor.  Elizabeth

5  Hardy on behalf of the Riley defendants.

6      **THE COURT:**  I'm just writing all this down.  Hold on

7  one second.

8      Okay.  Is that all counsel?

9      **MS. GORDON:**  Yes, it is, your Honor.

10     **THE COURT:**  Okay.  And I do believe that when I

11 noticed this for hearing, I did ask that Ms. McKenna be

12 present, so just for the record, if we can note that

13 Ms. McKenna is here present in court.

14     Okay.  So we are here -- I set this for hearing on

15 the motion to withdraw.  As part of that motion to withdraw,

16 there was also a request to stay discovery and then there was

17 some subsequent kind of emails back and forth about some

18 discovery that was ongoing and some issues with things that

19 were happening and things that were being produced in

20 third-party discovery.

21     And originally when I set this for hearing, I asked

22 that Ms. McKenna be present, given that this case was

23 originally filed pro se and that you are also an attorney.  And

24 so separate from where I would normally just deal with a motion

25 to withdraw, wanting to just see the direction of where we were

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 5*

1    going with this case with respect to your request to obtain new

2    counsel, whether you would be representing yourself, not

3    representing yourself, which is why I asked that you be present

4    in person so that we could address that issue.

5            Subsequent to that, I do know that Mr. Schwartz filed

6    a limited-basis appearance just simply for this particular

7    motion, and then there was a response that was filed with

8    respect to just the motion to withdraw portion of this, and so

9    I'd like to address that.

10           Subsequent to that, I think that's when Mr. Cranmer

11   came in to represent the two attorneys that are seeking

12   withdrawal.  And so I will say I don't think I've had this many

13   lawyers in the courtroom for a motion to withdraw ever, but we

14   will address that.

15           I do know that separate from the issue of counsel

16   withdrawing, there is also included within that motion to

17   withdraw a request to stay, and that the defendants had some

18   responses that were filed with respect to the request to stay,

19   so I think we have to address that separately.

20           And so first and foremost, I've read everything.

21   Mr. Schwartz, I did see that the response on file with respect

22   to the motion to withdraw, the plaintiff's counsel had filed a

23   motion to withdraw citing to a breakdown in attorney-client

24   communication and just an impasse on the ability to go forward.

25   Seemed pretty standard and normal.  I get these motions all the

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 6*

1  time; pretty routine.

2         And then we had a response that was filed by

3  Mr. Schwartz essentially saying that there wasn't a basis that

4  was placed in the actual formal request to withdraw that would

5  warrant that motion being entered.  I'd like to hear from you

6  briefly on that.  I don't know what more could have been said

7  in that motion without revealing attorney-client information,

8  and so I guess my question to you just would be, is Ms. McKenna

9  objecting to their withdraw and saying that you want to keep

10  them as counsel or are you saying there isn't a breakdown in

11  attorney communication?  I'm just a little confused as to kind

12  of the position there.

13         **MR. SCHWARTZ:**  Thank you, your Honor.  There is not a

14  situation over here where my client is doing anything other

15  than saying that she has a number of people, two of them, in

16  fact, who were representing my client who I have now for this

17  one case and this one part for eight months, so open like that.

18         Everything went on.  Everything was going on.

19  There's no other situations.  Now, all of a sudden, I believe,

20  in or about June 2nd, one or two of those people said to my

21  client that they want to withdraw.  They didn't really get into

22  anything more than that.  In fact, when we take a look at the

23  motion that they have, you really wouldn't be able to know what

24  it is; they just said they just want to do it.  Okay?

25         I did find out something, which just came to me, I

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

1  think, yesterday, that one of these individuals, Ms. McGinn,

2  who usually I think is out in the state of New Mexico, and

3  there was a matter over there, and then somehow or other I

4  understand that she was interested in becoming a prosecutor.  I

5  know about prosecutors because I used to be one.  And she's --

6  Now, the reason I get to all this is as follows:

7  This whole thing is only about one thing, and that's the

8  withdrawal.  Why is there a withdrawal?  Because I believe that

9  she wanted to go out and do what she was doing and the

10  New Mexico situation, and in doing that, she was more

11  interested in taking care of that, because when she did that,

12  what does it do to my client?  My client now has nothing.  She

13  can't get into this.  She didn't get all the stuff that she

14  should have gotten originally.  She now has a situation, based

15  upon, I believe -- though it may not be correct on what I have

16  here -- on Docket No. 60, which talks about plaintiff's

17  emergency motion to stay all proceedings until decision on

18  motion to withdraw, and that was denied.

19  Now, what would happen to my client if all of this

20  occurred?  My client right now has a whole number of people who

21  she's working for, for other clients doing all these things.

22  She'd been doing all this.  Now she's going into -- if that

23  were to happen here and she had nothing else, because it's hard

24  for her to get somebody else, she would then have to be pro se.

25  The only reason she was pro se, if you'll notice -- was very

1   short.  She started, I believe, in September.  And then in

2   October we had, I believe, Ms. Kalahar who came in, and then I

3   believe -- and I could be wrong again -- in November there was

4   McGinn.  And then from October and on, that's what happened.

5           Now, if my client lost all that stuff and she has

6   anything she would then be pro se.  Now, you know, they all

7   know, the rest of them who are lawyers know, that people,

8   generally speaking, who end up having to do all this, and all

9   she can do is represent herself, that's a real problem when

10  she's a lawyer.  She needs to have an attorney.  She can't

11  handle that and be her own lawyer at the same time.  That's

12  what's trying to be --

13          **THE COURT:**  So, my question to you, counsel, though,

14  is, is it your client's position that there's been no breakdown

15  in the attorney-client relationship?  Because I understand that

16  you're saying she needs to be able to have counsel so that

17  she's not trying to represent herself and continue a practice

18  on her own, but the Court can give her adequate time to secure

19  counsel.  So I guess my question to you is, it appears that --

20  I'm not quite sure what the New Mexico situation is or that

21  there's an interest to be -- I mean, separate and aside, if

22  someone is seeking another job, that would be a separate

23  grounds for granting a withdrawal if they're leaving a firm or

24  going to become a prosecutor, that would be separate and aside

25  from any breakdown in the attorney-client relationship.  And I

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

Page 9

1  do understand that you're saying the motion as filed doesn't

2  give the details of that, but wouldn't giving the details of

3  that, then, violate the attorney-client privilege?

4      **MR. SCHWARTZ:**  Actually, there is a problem there.

5  No. 1, you start out with the situation where she has this

6  document here.  You see the entire document.  It's very short

7  and it doesn't say anything.  It just says words, but it

8  doesn't say what's involved.

9      **THE COURT:**  Well, then, how does she tell me what's

10  involved without revealing attorney-client confidences, right?

11  She has a duty to not reveal the details of whatever that

12  breakdown may be, because, otherwise, wouldn't she then be

13  violating the attorney-client privilege?

14      **MR. SCHWARTZ:**  Not necessarily.  The point is, she

15  didn't even try it, because it seems to me, because if

16  necessary -- and I didn't want to get into this either -- but

17  there is something that's involved which really isn't involved

18  with my client, but it has to do with being or getting into

19  being a prosecutor, that they wanted to be done now.  And I

20  will put it to you straight out, it looks very clear to me,

21  since they really weren't saying anything, they just put

22  something out there without saying what it's all about.  And to

23  say that there's nothing -- they have to show something.  I

24  could say anything today anywhere.

25      **THE COURT:**  Paragraph 2 of ECF 54 says, "A breakdown

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

Page 10

1  in the attorney-client relationship has occurred, that, in

2  counsel's professional judgment, makes continued representation

3  no longer appropriate and impairs the ability to provide

4  effective representation."

5        **MR. SCHWARTZ:** But it doesn't tell us what that

6  means.

7        **THE COURT:** But how do you tell me what that means

8  without violating the attorney-client privilege?

9        **MR. SCHWARTZ:** I don't know that there is a -- who is

10 she having a violation to? Does it mean that these people

11 here, who are these two individuals who are the attorneys for

12 the client, now, are you telling me -- and I don't want to say

13 anything --

14       **THE COURT:** I don't want you to violate that

15 privilege, either. I want everybody to keep all of the

16 privileges in place.

17       **MR. SCHWARTZ:** If the people over here knows what

18 they know, that my client knows, how could that be what they're

19 claiming that they're doing?

20       **THE COURT:** So if they know something and they've had

21 conversations about that, obviously, that's not something that

22 can be placed in a filing -- right? -- because that would be a

23 violation of privilege.

24       **MR. SCHWARTZ:** Yeah, but there has not been a

25 breakdown. It doesn't happen. It didn't happen. And because

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 11*

1  of that, there's nothing that you can go on with.

2          I mean, it's nice for them to be able to say that,

3  you know, there was a breakdown, but not to my client.  And

4  this is all about the withdrawal that they now want to get rid

5  of because they want to get rid of them for their purposes and

6  it will harm my client.

7          I should also point out something else, because I was

8  looking at some of these things that we had, and one of the

9  more interesting ones that came out from this court, not the

10 particular one that you've got, in Santini versus Farris.  I

11 looked at that and I looked at that very carefully, and there

12 were certain things that were said, because we had one just

13 like this.  It wasn't exactly like that 100 percent, but it was

14 basically the same, and there were certain things that should

15 be done.  And if it's okay, there's just a few things I'd like

16 to just bring up.

17         **THE COURT:**  Absolutely.

18         **MR. SCHWARTZ:**  It says -- this has to do with a

19 lawyer named Chapman.  Okay?  And he went on and it says, to

20 decide whether Chapman may destroy -- I'm sorry -- withdraw

21 from this matter, the Court must ask two questions:  First, has

22 Chapman presented valid grounds for withdrawal under the

23 Michigan Court Rules?  And if so, would Chapman's withdrawal

24 for this matter impose severe prejudice?

25         Now, the next one is, withdrawal is severely

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 12*

1  prejudicial if it forces a client to respond to an important

2  deadline without representation.  Withdrawals before imminent

3  deadline are unduly prejudicial because they do not leave the

4  client with sufficient time to retain new counsel before the

5  deadline, which I know now I think may not be even there

6  anymore.  May I sit down, your Honor, because I have some

7  problems with my -- I got a little illness, if it's okay if I

8  could sit?

9        **THE COURT:**  Absolutely.

10       **MR. SCHWARTZ:**  Thank you.  And then I go on.

11       **THE CLERK:**  Could you pull the microphone closer?

12  Thank you.

13       **MR. SCHWARTZ:**  Withdrawing from representation of a

14  client who is unlikely to be able to find new counsel, even if

15  there are no imminent deadlines, is severely prejudicial.  If

16  the client cannot afford new counsel, then the proximity of

17  nearest deadline matters, whether nearest deadline is in a few

18  days or a few months, the client will not have ample time to

19  secure new counsel.  It would be arbitrary to distinguish

20  between a client who cannot obtain new counsel for an imminent

21  deadline and a client who cannot obtain counsel for a deadline

22  in the distant future.  Either way, client will have to face

23  some deadline while unrepresented.

24       Now, that's a problem.  That came out and it was in

25  this case.  It was with Judge Grey here in this Eastern

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

Page 13

```
1   District, and the magistrate who did this was Magistrate
2   Morris.  Now, that came out.  It was looked at and it was
3   really -- because we're talking about all the things that
4   they're talking about.  There's more to it, though, than just
5   what they say, because what they say is nothing; over here is
6   what we have, and they're looking to have themselves to their
7   benefit and very much partial to mine, and mine, then, is left
8   with nothing.  And she's not in a position at this point to be
9   able to do all that.  And we don't have -- she tried a number
10  of attorneys to try to get it.  They didn't get all the
11  information that they had.  They said they weren't even going
12  to look at this.  And this has been sitting out there for 80
13  [sic] months.  And my client, through all the things, never did
14  anything to harm the other people, those two individuals.

15          In fact, we took a look at things.  They kept on
16  talking without saying anything of realism.  They're talking
17  about what we have over here, which is the Michigan Rules of
18  Professional Conduct.  I know something about that.  I -- maybe
19  I do know something about those things.

20          And if you take a look at all this, you will see
21  under the rules, which in this case would be MRPC 1.16 and then
22  B1 through 6.  And when you go 1 through 7, you'll see none of
23  that stuff would be involved.  And the last one they had was 6,
24  and the only thing they said, the only thing is that they had
25  good cause.  Good cause for what?  They didn't even tell us.
```

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

Page 14

1   And it seems to me, your Honor, with all that stuff that

2   they're talking about and all the things that have happened and

3   we have this case over here.  There are other ones, too.  I

4   could have brought other ones as well, but I thought I'd bring

5   this one because it's relatively close by.  It's November of

6   2023, so it's not really that far away.  I think that we didn't

7   get a good proper view -- I'm putting it nicely -- from the

8   other side saying, oh, you can just do that.  Well, why didn't

9   they tell us any of that stuff?  And it's more than just what

10  they claim that somehow or other there are other problems that

11  you had indicated, probably, maybe, but it didn't indicate

12  anything.  None of that happened.  There's nothing that went

13  on.  They wouldn't even come out with anything that's even

14  close.  They just want to get that done because they want to

15  get away from having to do anything.  And they went through all

16  that time -- my client went through all the time that she had

17  and she's now in a terrible situation.  And it seems to me,

18  looking at all that and looking at all the other parts of

19  there, and I've got my brief that I put in there.

20          **THE COURT:**  Uh-huh.

21          **MR. SCHWARTZ:**  And my brief wasn't huge because I

22  didn't have time to put in everything, but even with what I

23  had, it was more to it, a lot more, than what they put in it,

24  which was virtually nothing.

25          **THE COURT:**  Okay.

       *24-12347; Elyse McKenna v. Robert F. Riley, et al.*

1          **MR. SCHWARTZ:**  And that's what it's all about.

2          **THE COURT:**  Okay.  Thank you for that, counsel.

3          I guess, Mr. Cranmer, I can hear from you with

4    respect to if you'd like to respond to that.

5          **MR. CRANMER:**  I would, your Honor.

6          **THE COURT:**  Okay.

7          **MR. CRANMER:**  Thank you.

8          Your Honor, I think the Court has really put its

9    finger on the issue that's presented here.  And there's a

10   tension, and the tension is between my client's ethical

11   obligations under the rules of professional responsibility and

12   ensuring that they keep the confidences of their client, and

13   that's exactly why the motion is styled in the way that it is.

14         And I want to be clear and respectful to opposing

15   counsel.  And he may not be aware of this, but to suggest,

16   either in his response or orally today, that Ms. McKenna

17   doesn't know the reason, wasn't advised of the basis of the

18   breakdown of the communication and the reason for the

19   withdrawal is candidly absolutely false.

20         On June the 3rd, both of my clients had a lengthy

21   Zoom conversation, about a half an hour or so, with Ms. McKenna

22   indicating specifically why it is that they felt compelled to

23   withdraw.  Two days later Ms. Kalahar sent to Ms. McKenna a

24   three-page letter setting out the reasons for the withdrawal.

25   So for somehow for her to suggest now through counsel that

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 16*

1  gosh, golly, there hasn't been a breakdown in the relationship;

2  I have no idea why my lawyers are seeking to withdraw, that's

3  just not true.

4  And as the Court may know, from time to time the

5  State Bar of Michigan speaks on ethical issues, and they've had

6  the opportunity to speak to this particular issue, a situation

7  like we have here, where there's this tension that I mentioned

8  about adhering to the ethical responsibility a lawyer has under

9  the Rules of Professional Conduct and wanting to protect the

10  client's confidences.  And in an ethics opinion, which is RI387

11  that was issued on February 17th of 2023, the state bar spoke

12  to this very issue, and I'd be happy to furnish a copy of that

13  opinion to the Court.  But, in essence, what the State Bar said

14  was the following, and it actually speaks to this exact issue.

15  And the opinion says that if the withdrawal is mandatory, the

16  lawyer should tell the Court, quote, professional

17  considerations will require termination of the representation.

18  According to the opinion, this statement should signal to the

19  Court that the lawyer-client relationship has been

20  fundamentally damaged.  If the withdrawal is permissive.  The

21  lawyer should tell the Court there's been a breakdown in the

22  lawyer-client relationship and, again, according to the

23  opinion, the language, that language should be satisfactory to

24  the Court.

25  And then the opinion goes on to say, if the Court

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

1   persists in seeking additional information to follow up on one

2   of the above statements, the state bar has opined that, quote,

3   the lawyer should inform the Court the lawyer is unable to

4   provide additional information as such disclosure would violate

5   attorney-client confidences under MRPC 1.116, exactly the

6   situation we have here, and I think exactly what the Court has

7   already defined in terms of this particular circumstance.

8            Interestingly enough, there is a judicial, I'll call

9   it corollary to this ethics opinion that I just cited, and that

10  is JI154.  I also have a copy of that opinion if the Court

11  would like to see it.  And it's essentially an analog to RI387.

12  And what's indicated there -- and this is the judicial

13  equivalent that was sought by a judge in terms of a situation

14  similar to this, and although the opinion acknowledges that

15  it's important for judges to determine whether good cause

16  exists for granting a motion to withdraw, it emphasizes that a

17  court, quote, should rarely order disclosure of the lawyer's

18  specific reasons for the mandatory withdrawal, as doing so will

19  force the lawyer not only to divulge otherwise protected client

20  information, but also to communicate information that would

21  prejudice the lawyer's client.

22           That's the situation that we have here.  Right?  I

23  recognize that the case has been ongoing for a number of

24  months, but I think as the Court also knows, there's an

25  additional lifespan for this case going forward.  I think

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

Page 18

1  discovery doesn't close until March next year, some eight or

2  nine months down the road.  Trial isn't set until 2027.  And as

3  the Court noted, the plaintiff in this matter is a lawyer and

4  she initially filed the matter pro se, so I don't know that

5  there's anything more I can say other than to indicate that,

6  without question, my client's belief that there has been an

7  irreconcilable breakdown in the communication between

8  themselves and Ms. McKenna, and we ask that we be allowed to

9  withdraw and the Court set whatever time the Court thinks is

10  appropriate for Ms. McKenna to secure other counsel so that she

11  will not be prejudiced in terms of moving forward and the like.

12          I'm happy to answer any other questions the Court may

13  have.

14          **THE COURT:**  Nope.  Thank you for that, Mr. Cranmer.

15  I will note that.  If you have copies of those opinions and

16  you'd like to hand those over --

17          **MR. CRANMER:**  I want to give a copy to Mr. Schwartz,

18  too.

19          **THE COURT:**  Okay.

20          **MR. CRANMER:**  May I approach?

21          **THE COURT:**  Yes.  Thank you.

22          I will ask, just for the record, I do know that there

23  were responses filed by both the Riley defendant and OMP, and I

24  will give each counsel an opportunity to be heard.  I think if

25  I am correct on this, the responses from the defendants didn't

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 19*

1  take a position as to whether counsel should be able to

2  withdraw, but simply were addressing whether there should be a

3  stay of discovery in the interim if counsel is allowed to

4  withdraw and there is more time granted for Ms. McKenna to

5  secure new counsel.  Is that correct?

6           But I'll ask each defendant to at least put their

7  positions on the record.

8           **MS. HARDY:**  Elizabeth Hardy on behalf of Riley

9  defendants, and that is correct as to our position.

10          **THE COURT:**  Okay.  Thank you.

11          **MS. GORDON:**  Your Honor, as to the OMP defendants, We

12  concur in the relief sought.  We do not object to the relief

13  sought by Ms. Kalahar and Ms. McGinn, and I call what Ms. Hardy

14  just stated as to our interest in this.

15          One thing I do want to add:  There's one thing I

16  think -- I don't know if you're going to rule today from the

17  bench or issue an opinion, but while we've got Ms. Kalahar

18  here, there's a couple of housekeeping issues we wanted to put

19  on the record, but not right now.

20          **THE COURT:**  Okay.  I will address those before we

21  close today.

22          Mr. Schwartz, can you confirm for the Court whether

23  there was a meeting with counsel and your client on June 3rd

24  with respect to whether there were conversations about the

25  relationship and what was going forward?  And then, also, I

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 20*

1  believe on June 5th, a three-page letter that was provided to

2  Ms. McKenna with respect to why counsel was seeking to

3  withdraw?

4  **MR. SCHWARTZ:**  All right.  If I may, because I came

5  in -- I wasn't there when they were, but my client was, and if

6  it's okay, I'd like her to tell you what it is, because then

7  she can tell what actually occurred there.

8  **THE COURT:**  Absolutely.

9  **MR. SCHWARTZ:**  Okay.  Go ahead.

10  **MS. McKENNA:**  Your Honor.  I know -- I think we all

11  are cognizant of the privilege, so I'm going to try to dance

12  around that and provide responses, but --

13  **THE COURT:**  Let me just first say, I'm not going to

14  ask that you reveal any of the content of those communications.

15  The Court is simply just trying to determine whether the

16  parties have had a conversation, whether you've had a

17  conversation with counsel with respect to whether the case is

18  moving forward, not moving forward, the positions and things of

19  that nature.

20  **MS. McKENNA:**  Sure.  And I just want to make clear

21  that I'm trying my best not to waive any privilege.

22  There was a conversation that occurred on June 3rd.

23  There was an indication by Ms. Kalahar and Ms. McGinn about a

24  breakdown in the attorney-client relationship.  I do not agree

25  with that indication.  I said that during that conversation.

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

Page 21

1  Again, I'm not trying to waive any privilege, but I'm trying to

2  keep that limited by saying that.  And I read a lot of the

3  cases.  You know, Mr. Schwartz has cited some cases and there's

4  these ethics opinions, of course.  There was not a conversation

5  prior to that warning me that there was some sort of breakdown

6  that was happening and that there was something more that was

7  expected of me.

8          I'm a very responsive client.  I've tried to serve as

9  co-counsel, essentially, and try to be helpful where I can on

10  this case, which, obviously, it's a large case that has a lot

11  of evidence and those sorts of things.  June 3rd was the first

12  that was ever brought to my attention and I don't agree with

13  it.  Without going into detail, as you've indicated and I think

14  we all agree would be not great, I think it's important that

15  that is cleared up.  Obviously, people can have differences of

16  opinion and things like that, and I understand there's always

17  two sides in every case as an attorney.

18          And just to cover one thing, just if I could briefly.

19  I did file this case pro se.  I did it given timing issues and

20  not being able to find an attorney, which I think is laid out

21  in the complaint, or was in the first complaint, I'm not sure.

22  I know we're on some amended complaints now, but I then --

23  obviously, I did retain attorneys.  And I am running a law firm

24  and I have accepted -- I pulled these numbers in advance of

25  this hearing -- 25 cases since that time.  I am not prepared to

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

1   proceed pro se.  I know you referenced that at the start of

2   this wanting to know what my plan was.  If that were to happen,

3   I would need significant time.  I have -- obviously, I owe an

4   obligation to my clients to represent them.

5           **THE COURT:**  Absolutely.

6           **MS. McKENNA:**  But I would like you to know that

7   because I know -- obviously, I know defense, their position is

8   she started this off pro se; she can proceed pro se.  I can

9   understand they don't know the inner workings of what I have

10  going on, and so I just want to make that clear, I have

11  accepted 25 cases and those cases have varying statutes.  I'd

12  be happy to provide that to the Court so you understand the

13  time pressures that I'm under, but I'm not trying to -- I just

14  want to make that information clear --

15          **THE COURT:**  Okay.

16          **MS. McKENNA:**  -- because I know that the posture has

17  changed, obviously.

18          **THE COURT:**  All right.  Thank you for that.

19          So with respect to -- we kind of still have two

20  issues, and so I want to address first, because the motion is

21  kind of two parts with the motion to withdraw and then

22  separately requesting additional time if the withdrawal of

23  plaintiff's counsel is granted.

24          And so, first with respect to the motion to withdraw,

25  Mr. Schwartz, thank you for your arguments with respect to

1    citing to the Santini case, which I believe was from November

2    of 2023, and basically saying the Court needs to address two

3    questions with respect to is there valid grounds to withdraw as

4    well as if there would be severe prejudice to the client if an

5    attorney is granted the right to withdraw.  And here under both

6    local rule as well as -- under both local court rule as well as

7    the Michigan Rules of Professional Conduct, the Court does have

8    to make a determination on whether there are substantial

9    grounds to withdraw, and I do believe that counsel's citation

10   to the ethics opinion as well as what the Court originally came

11   forth and said, is that the Court is not required to have

12   counsel violate an attorney-client privilege in order to

13   provide a structural reason for withdrawal.

14          It does appear to the Court that, as represented by

15   counsel, that there has been a breakdown in the attorney-client

16   relationship such that continued representation would not be

17   workable, and the Court does find that to be a sufficient

18   reason in order to allow counsel to withdraw.

19          The second question, obviously, though, is whether

20   there would be prejudice to the client in doing so.  And

21   discovery in this case -- this case, although has been filed

22   for some time, is still fairly early in the litigation process,

23   and discovery is just now getting going.  I know we dealt with

24   some motion practice when this case first started.  I'm looking

25   through, you know, there were some motions on dealing with

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

Page 24

1   things related to some state court proceedings that were going

2   on, but we really didn't have a case management conference and

3   get discovery started on this case until last month.  And so

4   this case, as far as the Court is concerned, is truly in its

5   infancy, and I don't believe the fact discovery cuts off in

6   this case until March of next year, and I think there's a

7   dispositive motion cutoff of July of next year.  So we're still

8   a year away from any particular deadlines that there would be

9   in this case, and so I don't think we're in a situation such

10   that we have a client that's forced to respond without counsel

11   or an ability not to be able to proceed and meet impending

12   deadlines because the deadlines are so far out in this case.

13        However, I do understand Ms. McKenna's position with

14   respect to that this case was filed pro se, but she does not

15   have the desire to continue this case pro se, as she has a

16   separate practice that she is also running.  She has

17   responsibilities with respect to her own clients, and the Court

18   recognizes that and makes note of that.

19        In light of that, though, I do believe that we're not

20   in a situation where Ms. McKenna would be prejudiced by

21   withdrawal because we have more than enough time to allow her

22   to seek new counsel.  The Court will grant that time.  I think

23   the question then becomes separate and aside from the actual

24   granting the withdrawal to allow Ms. McGinn and Ms. Kalahar to

25   withdraw, whether we stay this case, whether we continue with

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

1  discovery, what do we do?  And I know that defense counsel has

2  the position that they would want to continue with discovery.

3  And so I want to deal first -- obviously, the ruling from the

4  Court on the motion to withdraw with respect to allowing

5  Ms. McGinn and Ms. Kalahar to withdraw as counsel, will be

6  granted.  The question now is whether the request to stay this

7  case pending allowing Ms. McKenna additional time to seek

8  counsel is the issue before the Court.  And I'm not sure if --

9  if defense counsel would like to be heard on that.

10       I would ask Ms. McKenna -- I mean, the Court's not

11  going to delay this indefinitely, but how much time do you

12  think you would want with respect to securing new counsel,

13  bringing that counsel up to speed?

14       **MS. McKENNA:**  Your Honor, I think that's the

15  difficult question, I guess.  So I know I have two depositions

16  of me scheduled on August 11th and August 12th, and I don't

17  think there's any, given I have talked to attorneys since the

18  time that this transpired.  I still don't have a complete copy

19  of my file, which is making this difficult to get someone, that

20  I would ask for 60 to 90 days --

21       **THE COURT:**  Okay.

22       **MS. McKENNA:**  -- while I try to -- I -- I --

23  obviously, someone has to look at everything to prepare me for,

24  you know, those depositions and then prepare the other -- for

25  the other depositions as well.

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 26*

 1          **THE COURT:**  And I will say, with respect to the

 2    Court's position, and I will hear from defense counsel if you'd

 3    like to be heard for the record, but with respect to the

 4    Court's position, I recognize that we're in a unique situation

 5    because you are counsel, but the Court wouldn't ask you to have

 6    to defend your own deposition as counsel for yourself if you're

 7    seeking new counsel.

 8          So I guess my question, though, is -- and I think

 9    both sides, I would need for you to address this -- would be

10    with respect to, I believe there were issues, and the Court,

11    just for the record, also did deny a motion.  It was an

12    emergency motion to stay discovery pending us having this

13    hearing today, but that's all related to third-party discovery

14    and not with respect to the people who are here in court.  And

15    so that motion was denied because there was no need to tell a

16    third party they couldn't respond to a validly-issued subpoena

17    in this case, pending us resolving whether you would have

18    counsel moving forward or not.  And so the question with

19    respect to -- and I can hear, either, directly from

20    Ms. McKenna -- I understand we're in a unique situation on who

21    to hear from with respect to this, but the request to stay --

22    is the request for us to stay discovery completely, to just

23    completely stay the case, or is the request for us to say,

24    obviously, we don't want depositions going forward, something

25    that you would have to defend and that you don't have the

                *24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 27*

1  ability or the time, given your other professional commitments,

2  to be able to do -- are we pending written discovery?  I guess

3  my question is, what are we seeking from the Court with respect

4  to that request to delay things?

5          **MS. McKENNA:**  Your Honor, I would be seeking a

6  request to delay everything, to stay the case.  In -- for the

7  attorneys I've spoken with, their interest or potential ability

8  to take the case, that's what they -- it seems to hinge on

9  that, so I think that would increase my chances of finding an

10  attorney.

11          **THE COURT:**  Okay.

12          **MS. McKENNA:**  Any, basically, production of

13  documents, whether third-party or otherwise, anything.  It's

14  just more things out there in the universe that I'm trying to

15  get them caught up on a file I really don't have yet.  But

16  that's what, based on the limited conversations I've had,

17  again, without trying to waive any privileges, seems to be the

18  appetite for others.

19          **THE COURT:**  Okay.

20          **MS. McKENNA:**  So that's what I would ask.

21          **THE COURT:**  And I can hear from the defense on that

22  as well.

23          **MS. GORDON:**  May we approach, your Honor?

24          **THE COURT:**  Yes, please.

25          **MS. HARDY:**  Your Honor, Elizabeth Hardy on behalf of

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 28*

1    the Riley defendants.

2              I understand the need for some time, but this request

3    has to be balanced against the harm and prejudice to the

4    defendants.  I understand not much has happened in the past ten

5    months, but, nevertheless, this case has been pending for ten

6    months, and in that time it has become, you know, there has

7    been a vendetta to destroy the reputation of Mr. Riley, a

8    reputation built over many decades, a stellar reputation.  It's

9    involved the plaintiff going to the press, sitting for an

10   interview, circulating the complaint to his clients.  There has

11   been immense harm to Mr. Riley, and he has a right, as a

12   defendant, to have an expeditious resolution of this matter.

13   And, so, it can't all be just the concern that she has because

14   her counsel has decided to withdraw and she now has to seek new

15   counsel.  It has to be balanced against the situation that

16   defendants are going to incur.

17             We've already offered her 28 days of an extension on

18   all her discovery obligations.  It did not apply to third

19   parties, which is why that dispute came before you, but we've

20   given her -- gave her immediately a 28-day extension on all of

21   her discovery obligations.  She's been on notice for, like, 23

22   days that her counsel intends to withdraw, so she, you know,

23   has had time to start this process of finding a new attorney.

24   And the standard in the case law appears to be 30 days is the

25   norm, and that's what is typically applied.  And so we would

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

1   ask that it be within that range, certainly not 60 or 90 days.

2          And then, secondly, because this Court has already

3   entered this scheduling order that has the close of discovery

4   next March and then trial in February '27, we'd ask that there

5   not be -- whatever time she's given to find new counsel, that

6   that not impact the Court's scheduling order and create more

7   delay in terms of pushing it out further.  Because that -- that

8   that's our primary concern is we -- there's been a generous

9   amount of time for a case of this nature to get discovery done.

10  We don't think just because she is now looking for new counsel

11  that that scheduling order should be further extended.

12          **THE COURT:**  Okay.

13          **MS. GORDON:**  Deborah Gordon on behalf of OMP.

14          I would echo what Ms. Hardy just stated, your Honor.

15  Our client as well is being significantly prejudiced.  They are

16  a well-known law firm in the Metro Detroit area, very

17  long-standing law firm, busy law firm.  This, too, has been

18  brought to the public's attention by Ms. McKenna.  Their name

19  has been dragged into this.  They have suffered their own

20  damages and concerns and answering of questions.  They are

21  anxious to get this resolved as quickly as possible and put

22  this case behind them.  We feel there is no merit to this case

23  whatsoever and it should never have been brought.  As you are

24  aware, we did file a motion to dismiss early on, and the Court,

25  then, granted plaintiff leave to amend her complaint.  We now

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

Page 30

1    have three amended -- we have three complaints.  And this has

2    been the nature of the litigation brought against our clients.

3            There has been delay and there has been obfuscation.

4    It's been very difficult to get any discovery off the ground.

5    The case -- the complaint was filed in September of '24.  We've

6    had a very difficult time, and I understand now that

7    Ms. McKenna's attorney-client relationship may have, you know,

8    not -- the communication may not have been there, but we have

9    been adversely affected by the lack of communication, the lack

10   of timeliness, the inability to follow through.  By one

11   example, we had three third-party subpoenas out to two

12   treaters, and one to her current law partner, Ms. Fox, who's in

13   the courtroom today.

14           Ms. Kalahar agreed to accept the subpoena to Ms. Fox

15   on her behalf, and I have an email saying, yes, I agree to

16   accept service.  The date that we granted an extension for

17   Ms. Fox to produce those documents, that date has come and

18   gone.  There's been no response from Ms. Fox whatsoever, no

19   contact with us, no request of an additional extension or a

20   suggestion of when we might get the documents.  I will just say

21   they've decided to ignore us.

22           With regard to the treaters, your Honor, as you are

23   already well aware because of the motion filed to stay, we were

24   entitled to the treater's records, given the nature of the

25   damages claimed by the plaintiff.  As I understand it,

           *24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 31*

1  Ms. McKenna took it upon herself through -- I found this out

2  through the treater's lawyer -- contacted the treater on her

3  own and suggested to the treater that she didn't -- the treater

4  did not need to produce the records.

5          We -- an emergency motion was then filed and the

6  emergency motion to stop the subpoenas from going forward was

7  denied.  Your Honor, that same day, Ms. McKenna, after you

8  denied the motion, contacted the treaters and said she was

9  revoking her release.  This was all documented.  This is the

10  kind of difficulty we have had getting basic information with

11  her continual attempts to stop us from moving forward.  Hence,

12  I don't think she should be given any time above and beyond the

13  typical legal structure that Ms. Hardy has already described to

14  you.  To the contrary, she's had just an amazing amount of time

15  to find counsel dating back to when she started negotiating

16  with Mr. Riley to try to settle this, which she's put in her

17  complaints.  This has a long history, and defendants have a

18  very important interest here that I hope the Court will take

19  into account, and we say about 28 days, everybody does a

20  standdown, except for the third-party subpoenas, and then maybe

21  we could have a report from Ms. McKenna back to the Court and

22  see where we stand.  And if she feels she's completely unable

23  to find counsel or at least we could get an update.  But, of

24  course, at this point she would like 90 days if she can get it.

25  She has no reason not to.  But this case should be a priority.

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 32*

1    She brought it.  It's her case.

2           It's -- the whole point is, you know, it's her world

3    that she's created but we're all now having to live in.  It's

4    on her to move quickly and rapidly, and I think 28 days should

5    be what she should get and we should -- if she does not have

6    counsel, we can reconvene at that time, but this Court should

7    not consider a complete stay.  We agreed to stand down other

8    than as to the third-party subpoenas.

9           **THE COURT:**  Okay.

10          **MS. GORDON:**  Thank you, your Honor.

11          **THE COURT:**  Thank you.

12          **MS. McKENNA:**  Your Honor, may I briefly be heard?

13          **THE COURT:**  Yes.  And I do actually have some

14   questions for you with respect to the third-party discovery.

15   And there was some information filed with the Court in response

16   to that emergency motion to stay all the proceedings until we

17   determine this, and it was brought to the Court's attention

18   that there was instruction to not respond because there had

19   been a request for a stay of that.  But once that was denied,

20   well, it's been represented, and I believe it's in the

21   proceedings as well, but also represented here in court today

22   by Ms. Gordon, that then there was a withdrawal of releases so

23   that that information could not be produced.  So can you please

24   address that for the Court?

25          **MS. McKENNA:**  Yes, I'd be happy to address it.

             *24-12347; Elyse McKenna v. Robert F. Riley, et al.*

1          And, I guess, one thing that I want to address before

2   that is, I think we can -- you know, there's been a lot said

3   about whether people have been significantly prejudiced.  I,

4   obviously, am speaking on behalf of myself.  I've also been

5   significantly prejudiced here.  I understand that they have

6   clients, and in this moment I'm speaking, obviously, for

7   myself, but I no longer live in Michigan.  I'm no longer on the

8   Michigan Association for Justice executive board.  We all

9   have -- it seems that there is prejudice everywhere, and I do

10  have an interest in getting this case sorted out and moving

11  forward and I do want to have representation for it.

12          And I know Ms. Gordon said that I'm asking for 90

13  days because I want 90 days.  I did, actually, ask this Court

14  for 60 to 90 days.  I'm willing to take 60 days, I just need

15  time to get an attorney.

16          But with regard to the third-party subpoenas, I would

17  be really -- I'm really eager to clean this up, because on

18  June 7th my counsel notified me that there was an extension of

19  28 days on all deadlines, including the third-party subpoenas.

20  I have an email to that effect.  I have documentation and I'd

21  be happy to provide it to the Court.

22          And then I was, again, without invading the privilege

23  that that was informed to me.  I guess I don't think that -- I

24  don't -- I don't know if I'm invading any privilege at this

25  point, your Honor -- and they advised me to let them contact

1  the third parties and follow that recommendation of letting the

2  third parties know of that 28-day extension.

3          I did not contact a third party; a third party

4  contacted me and asked what was going on with the subpoena, and

5  I said, you should be hearing from my attorney soon; there's

6  been a 28-day extension.  That's why I said that.  I'm fully

7  owning that I said that, and it was my understanding in all of

8  the documents I had until that point stated that.  And that was

9  either on June 9th or 10th.  I can look at my phone records and

10 let you know.

11          On June -- I believe it was on June 9th and 10th, I

12 think there were two conversations.  And then on the 11th -- I

13 don't know.  I don't want to be -- I don't want to mess up any

14 of these dates -- but that third-party deponent said, can you

15 call my attorney because I don't know what's going on here?

16 And so I called that attorney and I said, it's my understanding

17 that there's a 28-day extension.  And he said, I'm not -- I

18 have now spoken to -- he told me that he spoke to Ms. Gordon

19 and Ms. Hardy's office -- I'm not sure who at which office --

20 and said that there wasn't an extension.  I didn't have

21 anything to the contrary to that point about the extension

22 because my counsel had advised me as there was an extension.

23 And so he said, your only option is to revoke your

24 authorization at this point while this whole thing is cleared

25 up and, obviously, this motion to withdraw is pending.  And I

1  did do that at that time, your Honor.  I fully own that I did

2  that.  It was not after the Court decided an emergency motion.

3  The Court decided the emergency motion on Friday and my

4  revocation was on Thursday.

5        **THE COURT:**  Okay.

6        **MS. McKENNA:**  I can provide all of the documentation

7  to that effect.  And I would never, as an officer of the court,

8  and I take my license seriously, I would never advise someone

9  to not honor a subpoena.  I understood that there was a 28-day

10 extension, because that is what I had been told for all of --

11 all of the deadlines.

12       **THE COURT:**  Well, I guess my question to you is, the

13 revocation of the authorization is a separate issue from the

14 timing on whether documents will get produced, right?

15       **MS. McKENNA:**  Sure.

16       **THE COURT:**  And so by revoking a HIPAA release,

17 you're saying, I'm not authorizing you to release these records

18 at all, not whether that happens today or 28 days from now.

19 And so, I guess my question to you, then, is, once the Court

20 ruled that there wouldn't be a stay of the proceedings, then,

21 obviously, that deadline wasn't pending, right?  That was a

22 validly-issued subpoena --

23       **MS. McKENNA:**  Uh-huh.

24       **THE COURT:**  -- and there are emotional distress

25 damages that are a part of this case, so, obviously, those

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

1  records are relevant and discoverable.  So I guess my question

2  to you, then, is, once the Court ruled, then a revocation of

3  saying you can't produce documents is different than saying you

4  can't produce them now.  Does that --

5        **MS. McKENNA:**  Absolutely, your Honor.  And in the

6  attorneys that I've been interviewing, again, not trying to

7  waive privilege, I think that they would -- I've been told that

8  there would be -- try to be a limitation on the authorization,

9  and so I would want whoever -- hopefully I get an attorney -- I

10  would want them to address that issue going forward.

11        I personally don't do employment or any of these

12  cases.  I don't know -- I have not researched the case law on

13  whether a limitation of such an authorization would be the

14  case, but at this point I'm just trying to make sure I preserve

15  if I was told that by an attorney and I don't want to now sign

16  it and then lose any opportunity, but I'm happy to -- I'm happy

17  to do whatever this Court wants me to do.

18        **THE COURT:**  Okay.

19        **MS. GORDON:**  Your Honor, if I may just have a

20  follow-up on that point?

21        **THE COURT:**  Yes.

22        **MS. GORDON:**  So, the problem now is, of course,

23  according to what plaintiff just said, we would have to now

24  create new subpoenas, she would decide whether or not she was

25  going to sign another HIPAA release and we're going to have to

1  serve from scratch and she wants her new attorneys to review

2  it.  I mean, that ship has sailed.  You can't just continue to

3  change your mind in the middle of litigation.  She had counsel

4  at the time, counsel she claims she now wants to remain in the

5  case and representing her.  So I think what she did is

6  potentially sanctionable, but I think the Court should order

7  that she immediately sign another HIPAA release, unless she's

8  withdrawing her damages claim, or we can brief this in more

9  detail.

10          **THE COURT:**  I don't think briefing is necessary.  I

11  mean, I do think that the position of the Court is that you

12  can't revoke an authorization.  I understand that there may be

13  an issue of timing, as you said was a conversation, but to

14  revoke an authorization that was validly issued for documents

15  that are relevant and discoverable in this case, I do think is

16  an issue that the Court takes issue with.  And I understand

17  that the representation, Ms. McKenna, is that it was done at

18  the direction of that party because of the timing, but I do

19  agree that this is a ship that has sailed.  Right?  These are

20  validly-issued subpoenas.  They were issued based on the claims

21  that you raised in your compliant, and so I would say that the

22  Court is going to order you to reissue that authorization so

23  that the provider can release those records, because at this

24  point, they're not responding to a validly-issued subpoena at

25  your direction, and that is, to me, an interference with a

1  validly-issued subpoena in this case.

2          And so the Court will give you -- I mean, I would say

3  that that's something that needs to be done immediately.  So

4  it's the 25th; the Court would order you to do that by close of

5  business tomorrow, to reissue that.

6          Defense counsel, I know that that subpoena was issued

7  by defense counsel.  To the extent that you need any

8  intervention from the Court to direct that provider to be able

9  to respond, I'm happy to do that in writing if necessary.

10  Please just contact us and let us know if that becomes an issue

11  that they're saying they can't respond to the subpoena based on

12  that.

13          But with respect to kind of the timing and where we

14  are --

15          **MS. GORDON:**  I'm sorry, Judge.

16          **THE COURT:**  Go ahead.

17          **MS. GORDON:**  One other thing before you move on.

18  It's Ms. Fox's records that we have the subpoena served on her.

19  She is Ms. McKenna's partner.  As you may recall with regard to

20  my clients, our theory of the case, in large part, is with

21  regard to the termination.  Ms. McKenna and Ms. Fox had started

22  a brand new law firm before she ever went to my clients and

23  sent this letter to them on a Saturday saying that if terms

24  could be worked out, she was -- she was separating or she was

25  separating -- she was, in fact, separating.  Hence, we've

1   subpoenaed Ms. Fox for information.  That subpoena is out there

2   and live, but we've gotten no response, and I think Ms. Fox

3   should be ordered -- she's here in the courtroom today -- to --

4   no objections have been filed -- to go ahead and supply the

5   information in response.

6           **THE COURT:**  Okay.  And I'm going to address that

7   because with respect to the timing, the Court is going to find

8   that -- I don't see a reason that third-party discovery needs

9   to stop in this case.  I understand that Ms. McKenna needs some

10  more time to get a lawyer.  I would not ask Ms. McKenna to sit

11  for a deposition or to be able to respond to anything with

12  respect to her, personally, but the third-party discovery in

13  this case does not need to stop.  I think we have more than

14  enough time for discovery before a discovery deadline is even

15  impending.

16          So what I am going to do is, I am going to stay

17  discovery.  I'm not staying this case completely.  I am going

18  to stay discovery as it relates to plaintiff's discovery, and I

19  will do that for a period of 60 days.  I will ask that

20  Ms. McKenna in 30 days file a status report with the court to

21  let us know the status of where you are in seeking new counsel.

22  That would mean that the deposition scheduled, I believe, in

23  August will be postponed, Ms. McKenna's deposition.  That does

24  not mean any other deposition cannot go forward.  I am not

25  going to stay third-party discovery in this case.

          *24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

Page 40

1    I agree with the defense counsel that this case has
2  been pending for quite some time.  I do understand that we are
3  just now getting to a point where we've just had a case
4  management conference after some briefing of motions and
5  amended complaints, but it will be the order of the Court that
6  third-party discovery will continue.  The discovery will be
7  stayed as to Ms. McKenna, personally, with -- for 60 days.
8  Ms. McKenna will file a report with the Court in 30 days as to
9  the status of seeking new counsel.  The case, in and of itself,
10  is not stayed.

11    And so the motion to withdraw as counsel, ECF No. 54
12  is going to be granted in part.  I will release just, like, a
13  one-pager just to summarize, you know, for the reasons stated
14  on the record and what the order of the Court is, but my order
15  of the Court will be that Ms. McGinn and Ms. Kalahar will be
16  granted leave to withdraw.  Ms. McKenna will be granted 60 days
17  to seek new counsel and is to file a report of status within 30
18  days as to where things stand with respect to that.  If, after
19  receiving that point in 30 days, we need to have any follow-up
20  status conferences or conversations, I will probably schedule
21  that just with the parties on the phone, and that discovery
22  will be stayed as to plaintiff only for a period of 60 days.
23  All third-party discovery will continue pending resolution of
24  Ms. McKenna seeking new counsel.  And so that's going to be the
25  order of the Court.

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 41*

1    With respect to the third-party discovery as to any

2 outstanding subpoenas, I do recognize I don't want to put

3 Ms. -- I don't even -- what's your name?

4         **MS. FOX:**  Amanda fox.

5         **THE COURT:**  Ms. Fox, I don't want to put you on the

6 spot.  Obviously, you did not come here to have to address a

7 motion to compel or anything of that nature, but I will at

8 least instruct counsel, you're here in the courtroom, so I am

9 going to instruct that counsel can follow up.  All third-party

10 subpoenas are valid and issued, and if you're not responding to

11 those, then counsel can seek a motion to compel as well as a

12 show cause in the court as to why a response has not been

13 provided to a validly-issued subpoena in this case.  Okay?

14        **MS. FOX:**  Understood.  Thank you.

15        **THE COURT:**  And that, I believe, covers where we are.

16    Does anybody else have anything else to raise for the

17 court?

18    I know there were a couple of housekeeping matters

19 that you brought up, Ms. Gordon.  Do we need to address

20 anything additionally?

21        **MS. GORDON:**  I believe they've been covered, your

22 Honor.  Thank you.

23        **THE COURT:**  Okay.  Thank you.

24    And, Mr. Schwartz, I did see you stand, so --

25        **MR. SCHWARTZ:**  Yes.  I just want to know whether or

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 42*

1   not I am now terminated from this situation.

2        **THE COURT:**  Your representation is terminated as we

3   have dealt with the motion to withdraw as counsel, and thank

4   you for coming in for this particular motion.

5        **MR. SCHWARTZ:**  Thank you, your Honor.

6        **THE COURT:**  Thank you.

7        **MS. McKENNA:**  Your Honor, I would just ask that I

8   receive a full and complete copy of my file so that I can

9   obtain a new attorney.

10       **MR. CRANMER:**  Your Honor, we'll certainly provide

11  that, and on behalf of my clients, they will cooperate fully

12  with whomever it is that Ms. McKenna decides to engage as new

13  counsel.

14       **THE COURT:**  Yes.  That's perfectly fine.  Thank you

15  for that, Mr. Cranmer.

16       I would just ask, you know, Ms. McGinn and Kalahar,

17  to the extent over these 60 days you need to correspond with

18  Ms. McKenna or any potential new counsel, we would just ask

19  that you cooperate in doing so.

20       **MR. CRANMER:**  All right.  And, your Honor, I believe

21  my -- with the Court's permission, my engagement or appearance

22  would be terminated as well.

23       **THE COURT:**  Absolutely, Mr. Cranmer.  Again, as we've

24  resolved this motion, and I believe both of you came in with

25  the limited appearance to address this motion to withdraw, your

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Motion to Withdraw and for Temporary Stay*
*Wednesday, June 25, 2025*

*Page 43*

1    representation will be terminated as well.

2            **MR. CRANMER:**  Thank you, your Honor.

3            **THE COURT:**  Thank you.

4            Thank everyone.  Have a wonderful afternoon.

5            **THE CLERK:**  Please rise.

6            Court stands in recess.

7        (At 12:10 p.m., proceedings adjourned.)

8                        -   -   -

9                **C E R T I F I C A T I O N**

10            I certify that the foregoing is a correct

11   transcription of the record of proceedings in the

12   above-entitled matter.

13

14   s/ Timothy M. Floury, CSR-5780        7/1/2025
     Timothy M. Floury, CSR-5780           Date
15   Official Court Reporter

16                        -   -   -

17

18

19

20

21

22

23

24

25

          *24-12347; Elyse McKenna v. Robert F. Riley, et al.*