UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

ELYSE McKENNA,

    Plaintiff/Counterclaim Defendant,

  -vs-                              Case No. 2:24-CV-12347

ROBERT F. RILEY, et al,

    Defendants/Counterclaim Plaintiffs.

_____/

VIDEOTAPED DEPOSITION

DEPONENT:  ELYSE McKENNA
DATE:      Wednesday, December 10, 2025
TIME:      9:18 a.m.
LOCATION:  KIENBAUM HARDY VIVIANO
           PELTON & FORREST PLC
           280 North Old Woodward Avenue, Suite 400
           Birmingham, Michigan
REPORTER:  Karen Fortna, CRR/RMR/RPR/CSR-5067
VIDEO:     Bailey Wellman
JOB NO:    48239



Fortz Legal Support
www.FortzLegal.com
844.730.4066

1  that physician prescribed Xanax in the event you
2  had an anxiety issue; is that correct?
3              MS. RUSSELL:  Counsel, when she finishes
4  this question, I would like to say something on the
5  record, but I just want to say that.
6              THE WITNESS:  My testimony is that I
7  don't recall everyone that I would have spoken to.
8  I do recall that primary care providers in their
9  general practice, they ask you, and if they would
10 have asked me if I was anxious, I believe I would
11 have told them at times that I had occasional
12 problems.  I do not know when a -- I do not recall
13 when a prescription for Xanax was -- I don't know
14 when that was prescribed.  I think it was in the
15 timeframe that you've stated, but I don't recall
16 exactly and I don't recall other people that I
17 would have talked to.
18             MS. RUSSELL:  Is your answer finished?
19             THE WITNESS:  Yes.
20             MS. RUSSELL:  Okay.  Ms. Hardy, prior to
21 this deposition, it was represented to the Court
22 and to plaintiff that HIPAA authorizations and
23 medical records were necessary to prepare for this
24 dep.  There was exactly one notice of intent to
25 serve a subpoena on Ms. Gemma Haynes, even though

```
 1    we served -- we produced HIPAA authorizations for
 2    14 providers.
 3              If you all have served subpoenas and not
 4    produced -- first of all, not given us your notice
 5    of intent to serve subpoenas and not produced the
 6    information that you received, that's a problem.
 7              MS. HARDY:  Are you --
 8              MS. RUSSELL:  I just want that on the
 9    record as a standing objection to this line of
10    questioning.
11              MS. HARDY:  First, let me speak to this.
12    This is the first issue I'm going to warn you
13    about.  That did not -- statement did not belong in
14    this deposition.  You are wasting time in a
15    seven-hour deposition trying to raise your
16    discovery disputes and somehow prompt an argument.
17    That is inappropriate.
18              MS. RUSSELL:  I'm stating it on the
19    record.
20              MS. HARDY:  That is issue No. 1 that's
21    going on my list for issues to raise with the
22    Court.
23              MS. RUSSELL:  Go ahead.
24              MS. HARDY:  It will be in our sanctions
25    motion.
```

```
 1                 MS. RUSSELL:  What I just stated on the
 2        record will be in our sanctions motion as well.
 3                 MS. HARDY:  It's interfering
 4        inappropriately with this deposition to start
 5        debating discovery disputes.  That will not be
 6        acceptable here or else you'll see it in a motion.
 7                 MS. RUSSELL:  It was simply a statement
 8        on the record about --
 9                 MR. DAVIS:  A false statement.  Check
10        your emails because it was served, Ms. Russell.
11        Your statement is false and incorrect and we have
12        the evidence of it, so let's move on.
13                 MS. HARDY:  Tom, let's move on because I
14        don't want to spend time on this record --
15                 MR. DAVIS:  Yeah.
16                 MS. HARDY:  -- debating discovery
17        disputes.
18                 MR. DAVIS:  Correct.
19   BY MS. HARDY:
20   Q.   All right.  Did you seek in-patient treatment for
21        mental health services or emotional problems prior
22        to your employment with the Riley & Hurley law
23        firm?
24   A.   In-patient, meaning going to a hospital to seek --
25   Q.   A treatment center, a hospital where you would
```

```
 1        Rick?
 2   A.   I don't recall any others off the top of my head,
 3        but he might have sent me like the standard
 4        LinkedIn when someone has been somewhere for a
 5        year, "Congrats, you've been there for a year."  I
 6        don't know if -- I don't recall anymore.
 7   Q.   All right.  Do you have any texts or email messages
 8        with Rick Groffsky?
 9   A.   I do have text messages with Rick Groffsky; I don't
10        recall any emails that I have or don't know of any
11        emails that I have with Rick Groffsky.
12                  (Marked for identification:
13                   Deposition Exhibit No. 2.)
14                  MS. HARDY:  Let the record reflect I'm
15        showing the witness Exhibit No. 2 which is an
16        employment offer from Sommers Schwartz, providing a
17        copy to counsel.
18                  MS. RUSSELL:  Counsel, will you be
19        producing these electronically or are we just
20        getting a hard copy?
21                  MS. HARDY:  I believe these are
22        subpoenaed documents that came in response to a
23        subpoena.  You have not requested subpoenaed
24        documents.
25                  MS. RUSSELL:  You have an obligation to
```

```
 1    turn them over if you've gotten them through a
 2    subpoena.
 3                MR. DAVIS:  That's not true; that's
 4    absolutely not true, and I'll give you chapter and
 5    verse if you want it after.
 6                MS. HARDY:  Just not on this record.
 7                MR. DAVIS:  Not on this record, but I
 8    will be more than happy to let her know.
 9                MS. RUSSELL:  You can spend your time
10    however you want on your dep time.
11                MS. HARDY:  I'm sorry, it's an October 1,
12    2019, employment offer to Elyse Heid from Joseph
13    Bourgon, chief executive officer.
14                MS. RUSSELL:  I'm sorry, counsel;
15    Ms. Gordon, do you have a copy of this?
16                MS. HARDY:  Why don't you send that
17    down --
18                MS. GORDON:  I'm not answering your
19    questions today.  Sorry.
20                MS. RUSSELL:  So you're not answering
21    whether or not you have a copy of this independent
22    of this deposition?
23                MS. GORDON:  I'm not answering your
24    questions today, no.
25                MS. RUSSELL:  Okay.  I just want the
```

```
 1          know, counsel.
 2                    THE WITNESS:  These are the photos --
 3          these are all the photos I took of the iPad.
 4   BY MS. HARDY:
 5   Q.     And those are all the photos that you are aware of
 6          that you're claiming Bob Riley took of you?
 7   A.     These are the photos that I know of as I sit here
 8          today that Bob Riley took of me.  I saw other
 9          photos on his iPad and I didn't get pictures of
10          every photo on the iPad, so I don't have more --
11   Q.     Were there other photos of you on the iPad?
12   A.     Yes.
13                    MS. RUSSELL:  For the record, we've had
14          no photos produced from your iPad from what we
15          know.
16                    MR. DAVIS:  What?
17                    MS. HARDY:  That's not correct.
18                    MR. DAVIS:  You really need to review the
19          production which you said on the phone you didn't
20          review because that is just a false statement,
21          Ms. Russell.  We produced a lot of photos that were
22          requested, so please review it again.
23   BY MS. HARDY:
24   Q.     Did you see on your photo any -- any photos of you
25          that were any different in nature than these
```