UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ELYSE MCKENNA,

      Plaintiff,

v.

ROBERT F. RILEY et al.

      Defendants.

Case No. 24-cv-12347

Hon. Brandy R. McMillion

Magistrate Judge Elizabeth A. Stafford

---

**Defendants/Counterclaim Plaintiffs Riley and Riley & Hurley P.C.'s Motion for Sanctions and Fees Under Rule 37 and to Compel Compliance with Court Orders**

Defendants/Counterclaim Plaintiffs Robert F. Riley and Riley & Hurley, P.C. (the "Riley Parties") move this Court for dismissal as a Rule 37 sanction, or other sanctions in the alternative if dismissal is not granted, along with enforcement of the Court's orders. The Riley Parties also seek an award of fees against Plaintiff and her counsel for their discovery violations. The Court authorized this motion, pursuant to its internal protocols, on December 8, 2025.

By:*/s/Thomas J. Davis*
KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.
Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com
*Attorneys for Robert F. Riley and Riley & Hurley, P.C.*

Dated: December 22, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ELYSE MCKENNA,                           Case No. 24-cv-12347

      Plaintiff,                         Hon. Brandy R. McMillion

v.

ROBERT F. RILEY et al.                   Magistrate Judge Elizabeth A. Stafford

      Defendants.

---

**Defendants/Counterclaim Plaintiffs Riley and Riley & Hurley P.C.'s Brief in
Support of Motion for Sanctions and Fees Under Rule 37 and to Compel
Compliance with Court Orders**

## Statement of Issues Presented

**1.      Dismissal for Willful Disregard of Orders.** Federal Rule of Civil Procedure 37(b) authorizes dismissal when a party willfully violates court orders and prejudices the defense. Despite three Court orders compelling discovery, Plaintiff Elyse McKenna has withheld critical ESI, submitted other ESI in an improper format, fabricated timestamps, and coordinated with witnesses to evade subpoenas. Should this Court dismiss McKenna's claims for her willful, bad-faith discovery obstruction and disregard of Court orders?

**2.      Alternative Sanctions.** Courts may impose contempt sanctions and adverse inferences to coerce compliance and cure prejudice caused by discovery misconduct. If the Court does not dismiss the action, should it instead: (1) compel full production within 10 days under threat of automatic dismissal; (2) hold McKenna and counsel in contempt; (3) bar evidence regarding witnesses with missing ESI; (4) hold certain facts established; and (5) order her re-deposition?

**3.      Mandatory Attorneys' Fees.** Federal Rule of Civil Procedure 37(b)(2)(C) requires courts to award attorney's fees caused by disobeying discovery orders unless the failure was substantially justified. McKenna and her counsel have willfully violated three separate Court orders, forcing Defendants to file repeated motions to obtain basic evidence. Independent of the ultimate sanction imposed, should the Court order McKenna and her counsel to pay the fees Defendants incurred fighting this misconduct since October 1, 2025?

## Controlling or Most Appropriate Authority

Fed. R. Civ. P. 37(b)(2)(A)(v) (authorizing dismissal for failure to obey a discovery order).

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii) (authorizing alternative sanctions, including adverse inferences, evidentiary bars, and contempt).

Fed. R. Civ. P. 37(b)(2)(C) (mandating payment of reasonable expenses and attorney's fees).

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639 (1976) (dismissal sanction has dual purposes of penalizing the offending party *and* deterring other litigants from disregarding discovery orders).

*United States v. Reyes*, 307 F.3d 451 (6th Cir. 2002) (establishing the four-factor test for dismissal sanctions: willfulness, prejudice, warning, and consideration of lesser sanctions).

*Harmon v. CSX Transp., Inc.*, 110 F.3d 364 (6th Cir. 1997) (holding that a "clear record of delay and contumacious conduct" justifies dismissal).

*Bass v. Jostens, Inc.*, 71 F.3d 237 (6th Cir. 1995) (defining "willfulness" as a conscious and intentional failure to comply).

*Schafer v. City of Defiance Police Dep't*, 529 F.3d 731 (6th Cir. 2008) (defining prejudice as the inability to secure information, forcing a party to waste time and money).

# Table of Contents

Statement of Issues Presented ........................................................................ i

Controlling or Most Appropriate Authority ................................................ ii

Introduction .......................................................................................................1

Background .........................................................................................................2

    A.    The Discovery Requests: Riley seeks the full picture of
McKenna's communications. ..................................................2

    B.    The Stonewall: McKenna claims "privacy" to hide
evidence. ........................................................................................3

    C.    The Smoking Gun: Subpoenas reveal what McKenna's
hiding. ............................................................................................3

    D.    New Counsel, New Strategy: Delay by any means
necessary. ......................................................................................4

    E.    McKenna defies the Court order with a sparse,
improperly formatted production that omits key witness
communications ...........................................................................5

    F.    Rather than cure the deficiencies, McKenna violates yet
another order and launches baseless retaliatory attacks on
Riley's counsel. ............................................................................6

    G.    McKenna Actively Obstructs Third-Party Subpoenas. ........8

    H.    The Gemma Haynes Shell Game. ...........................................9

    I.    McKenna Still Refuses to Produce Critical ESI and Other
Missing Documents After Being Warned of this Motion. ...10

        1.    Lay Witnesses (Communications Definitely Exist) ................11

        2.    Lay Witnesses (Communications Almost Certainly
Exist). ...........................................................................................11

        3.    Attorney Witnesses (Privilege Waived by Court
Order). ...........................................................................................11

　　　　4.　　"Missing" documents that McKenna admits exist....................12

Argument.................................................................................................13

I.　　Dismissal is the only sanction that fits McKenna's willful
　　　obstruction. ....................................................................................13

　　　A.　　Factor 1: McKenna's non-compliance is willful, tactical,
　　　　　　and in bad faith. ...................................................................13

　　　　　　1.　　She has withheld known evidence. ...........................13

　　　　　　2.　　She has manipulated the record. ..............................14

　　　　　　3.　　She has interfered with subpoenas...........................15

　　　　　　4.　　She has resorted to a "schoolyard" defense and retaliatory
　　　　　　　　　motions practice. .......................................................15

　　　　　　5.　　McKenna's current non-compliance fits an existing pattern....16

　　　B.　　Factor 2: The Riley Parties have been forced to litigate in
　　　　　　the dark. .................................................................................17

　　　C.　　Factor 3: McKenna has been warned. ...................................17

　　　D.　　Factor 4: Lesser sanctions are insufficient because
　　　　　　McKenna has already ignored them.....................................18

II.　　Alternatively, the Court should issue alternative sanctions under
　　　Rule 37, including an order that the Court will dismiss the case
　　　if McKenna does not fully produce within 10 days, and
　　　additional deposition time. ...........................................................19

　　　A.　　The Court should automatically dismiss if full production
　　　　　　is not made within 10 days, and allow the re-deposition
　　　　　　of McKenna. ..........................................................................19

　　　B.　　The Court should treat McKenna and Russell's failure to
　　　　　　produce the discovery as contempt, and sanction both for
　　　　　　their misconduct. ..................................................................20

C.  McKenna should be prohibited from introducing evidence or testimony from witnesses for whom she failed to produce ESI. ...........................................................20

D.  The Court should deem certain facts established under Rule 37(b)(2)(A)(i). ..............................................................21

III.  Finally, the Court should order McKenna and Russell to pay, jointly and severally, all attorneys' fees incurred by Riley since October 1, 2025. ..........................................................................22

## Introduction

Fifteen months ago, Elyse McKenna launched this lawsuit, injecting damaging accusations against Robert Riley into the Detroit legal community. Since then, she has systematically obstructed the Riley Parties' ability to obtain evidence that would disprove them. She maintains her obstruction in the face of multiple Court orders compelling her to produce ESI and waived attorney-client communications.

While McKenna offered a trickle of documents to stave off sanctions, these productions are so rife with deficiencies, unexplained redactions, and technical manipulation that they are almost useless. Worse, they fall far short of the scope of the Riley Parties' discovery requests. Despite listing dozens of substantive witnesses in her initial disclosures—many of whom she had "communications about the events at issue" with—she has produced nothing for most of them. And despite this Court's order that she waived attorney-client privilege regarding lawyers she consulted before filing this suit *pro se*, she has failed to produce a *single* attorney document.

Rather than curing these defects, McKenna has resorted to a "you did it too" defense, falsely attacking Riley's discovery practice to excuse their own willful obstruction. She has also coordinated with friendly witnesses to block Riley from obtaining via subpoena the very evidence McKenna refuses to produce herself.

This misconduct—ignoring orders, producing manipulated records, withholding known evidence, and obstructing subpoenas—warrants the strongest

possible sanctions. Defendants move for dismissal of McKenna's claims with prejudice under Rule 37(b). Short of that, the Court should issue a wide range of other sanctions under Rule 37, and order that McKenna's failure to comply in full with the Order's terms will result in immediate dismissal.

## Background

### A.    The Discovery Requests: Riley seeks the full picture of McKenna's communications.

Nearly a year ago, the Riley Parties served comprehensive discovery requests designed to capture the full scope of McKenna's communications regarding the alleged wrongdoing. It also sought communications related to Riley's counterclaims, including McKenna's hacking into Riley's devices and her smear campaign designed to destroy his reputation. *See* Ex. A. The requests were unambiguous:

- **Request No. 1:** All documents concerning the complaint's factual allegations.

- **Requests No. 2-8:** Documents, including "any communications with anyone," about the alleged harassment, retaliation, breach of contract, stalking, infliction of emotional distress, intrusion, and conspiracy.

- **Requests No. 29, 33, and 39:** Documents related to the June 2023, September 2023, and June 2024 conferences featured in McKenna's complaint against Riley, including all communications with anyone about those events;

- **Request No. 46:** Documents concerning "any allegations of misconduct you made about Riley at any point in time from 2019 to the present," including communications with the PHPA, the Detroit News, and lawyers she approached for representation.

**B.** **The Stonewall: McKenna claims "privacy" to hide evidence.**

In May 2025, McKenna's then-counsel Kathleen Kalahar served objections that signaled the obstruction to come. Ex. B, Responses. For Riley's critical requests, McKenna offered only a vague promise to produce "responsive, non-privileged, relevant" emails and text messages "as soon as reasonably practicable." *Id.* at pp. 5-6. Simultaneously, McKenna objected to producing her private communications with "friends, family, or support persons concerning the factual allegations in Plaintiff's Complaint." *Id.* at 4-5 (Resp. 1); *id.* at 7-75 (repeating same objections).

McKenna accompanied these objections with two sparse productions totaling roughly 600 pages: the "OMP production" (PL00001-00485) and the "Riley Production" (PL00486-600). The Riley production contained *zero* text messages, and *zero* emails between Riley and McKenna.[1] Instead, it consisted of photos of greeting cards and notes, a brief marked up by Riley, and screenshots of electronic calendars. Most notably, McKenna produced photos she took of Riley's iPad screen after her unauthorized access, but withheld all communications about that access.

**C.** **The Smoking Gun: Subpoenas reveal what McKenna's hiding.**

The Riley Parties immediately sent a deficiency letter, rejecting the notion that Plaintiff could withhold relevant communications with "friends, family, or

---

[1]The OMP production did contain some texts with OMP attorneys and a small handful of emails involving the PHPA client that McKenna shared with Riley.

support persons" about the allegations of the case. *See* Ex. C, May 22, 2025 Deficiency Letter to Kalahar. Ms. Kalahar conceded her client's objection was invalid and promised a production by June 16. *See* ECF No. 83, PageID.2430-2433.

A hint at the nature of the withheld communications came on June 3, 2025 when Riley obtained communications from one of those "support persons" – McKenna's ex-husband Brandon Heid. These August 2021 group chats between McKenna, Heid, Julian Wettlin, and "Jess" revealed McKenna (1) admitting to "hacking" Riley's iPad; (2) sharing images McKenna took of Riley's device; and (3) instructing Jess to "stalk" Riley online. *See* Ex. D, Heid-Produced Texts.

Six days later, Kalahar moved to withdraw as counsel. ECF No. 54.

### D. New Counsel, New Strategy: Delay by any means necessary.

Over the Riley Parties' objection, McKenna obtained a stay until September 25, 2025. When the stay lifted, the Court ordered that no further stays would be granted. ECF No. 86. Although the Riley Parties reminded McKenna (then *pro se*) of the outstanding deficiencies, she produced nothing. Ex. E, Sept. 25, 2025 Deficiency Letter. So Riley requested a motion conference.

On October 5, 2025, attorney Kimberly Russell entered the picture. Her strategy was delay by any means necessary:

- Ms. Russell claimed that discovery demands were "premature," requested a 21-day stay to "review the docket," and asked to adjourn a planned October 9 or 10 conference. The Court instead ordered a meet-and-confer. Ex. F, Oct. 3-6, 2025 Pre-Motion Conference Emails.

-4-

- During the meet-and-confer, Ms. Russell agreed to produce all ESI by October 31. Riley's counsel prepared a stipulation. The next day, she reversed course: "After careful consideration, Plaintiff's Counsel is unwilling to stipulate to any discovery dispute. This includes my proposed edits to [the Riley Parties'] drafted stipulation." *See* Ex. G, Oct. 14, 2025 Email Chain re: Discovery Meet-and-Confer.

- When Defendants requested another conference, Ms. Russell emailed a "letter brief" demanding that the Court throw out the agreed-upon ESI plan, grant a 180-day discovery extension, issue a new 90-day stay (violating the prior Order), and jettison its pre-motion conference practice in favor of "papered motions" – something that would ensure each discovery dispute would require months to resolve.[2] Ex. H, Brief.

The Court rejected these tactics, ordering McKenna to produce all ESI by November 24, 2025. ECF No. 97, PageID.2512. Crucially, the Court also held that "Plaintiff waived the attorney-client privilege with respect to the communications she had with attorneys she consulted about filing this litigation" and ordered her to produce documents and answer questions on the topic. *Id.*

### E.    McKenna defies the Court order with a sparse, improperly formatted production that omits key witness communications.

At 12:55 AM on November 25, 2025, McKenna served a supplemental production. It consisted of what appeared to be printouts of Excel spreadsheets rather than the readable Decipher format required by the parties' ESI plan. *See* ECF No. 38, PageID.1703 (ESI Plan). And the timestamps were obviously false:

---

[2] Notably, the only thing McKenna *didn't* want delayed was a settlement conference. *See id.* That gives away the game: McKenna hoped that her false allegations about Riley would cause him to fold without her ever needing to fully engage in discovery.

- **Caitlin Barrett:** 47 pages of texts, all dated 2/26/2019 at 7:34:16 PM (before she began working for Riley)

- **Claire McKenna:** 15 pages of texts, all dated 6/5/2018 at 10:27 PM.

- **Parker Stinar:** 23 pages of texts, all dated 5/16/2023 at 10:14:19 PM.

- **Steve Hurbis:** 219 pages of texts, most of which had no timestamps.

*See* Ex. I, Excerpts of Nov. 25 Production. Because of the spreadsheet format and timestamp errors, it was impossible to determine whether full chains were produced or if McKenna had cherry-picked individual messages.

### F.   Rather than cure the deficiencies, McKenna violates yet another order and launches baseless retaliatory attacks on Riley's counsel.

The Riley Parties immediately notified the Court and McKenna of these deficiencies, with Riley detailing both the errors with the limited new production and its numerous omissions. *See* Ex. J, Nov. 25 Deficiency Email. The Court ordered McKenna to correct them by November 28 and for the Riley Parties to notify the Court of further deficiencies by December 3. *See* Nov. 25, 2025 Minute Entry.

McKenna missed the mark again. She produced texts from three more people: Robert Riley, Judith McKenna, and R&H employee Sonia Mullins.[3] But again she stripped them of utility. In violation of the parties' ESI plan, these texts were not produced in a readable format, and lacked all attached images. And though the documents contained redactions, she provided no log. Ex. K, Excerpts.

---

[3]In an apparent attempt to inflate the production volume, this supplement started at Bates No. 20,000, skipping over Bates Nos. 1159–19,999.

Anticipating the Riley Parties' December 3 report on her non-compliance, McKenna went on the offensive. At 9:20 pm on December 2—the eve of the Court's deadline—Ms. Russell attempted to derail the proceedings entirely. She sent the Court a letter demanding a "discovery master" and accusing Defendants of failing to "meet and confer" on issues that the Court had *already decided. See* Ex. L, Dec. 2, 2025 Russell Email & Attachment. On December 7, she followed up with a letter to the Court filled with false "you did it too" accusations. *See* Ex. M. But buried in that distraction was a stunning admission: McKenna had not even *reviewed* her communications with most of her witnesses. *Id.* at Ex. 2, p. 3 & n.3.

Her obstruction continues today. McKenna is preparing preemptive motions for sanctions *against Riley*, even though she neither served a deficiency letter nor obtained an order compelling production. Her basis for this motion appears to be a misunderstanding of the Federal Rules and the record, including (1) her claim that the Riley Parties hadn't given her subpoena notices, when they had; (2) her erroneous belief that the Riley Parties are obligated to provide her subpoena returns when she has not served Rule 34 requests for them; (3) her confusion as to the difference between the joint employer doctrine and a joint defense agreement; (4) her disregard of this Court's privilege rulings; and (5) her failure to review the actual production the Riley Parties made in discovery. *See* ECF No. 108, PageID.2586; Ex. N, Dec. 10 Pl's Dep. 17-18, 51-53, 156, 275-276, 291-293.

Moreover, the desire for delay has not abated. As recently as the December 8, 2025 pre-motion conference, Russell's co-counsel Keith Altman attempted to parlay a planned bad-faith motion to depose OMP's counsel Deborah Gordon into a stay of *all* discovery regarding McKenna's attorney-client privilege waiver, even though the Court had already ruled on the underlying issues. *See* ECF No. 48; ECF No. 97. The Court, rightfully frustrated, expressly rejected Altman's transparent delay tactic.

### G.    McKenna Actively Obstructs Third-Party Subpoenas.

While stonewalling her own production, McKenna also actively interfered with Riley's ability to obtain evidence from third parties.

On November 24, 2025, the Riley Parties asked Ms. Russell for the contact information of witnesses listed on McKenna's initial disclosures, as required by Rule 26. Ms. Russell refused in writing, stating: "Since you refuse to provide addresses for your disclosures, **we take the same position.**" Ex. O, Nov. 24, 2025 Email Chain re: Subpoenas. This refusal openly violated Rule 26(a)(1)(E), which states a "party is not excused from making its disclosures because... it challenges the sufficiency of another party's disclosures." Russell continued to refuse even after being provided this authority, and after being told that Riley's disclosures did comply. *See id.*

Forced to rely on public records, Riley subpoenaed the witnesses it could locate. Ms. Russell then coordinated with witnesses to ensure non-compliance:

- **Lauren Studley.** A senior partner at Ms. Studley's firm initially indicated she would comply. Ms. Russell then interjected, falsely promising to

-8-

produce the communications herself. When that failed, a new attorney appeared for Studley and filed objections—objections this Court already overruled. Ex. P, Dec. 3, 2025 Email Chain; ECF No. 106, 109.

- **Jared Smith.** Mr. Smith, McKenna's boyfriend and a lawyer, evaded service at his "business" address, a shared workspace. He then sent a taunting email to Riley's counsel quoting an *unfiled* pre-motion conference request about Smith's "resisting" the subpoena—something he could only have obtained from Russell or McKenna. He copied Russell on the email, who joined Smith in manufacturing reasons for noncompliance. Ex. Q.

- **The Stricken Pleading**. On December 3, 2025, Russell filed a "Letter Brief" on the docket (ECF No. 101) that stated it was filed "so that any third-party subpoena recipients may reference it" to resist Riley's subpoenas. The Court struck this pleading as violating Court protocols.

This obstruction largely worked. Studley hasn't yet produced. Smith has the subpoena but demands formal service even while his girlfriend hides his address. Pooja Patel, Jessica Phillips [*sic*], Claire McKenna, and Stinar remain unserved because public records are insufficient to locate them. And Caitlin Barrett, Ariel Kellersohn, and Julian Wettlin were all served but have not complied with the subpoenas, now overdue. Ex. X, Proofs of Service.

### H.    The Gemma Haynes Shell Game.

Hours before this motion was to be filed, the Riley Parties learned of even more brazen witness obstruction. On October 23, 2025, the Court ordered McKenna to "identify all of her mental health and medical treaters." ECF No. 97. Russell identified Gemma Haynes as plaintiff's "marital counselor," but claimed she couldn't locate her, then switched gears a few days later and claimed that Haynes

hadn't ever treated her. She persisted in this claim even though McKenna had identified Haynes as an individual treater in documentation from 2023. Ex. Y. Ultimately, the Court ordered McKenna to provide a HIPPA release for Haynes at a pre-motion hearing conference. *See* Ex. Z, Nov. 19 Conf. Request.

On December 22, Haynes' counsel responded to the subpoena and stated that Haynes possesses no records, and that McKenna's treatment records would be located at two specific facilities—facilities that McKenna did not disclose. *See* Ex. AA, Dec. 22 Email w/ attachments. Attached were texts showing: (1) that McKenna and Haynes were personal friends, belying the claim that McKenna couldn't locate her; and (2) a December 7, 2025 text message from Ms. Russell to Haynes advising her that she would be moving to quash the Haynes subpoena—*a subpoena the Court authorized* when ordering McKenna to send a HIPAA form. *Id.*

In short, this last-minute disclosure by Haynes' counsel shows that McKenna sent the Riley Parties on a wild goose chase for empty records while hiding the actual facilities in defiance of the October 23 Court order. Worse, Russell attempted to encourage Haynes' non-compliance with a subpoena.

## I.    McKenna Still Refuses to Produce Critical ESI and Other Missing Documents After Being Warned of this Motion.

As of this filing, the gaps in McKenna's production are massive:

1.    **Lay Witnesses (Communications Definitely Exist)**

- McKenna's initial disclosures admit she has had "communications" about "the events at issue" with **Dave Koukal, Sharon Vlahovich, Pooja Patel, Lauren Studley,** and **Jared Smith.** *See* Ex. R, Pl's Initial Discl. ¶¶ 34-36, 41, 43. She has produced **zero** ESI with any of them and has not provided addresses for any of them.

- Witnesses **Amanda Fox, Brandon Heid, Rick Groffsky, and Melissa Heinz** have confirmed communications with McKenna. McKenna has produced no texts or other ESI in her own possession from any of them. *See* Ex. D (Heid); ECF No. 89 (Fox); Ex. S (Groffsky); Ex. T (Heinz).

- Witness **Julian Wettlin** was a part of the group chat where McKenna admitted to "hacking" Riley's iPad. *See* Ex. D. McKenna has not produced any ESI with him, or his address for service of a subpoena.

2.    **Lay Witnesses (Communications Almost Certainly Exist).**

- **Ariel Kellersohn and Lisa Esser-Weidenfeller** were identified as having "discoverable information" on several topics, including "Plaintiff's experiences while employed at Riley & Hurley" and "how it has affected her." Ex. R, Pl's Initial Discl. ¶¶ 21, 28. It is implausible that none of these were in writing.

- **Jessica Phillips [*sic*]** was identified as having "discoverable information" on Riley's alleged "conduct toward Plaintiff while she was employed at Riley & Hurley." *Id.* ¶ 38. She is likely the "Jess" who McKenna asked to "stalk" Riley. *See* Ex. D. This witness's last name appears to be misspelled, and McKenna refuses to provide an address.

3.    **Attorney Witnesses (Privilege Waived by Court Order).**

The Court ruled that McKenna waived privilege regarding lawyers she consulted before filing suit. She has produced nothing from the lawyers who she consulted with before she filed her *pro se* complaint:

-11-

- **Matthew Besser**. McKenna contacted him in August 2021. Ex. U, OMP Dep of Pl. 149-150. Besser refuses to comply with the subpoena, but confirmed that McKenna would have their communications in her possession. *See* Ex. V.

- **Joe Medici**. He referred McKenna to Besser. Ex. U at 159. He was served. *See* Ex. X. He admitted during a phone call to Riley's counsel that he had text communications and would produce them, but then went silent, likely at McKenna's behest.

- **Ken Mogill** and **Sarah Prescott.** Hired in August 2023, before the *pro se* suit was filed. Despite testifying about why they declined to file suit, *id.* at 365-367, she has not produced any documents from them. Both have refused to comply with their subpoenas. Ex. W, Mogill Letter.

### 4.    "Missing" documents that McKenna admits exist.

On top of the above material, McKenna admitted to the existence of other responsive material, some of which was packed away until recently:

- **The journal.** In November, McKenna disclosed that she has "written poetry about this situation" in a "book of poetry… like a journal that's poetry." Ex. U, Nov. 17 Pl's Dep. 179-181.

  By December, she disavowed having a "journal," instead claiming she had poetry written in various scattered locations, including some that she saved electronically and had *provided to her attorney*. Ex. N, Dec. 10 Pl's Dep. 53-60, 64. Neither the hard copies nor ESI were produced.

- **The unsearched boxes.** McKenna also testified at her December 10 deposition that she had boxes of packed material that she has not yet reviewed, which might contain responsive materials. *Id.* at 75-78.

- **The Missing 115 Pages.** McKenna also vaguely referred to "115 pages of missing document production" that she blames prior counsel for losing. *Id.* at 75-78.

**Argument**

I.    **Dismissal is the only sanction that fits McKenna's willful obstruction.**

Federal Rule of Civil Procedure 37(b)(2)(A)(v) authorizes dismissal when a party "fails to obey an order to provide or permit discovery." In the Sixth Circuit, courts weigh four factors: (1) whether the non-compliance was willful or in bad faith; (2) whether the adversary was prejudiced; (3) whether the party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were considered. *See United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002).

Here, every factor screams for dismissal.

    **A.    Factor 1: McKenna's non-compliance is willful, tactical, and in bad faith.**

To support dismissal, the non-compliance must be due to "willfulness, bad faith, or fault," rather than mere inability to comply. *Reyes*, 307 F.3d at 458. Willfulness is defined as a "conscious and intentional failure to comply with the court order." *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995). A "clear record of delay and contumacious conduct" is sufficient to justify dismissal as an initial sanction. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364 (1997). Here, McKenna's failures were not a technical glitch or an oversight. It has been her strategy.

    **1.    She has withheld known evidence.** McKenna's *own disclosures* confirm she has had substantive communications with numerous key witnesses about "the events at issue." She has possession of the texts. Yet in the face of

-13-

document requests plainly covering those documents, and multiple Court orders to produce *all* responsive ESI, she produced zero texts for these key witnesses.

She likewise refuses to produce a single document from any of her ex-counsel, even though the Court held that she waived attorney-client privilege into those communications. Instead, she continues to lodge meritless privilege objections, claiming the Court was "vague." Ex. N, Dec. 10 Pl's Dep. 48-53, 156, 275.

**2.    She has manipulated the record.** When forced to supplement her production, she did not provide files as the parties' agreed-upon ESI plan requires. The production format used stripped texts of images, and populated at least three witnesses' logs with **false timestamps** that render them useless as evidence. And despite redacting her productions, she has not provided privilege logs despite this Court's making clear, in response to earlier discovery disputes, that privilege logs are required. *See* ECF No. 89, PageID.2456-2457.

This manipulation was a choice. In her December 7, 2025 letter, McKenna explicitly represented to the Court that her entire device was preserved. Ex. M, Letter Ex. 2, p. 3 & n.3. If true, she possesses the means to produce her ESI in compliance with the parties' ESI plan. Instead, she generated Excel spreadsheets with fake dates. She had no technical reason to create inaccurate spreadsheets from a preserved device. And should she claim a technical glitch, the fact remains that McKenna produced obviously incorrect data and refuses to correct it. That's no mistake.

**3.    She has interfered with subpoenas.** When the Riley Parties sought to obtain the missing evidence from third parties, McKenna's counsel actively interfered, instructing witnesses to resist service and filing an impermissible "Letter Brief" for the express purpose of signaling third parties not to comply. This Court has already stricken that brief as it violates Court rules. ECF No. 102. This led to witnesses like Studley and Medici (who had signaled an intent to comply) refusing to comply with the subpoenas. And McKenna's boyfriend Smith, in coordination with her counsel, has quoted unfiled court documents in his taunts to Riley's counsel.

Likewise, just today the Riley Parties obtained a text message from Ms. Russell to witness Gemma Haynes, advising Haynes that she would be moving to quash Haynes's subpoena—a subpoena that the Court had *authorized* only a few weeks earlier when ordering McKenna to provide a HIPAA release.

**4.    She has resorted to a "schoolyard" defense and retaliatory motions practice.** Rather than cure her deficiencies, McKenna resorts to distraction. She and her counsel have resorted to name-calling and retaliatory accusations to distract the Court from their own failures. She now plans to waste the Court's time with at least *three* meritless motions: (1) for sanctions against Defendants, despite her never having raised issues with Defendants' productions; (2) a motion to depose OMP's counsel, despite McKenna's last attempt to disqualify counsel being rejected as gamesmanship; and (3) a motion to amend the complaint *yet again* to resurrect long-

dismissed claims, and timed to avoid having McKenna deposed on the new claims.

McKenna will do anything with her time *except* follow this Court's orders.

### 5.    McKenna's current non-compliance fits an existing pattern.

McKenna's obstruction cannot be divorced from her broader misconduct, including:

- **Past Subpoena Obstruction.** McKenna surreptitiously rescinded HIPAA releases to medical providers Cranston and Gialanella to ensure that they would not comply with Riley subpoenas. The Court already held this to be "an interference with a validly-issued subpoena in this case." ECF No. 66, PageID.2158-2159.

- **Altering documents in defiance of Court orders.** McKenna unilaterally altered HIPAA releases for Cranston and Gialanella *after* the Court required her to reissue them (*See* ECF No. 79, PageID.2355). Cranston's records, once finally disclosed, contained damning evidence of McKenna's falsehoods.[4]

  Undeterred, she has run the same playbook with Gemma Haynes. She first hid the name, then resisted the HIPAA release, then unilaterally modified the release requiring further Court intervention. All of this was in service of delay and obstruction, as McKenna's records are with two different facilities (Eastwood and FairSky) that she failed to disclose. See Ex. AA.

- **Misusing privilege to block fact discovery.** McKenna coordinated with her law partner Fox on her subpoena productions, unilaterally refusing to produce material based on blanket "privilege" objections—conduct the Court found concerning (ECF No. 94, PageID.2498-2504).

- **Misuse of Court Procedures**. McKenna filed a motion to disqualify OMP's counsel which the Court held smacked of gamesmanship (ECF No. 48).

- **Lack of Candor to the Court**. When McKenna's first set of lawyers moved to withdraw, McKenna opposed it by falsely claiming she had no idea why

---

[4]McKenna alleges she was forced to leave Michigan due to Riley's all-powerful presence in the state. ECF No. 23 ¶ 12. The produced documents show McKenna disclosing that she was advised to leave Michigan as a settlement tactic by her lawyer—based on the timeframe, either Mogill or Prescott. The actual communication with that lawyer remains unproduced, despite the Court order.

they were withdrawing. ECF No. 66, PageID.2136-37. At the hearing on the motion, she admitted she was given extensive reasons why. *Id.* at 2141.

This is an unmistakable pattern of bad faith, delay, and contumacious conduct.

**B.    Factor 2: The Riley Parties have been forced to litigate in the dark.**

A party is prejudiced when it is unable to secure the information requested, and is forced to waste "time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008). The prejudice here is concrete and severe.

- **Evidentiary Prejudice:** Defendants have been forced to depose McKenna without the benefit of her contemporaneous communications. Indeed, when confronted with the absence of contemporaneous text messages accusing Riley of harassment, McKenna testified that the proof existed in the very text messages she refuses to produce. *See* Ex. U, Nov. 17 Pl's Dep. 135-138.

- **Financial Prejudice:** The Riley Parties have spent over $300,000 in legal fees, much of which was spent attempting to obtain basic discovery and, to date, has required over a dozen trips to this Court.

- **Reputational Prejudice:** This case involves inflammatory allegations of sexual harassment and professional misconduct. By stalling discovery, McKenna keeps these unproven clouds hanging over Riley's head while preventing them from obtaining the evidence to clear his name.

**C.    Factor 3: McKenna has been warned.**

Although a warning is not necessary when the "derelict party has engaged in bad faith or contumacious conduct," *Mager v. Wisconsin Cent. Ltd.*, 924 F.3d 831, 840 (6th Cir. 2019), McKenna has been warned. Defendants raised McKenna's history of discovery misconduct this summer as a basis for opposing her demands for additional delay. ECF No. 79 & 79-2. Although the Court ultimately granted her

one final extension of her stay, it made clear that the "case will be dismissed for failure to prosecute and follow the orders of the Court" if she did not proceed with a new lawyer or *pro se* by September 25, 2025. ECF No. 86, PageID.2452-53.

While she technically complied with that requirement, her new counsel has repeatedly attempted to delay and obstruct the prosecution of the case, reflecting the very failure to engage in ordinary discovery practice that warrants dismissal. Furthermore, as a lawyer, McKenna does not need a Court order to know that fabricating timestamps, disregarding Court orders, and coordinating with witnesses to evade service is sanctionable misconduct.

### D.    Factor 4: Lesser sanctions are insufficient because McKenna has already ignored them.

Dismissal is appropriate where a plaintiff displays "flagrant contempt" for the court and lesser sanctions would be futile. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997). Here, lesser sanctions have already failed.

- **Orders to Compel?** Ignored. The Court already ordered her to produce this ESI and to produce documents with her pre-filing attorneys. She didn't.

- **Monetary Sanctions?** Ineffective. Even knowing that Defendants would seek sanctions, McKenna's obstruction has only escalated.

- **Adverse Inferences?** Insufficient. Merely instructing a jury that missing texts *might* be bad for McKenna does not cure the prejudice of not knowing what those texts say—especially when texts that the Riley Parties have had to scratch and claw to obtain have contained damning evidence.

A new order will not succeed where the last three have failed. As the Supreme Court noted in *National Hockey League v. Metropolitan Hockey Club*, dismissal is

-18-

necessary not just to penalize the specific party, but to deter others who might be tempted to such conduct. 427 U.S. 639, 643 (1976). McKenna has made her choice. The Court should honor it by dismissing her case.

## II.    Alternatively, the Court should issue alternative sanctions under Rule 37, including an order that the Court will dismiss the case if McKenna does not fully produce within 10 days, and additional deposition time.

If the Court is not inclined to dismiss the case outright, the Riley Parties ask this Court to take the following steps under Rule 37 to mitigate the prejudice to the Riley Parties and deter further recalcitrance from McKenna's counsel.

### A.    The Court should automatically dismiss if full production is not made within 10 days, and allow the re-deposition of McKenna.

If the Court does not dismiss, the most immediate concern is avoiding McKenna profiting from her discovery non-compliance. The Court should thus order that McKenna produce *all* the material identified above, in the format required by the discovery plan, within 10 days of the Court's order. The Court should further order that if McKenna disobeys yet again, her case will be immediately dismissed.

Further, the Court's earlier ESI deadline was intended to ensure that the Riley Parties had McKenna's discovery production before her deposition. Her noncompliance ensured that the Riley Parties did not have that material.[5] The Court

---

[5] Due to the voluminous number of allegations and claims, the Riley Parties believe that they should be entitled to additional deposition time in any event. But that forthcoming request for additional time will be unnecessary if the Court orders additional discovery time as a sanction for her discovery violations.

should order that McKenna must appear in-person for an additional 4 hours of deposition time after the discovery has been produced.

**B. The Court should treat McKenna and Russell's failure to produce the discovery as contempt, and sanction both for their misconduct.**

Rule 37(b)(2)(A)(vii) states that the Court may treat the disregard of a discovery order as contempt of court. This contempt power permits a monetary sanction beyond the payment of attorney's fees to "deter future disregard of the Court's authority." *See Wells Fargo Bank, N.A. v. MPC Invs., LLC*, No. 09-CV-11249, 2010 WL 3488669, at *2 (E.D. Mich. Aug. 9, 2010). In addition to the attorneys' fees that are generally mandated by Rule 37(c), *see* Part III, *infra*, the Court should order a further monetary sanction against the contemnors in an amount the Court believes will deter further disobedience.

**C. McKenna should be prohibited from introducing evidence or testimony from witnesses for whom she failed to produce ESI.**

Rule 37(b)(2)(A)(ii) provides that a party violating a Court order may be prohibited from "introducing designated matters" into evidence. McKenna's initial disclosures set forth, in detail, the evidence that the third-party witnesses are supposed to testify about. Because McKenna has selectively produced evidence on these topics, and violated a Court order to produce the rest, she should be prohibited from introducing testimony or evidence from *any* source on the following topics:

- Brandon Heid's alleged "participation in communications with Donna MacKenzie about Bob Riley's sexual harassment of Plaintiff; MacKenzie's knowledge of Riley's conduct," (Ex. R ¶ 31);

- "The effects of Defendants' conduct on Plaintiff, including the observable impact that Defendants' conduct had on the plaintiff's well-being and quality of life and the decline in her emotional and mental health" (*Id.* ¶¶ 34, 35, 36, 41, 42);

- "The observable impact that Plaintiff's discovery of Riley's surreptitious photographs of Plaintiff had on Plaintiff." (*Id.* ¶¶ 38, 39).

**D.    The Court should deem certain facts established under Rule 37(b)(2)(A)(i).**

When a party withholds discovery material on certain topics, it is appropriate for the Court to deem certain facts admitted or issue adverse inferences arising from the withholding. *English v. 21st Phoenix Corp.*, 590 F.2d 723, 728 (8th Cir. 1979) (noting that this sanction should be tailored to address the material withheld). Here, while the full scope of the withheld material is unknown, McKenna has unquestionably refused to produce material on the following topics:

- **McKenna wrongfully accessed Riley's iPad.** The Riley Parties are aware—through material produced by Brandon Heid—that McKenna bragged to Heid and Wettlin that she "hacked" Riley's iPad and joked that "Jess" should "stalk" Riley online. McKenna has *not* produced any of these communications herself. It should be deemed established that McKenna improperly accessed Riley's device.[6]

---

[6]To be sure, this fact has essentially been proven already. McKenna gave tortured testimony trying to justify her misconduct, suggesting that Riley once let her access the device for work purposes, which in her mind meant he ran the risk that she could access it forevermore, at any time, for any purpose. McKenna knows she committed tortious—if not criminal—misconduct. Ex. N, Dec. 10 Pl's Dep. 202-208.

- **McKenna made no contemporaneous "harassment" or "stalking" claims**. When confronted with the lack of such text messages at deposition, McKenna defended this accusation by claiming she had texted Studley and others. Yet she refused to produce such texts. It should be taken as established that McKenna made no such accusations.

- **McKenna's prior counsel declined to sue because her claims lacked merit.** The Court's finding of waiver of privilege related to McKenna's express allegations that prior lawyers (1) said her claims had merit, but (2) were afraid to sue Riley. McKenna's failure to produce attorney communications should establish that these allegations are false, and that prior lawyers failed to sue because they felt her claims lacked merit.

## III.    Finally, the Court should order McKenna and Russell to pay, jointly and severally, all attorneys' fees incurred by Riley since October 1, 2025.

Rule 37(b)(2)(C) provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to produce. Here, McKenna's discovery failures have required multiple trips to this Court, and caused an inordinate amount of time and unjust expenses. The Court should order McKenna and Russell, jointly and severally, to pay the attorneys' fees incurred by the Riley Parties on all discovery matters from October 1, 2025 to the present.

## Conclusion

Elyse McKenna has treated this litigation as a weapon to embarrass Robert Riley, and the discovery rules as an obstacle to be ignored. There is no reasonable likelihood that a fourth court order will succeed where the first three failed. The Court should dismiss this case.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By:/s/Thomas J. Davis
Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

*Attorneys for Defendants/Counterclaim
Plaintiffs Robert F. Riley and
Riley & Hurley, P.C.*

Dated: December 22, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ Elizabeth Hardy
Elizabeth Hardy (P37426)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com