## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ELYSE MCKENNA**,

        Plaintiff,

Case No: 24-cv-12347

v.

Hon. Judge Brandy R. McMillion

**ROBERT F. RILEY,** *an individual,*
**RILEY & HURLEY, P.C.** *a domestic professional corporation,*
**OLSMAN, MACKENZIE, PEACOCK, P.C.** *a domestic professional corporation,*

        Defendants.

| |
|---|
| **DEFENDANT OLSMAN, MACKENZIE, PEACOCK P.C.'S MOTION FOR SANCTIONS UP TO AND INCLUDING DISMISSAL PURSUANT TO FEDERAL RULE 37** |

---

**The Russell Law Firm, PLLC**
Kimberly Russell
1140 3rd Street NE
Washington D.C. 20002
(202) 430-5085
kimberly@russellatlaw.com
***Attorney for Plaintiff***

**LAW OFFICE OF KEITH ALTMAN**
Keith Altman (P81702)
30474 Fox Club Drive
Farmington Hills, MI 48331
(248) 987-8929
keithaltman@kaltmanlaw.com
***Attorney for Plaintiff***

**Brown Legal Group PLLC**
Sammy Brown, Jr.
175 N. Union Street
P.O. Box 489
Canton, MS 39046
(601) 691-5017
slb@brownlegalgrouppllc.com
***Attorney for Plaintiff***

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Morry Daniel Hutton (P81188)
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
mhutton@deborahgordonlaw.com
***Attorneys for Defendant Olsman, MacKenzie, Peacock, P.C.***

**Kienbaum Hardy Viviano Pelton & Forrest, P.L.C.**
Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
280 North Old Woodward Avenue, Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com
***Attorneys for Defendants Robert F. Riley and Riley & Hurley, P.C.***

Defendant Olsman MacKenzie Peacock P.C., (hereinafter "Defendant OMP") through its attorneys, Deborah Gordon Law, hereby moves for sanctions against Plaintiff up to and including dismissal of her Second Amended Complaint in its entirety and attorney fees and costs based on Plaintiff's egregious violations of the Federal Rules of discovery and repeated violations of this Court's discovery orders pursuant to Fed. R. Civ. P. 37, and as fully set forth in his accompanying brief.

WHEREFORE, Defendant OMP requests that this Honorable Court dismiss Plaintiff's Second Amended Complaint in its entirety and with prejudice and order payment of OMP's attorney fees and costs pursuant to Fed. R. Civ. P. 37.

Dated: December 22, 2025       Respectfully submitted,

**DEBORAH GORDON LAW**
*/s/ Deborah L. Gordon*
Deborah L. Gordon (P27058)
*Attorneys for Defendant Olsman, MacKenzie, Peacock, P.C.*
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**

2

**/s/ Deborah L. Gordon**

Deborah L. Gordon (P27058)
*Attorneys for Defendant Olsman, MacKenzie, Peacock, P.C.*
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ELYSE MCKENNA**,

Plaintiff,

Case No: 24-cv-12347

v.

Hon. Judge Brandy R. McMillion

**ROBERT F. RILEY,** *an individual,*
**RILEY & HURLEY, P.C.** *a domestic professional corporation,*
**OLSMAN, MACKENZIE, PEACOCK, P.C.** *a domestic professional corporation,*

Defendants.

---

**DEFENDANT OLSMAN, MACKENZIE, PEACOCK P.C.'S BRIEF IN SUPPORT OF THEIR MOTION FOR SANCTIONS UP TO AND INCLUDING DISMISSAL PURSUANT TO FEDERAL RULE 37**

---

**The Russell Law Firm, PLLC**
Kimberly Russell
1140 3rd Street NE
Washington D.C. 20002
(202) 430-5085
kimberly@russellatlaw.com
***Attorney for Plaintiff***

**LAW OFFICE OF KEITH ALTMAN**
Keith Altman (P81702)
30474 Fox Club Drive
Farmington Hills, MI 48331
(248) 987-8929
keithaltman@kaltmanlaw.com
***Attorney for Plaintiff***

**Brown Legal Group PLLC**
Sammy Brown, Jr.
175 N. Union Street
P.O. Box 489
Canton, MS 39046
(601) 691-5017
slb@brownlegalgrouppllc.com
***Attorney for Plaintiff***

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Morry Daniel Hutton (P81188)
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
mhutton@deborahgordonlaw.com
***Attorneys for Defendant Olsman, MacKenzie, Peacock, P.C.***

**Kienbaum Hardy Viviano Pelton & Forrest, P.L.C.**
Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
280 North Old Woodward Avenue, Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com
***Attorneys for Defendants Robert F. Riley and Riley & Hurley, P.C.***

# TABLE OF CONTENTS

Index of Authorities ------------------------------------------------------------------v

I.     OVERVIEW ------------------------------------------------------------------1

II.    RELEVANT FACTUAL AND PROCEDURAL HISTORY ---------------2

    A. March – June 2025: Plaintiff's Discovery Responses are Severely Deficient------------------------------------------------------------------2

    B. May – December 2025: Despite Three Court Orders, Plaintiff Refuses to Provide HIPAA Releases for her Mental Health and Medical Treaters----------------------------------------------------------3

    C. October – December 2025: Plaintiff Violates the October 24, 2025 and November 25, 2025 Court Orders As To Attorney Consultations, ESI, and Other Supplemental Discovery ----------------------8

        1.  Plaintiff Willfully Violated Paragraph 8 of the October 24, 2025 Order------------------------------------------------------- 11

        2.  Plaintiff Willfully Violated Paragraph 7 of the October 24, 2025 Order by Refusing to Respond to OMP's Interrogatory 4 and Request to Produce 13 ------------------------------------- 11

        3.  Plaintiff Willfully Violated Paragraph 1 of the October 24, 2025 Order Because the Format of her November 25 and 28, 2025 Productions are Improper and Prejudicial----------------------- 12

        4.  Plaintiff Also Willfully Violated Paragraph 1 of the October 24, 2025 Order Because the Content of Plaintiff's November 25 and 28, 2025 Productions are Severely Deficient------------------- 13

            a.  Plaintiff Failed to Provide Electronically Store Communications -------------------------------------------- 13

            b.  Plaintiff Failed to Provide Other Outstanding Electronically Stored Information------------------------- 15

            c.  Plaintiff's Title VII Disparate Treatment Claim is Time-Barred------------------------------------------------- 19

i.    Communications with Current/Former OMP Employees.-------------------------------------------------- 16

ii.    Documents Concerning the PHPA Client. -------------------- 16

iii.    Records of Plaintiff's Purported Economic Damages and Mitigation. ------------------------------------------------- 17

iv.    Documents Concerning Plaintiff's Job Applications. -------- 18

v.    Calendars, Notes, Emails, Memoranda, Journals, and Other Documents.------------------------------------------------- 19

vi.    Documents Concerning Plaintiff's Move to Maryland. ------ 20

vii.    Documents Concerning Allegedly Disparaging Statements Made by OMP to Clients. -------------------------- 20

viii.    Documents Concerning Paragraphs 319, 361, 362 of the SAC---------------------------------------------------------- 21

ix.    Documents Concerning Plaintiff's Failed AAJ New Lawyers Board of Governors Campaign. --------------------- 22

x.    Documents Plaintiff Received from the EEOC Regarding OMP. ----------------------------------------------------- 23

D. Plaintiff's December 2, 2025 Supplemental Response to OMP's First Interrogatories and Requests to Produce is Severely Deficient-------- 23

1.    Interrogatory 7: Plaintiff refuses to provide the specific dates she contacted OMP clients. ------------------------------------- 23

2.    Interrogatory 9: Plaintiff refuses to identify or provide information concerning her previous complaints, reports, and/or allegations of sexual assault, abuse, and harassment.--------- 24

3.    Interrogatory 10: Plaintiff refuses to identify contact information for witnesses, and the information/allegation she believes they may have witnessed.-------------------------------------- 25

4.  Interrogatory 11: Plaintiff refuses to identify or provide any information regarding individuals she communicated with about the facts giving rise to this case before or after litigation was filed.------------------------------------------------------------------ 25

5.  Interrogatory 13: Plaintiff refuses to identify the date in 2024 she deleted and/or deactivated all of her social media accounts.------------------------------------------------------------------ 25

6.  RTP 7: Plaintiff refuses to produce documents and communications regarding her income from the PHPA.------------- 26

7.  RTP 24 and 34: Plaintiff refuses to provide documents and communications concerning the creation of Fox McKenna PLLC.------------------------------------------------------------------ 26

8.  RTP 31: Plaintiff refuses to provide her business agreements with Fox McKenna LLC and any other individual and/or corporate entity. ----------------------------------------------------- 28

9.  Plaintiff refuses to provide documents and communications concerning her failed campaign for AAJ New Lawyers Board of Governors.---------------------------------------------------------- 29

III.  LAW AND ARGUMENT-------------------------------------------------------- 41
A. Plaintiff's Case Should be Dismissed Pursuant to Fed. R. Civ. P. 37(b)-------------------------------------------------------------------------- 29

1. Plaintiff's Failure to Cooperate in Discovery is Due to Willfulness, Bad Faith, and her Own Fault----------------------------- 30

2. OMP Has Been Prejudiced by Plaintiff's Refusals to Cooperate in Discovery--------------------------------------------------------------- 32

3. Plaintiff Has Been Warned that Failure to Participate in Discovery Could Lead to Dismissal--------------------------------------- 33

4. Consideration of Less Drastic Sanctions -------------------------------- 35

B. Alternative Sanctions to Dismissal Are Warranted Under Fed. R. Civ. P. 37 and the Court's Inherent Authority-------------------------------- 37

C. OMP Should Be Awarded Monetary Sanctions and Attorney Fees for Plaintiff's Contumacious Conduct ------------------------------------------- 38

# INDEX OF AUTHORITIES

**Cases**

*Bank One of Cleveland, N.A. v. Abbe,*
  916 F.2d 1067(6th Cir.1990) ........................................................................ 36

*Barron v. Univ. of Mich.,*
  613 F. App'x 480 (6th Cir. 2015) ................................................................. 33

*Bass v. Jostens, Inc.,*
  71 F.3d 237(6th Cir. 1995) .......................................................................... 30

*Buck v. U.S. Dep't of Agric., Farmers Home Admin.,*
  960 F.2d 603 (6th Cir. 1992) ....................................................................... 34

*Carpenter v. City of Flint,*
  723 F.3d 700 (6th Cir. 2013) ....................................................................... 30

*Davis v. Am. Highwall Mining, LLC,*
  570 F. Supp. 3d 491 (E.D. Ky. 2020) .......................................................... 27

*Firneno v. Nationwide Mktg. Servs., Inc.,*
  No. 14-CV-10104, 2017 WL 9471685 (E.D. Mich. Mar. 20, 2017) ........... 25

*First Bank of Marietta v. Hartford Underwriters Ins. Co.,*
  307 F.3d 501(6th Cir. 2002) ........................................................................ 37

*Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd.,*
  No. 06–CV–13143, 2009 WL 998402 (E.D. Mich. April 14, 2009) ........... 26

*Harmon v. CSX Transp., Inc.,*
  110 F.3d 364 (6th Cir. 1997). ...................................................................... 32

*Kelmendi v. Hogan,*
  No. 24-1884, 2025 WL 2901498 (6th Cir. Oct. 7, 2025) ............................ 31

*Metz v. Unizan Bank,*
   655 F.3d 485 (6th Cir. 2011) ......................................................................... 31

*Morgan v. St. Francis Hosp.,*
   No. 21-5037, 2021 WL 9528124 (6th Cir. Nov. 9, 2021) ............................ 30

*Mulbah v. Detroit Bd. of Educ.,*
   261 F.3d 586 (6th Cir. 2001) ......................................................................... 30

*O'Dell v. Kelly Servs., Inc.,*
   334 F.R.D. 486 (E.D. Mich. 2020) ................................................................ 32

*Operating Eng'rs Local 324 Pension Fund v. Laramie Enters., Inc.,*
   No. 22-cv-10709, 2025 WL 52468 (E.D. Mich. Jan. 8, 2025) ..................... 34

*Shepard Claims Serv. v. William Darrah & Assocs.,*
   796 F.2d 190 (6th Cir. 1986) ......................................................................... 30

*Simmons v. Henry Ford Health System,*
   2023 WL 1767473 (E.D. Mich. Feb. 3, 2023) ............................................... 31

*State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC.,*
   2017 WL 11379855 (E.D. Mich. Dec. 15, 2017) .......................................... 10

*Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.,*
   2017 WL 1196361 (E.D. Mich. Mar. 31, 2017) ............................................ 11

*Tech. Recycling Corp. v. City of Taylor,*
   186 F. App'x 624 (6th Cir. 2006) .................................................................. 32

*Thompkins v. GPS Sols., LLC,*
   No. 23-12844, 2025 WL 3243867 (E.D. Mich. Nov. 20, 2025) ................... 32

*Universal Health Grp. v. Allstate Ins. Co.,*

703 F.3d 953 (6th Cir. 2013) ....................................................................33, 36

*Williamson v. Recovery Ltd. Partnership*,
   826 F.3d 297(6th Cir. 2016)................................................................ 37

*Victor v. Reynolds*,
   649 F. Supp. 3d 499 (E.D. Mich.)........................................................ 30

*Winchester v. City of Hopkinsville*,
   No. 5:13-CV-220-TBR, 2014 WL 7005422 (E.D. Mich. Dec. 10, 2024) ................. 27

*Youn v. Track, Ins.*,
   324 F.3d 409 (6th Cir. 2003) .............................................................. 37

**Rules**

Fed. R. Civ. P. 37 (b)(2)(A)(i)-(vii).......................................................... 38

## I.     OVERVIEW

Plaintiff has filed three complaints, each consisting of well over 300 paragraphs. Plaintiff's factual and legal claims are unwarranted by existing law and lack the most basic evidentiary support. It is no surprise that such complaints would lead to chaos in discovery. Throughout this case, Plaintiff's actions have demonstrated a lack of candor towards the Court and the other parties. Plaintiff filed a frivolous motion to disqualify OMP's counsel on March 12, 2025. ECF No. 36, PageID.1584. In its Order denying the Motion, the Court noted its serious concern that Plaintiff was misusing her ability to attempt to disqualify OMP's counsel and stated that "The Court has its doubts" and was "dubious" about the candor of Plaintiff's factual claims in the briefing, to the point where it found denial of the motion was necessary. "These claims smack of gamesmanship; and for that added reason, the Court finds disqualification improper." ECF No. 48, PageID.1973-1975. Plaintiff opposed her former counsel's motion to withdraw from the case, and falsely stated in open court that she had not been advised of the reason for the "breakdown" in the attorney-client relationship when in fact, Ms. McKenna had received a two-page letter from Counsel and had a lengthy Zoom conversation with her counsel as to the reason. ECF No. 66, 2136-2142.

The record reflects that Plaintiff is resolutely defiant of the Federal Rules of Civil Procedure and the Court's authority over her as a party and an attorney. Plaintiff has attempted to obstruct third party subpoenas, tampered with medical releases and then lied about doing so. This Court has given Plaintiff multiple chances to comply with its

explicit orders and has warned her of the consequences for failing to do so, to no avail. She has willfully refused to comply with four Court orders issued on the following dates: June 25, 2025 (ECF No. 66, PageID.2158-2159); June 26, 2025 (ECF No. 68, PageID.2229); October 24, 2025 (ECF No. 97); and November 25, 2025 (Minute Entry of the same date). The discovery cutoff is March 6, 2026. ECF No. 51, PageID.1984. Plaintiff's willful refusal to comply with the discovery rules and Court orders has wasted most of the lengthy discovery period, significantly prejudicing OMP's defense. Dismissal is the only sanction that can remedy Plaintiff's conduct.

## II.  RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A. March – June 2025: Plaintiff's Discovery Responses are Severely Deficient

OMP served its First Set of Interrogatories, Requests for Production of Documents and Requests for Admission on March 21, 2025. **Ex. 1**, OMP First Discovery. A timeline and table of contents of Plaintiff's production to date is attached. **Ex. 4**, Plaintiff's Production.

On May 5, 2025, OMP's counsel advised Plaintiff's counsel of the serious deficiencies in her production of documents. **Ex. 5**, May 5, 2025 Deficiency Notice. Her Amended Responses were rife with boilerplate objections, leaving OMP without an understanding of whether documents were actually being withheld and on what basis. *Id.* The parties met and conferred on these issues for more than an hour by telephone on May 15, 2025. Plaintiff agreed to supplement several discovery requests:

2

Interrogatories 3, 6, 7, 8, 9, 10, 11, and 13; Requests 3, 7, 9, 10, 19, 24, 25, 31, 32, 34 and 35. **Ex. 6**, May 16, 2025 McGinn Corresp. This never occurred.

Plaintiff refused to supplement (1) Interrogatory 4 and Request 13, which sought information and documents concerning the attorneys and law firms Plaintiff consulted as set forth in paragraphs 100, 101, 196, 208, and 227 of her SAC; and (2) Request 18, which sought HIPAA releases from Plaintiff's mental health and medical treaters between 2015 and the present. **Ex. 3**, Plaintiff's Amended Responses to OMP First Discovery. **Ex. 6**, May 16, 2025 McGinn Corresp. On June 25, 2025, her counsel withdrew from the case citing a breakdown in their relationship with Plaintiff, and a stay was entered as to discovery between the parties. ECF No. 64. At Plaintiff's request, the stay remained in place between June 25, 2025 and September 25, 2025. ECF No. 86. Third party discovery, including as to Plaintiff's mental health and medical treaters, continued during the stay.

### B. May – December 2025: Despite Three Court Orders, Plaintiff Refuses to Provide HIPAA Releases for her Mental Health and Medical Treaters

On May 29, 2025, Plaintiff served OMP with signed releases for two of her mental health treaters: Cranston and Gialanella. **Ex. 8,** May 29, 2025 Corresp. Plaintiff took steps to thwart the subpoena. OMP served a subpoena on Cranston on May 30, 2025. **Ex. 9,** Cranston Proof of Service. On or before June 10, 2025, Plaintiff falsely informed Cranston that a 28-day stay had been entered in the case, including as to the subpoena issued to Cranston. **Ex. 10**, Corresp. with Webber. On June 12, 2025, at 5:43

3

p.m., Plaintiff filed an "Emergency" motion to stay the case, including as to OMP's subpoenas to Plaintiff's treaters. ECF No. 58. At or around 8:00 p.m. on June 12, and without notifying Defendants, Plaintiff sent a written revocation of her HIPAA release to Cranston and Gialanella. **Ex. 10**, Corresp. with Webber.

On June 13, 2025, the Court denied the "Emergency" motion. *See* ECF 60. During the motion hearing held on June 25, 2025, the Court ordered Plaintiff to re-sign, by close of business June 26, 2025, the HIPAA releases she revoked. **Ex. 11**, ECF No. 66, PageID.2158-2159, 37:10-38:5. On June 26, 2025, Plaintiff served Defendants with signed releases she unilaterally altered to narrow the scope of responsive documents. When counsel called out this misconduct, she brazenly denied it. **Ex. 12,** June 26, 2025 Corresp. with Plaintiff. On a call with the parties on June 26, 2025, the Court ordered Plaintiff to provide unaltered releases to Defendants for her treaters. Only then did Plaintiff provide unaltered, signed releases for Cranston and Gialanella. ECF No. 68, PageID.2229.

In July 2025, Plaintiff refused to consent to alternative service of a subpoena for her medical records on Gialanella. The Court disagreed, stating on June 26, 2025,

> "the Court noted that these medical subpoenas were valid, and Plaintiff should make sure that she re-issued releases to allow production of these documents. Despite this instruction the Court finds itself having to once again address matters that were previously before the Court…As previously found, this is a validly issued subpoena and Defendants are entitled to production of these documents." ECF No. 68, PageID.2229-2230.

In addition to granting leave to serve Gialanella by email, the Court ordered Plaintiff to personally request her records from Gialanella and produce them to Defendants. *Id.* Review of these records showed that Plaintiff withheld the name of at least one mental health treater, Gemma Haynes, who she had treated with individually and as a marital counselor, for several years. **Ex. 13**, Cranston Docs.

On October 6, 2025, counsel for OMP sent new counsel for Plaintiff, Kimberly Russell, a detailed description of the communications with prior counsel as to discovery, attached copies of those communications, and sought a meet-and-confer regarding Plaintiff's current position on those topics. **Ex. 14,** Oct. 6 and 10, 2025 Corresp. Another lengthy meet-and-confer was held on October 10, 2025. Plaintiff continued her refusal to provide information, documents, and testimony about her consultations with attorneys, despite her clear waiver. She never provided any authority to support her position, which was frivolous as a matter of law. And, as to the issue of HIPAA releases, again, despite being provided with controlling case law, Plaintiff refused to provide releases for her medical treaters. Ms. Russell was unprepared to offer any position as to the specific interrogatories and requests that prior counsel agreed to supplement. *Id.* Due to Plaintiff's recalcitrance, the meet-and-confer was largely a waste of OMP's time and resources.

A conference between the parties and the Court was held on these discovery issues on October 23, 2025. An order followed on October 24, 2025 (as stipulated and

agreed to by Plaintiff via her counsel). The October 24, 2025 Order stated in pertinent part:

"**IT IS HEREBY ORDERED THAT:**

**1.** All parties are ordered to produce all outstanding ESI discovery no later than **November 24, 2025.**

5**.** Plaintiff is ordered to identify all of her mental health and medical treaters, as requested by Defendants, and to sign HIPAA releases for these records no later than **October 30, 2025**.

7. Plaintiff waived the attorney-client privilege with respect to the communications she had with attorneys she consulted about filing this litigation by alleging the contents of these communications in her Second Amended Complaint. Information, documents, and testimony concerning these alleged communications are therefore discoverable, and Plaintiff is ordered to respond to the Riley Parties' and OMP's discovery requests requesting that information, including OMP's Interrogatory 4 and Request to Produce 13, and to answer questions posed to her about these alleged communications in her forthcoming depositions.

8. Plaintiff is ordered to supplement or provide her objections to the following discovery requests by OMP no later than **December 1, 2025**: Interrogatories: 3, 6, 7, 8, 9, 10, 11, 13; and RTP: 3, 7, 9, 10, 19, 24, 25, 31, 34, 35. And, as to RTP No. 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 19, 21, 22, 23, 24, 25, 26, 27, 28, 31, 32, & 35, Plaintiff is to specify whether she is withholding documents on the basis of her objections and identify what documents are being withheld by the same date." *See* ECF No. 97.

Plaintiff continued to engage in bad faith tactics designed to obstruct this Court-ordered discovery. In direct violation of the Order, on October 30, 2025, Plaintiff refused to provide a HIPAA release for her individual and marital mental health counselor, Gemma Haynes. **Ex. 15,** Oct. 30-31 Corresp. re Haynes. On November 3,

2025, Plaintiff's counsel provided a blank release for Gemma Haynes and stated she "treated Plaintiff and her ex-husband" but that "[t]he practice or institution where she provided services does not appear to exist anymore." **Ex. 16,** Nov. 3 Corresp. re Haynes. Then, during a meet-and-confer held on November 7, 2025, Ms. Russell reversed her position, and represented that Ms. Haynes never treated Plaintiff, and only treated her ex-husband, but that Plaintiff merely attended some of her husband's sessions with Ms. Haynes.

Despite having already been admonished about altering the scope of Defendants' releases in June 2025, on November 12, 2025, Plaintiff provided a signed, but materially altered release, in order to deny discovery of marital or joint counseling records involving Plaintiff. **Ex. 17,** Nov. 12 Corresp. re Haynes. On November 20, 2025, OMP produced a document handwritten by Plaintiff in March 2023 in which Plaintiff stated that Haynes was her individual counselor between June 2017 and January 2023, and her marital counselor between June 2017 and an unspecified date. **Ex. 18,** McKenna Questionnaire Excerpt. Plaintiff further represented that Mr. Heid began treating with Ms. Haynes individually one year after Plaintiff had begun seeing her, in June 2018. *Id.*

Another conference was held between the parties and the Court on November 25, 2025. As to the issue of HIPAA releases, the Court noted its multiple prior orders and directives to Plaintiff that she was to identify all her treaters and sign unaltered releases for them. The Court questioned Plaintiff's counsel about why the release was

altered. When asked point blank how she explained Plaintiff's handwritten document identifying Haynes as an individual and marital treater, Ms. Russell was unable to do so. Russell admitted that the release was altered to prevent Defendants from obtaining marital counseling records. The Court reiterated its prior holding that any mental health treatment records of Plaintiff were relevant and discoverable, and, yet again ordered Plaintiff to sign an unaltered release as to Ms. Haynes. *See* **Ex. 19**, Minute Entry of Nov. 25, 2025.

On December 10, 2025, Plaintiff testified that there are additional mental health treaters that she refused to identify and refused to provide releases for, in spite of the Court's three orders. Plaintiff received mental health treatment via a suicide hotline she contacted during the PHPA Annual Meeting in June 2023. **Ex. 7**, McKenna Dep. 12-10-25 at 336:9-337:7. Plaintiff presented to a hospital or other inpatient facility for mental health treatment "on an acute basis" in the Maryland/Washington D.C. area in or around September 2024. *Id.* at 22:16-25; 23:17-24:25. On December 22, 2025, the very date of this filing, the parties learned of two more treaters Plaintiff concealed and refused to provide releases for: Eastwood Clinic and FairSky Counseling. **Ex. 29**, Additional Treaters.

**C. October – December 2025: Plaintiff Violates the October 24, 2025 and November 25, 2025 Court Orders As To Attorney Consultations, ESI, and Other Supplemental Discovery**

At 12:55 on November 25, 2025, Plaintiff produced 672 pages purporting to be "all outstanding ESI discovery" in Plaintiff's possession, custody, or control. 299 of the 672 pages are not substantive. **Ex. 20,** Excerpt of Nov. 25 Production. They appear to be metadata that is unattributable to any documents or communications provided. *Id.* The remaining 373 of the pages 672 appear to be copies of spreadsheets in which information about text messages has been entered. *Id.* Overall, the November 25, 2025 production is so deficient that it is unusable.

During the November 25, 2025 conference with the Court, defense counsel raised that the November 25 production was severely deficient. The Court noted that its Order of October 24, 2025 was that Plaintiff was to produce all electronic discovery, not just text messages. When Ms. Russell acknowledged that Plaintiff's November 25 production was incomplete, the Court ordered that it should be completed no later than November 28, 2025. The Court further ordered that Defendants were to advise the Court in writing of any deficiencies in the production by December 3, 2025. *See* Minute Entry of November 25, 2025.

At 11:56 p.m. on November 28, 2025, Plaintiff produced 3194 pages of text messages with 5 individuals, and two sets of group text messages. **Ex. 21,** Excerpt of Nov. 28 Production. These were also improperly produced spreadsheet format. *Id.* This production was also redacted, and no privilege log was provided.

Plaintiff did not produce any supplemental responsive pleadings along with her November 25 and 28 productions, identifying which of the bates stamped pages are responsive to which of OMP and/or Riley's requests. See *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC.*, 2017 WL 11379855, at *4 (E.D. Mich. Dec. 15, 2017), *order clarified sub nom. State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 2018 WL 8996389 (E.D. Mich. Jan. 30, 2018) (litigant ordered to identify which documents were responsive to which discovery requests under FRCP 26 and 34).

Despite being explicitly ordered to do so in paragraph 7 of the Order, as of the date of this filing, Plaintiff refused to respond to OMP's Interrogatory 4 and Request to Produce 13. It has been 59 days since the Court entered its Order compelling this discovery. Plaintiff is in clear violation of this aspect of the Order.

At 11:44 p.m. on December 1, 2025, Plaintiff served a partial supplemental responsive pleading to the specific interrogatories and requests enumerated in paragraph 8 the October 24, 2025 Order. This document is dated December 2, 2025. **Ex. 22,** Pl. Second Amended Resp. to OMP First Discovery. Plaintiff refused to provide a single supplemental document. *Id.* The December 2, 2025 response sets forth objections to providing highly relevant discovery that are sanctionable. *Id.*

Plaintiff and her counsel have admitted that she has further responsive documents and that she has not made a reasonable search for the documents she was ordered to produce. Her search has apparently been confined to a review of only her

text messages with a small, unilaterally selected subset of individuals. **Ex. 23**, Russell Corresp. of Dec. 7, 2025 at pg. 3, n. 3. **Ex. 7**, McKenna Dep. 12-10-2025 at 75:23-78:23.

### 1. Plaintiff Willfully Violated Paragraph 8 of the October 24, 2025 Order

Plaintiff explicitly violated paragraph 8 of the October 24, 2025 Order by refusing to specify whether she is withholding documents based on her boilerplate objections to RTPs 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 19, 21, 22, 23, 24, 25, 26, 27, 28, 31, 32, & 35, and identify what documents are being withheld. ECF No. 97, PageID.2513. Plaintiff instead stated only that she "reserves her right to supplement these responses" and that "any necessary privilege logs will be produced within 30 days of production." **Ex. 22,** Pl. Second Amended Resp. to OMP First Discovery at 26. This is extremely prejudicial to OMP, as Plaintiff asserted lengthy boilerplate objections to each of these requests for production, leaving OMP without an understanding of whether documents are in fact being withheld and on what basis. It is well-settled that boilerplate objections are tantamount to no objection at all, and this Court held that they will not be considered and their imposition could subject a party to sanctions. *See Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.*, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017).

### 2. Plaintiff Willfully Violated Paragraph 7 of the October 24, 2025 Order by Refusing to Respond to OMP's Interrogatory 4 and Request to Produce 13

Plaintiff failed to respond to OMP's Interrogatory 4 and Request to Produce 13. It has been 59 days since the Court entered its Order compelling this discovery. *See* ECF No. 97. Plaintiff interjected allegations into this case regarding her consultations with attorneys that OMP is now unable to obtain information about or defend against. Moreover, OMP expended time, money, and resources attempting to obtain Plaintiff's compliance with the October 24, 2025 Order, including by sending them multiple written notices of their non-compliance, and attending multiple conferences with the Court.

### 3. Plaintiff Willfully Violated Paragraph 1 of the October 24, 2025 Order Because the Format of her November 25 and 28, 2025 Productions are Improper and Prejudicial

Approximately 299 of the 672 pages produced on November 25 are not substantive. These pages appear to consist of metadata that is unattributed to any documents or communications provided. **Ex. 20,** Excerpt of Nov. 25 Production. The remaining 373 of the pages 672 produced on November 25 appear to be copies of spreadsheets or tables in which information about text messages between Plaintiff and four third-party individuals have been entered. *Id.*

First, the improper formatting makes it impossible to determine whether the information is a true rendition of the communications. Second, the spreadsheets fail to identify dates that the texts were sent or received. The texts between Plaintiff and Mr. Hurbis are undated. *Id.* All of Plaintiff's texts with Ms. Barrett are dated February 26, 2019. *Id.* Based on their content, it is impossible that the communications were all made

12

on this date. For example, Plaintiff discusses her employment with and separation from OMP with Ms. Barrett, both of which occurred years after February 2019. Likewise, all of Plaintiff's texts with Mr. Stinar and Ms. Claire McKenna are dated May 16, 2023 and June 5, 2018, respectively. *Id.* The content of these communications also makes clear that these dates could not possibly be correct. *Id.* On November 28, Plaintiff produced 3194 pages of additional text messages with 5 individuals, and two sets of group text messages. These were also improperly produced in the format of copies of spreadsheets or tables. **Ex. 21,** Excerpt of Nov. 28 Production. Plaintiff's text messages with third parties redacted. *Id.* Plaintiff failed to provide a privilege log for these communications. These issues render the discovery virtually unusable, which significantly prejudices OMP's defense.

### 4. Plaintiff Also Willfully Violated Paragraph 1 of the October 24, 2025 Order Because The Content of Plaintiff's November 25 and 28, 2025 Productions are Severely Deficient

On November 25, 2025, Plaintiff produced her text messages with only three individuals (Caitlin Barrett, Claire McKenna, and Mr. Hurbis). On November 28, 2025, Plaintiff produced her text messages with one more (Judith McKenna). Based on Plaintiff's testimony, initial disclosures and answers to OMP's interrogatories, it is clear she continues to withhold relevant, responsive ESI communications.

### a. Plaintiff Failed to Provide Electronically Stored Communications

First, Plaintiff's November 25 and 28, 2025 productions directly reference other communications not produced. For example, the text messages with Mr. Hurbis produced on November 25 mention relevant emails between Plaintiff and Mr. Hurbis that were not produced. **Ex. 20,** Excerpt of Nov. 25 Production at 487.

Second, Plaintiff's initial disclosures identify 45 individuals with discoverable information. **Ex. 24,** Plaintiff's Initial Disclosures. Plaintiff has not produced her relevant communications with many of these individuals, including Jared Smith, Lauren Studley, Amanda Fox, Julian Wettlin, Jessica Phillipos, Pooja Patel, Sharon Vlahovich, Dave Koukal, Jim Mellon, Rick Groffsky, Lisa Esser-Weidenfeller, Melissa Heinz, Ariel Kellersohn, Sarah Prescott, Tiffany Shanahan, Deb Fisher, Nancy Studer, Emily Thomas, Cheryl Saba, Callie Pedersen, Diane Gallagher, Kelly Thweat, Allison Ensch, Marilyn Kaliszewski, and Bill Hurley.

Third, OMP's Interrogatory 10 asked Plaintiff to identify the name, address, and phone number of anyone she contacted and/or communicated with regarding her allegations against OMP, and to detail the date and substance of each communication. On April 29, 2025, Plaintiff listed 24 individuals "with whom she communicated with since the filing of the Complaint regarding the allegations". **Ex. 3,** Pl. Amended Response to OMP First Discovery. Plaintiff's current production excludes ESI communications between her and Amanda Fox, Jared Smith, Lauren Studley, Tiffany Shanahan, George Hunter, Moses Kim, Dave Koukal, Ingrid Halstrom, Sharon

Vlahovich, Rick Groffsky, Ariel Kellersohn, Marlene Goldenberg, Jim Mellon, Bill Lipinski, Brian Ramsay, Melissa Heinz, and Emily Thomas.

During her deposition on November 17, 2025, Plaintiff identified at least one person with whom she had discoverable communications– Lauren Studley. Plaintiff described these purported communications in detail. **Ex. 25,** McKenna Dep. 11-17-25 at 134:1-138:12. The November 25 and 28, 2025 productions contained zero communications between Plaintiff and Ms. Studley. On December 10, 2025, Plaintiff testified that she is in possession of text messages and LinkedIn messages with Mr. Groffsky that she did not produce. **Ex. 7**, McKenna Dep. 12-10-25 at 106:20-25; 111:7-17. Plaintiff intentionally withheld these relevant documents in violation of the Court's Orders.

### b.  Plaintiff Failed to Provide Other Outstanding Electronically Stored Information

The Joint Proposed Rule 26(f) Discovery Plan, ECF No. 38, defines "ESI" as "electronically stored information". ECF No. 38, PageID.1702. On November 25, 2025, the Court advised the parties that ESI consists of more than text messages. ESI includes all documents saved in PDF or other electronic format, such as spreadsheets, PowerPoint presentations, audio and video recordings, in addition to text messages, social media messages and other electronic communications, like email. ECF No. 38, PageID.1702-1704. During her December 10, 2025 deposition, Plaintiff testified about the existence of "115 pages" of "missing" discovery documents. **Ex. 7**, McKenna Dep.

12-10-25 at 75:23-76:21. This was the first and last time Defendants heard of this issue. Plaintiff has failed to provide any further information as to these documents. Other highly relevant documents undoubtedly stored in electronic format, that Plaintiff is withholding are:

      **i.**      **Communications with Current/Former OMP Employees.**

RTP 3 seeks copies of all Plaintiff's written communications of any kind with any other current or former employee of OMP. According to her interrogatory responses, Plaintiff communicated with Tiffany Shanahan, Callie Pedersen, Cheryl Saba, Emily Thomas, Nancy Studer, and Deb Fisher. **Ex. 24,** Pl. Initial Disclosures; **Ex. 3,** Pl. Amended Resp. at Rogg. 10. Prior counsel agreed that this request would be supplemented. **Ex. 6,** May 16, 2025 McGinn Corresp. Plaintiff failed to produce these communications. *See* **Ex. 22,** Pl. Second Amended Resp. at RTP 3

      **ii.**      **Documents Concerning the PHPA Client.**

Plaintiff's Second Amended Complaint makes extensive allegations about her work for the PHPA, and how OMP allegedly used this work to illegally discriminate, harass, conspire, and retaliate against her. But, in violation of the Court's Order, she deprived OMP of virtually any written discovery on this issue.

RTP 6 sought all documents and evidence regarding Plaintiff's claim that "RH and Olsman decided that the representation of the PHPA would be shared" as set forth in paragraph 117 of the SAC. **Ex. 3,** Pl. Amended Resp. at RTP 6. On November 17,

2025, Plaintiff testified that she "did not know if there's something in writing" responsive to this request. **Ex. 25,** McKenna Dep. 11-17-25 at 196:17-197:1. No such documents were produced on November 25 or 28, 2025.

RTP 7 seeks all documents and communications, including email, calendar invitations, text messages, and attachments thereto exchanged by and between Plaintiff and the PHPA between May 1, 2019 and the present. **Ex. 3,** Pl. Amended Resp. at RTP 7. It is undisputed that such communications exist and are in Plaintiff's possession, custody, or control. *Id.;* **Ex. 6,** May 16, 2025 McGinn Corresp. Plaintiff is in possession of her Google Calendars for the relevant timeframe. **Ex. 7**, McKenna Dep. 12-10-25 at 64:24-65:1; 66:6-67:22; 67:23-68:9; 69:2-11. None of these documents have been produced.

Likewise, RTP 8 sought all documents and communications supporting Plaintiff's allegations that any "conference", "meeting" or other event hosted by or held on behalf of the PHPA was "mandatory" as set forth in Paragraph 149 of the SAC. **Ex. 3,** Pl. Amended Resp. at RTP 8. On April 29, 2025, Plaintiff advised that she would produce responsive text messages within 14 days. *Id.* On November 17, 2025, Plaintiff testified that she "d[id] not agree" that no written evidence of this allegation existed. She refused to agree that she has never seen such a document. **Ex. 25,** McKenna Dep. 11-17-25 at 354:1-21. Plaintiff has refused to provide this discovery.

### iii. Records of Plaintiff's Purported Economic Damages and Mitigation.

Despite Court orders to do so, Plaintiff has refused to provide discovery on her allegedly extensive economic damages. Plaintiff testified that she "ha[s] no idea" what her IRS reported income was in 2024. RTP 9 sought Plaintiff's state and federal tax returns, "as filed" for 2019, 2020, 2021, 2022, 2023, 2024, and 2025. **Ex. 3,** Pl. Amended Resp. at RTP 9. Plaintiff refused to produce her returns, 1099s, W2s, and other filings for 2019, 2023, and 2024. On April 29, 2025, Plaintiff responded that she was "in the process of obtaining additional documents responsive to this Request that will be produced once obtained by Plaintiff". **Ex. 3,** Pl. Amended Resp. at RTP 9. As of today's date, Plaintiff "filed" a tax return for 2024. **Ex. 25,** McKenna Dep. 11-17-25 at 37:9-10. She has refused to produce this discovery. **Ex. 22,** Pl. Second Amended Resp. at RTP 9.

### iv.    Documents Concerning Plaintiff's Job Applications.

As to Plaintiff's mitigation efforts, RTP 10 sought documents and communications regarding employment Plaintiff sought or was offered between January 2019 and the present. **Ex. 3,** Pl. Amended Resp. at RTP 10. Plaintiff produced documents appearing to show that she applied for jobs using LinkedIn, but failed to produce many other documents, such as applications and resumes that would have been electronically-stored. **Ex. 26,** Plaintiff's Bates 372-385. On April 29, 2025, Plaintiff stated that she was in the process of producing responsive text messages. **Ex. 3,** Pl. Amended Resp. at RTP 10. Plaintiff was, in fact, seeking employment in Michigan since

18

at least mid-2023. Documents concerning these efforts have not been produced. They undisputedly exist. *See e.g.* **Ex. 20,** Excerpt of Nov. 25 Production at 536-537. (Plaintiff discusses that she texted prospective employer, McKeen). And, as to Interrogatory 3, despite still having access to her LinkedIn account, Plaintiff refuses to provide the names and dates associated with jobs she applied for via LinkedIn. **Ex. 22,** Pl. Second Amended Resp. at Interrog. 3.

> **v. Calendars, Notes, Emails, Memoranda, Journals, and Other Documents.**

RTP 12 sought all notes, email, memoranda, personal notes and diaries, calendars, audio or video, and any other writings or documents relating to or referring to the meetings, incidents, complaints, reports, events, calls, appointments or communications between Plaintiff and OMP relating to her claims. **Ex. 3,** Pl. Amended Resp. at RTP 12. On April 29, 2025, Plaintiff responded that she "will produce" responsive documents related to the factual allegations in her SAC. *Id.* None have been produced. On November 17, 2025, Plaintiff testified that she kept a journal where she wrote poetry about the events giving rise to her claims and her connected emotional states. **Ex. 25,** McKenna Dep. 11-17-25 at 180:3-181:3. Plaintiff's "journal that's poetry" in which she "h[as] written poetry about this situation" has not been produced. *Id.* Plaintiff further testified on December 10, 2025 that she has relevant poetry and notes about her feelings stored electronically in Word documents and on the Notes

application on her cell phone, in addition to hard copies on legal pads and in journals—none of which have been produced. **Ex. 7**, McKenna Dep. 12-10-25 at 53:16-56:19.

### vi.   Documents Concerning Plaintiff's Move to Maryland.

In response to Request 19, which sought documents regarding Plaintiff's purported move to Maryland, on April 29, 2025, Plaintiff stated that she was presently compiling and would produce responsive text messages. **Ex. 3,** Pl. Amended Resp. at RTP 19. None have been produced. In her Second Amended Response, Plaintiff claims she has no obligation to provide this discovery because "Plaintiff no longer resides in Maryland." **Ex. 22**, Pl. Second Amended Resp. at RTP 19. This is pure obstructionism. Plaintiff's move to Maryland is highly relevant to her claims and OMP's defenses. Her SAC alleges that OMP "forced [her] to leave the state and…start her legal career over" by moving to Maryland, specifically, "where she [was] trying to rebuild the nine-year career that Riley and Olsman took away from her and put the pieces of her shattered life back together," and that she "has no choice but to remain in Maryland". ECF No. 23, PageID.544, 588, ¶¶ 12, 245. OMP is entitled to probe the facts surrounding the move, regardless of whether Plaintiff still lives there.

### vii.   Documents Concerning Allegedly Disparaging Statements Made by OMP to Clients.

In response to Request 20, which sought documents evidencing that Defendants "made disparaging comments about Plaintiff, as alleged in her SAC" on April 29, 2025, Plaintiff responded that "additional responsive documents will be discovered" and that

20

she "will supplement" this request. **Ex. 3,** Pl. Amended Resp. at RTP  20. No such documents have been produced.

###### viii.    Documents Concerning Paragraphs 319, 361, 362 of the SAC.

Likewise, in response to Request 21, which sought documents and communications evidencing Plaintiff's allegations in paragraphs 319 of the SAC and all its subparts, on April 29, 2025, Plaintiff stated that she "will produce" responsive documents. **Ex. 3,** Pl. Amended Resp. at RTP  21. This never occurred. Paragraph 319 is a crucial part of Plaintiff's SAC, in which she alleges 18 specific ways in which OMP purportedly retaliated against her, including "blacklisting in the legal community", "intimidation", "falsification of performance evaluations", "fabrication of performance evaluations", "defamation and disparagement" of Plaintiff, and "intentional exposure of Plaintiff to further and worsening sexual harassment". ECF No. 23, PageID.602-603, ¶ 319. On November 17, 2025, Plaintiff testified that "There are probably a lot of things that go into blacklisting", for example. **Ex. 25,** McKenna Dep. 11-17-25 at 398:4-6. She claimed that "People…will no longer talk to me anymore …". When asked for names, Plaintiff testified that she "can get [OMP] names of people" in question. *Id.* at 396:21-400:24. But she refused to produce a single document concerning these allegations, depriving OMP of a meaningful ability to defend against them.

In response to request 22 and 23, which sought all documents evidencing Plaintiff's allegations in paragraphs 361 and 362 of the SAC, Plaintiff stated on April

29, 2025 that "additional responsive documents will be discovered" and that she "will supplement". **Ex. 3,** Pl. Amended Resp. at RTP 22-23. No such documents have been produced. Paragraph 361 alleges that OMP "had conversations with and conspired with Defendant Riley to continue to allow Defendant Riley to have contact with, harass and stalk Plaintiff". ECF No. 23, PageID.611, ¶ 361. Paragraph 362 alleges that OMP and Riley "agreed to conspire to fire Plaintiff", "conspire[ed] to threaten Plaintiff"; "conspire[ed] to rescind Plaintiff's 2023 year-end bonus"; and "conspir[ed] to concoct pretextual reasons to fire Plaintiff", among other things. *Id.* at PageID.612, ¶ 362. OMP has been significantly prejudiced by Plaintiff's refusal to provide documents regarding these paragraphs has deprived it of the ability to defend against them.

### ix. Documents Concerning Plaintiff's Failed AAJ New Lawyers Board of Governors Campaign.

Request 35 sought documents and communications concerning Plaintiff's failed candidacy and campaign for AAJ New Lawyers Board of Governors. **Ex. 3,** Pl. Amended Resp. at RTP 35. These documents are highly relevant to OMP's rationale for accepting Plaintiff's resignation in February 2024. In pertinent part, OMP declined to negotiate "terms" with Plaintiff because her conduct during the campaign was inconsistent with the firm's values and negatively impacted its reputation and because Plaintiff intentionally misled the firm about her candidacy and campaign. ECF No. 27-4, PageID.687. On April 29, 2025, Plaintiff responded that she "will produce"

responsive documents, including text messages within 14 days. **Ex. 3,** Pl. Amended

Resp. at RTP 35. No supplemental production has been made.

><h3>x.    Documents Plaintiff Received from the EEOC Regarding OMP.</h3>

Finally, on November 17, 2025 Plaintiff claimed to be in possession of

documents from the EEOC evidencing her allegation in paragraph 28 of the SAC that

the EEOC "had found reasonable cause to believe that violations of Title VII had

occurred as to OMP." ECF No. 23, PageID.546, ¶ 28. **Ex. 25,** McKenna Dep. 11-17-

25 at 237:16-20; 252:5-20. These documents, if they exist, would be responsive to

OMP's Requests 1 and 2, which sought all documents Plaintiff may rely on in support

of her claims and all documents and communications relating to her employment with

OMP. They have not been produced.

### D. Plaintiff's December 2, 2025 Supplemental Response to OMP's First Interrogatories and Requests to Produce is Severely Deficient

Plaintiff further violated paragraph 8 of the October 24, 2025 Order by refusing

to supplement and interposing improper objections to the discovery requests. At 11:44

p.m. on December 1, 2025, Plaintiff served a partial supplemental responsive pleading

to the requests enumerated in the October 24, 2025 Order. This document is dated

December 2, 2025. **Ex. 22,** Pl. Second Amended Resp. at pg. 26. Plaintiff refused to

provide a single supplemental document.

### 1. Interrogatory 7: Plaintiff refuses to provide the specific dates she contacted OMP clients.

23

Despite having access to her own call logs, text messages and emails, Plaintiff refuses to provide this basic information. **Ex. 22,** Pl. Second Amended Resp. at Interrog. 7. Obviously, if Plaintiff contacted these individuals before she announced her separation, this information would be highly relevant to her claim for damages and after-acquired evidence.

### 2. Interrogatory 9: Plaintiff refuses to identify or provide information concerning her previous complaints, reports, and/or allegations of sexual assault, abuse, and harassment.

OMP sought this information, in part, regarding Plaintiff's claims of emotional distress. In defense of those claims, OMP is entitled to probe other sources of emotional distress other than the facts giving rise to this case. It is undisputed that Plaintiff made several previous reports, complaints, and allegations of abuse, assault, and harassment. Plaintiff's mental health treatment records report a "history of abuse" in her early life. **Ex. 13,** Cranston Records Excerpt. Plaintiff was sexually assaulted in college and assaulted throughout her marriage. **Ex. 25,** McKenna Dep. 11-17-25 at 63:20-64:3; 64:13-65:24. She also reported sexual harassment by a colleague in her prior employment. *Id.* at 81:22-82:18. Plaintiff further reported to the PHPA that a member of its union threatened to rape her at the PHPA's annual meeting in 2023. *Id.* at 339:10-13; 342:1-10; 344:8-9. But rather than setting forth the information requested in this interrogatory, Plaintiff improperly "directs Defendants to her deposition testimony". **Ex. 22,** Pl. Second Amended Resp. at Interrog. 9. *See Firneno v. Nationwide Mktg. Servs.,*

*Inc.*, No. 14-CV-10104, 2017 WL 9471685, at *4 (E.D. Mich. Mar. 20, 2017), *report and recommendation adopted*, No. 2:14-CV-10104, 2017 WL 1381105 (E.D. Mich. Apr. 18, 2017) (improper to refer to a deposition transcript in lieu of providing an answer to an interrogatory).

3. **Interrogatory 10: Plaintiff refuses to identify contact information for witnesses, and the information/allegation she believes they may have witnessed**.

Again, despite being in possession of responsive information, Plaintiff improperly "directs Defendants to her deposition testimony and initial disclosures" instead of answering. **Ex. 22,** Pl. Second Amended Resp. at Interrog. 10. *See Firneno, supra.*

4. **Interrogatory 11: Plaintiff refuses to identify or provide any information regarding individuals she communicated with about the facts giving rise to this case before or after litigation was filed**.

Despite having responsive information, Plaintiff refuses to provide it. **Ex. 22,** Pl. Second Amended Resp. at Interrog. 11. There can be no question that Plaintiff's communications about the facts giving rise to her case are highly relevant and discoverable.

5. **Interrogatory 13: Plaintiff refuses to identify the date in 2024 she deleted and/or deactivated all of her social media accounts**.

If Plaintiff deleted social media accounts with relevant information during the time that she knew that litigation might result, her actions could be spoliation of evidence. *Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd.,* No. 06–CV–13143, 2009 WL

998402, at * 1 (E.D. Mich. April 14, 2009). Prior counsel agreed to provide this information. **Ex. 6,** May 16, 2025 McGinn Corresp. Now, Plaintiff states only that she deactivated her accounts "in 2024". **Ex. 22,** Pl. Second Amended Resp. at Interrog. 13. More specific, detailed information is readily accessible in the normal course. Emails and other notifications are generated when social media accounts are deleted or deactivated. Plaintiff's refusal to respond with specificity is highly suspect and demonstrative of her intent to obstruct discovery.

### 6. RTP 7: Plaintiff refuses to produce documents and communications regarding her income from the PHPA.

Plaintiff's December 2 supplemental response directs Defendants to a May 16, 2025 letter in which Plaintiff offered to provide documents concerning her income with PHPA including a profit and loss statement. **Ex. 22,** Pl. Second Amended Resp. at RTP 7; **Ex. 6,** May 16, 2025 McGinn Corresp. Plaintiff ignores that OMP counsel agreed on May 20, 2025 that, "Production of fee and other agreements … can be made in the meantime". **Ex. 27,** May 20, 2025 Corresp. Without any justification, and despite relying on the representations of prior counsel that documents would be provided, Plaintiff refused to produce them.

### 7. RTP 24 and 34: Plaintiff refuses to provide documents and communications concerning the creation of Fox McKenna PLLC.

Documents concerning the creation of Fox McKenna are vital to Defendants' defense of Plaintiff's claims of retaliatory termination and damages. They will show that

26

Plaintiff had already started her own firm and was departing from OMP when she gave notice of her separation, and that as a result, she has no claim to wage loss or emotional distress damages as to the separation. It is undisputed that responsive documents exist. However, Plaintiff refuses to provide the "relevant texts, proofs of photos, e-mail of proofs, and invoice for bill for photos for website", which her prior counsel admitted exist. **Ex. 6,** May 16, 2025 McGinn Corresp. Instead, Plaintiff improperly refers OMP to her deposition testimony as to this request. **Ex. 22,** Pl. Second Amended Resp. at RTP 24. *See Winchester v. City of Hopkinsville*, No. 5:13-CV-220-TBR, 2014 WL 7005422, at *3 (W.D. Ky. Dec. 10, 2014) (rejecting an argument that requested documents need not be produced because they were available to the propounding party by other means); *Davis v. Am. Highwall Mining, LLC*, 570 F. Supp. 3d 491, 497 (E.D. Ky. 2020) (improper to withhold documents or written responses because same information could be learned via deposition). *See also Firneno, supra.*

Request 34 sought all documents and communications exchanged between Plaintiff and Amanda Fox Perry, Martin Gould, Mike Grieco, Bruce Hensley, and Parker Steiner involving the creation of Fox McKenna. **Ex. 3,** Pl. Amended Resp. at RTP 34. Although prior counsel agreed to supplement this request, no documents have been provided. **Ex. 6,** May 16, 2025 McGinn Corresp. Notably, text messages Plaintiff produced between her and Mr. Steiner do not concern this topic, although her Initial

Disclosures state that Mr. Steiner "is likely to have discoverable information regarding the creation of Fox McKenna". **Ex. 24,** Plaintiff's Initial Disclosures.

It is undisputed that there are unproduced, responsive communications between Plaintiff and Ms. Fox Perry. In her December 2, 2025 supplement, Plaintiff refuses to provide these communications because they are "before the court in an *in camera* review". *See* **Ex. 22,** Pl. Second Amended Resp. at RTP 34. Plaintiff failed to provide a privilege log. As this Court has already held, Ms. Fox Perry's assertion of privilege does not absolve Plaintiff of her responsibility to provide discovery or otherwise comply with the federal rules. **Ex. 28**, ECF No. 94, PageID.2487-2488, 19:24-20:10. Moreover, Ms. Fox Perry represented to the Court that "**I am not**, you know, **saying that attorney-client relates to documents** created or produced **or communications** with Ms. McKenna **relating to the start of our law firm**…" and "…the documents that have been requested **with respect to us starting our law firm**, **we're not claiming attorney-client privilege**." *Id.* at PageID.2483, 15:7-10, 15:19-22; PageID.2484, 16:6-8 (emphasis added). Plaintiff's obstructionist response to OMP's request is completely improper.

   8. **RTP 31: Plaintiff refuses to provide her business agreements with Fox McKenna LLC and any other individual and/or corporate entity.**

In her December 2, 2025 Supplement, Plaintiff "reiterates prior counsel's statement in the May 16, 2025 Letter" in which Ms. McGinn stated, "Please advise whether her financials, like a profit and loss statement, will suffice, with client names

redacted." **Ex. 22,** Pl. Second Amended Resp. at RTP 31; **Ex. 6,** May 16, 2025 McGinn

Corresp. Plaintiff ignores that OMP counsel responded on May 20, 2025 that it would

accept production of these documents. **Ex. 27,** May 20, 2025 Corresp. Plaintiff refused

to produce a single document.

> 9. **RTP 35: Plaintiff refuses to provide documents and communications concerning her failed campaign for AAJ New Lawyers Board of Governors.**
> *See supra* at 24-25. Plaintiff's December 2, 2025 Supplement improperly refers

OMP to her deposition testimony in response to this request, rather than providing

responsive documents. *See* **Ex. 22,** Pl. Second Amended Resp. at at RTP 35.

## III.  LAW AND ARGUMENT

### A. Plaintiff's Case Should be Dismissed Pursuant to Fed. R. Civ. P. 37(b)

Rule 37(b) provides comprehensively for enforcement of any order "to provide

or [to] permit discovery," up to and including dismissal of an action. The Rule further

provides for "payment of reasonable expenses .... when a court order is disobeyed." *See*

Fed. R. Civ. P. 37 advisory committee's note to 1970 amendment. To determine the

appropriate sanctions for a violation of a discovery order, district courts weigh four

factors:

> (1) whether a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault;
> (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery;
> (3) whether the party was warned that failure to cooperate could lead to the sanction; and

(4) whether less drastic sanctions were first imposed or considered.

*Victor v. Reynolds*, 649 F. Supp. 3d 499, 505–06 (E.D. Mich.), *reconsideration denied*, 678 F. Supp. 3d 940 (E.D. Mich. 2023). Dismissal is an appropriate sanction where the party's failure to cooperate with the Court's discovery orders is due to willfulness. *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995). A willful violation occurs whenever there is a conscious and intentional failure to comply with the court order. *Bass*, 71 F.3d at 241. Dismissal of an action under Rule 37(b), Fed. R. Civ. P., for willful failure to cooperate in discovery is reviewed under an abuse of discretion standard. *Bass*, 71 F.3d at 241. If a party has the ability to comply with a discovery order and does not, dismissal is not an abuse of discretion. *Id.*

### 1. Plaintiff's Failure to Cooperate in Discovery is Due to Willfulness, Bad Faith, and her Own Fault

To qualify as "bad faith, willfulness, or fault," a party's conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001) (quoting *Shepard Claims Serv. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986)). There must be "a clear record of delay or contumacious conduct". *Carpenter v. City of Flint*, 723 F.3d 700, 704-05 (6th Cir. 2013) (cleaned up). Contumacious conduct is "stubbornly disobedient." *Morgan v. St. Francis Hosp.*, No. 21-5037, 2021 WL 9528124, at *4 (6th Cir. Nov. 9, 2021). The type of conduct to which the bad-faith standard applies includes a pattern of violating court orders; "delaying or disrupting the

30

litigation"; or "hampering enforcement of a court order." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (cleaned up); *Simmons*, 2023 WL 1767473, at *4.

In *Kelmendi v. Hogan*, No. 24-1884, 2025 WL 2901498, at *3 (6th Cir. Oct. 7, 2025), the Sixth Circuit upheld the dismissal of a civil rights case where, just as here, the plaintiff repeatedly refused to provide HIPAA releases despite having been ordered to do so. Just as Plaintiff has done, the Kelmendi plaintiffs insisted that they had fully complied, but in fact repeatedly failed to follow an order to provide releases, including by denying being treated by certain providers, and claiming the information was not relevant. The Sixth Circuit held that "[t]he plaintiffs' repeated failure to sign all authorization requests in the face of express orders to do so demonstrated a 'reckless disregard' for the effect of their conduct on the proceedings" which supported dismissal. *Kelmendi*, No. 24-1884, 2025 WL 2901498, at *3.

As in *Bass v. Jostens, Inc.*, this record supports a determination that Plaintiff's failure to comply with the Court's orders was intentional. *Bass v. Jostens, Inc.*, 71 F.3d 237, 241–42 (6th Cir. 1995). This is not a situation where Plaintiff denies being in possession of the responsive material, or claims she is incapable of complying with the Court's orders. As in *Bass*, Plaintiff's continuing pattern of intentional noncompliance with discovery orders of the Court amply satisfies the first element. *Bass*, 71 F.3d at 243. *See also Barron v. Univ. of Michigan*, 613 F. App'x 480, 485 (6th Cir. 2015) (dismissal

appropriate where the plaintiff never provided outstanding, court-ordered discovery documents and failed to pay money sanctions).

Likewise, in *O'Dell v. Kelly Servs., Inc.*, 334 F.R.D. 486, 491 (E.D. Mich. 2020), an employment discrimination case was dismissed where, as here, O'Dell disregarded an order compelling production of documents by a date certain, even after an extension, and where she testified that she possessed additional, unproduced responsive documents. *See also Tech. Recycling Corp. v. City of Taylor,* 186 F. App'x 624, 632 (6th Cir. 2006) (case dismissed where plaintiff disobeyed five orders of the court to provide discovery documents). *See also Thompkins v. GPS Sols., LLC,* No. 23-12844, 2025 WL 3243867, at *1 (E.D. Mich. Nov. 20, 2025) (case dismissed after plaintiff failed to comply with order to respond to discovery and provide deposition dates; belatedly complied with order to deliver all responsive documents and responses and provide deposition dates by a date certain; and subsequently failed to pay related court ordered attorney fees).

### 2.   OMP Has Been Prejudiced by Plaintiff's Refusals to Cooperate in Discovery

The prejudice factor requires a showing that the moving party was "required to waste time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997). As a matter of law, "[a] party is prejudiced when it is unable to secure the information requested and required to waste time, money, and effort in pursuit of cooperation which

the opposing party was legally obligated to provide." *Barron v. Univ. of Mich.*, 613 F. App'x 480, 485 (6th Cir. 2015) (cleaned up). In *Kelmendi* the plaintiffs' repeated noncompliance with orders to provide medical releases was prejudicial, as it forced the defendants to move to compel to seek the plaintiff's compliance and left them without access to potentially relevant records. *Kelmendi*, No. 24-1884, 2025 WL 2901498, at *4.

Plaintiff's repeated failure to cooperate in discovery has similarly prejudiced OMP. Plaintiff refused for over 9 months to provide discovery relevant to the allegations in her Second Amended Complaint, which prevented OMP from gathering evidence to support its defense. OMP wasted many hours and thousands of dollars conducting lengthy meet-and-confers, attending conferences, and obtaining, only to have to seek Plaintiff's compliance with those Court orders. These expenditures were ultimately futile.

### 3. Plaintiff Has Been Warned that Failure to Participate in Discovery Could Lead to Dismissal

There is no magic-words prerequisite to dismissal under Rule 37(b). *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013). A prior warning is only necessary before an involuntary dismissal if there is no evidence of bad faith or contumacious conduct. *Harmon*, 110 F.3d at 368. When presented with sufficiently egregious conduct, the Court is not "without power to dismiss a complaint, as the first and only sanction," and it need not "incant a litany of the available lesser sanctions." *Harmon*, 110 F.3d at 368-69. Here, lesser sanctions such as again ordering Plaintiff's

compliance with discovery would be futile, given Plaintiff's repeated unwillingness to comply with Court orders. Because she obstructed discovery, dispositive relief is the only sanction that "would protect the integrity of the pre-trial proceedings." *See Buck v. U.S. Dep't of Agric., Farmers Home Admin.*, 960 F.2d 603, 608 (6th Cir. 1992); *see also Operating Eng'rs Local 324 Pension Fund v. Laramie Enters., Inc.*, No. 22-cv-10709, 2025 WL 52468, at *7 (E.D. Mich. Jan. 8, 2025), *adopted*, 2025 WL 879563 (E.D. Mich. Mar. 21, 2025) (recommending dismissal as a "first and only sanction" when the defendant had "thwarted all but one deposition during the discovery period").

In *Harmon*, the district court ordered dismissal as a first and only 11 months after the plaintiff was served with discovery requests that he failed to respond to, even after being ordered. The Court reasoned that this was a sufficient basis for dismissal because, "Harmon's intransigence was… egregious because it was accomplished with disregard for CSXT's persistent requests and with contempt for an order of the court." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997). Here, Plaintiff similarly refused to comply with multiple Court orders. Even if she had not been warned that dismissal was a possible outcome of her intransigence, dismissal would be appropriate.

But Plaintiff was warned that her continued failure to participate in discovery and comply with the Court's orders could lead to severe sanctions, including dismissal. In its September 5, 2025 Order Granting Plaintiff's Motion to Extend the Stay of discovery as to the parties, it held that the case **would be dismissed for failure** to

prosecute **and follow the orders of the Court** if, on or before September 25, 2025, new counsel has not filed an appearance for Plaintiff or Plaintiff has not filed a notice that she would proceed pro se. ECF No. 86, PageID.2452-2453 (emphasis added).

Additionally, during the hearing held regarding Ms. Fox Perry's refusal to provide discovery, which Plaintiff attended, the Court noted that:

> "we are dealing with attorneys here, and I am going to hold all of you to the standard of, you have passed bar exams. You have taken oaths. You understand what it means to assert a privilege and what it does not. **So to follow the rules of this Court, and to follow the Federal Rules of Civil Procedure…I'm absolutely looking at you guys to a higher standard because you understand those rules. You are not pro se plaintiffs. You are not pro se just average lay people that don't have a sense of understanding what these rules mean and how they apply**. You also have the ability, even as you said, to go and do the research to understand when you have to produce something and when you don't." **Ex. 28**, ECF No. 94, PageID.2500-2501, pg. 32:25-33:12 (emphasis added).

The Court held that if non-privileged documents were withheld without an adequate legal basis, sanctions would issue. "…[I]f I get a privilege log and documents that are not at all privileged **we're absolutely going to address that, because, I'm sorry, I have to say that if you know better, we do better**." ECF No. 94, PageID.2503, pg. 35:7-12 (emphasis added).

### 4. Consideration of Less Drastic Sanctions

"[I]t is clear that the failure of the district court to impose or make explicit its consideration of lesser sanctions is not fatal" to the analysis of whether dismissal is appropriate. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997) (citing *Bank*

*One of Cleveland, N.A. v. Abbe,* 916 F.2d 1067, 1079 (6th Cir.1990)). This is particularly true where there has been contumacious conduct. *Harmon*, 110 F.3d 364, 368 (6th Cir. 1997). Indeed, the Sixth Circuit has "never held that a district court is without power to dismiss a complaint, as the first and only sanction." *Kelmendi v. Hogan*, No. 24-1884, 2025 WL 2901498, at *4 (6th Cir. Oct. 7, 2025) (citing *Harmon*, 110 F.3d at 368). Rather, "where a party demonstrates bad faith by failing to meet dates set by the Court for compliance with discovery, despite being warned about possible sanctions, the Court does not abuse its discretion in finding that such callous disregard of discovery orders justifies dismissal." *Bass*, 71 F.3d at 243. As set forth above, this is exactly what occurred here.

Even OMP's repeated recourse to the Court, and the Court's own orders, were not enough to compel Plaintiff to do what the Rules required, justifying dismissal. *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013). In *Kelmendi*, the Sixth Circuit upheld dismissal as a first and only sanction, where the district court concluded that dismissal was the only sanction that would "protect the integrity of the judicial process given [the p]laintiffs' conduct." No. 24-1884, 2025 WL 2901498, at *4. Similarly, in *Morgan v. St. Francis Hosp.*, No. 21-5037, 2021 WL 9528124, at *2 (6th Cir. Nov. 9, 2021), the Sixth Circuit upheld dismissal as a first and only sanction where the plaintiff refused to comply with the district court's order affirming a magistrate judge's decision to compel responses to written discovery and refused to comply with an order

to respond to a related motion for sanctions. Plaintiff's refusal to comply with both the October 24, 2025 Order and November 25, 2025 Minute Entry, as well as three orders from the Court to provide information and releases about her treaters, is even more egregious than the conduct at issue in these cases. Lesser sanctions than dismissal would not protect the integrity of the judicial process in this case.

### B. Alternative Sanctions to Dismissal Are Warranted Under Fed. R. Civ. P. 37 and the Court's Inherent Authority

Should the Court decide that dismissal is too severe a sanction, OMP seeks alternative sanctions under Rule 37 and the Court's inherent authority. A district court "has the inherent power to sanction a party when that party exhibits bad faith, including the party's refusal to comply with the court's orders." *Youn v. Track, Ins.*, 324 F.3d 409, 420 (6th Cir. 2003). "[A] court's reliance upon its inherent authority to sanction derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). "Even if there were available sanctions under statutes or various rules in the Federal Rules of Civil Procedure ... the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation." *Id.* At 511. To impose sanctions pursuant to its inherent authority, a district court must find that the individual: (1) engaged in conduct that hampered the enforcement of a court order; and (2) acted in bad faith. *Williamson v. Recovery Ltd. Partnership*, 826 F.3d 297, 302 (6th Cir. 2016). As set forth above, both elements are amply established here.

As alternative sanctions to dismissal, and in accordance with Fed. R. Civ. P. 37 (b)(2)(A)(i)-(vii), OMP would seek an order: directing that certain facts be taken as established; striking claims from Plaintiff's SAC and prohibiting her from introducing evidence on issues in dispositive motion practice and at trial; granting OMP additional time on the record to continue Plaintiff's deposition as to the topics she has refused to provide discovery on; and finding that Plaintiff's repeated failure to obey Court orders is contempt of court. In the event the Court grants alternative sanctions to dismissal, OMP seeks leave to present a proposed order.

### C. OMP Should Be Awarded Monetary Sanctions and Attorney Fees for Plaintiff's Contumacious Conduct

Rule 37(d)(3) mandates that "in addition to" the above sanctions, courts "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney fees, caused by the failure". Fed. R. Civ. P. 37(b)(2)(C). OMP expended significant time and money trying to obtain Plaintiff's compliance with the discovery rules and orders of this Court, to no avail. OMP is prepared to present its bill of costs and attorney fees under separate cover, should the Court grant its request for sanctions in this matter.

Dated: December 22, 2025                    Respectfully submitted,


                                            **DEBORAH GORDON LAW**
                                            **_/s/ Deborah L. Gordon_**
                                            Deborah L. Gordon (P27058)

*Attorneys for Defendant Olsman, MacKenzie, Peacock, P.C.*
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
***/s/ Deborah L. Gordon***
Deborah L. Gordon (P27058)
*Attorneys for Defendant Olsman, MacKenzie, Peacock, P.C.*
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com