# EXHIBIT 7



**McGinn**
**Montoya**
**Love**
**Curry &**
**Sievers**

| PARTNERS | ASSOCIATES | MCGINNLAW.COM |
|---|---|---|
| Randi McGinn | Cameron B. Bell | 201 Broadway Blvd. SE |
| Elicia Montoya | | Albuquerque, NM 87102 |
| Kathy Love | | randi@mcginnlaw.com |
| Katie Curry | | PHONE: 505.843.6161 |
| Michael E. Sievers | | FAX: 505.242.8227 |

May 16, 2025

**Via e-mail only**
Deborah Gordon
Elizabeth Marzotto Taylor
33 Bloomfield Hills Pkwy Ste 220
Bloomfield Hills, MI   48304

Re:   McKenna vs. OMP, et al.
        Discovery Conference

Dear Counsel:

This memo reflects our agreements and remaining issues from our two hour meet and confer phone call yesterday, May 15, 2025.

As an initial matter, we indicated that we can make no production without first having the protective orders we drafted in place.   Ms. Marzotto-Taylor indicated she would get them to us shortly.

As to the following documents identified as attorney-client privileged which were inadvertently produced, we have now taken thes back and are in the process of redacting the privileged information and creating a privilege log.    We intend to re-produce this information in approximately 3 weeks when we have finished our review of the voluminous text messages you have requested in discovery.  We understand this approach is acceptable to you.   However, we raised the need to have in place the two protective orders we submitted for your approval <u>before</u> the production occurs.

Documents and audio recordings explicitly containing material subject to attorney-client privilege as it relates to:
1.  past and present OMP clients, and
     a.  **(PL00031, 00035, 00040-41, 00043, 00051-52, 00056, 00070, 00073, 00074, 00090-00107, 00110, 00120-124, 00127, 00129-130, 00148-00151, 00153, 00159, 00164-167, 00172-176, 00178-179, 00181-184, 00188-190, 00192, 00194-195, 00203-204, 00206, 00208-210, 00218-219, 00259-260)**
2.  the PHPA, a non-party client shared between Plaintiff and the Riley Defendants.
     a.  **(PL00258-260, 00278-283, 00286-290, 00293-295, 00300-304)**

After much discussion, we agreed to the following:

## Interrogatories

**Interrogatory 3**:
- We will provide job search information going back to 2019.
- We will search e-mails or texts for the names of every firm/employer Ms. McKenna contacted via the websites identified - Flexjobs, Upwork, LawClerk, Talentify, LinkedIN.  As indicated, the subscriptions to these websites has expired.  We will investigate the cost of re-starting Ms. McKenna's subscriptions.   If the cost is prohibitive, we will let you know that we are just producing the data found through other communications.

**Interrogatory 4**:

You asked that I put together some language for an agreement on producing this information.  Here it is:

- If you will agree that we are not waiving attorney-client privilege by doing so, we will agree to produce the names and addresses of the attorneys contacted by Ms. McKenna, along with the reason they rejected her case.   We are not waiving the substance of any discussion Ms. McKenna had with those attorneys other than the reason for their refusing to represent her in the case.   In order to ensure that you do not ask questions beyond that narrow question, you agree not to contact those attorneys without us being on the call, e-mail, text or encounter.

**Interrogatory 6**:
- We will supplement this interrogatory with additional information.  Dates on which Plaintiff was allegedly "denied" workplace "accommodations" by OMP.

**Interrogatory 7**:      We have answered this interrogatory as to best as Ms. McKenna can regarding the date each client listed was contacted – either Feb. 4 or 5.    You have text messages containing the specific dates of the contact for those clients who responded.     You asked that Ms. McKenna check her phone records for contacts with other clients who may have decided to stay with OMP, but refused to provide those client phone numbers so Ms. McKenna could check the seven clients who decided to stay with OMP.   Without those numbers, it will be difficult to try to acertain the actual date between Feb. 4 or 5 upon which she contacted those clients.   She will see if she can do so.

**Interrogatory 8**: We will supplement the names of Plaintiff's direct supervisors and her job titles.

**Interrogatory 9**: We will follow up with Ms. McKenna on whether she ever made other complaints, reports, grievances, or allegations of harassment, discrimination, retaliation, assault, battery, etc.

**Interrogatory 10**: We will supplement with those for which we have contact information and give a brief description of subject matter for the witness.

**Interrogatory 11**: You clarified that you are not requiring Ms. McKenna to search her entire text or e-mail history from her universe of friends and family to find any communications tangentially discussing how she was doing.  She will/has searched all texts with OMP personnel for the requested information.   Plaintiff is not withholding names based on her objections.    As indicated, it is unlikely

she can recall every oral conversation/date she had with the requested witnesses that was not memorialized by a text or e-mail.   If she can do so, she will.

**Interrogatory 12**: Because Ms. McKenna is not claiming physical injury as a result of her emotional distress, we will not produce a list of her medical providers.   Although you claimed Michigan law allows this, you refused to produce any case that you claim allows this and told us to research the issue ourselves.

**Interrogatory 13**:   Although this information was not requested in the original interrogatory, we will provide the date that Plaintiff's Facebook and Instagram accounts were de-activated.

## Requests for Documents

When we make our massive production three weeks from now, as to **Requests No. 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 19, 21, 22, 23, 24, 25, 26, 27, 28, 31, 32, & 35**  we will let you know if anything is being withheld and will provide a privilege log.

We will get signed releases to you next week, but will, as discussed above, will not give permission for you obtain Ms. McKenna's medical records.

**RTP 3**: We have agreed to produce responsive communications with any current or former employee of OMP.   We requested a list of current and former OMP employees to make sure our search is accurate.  You refused to provide that list.

**RTP 4**:  We have already produced the information requested about postings related to OMP employees while traveling on what she could identify as a work trip.   Ms. McKenna's travel was kept on her work calendar with OMP, to which she was denied access upon her termination.   We asked and you refused to produce this calendar so she could easily search other dates she was out of town for work.

**RTP 5**: We did not understand your request in this RFP.   You explained it should have said "and/or".   As explained, we believe it is duplicative of other requests which have already been produced.

**RTP 7**: We cannot produce all of Ms. McKenna's communications with PHPA, particularly those communications before or after she left OMP, as they are attorney-client privileged.   We will not be searching for or providing her communications, assignments, meetings, events, earnings, and the scope and terms of her business relationship with the PHPA before or after her employment at OMP.   During the time that PHPA was a client of OMP, you have the requested information.   After the protective order is in place, we will be producing redacted texts relating to the time period at OMP and a privilege log.   I suggested other ways for you to determine Ms. McKenna's income with PHPA while at the Riley firm or after she left OMP, without breaching the attorney-client privilege.   Please let me know whether a profit and loss statement would satisfy you in this regard.

**RTP 9**: We previously agreed to produce Plaintiff's tax returns from 2023 once received and indicated that Ms. McKenna has an extension on her 2024 return.   It will also be produced when finalized.

**RTP 10**: We will supplement this response on what documents employment search documents she has going back to 2019.

**RTP 13**: We maintain our privilege objection to her communications with lawyers Ms. McKenna sought out for assistance.

**RTP 14**: You have all the documents related to Ms. McKenna's travel and communication for PHPA while it was being represented by OMP.   Ms. McKenna no longer has access to that documentation and you again refused to give us the calendar in your possession.  Anything else before or after her employment is privileged.   If you will limit this request to her time at OMP, she will supplement with anything she can identify without access to her calendar.

**RTP 19**: Once the protective order is filed, we will provide the documents we produced and pulled back and will supplement if we can find additional responsive documents.

**RTP 24**: We have responded to this request with numerous documents and will supplement with any relevant texts with Ms. Fox.

**RTP 25**: Plaintiff produced the requested information, including the contract for creation of the website, but will look for and, if found, will supplement with relevant texts, proofs of photos, e-mail of proofs, and invoice for bill for photos for website.

**RTP 27**: There are no documents related to communications with her "friend" who owns and allows her to use the space.

**RTP 28**: Plaintiff has not withheld any responsive documents and communications concerning her "office space in Maryland" and "transient" office spaces.   You have it all.   Although "transient" office spaces is a misnomer.   She works wherever she is with her computer.

**RTP 31**: We maintain our attorney-client privilege objection to all post-OMP business agreements between Plaintiff's new firm.   Understand your need to learn of firm earnings but, again, suggested other methods that do not reveal her work for current clients.   Please advise whether her financials, like a profit and loss statement, will suffice, with client names redacted.

**RTP 32**: There is no documents reflecting any non-written or other agreement as to the use of residential property in Maryland.   If our review of texts with Ms. Fox reveals anything mentioning this, that will be supplemented.

**RTP 34**: We will look to see if there are any text messages with the listed people and will supplement, if found.   Some of communications with Amanda Fox may be subject to redaction based on  attorney-client privilege.

**RTP 35**: You have narrowed your request for documents and communications related to Ms. McKenna running for office with the AAJ New Lawyers Division to January 1, 2019-March 1, 2024. We will supplement if there are any additional documents.

Please let me know if this accurately reflects our agreement.    Thank you for confirming you were not recording our phone call and agreeing to not record any of our calls or Zooms without informing us of the recording.

Best Regards,

Randi McGinn