**EXHIBIT A**
32

```
 1    ordered to do.  Why is it their responsibility to

 2    ask you if you complied with the court order?

 3              MR. DAVIS:  And your Honor, just for

 4    the record, two points I need to make.  One, the

 5    case I was talking about is called People versus

 6    Bartlett.  It's 2022, Westlaw, 413645.

 7              As such the Supreme Court made clear

 8    in Fisher 442 Mich. App. 575, the introduction of

 9    marital communication through other means, such as

10    the introduction of text messages is not precluded.

11    Therefore, the circuit court did not err by

12    concluding that the marital communication privilege

13    did not apply to the text messages.  That's the

14    Barrett case.

15              Second, how this came up, is I asked

16    Mr. Heid whether he still had any text messages,

17    whether he deleted them.  For all I know, he did

18    comply with the subpoena and maybe me deleted text

19    with his ex.  I didn't know that until Mr. Heid

20    confirmed that those texts still exist on his

21    phone, did I know for certain that the subpoena had

22    not been complied with.  And I'm not blaming

23    Mr. Heid, for sure, because it sounds like this was

24    not his personal decision.  That is how it came up

25              THE COURT:  Why were those messages
```

1 not produced, Mr. Altman or Ms. Russell?

2    MR. ALTMAN:  I don't have an answer

3 to that, your Honor.  I think we believed that the

4 marital privilege still applied.

5    THE COURT:  But the court

6 specifically ruled on that issue.

7    MS. RUSSELL:  Your Honor, we

8 produced -- we produced the text messages

9 unredacted.  That was what my understanding of the

10 order was when we produced the text messages that

11 were already there.

12    MR. ALTMAN:  The text messages that

13 were produced, your Honor, were post marital

14 messages.  And those were the court order.  And we

15 believed that the Court's order applied to the

16 post-marital text messages.

17    MR. DAVIS:  Your Honor, the issue of

18 the marital communications was -- actually,

19 Ms. Russell was in the case because this is the

20 Court's order of October 23.

21    We had to call.  And the order is

22 dated October 24.  The prehearing conference is

23 October 23.  So your Honor will have the emails

24 sent to Ms. Hosking in the day or two prior to the

25 23rd where this issue was raised.

1          The court's order says, I quote, ECF

2     97, third party Brandon Heid is ordered to produce

3     all responsive communications with Plaintiff in

4     unredacted format.

5          Our subpoena asked for all

6     communications with Ms. McKenna related to

7     Mr. Riley or Riley Hurley or the events in the

8     case.  Mr. Heid confirmed that he does have those,

9     but they weren't produced.

10          Again, I'm not blaming Mr. Heid.

11     He's not a lawyer.  He's a third party.  But our

12     subpoena requested all communications from 2019 to

13     the present.  The court ordered all such

14     communications to be produced.

15          And what we received was clearly

16     that.  And now, I've confirmed that the other

17     communications do exist.  They weren't deleted.

18     That's where we are right now.

19          THE COURT:  And I'm looking back to

20     that order that Mr. Heid was going to produce a

21     privilege log to the extent that he was claiming

22     privilege.  I'm assuming that didn't happen,

23     either?

24          MS. RUSSELL:  No, we --

25          MR. DAVIS:  No.

```
1                MS. RUSSELL:  -- we produced the

2       messages unredacted, your Honor, so there was no

3       need for a privilege log.

4                THE COURT:  You produced all

5       messages, all responsive communications?

6                MS. RUSSELL:  All of the messages

7       that were originally produced to Defendants that

8       had redactions in them, we produced all of them to

9       Defendant.  So these were the post --

10                THE COURT:  That's not what I asked

11       you, Ms. Russell.  I'm asking:  Have all

12       communications, per the court's order, third-party

13       Brandon Heid is ordered to produce all responsive

14       communications with Plaintiff in unredacted format

15       to the writing parties only, no later than

16       October 30, 2025.  And any assertion of

17       attorney-client privilege is to be recorded on a

18       privilege log produced to the Riley parties by the

19       same date.

20                So again, only to the Riley parties,

21       not to the OMP parties, but is to produce all

22       responsive communications.

23                Did you produce all responsive

24       communications by October 30?  Or did you

25       unilaterally decide that you weren't going to
```

1       produce some of them?

2                    MS. RUSSELL:  We have not produced

3       any messages from the time period of their

4       marriage, no, your Honor.

5                    THE COURT:  And the subpoena requests

6       documents during the course of their marriage, does

7       it not?

8                    MR. DAVIS:  Yes, your Honor,

9       January 1st, 2019, which predated the marriage, to

10      the present.

11                   THE COURT:  So how is that not a

12      blatant violation of the Court's order to produce

13      all communications that are relevant by

14      October 30th?

15                   (No response.)

16                   THE COURT:  It's not rhetorical.

17                   MS. RUSSELL:  I don't have an answer.

18      Our position is that we would like to brief the

19      marital privilege.

20                   THE COURT:  No, no, no you want to

21      brief the marital privilege now in January of

22      2026 --

23                   MS. RUSSELL:  I asked in this --

24                   THE COURT:  Simmer down.

25                   When in October of 2025, you had an