UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELYSE McKENNA,

       Plaintiff,

-vs-                                          E.D. Mich. #24-cv-12347
                                                  Hon. Brandy R. McMillion

ROBERT RILEY *et al.*,

       Defendants.

_____

## RESPONSE OF SALVATORE PRESCOTT PORTER & PORTER, PLLC, AND OF MOGILL & LEMANSKI, PLLC, TO <u>MOTION TO COMPEL</u>

Now come Salvatore Prescott Porter & Porter, PLLC, and Mogill & Lemanski, PLLC, by and through their undersigned counsel, and in response to the motion to compel filed by Defendants Riley and Riley & Hurley, P.C. [ECF No.143] pray this Court for an order denying the motion for the reasons set out in the attached brief.

                                                              Respectfully submitted,

                                                              <u>/s/Kenneth M. Mogill</u>
                                                              Kenneth M. Mogill
                                                              Mogill & Lemanski, PLLC
                                                             27 E Flint St, 2nd Floor
                                                             Lake Orion MI 48362
                                                             (248)814-9470

*kmogill@miethicslaw.com*

Attorney for Salvatore Prescott Porter & Porter PLLC and for Mogill & Lemanski, PLLC

Dated: January 29, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELYSE McKENNA,

    Plaintiff,

-vs-                                    E.D. Mich. #24-cv-12347
                                          Hon. Brandy R. McMillion

ROBERT RILEY *et al.*,

    Defendants.

_____

BRIEF IN SUPPORT OF
RESPONSE OF SALVATORE PRESCOTT PORTER & PORTER, PLLC, AND
OF MOGILL & LEMANSKI, PLLC, TO
<u>MOTION TO COMPEL</u>

<u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.

<u>*Regardless of whether Ms. McKenna waived the attorney-client privilege as to communications with attorneys she did not retain, she has not waived the attorney-client privilege as to communications with attorneys she did retain, Sarah Prescott and Kenneth Mogill.*</u>

II.

<u>*The subpoenaed materials are protected from disclosure by the attorney work product privilege.*</u>

## *MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT*

F. R. Evid. 502(a)(1)
*In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005)
*Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998)
*Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 862 (3rd Cir. 1994)
*United States v. Nobles*, 422 U.S. 225, 238 (1975)
*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)

## *STATEMENT OF RELEVANT FACTS*

On November 19, 2025, Defendants Riley and Riley & Hurley, P.C. [herein Riley], issued subpoenas *duces tecum* to Salvatore Prescott Porter & Porter, PLLC, c/o Jennifer Salvatore, and to Mogill & Lemanski, PLLC, c/o Kenneth M. Mogill, in connection with this case. The subpoenas, which were signed by Riley's attorney Thomas J. Davis, commanded production of the following by December 4, 2025:

1. All documents and communications between You and Plaintiff concerning the decision to file this Lawsuit, or concerning any potential litigation, legal claims, or causes of action involving Riley & Hurley or OMP. This request includes, but is not limited to, legal advice or other communications regarding:
   a. The viability of Plaintiff's potential claims or the potential consequences of her filing suit;
   b. Robert F. Riley's status or reputation in the legal community;
   c. Warnings that Plaintiff's filing a lawsuit would "ruin her career" or requiring her to "leave the state of Michigan"; and
   d. Any refusal by You or other attorneys to represent Plaintiff in litigation against Riley or Riley & Hurley.
2. All documents in your possession, custody, or control, not otherwise produced in response to the above requests, concerning this Lawsuit.

2

Both Ms. Prescott and the undersigned appropriately responded to Mr. Davis. On November 20, 2025, Ms. Prescott emailed Mr. Davis, noting that

> I can't begin to assess my opposing duties to the Court and to my former client based on what you sent. Please supply the briefing and discovery items that went along with the Court's order so I can properly understand what is responsive and discoverable. Also, I have a busy law practice and the line by line review this will require will occupy scores of hours of my and my counsel's time and will likely cost us $25,000 dollars or more. I need to understand why this would even arguably be on my firm, a third party, instead of Ms. McKenna, the party and the one whose (supposed) waiver over what you seek controls.

Exhibit G to Defendants' Motion to Compel.

On December 1, 2025, the undersigned wrote to Mr. Davis noting that, pursuant to Fed. R. Civ. P. 45(d)(2)(B), "the SPPP firm and Mogill & Lemanski object to the production sought by these subpoenas for the reasons set out below." Exhibit H to Defendants' Motion to Compel. Those reasons were then articulated in the body of the letter, including that –

1. The Court's October 24, 2025, Order Following Status Conference is directed at Ms. McKenna, not at lawyers who previously represented her;

2. The October 24, 2025, order finds a waiver only of "the attorney-client privilege with respect to the communications [Ms. McKenna] had with attorneys she consulted about filing this litigation by alleging the contents of communications in her Second Amended Complaint", that the unnamed attorneys referred to in the Second Amended Complaint are all attorneys

3

>   who refused or declined to represent Ms. McKenna and with whom Ms. McKenna did not at any point enter into an attorney-client relationship and that the court's order did not find a waiver of privilege as to any attorney with whom Ms. McKenna had an attorney-client relationship as to her claims against Riley;
> 
> 3. The subpoenas are overly broad in scope in that they seek disclosure of "material that is not relevant to any party's claim or defense, material that is not proportional to the needs of the case, material that imposes an undue burden on both Ms. Prescott's firm and my firm, and material that is neither admissible nor likely to lead to the discovery of admissible evidence"; and
> 
> 4. The materials sought are protected from disclosure not only by the attorney-client privilege but also by the attorney work product privilege.

*Id.*

In response, Mr. Davis nevertheless sought "immediate[]" compliance and threatened to "report your non-compliance to the Court and seek . . . all attendant relief available." *Id.* The undersigned replied to Mr. Davis the next day, December 2, 2025, stressing the importance of providing Ms. McKenna's attorneys with the opportunity afforded under the rules for a judicial determination before arguably privileged material is disclosed:

> The court's order does not state what you assert it should be interpreted to mean. As such, any lawyer in Ms. Prescott's and my circumstances

4

> is left to decide whether to interpret the order ourselves or await a definitive ruling by the court. To pose this question is to answer it. If we disclose information and material prior to a judicial determination as to the applicability of the privilege (and any other grounds for enforcing or quashing the subpoena), we risk being found to have violated our duties under MRPC 1.6 and civil liability if we wrongly agree with your interpretation of the October 24 order; if we maintain the status quo pending a judicial determination – the common and appropriate course of action in such circumstances – we avoid risking any such violation while also avoiding the risk of prejudice to either party.
>
> . . .
>
> Ms. McKenna's counsel are entitled to a reasonable opportunity to assert the privilege and any other grounds they may choose to assert in support of a motion to quash.

Defendants' assertion in their brief that Ms. Prescott "initially offered to comply, on condition that the Riley Parties pay '$25,000 dollars or more' in compliance costs", Brief at p 3, turns Ms. Prescott's words upside down. Far from "offer[ing] to comply" or asking the Riley Parties to "pay '$25,000 or more' in compliance costs," Ms. Prescott's email is clear that she was asking for relevant information in order to assess her duties and she was concerned that compliance "will likely cost *us* $25,000 or more". *Id.* (emphasis added).

Defendants now characterize as "obstruction" Ms. Prescott's and the undersigned's entirely reasonable responses to Mr. Davis's attempts to gain disclosure of the subpoenaed materials without a judicial determination of the validity of his demands. Defendants assert that "Mogill and Prescott's refusal to

5

comply is perhaps the most brazen." Brief at p 8. Defendants' brief is, however, silent as to how Ms. Prescott's and the undersigned's reliance on a process specifically provided for in the rules is in any way inappropriate. Ms. Prescott's and the undersigned's refusal to disclose presumptively privileged material before Ms. McKenna's counsel has had a chance to litigate her privilege claim, despite a threat to "seek . . . all attendant relief available", is not in any way "obstruction" or "brazen".

Defendants' motion to compel was filed on January 16, 2026.[1]

### *ARGUMENT*

### I.

### *Regardless of whether Ms. McKenna waived the attorney-client privilege as to communications with attorneys she did not retain, she has not waived the attorney-client privilege as to communications with attorneys she did retain, Sarah Prescott and Kenneth Mogill.*

As this Court well knows, the attorney-client privilege protects the confidentiality of private communications between a client and their attorney where the purpose of the communication is the giving or receiving of legal advice. This privilege, the oldest of the privileges in our legal system, exists to encourage candid communications between client and attorney and, therefore, to maximize a lawyer's ability to provide their client with fully informed legal advice:

---

[1] Defendants' motion does not include the requisite disclosure as to defense counsels' compliance with their meet-and-confer obligations under L.R. 7.1(a)(2).

6

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law... Its purpose is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice depends upon the lawyer's being fully informed by the client.

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Because the privilege "serves the interests of justice, it is worthy of maximum legal protection." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 862 (3rd Cir. 1994).

Moreover, while the privilege may be waived by a voluntary disclosure to a third party, the law is clear that a purported waiver through disclosure must be intentional. F. R. Evid. 502(a)(1). See also Advisory Committee notes re Subdivision (a). In order for an act to be intentional, the law "generally require[s] that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (cite omitted; emphasis in court's opinion).

Further, an implied waiver is construed narrowly. *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005). As Magistrate Judge Grand of this Court stressed, citing *Lott* in *International Union UAW v. Honeywell International, Inc.*, 300 F.R.D. 323 (E.D. Mich. 2014), "'[i]mplied **waivers** are consistently construed narrowly,'" and a court "'must impose a **waiver** no broader than needed to ensure the fairness of the proceedings before it'" (bold typeface in *Honeywell*).

In the circumstances at bar, application of these standards compels the conclusion that any implied waiver of the privilege as to communications with attorneys with whom Ms. McKenna merely consulted presents a qualitatively different set of circumstances from communications between Ms. McKenna and Ms. Prescott and the undersigned, as the latter are attorneys she did retain and with whom she had an attorney-client relationship as to the matters underlying this litigation. By virtue of the differences in the nature of the relationships, communications with one's attorneys are reasonably expected to be far more detailed and comprehensive than are communications with an attorney with whom one consults but does not retain. Attorneys one has retained are expected to be in possession of far more information than are attorneys with whom one only consulted. Given the far greater consequences of a finding of waiver as to the latter, the need for narrowly construing any finding of implied waiver is particularly great when a court is asked to find waiver as to a party's former counsel.

Distinguishing between attorneys with whom someone consulted and attorneys have been retained is also consistent with the rules of professional conduct. Rule 1.18 of the Michigan Rules of Professional Conduct – like Model Rule 1.18 (its counterpart in the American Bar Association Model Rules of Professional Conduct on which the Michigan rules are based) – treats consulted but not retained

attorneys differently in multiple respects.² While Rule 1.18(b) provides for the confidentiality of disclosures made by a prospective client, the rule elsewhere treats consulted but not retained attorneys differently for several purposes – disqualification, Rule 1.18(c), conflict waiver, Rule 1.18(d)(1), and the availability of screening. Rule 1.18(d)(2). In so providing, the rule embodies the materially different realities of a transient consulting relationship and an ongoing attorney-client relationship.

For these reasons, even if there was an implied waiver of the attorney-client privilege as to Ms. McKenna's consultations with attorneys she did not retain, that waiver cannot reasonably be found to extend to Ms. McKenna's communications with Ms. Prescott and the undersigned during the course of their attorney-client relationship. In this respect, it is especially significant that the portions of the Second Amended Complaint [ECF No. 23]³ referencing communications with attorneys with whom Ms. McKenna consulted do not also include *any* reference to communications Ms. McKenna had with Ms. Prescott and the undersigned. As to Ms. Prescott and the undersigned -- attorneys with whom Ms. McKenna did have an actual, ongoing attorney-client relationship as to the matters in issue in this case -- there is no basis for a finding of waiver.

---

² The Michigan Rules of Professional Conduct are the controlling standards for attorney conduct in this District. L.R. 88.22(b).
³ See Second Amended Complaint, paragraphs 100, 101.

For these reasons, the motion to compel should be denied as to Salvatore Prescott Porter & Porter PLLC and as to Mogill & Lemanski, PLLC.

II.

*The subpoenaed materials are protected from disclosure by the attorney work product privilege.*

Apart from any issue regarding the attorney-client privilege, the subpoenas also seek disclosure of materials subject to the attorney work product privilege. This privilege applies to "materials prepared by an attorney 'acting for his client in anticipation of litigation.'" *United States v. Nobles*, 422 U.S. 225, 238 (1975). The "work-product doctrine is distinct from and broader than the attorney-client privilege." *Id.* at n. 11; see also *In re Columbia/HCA Healthcare Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002). The doctrine applies to "a document [that] was "'prepared or obtained *because of* the prospect of litigation.'" *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) (cites omitted).

While the attorney-client relationship between Ms. McKenna and Ms. Prescott's and the undersigned's firms did not extend to continued representation of her in the event of litigation as to her claims, the parties explicitly understood that, in the absence of a pre-litigation settlement, Ms. McKenna's claims included "the prospect of litigation". As such, documents prepared by Ms. Prescott or the undersigned "because of the prospect of litigation" are subject to the work product privilege.

10

Defendants do not claim that Ms. Prescott or the undersigned have waived confidentiality as to any material subject to the attorney work product privilege. Any documents subject to the protection of this doctrine, therefore, remain protected from disclosure, and the motion should also be denied as to all such documents.

## *RELIEF REQUESTED*

For all the reasons stated above, the motion to compel should be denied.

Respectfully submitted,

*/s/Kenneth M. Mogill*
Kenneth M. Mogill
Mogill & Lemanski, PLLC
27 E Flint St, 2nd Floor
Lake Orion MI 48362
(248)814-9470
kmogill@miethicslaw.com

Attorney for Salvatore Prescott Porter & Porter PLLC and for Mogill & Lemanski, PLLC

Dated: January 29, 2026

11

## CERTIFICATE OF SERVICE

Kenneth M. Mogill certifies that on January 29, 2026, he served copies of

RESPONSE OF SALVATORE PRESCOTT PORTER & PORTER, PLLC, AND
OF MOGILL & LEMANSKI, PLLC, TO
MOTION TO COMPEL

and

BRIEF IN SUPPORT OF
RESPONSE OF SALVATORE PRESCOTT PORTER & PORTER, PLLC, AND
OF MOGILL & LEMANSKI, PLLC, TO
MOTION TO COMPEL

upon all counsel of record in this matter.

/s/*Kenneth M. Mogill*