UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ELYSE MCKENNA,

    Plaintiff,

v.

ROBERT F. RILEY et al.

    Defendants.

Case No. 24-cv-12347

Hon. Brandy R. McMillion

Magistrate Judge Elizabeth A. Stafford

---

**Defendants/Counterclaim Plaintiffs Riley and Riley & Hurley P.C.'s Reply to Plaintiff and Mogill/Prescott's Coordinated Response to Motion to Compel Compliance with Rule 45 Subpoenas on McKenna's Prior Attorneys Joe Medici, Matthew Besser, Ken Mogill, and Sarah Prescott**

## Introduction

Plaintiff Elyse McKenna made sweeping, public allegations in her Second Amended Complaint that she was "forced" to file pro se because multiple attorneys she consulted thought her claims were viable but were too afraid of Robert Riley to represent her. The Court correctly held that by using these consultations as a sword, she waived privilege. Now, as discovery trickles in revealing that the "fear" narrative was a post-hoc rationalization and that Prescott advised her to leave Michigan as a settlement tactic, McKenna and her ex-counsel are scrambling to undo the waiver.

Mogill and Prescott's opposition is merely an untimely request for reconsideration—one they lack standing to make. The privilege belongs to McKenna, and this Court has already ruled she waived it. Mogill and Prescott had a choice: comply or face contempt. They chose obstruction.

McKenna's attempt to join their resistance is equally meritless. Caught in her own contradictions, she essentially asks this Court for a do-over, demanding that the Court ignore her allegations and disregard the substantial evidence of additional waivers to third parties like her friend Lauren Studley and her therapist Katy Cranston. But there are no "take-backs" on waiver. The cat is out of the bag. McKenna referenced the substance of her legal consultations in a public filing to bolster her claims. She cannot now reassert privilege to hide evidence that would prove that she lied in her Second Amended Complaint.

I.  **McKenna Already Conceded that the Court's Order Applied to Medici, Besser, Mogill, and Prescott.**

McKenna and her former counsel ignore the basis of this Court's waiver order: the *allegations* of McKenna's Second Amended Complaint. McKenna alleges that she consulted attorneys who refused to sue Riley despite valid claims and cites two distinct time periods when that happened: when she left R&H in 2021, and again in 2023. ECF No. 23, PageID.561-62, 581, ¶¶ 99-101, 196, 208. It is also undisputed that the *only* attorneys McKenna identified from the 2023 time-period are Mogill and Prescott; there is no one else she could be referring to.[1]

McKenna's attempt to relitigate the scope of the Court's order should be rejected outright, purely on a procedural basis. *See* L.R. 7.1(h). It should also be rejected on the merits. McKenna's position is that the Court should limit its "waiver" ruling to the reasons the lawyers chose not to bring suit on her behalf. ECF No. 167, PageID.5835. She does not explain why, nor could she, since she disclosed *both* her attorneys' purported view of the merits *and* their reasons for declining to sue. Both aspects of the waiver are critical here; indeed, the "sting" of this charge is that

---

[1] In yet another example of McKenna's lack of candor with the Court, she now claims that she consulted Deborah Gordon for a second time in 2023, and that *Gordon* was the person she was referring to in ¶ 208 of her Second Amended Complaint. ECF No. 167, PageID.5834. Yet McKenna, in an earlier-filed affidavit, claimed that the second consultation with Gordon was in February 2024. ECF No. 36-2, PageID.1623 ¶¶ 16-18. There are only two possibilities: McKenna either perjured herself in the affidavit, or her counsel is making misrepresentations to the Court now.

multiple lawyers refused to prosecute claims they found *meritorious*. And that assertion is critical to McKenna's damages narrative: that Riley's conduct ruined her career in Michigan and forced her to leave the state. ECF No. 23 ¶ 244, 290. As the Court's order held, the Riley Parties are entitled to test that narrative.

Ultimately, McKenna knows full well that the Court's order, as issued, applied to Medici, Besser, Mogill, and Prescott. That Order was clear: it covered "[i]nformation, documents, and testimony." ECF No. 97, PageID.2512. Consistent with that order, McKenna testified at her deposition as to why all four attorneys allegedly did not litigate her case. ECF No. 113-22 at PageID.3080-3081, 3082, 3084-3085. Neither she nor her ex-counsel should be allowed to ignore the part of the same order requiring production of "documents" on the waived topics, including their perceived "merits" of the case *and* the reasons they refused to file suit.

## II.     McKenna waived privilege as to Besser, Mogill, and Prescott when she disclosed their advice to third parties.

The Court's clear order is reinforced by evidence that McKenna disclosed advice from Besser, Mogill, and Prescott's advice to third parties, including Lauren Studley and therapist Katy Cranston. ECF No. 143, PageID.4979-4980. Again, such disclosure constitutes a subject-matter waiver. *Leibel v. Gen. Motors Corp.*, 250 Mich. App. 229, 242 (2002).

McKenna's response to this waiver is incoherent. She asserts that her statements were "personal reactions" rather than "legal reasoning, litigation strategy,

-3-

or attorney work product." ECF No. 167, PageID.5838. This is false; McKenna explicitly discloses specific advice given by Besser and Prescott. She then claims that these "personal," "non-legal" texts to Studley are nonetheless privileged because Studley is a lawyer. *Id.* at PageID.5834, n.1. She is wrong here too.

      **A.    McKenna fails to show she sought legal advice from Studley within an attorney-client relationship.**

A "communication is not privileged simply because it is made by or to a person who happens to be an attorney." *In re Rospatch Sec. Litig.*, 1991 WL 574963, at *8 (W.D. Mich. Mar. 14, 1991). Thus, when "one consults an attorney not as a lawyer but as a friend… the consultation is not professional nor the statement privileged." 1 McCormick on Evid. § 88 (9th ed.). Privilege only attaches to communications made "in the context of an attorney-client relationship" and "in connection with the provision of legal services." *Est. of Nash v. Grand Haven*, 321 Mich. App. 587, 595 (2017); *accord Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (reciting near-identical federal test). The "scope of the privilege is narrow," *Nash*, 321 Mich. App. at 593, and the "burden of establishing the existence of the [attorney-client] privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). Courts reject claims of attorney-client privilege unsupported by evidence. *Zamorano v. Wayne State Univ.*, 2008 WL 3929573, at *2 (E.D. Mich. Aug. 22, 2008).

Here, McKenna offers *zero* evidence to support the notion that her text messages with Lauren Studley were anything other than what they appear to be: two friends informally gossiping. ECF No. 143-10. McKenna does not expressly seek legal advice in any of the texts. Studley does not offer legal analysis. The texts McKenna claims are privileged fall amid other personal texts venting and complaining about Riley & Hurley—her hours, her unhappiness with her assistant, and displeasure with firm billing policies, ECF No. 161-2—that, even now, McKenna does not pretend are privileged. *See Jones v. United States*, 828 A.2d 169, 176 (D.C. 2003) (finding no privilege in communications with party's lawyer girlfriend, citing, *inter alia*, the "non-legal" nature of the communications at issue).

McKenna also does not point to a retainer agreement, billing records, a conflict check, a file number, or any other indicia of representation. Indeed, McKenna could not reasonably believe that Studley—a relatively junior medical malpractice defense lawyer[2] in the large Michigan firm of Giarmarco, Mullins, & Horton, P.C.—was authorized to moonlight as her employment attorney, on a matter outside Studley's normal practice area, and adverse to a mediator that Studley's firm frequently mediated with. *See United States v. Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997) (looking to similar facts in finding attorney acted as a friend).

---

[2]https://gmhlaw.com/blog/2020/12/01/gmh-announces-new-shareholder-lauren-m-studley/ (noting Studley became a shareholder only months before the 2021 texts).

Finally, McKenna herself never moved to quash on the basis that Studley was her lawyer. Studley did not believe these texts to be privileged—after all, she produced them—and she did not claim to be McKenna's ex-lawyer when objecting to the subpoena. ECF No. 105, PageID.2567. McKenna has manufactured an entirely after-the-fact privilege claim to hide damaging evidence that she disclosed to her friend. She has thus waived privilege over Besser and Prescott's legal advice.

### B.    McKenna's disclosure to non-lawyer Katy Cranston of Prescott's advice to leave the state as a settlement tactic is not privileged.

Regardless of the Studley issue, McKenna fails to explain why her disclosure of Prescott's legal advice to therapist Katy Cranston is not a waiver. She tries to pass off the disclosed advice as irrelevant, but this is ludicrous. McKenna explicitly claims, in her Second Amended Complaint, that Riley and OMP's conduct forced her to leave the state. ECF No. 23, ¶¶ 12, 244. She disclosed to her therapist that this was a lie: leaving the state was her lawyer's idea, concocted for financial gain. ECF No. 143-11. This is definitive evidence refuting one of McKenna's core allegations and proving her willingness to make false statements in pleadings when it suits her.

Here, as the Court has held, McKenna waived her psychotherapy privilege by putting her mental health at issue. When that happens, reference to attorney-client communications within the therapist notes is not privileged. *Murray v. Bd. of Educ. of City of N.Y.*, 199 F.R.D. 154, 156-157 (S.D.N.Y. 2001) (addressing this precise scenario of attorney-client privileged communications embedded within therapy

-6-

notes, finding no privilege, and ordering production of unredacted notes); *accord Faulkenberry v. Austin*, 2024 WL 4056761, at *2 (D. Md. Sept. 5, 2024) (same).

McKenna disclosed to Cranston that her then-lawyer (which was Prescott or Mogill, given the late 2023 timeframe) advised her to leave the state to help obtain a settlement. That disclosure of advice is also a waiver as to her then-counsel. For this reason too, Prescott and Mogill should be required to comply with the subpoena.

### Conclusion

This Court issued an order holding that McKenna waived privilege over communications by putting them at issue in her pleadings. And it has now been established that McKenna further waived privilege over her communications with these lawyers by disclosing them to a friend and a therapist. The Riley Parties request that the Court grant this motion and compel compliance with the subpoenas in full.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By:/s/Thomas J. Davis
Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

*Attorneys for Defendants/Counterclaim Plaintiff Riley and Riley & Hurley, P.C.*

Dated: February 2, 2026

-8-

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 2, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

      */s/ Thomas J. Davis*
      Thomas J. Davis (P78626)
      Kienbaum Hardy
      Viviano Pelton & Forrest, P.L.C.
      280 N. Old Woodward Ave., Ste. 400
      Birmingham, MI  48009
      (248) 645-0000
      tdavis@khvpf.com

599971