UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ELYSE MCKENNA,

      Plaintiff,

v.

ROBERT F. RILEY et al.

      Defendants.

Case No. 24-cv-12347

Hon. Brandy R. McMillion

Magistrate Judge Elizabeth A. Stafford

---

**Defendants/Counterclaim Plaintiffs Riley and Riley & Hurley P.C.'s Motion to (1) Compel Lauren Studley, Brandon Heid, and Jared Smith to Comply with Subpoenas; to (2) Compel McKenna to Produce Unredacted Texts; and (3) for Sanctions against Heid's Counsel for Violating a Court Order**

Defendants/Counterclaim Plaintiffs Robert F. Riley and Riley & Hurley, P.C. (the "Riley Parties") move this Court (1) to compel compliance with the Rule 45 subpoenas served on Lauren Studley, Brandon Heid, and Jared Smith, including the production of unredacted texts; (2) to order McKenna to produce unredacted texts with Studley that she improperly withheld as "privileged," and (3) for sanctions against Heid's counsel for disobeying the Court's January 27 order to produce all McKenna-Heid communication unredacted. The Court authorized this motion, pursuant to its internal protocols, on February 3 and February 12, 2026.

By: */s/Thomas J. Davis*
KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.
Thomas J. Kienbaum (P15945)
Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
tkienbaum@khvpf.com
ehardy@khvpf.com
tdavis@khvpf.com
*Attorneys for Robert F. Riley and*
*Riley & Hurley, P.C.*

Dated: February 12, 2026

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ELYSE MCKENNA,

      Plaintiff,

v.

ROBERT F. RILEY et al.

      Defendants.

Case No. 24-cv-12347

Hon. Brandy R. McMillion

Magistrate Judge Elizabeth A. Stafford

---

**Defendants/Counterclaim Plaintiffs Riley and Riley & Hurley P.C.'s Brief in Support of Motion to (1) Compel Lauren Studley, Brandon Heid, and Jared Smith to Comply with Subpoenas; to (2) Compel McKenna to Produce Unredacted Texts; and (3) for Sanctions against Heid's Counsel for Violating a Court Order**

# Table of Contents

Statement of Issues Presented ........................................................................ ii

Controlling or Most Appropriate Authority.................................................. iii

Introduction ....................................................................................................1

Background ......................................................................................................2

      A.    Studley unilaterally redacts responsive text chains for
           "relevance" and makes half-hearted privilege objections
           to the rest—objections that conflict with McKenna's own
           recent production.........................................................................2

      B.    Brandon Heid defies the Court's order to produce "ALL
           responsive communications" in "unredacted format." .........................4

      C.    Jared Smith disregards his subpoena altogether, recycling
           objections the Court has already rejected............................................5

Argument........................................................................................................6

I.     Studley has not complied with the Riley Parties' subpoena, and
      both she and McKenna should be ordered to produce all texts
      unredacted. ...........................................................................................6

      A.    Neither Studley nor McKenna may redact otherwise
           responsive documents for relevance. ...................................................6

      B.    McKenna cannot claim privilege in communications with
           a friend.................................................................................................8

II.    Heid's counsel violated the Court's order by failing to produce
      all unredacted responsive materials.................................................11

III.   The Court should compel Jared Smith to comply with the
      subpoena. ...........................................................................................14

      A.    The Court has "jurisdiction" to compel Smith's
           compliance...........................................................................................14

      B.    Smith's objections are meritless.........................................................17

## Statement of Issues Presented

I.    **The Improper Relevance Redactions.** Responsive documents may be redacted only for privilege, not for "relevance." Studley, Heid, and McKenna all unilaterally blacked out portions of responsive text-message chains based on their own relevance determinations, even though this Court has overruled relevance-based objections to the request for these texts. Should the Court compel production of unredacted versions of these communications?

II.    **Studley and McKenna's Meritless Privilege Claims.** The attorney-client privilege protects only communications made for the purpose of obtaining legal advice from an attorney acting in that capacity, not informal gossip between friends. McKenna and Studley make inconsistent, cherry-picked privilege redactions to their text chains, yet there are no indicia of an attorney-client relationship and all the objective evidence points the other way. Should the Court reject these privilege assertions and require full production?

III.   **Heid's Attorneys' Violation of the Court's Production Order.** On January 27, 2026, the Court ordered Heid's counsel Russell and Altman to produce "ALL responsive communications in unredacted format." In defiance of that order, Heid's counsel produced text chains that omitted 68 images, made improper "relevance" redactions, and withheld communications with the non-lawyer Heid on frivolous claims of attorney-client privilege. Should the Court order full production and impose the sanctions promised in its prior order?

IV.   **The Court's Power to Compel Smith to Respond to a Subpoena.** Rule 45's geographic limitations are non-jurisdictional claim-processing rules that are waived if a non-party fails to timely object or move to quash. Jared Smith did not raise any geographic objection within 14 days of service and instead engaged in months of evasion and taunting correspondence. Given Smith's waiver and the fact that the subpoena requires only electronic production, should the Court compel Smith's compliance?

V.    **Smith's Meritless Substantive Objections.** On the merits, Smith raises makeweight, perfunctory arguments already rejected by this Court, like "overbreadth" and "friendship" privacy privileges. And Smith, who has had the subpoena for months, now claims that he has not had enough time to comply with the subpoena. Should the Court reject these derivative excuses and order immediate compliance?

**Controlling or Most Appropriate Authority**

Federal Rule of Civil Procedure 45

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)

*Est. of Nash v. Grand Haven*, 321 Mich. App. 587 (2017)

*Ghandi v. Police Dep't of City of Detroit*, 74 F.R.D. 115 (E.D. Mich. 1977)

*Greenberg v. Amazon.com, Inc.*, 2026 WL 21258 (W.D. Wash. Jan. 5, 2026)

*Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17 (2017)

*Hernandez v. Kolkman*, 347 F.R.D. 551 (D. Utah 2024)

*In re Davol, Inc.*, 2021 WL 630826 (S.D. Ohio Feb. 18, 2021)

*In re Marriott*, 2020 WL 5525043 (D. Md. Sept. 14, 2020)

*In re Rospatch Sec. Litig.*, 1991 WL 574963 (W.D. Mich. Mar. 14, 1991)

*Kontrick v. Ryan*, 540 U.S. 443 (2004)

*Kubiak v. Hurr*, 143 Mich. App. 465 (1985)

*New Falls Corp. v. Soni*, 2020 WL 2836787 (E.D.N.Y. May 29, 2020)

*People v. Bortnik*, 28 Mich. App. 198 (1970)

*Reed v. Baxter*, 134 F.3d 351 (6th Cir. 1998)

*Rittgers v. Hale*, 2018 WL 338218 (D. Kan. Jan. 9, 2018)

*United States v. Brown*, 223 F. Supp. 3d 697 (N.D. Ohio 2016)

*United States v. Dakota*, 197 F.3d 821 (6th Cir. 1999)

*United States v. Evans*, 113 F.3d 1457 (7th Cir. 1997)

*Weidman v. Ford Motor Co.*, 340 F.R.D. 106 (E.D. Mich. 2021)

*ZMCC Props. LLC v. PrimeOne Ins.*, 2021 WL 1737135 (E.D. Mich. May 3, 2021)

*Zamorano v. Wayne State Univ.*, 2008 WL 3929573 (E.D. Mich. Aug. 22, 2008)

## Introduction

Elyse McKenna and her close allies—all named as key witnesses in her initial disclosures—have been engaged in a coordinated effort to suppress key evidence. McKenna, until days ago, refused to produce anything; even now, she refuses to produce complete, ESI-plan compliant documents. Her friends are doing the same.

**Lauren Studley**—whose objections to her subpoena were already overruled—unilaterally redacted large portions of responsive text chains on "relevance" grounds, and now she and McKenna are attempting to withhold various damaging texts by "asserting privilege" over them. Until weeks ago, McKenna never claimed Studley was her lawyer, and these privilege redactions are a ruse.

Next, **Brandon Heid**, represented by McKenna's lawyers, is in open violation of this Court's order to produce <u>unredacted</u> responsive documents by January 29, 2026. His production, however, omitted 68 images from the text exchanges and included "relevance" redactions. And most absurdly, the non-attorney Heid is withholding documents with McKenna based on attorney-client privilege.

Finally, **Jared Smith**, McKenna's current partner and an attorney, refuses to comply with the subpoena in any capacity. He is, at least, indirectly represented by McKenna's current counsel, who has repeatedly joined in his objections and advocated on his behalf in pre-motion conferences. He seems to believe that he is immune from this Court's orders because he lives in Kentucky. He is wrong.

## Background

**A.     Studley unilaterally redacts responsive text chains for "relevance" and makes half-hearted privilege objections to the rest—objections that conflict with McKenna's own recent production**.

On January 7, 2026, Lauren Studley produced text messages in response to a Court order. These messages contained extensive, highly-damning evidence showing—among other things—McKenna and Studley manufacturing accusations of harassment against Riley after an attorney told her she had no case, and Studley's suggestion that McKenna sue Riley so that she wouldn't need to work anymore. ECF No. 134-9, PageID.4852-4857. The production also confirmed that McKenna provided Studley and others with pre-filing drafts of her federal *pro se* complaint. *See* ECF No. 143-10, PageID.5050. A large fraction of the text message chains, however, were redacted and no privilege log was produced. On January 22, the Court ordered Studley's lawyers to produce the texts unredacted, or else provide a log.

When finally forced to issue a log, Studley confirmed most of her redactions were based on relevance, not privilege. Ex. A, Log. The rest *are* based on privilege—including several critical texts sent while McKenna and Studley were recasting holiday cards and texts as "romantic." *Compare id.* (8/21/21 entries) *with* Ex. B at 120-121. In every case, she does not assert privilege directly but says that "McKenna stated that she is invoking privilege regarding this conversation." *See* Ex. A. This phrasing suggests Studley did not herself view the conversations as privileged.

On February 9, 2026, McKenna sent an Excel spreadsheet of texts with Studley, which omits all images. *See, e.g.*, Ex. C (Excerpts). McKenna's "privilege" invocations on her text production are inconsistent with the ones she "invoked" as to Studley, and are materially identical—and part of exactly the same conversation chain—as to other messages *both* McKenna and Studley did not redact:

- McKenna produces texts from August 20, 2021 where she discloses advice from Cheryl Chandler that "she didn't want me to call anything sexual harassment," with Studley stating "You could take out the word romantic and just say 'advances' and let it be implied." Ex. C at 7364-7379. McKenna redacts texts in the middle of this exchange, *id.*, while Studley didn't produce them at all, *see* Ex. B at 00111.

- McKenna produces a text from August 21 where Studley and McKenna discuss the "wording" of a letter to Riley, confirming it did not accuse him of sexual harassment but was ambiguous enough to make that accusation later. Ex. C at 7584-86. Studley redacts these texts. Ex. B

- McKenna's production includes additional texts regarding legal advice she received from Deb Gordon that Studley redacted. *Compare* Ex. C at 7602-7620 *with* Ex. B at 00117-00118. But McKenna selectively omits one text. Given the context, it appears this is her recitation of that advice, as she leaves in her retort to the same: "But that's not the case. I can see both perspectives…" Ex. C at 7608-7610.

- McKenna's production contains additional texts that Studley redacted while the two were manufacturing the "romantic" accusations. She sends Studley an image (which she omits) and says: "Romantic??? I'm trying to make sure he's been romantic now." She then sends another (omitted) photo. Ex. C at 7634-7638; Ex. B at 00118-119.

- McKenna then *omits* as "privileged" two images. Ex. C at 7639-7641. These are included in Studley's production: they are merely screenshots of two Riley texts. *See* Ex. B at 00119. These are plainly not privileged communications, but existing facts.

-3-

- Studley then redacts more texts in this exchange that McKenna does not, including McKenna's statement "Ugh I just don't want to push send on this email and be wrong," *compare* Ex. C at 7642-44 *with* Ex. B at 00119-00120. McKenna's production again omits images. *Id.*

These inconsistencies reveal McKenna and Studley cherry-picking and selectively omitting unfavorable texts from a larger discussion on the *same* subject matter, rather than showing a privileged meeting between McKenna and her lawyer seeking legal advice. McKenna and Studley also withhold as "privileged" McKenna's pre-filing draft complaint of August 30, 2024. Ex. A at 3.

### B. Brandon Heid defies the Court's order to produce "ALL responsive communications" in "unredacted format."

On October 24, 2025, the Court ordered Brandon Heid to respond to the Riley Parties' subpoena by October 30, 2025. *See* ECF 97. He missed that deadline. At his deposition, Heid's counsel—who also represent McKenna—expressed defiance with that order. *See* Ex. D, Heid Dep. 20-22. After a mid-deposition conference with the Court, it issued a second order on January 27 finding that McKenna's counsel, Kimberly Russell and Keith Altman, were in direct violation of the original Order. *Id.* at 25-41. The Court commanded them to produce all responsive, unredacted communications by January 30 or face sanctions. *See* Jan. 27, 2026 Text-Only Order.

McKenna's counsel remained undeterred. They produced Heid's texts in an unreadable format, stripped of images—an intentional step backward from the readable screenshots Heid's prior counsel had provided. *Compare* Ex. E *with* ECF

No. 113-5, PageID.2921-2922. Heid also redacted messages based on "relevance" and withheld an August 2021 text chain under a claim of "privilege" even though McKenna was not Heid's lawyer; she was his spouse. Ex. F, Heid Log. Heid also failed to produce a pre-filing draft of McKenna's *pro se* complaint, and did not log it as privileged. *See* Ex. D, Heid Dep. 137-138, 145-146.

### C.   Jared Smith disregards his subpoena altogether, recycling objections the Court has already rejected.

Jared Smith, McKenna's boyfriend and housemate, has engaged in a campaign of subpoena resistance in lockstep with McKenna's counsel. Smith originally evaded service of his subpoena and sent taunting emails to the Riley Parties' counsel while quoting from an unfiled pre-motion conference email he could only have obtained from McKenna. ECF No. 113, PageID.2799; ECF No. 113-18.

On January 8, 2026, Smith demanded a $50,000 bond before he would comply with any subpoena, a threat McKenna's counsel forwarded to the Court in an effort to forestall a motion for alternative service. *See* Ex. G. At a January 9 conference, the Court expressed its displeasure with Smith's email and ordered McKenna to provide the Riley Parties with his home address for a final service attempt. *See* Ex. H. Smith initially accused the Riley Parties' counsel of "misrepresentations," but then briefly promised to cooperate with a process server. *See* Ex. I.

That cooperation was short-lived. Smith sent a six-page letter, copying McKenna's counsel, asserting objections the Court had already overruled when

raised by other McKenna allies. *See* Ex. J, Smith Letter. He also asserts attorney-client privilege, despite admitting that "many" of his communications were made in his capacity as McKenna's "friend." *Id.* at 2. He has not produced any documents.

In one final act of coordination, McKenna's lawyer Keith Altman tried to block this motion by arguing on Smith's behalf that the Court "lacked jurisdiction" over Smith. This legally baseless claim confirms their obstructionism.

## Argument

This Court has the power to compel compliance with a Rule 45 subpoena. Fed. R. Civ. P. 45(d)(2)(B)(i); *ZMCC Props. LLC v. PrimeOne Ins. Co.*, 2021 WL 1737135, at *1 (E.D. Mich. May 3, 2021). Under Rule 45(g), the Court may hold in contempt any person who "fails without adequate excuse to obey the subpoena." 9A Wright & Miller, Federal Practice and Procedure § 2465. Studley, Heid, and Smith have no adequate excuse for failing to fully comply with their subpoenas.

## I.   Studley has not complied with the Riley Parties' subpoena, and both she and McKenna should be ordered to produce all texts unredacted.

### A.   Neither Studley nor McKenna may redact otherwise responsive documents for relevance.

Both Studley and McKenna redacted portions of their otherwise responsive text message chains based on relevance. But "relevance redactions are unnecessary and improper, and this district has rejected the propriety of such redactions." *Weidman v. Ford Motor Co.*, 340 F.R.D. 106, 112 (E.D. Mich. 2021) (citing cases). Unlike privilege redactions, which are authorized by Rule 26(b)(5)(A), "redacting

-6-

for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure." *Id.* (quoting *Burris v. Versa Prod., Inc.*, 2013 WL 608742, at *3 (D. Minn. Feb. 19, 2013)). Allowing such redactions would create "the potential for abuse," and "improperly incentivize parties to hide as much as they dare." *Burris*, 2013 WL 608742, at *3. The same rule applies to non-parties responding to subpoenas. *See In re Davol, Inc*, 2021 WL 630826, at *2 (S.D. Ohio Feb. 18, 2021); *New Falls Corp. v. Soni*, 2020 WL 2836787, at *14 (E.D.N.Y. May 29, 2020).

McKenna and Studley's redactions are facially improper. But they are even less justifiable given the circumstances.

*First*, Studley does not paint on a blank canvas. She *specifically* objected that the subpoena sought "information that is... not relevant." ECF No. 105, PageID.2567. The Court overruled the objections and ordered production of "any responsive, non-privileged documents in her possession on or before January 7, 2026." ECF No. 109, PageID.2708. Having lost her battle to resist production on "relevance" grounds, Studley is attempting to do through the back door of redaction what she failed to achieve through the front door of objection. A relevance redaction is merely a document-level relevance objection—applied unilaterally, without notice, and without any opportunity for adversarial testing. The Court's order overruling Studley's objections forecloses this end-run, by both her and McKenna.

*Second*, context is everything in text message conversations. Messages build on one another, so a response may be unintelligible without the preceding message. Tone, intent, and credibility are assessed against the full arc of a conversation, not cherry-picked excerpts. *Weidman*, 340 F.R.D. at 112 (allegedly irrelevant portions of a document containing relevant information may be "highly useful to providing context for the relevant information."). By blacking out large chunks of these exchanges, Studley and McKenna are depriving Riley of exactly that context.

As another court put it, the "redaction of the 'irrelevant' information creates a perfect black box. No one knows what's in it." *In re Marriott Int'l Customer Data Sec. Breach Litig.*, 2020 WL 5525043, at *2 (D. Md. Sept. 14, 2020). So too here. The Riley Parties should not have to take McKenna and Studley's "'word for it' that the redacted portions of the documents are not relevant" to their claims. *IDC Fin. Publ'g, Inc. v. Bonddesk Grp.*, 2017 WL 4863202, at *3 (E.D. Wis. Oct. 26, 2017). The Court should order Studley and McKenna, independently, to produce complete, unredacted versions of all their text chains.

**B.    McKenna cannot claim privilege in communications with a friend.**

A "communication is not privileged simply because it is made by or to a person who happens to be an attorney." *In re Rospatch Sec. Litig.*, 1991 WL 574963, at *8 (W.D. Mich. Mar. 14, 1991). When "one consults an attorney not as a lawyer but as a friend… the consultation is not professional nor the statement privileged."

1 McCormick on Evid. § 88 (9th ed.). Privilege attaches only to communications made "in the context of an attorney-client relationship" and "in connection with the provision of legal services." *Est. of Nash v. Grand Haven*, 321 Mich. App. 587, 593 (2017); *accord Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998), and the "burden of establishing the existence of the [attorney-client] privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). The "scope of the privilege is narrow," *Nash*, 321 Mich. App. at 595, and courts reject privilege claims unsupported by evidence. *Zamorano v. Wayne State Univ.*, 2008 WL 3929573, at *2 (E.D. Mich. Aug. 22, 2008).

McKenna cannot carry that burden. She offers *zero* evidence that her text messages with Studley were anything other than what they appear to be: two friends informally gossiping. ECF No. 143-10. McKenna does not expressly seek legal advice in any of the texts; Studley does not offer legal analysis. The texts McKenna now claims are privileged fall amid other personal texts—venting about her hours, complaining about her assistant, and grousing about firm billing policies, ECF No. 161-2—that even McKenna does not pretend are privileged. *See Jones v. United States*, 828 A.2d 169, 176 (D.C. 2003) (finding no privilege in communications with party's lawyer girlfriend, citing, *inter alia*, the "non-legal" nature of the communications at issue). Nor can McKenna point to a retainer agreement, billing records, a conflict check, a file number, or any other indicia of representation.

-9-

Indeed, McKenna could not reasonably believe that Studley—a relatively junior medical malpractice defense lawyer in the large Michigan firm of Giarmarco, Mullins, & Horton, P.C.—was authorized to moonlight as her employment attorney, on a matter outside Studley's practice area, and adverse to a mediator with whom Studley's firm frequently worked. *See United States v. Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997) (looking to similar facts in finding attorney acted as a friend).

Every objective indicator confirms the same conclusion. McKenna never identified Studley as her counsel until the damaging text messages surfaced. In her initial disclosures, McKenna identified Sarah Prescott—her former lawyer—as a witness with "discoverable information" and expressly preserved "privilege in her communications with Ms. Prescott." ECF No. 113-19, PageID.3060 ¶ 19. She similarly claimed privilege over communications with Amanda Fox Perry and Jared Smith. *Id.* at PageID.3063-3065, ¶¶ 40, 43. But she did ***not*** identify or "preserve" any privilege with Studley. *Id.* at PageID.3064 ¶ 41. And McKenna never moved to quash the subpoena when it was issued on the basis that Studley was her lawyer. Studley herself did not believe the texts to be privileged (after all, she produced them), and she did not claim to be McKenna's ex-lawyer when objecting to the subpoena. ECF No. 105, PageID.2567. Even now, Studley's privilege log uses an odd circumlocution—"McKenna has stated that these communications" are privileged—rather than making an affirmative claim of privilege.

Worse still, a comparison of Studley's and McKenna's productions reveals that McKenna is invoking "privilege" only as to cherry-picked, highly-damaging text messages while producing others she found helpful or inoffensive from the *same* conversation on the *same* topic—and inconsistently at that. *Supra* at 3-4. Even if privilege existed, such selective disclosure constitutes waiver. *See Kubiak v. Hurr*, 143 Mich. App. 465, 473 (1985) (disclosure of part of any privileged communication "is a waiver as to the whole of that communication").

It could not be more clear: Studley was never McKenna's lawyer. Studley didn't think so. McKenna didn't think so. It was only after Studley produced extraordinarily damaging text messages that McKenna manufactured an after-the-fact privilege claim as part of her broader scheme to block legitimate discovery. McKenna and Studley should be ordered to produce <u>all</u> the texts wrongly withheld as privileged, and McKenna's conduct in this regard considered as yet another basis why dismissal or other Rule 37 sanctions are necessary.

## II. Heid's counsel violated the Court's order by failing to produce all unredacted responsive materials.

The most brazen deficiency in Heid's production is the assertion of attorney-client privilege over communications between McKenna and her own non-lawyer ex-husband. The privilege log refers to withheld material dated August 20, 2021 between "Elyse McKenna/Brandon Heid," described as a "potential legal matter." Ex. F. But attorney-client privilege protects only confidential communications in

-11-

which a client seeks legal advice from a professional legal adviser acting in that capacity. *See supra* p. 9. Privilege belongs to the client, not the lawyer. *People v. Bortnik,* 28 Mich. App. 198, 201 (1970).

Here, McKenna is the lawyer and Heid is the layperson. For privilege to attach, Heid would need to have been *McKenna's* client, seeking legal advice from *her* in her professional capacity. He was not. Heid admitted he never retained McKenna as his own lawyer. Ex. D, Heid Dep. 137. The August 2021 texts Heid withholds date to when *McKenna* first considered suing Riley and was seeking advice—not providing it. ECF No. 115-8, PageID.3362. In other words, McKenna was the "client" trying to get advice from her non-lawyer husband. That is not what the privilege protects. Heid also fails to log his copy of McKenna's pre-filing *pro se* complaint, which he has and has not deleted.[1] Ex. D at 51, 145.

Beyond the frivolous privilege claim, Heid's counsel produced texts in defiance of the Court's January 27 order, which commanded production of "ALL responsive communications in unredacted format" on pain of sanctions. *See* Jan. 27, 2026 Text-Only Order. McKenna's counsel, Russell and Altman, were undeterred. They applied "relevance" redactions—prohibited for the same reasons discussed above, *supra* at 6-8—and stripped the production of all images, an intentional step

---

[1] McKenna has tried to assert a privilege claim over a similar copy of the document sent to Studley. *See supra* p. 4.

backward from the readable screenshots Heid's prior counsel had provided. *Compare* Ex. E *with* ECF No. 113-5, PageID.2921–2922. The production contains *68* entries reading "Image not downloaded." *E.g.*, Ex. E. These are not trivial omissions. Throughout the text chains, McKenna or Heid send screenshots, photos, or other visual content that the other reacts to—making the conversations unintelligible without them. For example, HEID00050-00051 is a January 2023 discussion of someone—whose name McKenna inexplicably redacts—allegedly making inappropriate comments to McKenna, and she and Heid discuss whether to seek Riley's help about it. *Id.* McKenna sends Heid an image (which is omitted), to which Heid responds: "Who is that? Good fucking god. I'm so sorry. What an absolute creep. Are you going to tell Bob?" *Id.* The image and redacted name are obviously critical to understanding the exchange. [2]

An image within a text message is a "communication." Producing texts without their images is like producing emails without their attachments. Yet Russell and Altman—ordered to provide "ALL" texts in "unredacted" format—produced

---

[2]The exchange is also highly relevant. Riley alleges that he apologized to McKenna over the August 2021 issue, that McKenna accepted the apology, and their professional working relationship resumed, including McKenna contacting Riley for help on various issues. *See* ECF No. 29, PageID.1180 ¶¶ 39-47. This exchange, from January 2023, shows McKenna contemplating exactly that.

some communications and made redactions. That is a direct violation of this Court's unambiguous order,[3] and per that order, Russell and Altman should be sanctioned.

## III.    The Court should compel Jared Smith to comply with the subpoena.

Finally, the Court should order Jared Smith to comply with his subpoena. It has the power to do so, and his objections—encouraged if not directed by his girlfriend McKenna and her counsel—are utterly meritless.

### A.    The Court has "jurisdiction" to compel Smith's compliance.

Although Smith himself has raised no such objection, Ex. J, McKenna's counsel—in a naked attempt at further delay and obstruction—has argued that the Court lacks "jurisdiction" to compel Smith's compliance with the subpoena, and that any such motion should be filed in Kentucky where he resides.

McKenna is wrong. Rule 45's geographic limits are not "jurisdictional." The Supreme Court has been clear: "Only Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). Thus, it is "axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction." *Owen Equip. v. Kroger*, 437 U.S. 365, 370 (1978). Because a limitation in the Federal Rules is "not prescribed by Congress," it is a

_____

[3]The Court, at the February 12, 2026 hearing, ordered Heid's counsel to produce the texts in a readable format that complies with the ESI plan. It also ordered McKenna to re-produce all earlier-produced material in the same compliant format, rather than in an Excel spreadsheet, a sample of which is provided as Exhibit L.

"claim-processing rule" that may be waived or forfeited. *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 19-20 (2017) (rejecting argument that a time limit in Rule 4(a)(5)(C) was jurisdictional and noting that courts often mischaracterize such rules as "jurisdictional" even though they are not).

That Rule 45's geographical provisions do not limit the Court's <u>power</u> is clear from the text of the Rule itself: a challenge to the geographical scope of a subpoena must be made by "timely" motion to quash, or by an objection served within 14 days. Fed. R. Civ. P. 45(d)(2)(B); 45(d)(3)(A)(ii). And the rule's stated concern is not with jurisdiction but with avoiding burdening non-parties with travel. *See* 2013 Advisory Cmty. Note. Thus, on their face, Rule 45's venue provisions are claim-processing rules. *See Greenberg v. Amazon.com, Inc.*, 2026 WL 21258, at *1 n.1 (W.D. Wash. Jan. 5, 2026) (holding that the "venue provisions of Rule 45 are not jurisdictional," and declining to require refiling motion in another district when doing so would cause "unnecessary delay, a multiplication of proceedings, and the risk of inconsistent rulings"); *Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, 2022 WL 2820667, at *6 (S.D. Cal. July 18, 2022) (noting some courts' misuse of word "jurisdictional" in this context, as jurisdiction "concerns a forum state's power," unlike "Rule 45's focus on the burden to nonparties"). Rule 45's language and this authority are thus dispositive of McKenna's too-little, too-late "jurisdictional" argument—and one she lacks standing to make in any event.

-15-

As for the subpoena itself, it states that the place of compliance is Birmingham, Michigan, within the Eastern District of Michigan. *See* Ex. K. Under Rule 45(g), the "court for the district where compliance is required" (*i.e.*, the Eastern District of Michigan) may hold Smith in contempt for failing to comply. Smith himself—the person receiving the subpoena—did not object to the subpoena on geographical grounds within 14 days of service and did not timely move to quash based on the place of compliance. *See* Ex. J. And with good reason: Courts have routinely held that the geographical limits do not apply when, as here, a person commanded to produce documents "need not appear in person at the place of production." *United States v. Brown*, 223 F. Supp. 3d 697, 703 (N.D. Ohio 2016); *accord Hernandez v. Kolkman*, 347 F.R.D. 551, 558 (D. Utah 2024). In short, the Court has the power to entertain this motion, Smith failed to object based on any geographical grounds, and any such objection would have been meritless.

Requiring a separate motion in Kentucky would, moreover, reward naked gamesmanship. McKenna—who this Court *unambiguously* has power over—has the Smith material in her own possession but is disregarding the Court's order to produce it. Smith, in coordination with McKenna and McKenna's counsel, is now refusing to comply as well. The Court need not indulge in a shell game where McKenna refuses to produce her own communications with Smith and then backs Smith's efforts to delay compliance by requiring a motion to compel two states

away. Smith is not an out-of-state bystander dragged into this case against his will. He is McKenna's partner, with substantive knowledge of the relevant events, and at least informally represented by her counsel.

Earlier, Smith lamented that it was "unfortunate" that he missed the telephonic conference where the Court addressed his taunting email to Riley's counsel regarding his subpoena. Ex. H. He is in luck. This Court has the power to hold him in contempt for noncompliance, and the Court routinely holds hearings remotely. The Court should hear this motion and allow Smith to attend any hearing regarding his subpoena defiance from the comfort of his own home, with zero travel required.

### B.    Smith's objections are meritless.

Having cast aside McKenna's procedural argument, the Court should swiftly reject Smith's objections to the subpoena, most of which the Court has seen before.

*First*, Smith objects by claiming he is "not aware" of whether McKenna received notice of the subpoena. Ex. J at 2. This is specious. Smith lacks standing to raise a challenge to McKenna's notice. *Rittgers v. Hale*, 2018 WL 338218, at *3 (D. Kan. Jan. 9, 2018). Worse, he makes this argument knowing full well that his girlfriend participated in a conference regarding Smith's efforts to resist earlier service of the subpoena. *See supra p. 5*. Were that not enough, the Riley Parties provided McKenna notice *again* before its most recent service attempt. Ex. K. This argument lacks any good faith whatsoever.

*Second*, Smith argues that the Court's holding that McKenna waived privilege does not apply to him. Ex. J at 2. The premise is wrong: McKenna has utterly failed to show that Smith ever acted as *her* lawyer, just as she failed to make such a showing for Studley. But even assuming some privileged, pre-filing communications existed, any such privilege belongs to McKenna, not Smith. The Court held it no longer exists. Smith, as a licensed attorney, cannot claim ignorance of his obligation to comply with a court order—an obligation his own state's ethics rules independently confirm. *See* Ky. Rule of Prof'l Conduct 3.130(1.6)(b)(4). He is defying the Court's order, not defending a privilege he holds.

*Third*, Smith claims that he had only nine days to comply with the subpoena. Ex. J. at 3. This is false: Smith has had the subpoena since December, as confirmed by his earlier taunting emails. *Supra* at 5. And in any event, the remedy for a too-short compliance period is not quashing; it is modification to give more time. *See Ghandi v. Police Dep't of City of Det.*, 74 F.R.D. 115, 125 (E.D. Mich. 1977). Smith offers a makeweight excuse for not complying with a subpoena he's had for months.

*Fourth*, Smith raises generic claims of overbreadth, privacy, and relevance (Ex. J. at 2-6) that this Court has already rejected when raised by Studley, Kellersohn, and others. *See* ECF No. 105, 109. McKenna herself identified Smith as a witness with substantive, relevant evidence. His subpoena is narrowly tailored to cover his communications about Riley and this lawsuit—and Smith, who to Riley's

knowledge has never practiced in Michigan or done business with Riley, would have no occasion to discuss Riley except in connection with McKenna's accusations. McKenna has refused this Court's orders to produce her own communications with Smith. The Court should not countenance that defiance from McKenna, and it should not permit the same from her boyfriend, who as a lawyer knows better.

### Conclusion

The pattern is unmistakable. McKenna and her allies have engaged in a coordinated campaign to suppress damaging evidence, and none has an adequate excuse for noncompliance. The Court should order full, immediate compliance by Studley, Heid, and Smith; compel McKenna to produce all texts with Studley unredacted and without privilege claims; and impose the sanctions that the Court's January 27 order promised against Russell and Altman for their continued disobedience.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By:*/s/Thomas J. Davis*
Thomas J. Kienbaum (P15945)
Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
tkienbaum@khvpf.com
ehardy@khvpf.com
tdavis@khvpf.com

*Attorneys for Defendants/Counterclaim*
*Plaintiffs Robert F. Riley and*
*Riley & Hurley, P.C.*

Dated: February 12, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/ Thomas J. Davis*
Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
tdavis@khvpf.com

593659