# EXHIBIT D

CONFIDENTIAL

Page 1

1                    UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF MICHIGAN

3

4        ELYSE MCKENNA,

5

6        Plaintiff,          Case No. 2:24-cv-12347

7        vs.

8        ROBERT F. RILEY, et al,

9

10       Defendants.

11       _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _/

12

13       DEPONENT:       BRANDON HEID

14       DATE:           Monday, January 26, 2026

15       TIME:           12:02 p.m.

16       LOCATION:       Kienbaum Hardy Viviano

17                       Pelton & Forrest, PLC

18                       280 North Old Woodward, Suite 400

19                       Birmingham, Michigan

20       REPORTER:       Shari J. Pavlovich, CSR-5926

21       JOB NO:         50500

22

23

24

25

CONFIDENTIAL

Page 20

1           mix them up or anything like that?

2    A      Correct.

3    Q      I want you to flip through these texts and tell me

4           if you agree that as we flip through these, all of

5           the texts are dated September 8, 2023 or later.

6           Meaning that all of the texts post date your

7           marriage?

8    A      I believe that's correct, yes.

9    Q      Okay.  So you've told me you do have texts with

10          Ms. McKenna during the course of your marriage; is

11          that right?

12   A      I'm sure, yeah.

13   Q      Okay.  Is it your testimony that you have no text

14          messages with Ms. McKenna whatsoever that relate to

15          Bob Riley or Riley & Hurley during the course of

16          your marriage?

17                    MS. RUSSELL:  Objection, privileged;

18          right?

19                    MR. ALTMAN:  Yes.

20                    MR. DAVIS:  The Court has ruled that

21          written texts are not --

22                    MR. ALTMAN:  Do you have a written

23          ruling on the context?  I'm objecting under

24          privilege.

25                    MR. DAVIS:  All right.  I knew this

CONFIDENTIAL

Page 21

1      was going to happen. And Ms. Russell can tell you,

2      because she lost that ruling.

3             I'm going to hand you case law. And

4      I'm going to ask that you read it while -- we're

5      going to take a break, because I'm going to tell

6      you right now, the Court specifically ruled under

7      Michigan law, the marital communication privilege

8      does not apply to writings.

9             MR. ALTMAN: I don't know the context

10     of that.

11            (Speaking at once.)

12           MS. RUSSELL: If you can't produce a

13     court order on this --

14            MR. ALTMAN: Hold on.

15            MR. DAVIS: -- you are local counsel

16     responsible for Michigan law. Ms. Russell seems

17     upset that we did not ask for sanctions against

18     you. But this is the only issue of Michigan law

19     that's come up so far. So I'm going to hand you

20     the case law. I'm going to go get the court order,

21     because I did not know that you would not know what

22     orders were entered by the Court.

23           MR. ALTMAN: I'd like to see the full

24     context of it, number 1. And you're pulling up one

25     case. You think one case stands for the totality

CONFIDENTIAL

Page 22

1      of the case law in the Michigan?

2                      MR. DAVIS:  We're going to go off the

3      record for a moment.  I'm going to grab this --

4      actually, before you go off the record, though, I'm

5      going to go get the Court's ruling.  I'm going to

6      get you the Michigan Supreme Court case that the

7      Court relied upon.

8                      And if you persist in making

9      privileged objections that the Court has already

10     ruled are invalid, we will be seeking sanctions and

11     -- for a second deposition.  I want to make that

12     clear.

13                     MR. ALTMAN:  -- that's all you guys

14     are good for.  Go get the stuff --

15                     MR. DAVIS:  Okay.  We're going to go

16     off the record.

17                     MR. ALTMAN:  I'll take a look at it.

18                     (Short recess taken at 12:21 p.m.)

19                     COURT REPORTER:  Back on.

20                     (Back on the record at 12:30 p.m.)

21                     MR. ALTMAN:  We haven't agreed to go

22     back on the record.  So can you tell us before we

23     go back on the record what's going on?

24                     MR. DAVIS:  No, we're going on the

25     record --

CONFIDENTIAL

Page 25

```
 1          back on the record?  Because you do not.  So this
 2          is not on the record.
 3                        MS. MARZOTTO TAYLOR:  Fine.
 4                        MR. DAVIS:  We're on the record.
 5          We've never gone off.  And the answer to the
 6          question is, I didn't know until he just told me
 7          that.
 8                        MS. RUSSELL:  You did not have the
 9          production, Tom.
10                        MR. DAVIS:  We're going to talk to
11          the Court.
12                        MR. ALTMAN:  Do you have that Supreme
13          Court case?
14                        MR. DAVIS:  Yeah, I do.  It's clear
15          as day.
16                        MR. ALTMAN:  You don't have to throw
17          it at me like that.
18                        MR. DAVIS:  I didn't throw.  I slid
19          it to you, the same way I'm sliding it to every
20          other counsel.
21                        (Making phone call to Judge.)
22                        MR. DAVIS:  Good afternoon, your
23          Honor.  This is Mr. Davis.  Before I say anything,
24          the court reporter needs to know, should she stop
25          transcribing this or should she continue?
```

CONFIDENTIAL

Page 26

1           Because we have an obvious major

2       issue that's arisen during Mr. Heid's deposition.

3               THE COURT:  Oh, so you have a court

4       reporter there and you have an issue in the dep?

5               MR. DAVIS:  Yes, your Honor.

6               THE COURT:  If she wants to

7       transcribe this, you would have a record of it

8       there.  So you can keep her transcribing if you'd

9       like to.

10              MR. DAVIS:  Thank you, your Honor.

11      The circumstance is this.  As this -- we are

12      deposing Mr. Heid, who is Ms. McKenna's ex-husband.

13              As you recall earlier, we had a

14      dispute that went to pre-motion conference.  And

15      that had to do with the Michigan marital

16      communications privilege.

17              And we provided Supreme Court,

18      Michigan Supreme Court authority stating that the

19      privilege does not apply to writings, including

20      text messages.

21              And the Court ordered them to produce

22      all text messages that were responsive to our

23      subpoena.  And I thought we had received that.

24              I just asked Mr. Heid whether he

25      searched for text messages during the period of his

CONFIDENTIAL

Page 27

1     marriage.  And I just got an objection that that

2     question is privileged.

3              Obviously, the Court's already ruled

4     that the privilege does not apply to text messages.

5     And second, I didn't ask him about the

6     communications, themselves.  I asked whether he has

7     reviewed, to look for material.

8              Obviously, we are going to be asking

9     questions that do not impinge on the marital

10    communications privilege.  But when we're drawing

11    objections to things that the Court's already ruled

12    on, we believe that's an obstruction.

13              And that's why we felt it was

14    necessary to contact the Court, rather than ending

15    the deposition and rescheduling it in the future.

16              THE COURT:  Okay.  And I'm assuming

17    that Ms. Russell is there objecting?

18              MR. ALTMAN:  Actually, this is Keith

19    Altman, your Honor.

20              MS. RUSSELL:  But I'm also here, too.

21              Just for a brief background,

22    your Honor.  When we had our initial hearing about

23    this production, we had not obtained local counsel

24    yet.  I remember objecting on the record about

25    marital privilege because I did not have local

CONFIDENTIAL

Page 28

1     counsel on this issue.

2             We did produce, according to what the

3     Court ordered, regarding the unredacted text

4     messages.  We have those.

5             I have flown all the way in from D.C.

6     today.  Mr. Davis has represented on the record

7     that if he cannot talk about these text messages,

8     that he has not produced, which he could have

9     consulted with me before and he has not.

10            But we have expended Plaintiff's

11    resources, my resources, to come out here to have

12    this deposition, when Mr. Davis doesn't even have

13    the text messages that he's arguing are waived.

14           And we're going to have to do this

15    all over, again.  He's going to seek sanctions.

16           MR. DAVIS:  Your Honor, just for the

17    record, I'm not asking for sanctions.

18           MS. RUSSELL:  That's what you

19    threatened on the deposition transcript.

20           MR. DAVIS:  If you instruct the

21    witness not to answer based on a privilege that the

22    Court has held does not apply to writings.

23           But your Honor, so we just are trying

24    to determine whether, in fact, Mr. Heid has or has

25    produced text messages.  We're not asking about the

CONFIDENTIAL

Page 29

1        text messages, if they were during the course of

2        the marriage, because we would have to introduce

3        them through other means.

4                    But all I'm asking now is just trying

5        to probe the extent to which Mr. Heid actually

6        complied with the subpoena, which did require

7        written communications during the course of the

8        marriage, which the Court held, consistent with

9        Michigan Supreme Court authority, is not

10       privileged.

11                   The text messages, themselves, are

12       not privileged.  The marital communications

13       privilege only applies to testimony about the

14       communications.

15                   MS. RUSSELL:  Your Honor, Plaintiff

16       objects to that.  And we would seek leave to brief

17       this issue, now that we have local counsel.

18                   THE COURT:  Local counsel, this issue

19       rose before the Court back in May of this year.

20       And so this was prior to, Ms. Russell, you even

21       being a part of this case.  Because I remember

22       dealing with this issue with Ms. Kalahar, previous

23       Counsel.

24                   MS. RUSSELL:  Yes, your Honor --

25                   THE COURT:  And the Court did review

CONFIDENTIAL

Page 30

1    case law that that particular time.  Since you do
2    have a court reporter there, I'll cite to People v.
3    Fisher 442 Mich. 560.  That's a 1993 Michigan
4    Supreme Court case in which we discussed the
5    difference between marital communication privilege,
6    and whether it was testimonial or written
7    communications.
8                Under Michigan law, the marital
9    communication does not extend to written
10   communication.  And that was the holding of the
11   court.  That way, documents had to be produced to
12   the Riley defendants because all of their claims
13   are state law claims.
14               The federal aspect of whether there
15   would be a marital communication under federal law
16   was different.  And that is why those documents did
17   not go to the OMP defendants.  And the Court has
18   already ruled on this issue.
19               So at this point, if we're talking
20   about conversations or communications, then I would
21   say that is protected under Michigan marital
22   privilege.
23               But if we're talking about the text
24   messages, themselves, then that is not protected
25   under the privilege under Michigan law.  So the

CONFIDENTIAL

Page 31

1          Court would therefore rule that Mr. Heid would have

2          to discuss whatever those -- like, obviously

3          it's -- it sounds like we don't even have the text

4          messages.

5                          And the question is whether you

6          looked for the text messages, which that wouldn't

7          be privileged, regardless of whether there's a

8          marital communication or not.

9                          The fact of whether you have looked

10         for and produced documents responsive to a Request

11         for Production or a subpoena is not a privileged

12         question.  I mean, like, there's no privileged

13         answer to that question.

14                         MR. ALTMAN:  Your Honor, if I could

15         add one thing, though, for the Court to consider.

16                         This is a decision from 33 years ago.

17         Text messaging was not even a thing 33 years ago.

18         Text messaging is the same as people having brief

19         communications.

20                         So I think, your Honor, that this is

21         something that really should be briefed using law

22         that is more recent than 33 years, where text

23         messaging now exists.

24                         What you're saying, your Honor, is

25         that I could have a conversation with my wife.  And

CONFIDENTIAL

Page 32

1     instead of having a conversation with my wife, I

2     sent her a brief text message saying the same

3     thing.  It's using the phone to communicate the

4     same message.

5                   All I'm saying, your Honor, that I

6     think that this is something that it is a

7     significant issue that really should be briefed,

8     with a look to more recent case law where text

9     messaging didn't even exist.

10                  MR. DAVIS:  Your Honor --

11                  MR. ALTMAN:  Tom, please, let me

12    finish.

13                  Text messaging didn't even exist 33

14    years ago.  So it is not clear that Fisher is still

15    good law in the context of the text messaging era.

16                  So respectfully, your Honor, I just

17    request that -- I mean, certainly Mr. Heid can

18    answer whether he searched for messages.  None of

19    that is privileged.  And we don't have an

20    objection.  We don't have an objection to that.

21                  MS. RUSSELL:  And he has answered

22    questions --

23                  (All speaking at once.)

24                  MR. DAVIS:  Your Honor, if I don't --

25    I don't mean to interrupt, Mr. Altman.

CONFIDENTIAL

Page 33

 1              Your Honor, we also produced to you a

 2       2023 Court of Appeals opinion from the Michigan

 3       Court of Appeals that expressly held Fisher applied

 4       to text messages.

 5              We also provided that to the Court.

 6       And I am trying to find that -- it's hard for me to

 7       find it on my phone.

 8              But if you recall, your Honor -- I

 9       can give you that authority in a moment.  But the

10       Michigan Court of Appeals said Fisher says what it

11       says, and it applied to text messages.

12              MR. ALTMAN:  Your Honor, but

13       Plaintiffs did not have an opportunity to brief

14       this issue.  All this is, is the defendant's

15       pulling out a couple of cases, instead of allowing

16       full briefing on this particular issue where

17       Plaintiff can see, is there other contrasting case

18       law?  Which they never had an opportunity to do.

19              I mean, to some degree, it's

20       sandbagging, your Honor.  They prep a couple of

21       cases.  We don't know the extent of the case law.

22              We respectfully request that we be

23       given an opportunity --

24              THE COURT:  Stop.  The problem I have

25       with this, this is an issue that was addressed in

CONFIDENTIAL

Page 34

1      May.   So to come now and say, Well, we never had a
2      chance to do this.   We absolutely did, in May of
3      2025.   And I understand that you're now saying you
4      want to do -- you would like to brief the issue.
5                      But I am looking here.   And I do very
6      much recall that, yes, there were some cases that
7      were provided to the Court -- Fisher being the main
8      case with respect to marital communications and
9      written communications.
10                     I do believe, as Mr. Davis is
11     representing, there may have been additional cases
12     that were provided to them.
13                     I have my law clerk looking right
14     now, because the Court looked into the issue.   So
15     separate and aside from -- well, we didn't get a
16     chance to tell you that we think this applies or
17     that applies.
18                     First of all, that opportunity was
19     absolutely there back in May of 2025.   So to raise
20     this issue now, after the Court has already ruled
21     on it, essentially what you're saying is, I like
22     for you to reconsider the ruling that you've
23     already given me because now that I'm having my
24     client deposed, I would like to make a different
25     argument, when you had the opportunity to make that

CONFIDENTIAL

Page 35

1       argument in May of this year.

2                  Now, I understand it may not have

3       been you specifically, but Plaintiff had that

4       opportunity.

5                  MS. RUSSELL:  Your Honor --

6                  THE COURT:  There are -- I have a

7       case as recent as 2019 that I'm looking at right

8       now.  State Farm Mutual Auto Insurance versus Elite

9       Health Center that says that marital communication

10      does not apply to written communications and that

11      extends to text messages.

12               And so my issue there is, I don't

13      even think we're there.  Because what has at least

14      been brought to the Court, from what I'm

15      understanding Mr. Davis to say, is that we're not

16      even talking about the text messages.

17               We're simply asking if there's been a

18      response to the subpoena.  And Counsel hasn't

19      addressed that with to respect why that would be

20      privileged at all.

21               MR. ALTMAN:  I understand,

22      your Honor.  But parallel to this is, as well, is,

23      Mr. Davis is acting as if he was completely

24      blind-sided by the fact that he didn't have marital

25      communications.  And that is --

CONFIDENTIAL

Page 36

```
 1                    THE COURT:  -- had marital
 2      communications if they were ordered produced.
 3                    MR. ALTMAN:  I understand.  But he
 4      knew before we came here, he did not have them.  He
 5      never raised the issue with us, which he --
 6                    THE COURT:  Did you have an order to
 7      produce them, Mr. Altman?  This is what we keep
 8      doing.  They didn't tell me.  I didn't give it to
 9      them.
10                    If the Court ordered you to produce
11      them, if there was a subpoena for the documents,
12      you don't get to say, Well, they didn't follow up
13      and ask me for them when I didn't do it.
14                    You didn't do something that you were
15      ordered to do.  Why is it their responsibility to
16      ask you if you complied with the court order?
17                    MR. DAVIS:  And your Honor, just for
18      the record, two points I need to make.  One, the
19      case I was talking about is called People versus
20      Bartlett.  It's 2022, Westlaw 413645.
21                    As such, the Supreme Court made clear
22      in Fisher, 442 Mich. App. 575, the introduction of
23      marital communication through other means, such as
24      the introduction of text messages, is not
25      precluded.
```

CONFIDENTIAL

Page 37

1            Therefore, the Circuit Court did not

2     err by concluding that the marital communication

3     privilege did not apply to the text messages.

4     That's the Barrett case.

5            Second, how this came up, is I asked

6     Mr. Heid whether he still had any text messages,

7     whether he deleted them.  For all I know, he did

8     comply with the subpoena and maybe he deleted texts

9     with his ex.

10            I didn't know that until Mr. Heid

11     confirmed that those texts still exist on his

12     phone, did I know for certain that the subpoena had

13     not been complied with.

14            And I'm not blaming Mr. Heid, for

15     sure, because it sounds like this was not his

16     personal decision.  But that is how it came up.

17            THE COURT:  Why were those messages

18     not produced, Mr. Altman or Ms. Russell?

19            MR. ALTMAN:  I don't have an answer

20     to that, your Honor.  I think we believed that the

21     marital privilege still applied.  Okay?

22            THE COURT:  But the Court

23     specifically ruled on that issue.

24            MS. RUSSELL:  Your Honor, we

25     produced -- we produced the text messages

CONFIDENTIAL

Page 38

```
 1          unredacted.  That was what my understanding of the
 2          order was when we produced the text messages that
 3          were already there.
 4                    MR. ALTMAN:  The text messages that
 5          were produced, your Honor, were post marital
 6          messages.  And those were the court order.  And we
 7          believed that the Court's order applied to the
 8          post-marital text messages.
 9                    MR. DAVIS:  Your Honor, the issue of
10          the marital communications was -- actually,
11          Ms. Russell was in the case, because this is the
12          Court's order of October 23.
13                    We had to call.  And the order is
14          dated October 24.  The prehearing conference is
15          October 23.  So your Honor will have the emails
16          sent to Ms. Hosking in the day or two prior to the
17          23rd where this issue was raised.
18                    The Court's order says, I quote, ECF
19          97:
20              "Third party Brandon Heid is ordered
21            to produce all responsive communications
22            with Plaintiff in unredacted format."
23                    Our subpoena asked for all
24          communications with Ms. McKenna that related to
25          Mr. Riley or Riley & Hurley or the events in the
```

CONFIDENTIAL

Page 39

 1          case.
 2                          Mr. Heid confirmed that he does have
 3          those, but they weren't produced.
 4                          Again, I'm not blaming Mr. Heid.
 5          He's not a lawyer.  He's not a third party.
 6                          But our subpoena requested all
 7          communications from 2019 to the present.  The Court
 8          ordered all such communications to be produced.
 9                          And what we received was clearly not
10          that.  And now, I've confirmed that the other
11          communications do exist.  They weren't deleted.
12                          That's where we are right now.
13                          THE COURT:  And I'm looking back to
14          that order that Mr. Heid was going to produce a
15          privilege log to the extent that he was claiming
16          privilege.
17                          I'm assuming that didn't happen,
18          either?
19                          MS. RUSSELL:  No, we --
20                          MR. DAVIS:  No.
21                          MS. RUSSELL:  -- we produced the
22          messages unredacted, your Honor.  So there was no
23          need for a privilege log.
24                          THE COURT:  You produced all
25          messages, all responsive communications?

CONFIDENTIAL

Page 40

1              MS. RUSSELL:  All of the messages

2      that were originally produced to Defendants that

3      had redactions in them, we produced all of them to

4      Defendant.  So these were the post --

5              THE COURT:  That's not what I asked

6      you, Ms. Russell.  I'm asking:  Have all

7      communications, per the Court's order, Third-Party

8      Brandon Heid is ordered to produce all responsive

9      communications with Plaintiff in unredacted format

10     to the Riley parties only, no later than

11     October 30, 2025.  And any assertion of

12     attorney-client privilege held by Heid is to be

13     recorded on a privilege log produced to the Riley

14     parties by the same date.

15              So again, only to the Riley parties,

16     not to the OMP parties, but is to produce all

17     responsive communications.

18              Did you produce all responsive

19     communications by October 30?  Or did you

20     unilaterally decide that you weren't going to

21     produce some of them?

22              MS. RUSSELL:  We have not produced

23     any messages from the time period of their

24     marriage, no, your Honor.

25              THE COURT:  And the subpoena requests

CONFIDENTIAL

Page 41

1      documents during the course of their marriage, does

2      it not?

3                      MR. DAVIS:  Yes, your Honor,

4      January 1st, 2019, which predated the marriage, to

5      the present.

6                      THE COURT:  So how is that not a

7      blatant violation of the Court's order to produce

8      all communications that are relevant by

9      October 30th?

10                     (No response.)

11                     THE COURT:  It's not rhetorical.

12                     MS. RUSSELL:  I don't have an answer.

13     Our position is that we would like to brief the

14     marital privilege.

15                     THE COURT:  No, no, no.  You want to

16     brief the marital privilege now in January of

17     2026 --

18                     MS. RUSSELL:  I asked in this --

19                     THE COURT:  Simmer down.

20                     -- when in October of 2025, you had

21     an order to produce documents that you have not

22     produced; nor did you produce a log at that point

23     to say I'm putting the marital privilege over these

24     documents, either; is that correct?

25                     MS. RUSSELL:  Yes, your Honor.

CONFIDENTIAL

Page 51

```
 1         before she filed it; correct?
 2    A    I don't remember.  I don't remember if I'm
 3         referencing that or this document, the PDF.
 4    Q    Okay.  Well, I'll represent to you -- and I'll go
 5         get the transcript and read it verbatim if you
 6         want.
 7                   But Ms. McKenna testified at her
 8         deposition that she did give you a copy of her
 9         Complaint before the lawsuit.
10                   If she would have given that to you,
11         given where she lived at the time, would that have
12         been via email, presumably?
13    A    Probably.
14    Q    So you should be able to check your email to find
15         when Elyse sent you a copy of a Complaint; correct?
16    A    Yes.
17    Q    Okay.  And you don't believe you deleted anything
18         like that?
19    A    No, no.
20    Q    Okay.  So the next page is now a text to somebody
21         else.  His name is A-B-R-A-R.
22                   Do you see that?
23    A    Yes.
24    Q    Who is he?
25    A    A friend.
```

CONFIDENTIAL

Page 137

1          Bob stuff?"

2                    And she said:

3               "Yeah, when is good for you?"

4                    Do you see that?

5    A     Yes.

6    Q     What Bob stuff were you talking about in

7          August 2024?

8                    MR. ALTMAN:  I'm going to object to

9          the extent that may be work product.  Same work

10         product privilege.

11                   Object and instruct him not to

12         answer.

13   BY MR. DAVIS:

14   Q     Mr. Heid, you are not an attorney; correct?

15   A     Correct.

16   Q     Okay.  And Elyse McKenna is never your attorney.

17         You never signed a retention agreement with her;

18         right?

19   A     Correct.

20   Q     So I'm going to --

21                   MR. DAVIS:  Mr. Altman, what is your

22         possible basis for claiming work product privilege

23         between somebody who is a lawyer and somebody who

24         is not represented by that person?

25                   MR. ALTMAN:  Because Elyse was

CONFIDENTIAL

Page 138

1       researching issues about filing the lawsuit.  And

2       her conversations with the witness concerning what

3       she was going to file and how she was going file

4       it, I believe, is work product privilege.

5                   MS. RUSSELL:  And she's a pro se

6       plaintiff, representing herself in a Verified

7       Complaint.

8                   MR. DAVIS:  So pro se people are able

9       to invoke work product privilege, okay.  Please

10      mark that for the record --

11                  MR. ALTMAN:  She is an attorney.

12                  MR. DAVIS:  We're going to -- all

13      right.  I just want to make this clear that -- what

14      the nature of these objections are.

15                  MR. ALTMAN:  I understand.

16                  MR. DAVIS:  These are completely

17      baseless.

18  BY MR. DAVIS:

19  Q   Anyway, it's been produced and not waived.  So you

20      talking about Bob stuff has been waived here, even

21      if there was a privilege.

22                  What was the Bob stuff you talked

23      about?

24                  MR. ALTMAN:  I'm still objecting to

25      the extent it's work product.  The Court ordered

CONFIDENTIAL

Page 145

```
 1        lawsuit?
 2    A   I don't recall that.
 3    Q   Did she ever tell you that Jared Smith was involved
 4        in helping her with the lawsuit?
 5    A   I don't remember that, either.
 6    Q   Did you ever talk with Jared Smith about this
 7        lawsuit?
 8    A   No.
 9    Q   Do you have his number?  Have you ever talked with
10        him?
11    A   I have met him.  I don't remember talking about
12        this lawsuit at all, though.
13    Q   Okay.  So you said you know of Amanda Fox.  Does
14        that mean you never talked with her?
15    A   Correct.
16    Q   Okay.  When you were given the draft of the
17        Complaint did you identify anything that you
18        thought was incorrect in that Complaint?
19                    MR. ALTMAN:  Objection, work product
20        privilege.  Instruct the witness not to answer.
21                    MR. DAVIS:  Mark that for the Court.
22    BY MR. DAVIS:
23    Q   You're not going to answer the question whether
24        you, reading a document, had your own opinions as
25        to the accuracy?
```

CONFIDENTIAL

Page 146

1               MR. ALTMAN:  Objection, privileged,
2        work product.  I instruct him not to answer.
3    BY MR. DAVIS:
4    Q    Have you read the lawsuit after it was filed?
5    A    I don't remember.
6    Q    Okay.  Did you read the Detroit News article that
7        you sent to a bunch of people?
8    A    Yes.
9    Q    Did you think there was anything inaccurate in
10       that?
11   A    No.  Not that I remember, no.
12   Q    Did Elyse tell you about how that Detroit News
13       article came to -- came about?
14   A    I don't think so.
15   Q    So you don't recall her telling you whether her
16       lawyer set that up or whether she reached out to
17       the Detroit News reporter or anything of that
18       nature?
19   A    No.
20               MR. DAVIS:  Take a five or ten minute
21       break.
22               MS. RUSSELL:  How close are you to
23       wrapping up?  Just wondering.
24               MR. DAVIS:  I don't know.  I have
25       seven hours on the record.  It's not going to take