# EXHIBIT 4

STATE OF MICHIGAN

14th JUDICAL CIRCUIT COURT (MUSKEGON COUNTY)

ROBERT HARRIS, Personal Representative
of the Estate of DAVID HARRIS, Deceased;

   Plaintiff,

v               File No. 22-003810-NH

DEBOER, INC d/b/a Lake Woods Nursing
Rehabilitation Center d/b/a Lake Woods
Nursing & Rehabilitation Center d/b/a the
Cove at Lake Woods; THE PEPLINSKI GROUP, INC.;

   Defendants, Jointly and Severally.

_____/

EVIDENTIARY HEARING

BEFORE THE HONORABLE KENNETH S. HOOPES, CIRCUIT JUDGE

Muskegon, Michigan – Tuesday, August 26, 2025

APPEARANCES:

For Plaintiff's Counsel: TIM ALTEMUS
         Fay Law Group, P.A.
         6205 Executive Boulevard
         Rockville, Maryland 20852
         (202) 680-3161


For the Lienholder:   DAVID P. SHAFER P53497
         SHAFER SWARTZ, PLC
         40 Concord Avenue
         Muskegon, Michigan 49442
         (231) 722-2444

TRANSCRIBED BY:    Ashlyn Katz, CER 16402
         Certified Electronic Reporter

1

```
 1           it to I guess prove otherwise, I'm happy to look at it. Do you
 2           have it with you?
 3   A.      Okay. I don't know that I have access to it. So.
 4   Q.      Because I can get it from Mr. Takacs.
 5                 THE COURT: Let's move on. We're not -- she testified
 6           that the facts really hadn't changed. The Court's going to
 7           assume the briefs are fairly similar.
 8                 MR. SHAFER: Okay. Thank you, Your Honor.
 9                       DIRECT EXAMINATION
10   BY MR. SHAFER:
11   Q.      And you said you had to do some work with respect to the Covid
12           immunity summary disposition that was filed by Mr. Takacs?
13   A.      Yes.
14   Q.      And you said that you had to do that after you left the OMP
15           employment?
16   A.      Yes.
17   Q.      Fair to say that this Covid immunity issue was an issue that
18           you folks at OMP frequently had to contend with even you
19           worked there?
20   A.      I had not contended with it when I had worked --
21   Q.      Okay.
22   A.      I had not contended with it yet.
23   Q.      All right. I'm going to hand you a copy of -- I think this is
24           your response to Defendant's motion for summary disposition,
25           and I didn't attach the exhibits because there were 111 pages.
```

1      But does that appear to be your response to his motion for

2      summary disposition?

3   A.  Yes. And I have a copy over there that has the exhibits.

4   Q.  I'm sorry?

5   A.  Yes. And if the exhibits are needed, we have a copy that has

6      the exhibits.

7   Q.  Okay. And other than the facts in that case, isn't it fair to

8      say that the law and the argument that you raised in that case

9      was similar, if not identical, to law and argument that was

10     raised in other cases that you had access to at OMP when you

11     worked there?

12  A.  I am assuming that the Covid MSD motions, Plaintiffs have

13     cited similar law. I did not look at the -- I did not review

14     the Covid motion responses at Olsman, so I cannot tell you if

15     they're the same. I would think that one of the unique points

16     of my opposition was that I went through and I listened to all

17     of the meeting minutes from the Michigan House Judiciary

18     Committee on the *Pandemic Health Care Immunity Act*, and I

19     looked at the testimony of Amy Barkholz, and I don't know if

20     anyone else has done that, but --

21  Q.  Okay.

22  A.  -- I know that Plaintiffs in general, know of -- they, you

23     know, in paragraph 12 of the motion, we know of the Judges

24     throughout the States of Michigan that have gone our way.

25  Q.  Yeah.

```
 1   A.   The Covid 19 MSD orders. I'm assuming that that's probably
 2        something that all Plaintiffs try to have. I do not know about
 3        the law in the other Olsman MacKenzie Peacock Covid responses.
 4   Q.   Did you have any other briefs or responses to the Covid
 5        immunity from OMP that you had access to or that you took with
 6        you when you left OMP?
 7   A.   No.
 8   Q.   Okay. All right. Thank you.
 9             MR. SHAFER: Your Honor, we do have a copy of a brief
10        from OMP from January 10 of 2023. We'd like to submit that to
11        the Court in addition to the one that was filed by Ms. McKenna
12        to indicate to the Court that these briefs, in terms of the
13        argument and the law, are virtually identical with respect to
14        the Covid immunity response that Ms. McKenna made after she
15        left the employment of OMP. I'm submitting them to the Court
16        so the Court can compare the argument and the law in those
17        sections because it's our contention that she simply copied
18        that information.
19             THE COURT: All right.
20                        DIRECT EXAMINATION
21   BY MR. SHAFER:
22   Q.   What other work did you do on --
23             MR. ALTEMUS: Your Honor, I would (unintelligible) --
24        I don't know -- at this juncture, I would object to its
```

1     admission mainly without a lay of a foundation. With testimony

2     that would compare the two, explain what  --

3              MR. SHAFER: I can do that with Mr. Olsman, Your

4     Honor. That's fine.

5              THE COURT: I mean, obviously the law is what it is.

6     I mean, this Court's dealt with those motions and it's more of

7     a -- you have the basic law that's the same.

8              MR. SHAFER: No, your point is good.

9              THE COURT: All right? And then you got to apply it

10    to the case, and then it's unique --

11             MR. SHAFER: Yeah. Our point is it's almost

12    identical. So when she said she didn't have access to it, it's

13    like it's lifted right from Donna's brief.

14             THE COURT: Okay.

15             MR. SHAFER: So I'll clear that up with Mr. Olsman.

16                   DIRECT EXAMINATION

17   BY MR. SHAFER:

18   Q.  Do you have any idea how much time was spent by you on this

19       Harris file when you worked at OMP in terms of hours, Ms.

20       McKenna?

21   A.  I'm sure we could go through each task and talk about hours.

22   Q.  Yeah, I'm just --

23   A.  Do I have a total that, like, I could just randomly give you

24       right now?

25   Q.  Yeah. Yeah, yeah.

```
 1   Q.   Yeah.

 2   A.   But I don't -- I did not change my mediation summary. I

 3        provided the opposition to the mediator to cover the Covid

 4        problem.

 5   Q.   But you didn't add in to the mediation summary your opposition

 6        as to what -- you didn't argue in your mediation summary --

 7        the new one that's virtually identical to the first one -- you

 8        didn't argue even though you knew it was a big issue; you

 9        didn't argue Covid immunity in that subsequent mediation

10        summary.

11   A.   No, I provided the opposition to the mediator.

12   Q.   Okay. And do you agree that you largely -- and I'm not saying

13        this to be pejorative; I'm saying it to be factually honest --

14        you largely plagiarized from Donna's brief and from briefs

15        that were at OMP, your response to Mr. Takacs initial motion

16        for summary disposition. Do you agree or disagree with that

17        with respect to the argument and law section?

18   A.   I did not plagiarize anything.

19   Q.   Okay. I have no other questions. Thank you.

20                  THE COURT: All right. Any recross?

21                     RECROSS EXAMINATION

22   BY MR. SHAFER:

23   Q.   I just -- this issue about the mediation statement. My

24        understanding -- or facilitation statement -- my understanding

25        is to provide the information you believe the facilitator
```

78