UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ELYSE MCKENNA, | Case No. 24-cv-12347 |
| Plaintiff, | |
| v. | Hon. Brandy R. McMillion |
| ROBERT F. RILEY et al. | Magistrate Judge Elizabeth A. Stafford |
| Defendants. | |

**Riley Parties' Supplemental Brief in Support of Sanctions Motion**

**Introduction**

The Riley Parties' Sanctions Motion (ECF No. 113) and reply (ECF No. 163) described McKenna's systematic effort to shield her most relevant therapist from discovery: Gemma Haynes, who treated McKenna before she started working at Riley & Hurley and continued to do so until after she had left. Because McKenna can only plausibly claim emotional distress damages, Haynes is a critical witness as to the extent and potential bases for any emotional distress McKenna suffered.

Nonetheless, McKenna resisted discovery into Haynes based on the false assertion that Haynes never treated her individually and instead only provided couples' counseling. But *five* independent sources now confirm that McKenna received individual therapy from Gemma Haynes: (1) clinic records from the Eastwood clinic where Haynes practiced; (2) Haynes's own deposition testimony confirming those records; (3) McKenna's divorce questionnaire; (4) McKenna's texts; and (5) the testimony of McKenna's therapist Anne Gialanella, who confirmed that McKenna told her she'd been in "individual therapy" since 2018—and whose records McKenna obtained shortly before testifying otherwise.

Now that the Riley Parties have obtained Haynes's testimony and McKenna's heavily-redacted medical records,[1] it is clear what McKenna was trying to hide. The

---

[1] McKenna's obstruction has yet to be fully remedied. She has not produced Haynes's records herself. And the clinic produced redacted records that Haynes confirmed related to *individual* therapy. The Riley Parties are seeking leave to move to compel.

evidence shows that McKenna had numerous stressors pre-dating her time at Riley & Hurley—from childhood trauma to marital difficulties—but nothing about Bob Riley's alleged actions. Instead, she had only generic workplace complaints. And even more critically, Haynes diagnosed McKenna with a significant mental health condition *before* she started at Riley & Hurley, but that condition had abated by the time she saw her next therapist, after leaving Riley's employ. The Haynes evidence is powerful proof undermining McKenna's emotional distress damages claim.

McKenna's false testimony was thus intended to obscure this devastating evidence undercutting her sole damages theory. And her lie was also the centerpiece of her former counsel's attempt to mislead this Court as to Haynes's status. This false testimony further supports the Riley Parties' sanctions motion and warrants the strongest relief the Court can impose against McKenna and her ex-counsel.

Undersigned is reluctant to charge a lawyer with dishonest conduct. If the only evidence before the Court was McKenna's initial denial of individual treatment paired with a subsequent assertion that she had forgotten about that treatment, McKenna would have been given the benefit of the doubt. But the discovery of overwhelming evidence that McKenna knew full well the truth when she denied it under oath warrants the serious charge of offering false testimony.

## Background

### A. McKenna treated individually with Gemma Haynes.

It cannot be disputed that Haynes provided McKenna individual treatment:

*First*, the therapy records from the Eastwood clinic where Haynes practiced indicate that McKenna attended at least *twenty-eight* individual therapy sessions with Haynes, for which Haynes billed McKenna herself. *See, e.g.*, ECF No. 196-3 (Examples of Eastwood Records).

*Second*, Haynes herself confirmed that these records are what they facially appear to be: individual treatment records of McKenna. *See, e.g.*, Ex. A, Haynes Dep. 32. She also testified that these records established that the denial by McKenna and her counsel of individual treatment was untrue. *Id.* at 98-99.

*Third*, while the records from Eastwood suggest that McKenna transferred to "joint" sessions in 2019, subsequently-obtained text messages between McKenna and her friend Lauren Studley repeatedly refer to Haynes as "her" therapist and discuss treatment related to workplace disputes, rather than marital strife. *See* ECF No. 161-2. Haynes likewise independently confirmed treating McKenna as to work-related issues during the so-called "marital" sessions. Ex. A, Haynes Dep. 101-110.

*Fourth*, McKenna's divorce questionnaire from 2023 states that she had been in individual therapy with Haynes—separate and apart from marital counseling—from 2018 to 2023, corroborating the texts and testimony above. ECF No. 115-19.

*Fifth*, McKenna told her most recent therapist Anne Gialanella in June 2024 that she had been in both individual and couples counseling since 2018. Ex. B, Gialanella Dep. (Rough) at 61-62.

The Gialanella records also reveal the critical precursor to McKenna's false testimony. On June 13, 2025, McKenna revoked her HIPAA authorization for Gialanella, cutting off the Riley Parties' access to the file containing her admission of individual therapy. Then, on July 15, 2025, she requested a copy of her full file from Gialanella, which Gialanella provided. *Id.* at 28. By the time McKenna testified in November 2025, she had reviewed the file containing her written admission, but nonetheless denied individual therapy under oath.

### B. McKenna falsely testified in November 2025, as part of a coordinated strategy to resist production of Haynes's records.

Seventeen months after writing on the Gialanella intake form that she had been in individual therapy since 2018—and a few months after obtaining her medical file confirming the same—McKenna testified under oath to the opposite. At her November 17, 2025 deposition, OMP's counsel asked McKenna directly whether she had seen Haynes individually, separate and apart from marital counseling. McKenna's testimony evolved through a staged progression of denials:

- *First*, she hedged: "I don't believe that I have. As I sit here today. I don't recall that." ECF No. 115-26, PageID.3722, OMP Dep. of McKenna at 51:12–16.

- *Second*, she attributed her denial to Haynes: "Ms. Haynes advised that I did not treat with her individually and I don't recall treating with her individually so." *Id.* at 51:23–51:25.

- *Third*, she claimed her ex-husband was Haynes's patient: "My ex-husband — Brandon H[eid] treated with Ms. Haynes and I do not believe I treated with Ms. Haynes in that context." *Id.* at 52:17–52:19.

- *Fourth*, she unequivocally denied individual treatment: "I did not treat with her. My ex-husband treated with Ms. Haynes." *Id.* at 52:24–52:25.

- *Fifth*, she described her presence at Haynes's sessions as merely attending "some of the counseling sessions that my ex-husband had with Gemma Haynes." *Id.* at 57:15–57:17.

**C.     McKenna's counsel advances the false testimony as a coordinated litigation position.**

McKenna's false testimony did not occur in a vacuum. Her then-counsel Kimberly Russell elevated it into a formal litigation position, stating on the record: "The theory is that she was never a patient of Gemma Haynes. The patient was Brandon H[eid]." *Id.* at 50:2–4. Russell also represented to examining counsel: "We've talked with the provider. She was never billed. She has no privilege with this provider. The privilege is held by Mr. H[eid]." *Id.* at 48:22–49:1.

The "theory" was built on the premise that because McKenna denied individual therapy, the individual treatment never happened. Five independent

sources prove that it did. And McKenna's own file with her then-therapist Anne Gialanella—which McKenna obtained a few months before her deposition—proves that she knew all along that Haynes gave her individual therapy.

Russell's involvement did not end at the deposition. On December 7, 2025, Russell texted Haynes advising that she would move to quash the Haynes subpoena — a subpoena the Court had authorized only weeks earlier when ordering McKenna to provide a HIPAA release. ECF No. 113-28, PageID.3114. This text was sent after Russell had represented at the deposition on November 17, 2025 that Haynes never treated McKenna. *See supra* at 4. And her resistance to this Court's orders to sign HIPAA releases for Haynes is documented in the Riley Parties' sanctions reply brief. ECF No. 163, PageID.5795. Having constructed a false narrative at the deposition, counsel sought to prevent the witness whose records and testimony would expose it from being compelled to testify.

## Argument

### I.    McKenna's false testimony supports a ruling of case-dispositive sanctions.

As shown in the Riley Parties' pending sanctions motion, there are four factors for the Court to consider when evaluating a request for case-dispositive sanctions. *See* ECF No. 113, PageID.2803 (citing *United States v. Reyes*, 307 F.3d 451 (6th Cir. 2002)). McKenna's false testimony strengthens the case for dismissal:

- **Willfulness or bad faith.** Intentionally lying about receiving individual treatment from Haynes—in a case where McKenna's alleged emotional distress is *the* primary basis for damages—to prevent discovery of Haynes's records is unambiguously willful discovery misconduct.

- **Prejudice.** McKenna's false testimony, part of a larger scheme to conceal individual therapy records, has undeniably been prejudicial. It forced the Riley Parties to unnecessarily incur legal fees across multiple pre-motion conferences, subpoena disputes, and HIPAA-release battles, all to obtain records McKenna knew existed.

- **Warning.** McKenna, as a licensed attorney, certainly needed no Court warning that making false statements under oath is impermissible. Counsel expressly reminded at deposition anyway. ECF No. 115-26, PageID.3711, OMP Dep. of McKenna at 6:11–18. And, of course, no Court warning is necessary where a party has engaged in bad faith or contumacious conduct. *Mager v. Wis. Cent. Ltd.*, 924 F.3d 831, 840 (6th Cir. 2019). False testimony is the epitome of bad faith and contumacious conduct.

- **Insufficiency of lesser sanctions.** This misconduct proves that lesser sanctions will fail. McKenna has made clear that she will intentionally lie, contrary to her oath and ethical duties as a lawyer, rather than participate in discovery and respect this Court's authority and orders.

McKenna has engaged in a year-long scheme to prevent discovery into her mental health records. What started as obstruction—revoking HIPAA authorizations and altering them in violation of Court orders—has metastasized into outright perjury. If repeated violation of Court orders, a Court finding of subpoena interference, and demonstrably false testimony under oath are not enough to warrant dismissal, then no misconduct ever will be.

-7-

## II.    McKenna's false testimony scheme warrants sanctions under this Court's inherent power and 28 U.S.C. § 1927.

This Court has the inherent authority to sanction parties who act "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). This power extends to the full range of sanctions, including dismissal and attorney's fees, and may be exercised alongside rules-based sanctions—particularly where the rules are not "up to the task."[2] *Id.* at 45, 50; *accord, e.g.*, *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103–104 (2017) (reaffirming inherent-authority sanctions for discovery misconduct when a party concealed unfavorable evidence and its attorneys lied about its existence).

Under this inherent authority, courts have held dismissal "appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). Likewise, dismissal "is an appropriate sanction for falsifying a deposition." *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991).

The evidence here satisfies the bad-faith standard of *Chambers* with room to spare. McKenna gave false testimony under oath that she was never Haynes's patient, and relied on that falsehood in an effort to obtain relief: precluding the Riley

---

[2]As commentators have noted, there is no specific provision in the Federal Rules about deposition perjury; thus, inherent authority is a particularly useful tool to fill that gap. *See* Zeigler & Gibson, *Perjury During Depositions and Its Consequences*, ABA Section of Litigation (June 11, 2012) (attached as Exhibit C).

Parties from obtaining discovery from Haynes of relevance to the claims and defenses in this action. As set forth in detail above, this was a calculated, multi-step scheme to deceive the Court and obstruct discovery. That is inherently abusive.

Sanctions are also warranted against McKenna's counsel Kimberly Russell under 28 U.S.C. § 1927 for her role in this deception—even if the Court were to find that she, too, was initially deceived by McKenna. The Sixth Circuit holds that § 1927 sanctions are appropriate when counsel "objectively falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).

In a best-case scenario for Russell, she took strident litigation positions based on an objectively verifiable "theory" that she chose not to verify: that Haynes never treated McKenna. She advanced this theory without apparently asking her client for readily available documents that would have instantly disproved the theory Russell was espousing. And she maintained this position even as the Riley Parties mounted evidence it was untenable—including, specifically, her client's *own contemporaneous records* showing she had individual therapy with Haynes distinct from marriage counseling.[3] Yet, as stated in the initial briefing and this supplemental

---

[3]Ms. Russell's position, apparently, is that she asked Gemma Haynes, who only recalled the marital sessions. Unexplained, however, is why Ms. Russell would not have sought out the underlying medical records—documents in her own client's

brief, she forced the Riley Parties to incur protracted litigation expense just to obtain the medical records that disproved the "Haynes never treated me" theory.

The Sixth Circuit has held that an attorney may be sanctioned for "failing to investigate and verify, within reason, a major factual premise behind the asserted legal claims of [her] client," particularly when a "simple inquiry" or "a demand that [the client] produce the purported document" would have revealed the truth. *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 385 (6th Cir. 1997) (citing Rule 11; the same principle applies to § 1927 given its focus on an attorney's obligations as a member of the bar). The *Union Planters* language describes Russell's conduct precisely. She, too, is liable for the Riley Parties' fees incurred with respect to the Haynes saga.

## Conclusion

The Riley Parties respectfully request that the Court:

1. Grant the relief requested in ECF No. 113, including dismissal of McKenna's claims with prejudice or, in the alternative, the sanctions set forth therein;

2. In the alternative or in addition, sanction McKenna under the Court's inherent authority for the deliberate falsity of McKenna's deposition testimony and the coordinated scheme to conceal her individual therapy records, including an

---

control—even after this significant evidence came to light contradicting both McKenna's assertion and Haynes's imperfect recollection.

award of all attorney's fees and costs incurred by the Riley Parties in connection with the Gemma Haynes discovery disputes;

3. Sanction ex-counsel Kimberly Russell personally under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying the proceedings through her role in advancing the false "never a patient" narrative and obstructing discovery of the evidence that disproved it; and

4. Grant such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

/s/Thomas J. Kienbaum
Elizabeth Hardy (P37426)
Thomas J. Kienbaum (P15945)
Thomas J. Davis (P78626)
KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
tkienbaum@khvpf.com
tdavis@khvpf.com
*Attorneys for Robert F. Riley and*
Dated: April __, 2026          *Riley & Hurley, P.C.*

-11-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April __, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

I further certify that a copy of the foregoing was mailed to Plaintiff's ex-counsel Kimberly Russell at her address of record and via email:

> Kimberly Russell
> The Russell Law Firm, PLLC
> 1220 3rd Street NE, Apt. 410
> Washington, DC 20002
> Email: kimberly@russellatlaw.com

I further certify that a copy of the foregoing was also sent to Plaintiff/Counterclaim Defendant Elyse McKenna at her address of record and via email:

> Elyse McKenna
> 2741 Kearney Creek Dr.
> Lexington, KY 40511
> Email:  elyse@foxmckenna.com

> /s/ Thomas J. Davis
> Thomas J. Davis (P78626)
> Kienbaum Hardy
> Viviano Pelton & Forrest, P.L.C.
> 280 N. Old Woodward Ave., Ste. 400
> Birmingham, MI  48009
> (248) 645-0000
> tdavis@khvpf.com

606891