CONFIDENTIAL



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


ELYSE MCKENNA,

Plaintiff,       Case No. 2:24-cv-12347

vs.

ROBERT F. RILEY, et al,

Defendants.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _/


DEPONENT:      GEMMA HAYNES

DATE:          Friday, March 13, 2026

TIME:          10:04 a.m.

LOCATION:      Kienbaum Hardy Viviano

               Pelton & Forrest, PLC

               280 North Old Woodward, Suite 400

               Birmingham, Michigan

REPORTER:      Shari J. Pavlovich, CSR-5926

VIDEOGRAPHER:  Lauren Luzod

Job No.:       52483

CONFIDENTIAL



Page 32

A    Yes.

Q    Let's look at the next one, 5113.  And I was planning to emphasize things such as, you know, look at this form.  It says, "modality, individual".  And then there are possible boxes for family and couple and so forth.

You marked "individual"; correct?

A    Correct.

Q    Reflecting the fact that this was an individual treatment of her; correct?

A    Correct.

Q    And there wouldn't have been any other attendants, would there?

A    No.

CONFIDENTIAL

Page 98

this is on a record someplace.

But it deals with things that we've been talking about. So I'm just going to ask you whether what is reflected in that record is correct or not. That's all I can do at this point. Okay?

A    Okay.

Q    All right. Well, let me advise you, on November 17, 2025, the deposition of Ms. McKenna was taken. And at page 47 they start -- that is, Counsel and Ms. McKenna. There's a lot of back and forth, the way it happens. Not this one, which has been very civil.

But in some there's a lot of back and forth, and here there was. And here we have a discussion about Ms. McKenna's -- you know, was it treatment or not treatment with you.

And at page 47, line 22, Ms. Russell, Ms. McKenna's lawyer, in the presence of Ms. McKenna says:

"And I have already given you all our position on this. We talked with the provider" -- that would be you. "She was never billed. She has no privilege with this provider. The privilege is held by Mr. Heid."

CONFIDENTIAL

Now, that wouldn't be correct, would it, as we've learned today?

A    Correct.

Q    All right.  It goes on, on page 50.  And it's curious wording on line 2:

"The theory is not marital privilege. The theory is that she was never a patient of Gemma Haynes.  The patient was Brandon Heid.  We can go off the record with all this conversation."

That was a statement by Counsel in the presence of McKenna.  Again, whatever "theory" means in this context, that wasn't correct, was it?

Namely, that she was not a patient being treated by you?

A    That is correct.

Q    All right.  It goes on.  And here they reference you directly.  This is Ms. McKenna at page -- line 23 on page 51, saying:

"Ms. Haynes advised that I did not treat with her individually and I don't recall treating with her individually."

So that isn't correct.  Or is it correct that you told her that you never treated with her individually?

CONFIDENTIAL

Page 104

me or email me or text me about something?  I don't think so.  I don't think that's possible.

If you're saying that -- did it come up in maybe in a session with another party, I don't remember saying those things.  But yeah.

Q   You're saying it would be possible in a session, but you don't think it would have happened?

A   If, you know -- maybe, you know, it's affecting something.  I'm not sure how that would come up. But any -- yeah, I'm not.

Q   Do you ever, during these sessions -- post the cutoff of 2020 where she might have been present.

Do you ever recall a discussion with Ms. McKenna about work issues she was having?

A   Yes.

Q   What did she say?

A   I don't remember the specifics.  But I do remember work being stressful, being part of the -- her stressors.  Because it came out, I believe.

So when we talk in session, there are -- there are -- and we -- say, for instance, we are discussing stressors.

And she may mention that she's having some stressful times at work.  I do remember her saying that she was -- there was some stressors at

CONFIDENTIAL

Page 105

Q  work.

Q  This would have been post 2020?

A  So in sessions with someone else, yes.

Q  Okay.   But that would not have involved marriage counseling when she made these statements to you about work; right?

A  In sessions with the other party?

Q  Yes.

A  Work did come up.

Q  Okay.

A  I don't -- I can't be that specific with you.  I'm sorry.  I don't remember.

Q  And that wouldn't, then, however, be part of treating with the third party we've not identified yet; right?

A  It would be part of.  So how do I describe this? He's primary.  She's coming with; right?

So I'm treating him.  And she may say -- okay, let's say I'm screening him for work stressors.

And she may say, I, too, blah, blah, blah.  And I will make it holistic and say, Well, we know that this skill is very useful for when you are dealing with difficult personalities or having work stressors.

CONFIDENTIAL

Page 106

It's important for you to exercise and take care of yourself.  And you know, so she would benefit from being in this position.

Does that make sense?

Q    Sure.  Absolutely.

A    Okay.

Q    When she benefits, she benefits from what?  From your counseling; right?

A    Absolutely.

Q    Okay.  And along the same lines when I've already asked you -- I suspect you're not going to remember this, but let's give it a try.

Another reference of this text interaction, part of the record ECF number 161-2, page ID 5746.

And do you recall a discussion with Ms. McKenna about someone named Rick, R-I-C-K?

A    No.

Q    And do you recall advising her just not to have a certain discussion at work and that she should remember that people only treat you the way you allow them to treat you?

A    No.  I don't remember that, but that is something that I could say.

Q    And going now to page ID -- in the same filing at

CONFIDENTIAL

Page 107

page ID 5747, Ms. McKenna here says that you said, that the worst that --

"What's the worst that could happen if you talk to Rick?  Why not talk to him?"

A    I don't remember that.

Q    And did you say to her, "be in your wise mind, Elyse."

Does this ring a bell?

A    I would have said -- I would have talked about wise mind in a session.

Q    In a session?

A    In sessions, yes, I would.

Q    Okay.

A    Yes.

Q    And that would be those sessions with a third person?

A    Yes.

Q    With the big cup?

A    Yes, with the big cup.

Q    All right.  And reminding her that she was a good attorney during these sessions.

"Remember that and remember what Gemma said, you are a good attorney."

This is the statement made at page ID

CONFIDENTIAL

Page 108

5748.  Was that something you would have said, again, on those sessions to her?

A    I would -- yes.  I would -- I don't know if I -- I'm sure I probably said that.  I say that to all my clients.

You're good.  You're a good person.

Q    And at page ID 5749, and Gemma --

"Like Gemma said, Elyse, la la land. They are the ones who are being unreasonable.  You are not.  So don't let it shake you."

Is that something you might have said?

A    I don't know about that one.

Q    And in those sessions --

A    I don't remember that, no.

Q    And in this time frame that these text messages represent, early 2021, and page ID is 5745.  In connection with a back and forth between Ms. Studley and Ms. McKenna, Ms. McKenna says:

"Good thing I already have an established relationship with a therapist."

Now, would that be a correct statement by her as of that date in 2021?

CONFIDENTIAL

Page 109

MR. WITENOFF:  Does it reference Ms. Haynes?  Because you're asking therapist.  It could be other therapists.

MR. KIENBAUM:  Sure.

MR. WITENOFF:  You're referring to a relationship with Ms. Haynes?

MR. KIENBAUM:  Yes.

MR. WITENOFF:  Okay.

THE WITNESS:  Granted, that I was seeing her since 2017.  I mean, that -- she could have made that statement.  That would be a fair statement.

BY MR. KIENBAUM:

Q    And of course, you visually saw her -- not using the loaded phrase saw her -- during those sessions where the third person --

A    Eastwood Clinics?

Q    No.  Whether Eastwood or whether FairSky, whichever, those sessions with another person who shall remain nameless for the moment, you also saw her.  She was present; right?

A    Do I need to differentiate whether it's physical or if it's virtual?  Are you -- is that what you're asking me?

Q    Physical.  I'm talking about physical.

Carroll Reporting & Video
A Veritext Company
www.veritext.com                                586-468-2411
www.veritext.com

CONFIDENTIAL

Page 110

A    So at FairSky there were no physical.  It was all virtual, and at Eastwood it was all physical.

Q    Okay.  Well, virtually, you're still seeing, I assume?

A    Yes.

Q    So let's go back to the seeing.  You would have seen Ms. McKenna.  And when you testified a moment ago, you said these things.  This would have occurred during these sessions with the third -- the unnamed third person; right?

A    Yes, sir.

Q    Okay.

          MR. KIENBAUM:  Can we just -- it will be three minutes.

          MR. WITENOFF:  It's your deposition.

          VIDEOGRAPHER:  Off the record 12:36.

          (Short recess taken at 12:35 p.m.)

          (Back on the record at 12:40 p.m.)

          VIDEOGRAPHER:  We are back on record 12:41.

          MR. KIENBAUM:  Thank you very much, Ms. Haynes.  I have no further questions at this time.

          THE WITNESS:  Okay, thank you.

          MR. WITENOFF:  You're going to look