**EXHIBIT B**

ROUGH DRAFT

ANNE GIALANELLI

March 18, 2026

THE VIDEOGRAPHER:  We are on the record at 10:02 on March 18, 2026.  This is the video recorded deposition of Anne Gialanelli taken by defendant in the matter of McKenna versus Riley, et al, filed the US District Court for the Eastern District of Michigan, Case No. 24-cv-12347.

My name is Justin Dloski, representing Veritext.  Counsel may not introduce themselves for the not record, then the reporter will swear in the witness.

MR. KIENBAUM:  Let me start.  I am Thomas Kienbaum.  I represent the Riley defendants.

MS. TAYLOR:  Elizabeth Marzotta Taylor on behalf of OMP.

MS. RUSSELL:  Kimberly Russell on behalf of the plaintiff.

MR. MEYER:  Brian Meyer on behalf of the witness.

(Witness sworn.)

EXAMINATION

BY MR. KIENBAUM:

Q.   Thank you.  Good morning, Ms. Gialanelli, am I doing that

was said?

A. No.

Q. Let me ask you generally, we have got chart notes we are going to talk about progress notes in moment. Are there any paper notes that you might have made that you might still have, in other words, you note something down, just to be more complete perhaps, that kind of thing?

A. No.

Q. Nothing other that what would be in chart notes or progress notes or billing records; in other words, the kind of of documents we have in front of us, nothing more that you possess?

A. Correct, that is her complete medical file.

Q. No further communications with her or her lawyers other than what might be reflected here to the extent there is something in writing, correct?

A. That's correct.

Q. Let's go forward to July 16, 2025, it's our Exhibit Bates 4382. Here you record a request from McKenna, Ms. McKenna for a full and complete copy of her medical records. Do you see that?

A. Yes, I see that.

Q. And did you provide her with a full and complete copy of the medical records pursuant to her request?

A. I did.

61

that made of herself in response to questions. I don't know if you see that, the mood survey?

A. Give me just a moment. The June -- this was at the beginning of treatment, is that correct.

Q. June 10, '24.

A. Yes, I see it.

Q. And these entries, tell me how this would have been created, this is a form that is presented to her on the computer and she fills it out and sends it you completed as we see here?

A. Yes, that's correct.

Q. So, the answers to the questions will be her, but when you tally them up, would that be her tally or your tally?

A. That would be automated, I think.

Q. I see she signed -- appears to have signed this form. I don't know whether that's part of it, maybe June 10. And then we have a client questionnaire that's our 4468. This was dated again, June 10, so I think it's part of a paperwork that was created when she first came to see you in June of 2024.

But do you have this questionnaire in front of you?

A. Yes, I just pulled it up.

Q. So, one of the questions you asked her, have you seen a mental health professional before. Do you see that?

A. Yes.

62

Q. Her answer is yes, I have been in therapy since 2018, at that time I was going to go individual therapy and couples therapy.   Do you see that?

A. Yes.

Q. Did you follow-up on this to ask who she was having therapy with?

A. I don't remember.

Q. Our timelines in terms of the discovery that's been done suggests that would have involved Gemma Hanes (ph).  Does that ring a bell with you?

A. No.

Q. And you didn't ever ask for the records from these prior treatments?

A. No.

Q. Then we have billing records in our file.  I am going to put that aside, and quickly, I hope, deal with the file we just received this moment -- this morning, rather.  Let me again put aside the billings.

But if you can follow us, again, I am sorry I don't have any Bates numbers, but I think everybody has got this document, and we have November 4, 2025, I guess that's a continuum, the first it appears following the July disclosures that you made in response to the subpoena, would that be correct?  I don't have the dates.  I am not trying to trick you