# Exhibit E

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

ELYSE MCKENNA,

Plaintiff,

Case No. 2:24-cv-12347

Hon. Brandy R. McMillion

v.

Magistrate Judge Elizabeth A. Stafford

ROBERT F. RILEY, et al.,

Defendants.

## JOINT PROPOSED RULE 26(f) DISCOVERY PLAN

**1. Related Cases.**

**Plaintiff** states that there are six pending related cases, and, at this time, no previously-adjudicated related cases. The pending related cases are:

a. *Estate of Balcer v. Lansing Opco,* Eaton County Circuit Court Case No. 22-1028-NI ("Balcer")

b. *Estate of Davis v. Ascension Providence*, Oakland County Circuit Court Case No. 2023-201609-NH ("Davis")

c. *Estate of Lipinski v. Riverview Health,* Wayne County Circuit Court Case No. 23-009243-NH ("Lipinski")

d. *Estate of Harris v. Deboer, Inc.,* Muskegon County Circuit Cout Case No. 2022-03810-NH ("Harris)

e. *Estate of Knight v. Taylor OPCO*, Wayne County Circuit Court Case No. 23-008379-NH ("Knight")

f. *Estate of Fomby v. Southfield OPCO*, Oakland County Circuit Court

Case No. 2024-205053-NH ("Fomby")

The cases relate to Plaintiff's damages, as well as Plaintiff's retaliation claims.

The **Riley Defendants** state that that there are no pending related cases or previously-adjudicated cases with respect to the claims involving them and Mckenna.

**Defendant Olsman MacKenzie** states that its position is that there are no pending related cases.

## 2. Jurisdiction.

**Plaintiff's position:** There are no real issues related to jurisdiction. Diversity jurisdiction exists because Plaintiff McKenna is domiciled in Maryland. Federal question jurisdiction also exists for Plaintiff's Title VII claims.

**The Riley Defendants' position:** The Riley Defendants' position on jurisdiction is set forth in its Answer at Paragraphs 24 and 25.

**Defendant Olsman MacKenzie's position:** Olsman MacKenzie intends to take the position that this Court should not exercise supplemental jurisdiction over Plaintiff's state law claims against Olsman MacKenzie. It is unclear from the Amended Complaint whether and to what extent Plaintiff intends to take the position that any of her claims against Olsman MacKenzie rest on diversity jurisdiction. Because there is reason to believe that McKenna is not domiciled in Maryland, Olsman MacKenzie would also object to jurisdiction on that basis.

2

### 3. Factual Summary.

**<u>Plaintiff's brief summary:</u>** During the time Plaintiff Elyse McKenna worked for Defendant Robert F. Riley's law firm, Riley & Hurley, from October 2019 until September 2021, Riley treated Plaintiff differently than other attorneys in his office because of her gender, grooming her for a sexual relationship and creating an intolerable hostile work environment for this young lawyer. Even after leaving Riley & Hurley, for the past four years Riley continued to sexually harass and stalk attorney McKenna. For more than two of those years, Riley's harassment of McKenna occurred with the knowledge and approval of McKenna's then-employer, Defendant Olsman MacKenzie Peacock, a law firm whose partners have a close and mutually beneficial business relationship with Riley and which allowed Riley to influence and control McKenna's employment conditions.

During the course of her employment, her boss Riley bombarded McKenna with unwanted text messages, phone calls, time spent in her office throughout the workday, lavish gifts, and mandatory monthly dinners with just him at expensive restaurants. He interrogated McKenna about her personal life and insisted on being part of it, attempted to kiss her when he was alone with her and wrote McKenna inappropriate romantic notes.

When McKenna rebuffed Riley or attempted to distance herself from him, he questioned her loyalty, intimidated her, and reminded her that her professional

success depended on him. After McKenna discovered Riley had been secretly photographing her and storing numerous photographs of her on his iPad, she quit her job and went to work for her new employer, Olsman MacKenzie Peacock ("Olsman").

McKenna informed her new employers of her past problems and concerns with Riley and requested that contact with him be limited or supervised. Olsman did not protect her from her former boss, but required her to use him as a mediator in their cases and to continue to deal with him on the mutual client they shared. With the knowledge, fostering and constructive approval of Olsman, Riley's sexual harassment of McKenna continued and escalated, including crying to her about her setting boundaries; duping her into being alone with him so he could discuss his feelings for her; threatening suicide; persistently contacting her; meddling in her personal and professional life; showing up uninvited; interfering with and sabotaging her work; and stalking McKenna, putting her in great fear for her physical safety.

Throughout McKenna's employment at Olsman, Olsman and Riley regularly conspired and communicated with each other about McKenna, and Riley influenced Olsman's decisions regarding McKenna's employment.

When McKenna continued to report and object to Riley's harassment, Olsman punished her by, among other things, revoking her year-end bonus, treating her with hostility and differently than other employees, and criticizing and investigating her

4

personal life including her marriage. Olsman fired McKenna, in retaliation, less than 24 hours after McKenna told the partners that her lawyers had confronted Riley. The reasons given for the termination were false and pretextual.

Riley and Olsman launched an ongoing concerted post-termination retaliation campaign to ruin McKenna's reputation and destroy her livelihood. They disparaged her to clients and to her colleagues in the legal community, spread rumors about her and filed retaliatory claims against her. All the while, Olsman and Riley have continued to mutually benefit from their close and longstanding relationship.

As a result of standing up to Riley and Olsman, McKenna was forced to leave the state and had to start her legal career over.

**Riley Defendants' brief summary:** McKenna was hired by Riley & Hurley, P.C. as an associate attorney in October 2019. The firm expected that she would acquire the experience to become a seasoned litigator and cultivate relationships with the firm's clients. During her employment, she became particularly attached to Riley, who believed that he and McKenna had a meaningful mentor/mentee relationship and friendship, as reflected in McKenna's own communications throughout her employment. It appears that McKenna's friendship was a ruse intended to get Riley to hand her firm clients without her putting in the time and work necessary to earn the client's trust and respect.

In May 2021, the firm's primary litigation principal decided that he would slow down and retire, leading McKenna to leave the firm. She put in place a plan to take firm clients with her, and set up a litigation claim against Riley and the firm for personal financial benefit. Riley—who is legally blind—uses an iPad as to accommodate his disability and keeps personal and sensitive information on the device, along with photos of attorneys with whom he practices. McKenna, suspecting that Riley would have her photos along with those of other attorneys, relentlessly badgered a firm employee into providing her with Riley's iPad password, which she then illegally accessed and (upon information and belief) took pictures of information on that device. She ended her employment with the firm without disclosing that she had accessed Riley's device. It was only after McKenna left the firm—and after she learned that Riley would not hand McKenna a significant client—that McKenna "confronted" Riley about his having photos of her on his iPad,

Three years later—after Riley and McKenna's working relationship had resumed—McKenna demanded that Riley hand over the client to her. She also threatened to publicly accuse him of sexual harassment based on nearly three-year old events unless he paid her a significant sum of money. After Riley refused, she began a campaign to defame and punish Riley, including making false allegations to the media, Riley's client, and the Detroit legal community. McKenna's conduct caused the shared client to end its relationship with Riley and hire McKenna instead,

6

and Riley lost other clients based on McKenna's accusations. McKenna's allegations of misconduct in this lawsuit are meritless, and she has committed various torts against Riley through her scheme of misconduct set forth above.

**Defendant Olsman MacKenzie's brief summary:** Plaintiff became employed by Olsman MacKenzie in September 2021. She was previously employed by the Riley Defendants for nearly two years. She left her employment with the Riley Defendants voluntarily. Plaintiff claims that after she joined Olsman MacKenzie she verbally reported to two female partners that she had allegedly been sexually harassed by her former employer, Robert Riley while she worked there. Even if this were true, Plaintiff does not state what she expected the Olsman MacKenzie partners to do about her report. It is uncontested that Riley does not and has never been employed by Olsman MacKenzie, does not share space with Olsman MacKenzie, and has no legal relationship with Olsman MacKenzie. Where opposing defense counsel and Olsman MacKenzie agree, Riley periodically sits as a mediator on Olsman MacKenzie cases.

Upon being hired by Olsman MacKenzie, Plaintiff chose to continue to represent a client that had been serviced by her former employer and would continue to be serviced by Riley, the "organizational client." Olsman MacKenzie had nothing to do with this client; Olsman MacKenzie is a plaintiff's medical malpractice and personal injury firm but allowed Plaintiff to do as she requested. Under the Olsman

7

MacKenzie name, McKenna billed the organizational client separately from Riley. She did not report to Riley, but instead reported to the organizational client. Plaintiff now alleges that while she continued to service the "organizational client" with Riley at out-of-town conferences and/or meetings, "sexual harassment" occurred. Plaintiff does not allege any physical touching, request for sexual favors, sexual overtures, reference to sex, or sexual comments of any kind by Riley during her employment with Defendant Olsman MacKenzie (or during her employment with the Riley Defendants). She claims that on two occasions Riley served as a mediator on cases she had while at Olsman MacKenzie. She does not allege that there were any issues whatsoever during these mediations, which she voluntarily attended. It is uncontested that Plaintiff could have ended her representation of the "organizational client" at any time but did not do so. She alleges that she complained to two of Olsman MacKenzie's female partners that while at out-of-town conferences with Riley, he said and did non-sexual things that she did not care for. It is uncontested that Plaintiff never put anything in writing as to alleged "sexual harassment" to Olsman MacKenzie or anyone else, including Riley, or the organizational client, and that she never made a formal complaint while she worked there. She does not explain what she expected Olsman MacKenzie to do to resolve any alleged issues with her former employer that arose because she chose to continue to periodically work with him. Plaintiff did not engage in protected activity as defined by state or federal law.

8

After a long history of performance and conduct issues in her employment at Olsman MacKenzie, including as to failure to meet financial goals, and on the heels of multiple verbal counselings, unbeknownst to Olsman MacKenzie, at least by January 2024, Plaintiff had taken significant steps to start her own law firm with a friend. In conjunction with her plan to start a new firm and extract money from Olsman MacKenzie, on Saturday, February 3, 2024, Plaintiff emailed Olsman MacKenzie partners stating her intent to separate from the firm. Plaintiff announced that she "will separate" from her employment with Olsman MacKenzie "if terms can be worked out." Deeply concerned about false statements in her email, and her decision to leave the firm, on February 4, 2024 Olsman MacKenzie accepted Plaintiff's resignation and declined to offer "terms."

**4. Legal Issues.**

**Plaintiff's Statement:** Plaintiff will establish the sexual harassment, hostile work environment, discrimination, stalking, conspiracy, retaliation, intentional infliction of emotional distress, and intrusion into seclusion under state and federal law as alleged in the Complaint.

Plaintiff has filed and has pending a motion to disqualify Olsman MacKenzie's counsel, Deborah Gordon and her law firm and filed a motion to stay the pending state court lien proceedings.

In addition, Plaintiff intends to challenge the legal and/or evidentiary bases of Defendants' affirmative defenses and Riley's counterclaims under Rule 12 and Rule 56. Plaintiff anticipates filing motions *in limine* in advance of trial.

**The Riley Defendants' Statement:** The legal issues related to McKenna's claims will generally involve the application of fact to well-established law under the relevant employment statutes. All of McKenna's claims are potentially appropriate for resolution by summary judgment motion. The Riley Defendants' counterclaims will likely require ultimate resolution by a jury. The Riley Defendants further intend to seek preliminary and permanent injunctive relief, and/or motion in limine relief, regarding Plaintiff's misconduct with respect to Riley's device.

**Defendant Olsman MacKenzie's Statement:** The legal issues Olsman MacKenzie intends to litigate in this matter include that Plaintiff has not stated any legal claims upon which relief can be granted and/or has no evidence upon which a reasonable fact-finder could determine that she has proven or is entitled to relief on any element of any of her claims. Olsman MacKenzie also intends to prove each its affirmative defenses as set forth in its Answer and Affirmative Defenses. Olsman MacKenzie opposes Plaintiff's motion to stay the state-court lien cases and her motion to disqualify Deborah Gordon Law.

5.      **Amendment of Pleadings**.

**Plaintiff's position:**  At this time, Plaintiff does not intend to amend her Complaint but reserves the right to do so as the case progresses. At this time, Plaintiff's response to Riley's Counterclaims is not yet due and will be timely filed and may result in Plaintiff amending her Complaint.

**Riley Defendants' position:** The Riley Defendants do not presently intend to amend its counterclaims but reserves the right to do so as the case progresses. The Riley Defendants will oppose any attempt by McKenna to file a *fourth* amended complaint in response to Riley's counterclaims, which she may not do without leave and which is not an appropriate response to a counterclaim (a pleading that must be *answered*).

**Defendant Olsman MacKenzie's brief summary:** At this time, Olsman MacKenzie does not intend to amend its Answer and Affirmative Defenses to the Amended Complaint, but reserves its right to do so.

6.      **Discovery.**

**(a) Summarize the discovery each party intends to pursue, including expert witnesses, the reasonable time needed for completion, and any anticipated disputes.**

**Plaintiff.** At this time, Plaintiff intends to serve a full set of discovery on Defendants (interrogatories, requests for production, requests for admissions).  She

11

requests the full number of written discovery against each separate defendant. She intends to take the depositions of:

- Bob Riley
- Bill Hurley
- Current and former employees and/or contractors of Riley & Hurley
- Jackie Riley
- Sonia Mullins
- Donna MacKenzie
- Brandon MacKenzie
- Deborah Gordon
- Teresa D'Costa
- Jules Olsman
- Emily Peacock
- Current and former employees and/or contractors of Olsman MacKenzie

Regarding the number of depositions, Plaintiff will agree that the Riley Defendants and Olsman MacKenzie may take 7 depositions each, for a total of 14 depositions, if they will agree that Plaintiff may take 14 depositions. Plaintiff does not agree that each Defendant is entitled to a separate 7-hour deposition of Plaintiff, given that the facts, claims and issues involved are substantially related, overlapping and/or interrelated.

The **Riley Defendants** may issue requests for production, interrogatories, and requests for admission to Plaintiff and intends to depose Plaintiff, any expert witnesses that she discloses, and any other individual identified by Plaintiff as possessing discoverable information. The Riley Defendants will also seek discovery related to their counterclaims. The Riley Defendants may seek a Rule 35

examination (which will be an expert) and potentially a damages expert or rebuttal experts. The Riley Defendants will also seek timely, properly-executed HIPAA releases so that they may subpoena medical and mental health providers insofar as such issues are relevant given Plaintiff's demand for emotional distress damages. The Riley Defendants may also issue subpoenas to third parties in accordance with Fed. R. Civ. P. 45.

The Riley Defendants further anticipate numerous discovery disputes. First, the Riley Defendants take the position that they should not be deprived of their ability to take 10 depositions and issue 25 interrogatories to Plaintiff, based on Plaintiff's tactical decision to file suit against two disparate groups of Defendants. The Riley Defendants consequently reject Plaintiff's proposal that she be entitled to take *fourteen* depositions and fifty interrogatories, while the Riley Defendants would only be allowed to take seven depositions rather than the ordinary 10 based on Plaintiff's unilateral tactical decisions.

Similarly, the Riley Defendants oppose Plaintiff's position that the Riley Defendants should only be entitled to take a 3.5 hour deposition of Plaintiff based, again, on her tactical decision to sue two distinct groups of Defendants in a single case. Ultimately, there are two largely distinct sets of facts supporting the claims against each party, and the Riley Defendants should be entitled to a full defense with its ordinary allotment of depositions and interrogatories.

13

The Riley Defendants further expect discovery disputes related to privilege. As one example, Plaintiff has made various allegations in her Complaint regarding communications about Riley that she had with her then-spouse. Michigan's marital communications privilege does not extend to written communications; thus, relevant text messages and emails between McKenna and her then-spouse are subject to discovery. *See People v. Fisher*, 442 Mich. 560 (1993); *accord State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*, 399 F. Supp. 3d 708, 712 (E.D. Mich. 2019).

**Defendant Olsman MacKenzie** anticipates that it may issue requests for the production of documents, interrogatories, and requests for admission to Plaintiff and intends to depose Plaintiff, her current law partner, current and former Olsman MacKenzie employees, any expert witnesses disclosed by Plaintiff, and any other individual identified by Plaintiff in her Amended Complaint or in discovery as possessing discoverable information. Olsman MacKenzie may also seek a Rule 35 examination. Olsman MacKenzie may also issue subpoenas to third parties with discoverable documents and/or information in accordance with Fed. R. Civ. P. 45. It appears that the parties agree that each set of Defendants (Riley Defendants and Olsman MacKenzie) will be entitled to serve 25 interrogatories.

Olsman MacKenzie also anticipates discovery disputes, including as to privilege, the number of depositions, and the length of Plaintiff's deposition.

Plaintiff may have waived attorney/client privilege by setting forth the contents of privileged discussions in her pleadings. Due to the length and volume of Plaintiff's claims and allegations against Olsman MacKenzie, and because her claims against the firm are factually and legally distinct from the claims Plaintiff and the Riley Defendants have brought against each other, Olsman MacKenzie will need 7 hours to depose Plaintiff on her claims against Olsman MacKenzie and intends to request that it be granted the ability to take 10 depositions in this case.

*     *     *

Defendants believe that discovery can be completed within 8 months of the Court's initial conference.

Plaintiff believes that discovery can be completed within 12 months of the Cout's initial conference.

**(b) Explain the arrangements for exchanging initial disclosures required by Fed. R. Civ. 26(a)(1)**

The Defendants propose that Rule 26(a)(1) initial disclosures be submitted by April 3, 2025.

Plaintiff proposes that Rule 26(a)(1) initial disclosures be submitted by June 2, 2025, so long as Plaintiff's Motion to Disqualify Olsman MacKenzie's Counsel is decided before that date.

**(c) Indicate whether any changes should be made in the limitations on discovery imposed by the Federal and Local Rules**

15

Other than the length and number of depositions and interrogatories (addressed above), the parties do not currently anticipate a need to change the limitations on discovery imposed by the Federal Rules of Civil Procedure and Local Civil Rules but reserve the right to request a change if there is good cause to do so.

**(d) address whether there is a need to enter a protective order or a confidentiality order pursuant to Federal Rule of Evidence 502(d).**

Defendants intend to present to the Court a stipulated protective order, which will cover such things as the parties' confidential and proprietary business records and the parties' medical, health, and income/tax information. Plaintiff does not see a need at this time for a protective order.

The parties agree that it would be appropriate for the Court to enter an order applying the protections of Rule 502(d) to the production of privileged or work-product protected documents in this case.

**7. Electronic Discovery.** The parties have discussed the production of electronically stored information ("ESI") and have agreed as follows:

a. All parties possess discoverable ESI.

b. Each party shall design and implement the methods it uses to identify, cull, and review potentially responsive ESI based on its knowledge and understanding of its own data, the facts and issued involved in the case, and the discovery requests it has received. A party may apply search terms to appropriate sources and may also conduct a targeted collection of

sources likely to contain responsive materials. At the request of the other party, a party will promptly disclose the search terms and sources used to cull potentially responsive ESI.

c. The parties will produce files in PDF format with the exception of spreadsheets, PowerPoint presentations, audio, and video recordings, which shall be produced in native format.

d. The parties will collect and produce text messages and social media messages using Decipher TextMessage or substantially similar software.

e. Each page of each file shall be branded with a unique Bates number and confidentiality designation (if any) in a location that does not cover up any of the file's original content.

f. A party may redact sensitive personal information – *i.e.*, protected health information, financial account numbers, dates of birth, home addresses, Social Security numbers, driver's license numbers, and passport numbers – from responsive files prior to production.

g. The parties will meet and confer over a deadline for the exchange of privilege logs.

h. The obligation to provide a log of privileged or work product materials pursuant to Federal Rule of Civil Procedure 26(b)(5) presumptively shall not apply to:

a. Communications between a party and its current counsel of record regarding this litigation;

b. Communications between a party's counsel and any expert or consultant retained for or consulted with regarding this litigation; and

c. Documents created on or after the filing of Plaintiff's Complaint.

The parties do not believe entry of the Model Order Relating to Discovery of Electronically Stored Information is necessary in this case.

**8.     Settlement.** Defendants do not request case evaluation, and believe facilitative mediation may be most helpful in evaluating settlement, once discovery has been largely completed. Plaintiff is willing to participate in ADR anytime.

**9.     Consent**. The parties do not consent to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this action.

**10.     Trial**. This will be a jury trial. Defendants can be ready for trial within 6 months of resolution of dispositive motions. Plaintiff can be ready for trial within 3 months of resolution of dispositive motions. Plaintiff estimates that it will need 4-5 trial days, not counting jury selection, opening and closing arguments to put on her proofs, presuming a single trial against both defendants. The Riley Defendants believe that Plaintiff's claims against each set of Defendants require a separate trial, but estimate that regardless of whether there is one trial or two, they will need 5 days

to put on its proofs. Defendant Olsman MacKenzie likewise believes that separate trials are required, and estimates that in either case it will need 5 days to put in its proofs.

**11. Miscellaneous.** Because Plaintiff's claims against Defendant Olsman MacKenzie are factually and legally distinct from those Plaintiff and the Riley Defendants have brought against one another, Olsman MacKenzie intends to petition the Court to sever the case against Olsman MacKenzie for trial, if any of Plaintiff's claims against Olsman MacKenzie survive summary judgment. The Riley Defendants believes that severance would be warranted for trial. Plaintiff opposes severance.

/s/ *Randi McGinn with permission*
Randi McGinn
McGinn Montoya Love Curry &
Sievers PA
201 Broadway Blvd SE
Albuquerque, NM 87102
randi@mcginnlaw.com


/s/*Kathleen J. Kalahar with permission*
GOODMAN KALAHAR
By:    Kathleen J. Kalahar (P60301))
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6165
kkalahar@goodmankalahar.com

*Counsel for Plaintiff Elyse McKenna*

/s/*Thomas J. Davis*
KIENBAUM, HARDY, VIVIANO,
PELTON & FORREST, P.L.C.
By:    Elizabeth Hardy (P37426)
        Thomas J. Davis (P78626)
280 N. Old Woodward, Ste. 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

*Counsel for Robert F. Riley and
Riley & Hurley, P.C.*


/s/*Elizabeth Marzotto Taylor with consent*
DEBORAH GORDON LAW
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com

*Counsel for Defendant Olsman,
MacKenzie, Peacock, and Wallace P.C.*


Dated March 24, 2025

563524

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/Thomas J. Davis*
Thomas J. Davis (P78626)
Kienbaum Hardy Viviano Pelton
 & Forrest, P.L.C.
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com

563524

21