UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ELYSE MCKENNA, | Case No. 24-cv-12347 |
| Plaintiff, | |
| v. | Hon. Brandy R. McMillion |
| ROBERT F. RILEY et al. | Magistrate Judge Elizabeth A. Stafford |
| Defendants. | |

**Defendants/Counterclaim Plaintiffs Riley and Riley & Hurley P.C.'s Reply in Support of Supplement to Sanctions Motion (ECF No. 230-1)**

**Introduction**

McKenna's response offers a remarkably half-hearted defense of her perjury. She selectively addresses a few points while ignoring—and asking the Court to ignore on sham procedural grounds—the most damning proof. That this is the best she can do is telling. The following facts are materially undisputed in the record:

- Starting in 2019, McKenna sat for over *two dozen* individual sessions with Haynes before ostensibly transitioning to joint marital counseling sessions. ECF No. 196-3; ECF No. 246-1, Haynes Dep. at 32.

- In 2021, she called Haynes "her" therapist in text messages. ECF No. 161-2.

- In 2023, she reported distinct periods of "individual" and "marital" counseling with Haynes on her divorce questionnaire. ECF No. 115-19.

- In 2024, she wrote on her intake form for then-treater Anne Gialanella: "I have been in therapy since 2018. At that time, I was going to individual therapy and couples therapy." Reply Ex. A.

- In 2025, she obtained those Gialanella records months before testifying— repeatedly—that she never treated individually with Haynes. ECF No. 246-2, Gialanella Dep. at 28; ECF No. 115-26, PageID.3721–22.

McKenna knew Haynes treated her individually and for marriage counseling. It is implausible that she remembered that fact for years and years, only to forget on the eve of her deposition. No. McKenna lied. She lied despite her obligations as a licensed attorney and her sworn deposition oath. And she lied to obstruct discovery into medical records the Court had ordered her to provide HIPAA releases for—the very records that prove her testimony false. The Court should impose the most severe sanction: dismissal with prejudice.

**Argument**

I.   **McKenna's attempt to relitigate the Court's order granting leave to file this supplement reflects her ongoing defiance of this Court's authority.**

McKenna spends multiple pages attacking whether the Riley Parties could file a supplement at all, raising identical arguments raised in her opposition to the motion for leave—primarily that the evidence of perjury is not "new." *Compare* Resp. 7-10, 11-13 *with* ECF No. 239. But the Court already granted leave over those objections *and* accepted the proposed brief as filed. *See* ECF No. 244. McKenna's efforts to relitigate that decision—or somehow claim that the brief exceeded the scope of the Court's order *explicitly accepting that brief*—are yet another example of the disrespect for this Court's decisions underlying the pending sanctions motion.

This misconduct also serves an ulterior motive: McKenna wants this Court to ignore critical evidence that demonstrates the perjury and that McKenna cannot explain away. That includes her 2021 texts to Lauren Studley calling Haynes "my" therapist, ECF No. 161-2, and her 2023 divorce questionnaire explicitly identifying Haynes as providing distinct periods of individual and marital counseling, ECF No. 115-19. McKenna offers no answer on the merits for either. She cannot. They were her own contemporaneous words, written years before this lawsuit and before she had a motive to lie about Haynes's status.

McKenna's opposition thus tacitly gives away the game: she was caught lying red-handed, and her only hope is for the Court to ignore the facts. Why would it?

## II.    McKenna lied, willfully and in bad faith.

Having asked the Court to simply ignore critical evidence that she lied, she offers a handful of non sequitur arguments and misrepresents the record to explain away the Haynes and Gialanella records and testimony. These, too, fail.

### A.    The record refutes McKenna's semantics arguments.

McKenna begins by observing that she "openly identified" Haynes as her marriage counselor. Resp. 14-15. Of course she did. The lie at issue was not the existence of Gemma Haynes; it was her status as an individual therapist for McKenna. Her labeling Haynes as merely the "marriage counselor" when she knew that Haynes also provided her individual treatment is the very misconduct here.

Next, McKenna argues that OMP's question whether she saw Haynes "on [her] own" was "facially ambiguous," and her answer "literally true." Resp. 15-16. That question, had it stood alone, would have been clear. And it was clear given the full sequence of testimony. Ms. Gordon first asked the question using the word "individually": "And you've treated with her individually, is that correct?" ECF No. 115-26, PageID.3722. Ms. Gordon then offered the "on your own" formulation to clarify that question—a clarification McKenna's brief simply omits. *See id.* McKenna herself then issued *five* denials (using the word "individually" in four of them) before declaring "I did not treat with her. My ex-husband treated with Ms.

Haynes." *See id.* That is not a hedge. That is not an "I don't recall."[1] That is a direct, literally untrue statement. Haynes treated McKenna. *See supra,* at 1.

Were that not enough, McKenna's then-counsel articulated the same position: "The theory is that she was never a patient of Gemma Haynes. The patient was Brandon H[eid]." ECF No. 115-26, PageID.3721. And McKenna's categorical denial that Haynes treated her both predated and postdated the deposition, with McKenna relying on this lie as a basis to resist signing HIPAA releases. ECF No. 161, PageID.5731-5734. McKenna knew what she was being asked, tried to dance around it, and then fully committed to the lie. Hers was a bad faith "intent to thwart judicial proceedings." *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005).

### B.   Haynes's own testimony refutes McKenna's attempt to recharacterize the Eastwood Clinic documents.

Remarkably, McKenna's current counsel tries to articulate the same lie in her perjury response brief, attempting to convince the Court that all of McKenna's sessions with Haynes were "joint." Resp. 16-17. Recognizing that the therapy notes and billing records label her sessions as "individual" treatment, McKenna speculates

---

[1]Moreover, even if McKenna had stopped at "I don't recall," her own authority confirms that she still may be found responsible for perjury. In *United States v. Swainson*, 548 F.2d 657, 662 (6th Cir. 1977), the Court affirmed a perjury conviction based on an "I have no recollection" answer, because the record supplied "proof of facts from which the jury may infer that the defendant must have known or remembered that which he denied knowing or remembering while under oath." The Riley Parties supplied such proof many times over, including evidence of the text messages and divorce questionnaire that McKenna's brief fails to even address.

that Haynes "likely" checked the "individual" coding on the Eastwood records for billing purposes, as "only one patient can be billed for a session." Resp. 17. But Haynes testified otherwise, confirming the "individual" designation on her records reflected "the fact that this was an individual treatment of" McKenna.[2] ECF No. 246-1, at 32. Further, Haynes identified McKenna as the "client" on the session records—including the sessions her husband attended—and billed McKenna each time. Reply Ex. B, Billing Record and Example Therapy Notes. And McKenna alone signed the Eastwood intake form as the patient. Reply Ex. C. The "individual" designation continued for all 28 sessions for which Eastwood provided records. *See* Resp. 17.

Ultimately, the 2026 "billing" explanation is an after-the-fact excuse, and a transparent one at that. McKenna's prelitigation statements from 2021 to 2024 all confirmed she knew Haynes was *her* therapist, giving her *individual* therapy. McKenna's claims are factually false and inconsistent with her own prior writings.

C.   ***Haynes's* allegedly imperfect memory does not rehabilitate *McKenna's* knowledge that she saw Haynes for individual therapy.**

McKenna also points to Haynes's informal, pre-deposition statement to Riley's paralegal that Heid—not McKenna—was her patient, and claims this

---

[2]McKenna claims that the Eastwood records were "improperly" produced "in violation of the marital communications privilege." PageID.8069-8070. This reflects either McKenna's refusal to acknowledge this Court's orders, or counsel's failure to review them. The Court (1) already held that marital communications privilege does not apply to writings, ECF No. 192-5, and (2) authorized the Eastwood subpoena, despite McKenna's resistance to this Court's orders on the same, *see* ECF No. 161.

somehow exonerates her. PageID.8069. It does no such thing. At issue is not what *Haynes* initially misremembered about one of her hundreds of patients from years ago. At issue is what McKenna knew. And, as discussed, McKenna knew that Haynes was both her individual therapist and her marriage counselor. *Supra*, at 1.

McKenna then misquotes Haynes's deposition testimony about "holistic" treatment as if Haynes were confirming her pre-deposition statement. To the contrary: Haynes admitted under oath that she had misremembered, and that she had given McKenna individual therapy. Reply Ex. D, Haynes Dep. 30-31, 98-99. The colloquy McKenna quotes was Haynes's explanation of why she kept giving McKenna individual therapy for her workplace issues even after the purportedly "joint" marital-counseling sessions started in 2020. *Id.* at 105. Again, Haynes's testimony confirmed what McKenna's own contemporaneous statements reflected: Haynes individually treated her *even after* the joint sessions with Heid started. Far from exonerating her, Haynes's testimony confirms McKenna's perjury.

### D.    McKenna misrepresents the Gialanella records.

Finally, McKenna misquotes her intake form with Gialanella to argue that she only told Gialanella that she made *plans* in 2018 to have individual therapy, not that she actually did. Resp. 18. The actual written answer states, in full: "I have been in therapy since 2018. At that time, I was going to individual therapy and couples therapy." Reply Ex. A. The first sentence is unambiguous: she had been in therapy.

The second sentence describes the modalities of that treatment as "individual and couples." McKenna told Gialanella—just as she told her friend Studley, and just as she told her divorce lawyer—that she had individual therapy.

### Conclusion

McKenna cannot rehabilitate her false testimony. Supreme Court and circuit court authority—set forth in the opening brief and unmentioned by McKenna—permits the Court to inherently sanction witness perjury. *See* ECF No. 230-1, PageID.7279. And McKenna's perjury, uttered as part of her scheme to dodge producing court-ordered medical records, further supports the pending Rule 37 sanctions motion. The Court should dismiss McKenna's claims. If it does not, it should issue the alternative sanctions requested in the opening brief.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By:*/s/Thomas J. Davis*
    Thomas J. Kienbaum (P15945)
    Elizabeth Hardy (P37426)
    Thomas J. Davis (P78626)
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
tkienbaum@khvpf.com
ehardy@khvpf.com
tdavis@khvpf.com
*Attorneys for the Riley Parties*

Dated: May 18, 2026

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18, 2026, I electronically filed this document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ Thomas J. Davis
Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
tdavis@khvpf.com

609478

-8-