UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ELYSE MCKENNA,

           Plaintiff,

v.

ROBERT F. RILEY, et al.,

           Defendants.

_____/

Case No. 24-cv-12347
Hon. Brandy R. McMillion
Mag. Judge Elizabeth A. Stafford

### <u>KIMBERLY RUSSELL'S RESPONSE IN OPPOSITION TO THE RILEY PARTIES' MOTION FOR SANCTIONS AND SUPPLEMENTAL MOTION FOR SANCTIONS</u>

62595624.1

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS.................................................................................................i

INDEX OF AUTHORITIES ....................................................................................... ii

I.      INTRODUCTION......................................................................................... 1

II.     FACTUAL BACKGROUND......................................................................... 2

III.    ARGUMENT ................................................................................................. 6

    A.    The Legal Standard for § 1927 Sanctions is Demanding and is Not Met Here.................................................. 6

    B.    Ms. Russell Reasonably Relied on Her Client's Representations and on Haynes's Own Statements........... 9

    C.    Ms. Russell Advanced Good-Faith Privilege Arguments Grounded in Michigan Law. ...............................13

    D.    The Communication with Haynes Was Not Improper.....................................................................................14

    E.    The Riley Parties Improperly Single Out Ms. Russell While Ignoring Co-Counsel...........................................16

IV.     CONCLUSION .............................................................................................17

i

# INDEX OF AUTHORITIES

**Page(s)**

## Cases

*B&P Littleford, LLC v. Prescott Mach., LLC,*
 633 F. Supp. 3d 917 (E.D. Mich. 2022) ........................................................ 6, 12

*Dierickx v. Cottage Hosp. Corp.,*
 152 Mich. App. 162 (1986) ................................................................................ 14

*NPF Franchising, LLC v. SY Dawgs, LLC,*
 37 F.4th 369 (6th Cir. 2022) ............................................................................. 16

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,*
 465 F.3d 642 (6th Cir. 2006) ................................................................. 2, 6, 7, 13

*Riddle v. Egensperger,*
 266 F.3d 542 (6th Cir. 2001) ............................................................................... 7

*Union Planters Bank v. L & J Dev. Co.,*
 115 F.3d 378 (6th Cir. 1997) ........................................................................ 9, 11

*United States v. Wallace,*
 964 F.2d 1214 (D.C. Cir. 1992) ........................................................................... 7

## Statutes

28 U.S.C. § 1927 ...................................................... 1, 2, 5, 6, 7, 12, 13, 16, 17

MCL § 333.18117 .................................................................................................... 13

MCL § 551.339 ......................................................................................................... 13

Kimberly Russell, through her counsel, Plunkett Cooney, respectfully submits this Response in Opposition to the Riley Parties' Motion for Sanctions [ECF No. 113] and Supplemental Brief in Support of Sanctions [ECF No. 230-1], insofar as those filings seek personal sanctions against Ms. Russell under 28 U.S.C. § 1927.  For the reasons set forth below, the Court should deny the Riley Parties' request for § 1927 sanctions against Ms. Russell.

## I.      INTRODUCTION

The Riley Parties ask this Court to impose personal sanctions against Ms. Russell under 28 U.S.C. § 1927, alleging that she "unreasonably and vexatiously" multiplied the proceedings through her role in advancing what they characterize as a false narrative regarding her client, Plaintiff Elyse McKenna's, treatment history with therapist Gemma Haynes.  The Riley Parties further allege that Ms. Russell obstructed discovery of Haynes's records and improperly contacted Haynes regarding a subpoena.

These allegations are demonstrably false.  At no time did Ms. Russell "attempt to mislead this Court as to Haynes's status" or "construct a false narrative," as alleged by the Riley Parties.  On the contrary, Ms. Russell advocated for her client based on the information known to her at the time and reasonably relied upon by her under the circumstances.  Such conduct was entirely consistent with her ethical obligations as member of the bar of

1

this Court.  At most, the record shows that Ms. Russell relied on her client's representations and on the therapist's own statements regarding the nature of the treatment relationship, advanced reasonable, if ultimately unsuccessful, privilege arguments grounded in Michigan law, and engaged in vigorous advocacy on her client's behalf during contentious discovery disputes.  The Sixth Circuit has repeatedly cautioned that § 1927 "sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).  The Riley Parties cannot satisfy that standard here.

## II.    FACTUAL BACKGROUND

Ms. Russell entered an appearance as counsel for McKenna on or about October 5, 2025, in the midst of already-contentious discovery disputes.  The disputes surrounding Haynes's treatment of McKenna predated Ms. Russell's involvement, but the core of the Riley Parties' § 1927 theory concerns the period of Ms. Russell's representation.  The relevant timeline is as follows:

On October 24, 2025, the Court ordered McKenna to identify all mental health and medical treaters and sign HPAA releases for their records.  [ECF No. 97].  Ms. Russell identified Haynes as McKenna's marital counselor.  [ECF No. 115-17, PageID.3609]

2

On November 3, 2025, Ms. Russell provided to counsel a signed blank HIPAA authorization for Haynes, explaining that "the practice or institution where she provided services does not appear to exist anymore." [ECF No. 115-17, PageID.3609].

On or about November 5, 2025, Defense counsel's own paralegal, Cynthia Petty, spoke with Haynes and Haynes told Petty that she had "no records for Elyse because she was not the patient — Brandon was her patient." [ECF No. 113-28, PageID.3116].

On November 7, 2025, Ms. Russell conveyed to counsel Haynes's own representation that she was not McKenna's individual treater and that McKenna had only attended some of her ex-husband Brandon Heid's counseling sessions. [ECF No. 115-18, PageID.3615-PageID.3616]. Based on this, McKenna provided a HIPAA release with additional language to protect Heid's privilege in marital counseling records. [ECF No. 115-18, PageID.3628]

At her November 17, 2025 deposition, McKenna testified that she did not treat with Haynes individually and that Haynes was her ex-husband's therapist. [ECF No. 115-26, PageID.3722]. Ms. Russell explained on the record that, "The theory is that she was never a patient of Gemma Haynes. The patient was Brandon H[eid]." [ECF No. 115-26, PageID.3722].

3

On November 25, 2025, the Court ordered McKenna to sign a HIPAA release for Haynes without the additional language, and McKenna complied that same day.

On December 6, 2025, Haynes contacted Ms. Russell via text about "papers" she had received (a subpoena) and, on December 7, 2025, Ms. Russell communicated with Haynes via text message about moving to quash the subpoena. [ECF No. 113-28, PageID.3114].

On December 18, 2025, Haynes, through her own counsel, filed an objection to the subpoena, stating that McKenna has never been a client of Haynes. [ECF No. 111, PageID.2711].

On December 22, 2025, the Riley Parties filed their original sanctions motion. [ECF No. 113].

On March 13, 2026, Haynes was deposed. Haynes's testimony revealed that McKenna did, in fact, receive individual therapy from Haynes, contradicting the position McKenna had taken at her own deposition. Critically, however, Haynes testified that she herself was unaware of this fact until she reviewed the clinic records just days before her deposition, stating: "So up until, I think it was a few days ago when I saw these Exhibits, I stood firm that I had never treated Ms. McKenna by herself. I was positive, but I was wrong." (Ex. A, Haynes Dep p. 85:22-25). Haynes described being "blown away" and "had no recollection" of individual treatment sessions.

(Ex. A, Haynes Dep p. 86:3-4). When asked about her understanding of the treatment dynamic, Haynes explained: "He's primary. She's coming with; right? So I'm treating him. And she may say – okay, let's say I'm screening him for work stressors. And she may say, I, too, blah, blah, blah. And I will make it holistic and say, Well, we know that this skill is very useful for you when you are dealing with difficult personalities or having work stressors." (Ex. A, Haynes Dep p. 105:13–25). This testimony confirms that Haynes herself understood the treatment as being marital in nature, with McKenna as the accompanying spouse, which is precisely the account she conveyed to Ms. Russell.

On March 18, 2026, Ms. Russell, along with co-counsel Sammy Brown and Keith Altman, filed a Joint Motion to Withdraw from representation, citing a breakdown in the attorney-client relationship. [ECF No. 223]. The Court granted the withdrawal on March 30, 2026. [ECF No. 228]. The Court's order expressly retained jurisdiction over Ms. Russell for the purpose of deciding the pending motions for sanctions. [ECF No. 228, PageID.7259].

The Riley Parties then filed a Motion for Leave to File a Supplemental Brief on Sanctions [ECF No. 230] on April 2, 2026, attaching the Supplemental Brief [ECF No. 230-1] seeking, among other things, personal sanctions against Ms. Russell under 28 U.S.C. § 1927. The Court granted leave to file the supplemental brief on April 21, 2026, and granted Ms.

5

Russell's request for additional time to retain independent counsel and respond. [ECF No. 244, PageID.7385].

## III.   ARGUMENT

### A.   <u>The Legal Standard for § 1927 Sanctions is Demanding and is Not Met Here.</u>

Section 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.  "Sanctions are warranted when an attorney objectively 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Red Carpet Studios Div. of Source Advantage, Ltd.,* 465 F.3d at 646 (citing *Ruben v. Warren City Sch.*, 825 F.2d 977, 984 (6th Cir. 1987)).

Critically, "[section] 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence." *B&P Littleford, LLC v. Prescott Mach., LLC*, 633 F. Supp. 3d 917, 920 (E.D. Mich. 2022) (quoting *Red Carpet Studios Div. of Source Advantage, Ltd.,* 465 F.3d at 646).  For example, § 1927 attorney's fees are warranted if an attorney "intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply

6

proceedings." *B&P Littleford, LLC,* 633 F. Supp. 3d at 920 (citing *United States v. Wallace*, 964 F.2d 1214, 1220 (D.C. Cir. 1992)).

The Sixth Circuit has further cautioned that "[t]he mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied." *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001) (citation omitted). "Simple inadvertence or negligence that frustrates the trial judge will not support a sanction under § 1927." *Riddle*, 266 F.3d at 553 (citing *In re Ruben*, 825 F.2d at 984).

The purpose of § 1927 "is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios*, 465 F.3d at 646. It is not intended to punish an attorney who, in the heat of contentious discovery disputes, relies in good faith on her client's representations and those of a third-party witness.

Critically, § 1927 requires that the attorney's conduct have "multiplied" the proceedings — that is, caused additional, unnecessary litigation. An attorney is "liable under § 1927 solely for excessive costs resulting from the violative conduct." *Riddle*, 266 F.3d at 553. The Riley Parties' theory is that Ms. Russell's adoption of the "never a patient" position forced them to engage in protracted HIPAA-release disputes, subpoena battles, and pre-motion conferences. But the record shows that the Haynes

7

discovery disputes were multi-faceted and involved legitimate issues —

including privilege, the proper scope of HIPAA authorizations, and the

logistics of deposing and subpoenaing a non-party witness — that would

have required litigation regardless of the accuracy of the "individual

treatment" issue.

Moreover, the Riley Parties themselves contributed significantly to the

timeline they now complain of.  The record shows that throughout these

disputes, the Riley Parties chose escalation over resolution.  They repeatedly

raised HIPAA-authorization disputes directly to the Court rather than

meeting and conferring as required by the scheduling order. [ECF No. 115-

18, PageID.3614–3627, Pre-Motion Conference Correspondence].  Each time

the Court ordered a new or modified authorization, Plaintiff executed it the

same day.  The Riley Parties possessed a blank HIPAA authorization for

Haynes as early as November 3, 2025, but did not use it to obtain Haynes's

records before filing their December 22, 2025 motion. [ECF No. 115-17,

PageID.3609].  Furthermore, Haynes was noticed for deposition in early

January 2026, but the deposition did not go forward because the Riley

Parties did not properly serve Haynes's counsel.  The timeline the Riley

Parties now characterize as obstruction is, on the record, a timeline of their

own litigation choices. [ECF No. 238, PageID.7345].

Even if some aspect of Ms. Russell's conduct fell below the ideal standard of practice — which it does not — the Riley Parties have not demonstrated that their costs were caused by Ms. Russell's actions rather than by the inherent complexity of the discovery disputes, the therapist's own inconsistent accounts, or the Riley Parties' own litigation choices.

**B.** **Ms. Russell Reasonably Relied on Her Client's Representations and on Haynes's Own Statements.**

The Riley Parties' central contention is that Ms. Russell should have independently verified McKenna's claim that Haynes never treated her individually before adopting it as a litigation position.  While the Riley Parties invoke *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 385 (6th Cir. 1997) for the proposition that an attorney must verify "a major factual premise" through a "simple inquiry," the analogy is inapt.  In *Union Planters*, counsel pursued claims predicated on a "superseding guaranty" document that his client could not produce, and which a simple demand for the document would have revealed was "if not entirely illusory, at the very least, questionable." *Id.*  That is not the situation here.

Ms. Russell did not blindly adopt her client's word alone.  She consulted the therapist herself.  Haynes confirmed to Ms. Russell that McKenna was not her individual patient and that the patient was Heid.  Critically, at her March 13, 2026 deposition, Haynes herself confirmed that she genuinely believed this to be the case.  When asked whether she had told

9

Ms. Russell that she never treated McKenna individually, Haynes testified, "I don't know if I said it to her, but I know I have said it. So it's possible that I have said it to her, because I believed that." (Ex. A, Haynes Dep. p. 100:12–15).  Haynes further testified that until just days before her deposition, she "stood firm that I had never treated Ms. McKenna by herself.  I was positive, but I was wrong."  (Ex. A, Haynes Dep p. 85:22–25).  She described being "blown away" by the clinic records because she "had no recollection" of individual treatment.  (Ex. A, Haynes Dep p. 86:3–4).  Haynes explained the basis of her belief: "[A]t this time, I was certain that I never saw Elyse by herself." (Ex. A, Haynes Dep p. 79:25- 80:1–2). She elaborated that Heid "still was" her patient — or "was more current" — which was why she assumed McKenna was not the patient.  (Ex. A, Haynes Dep p. 80:22–81:1).

The Riley Parties' own evidence confirms that Haynes, speaking with Defense counsel's paralegal on November 5, 2025, conveyed the same account: that she had "no records for Elyse because she was not the patient — Brandon was her patient. In the course of his treatment, some marital issues came up, and Elyse came in for just a few sessions." (Ex. A, Haynes Dep p. 79:2-23 and p.81:4-10) and [ECF No. 113-28, PageID.3116].

Haynes's own counsel later filed an objection to the subpoena standing by this position, stating that "[Ms. McKenna] has never been a client of Gemma Haynes[.]" [ECF No. 111, PageID.2711].

10

When three independent sources -- the client, the therapist herself, and the therapist's own retained counsel -- all provide consistent accounts regarding the nature of a treatment relationship, it is not objectively unreasonable for an attorney to adopt that position. Unlike the attorney in *Union Planters* who failed to make a "simple inquiry" into the existence of a document, Ms. Russell did inquire, and the person best positioned to know, the therapist, confirmed that McKenna was not an individual patient. The problem was not a failure to investigate; it was that every information source Ms. Russell consulted provided accounts that subsequently proved to be inaccurate. Haynes's deposition testimony conclusively establishes that her misstatement to Ms. Russell was not the product of coaching or collusion, but of Haynes's own genuine, if erroneous, belief.

Further to the suggestion of witness coaching, when asked whether Ms. Russell ever told her "that it was important to her client's case that these records not be disclosed" or that "she was never a patient of yours," Haynes unequivocally denied it: "No. I don't remember having that — that line of conversation with her." (Ex. A, Haynes Dep p. 86:22-25-88:2-3). She further testified:

> Q. At no time do you recall anybody talking to you either Ms. McKenna or her lawyer, Ms. Russell, about the fact that as far as they were concerned, they wanted you to say that she was never a client of yours?

11

   A.  No. No, sir. Because if she was, I would say she was. That's my livelihood. I'm sorry.

(Ex. A, Haynes Dep p. 88:4–10).

And when examined directly on the question of responding to the subpoena, Haynes testified that Ms. Russell told her to respond to it and she turned the subpoena over to her malpractice insurer. (Ex. A, Haynes Dep p. 84:15-18, 85:4-6). When Ms. Russell asked at the deposition: "Have I ever advised you to not respond to a subpoena?" Haynes answered: "No." Ms. Russell asked: "Have I ever told you that we are asking you to not produce any of Elyse's records?" Haynes answered: "No. I don't remember you saying that." (Ex. A, Haynes Dep p. 127:13–18). This testimony eliminates any basis to suggest inference, obstruction or improper coordination between Ms. Russell and Haynes.

The Sixth Circuit has recognized that mere negligence does not rise to sanctionable conduct. In *B&P Littleford, LLC,* the court denied § 1927 sanctions where an attorney failed to disclose a document because he reasonably did not believe it was relevant, concluding that his conduct was at most negligent and "does not warrant sanctions under 28 U.S.C. § 1927." 633 F. Supp. 3d at 920. Similarly, the Sixth Circuit has held that "[a] sanction is generally improper where a successful motion could have avoided any additional legal expenses by defendants." *In re Ruben*, 825 F.2d at 988.

Even assuming that Ms. Russell should have demanded copies of Haynes's underlying treatment records from Haynes or insisted on her client obtaining those records before adopting the position, any failure to do so was at most negligent and is not the kind of conduct that "intentionally abuses the judicial process or knowingly disregards the risk that [her] actions will needlessly multiply proceedings." *Red Carpet Studios*, 465 F.3d at 646. This is particularly true where, as here, the therapist herself had no recollection of individual treatment and affirmatively denied it. (Ex. A, Haynes Dep p. 85:22–25; 100:11–15). The Sixth Circuit does not treat every error in judgment as sanctionable. "Simple inadvertence or negligence that frustrates the trial judge will not support a sanction under § 1927." *In re Ruben*, 825 F.2d at 984.

C. **Ms. Russell Advanced Good-Faith Privilege Arguments Grounded in Michigan Law.**

A substantial portion of the disputes surrounding the Haynes records centered on legitimate privilege concerns. Michigan law provides that marital counseling records are considered privileged and confidential, and their disclosure is strictly limited under MCL § 333.18117 and MCL § 551.339. When Ms. Russell added the additional language to the HIPAA release to make it clear that McKenna was not waiving any rights to privilege held by her former spouse, Heid, she was not engaging in frivolous obstruction. She was asserting a privilege on behalf of a non-party, Heid,

13

whose marital counseling records were intertwined with any treatment Haynes may have provided to McKenna.

The right to assert the patient privilege is personal to the patient. *Dierickx v. Cottage Hosp. Corp.*, 152 Mich. App. 162, 167 (1986). Ms. McKenna could not unilaterally waive Heid's privilege in joint counseling records, and Ms. Russell had a good-faith basis for resisting production of such records without Heid's consent or court supervision through in camera review.

While the Court ultimately ordered Plaintiff to sign unaltered HIPAA releases, the fact that Ms. Russell's privilege arguments were overruled does not render them sanctionable. The privilege arguments Ms. Russell advanced were grounded in Michigan law and were not frivolous on their face.

### D.     The Communication with Haynes Was Not Improper.

The Riley Parties make much of Ms. Russell's December 7, 2025 text message to Haynes, in which she discussed the possibility of moving to quash the subpoena. But the full record of the text messages show that Haynes initiated the communication by contacting Ms. Russell. On December 6, 2025, Haynes texted Ms. Russell: "Hi Kimberly, I received some papers yesterday morning that I would like to review with you, if possible[.]" (ECF No. 113-28, PageID.3114). On December 7, 2025, Ms. Russell responded, "Hey Gemma – we have a hearing with the Court on Monday. I am moving to

14

quash all of defendant's subpoenas, including yours. Let's touch base on Tuesday. What time works?" (ECF No. 113-28, PageID.3114). Responding to a witness's inquiry about court process, and advising that a motion to quash might be filed, is not improper.

Haynes confirmed this at her deposition, testifying: "What it is, is that I received a subpoena or a call or something from you all. I'm not sure which one it was. And so I contacted Ms. Russell and she — this was her response." (Ex. A, Haynes Dep p. 23:15–19). Critically, Haynes also confirmed that during their phone conversation, Ms. Russell expressly disclaimed providing legal advice. When Ms. Russell asked at the deposition, "do you remember me saying, This is not attorney advice?" Haynes answered: "I do remember you saying something like that. And you also told me — yes, I do — let me answer your question. You said exactly what you said. I don't remember, but I know that you did say that you were not advising me." (Ex. A, Haynes Dep p. 125:23-24-126:2-7). When asked what else Ms. Russell told her, Haynes answered: "That I needed to make sure that I replied to the subpoena." (Ex. A, Haynes Dep p. 126:12–13).

Moreover, at the time of the early December 2025 communication with Haynes, Ms. Russell's position, consistent with what Haynes herself had reported, was that McKenna was not Haynes's individual patient. Haynes's own counsel had adopted the same position. [ECF No. 111, PageID.2711].

15

Finally, Haynes's deposition testimony confirms she was not influenced by the communication, as she independently contacted her malpractice insurance carrier, who retained counsel for her. (Ex. A at 85:1-6). Haynes's counsel thereafter independently filed the same objection that McKenna was not Haynes's patient based on Haynes's own genuine belief, not any instruction from Ms. Russell.

**E.** **The Riley Parties Improperly Single Out Ms. Russell While Ignoring Co-Counsel.**

The Riley Parties seek § 1927 sanctions against Ms. Russell alone, despite the fact that she was one of three attorneys representing McKenna during the relevant period. Co-counsel Keith Altman and Sammy Brown were equally involved in the representation. The Sixth Circuit has held that § 1927 sanctions "may be imposed only on individual attorneys, and not law firms." *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 383 (6th Cir. 2022). The corollary of this principle is that § 1927 requires identification of the specific attorney whose conduct was sanctionable, not selective targeting of one attorney among several who jointly participated in the same representation. As Ms. Russell previously argued in her Opposition to the Motion for Leave to File a Supplemental Brief, the circumstances surrounding this selective targeting raise serious concerns. [ECF No. 238, PageID.7343].

16

The Riley Parties assert that Ms. Russell was "lead counsel" and was the attorney who made representations on the record.  But co-counsel were copied on all correspondence, participated in conferences, and co-signed filings.   Mr. Altman was present at McKenna's deposition and lodged objections alongside Ms. Russell. [ECF No. 115-26, PageID.3722].   The selective nature of the Riley Parties' § 1927 request, targeting only Ms. Russell and not co-counsel who participated in the same litigation decisions, raises fairness concerns that counsel against the imposition of sanctions.  If the "theory" about Haynes was jointly adopted and advanced by all of McKenna's counsel, it is inequitable to hold only one attorney personally liable.

## IV.   CONCLUSION

For the foregoing reasons, Kimberly Russell respectfully requests that this Court deny the Riley Parties' request for sanctions against her under 28 U.S.C. § 1927.

Respectfully submitted,

PLUNKETT COONEY

By:   */s/ Jeffrey S. Hengeveld*
Jeffrey S. Hengeveld (P66029)
Attorney for Interested Party,
  Kimberly Russell
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI  48304
(248) 594-8202

Dated:  May 22, 2026          jhengeveld@plunkettcooney.com

17

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 22, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Debra L. Vogt*
DEBRA L. VOGT

18

# EXHIBIT A

CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


ELYSE MCKENNA,

Plaintiff,      Case No. 2:24-cv-12347

vs.

ROBERT F. RILEY, et al,

Defendants.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _/


DEPONENT:      GEMMA HAYNES

DATE:          Friday, March 13, 2026

TIME:          10:04 a.m.

LOCATION:      Kienbaum Hardy Viviano

               Pelton & Forrest, PLC

               280 North Old Woodward, Suite 400

               Birmingham, Michigan

REPORTER:      Shari J. Pavlovich, CSR-5926

VIDEOGRAPHER:  Lauren Luzod

Job No.:       52483

CONFIDENTIAL



Page 22

Page 23

Page 24

THE WITNESS: What it is, is that I received a subpoena or a call or something from you all. I'm not sure which one it was.

And so I contacted Ms. Russell and she -- this was her response.

Carroll Reporting & Video
A Veritext Company

586-468-2411

www.veritext.com                                                    www.veritext.com

CONFIDENTIAL



Page 78

Page 79

Q  Okay.  And we've got there a message from Cynthia Petty.  And it says -- and it includes you.  It was also sent to you; correct?

"I just spoke with her", writes Ms. Petty, "to verify the information I found.  She gave her current address and asked that I send it Certified Mail.  Then she asked who the patient was.  Says she has no records for Elyse because she was not the patient -- Brandon was her patient."

And do you recall you saying that to her at the time?

A  Yes.

Q  Okay.  And what records are you referencing when you say that you have:

"... no records for Elyse because she was not the patient -- Brandon was her patient."

Did you have Brandon records at this point in front of you?

A  I had no records in front of me.

A  Because when you're asked that -- when I'm asked

Page 80

that question, I just say -- so at this time, I was certain that I never saw Elyse by herself.

A  Because he still was.

Q  He still was at this point?  This is pretty late in the game here.  This is November of --

A  Or let me rephrase that.  He was -- it was more

Page 81

current.

Q  You go on "in the course" -- this goes on:

"In the course of his treatment, some marital issues came up, and Elyse came in for just a few sessions."

Is this -- is she reflecting correctly what you discussed with her?

A  It was some back and forth but pretty much, yes.

21 (Pages 78 - 81)

CONFIDENTIAL



Q    Okay.  And she's telling you not to worry about it?

A    Yeah, like, don't work up myself.  She was there to help.  And that -- just respond to it.  She told me to respond to it.

A    I didn't -- at that point I don't remember going through the subpoena thoroughly.  I sought Counsel. I spoke with my -- I spoke to my insurance.
Yes.  I spoke with my insurance company who initiated -- told me to send all the records to them.

A    So up until, I think it was a few days ago when I saw these Exhibits, I stood firm that I had never treated Ms. McKenna by herself.  I was positive, but I was wrong.

22 (Pages 82 - 85)

CONFIDENTIAL



Page 86

A   I did.  Because when I said I was blown away by this, I had no recollection.

Q   Do you recall Ms. Russell telling you that it was important to her and her client that these records not be disclosed?

A   I don't recall that, no.

Page 88

A   No.  I don't remember having that -- that line of conversation with her.

Q   At no time do you recall anybody talking to you, either Ms. McKenna or her lawyer, Ms. Russell, about the fact that as far as they were concerned, they wanted you to say that she was never a client of yours?

A   No.  No, sir.  Because if she was, I would say she was.  That's my livelihood.  I'm sorry.

Page 87

23 (Pages 86 - 89)

CONFIDENTIAL



Page 98

Page 100

Did you, in fact, say that as an affirmative fact to her?

A    I don't know if I said it to her, but I know I have said it.  So it's possible that I have said it to her, because I believed that.

26 (Pages 98 - 101)

Carroll Reporting & Video
A Veritext Company
www.veritext.com
586-468-2411
www.veritext.com

CONFIDENTIAL



Page 102

Page 105

Q   And that wouldn't, then, however, be part of treating with the third party we've not identified yet; right?

A   It would be part of.  So how do I describe this? He's primary.  She's coming with; right?

So I'm treating him.  And she may say -- okay, let's say I'm screening him for work stressors.

And she may say, I, too, blah, blah, blah.  And I will make it holistic and say, Well, we know that this skill is very useful for when you are dealing with difficult personalities or having work stressors.

27 (Pages 102 - 105)

CONFIDENTIAL



Page 122

Page 125

And I -- do you remember me saying,
This is not attorney advice?

32 (Pages 122 - 125)

CONFIDENTIAL



Page 126

THE WITNESS:  I do remember you saying something like that.  And you also told me -- yes, I do -- let me answer your question.

You said exactly what you said.  I don't remember, but I know that you did say that you were not advising me.

A    That I needed to make sure that I replied to the subpoena.

Page 127

Q    Have I ever advised you to not respond to a subpoena?

A    No.

Q    Have I ever told you that we are asking you to not produce any of Elyse's records?

A    No.  I don't remember you saying that.

33 (Pages 126 - 129)