**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ELYSE MCKENNA,

        Plaintiff,

v.

ROBERT F. RILEY, *et al.*,

        Defendants.

_____ /

Case No. 2:24-cv-12347

Hon. Brandy R. McMillion
United States District Judge

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS/COUNTERCLAIM PLAINTIFFS RILEY AND RILEY & HURLEY P.C.'S MOTION TO COMPEL MCKENNA TO PRODUCE DOCUMENTS IN RESPONSE TO RILEY'S 2ND RFPS AND FOR COSTS AND FEES UNDER RULE 37(A)(5)(A) (ECF NO. 248)

This matter is before the Court on Defendants/Counterclaim Plaintiffs Riley and Riley & Hurley P.C.'s ("the Riley Defendants") Motion to Compel McKenna to Produce Documents in Response to Riley's 2nd RFPs and For Costs and Fees Under Rule 37(a)(5)(A). *See generally* ECF No. 248. Having reviewed the Motion, related briefing, and the record in this case, the Court finds oral argument unnecessary. *See* E.D. Mich. L.R. 7.1(f)(2); *see also* ECF Nos. 248, 266, 283. For the reasons that follow, the Motion to Compel (ECF No. 248) is **GRANTED IN PART** and **DENIED IN PART**.

1

* * *

In the pending Motion before the Court, the Riley Defendants seek an order compelling Plaintiff's allegedly incomplete discovery in connection with their 2nd RFPs.  *See generally* ECF No. 248.  Specifically, the Riley Defendants maintain, McKenna should be required to produce (1) a previously-generated forensic image, along with her device for forensic imaging; (2) requested communications with her former counsel Kathleen Kalahar ("Kalahar") and Randi McGinn ("McGinn"); (3) allegedly unprivileged materials (including media-related communications, and communications about rescinded HIPAA authorizations, and (4) confirmation of Plaintiff's withdrawal of certain third-parties' subpoenas.  ECF No. 248, PageID.7539-7548.  The Court addresses each in turn.[1]

### *Forensic imaging*

On April 10, 2026, during a telephonic status conference, the Court instructed McKenna to preserve her mobile device and any previous forensic download of the device.  *See* Minute Entry, dated 4/10/2026.  The Riley Defendants now specifically seek both, production of any prior forensic download, and McKenna's production of her device for an updated forensic image "for completeness."  ECF No. 248, PageID.7539-7541.  Before ordering such extensive "discovery about discovery"

---

[1] The Court notes the Riley Defendants' position that McKenna's systemically deficient responses to the Riley Defendants' 2nd RFPs constitute waiver all her objections.  But in the interest of resolving the Motion on its merits, the Court proceeds with a full analysis.

the Court will allow Plaintiff to comply with the most recent Court Order which requires production of all outstanding discovery, including ESI, and should address Defendants concerns about the completeness of her cellular production.  *See* ECF No. 279.

The Court notes that at the most recent Status Conference, counsel for Plaintiff represented that Plaintiff had engaged an ESI vendor and was conducting a search of her cellular device for all responsive documents.  There was also a discussion about the search terms to be employed in order to produce documents.  The Court will note that Defendant suggested certain terms in a prior filing.[2]  However, as stated at the Status Conference, Plaintiff is reminded of her discovery obligations and if those search terms are insufficient to locate all responsive documents, she shall employ whatever terms are necessary to fully comply with the discovery requests.

The Court finds necessary to also alert Plaintiff that failure to satisfy discovery obligations during the course of litigation, could result in future discovery of discovery.  *See John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008).  ("To be sure, forensic imaging is not uncommon in the course of civil discovery. […] [D]istrict

---

[2] *See* ECF No. 248, PageID.7541-7542 ("All emails and text chains containing 'Bob' OR 'Robert' OR Riley OR Hurley OR 'RH,' OR 'boss,' (include all texts between McKenna and the recipients on the same day as the texts causing the 'hits,' for context); and emails and text chains containing the following keywords pertaining to the claims: EEOC, 'Title VII,' ELCRA, 'Elliot-Larsen,' discrim!, harass!, stalk!, retaliat!, hostile, iPad, hack!, kiss!, reporter, and groom!.")

3

courts have, for various reasons, compelled the forensic imaging and production of opposing parties' computers."). The Court is mindful of Plaintiff's privacy concerns about the potential discoverability of her entire mobile device, particularly as it pertains to confidential client information in her capacity as a practicing attorney. Therefore, the Court finds prudent to pursue this course of action to allow Plaintiff an opportunity to comply without jeopardizing her client information.

### *Communications with Former Counsel Kalahar and McGinn*

Next, the Riley Defendants request the Court find that (1) "McKenna waived privilege with respect to certain communications with Kalahar and McGinn that she put at issue in prior pleadings" (*see* the Riley Defendants' 2nd RFP Request No. 89) and (2) "McKenna cannot assert privilege in communications with Kalahar and McGinn post-withdrawal" (*see* the Riley Defendants' 2nd RFP Request No. 83). ECF No. 248, PageID.7541-7543. The Court disagrees with the Riley Defendants that Plaintiff waived her privilege over communications with Kalahar and McGinn; and it will similarly deny any unrestricted access to Plaintiff's post-withdrawal communications with prior counsel.

Michigan law applies to the determination of whether McKenna waived attorney-client privilege. *See In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) ("In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims."). In Michigan,

attorney-client privilege "protects communications, not facts." *Hamilton v. Rubin*, No. 258917, 2006 WL 1751901, at *3 (Mich. Ct. App. June 27, 2006). As such, the Sixth Circuit has long distinguished between purported facts and "certain statements […] based upon confidential communications between attorney and client, that **go to the heart of the legal claims** at issue." *In re Powerhouse*, 441 F.3d at 473 (emphasis added). Here, McKenna's statements with prior counsel to which the Riley Defendants point to can be categorized into the former bucket—not the latter.

For instance, the Riley Defendants contend that McKenna's communications with prior counsel are subject to the at-issue waiver based on her own argument that "[p]rior counsel[…] '[decided] not to conduct a broader extraction and search, which would have required a substantially larger data pull and incurred significant additional cost—estimated at tens of thousands of dollars,' including all communications with the forensic expert(s) and any invoices or records of payments of these forensic costs." ECF No. 248, PageID.7542 (citing ECF No. 160, PageID.5510). The Court does not find that such statements reach the *In re Powerhouse* threshold.[3]

---

[3] *See In re Powerhouse*, 441 F.3d at 473. ("[I]n our view Shefferly's affidavit **disclosed more than mere facts**. For instance, it contains the following statement cited earlier: Because the owners of the Transferor Entities were related to the owners of the Transferee Entities, the parties desired to have an expert valuation of the assets to be acquired performed by an independent financial expert. **This assertion**, along with opinion expressed in the affidavit **concerning whether the participants intended to 'conceal** either the existence of the Acquisition, or the documentation of the Acquisition from third parties,' relates directly to Venice Renaissance's **allegation that the petitioners intended to hinder, delay, and defraud** their creditors.") (emphasis added).

Nor does the Court find any basis to compel Plaintiff's communications with her prior counsel following their withdrawal on June 25, 2025.  ECF No. 248, PageID.7543.  Attorney-client privilege "serves the function of **promoting full and frank communications** between attorneys and their clients.  It thereby encourages observance of the law and aids in the administration of justice." *Commodity Futures Trading Corp. v. Weintraub*, 471 U.S. 343, 348 (1985) (emphasis added).  Thus, the Court rejects any attempt to undermine Plaintiff's attorney-client privilege through conclusory assertions that her certain communications with them were "post-withdrawal."  Rather, the Court is much more concerned with preserving the rule's integrity, especially given its already narrow construction.  *See United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) (citing *In re Grand Jury Proc. Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996)) ("While the purpose of the attorney-client privilege is to encourage clients to communicate freely with their attorneys, the privilege is narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit.").

Accordingly, the Riley Defendants' requests for communications between Plaintiff and Kalahar or McGinn, as described in the Request Nos. 89 and 83 are denied.  However, as further explained below, Plaintiff should not construe the Court's recognition of the significance of attorney-client privilege as a free-for-all.

6

## *Purported Unprivileged Communications*

### 1. *Alleged Involvement in Recission of HIPAA Authorizations (the Riley Defendants' 2nd RFP Requests No. 86)*

First, the Riley Defendants seek Plaintiff's communications with third-parties regarding subpoenas and document requests based, in part, on "[t]herapists Cranston and Gialanella produc[ing] documents reflecting McKenna's instruction regarding her HIPAA releases attached to Riley Party subpoenas." ECF No. 248, PageID.7547 (citing the Riley Defendants' 2nd RFP Request Nos. 86, 88). In response, Plaintiff contends that "[t]he Court did not adopt a general anti-rescission rule." ECF No. 266, PageID.8647. Plaintiff is correct that the Court did not. Nor should the Court have needed to expressly instruct officers of the Court against interfering with validly-issued subpoenas. Communications related to any interference with all validly-issued subpoenas and document requests are thereby discoverable and must be produced to Defendants on or before June 5, 2026.

### 2. *Media-Related Communications (the Riley Defendants' 2nd RFP Requests Nos. 77, 78, 79, 80, and 87).*

Second, Plaintiff attempts to extend any valid assertion of attorney-client privilege and/or work product doctrine to include "[a]ny communications counsel exchanged with media organizations about this case" because such communications "were made in active litigation and reflect counsel's strategic thinking." Notably, Plaintiff cites no legal authority in support of her position. Such failure to do so is

7

unsurprising given her position directly contradicts with attorney-client privilege *and* the work-product doctrine.  *See e.g., United States v. Goldfarb*, 328 F.2d 280, 282 (6th Cir. 1964) ("[T]he attorney-client privilege extends only to communications between the client and his attorney ..."); *Detroit News, Inc. v. Indep. Citizens Redistricting Comm'n*, 508 Mich. 399, 408 (2021) (citing *Alderman v People*, 4 Mich. 414, 423 (1857)) ("In general, the attorney-client privilege attaches to communications 'made to the attorney by the party, or client, as his legal adviser, and for the purpose of obtaining his legal advice and opinion, relative to some legal right or obligation.'"); *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289 (6th Cir. 2002) (cleaned up) ("The [work product] doctrine is designed to allow an attorney to assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference ... to promote justice and to protect [his] clients' interests.").  Plaintiff must therefore produce all media-related communications.  This includes, but is not limited to, all discovery related to Plaintiff's alleged dissemination of: (1) her Complaint(s) in this action to media outlets and (2) the Detroit News Article to non-parties, and (3) related items.

### *Confirmation of the Voiding of Certain Third-party Subpoenas and Document Requests (2nd RFP Request No. 88)*

Finally, as to Request No. 88, Plaintiff reiterates her commitment to producing "written communications [she received] from Chad Engelhardt, Jennifer Engelhardt,

8

and Victoria Roberts regarding those subpoenas [to them]."  ECF No. 266, PageID.8648.  So, Plaintiff is directed to certify her compliance with the Court, and, to the extent that she fails to complete the required production, Defendants shall notify the Court accordingly.

\* \* \*

Finally, the Riley Defendants request fees under Rule 37(a)(5)(A) on the basis that Plaintiff's position in the instant Motion was substantially unjustified.  ECF No. 248, PageID.7548.  However, given that the Court denies the Motion in part, it does not find that Plaintiff's position was so substantially unjustified as to warrant fees under Rule 37(a)(5)(A).  The request is therefore denied.

\* \* \*

Accordingly, **IT IS HEREBY ORDERED** that no later than **June 5, 2026**, Plaintiff must (1) comply with the Court's previous order to produce all outstanding discovery, including ESI; (2) produce all materials related to her alleged involvement in the recission of certain HIPAA authorizations (*see* the Riley Defendants' 2nd RFP Requests No. 86); (3) produce all media-related communications (*see* the Riley Defendants' 2nd RFP Requests Nos. 77, 78, 79, 80, and 87); and (4) certify to the Court whether she has complied with voiding the relevant third-party subpoenas and document requests (*see* the Riley Defendants' 2nd RFP Request No. 88).

**IT IS FURTHER ORDERED** that the Riley Defendants' request for fees under Rule 37(a)(5)(A) is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 1, 2026
    Detroit, Michigan

s/Brandy R. McMillion
HON. BRANDY R. MCMILLION
United States District Judge

10