UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ELYSE MCKENNA,

      Plaintiff,

v.

ROBERT F. RILEY et al.

      Defendants.

Case No. 24-cv-12347

Hon. Brandy R. McMillion

Magistrate Judge Elizabeth A. Stafford

---

**Defendants/Counterclaim Plaintiffs Riley and Riley & Hurley P.C.'s
Notice to Court of McKenna's Violation of Court Orders**

**Introduction**

At the June 12, 2026 hearing, the Riley Parties set forth, in detail, McKenna's ongoing failures to comply with Court discovery orders, including multiple orders entered on May 22, 2026 that specifically required that she cure her extensive discovery deficiencies by June 5, 2026 or face the immediate dismissal of her action. *See* Ex. A, 6/12/26 Hr'g Tr. at 9:25-13:4; 18:12-23:14, ECF No. 295. At the conclusion of the hearing, the Court directed the Riley Parties to file a document setting forth the record of violations that it has discovered to date.

Based on the record set forth below, the Riley Parties move the Court to execute on its May 22, 2026 order and dismiss McKenna's case with prejudice.

## I.   The history of forbearance and patience with McKenna's contumacious behavior concerning discovery.

This case was commenced in September 2024. And now, nearly two years later, McKenna continues her pattern of disobedience of the Court's orders and admonishments to conduct discovery as required by the court rules and ordered by the Court.

The Court's final May 22, 2026 order on the subject, ECF No. 279, followed countless orders and conference directives all designed to obtain McKenna's compliance, which never followed. ECF No. 279 meticulously outlined this history. *Id.* at PageID.9102, 9104, 9108-9111, 9115-9116. The Court's order provided for dismissal of McKenna's claims if she did not submit a satisfactory certification of

compliance by June 5, 2026.  She failed to do so.  As became clear during the hearing on June 12, 2026, McKenna continues to be in willful violation of the Court's orders and must now face the consequences.

**II.     As McKenna conceded at the June 12 hearing, she willfully chose to violate ECF No. 279 - allegedly at a non-party's direction - by withholding *every* PHPA document under an obviously false assertion of privilege.**

One of the most blatant, and inexcusable, violations pertains to McKenna's failure to produce PHPA documents. She was ordered to produce "any outstanding discovery," including—but not limited to—27 named individuals and responsive documents related to the PHPA, by June 5, 2026. "B. Ramsay" was specifically named as an individual whose documents should be produced. ECF No. 279, PageID.9118-9119. According to the Court, "***[f]ailure to comply with this Order will result in dismissal of this action.***" *Id.* at 9120. (Emphasis in original.) McKenna, however, produced *zero* PHPA or Ramsay documents. Instead, she placed every single one of those documents—approximately 3,700 of them—on her 233-page privilege log with the same boilerplate designation: "PHPA – Attorney Client Privilege/Work Product." ECF No. 292-4. The privilege log included scores of entries that, by their description alone, clearly did not pertain to legal advice being sought or obtained. Instead, these documents plainly involve McKenna lodging defamatory accusations about Riley to the PHPA's Executive Director (Mr. Ramsay) that led to Riley's termination as PHPA counsel; *i.e.*, one of the primary acts

underpinning the Riley Parties' counterclaims. The following entries on the log illustrate this point:

- **August 30, 2024**: McKenna's files include "August 30th Draft Complaint.docx" (entry 83); at 5:51 p.m. that day she emails the document to her personal attorney Ken Mogill (entry 309). That same morning, at 11:05 a.m., she receives a Google Docs notification on a document whose truncated title is "Riley Complaint RE: Professional Hockey Players" (entry 884)— withheld, remarkably, under the guise of the PHPA's attorney-client privilege.

- **September 2, 2024, 2:04 a.m.**: McKenna creates "Sept 2 Draft Complaint.docx" (entry 305) and emails her personal attorney Sarah Prescott under the subject "Draft of complaint" (entry 304).

- **September 5, 2024, 11:19 p.m.**: McKenna emails Ramsay—at his personal Gmail account, not his PHPA account—with subject "McKenna" (entry 1728).

- **September 9, 2024, 8:03 p.m.**: McKenna emails Ramsay: "Riley – Important Matter" (entry 1726).

- **September 9, 2024, 8:16 p.m.**: McKenna emails Ramsay again: "Riley" (entry 1725).

- **September 9, 2024, 8:43 p.m. and 9:21 p.m.**: Ramsay responds twice: "RE: Riley" (entries 871, 870).

- **September 10, 2024, 7:39 a.m.**: McKenna replies: "Re: Riley" (entry 1724).

The Riley Parties sent McKenna a deficiency letter identifying this improper response. Ex. B, Deficiency Letter and Attachments. The letter observed that it appeared McKenna had made a blanket decision to include every single PHPA and Ramsay document on her privilege log, without making any document-by-document assessment of privilege. *Id.* Indeed, while McKenna produced approximately 47,000

pages of documents between May 22, 2026 and June 5, her production does not contain a single document with an "@phpa.com" address in it, and not one document from Ramsay.

At the June 12, 2026 hearing, McKenna's counsel Shemia Fagan confirmed that blanket withholding is precisely what McKenna did. She claimed that someone at the PHPA directed McKenna to withhold all PHPA documents and instead assert that all documents were privileged.[1] Ex. A, Hr'g Tr. at 42:10-21, ECF No. 295. McKenna, by her counsel's admission, consciously chose to disregard an unambiguous federal court order to comply with this highly improper client directive. *Id.* at 45:1-9. And worse, knowing that she had made wholesale privilege claims without reviewing the documents for privilege, McKenna nevertheless certified that she had complied with the Court's order. ECF No. 292. This included a false certification that she had produced all documents with Ramsay! *Id.* at 9188.

---

[1] At the hearing, Fagan implied that Riley's counsel ratified this misconduct. To the contrary, on May 26, 2026, Elizabeth Hardy wrote the following:

> Shemia- as we discussed during our call today, attorney-client communications between Plaintiff and the PHPA can be withheld so long as they are appropriately identified on a privilege log. Beyond that limited number of documents, the PHPA does not have a right to dictate what Plaintiff produces - even if it deems the communications to be embarrassing or business sensitive. Defendant Riley, after all, has right to see any communications between your client and the PHPA that reference him and may have a bearing on his counter claim.

Ex. C, Hardy Email to Fagan.

As any first-year lawyer should know, privilege does not attach to every communication between her lawyer and her client. Instead, only requests for legal advice and communications providing such advice, are privileged. As lawyers with asserted legal competence, McKenna and her counsel are presumed to understand fundamental concepts involving the attorney-client privilege.

No more need be said. McKenna, by her own admission, willfully disobeyed a pointed Court order by knowingly withholding critical evidence. This intolerable conduct calls for dismissal per a standing order. ECF No. 279, PageID.1920.

**III.    McKenna likewise violated ECF No. 279 by withholding nearly all ESI with her former significant other Jared Smith, including material pertinent to this case that *Smith himself* confirms exists.**

McKenna's production was likewise tellingly devoid of text messages and other ESI with Jared Smith—her former significant other who appears to have goaded McKenna into launching her defamatory attacks on Riley. Smith was identified by McKenna as a key witness in her initial disclosures.

McKenna produced a total of *five* text message chains with Smith: on May 3, June 16, July 1, July 30, and August 13, 2024.[2] By contrast, McKenna produced *all 10,473* of her text messages with her friend Lauren Studley.[3] She produced thousands of messages with OMP partner Emily Peacock, *plus* text chains with three

---

[2] Produced as MCK_ESI_00038919, 00038922, 00038924, 00038926, 00013821.

[3] MCK_ESI_00000718 (589 pages of texts from 11/24/2019 to 5/21/2025).

other random Emilys, including "Emily Dog Sitter." And she produced hundreds or thousands of other texts with witnesses on her exhibit list. But for the father of her child and a key witness, she produced a mere 5 text chains from 5 days.

Ms. Fagan confirmed the reason at the June 12, 2026 hearing: McKenna curated her Smith production, Ex. A, Hr'g Tr. at 37:10-20, ECF 295. When this was challenged—including by the Court, which noted "I know from the record in this case, that Ms. McKenna is a prolific texter"—Ms. Fagan protested that she was being asked to prove the non-existence of texts and then affirmatively represented to the Court that she "produced the text messages that were responsive." *Id.* at 36:24-37:21, 41:10-12. Her deflection is unavailing as is her claim that McKenna produced everything responsive. The record reveals actual, responsive materials that McKenna's curation cynically omitted.

On June 12, 2026 at 10:14 am—less than an hour before the court conference—Mr. Smith belatedly responded to his subpoena. He, too, produced very little: a single email and a privilege log. *See* Ex. D, Smith Email and Production. But Smith's production identifies six specific documents that McKenna has not produced:

| Smith's Subpoena Response | McKenna's production |
|---|---|
| Smith log entry 1 — Sept. 21, 2023 text messages | Not produced; not on privilege log |
| Smith log entry 2 — June 23, 2023 text messages | Not produced; not on privilege log |
| Smith log entry 4 — Aug. 5, 2024 email + PDF attachment | Not produced; not on privilege log |

-6-

| Smith log entry 5 — Aug. 28, 2024 email + PDF, sent to Plaintiff's elyseheid@gmail.com account | Not produced; not on privilege log |
|---|---|
| Smith log entry 8 — June 28, 2024 email transmitting "Riley Complaint-2.docx" and "OMPW Complaint.docx" | Email not produced and not logged; the attachments appear on privilege log (entry 2544: "PHPA – Attorney Client Privilege/Work Product") |
| Smith production — Smith's sole produced document: a Sept. 3, 2024 email from McKenna to Amanda Fox Perry and Smith re: their work on Riley lawsuit. | Not produced; not on Plaintiff's log |

McKenna's own production likewise confirms the existence of missing Smith communications, *and* under circumstances indicative of intentional withholding. For instance, McKenna produced drafts of a February 2024 email to Smith (shortly after she quit her job at OMP) that she sent to herself. Ex. E, McKenna Draft. Most of the email is personal and relates to their turbulent relationship, but it contains the critical line: "You pushed me regarding Bob and getting out of my firm to a better environment, and you told me I could do this." *Id.* (redacting personal information). McKenna later quotes from this email to a friend via text message—including the "Bob" line—saying "I sent this to [Smith] in an email yesterday." Ex. F, Barrett Text. McKenna did not produce that email to Smith referencing his apparent involvement in her allegations against Riley and OMP. Her search term "Bob" would have hit all three, but the one sent to Smith's personal email address is inexplicably missing. That establishes McKenna selectively removed critical ESI from her production that pertained to Smith communications, even when responsive to search terms.

And the evidence does not stop there. At a recent conference, McKenna's counsel disclosed that Smith and McKenna were no longer together. That led Riley's counsel to discover an ongoing lawsuit between Smith and McKenna—including public pleadings and affidavits submitted by both sides—that referenced a May 2026 order that communications about "outside litigation" (*i.e.*, this lawsuit) "be had through text." *See* Ex. B, Deficiency Letter and Attachments, p. 39. McKenna did not produce a single text with Smith post-dating this litigation's commencement in September 2024. The same public records show Smith accusing McKenna of using devices set to delete messages and disclosed—with timestamps—other communications between her and Smith from earlier this year.[4] *Id.* at 29-30. McKenna has produced virtually nothing with Smith—including identifiable documents that explicitly relate to this lawsuit. Again, she certified full compliance. Again, she violated this Court's sanctions order.

**IV.    McKenna violated ECF No. 97 by failing to disclose all mental health treaters and failing to provide HIPAA releases for them.**

The record amply documents McKenna's extensive prior efforts to block discovery into her mental health providers despite multiple Court orders authorizing that discovery. But the Smith-McKenna litigation records discussed above establish

---

[4] Given that Smith—by McKenna's own sworn accounts—is a significant source of emotional distress in her life, and has been for years, the scope of what is "responsive" for Smith clearly extends beyond references to this litigation.

one or two additional mental health providers that McKenna has not disclosed. Ex. B at 9, 46.

McKenna, in an affidavit in the Kentucky litigation, asserts that she was seeing a "couples counselor" that Smith identifies in a separate pleading as "A. DeHart." *See* Ex. B at 53. Smith, in another pleading, states that he would watch the couple's child while McKenna attended therapy sessions, establishing that (1) McKenna is *also* seeing DeHart on an individual basis, or (2) is seeing a separate, unnamed therapist besides DeHart. *Id.* at 9. Either way, McKenna has not disclosed those providers and has not provided a HIPAA release for them.

McKenna's claim for damages against the Riley Parties involves emotional distress allegedly suffered. It is elementary that McKenna's treaters are proper and important discovery subjects, as the Court has held. This additional violation of Court orders warrants dismissal as well.

## V.     McKenna has violated ECF No. 261 by withholding communications with attorneys Prescott, Mogill, and Besser.

The Court held, on October 24, 2025 that McKenna had waived privilege over her communications with attorneys she consulted before filing her *pro se* complaint—including, specifically, Sarah Prescott, Ken Mogill, and Matt Besser. ECF No. 97, PageID.2512. Yet McKenna's privilege log reveals that she is withholding at least 24 communications with these lawyers:

- McKenna withheld communications with Matt Besser (entries 412 and 421-22).

- She withheld at least 21 communications with Sarah Prescott and Kenneth Mogill, plus the documents transmitted with them (entries 144–147, 154, 298, 304, 309–321, 325, 328–330, 1447, and 3683).

ECF No. 292-4. The log, moreover, confirms the withheld materials relate to this case. The withheld Besser materials are titled "Re: Very Well Thought-Out Draft of an Email," during a timeframe where the record otherwise reflects Besser advising McKenna on drafting an accusatory email to Bob Riley. And the withheld Prescott/Mogill emails include a May 2024 email with attachments "Letter to PHPA Executive Committee.docx," (entries 310-311), "OMPW Complaint.docx.," (entry 312), and "Riley Complaint.docx" (entry 313). McKenna's withholding of communications *with* PHPA was inexcusable. So is withholding emails to her lawyers under the false guise of privilege.

**VI.    McKenna unquestionably violated ECF No. 288 by failing to search for and produce all responsive materials regarding her defamatory accusations to the media, and failing to certify compliance with the order, as required by the Court.**

McKenna's failure to disclose, even as of the June 12, 2026 hearing, the communications with the PR Firm, Pathways of Action, is stunningly egregious and is undisputed as a result of admissions by counsel. Ex. A, Hr'g Tr. at 8:5-9:23, ECF No. 295.

-10-

McKenna's production—through what appear to be incidental hits on Riley's name—disclosed that *before* she ever filed this lawsuit, McKenna and her law partner Amanda Fox Perry hired the PR Firm for the express purpose of widely publicizing McKenna's defamatory claims against Riley. McKenna and Fox required them to sign an NDA in the process to hide their involvement. Ex. G, Pathways of Action NDA. That PR firm then sent the Detroit News a pre-filing draft of McKenna's lawsuit, a statement, and multiple headshots to use in any story. Ex. H, Email to the Detroit News. McKenna disclosed none of this. She never identified the PR firm. And as recently as last month, McKenna worked to keep the documents hidden: she argued that the Riley Parties were not entitled to her communications with the Detroit News because she had merely made a "fair report" of *already-public* litigation. *See* ECF No. 266, PageID.8651. The litigation was not public, as she had not yet filed.

McKenna's handling of this issue brazenly violates the Court's June 1, 2026 Order. ECF No. 288 directed McKenna to produce, by June 5, "all media-related communications," and defined that as including, "but not limited to, all discovery related to [her] alleged dissemination of: (1) her Complaint(s) in this action to media outlets and (2) the Detroit News Article to non-parties, and (3) related items." ECF No. 288, PageID.9175. The PR firm material falls squarely within that command. McKenna did not produce it and violated that order as well.

-11-

McKenna's search terms explain the gap. Her protocol intentionally did not use the PR firm's name, the PR firm's agent, "Detroit News" or "Hunter" (the article's author) as search terms. *See* ECF No. 292-2, PageID.9199-9200. But the Court had already told McKenna that if agreed upon search terms were "insufficient to locate all responsive documents, she shall employ whatever terms are necessary to fully comply." ECF No. 288, PageID.9170. The search terms she selected were obviously inadequate.

The Riley Parties asked McKenna to correct the deficiency and produce all materials about this publicity effort, irrespective of search terms. She refused, saying McKenna had complied and would not supplement. At the June 12, 2026 hearing, McKenna's counsel reiterated that her search terms were broad enough to cover the PR firm, ignoring that the PR firm—acting as McKenna's agent—almost certainly has its *own* responsive material that would not be in McKenna's device but would be within her possession, custody, or control. Ex. A, Hr'g Tr. at 15:23-17:12, ECF No. 295.

Counsel as much as admitted McKenna's intentional avoidance of her obligations. During the June 12, 2026 hearing, the Court pointedly asked counsel whether she rechecked the database once the issue of the PR firm's omission was raised.  McKenna's counsel failed to respond to the Court's inquiry. *Id*. at 8:5-17.

Ms. Fagan nevertheless claimed a proper production while continuing to evade the Court's question. Mr. Davis represented to the Court that he had asked counsel to apply proper search terms, but she refused. Ms. Fagan initially took issue with Mr. Davis' representation, but then admitted she had told him that she "stood by the record." This led to another inquiry by the Court as to why a certification of this issue would not be false. Once again, counsel evaded the Court's inquiry with a non-response. *Id.* at 13:5-17:12.

This additional violation alone is so egregious that it should independently result in dismissal.

## VII. McKenna has also violated ECF No. 288 by failing to certify compliance with the Court order requiring rescission of improperly issued subpoenas.

ECF No. 288 had a substantive requirement that McKenna "certify to the Court whether she has complied with voiding the relevant third-party subpoenas and document requests (see the Riley Defendants' 2nd RFP Request No. 88)." PageID.9176. She has not done so even now (or submitted false "certifications"), and to describe her failure to do so as a mere oversight or "scrivener's error" is nothing short of dishonest.

## VIII. Every standard for dismissal is met.

In its May 22, 2026 Opinion and Order, ECF No. 279, the Court declined to order dismissal of McKenna's claims as requested.  As the Court indicated, certain

-13-

of the factors outlined in *United States v Reyes*, 307 F.3d 451 (6th Cir. 2002) had not been sufficiently established as of that time.  For instance, the Court questioned whether the Riley Parties had suffered sufficient prejudice if the information is produced, noting that the Court had not previously warned McKenna of dismissal, and that less drastic (monetary) sanctions would suffice at that point, since no prior sanctions had been imposed.  ECF No. 279, PageID.9114.

One would have expected McKenna to take notice of the Court's final and specific warnings.  She did not.  Every factor required for dismissal is now fully met.  And the Riley Parties' prejudice is confirmed by McKenna's continued hiding of key evidence (e,g, the PHPA, PR Firm and other ESI documents as well as medical treaters) that is critical to their defense and counterclaims.

## Conclusion

In the May 22, 2026 order, ECF No. 279, the Court, following recitation of McKenna's many earlier violations, warned her in no uncertain terms: "It is further ordered that McKenna shall certify compliance with this Order no later than **June 5, 2026** by filing a Notice of Compliance with the Court, ***or this case will be immediately dismissed.***" *Id*. at PageID.9120. (Emphasis in original.) To make certain that McKenna fully understood the seriousness of the Court's words, the final sentence of the order reminded her that "***[f]ailure to comply with this Order will result in dismissal of this action***." *Id.* (Emphasis in original.)

-14-

McKenna's counsel repeated claims of good faith compliance simply cannot be squared with this record, particularly the admitted violations pertaining to PHPA and PR Firm documentation, as well as the failure to certify, or falsely certifying, compliance with this Court's May 22, 2026 order. These are not inadvertent instances; they are in-your-face violations. During the June 12, 2026 hearing, this Court recounted that "discovery in this case has been an issue since the beginning. . . . There has been order after order in this case in which the Court has given Ms. McKenna opportunities to produce documents." Ex. A, Hr'g Tr. at 35:2-8, ECF No. 295, PageID.9530. McKenna's continuous and systematic noncompliance of those orders culminated in what this Court described as "14 days to finally comply with orders that she continually violated, and discovery obligations that she continually violated for the 18 months in which this case was pending." *Id.* at 47:2-5, PageID.9542. Dismissal is now unquestionably warranted.

The Riley Parties respectfully request that following dismissal of McKenna's claims, they be permitted to submit a Bill of Costs detailing the many efforts to obtain discovery which McKenna resisted.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By:*/s/Thomas J. Davis*
    Thomas J. Kienbaum (P15945)
    Elizabeth Hardy (P37426)
    Thomas J. Davis (P78626)
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
tkienbaum@khvpf.com
ehardy@khvpf.com
tdavis@khvpf.com

Dated:  June 19, 2026        *Attorneys for the Riley Parties*

-16-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 19, 2026, I electronically filed this document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/ Thomas J. Davis*
Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
tdavis@khvpf.com
