# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELYSE MCKENNA,

                    Plaintiff,

                                        HONORABLE BRANDY R. McMILLION

          v.
                                        No. 24-12347

ROBERT F. RILEY, ET AL.,

                    Defendants.
_____/

**PRETRIAL CONFERENCE**
(Conducted Via Zoom Videoconferencing Software)
**Friday, June 12, 2026**

Appearances:

Shemia Fagan                          Deb Gordon & Elizabeth Taylor
HKM Employment Attys.                 Deborah Gordon Law
2014 Capitol Ave, #100                33 Bloomfield Pkwy., #220
Sacramento, CA  95811                 Bloomfield Hills, MI  48304
916.764.3633                          248.258.2500
sfagan@hkm.com                        dgordon@deborahgordonlaw.com
   On behalf of Plaintiff               On behalf of Def. Olsman

Karen Truszkowski                     Elizabeth Hardy & Thomas Davis
Temperance Legal Group                Kienbaum Hardy Viviano Pelton
503 Mall Court, #131                  280 N. Old Woodward, #400
Lansing, MI  48912                    Birmingham, MI  48009
517.235.3053                          248.645.0000
karen@temperancelegalgroup.com        ehardy@khvpf.com
   On behalf of Plaintiff               On behalf of Def. Riley

George Moschopoulos
Law Office George Moschopoulos
34197 Pacific Coast Hwy #100
Dana Point, CA  92629
714.904.1669
georgem@logmapc.com
   On behalf of Plaintiff

ALSO PRESENT:  Jules Olsman

– – –

<u>To obtain a certified transcript, contact:</u>
Timothy M. Floury, CSR-5780
Official Court Reporter
Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan  48226
(313)234-2607 · floury@transcriptorders.com

Transcript produced using machine shorthand and CAT software.

*Pretrial Conference*
*Friday, June 12, 2026*

**I  N  D  E  X**

Motion Hearing                                           Page

Pretrial Conference .................................4

Certification of Reporter ........................57

—  —  —


**E   X   H   I   B   I   T   S**

Number        Description                      Id'd Rcvd Vol.

***None Marked, Offered or Received***

—  —  —

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 4*

Detroit, Michigan

Friday, June 12, 2026

11:08 a.m.

- - -

**THE CLERK:** The United States District Court for the Eastern District of Michigan is now in session. The Honorable Brandy R. McMillion presiding.

The Court calls Case No. 24-cv-12347, Elyse McKenna v. Robert F. Riley, et al.

Counsel, please state your appearances for the record.

**MS. HARDY:** Elizabeth Hardy on behalf of the Riley parties.

**MR. DAVIS:** Thomas Davis on behalf of the Riley parties.

**MS. GORDON:** Deborah Gordon on behalf of the OMP parties, along with Elizabeth Marzotto Taylor.

**MS. FAGAN:** Shemia Fagan, George Moschopoulos and Karen Truszkowski on behalf of plaintiff.

**THE COURT:** I'm looking. Do I have -- I'm checking off my boxes to make sure we have all appearances. I think we are good.

Okay. We are here for what appeared on the docket to look like a pretrial conference. There's just some differences in the Clerk's office, just so you guys know, and you probably

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 5*

will see this going forward, that things will be changed just in terms of how things are listed on the docket, and that's just an internal thing as to how we are staffing, whether court reporters are present, so you may see some changes going forward, but this is no different than our traditional, I wanted to get the parties on the phone.

I did want to go on the record for this case, and I do have our court reporter here today, with respect to where we are. I understand that the production happened on June 5th, as ordered by the Court. As a result of that production, defense have gone through that production, believes that there are still deficiencies in discovery productions, and by communications with the Court, have requested dismissal of this action. Given that the Court has previously ruled on the Rule 37 motions and denied that, wanted to definitely go on the record with respect to whether those motion would be renewed, where we are.

And I believe that I have at least five issues that I think have been raised during the course of the correspondence back and forth with the Court. I have that there's a third-party subpoena that is being issued to a PR firm. I don't know if that's happened or if it was being held pending this Court hearing today.

There was also an issue of certification of ECF 288 by plaintiff and that inadvertently being left off of the

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 6*

certifications that were filed.  I do have that there is allegations of new treatment providers and HIPAA releases that have not been prepared and sent for those treatment providers. There's an issue of whether there's deficiencies with respect to text messages between plaintiff and Mr. Smith, and then issues with the privilege log.  And I think within that, I have that there's issues about the Professional Hockey Players' Association documents being withheld across the board, as opposed to kind of individual assessment of the documents dealing with that particular third-party, that there are attorney docs that are still being withheld despite waiver of the attorney-client privilege for those attorneys, and that the privilege log also has entries that are just blank, so you don't know what those documents are.

That's what I have as the issues to address today.  I think originally, Ms. Fagan, you requested this hearing with the Court as a result of -- I think the third-party subpoena probably sparked all of this.  So I will turn the floor over to you and then I will move to defense to address any of these issues.

**MS. FAGAN:**  Thank you, your Honor, and good morning.

Yes, I appreciate that.  I had a conferral with Mr. Davis on the subpoena, and as I indicated to him, I understood from a reasonableness perspective his desire to serve that subpoena, so it was not a position that we were

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 7*

believing it was unreasonable.  What we were asking for the Court's guidance on is when and under what circumstances the defendants would be able to continue to serve discovery after the discovery cutoff.  And I respected and appreciated that Mr. Davis did hold off on serving that, which I thought was in good faith and appreciated that, and we just wanted to seek the Court's guidance regarding if defendants can continue to serve discovery.  If so, do they have to seek leave of court, or is the burden on us to file motions to quash, and is there a certain time frame in which they're allowed to continue to serve discovery?  So, really, essentially, just seeking the Court's guidance on when, if and how and under what circumstances defendants can continue to serve discovery.

**THE COURT:**  Ms. Fagan, can you tell me if there's an issue with the -- and I think I read this in the filing, but I understand that you're seeking the guidance just on procedurally logistics, but is there an issue with the merits of this?  I mean, if they're having to serve a third-party subpoena to get documents -- and I assume the purpose of that third-party subpoena to get documents is because the production is deficient with respect to those documents.  Does plaintiff not have the ability to just provide those documents?

**MS. FAGAN:**  Thank you, Judge.  And I will discuss, if we get here, our ESI was comprehensive and we followed the ESI protocol, so I'm not aware, as I sit here today, of any

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

Page 8

documents in two weeks.  So we did a very diligent and good-faith review, so I'm not aware of us having any documents that are being withheld.

And your --

**THE COURT:**  Once Mr. Davis identified the PR documents from the production, did you go back and look for those PR documents?

**MS. FAGAN:**  He identified the PR documents because we gave them, so that's how he knows about the PR firm is because the documents were produced.  And, so, as I said to Mr. Davis on our conferral call, I don't disagree with and don't have any problem with the merits of his subpoena.  What we were seeking was the court's guidance on the logistics and procedure.  If defendants are going to continue to serve discovery, is there a time frame in which they have to do all of that?  Do they have to seek leave of Court or -- again, that was what we were seeking.

**THE COURT:**  Understood, but I want to go back to the merits of the issue.

So my question is, you had a meet and confer. Mr. Davis has sent a correspondence to the Court saying, we determined that these PR documents exist because there was reference to them in email.  He comes to you in a meet and confer, and, Mr. Davis, I'll have you speak to your actions with that, but at least as the Court understands it from the

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 9*

filings with the Court, is that it's, like, these documents exist because they're referenced in some other communication. Nothing with direct communication with the PR firm has been produced.

Do you not have a continuing obligation, just under discovery, generally, to go back and say, hey, let me see if we have those PR documents and produce them?

**MS. FAGAN:** We do have a continuing discovery. My understanding, your Honor, from Mr. Davis's position is that emails with Mr. Hunter were produced and that their understanding is that there might be more --

**THE COURT:** Okay.

**MS. FAGAN:** -- and, therefore, they wanted to serve a subpoena and so that's my understanding from the conferral is we did produce documents, and that's how they even knew that this PR firm even existed, and then they wanted to serve a subpoena to the PR firm to seek additional documents. That's my understanding from my conferral.

**THE COURT:** So my understanding from the letter was different. So I'm going to turn it do Mr. Davis, because my understanding from the letter was that the documents that were produced just merely referenced that this PR firm exists and that there were communications that weren't turned over. Can you clarify for the Court?

**MR. DAVIS:** Yes. Well, let me -- I'll clarify this

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 10*

issue, but I do -- and I know the Court will let me speak to this.  So this is part of a much more overarching issue that I do need to address in context.  But on here, the issue, specifically, is this:  It appears -- and the Court has the search terms that Ms. Fagan used -- in -- and this is where the confusion comes in -- the Court ordered production of all documents in response to the motion to compel, ECF 113.

We identified some search terms kind of in the dark.  Ms. Fagan added some additional search terms to respond to that.  That was not the issue regarding the Detroit News issue.  That was the second RFP.  That was order 288.

Now, the issue that happened, it appears that some email chains with this place, this Real Solutions RS, there was an incidental hit on Riley.  So we do have some chains between McKenna and this PR firm that Riley's name is in.  I identified to Ms. Fagan -- first of all, I wanted to send a subpoena because this guy, apparently, was doing additional work and independently contacting the Detroit News and others, potentially that Ms. McKenna wasn't included on.  So it's not just -- it's in addition to.  McKenna should be producing materials, but they certainly probably have more given what we do have.

I pointed out to Ms. Fagan two things:  One, your search terms, which were related to a different order, did not include Detroit News.  It did not include George Harper, who's

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

Page 11

the author of the article.  It does not include this PR Solutions firm.  It does not include Rudy -- and I'm blanking on his last name, but the man's first name is Rudy.  That's the PR, the owner and the person who is in contact.

So she didn't use search terms to find anything with this entity.  It was an incidental hit on the fact that some of the emails, apparently, had Riley's name in it.  So that's how we found it.

I asked her to go back and give us all materials with this PR firm, because it is a discrete known issue.  There's no other reason.  From what we can tell, they were hired specifically to publicize the accusations against Riley, and they did it before they filed the lawsuit.  They sent George Hunter, the Detroit News author, an unfilled prefiling draft of the complaint.  So they've claimed privilege.  They've claimed all kinds of things.  No.  They disseminated this to the media before it was a public record.  Critical evidence.  So I said go back.

And I also said what the Court said in ECF 288, it was very clear.  The Court said, Plaintiff -- quote, Plaintiff is reminded of her discovery obligations, and if those search terms are insufficient to locate all responsive documents, she shall employ whatever terms are necessary to fully comply with the discovery request.  She has not even searched for the Detroit News.  I do not have McKenna's communications with

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

Page 12

George Hunter. She talked to him. Rudy Harper -- I think it's Rudy Harper. George Hunter is the News, Rudy Harper is the PR guy. She says -- or he says, you know, something about how did your talk with George Harper -- or with -- with George Hunter go, or something of that nature.

So McKenna did talk with him. We don't have those communications at all, because Hunter was not one of the search terms that was used. So I said, Ms. Fagan, you cannot just rest on the search terms. I am identifying a specific, narrow, discrete entity with clear relevance to this case; you must produce all those documents, and Ms. Fagan said no. That's what prompted the initial request to the Court.

And since that time, because the Court set this conference and we wanted to make sure we've identified violations of at least three other orders. And I don't know if you want me to go into that now or just stay on this issue here, but this is one of those four orders. So not only did they comply with the Court's order to produce all materials related to the PR -- to the Detroit News and anything related, which clearly covers this PR firm.

She also didn't certify compliance with this order, and she says it was just some kind of clerical error, but it's not. It was a substantive failure to comply with that order, and she didn't certify, and the Court's order was self-executing. It's not, do we have to renew? The Court

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

Page 13

said, if you do not comply -- failure to comply will result in dismissal of this action.  It's a self-executing order, and we can identify three other violations of court orders, separate orders, besides ECF 288.

**THE COURT:**  Okay.

Ms. Fagan, can you tell me with respect to the -- so, I do believe there is some overlap here with 288, and I know that you requested -- you know, you told the Court, I'd like to file a notice of errata, you know, clerical error as to not including 288 when you listed the rest of the order.  And I will say, what you provided in terms of certification and what the vendor undertook in e-discovery practice is traditional and normal, and I, you know, think that there was a good faith effort to have them review the things.

My question, though, however, is, with respect to 288, as identified by the defense, that specifically addresses the issue of the Detroit News.  It specifically addresses all media related communications.  Plaintiff is ordered to produce any and all documents where she shared that complaint with anyone outside, any third party.  Would also cover a PR firm sharing it with the Detroit News, because we said anything media related as it relates to this case.

So there's almost a part of me that, if you file that notice of errata, are you not, then, in somewhat violation, because can you certify that that's even been done?

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 14*

**MS. FAGAN:** Thank you, your Honor. First off I wanted the opportunity just to correct the record as was presented to the Court. There was no point at which I said to Mr. Davis, no. He -- we were conferring about something separate, and when he brought this issue up, he kept saying what is your position on this? And I said, my position is what we filed with the Court. So, again, it was a separate conferral. He brought up a separate issue, and so I did not sit there and say, I flat refuse. Of course, we're doing what has not yet been done in this case, and I know that -- obviously, we were not here, but we own the record of prior counsel and discovery misconduct that the Court has identified, but we did in 14 days what has not yet been done in this case, which is a full, thorough and complete ESI production.

And so all I was saying to Mr. Davis when we were conferring on a separate issue and he put me on the spot on something else, I said, my position is that we've complied. And so I've never refused. I actually offered to confer with him in my follow-up email. I offered three different times throughout the course of this to confer on search terms, and I understand that they don't have to confer, that the Court said it's our obligation, but the -- given the breadth of the search terms that include the words "Bob," "Riley," "Olsman," "McKenzie." It's our understanding from our ESI production company that any documents to or from this PR firm or news

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

Page 15

articles, that talked about this case would have included those search terms.  Those are much broader search terms.

Now, we're happy to go back.  We're not withholding anything that we know is responsive.  And if Mr. Davis would like to confer further about search terms, I will renew my offer to confer, but it's our understanding that any searched -- any emails with this firm about this case would have included one of the really broad search terms.  If it was -- if she was sending a copy of the compliant, it would say the word "Riley."  It would say the word "Hurley," because -- and those were all search terms, which is why Mr. Davis even has those email chains in the first place, because those search terms were included.

**THE COURT:**  But you added additional search terms, did you not, and you chose not to add "Detroit News," the name of this PR firm.  And, so, then, isn't plaintiff making a conscious decision on what she's going to search for, because she could say, here's the complaint that doesn't have Riley in it, but if she knows that she said, here's the complaint and she's sending it to the Detroit News, why would Detroit News, if that's a specific order of this Court, not be in the self-selected additional terms in order for you to comply?

**MS. FAGAN:**  Thank you, your Honor.  And just to be very clear, there was never any intention to self-select out certain terms.  In fact, the search terms that we added were

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 16*

intended to be very broad.

And so to renew this, I'm happy to confer with opposing counsel, but we, in good faith went with very broad search terms for 650,000 documents.

And just to understand the breadth of these search terms, the word "Bob" is very common, right?  Every New York Times and Washington Post author that has the name "Bob," "Robert," "William," those are very common names.  Our client has a dozen clients, herself, that are named "Robert," "Bob." So the search terms were broader than narrow search terms looking just for specific individuals.

And, again, my understanding as not a tech expert, from our ESI producer, is that if she had sent somebody an email saying, here's the complaint, the complaint, having the words "Riley" -- I mean, I don't know a scenario where she would have sent somebody a complaint that didn't have one of the search terms, "Riley," "Bob," because all of the allegations were about him.  But, again, I'm not -- you know, if we could go back and confer, I'm sure there's lots of search terms that we could come up with, and we're happy to do that. What we tried to do was take their search terms and then provide even more broader search terms:  The word "boss."  The word "creepy."  The word "Emily," "Jules," anything that would capture documents.

So when we were thinking of search terms, your Honor,

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 17*

we were trying to go broader so that we didn't miss anything not already captured in defendant's search terms. That's where the good faith search terms came from. But just to be clear, there's no discovery dispute here. There's nothing we're withholding that they claim that they are entitled to. If they would like to propose, as I've offered to confer multiple times, additional search terms. We have all the documents loaded into Relativity. Everything has been captured by our ESI vendor. We're happen to go back, I just want to make the point that our additional search terms were in good faith to be broad search terms. We weren't trying to go narrow; we are trying to go broad to make sure everything was captured.

**MR. DAVIS:** Your Honor, if I may, just quickly. And, your Honor, you actually just touched on a key point that Ms. Fagan didn't address. And I think this is critical. That PR firm, she hired them. That's their agent. I mean, that wouldn't be in her own email box, but that is within her possession, custody or control. You're right, so, I -- technically, I shouldn't have to be subpoenaing him, and even for external documents, now that I think about it, because of what your Honor said.

But, more importantly -- and this is the same -- you know, and, honestly, I don't know if this is, you know, honestly, some of the same things that I'm hearing from Ms. Fagan, is what we heard from Ms. Russell before, and the

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 18*

common denominator seems to Be Ms. McKenna.  And here's the issue.  Ms. McKenna knows full well that she engaged this PR firm.  She knows that.  And she knows that the allegations in our complaint, which have to do with you communicated this, and it was unrelated to what was in the complaint.  We allege that, she responded to it, and I don't have it in front of me to see if she falsely said anything.  I'm not going there.  But the fact of the matter is, she knows that this is a critical fact in our complaint, in our counterclaims.  She spread this stuff around to a PR firm a week before the lawsuit was filed.  She knows that.

And as the Court said, search terms are the floor; they're not the ceiling.  If she knows, there is this whole tranche of documents, I engaged this PR firm to do this one discrete thing and it has everything to do with Riley.  There's nothing in there that would be nonresponsive, because all of it's about Riley.  She has an obligation to get every single one of those documents and produce them, and she knows that.

So Ms. Fagan may have not known that, her client may have not have told her, but McKenna, who is, herself, a lawyer and has had -- has heard the Court say this multiple times, knows full well that she needed to produce those materials.

And I do want to get at some point to the other three violations, which, again, are violations that can only be knowing and willful violations by Ms. McKenna.  And I do want

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 19*

to discuss those, your Honor.  There are four court violations, four different court orders, and I do think it's important to point those out.

First, on ECF 279, which was the big one, the Rule 37 motion, you ordered the production of all outstanding ESI communications, including communications with the specific named individuals.  We have received nothing from the PHPA.  I searched, there is not a single document in the production from any PHPA.com email address.  They're all marked as privileged.

This includes a sequence, you can see in the privilege log, which is, again, prefiling, she went to Brian Ramsey, who is the PHPA director who was hired in, and that's the person she complained to that Riley was engaged in all this misconduct before she filed the lawsuit.  So, again, this was not just this guy randomly coming across a lawsuit that was on the docket; this is McKenna spreading defamation.  That is not privileged in any way.  She was withholds every single one of those documents, including emails that she sent, important, RE: Bob Riley, to his personal Gmail account at like 8:00 or 9:00 at night.  There is -- in no stretch of the imagination is this privileged.  And I think it's clear that they just decided that if it has PHPA in it, or if it has Brian Ramsey's name in it, it is just going to be withheld as privileged.  There was no review.  And I can guarantee there was no review of 5000 -- I think, 3,000 or 4,000 of the 6,500 privileged log entries are

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 20*

withheld because of PHPA, so that was a categorical bar.  That clearly was categorical.

She certified in that certification that she produced all materials with B. Ramsey, specifically.  Brian Ramsey is -- was identified as B. Ramsey in the Court's order.  We didn't get a single document from Brian Ramsey, and we know from the privilege logs that there are critical, obviously relevant materials, which is what got Riley fired from the PHPA that were not produced.

Jared Smith -- this is -- this is really -- and I have an update for the Court.  It was Mr. Smith with impeccable timing today.  We identified there are four text chains on four different dates in 2024, with Jared Smith.  That's it.  We searched for his phone number.  Those are the only four that were produced.  We know -- well, I was going to say, we know that there's -- there's got to be more texts with Mr. Smith, and the Court doesn't need us to go into why, but clearly they've had a relationship for years.

We do have other materials, including Jared Smith marking up the prefiling complaint, which came through, I guess, a different search.  But his emails were not produced.  His texts, except for those four, do not appear to have been produced.  Mr. Smith's timing today -- he finally responded to his subpoena today, your Honor.  He sent -- literally 45 minutes before this conference, he sent an email to me.  It

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 21*

has one email, an email that Ms. McKenna did not produce, and every text message that he has -- he has a privilege log with a number of texts and emails, and every text, Smith is marking as privileged.

And I told him -- I emailed him already. I said, the Court's already ruled, prefiling texts are not privileged and everything, but Mr. Smith's playing games. But more importantly for purposes of today, the text that he withheld as privileged are not the same texts that Ms. McKenna did produce, so we know that McKenna is withholding texts with Jared. It may be categorically as well, But we're just not sure. So we know that there's been a violation of the Court's main order, just PHPA and just Jared Smith.

Let's go to mental health providers. That was an older order. That was the Court's ECF No. 97, and that was in October. The Court said, you must identify -- quote, identify all of her mental health and medical treaters and sign HIPAA releases.

I think it's important for the Court to understand how we found out about this, because this is -- you know, this is something we should have known about. This is how we found out. Ms. Fagan at the last conference said something, said something to the effect of, they're not a couple anymore, which I thought was odd because they just had a child a couple of months ago. So just on a hunch, I literally searched the

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 22*

Kentucky court dockets and found that there's a lawsuit between Mr. Smith and Ms. McKenna, and we got -- we got -- they're public records.  We got those records, and in those records, it identifies Mr. Smith, specifically, having a court order entered by the court, agreed to with Ms. McKenna where they're talking about this device that they're using to communicate. They're talking about they should be communicating about outside litigation which probably refers to this case via text. We've received no such texts.  We have had in those communications, Ms. McKenna disclosing another mental health treater, and Mr. Smith in an affidavit stating, oh, I would watch the baby when she would go to the treater, so she was seeing this treater individually.  And she's also making all kinds of accusations against Mr. Smith of domestic violence and all kinds of things.  I'm scared of him, things that clearly go to what Ms. McKenna knows has been an issue in this case, both from OMP and us, that Smith is largely a source of any emotional distress she's had in her life over the last several years.  Clearly relevant.

But the bigger point is, again, I don't know if Ms. Fagan was aware of this, and I would suspect she doesn't, but Ms. McKenna certainly knows that she's been seeing this therapist, Angie DeHart, and she's almost certainly seeing a second therapist, or maybe she's seeing the same therapist individually and as a couples therapist.  But, regardless, we

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 23*

have not received a HIPAA release; we have not received a disclosure.  Clear violation of the Court's order.  And the Court's had to revisit this HIPAA thing, I think four or five times already, so there's no ambiguity.

And then, No. 3, the Court ordered in ECF 261 that she had to produce all communications with prior counsel.  That included Besser, Mogill and Prescott.  Now, she did produce some materials with Prescott and Mogill, I do not dispute that, but if you look at her privilege log, she is withholding about 24 emails with Prescott and Mogill, and the Court had clearly ordered those to be produced and they're withheld on the privilege log, so that's another violation.

And then we've already talked about ECF 288.  So we have four independent court orders --

**THE COURT:**  Mr. Davis, hold on one second.  I have a question.

With respect to the privilege log as to prior counsel --

**MR. DAVIS:**  Yes.

**THE COURT:**  -- is there a description of the document such that there could be communications unrelated to this case?

**MR. DAVIS:**  No.  The key one, the most important one, your Honor -- and I put this in the email, and to dig this out of the 6553 pages will be difficult, but I can find it.  But the key one is in the May or June time frame.  It is an email

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 24*

to Prescott and Mogill, and the attachments are -- one of them says letter to PHPA, and then one says OMP complaint and one says Riley complaint.  So from -- just from the description in the privilege log, it appears that this was her emailing Prescott and Mogill about a complaint that maybe she was going to make to the PHPA at that time, which we -- we're still not sure when it was.  We know she emailed Ramsey in August, but it looks like she may have been preparing to email them earlier than that, and we just don't know because we don't have the production.  But, no, it is clearly not related to anything other than this case; it's clearly related to this case.  And maybe this was caught up in the, anything that has PHPA.com in It is going to be filtered.  That may be the case, but regardless, it is still clearly not privileged as to PHPA.  She's talking to her own lawyers about filing a complaint against Bob Riley; she's not giving legal advice to the PHPA.  There is no basis for that to be withheld, and it clearly violates two orders, actually, but, yes, your Honor.  So that's the answer, clearly relates to this case.

**THE COURT:**  Okay.

I want to turn briefly to OMP, because I think you have addition to this list of things that you believe to be violations of the Court's orders or deficiencies in the production that has now occurred.  So I'm not sure if Ms. Taylor or Ms. Gordon is speaking on behalf of OMP today,

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 25*

but I want to turn to you if there are additions that you'd like to add to the list that Mr. Davis just provided to the Court.

**MS. GORDON:** Thank you, your Honor. I'll start off. Deborah Gordon.

We concur, obviously, as you know, from our communications with your office, in everything Mr. Davis has just discussed, which adversely affects us as well. I'm not going to spend time on the treaters; I think he's covered that extremely well.

You know, I want to point out to the Court from regard to the OMP point of view, this entire case started out against my client as a fraud. Ms. McKenna planned to leave had already made arrangements to leave the Olsman firm. We have extensive documentation supporting that, there's more they have not yet produced. She was ready to go and launch her brand new firm. She sent, basically, an extortion letter to my clients telling them that if they did not reach terms with her -- she was leaving, anyway, but basically threatening them. So the case starts out as a fraud. The basis for the case is a lie and it's an attempt to extort money.

So we move on from there. She's alleged zero -- zero sexual harassment that occurred to her while she worked at OMP. Every one of his claims is utterly and completely frivolous.

So her big -- at this point, her -- her, I guess,

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 26*

main point would be retaliation on the so-called termination.

Okay.  Obviously, as we've discussed before, Judge, from a defendant's point of view, in a plaintiff's case, the key element is going to be damages in a case like this.  We have been seeking the most extraordinarily basic information as to Ms. McKenna's alleged damages from my client's allegedly retaliating against her since this case began.

As of today's date, Ms. McKenna, Judge, has still not provided a single tax return.

Okay.  Again, I practiced employment law for 40 years.  The most basic document to obtain from any plaintiff claiming any kind of economic loss is a tax return.  Then you go from there.  Then you see what other sources of income may have existed that may not be included on that tax return.  There is zero reason to not turn over a tax return.  It's intentionally being withheld.  It was filed.  We know the tax returns were filed for '24 and '25.  Her claim for economic losses should be dismissed today based upon her failure to turn over tax returns.

I don't want her given any more time.  We're all completely done with them, and there is literally no reason that I'm sitting here asking you and talking to you about tax returns.

No. 2 on economic damages, the Court is well aware that PHPA, the hockey client, is a very large part of this

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 27*

case.  And when she came to the Olsman firm, she was desperate to keep the PHPA client; they allowed her to do so, and she remains with the PHPA client, and she's earning money, Judge, from the PHPA client.

Now, Mr. Davis has already thoroughly discussed with you the PHPA records we have.  My issue is slightly different, your Honor.  We have zero information from her on her earnings, her time spent from PHPA.  Okay.  At this point, this Court has no alternative but to strike her request for economic damages. They have blatantly ignored this Court's orders to produce these most basic of basic documents.

So at this point I see no path for them to move forward.  We do not have the basic information to determine what this plaintiff has earned and where she's earned it, so the discussion needs to end at exactly that point.

Let me go back to my notes.

Elizabeth, are you able to join for a second?

She may not be.

Okay.  The other thing, your Honor, is that, you know, you gave them additional time to, very generously, to update their discovery to June 5th, which, you know, was an amazing move on your part to try to accommodate new counsel. Judge, we received 47,000 pages of documents -- okay? -- that have not been reviewed and gone over by counsel.  They clearly sent us this absurd document dump, which we can easily see is a

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 28*

document dump, because there is many, many, many documents in here, hundreds, that have nothing to do with this case.  Some are simply advertisements or notices to the plaintiff about, you know, orders she's placed, you know, with retail establishments.  So they have -- they're not in compliance. They have not signed off that they are complying on what they have produced to us, that they have met their court-ordered duties, their court-ruled duties to go through every one of those documents.  Instead, they left it all to us with four -- I cannot tell you how much time my office has now had to spend, just like Mr. Davis's office has had.  I doubt Ms. Fagan has gone through these documents and had to spend her time.  It's irrelevant to me, but our office has spent weeks -- weeks going through these documents to end up at the same place we always start, with Ms. McKenna, which is that she unwilling to produce certain things and that she is just not going to do it.

Request to produce 25, plaintiff takes the position there are no documents that exist concerning the creation of the Fox-McKenna website.  This is -- cannot be true.  Plaintiff produced several communications with her law partner, Amanda Fox Perry, indicating the plaintiff created the website herself.

Just to remind you -- I know you know this, Judge -- this all gets back to the fact that this lawsuit was set up and ready to launch at the time she tried to extort money from my

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 29*

client on the guise -- on the guise that she was going to be forced to leave because she was suing Riley.

So as of today's date, they have not produced -- again, how basic can you get? -- give us the documents setting up your law firm. I mean, this goes back, you know, over a year now, and we have nothing about setting up the lawsuit that's request to produce No. 25, request to produce 7, 9, 25, 31, 34 and 35. Plaintiff did not supplement these discovery requests in violation of this Court's order, appears to rely on improper objections interposed by plaintiff's former counsel that the Court has since overruled.

As to whether plaintiff continues to withhold documents on the basis of objections, plaintiff appears to have reasserted her prior counsel's statement that the Court previously held was insufficient that plaintiff reserves the right to supplement these responses as discovery is ongoing. That's no longer true. That ship, you know, left the port a very, very long time ago.

So plaintiff has clearly and repeatedly violated the Court's orders to provide discovery. I mean, this goes so far -- I mean, it's really -- it's an insult to the Court and to everybody on this call that -- that they have not produced these most very, very, very basic documents, and they come in front of you now today seeking yet additional leave of the Court for various things.

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 30*

So that, in a nutshell, is the plaintiff's position, but we want this economic damage claim stricken as of today's date, or as soon as the Court sees fit to do so.

MS. TAYLOR:  Just one more piece, your Honor.  One more -- we had an Interrogatory with regard to Ms. McKenna's earnings, her salary and her annual earnings from her new law firm.  She also refused to provide that information in response to interrogatory 8.  Instead, she tells us information like she paid no federal tax and the amount of her federal tax refund, which, you know, tells us nothing about her economic damages, and I think is clear obstruction.

That's all I have.

MR. DAVIS:  And, your Honor, if I could just -- Ms. Gordon did raise something.  I think this is actually important when she says that this was a document dump.  And it does concern me that it's a document dump intended to conceal certain things.  And I will give the example that I think is the most that goes back to Jared Smith texts.

So it appears -- for instance, so Emily, because of Emily Peacock in the case, the word "Emily" was used as a search term.  So I have and have had to review now full text chains, I mean, like, text chains going over a year, hundreds and thousands of text, with Emily the dog walker.  There's an Emily whose last name -- it's another Emily who is a lawyer who's completely unrelated to this.  And then there's Emily

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

Page 31

Peacock and then there's another Emily.  So there's an Emily Thomas, an Emily Ruiz, Emily the dog walker and then Emily Peacock.  Somehow when we get -- because maybe one of these -- one of these -- one of -- one with Emily the dog walker there's a reference to Bob.  We have months' worth of texts because of one hit.

But when it comes to Jared Smith, we have four individual chains.  We don't have every text with Jared Smith. So whatever they did, they were producing a bunch of useless immaterial about, you know, some unrelated Emily, but when it comes to Jared Smith, we have four days' worth of texts.  It's very hard to square that, and it's very hard to understand that as being anything other than an intentional effort to not give us the Jared Smith text, or conceivably she deleted the Jared Smith texts because they were broken up.  I don't know.  But, regardless, we do not have Jared Smith's texts, and he is a key witness, not just because of the emotional distress issue, but because the evidence shows -- and another -- I will give another example.  There's an email that we have -- one of the few emails that we do have.  It wasn't to Jared, it was McKenna to herself, so it must have come through.  And she is basically writing the email because he had upset her about something in 2024.  And in this email she specifically is talking about the fact that you kind of pushed me to do this against Bob.  So we know that Jared Smith from McKenna's own words was in some

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 32*

sense an instigator.  We know he assisted her in drafting the lawsuit, but somehow we don't have any texts with him except for four random days in 2024.  That's it.  And that makes zero sense.  So that, again, goes to the violations here, that how can we have a thousand texts from Emily the dog walker, and we have four days' worth of texts from Jared.  It makes no sense.

**THE COURT:**  All right.  Thank you, Mr. Davis.

Anything further from the defendants with respect to any of the deficiencies based on the review of the production.

**MS. HARDY:**  I'd just like to emphasize, your Honor, that we've only had this production since June 5, and it's mammoth.  And as counsel has indicated, there's all kinds of immaterial material in there, so we need more time before we can comprehensively identify everything that's missing and all the different issues we have with noncompliance.  But we think we put forth today a significant amount of examples sufficient to ring the bell with respect to the Court's prior order, that failure to comply will result in dismissal.

**THE COURT:**  Thank you, Ms. Hardy.

**MS. GORDON:**  Yes, your honor.  This is a clear -- I'm just repeating but, if you don't mind.  I mean, you issued a very specific order.  You gave them a last chance.  That last chance was not taken advantage of, and you've heard this morning and from what we've sent you to the court, you know, what has actual occurred here, and, again, how the defendants

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 33*

have been harmed by this.

So, I mean, the fact that Liz Hardy is even suggesting that yet she needs more time, shows you where we're at on this, and the case needs to be dismissed.

**THE COURT:**  Thank you, Ms. Gordon.

Ms. Fagan, do you have a response?

**MS. FAGAN:**  Thank you, your Honor.

First, I don't think this is the appropriate forum to argue the merits of the case, but because Ms. Gordon chose to go there, I do want to point out, your Honor, that in just the month or so that I've been in the case, we've had the opportunity to take three depositions, and Ms. Gordon's clients have admitted under oath that Ms. McKenna disclosed allegations against Bob Riley as early as August of 2021, to Donna McKenzie as early as June of 2022 against Emily Peacock.  So the allegation from Ms. Gordon that our client made this up as she was leaving OMP, Ms. Gordon was in the room, or her co-counsel was in the room for those depositions, so that is just flat --

**MS. GORDON:**  Yeah, and I completely disagree with your statement, but the record will speak for itself.  You don't need to tell the judge what's in a deposition transcript.

**THE COURT:**  Go ahead, Ms. Fagan.

**MS. FAGAN:**  Thank you, your Honor.

And this was actually a repeated problem throughout the depositions that we'll later bring to the Court.  I have

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 34*

over a hundred instances of Ms. Gordon interrupting me and coaching her client during the depositions.  It's all on video.  But this was a constant problem, me the even being able to finish a sentence.

Also, Ms. Gordon was in the room when her client, Jules Olsman, was being deposed, and -- on video next to him, where he used a "Godfather" quote.  He said, "To take a phrase from Hollywood, you don't make your sister a widow," when he was describing why he had such a problem with our client threatening a lawsuit against Bob Riley.  And he started this sentence by saying, "Let me give you an example.  Say you had a really good referral source out there in Portland" -- and you can see Ms. Gordon in the video rolling her eyes.  She reaches over and touches his leg to get him to stop talking, which he did --

**MS. GORDON:**  Okay.  Judge, this has nothing to do with the issues at hand.

**THE COURT:**  All right.  I do want to address the issues.

I understand that the parties each have their own view of the merits of this case.  Obviously, we wouldn't be here if the parties could agree factually as to how everything went down.  What I'd like to focus on right now is if plaintiff has a response to what has been detailed by the defense in terms of the Court's most recent order in terms of discovery.

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

Page 35

I think that as has been noted, the Court was very clear that discovery in this case has been an issue since the beginning. And Rule 37 provides an opportunity for defense to move for this case to be dismissed as a sanction. I believe that to be a drastic sanction, and I gave Ms. McKenna a final opportunity to comply with her discovery obligations. There has been order after order in this case in which the Court has given Ms. McKenna opportunities to produce documents. That Ms. McKenna is producing 46-, 48,000 pages and potentially withholding more two months after the discovery deadline, tells me that these are documents that should have been produced back in November, or close to a year and a half ago.

And so I understand, Ms. Fagan, that you had a short amount of time in which to do this, but my question to you is, if I've given plaintiff a final opportunity to comply so that she can continue her lawsuit and that we can get to the merits of her claims, why should it not be dismissed for all the reasons that the defense has stated?

**MS. FAGAN:** I appreciate that, your Honor, and I apologize for going to the merits. I just couldn't let Ms. Gordon's statements go unaddressed on the record, and so I appreciate that. And if you could -- I feel like I sat and listened to four different people from defense counsel talk without interrupting, and if you could ask Ms. Gordon to please not just jump in at every --

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

Pretrial Conference
Friday/June 12, 2026

Page 36

**THE COURT:** You have the floor. You absolutely have the floor.

**MS. FAGAN:** Thank you, your Honor.

So, I do want to open with just saying that we -- you know, as you indicated we were not here, but we own the record of -- of discovery misconduct as plaintiff's counsel. And so we took the Court's May 22nd and June 1st orders exactly as seriously as the Court intended. We had 14 days to do what had not yet been done in this case, a comprehensive ESI search under the party's own ESI protocols, retrieval of physical documents and items and diligent good-faith compliance that did put 47,595 pages of discovery in defendant's hand in 14 days or less.

To be clear, we actually did a rolling production and did not wait until June 5th. All documents were produced by June 4th, and we actually began that production and we did three separate productions, again, in good faith to show that we were not just going to wait until the very end for a production.

Defendant's letters list 11 items they say lead up to dismissal, and ultimately those come down to two things that we do not believe the discovery rules require, especially when a drastic remedy such as dismissal are on the agenda.

No. 1 is they're asking us to prove the nonexistence of documents. One very good example, your Honor, is their

24-12347; Elyse McKenna v. Robert F. Riley, et al.

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 37*

complaints that there are no iMessages with Mr. Smith. Well, it's our understanding that Mr. Smith has an Android phone. So, I'm not a tech person, but when one person has an Android phone, you don't have iMessages, because iMessage only works on an Apple to Apple device.

They raised some co-parenting apps like Family Share, or something like that. They discussed using those apps but never used them, so those documents don't exist. We can't prove the nonexistence of documents.

THE COURT: Do the text message exist?

MS. FAGAN: Yes. And we, again --

THE COURT: More than four days of text messages exist and they weren't produced?

MS. FAGAN: They were produced. That's what he's saying is they were produced and they were --

THE COURT: So, is your representation to the Court in certifying that you fully complied, that there are only four days of text messages with Mr. Smith?

MS. FAGAN: No, but we produced the text messages that were responsive --

THE COURT: Okay.

MS. FAGAN: -- to this. They broke up, your Honor, and have had fights, as Mr. Davis has -- has put on this record. And at some point, again, based on our ESI searching, they did stop talking about things like this because they were

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 38*

in a -- they were talking about -- they were either broken up and then they had a child together and were in a custody dispute. So probably sharing about -- I mean, again, I can't prove the nonexistence. What I can tell you, your Honor, is this is what compliance looked like.

You gave us those orders on May 22nd, the Friday before Memorial Day weekend. The next day, Saturday, May 23, we held a multi-hour Zoom call with Complete Legal, the ESI vendor we hired. They began collecting over Memorial Day weekend. They took the forensic image of Ms. McKenna's prior phone. They pulled full data from her computers, her iPad, her current phone, her iCloud accounts. They collected sources holding more than 650,000 documents.

McKenna's mom drove her box of documents to Kentucky, where she now lives. One of our paralegals flew to Kentucky, and local counsel, Karen Truszkowski, met her there. They spent two days in a hotel room going through boxes of Ms. McKenna's journals and books of poetry page by page. And there are certain poems, for example, that didn't hit any search terms that our client disclosed, yeah, this poem is about Bob, so we produced it.

We arranged for photographing and production of physical gifts Riley had given her. We sent a courier to our -- prior counsel's office in Washington, D.C. to retrieve those. Thirteen people were dedicated to this work for the 14

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 39*

days that the Court gave us:  Four from Complete Legal, the three counsel of record.  We also engaged two contract attorneys.  We brought on three of our paralegals and a legal assistant working literally around the clock.  So are there documents in this production that are not responsive?  Probably.  Was it an unintentional document dump?  Absolutely.  It was -- what we went into this with was, there has been discovery misconduct in this case that us as counsel have to own, so we will err on the side of giving them everything that we can.

Now, in the 13 people on this and the broad search terms, like the names -- the word "Bill," for example, comes up any time someone is sent a bill.  There was over half a million documents that had to be reviewed by 13 people.  On search terms -- we discussed this, but we adopted all of defendant's search terms.  We added more with the intention of being broad.  Now, I know we discussed this earlier, your Honor, but just to be clear, the goal was to broaden search terms to make sure that something was not captured.  It's hard to imagine there were documents -- again, this is where we're being asked to prove the nonexistence -- but that there were documents that are responsive that didn't say the word "Bob," "Riley," "boss."  Like, all the search terms are incredibly broad.  Okay?  So I can -- I offered to confer three times on search terms, and the Court said they didn't have to, and I respect that, but we were

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 40*

trying to be as broad as possible with search terms to produce anything responsive. And when time started to run out, the options were withhold or produce, and our default was to produce. Because, again, we had 14 days, and really, seven days, because it took about a week to collect -- for Complete Legal to collect all these documents. So the result, we served three productions: May 29th, much earlier than we were ordered to by the Court, June 1st and June 4th, totaling, as Mr. Davis has said, 47,000 pages. We filed certifications with the Court that we complied with discovery.

And so to be clear, complying -- what they may be identifying -- there was the one issue, which is we're having to prove the nonexistence of documents; and No. 2, what they're identifying is potential imperfections. And to the extent that there are imperfections, what we're giving the Court is the extraordinarily diligent inquiry that was done and the very good-faith compliance that was done and --

**THE COURT:** But, Ms. Fagan, here's my question to you with respect to the imperfection, because I don't doubt that you undertook a good-faith inquiry in doing this ESI, but you also meet your client where you found her, and that should have been done in the beginning of this case such that after the close of discovery, when I give you an opportunity to say this is your final chance, that means everything. That doesn't mean everything but, oops I forgot, because there's a continuing

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

Page 41

obligation.  And, yes, you can do rolling productions, and that traditionally happens when you start discovery a year and a half ago and discovery's still open and you have time to continue to supplement.  But when the Court says, this is it; you need to produce everything, do you not, then, have an obligation to go through the PHPA documents and produce the ones that are relevant and not withhold them?  Do you not have an obligation to go through the text messages with Jared Smith, which I understand that they're in a custody dispute now, but this case has been going on for quite some time, and I know from the record in this case, that Ms. McKenna is a prolific texter.  So to say that there's only four days of text messages with a person that she's dated for years, I find very difficult, just based on the record in this case, the number of text messages that we have had to review on other issues that have come up prior in discovery.

So if you are in the situation in which the Court is giving you a final opportunity for compliance, how is it that you can now come to the Court and say, well, yeah, there may be some things missing, but those are just imperfections in the discovery production?

MS. FAGAN:  Thank you, your Honor.

And if I could continue to have the opportunity, because defense raised a lot of issues and I'm trying to address those.

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 42*

THE COURT:  Okay.

MS. FAGAN:  So, again, I'm not -- as I sit here today, I am not aware of any documents that are responsive that were withheld.  Again, that's the place where I'm saying that we're being asked to prove the nonexistence of documents.  What I know is that we engaged an independent ESI vendor that Ms. McKenna was not in charge of approving all of the discovery that went out.  We had multiple people, we contracted additional attorneys, we used search terms, we understood.

So with respect, for example, to the PHPA documents -- and I appreciate your Honor bringing that up -- I conferred with Ms. Hardy about this on a phone call several weeks ago as we were starting this production, because our client is also an attorney, and PHPA is a current client, and in this particular instance, her client not only didn't give her permission to produce any documents, her client has specifically told her, "I prohibit you from producing any communication.  You are my attorney.  I prohibit you from producing any communications with me."  Or he has threatened, potentially -- he has raised the possibility of her then being in trouble for doing that.  So I raised this issue with Ms. Hardy --

THE COURT:  Are these communication privileged?

MS. HARDY:  No.

MS. FAGAN:  From the client's perspective, they

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 43*

are --

Your Honor, can we have counsel stop continually interrupting?

THE COURT:   Go.

MS. FAGAN:   Thank you.

THE COURT:   Go ahead.

MS. FAGAN:   So from the client's perspective they are.  He is a current client of hers, and so she was between this rock and a hard place saying, my client is explicitly saying to me I won't approve any redactions, because I absolutely prohibit you from sharing my communication.  And so the -- I conferred with Ms. Hardy about this, and what we chose to do was disclose everything on the privilege log so we could get the Court's guidance on specific documents so --

THE COURT:   You didn't come to the Court for guidance, though, did you?  Like, this is coming up now.  This is coming up now that the defense has raised that there's deficiencies in the production.  If this became an issue and you discussed it with Ms. Hardy and said, your Honor, we know that to comply with your order, we would have to produce these documents, and in order to produce these documents, the client is prohibiting us from doing so, so we would need a Court order requiring us to produce those documents.

You didn't raise this issue with us on June 1st.  You didn't raise this issue with us on June 2nd.  It's June 12th,

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 44*

after the production is done, and only before the Court because you guys are fighting over the discrepancies.  So I find it hard to believe that these are documents that, to me you're admitting on the record, should have been produced and are responsive to this Court's order, and that it is plaintiff making a decision that she's not going to produce them despite the orders of this Court.

**MS. FAGAN:**  Thank you, your Honor.

I conferred with -- I didn't -- I conferred with Ms. Hardy on it, and what she says was, those can be -- if you -- if you think they're privileged, put it on the privilege log.  And to be clear, she said that she believed there were some that would not be privileged.  But from our client's perspective -- and a client telling her, under no circumstances can you give my communications, and the client there is the holder of that privilege, our client, as an attorney -- and I didn't believe I had to bring it to the Court because Ms. Hardy and I conferred about it, and I agreed to put them on the privilege log, and so that's why we --

**THE COURT:**  But here's the problem I have with that response.  Your client determined that she wasn't going to produce documents because there was someone who said, don't give up those documents.  Your client is an attorney.  Your client knows what attorney-client privilege is.  Your client knows what documents with her client would be considered

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 45*

privileged and what would be not.  So what you're telling me is, your client made a conscious choice not to follow the orders of this Court.

**MS. FAGAN:**  That's not what I'm representing, your Honor.  What I'm representing is she had a client telling her, that in his view they were -- and he is the holder of that privilege --

**THE COURT:**  So she chose to follow the orders of that client over the orders of this Court?

**MS. FAGAN:**  That's not how we would characterize it, your Honor.  How we would characterize it, she has an obligation as an attorney, and that we disclosed everything so that if there were certain, exactly as defendant is raising, if there are certain individual documents that they would like to raise that she could seek cover from the Court, saying, yes, I've reviewed this in-camera; this has to be produced, so that she could protect that relationship with her client, who is telling her, as an attorney, that she does not have the right to waive what he believes is privilege on these issues.

This is a sticky and complicated issue, your Honor, and so I just want to acknowledge that that was -- and, you're right, we didn't -- I didn't think to bring it to the Court. We were, as I indicated, in a very significant rush to do 10 months of discovery in 14 days.  And what our goal was, was don't withhold anything that we can't justify withholding.

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

Pretrial Conference
Friday/June 12, 2026

Page 46

Disclose everything -- transparency -- so that, I mean, honestly, so that defendants could raise the issues they're raising, because that was the goal was transparency and production because of the discovery issues in the past, your Honor.

And, so, am I saying that there are imperfections in the discovery? I don't know as I sit here today. I'm not aware of any documents that we've withheld that we have to give. Defendants have certainly raised issues. Some of those issues, again, are us trying to prove the nonexistence of iMessages when one of the parties had an Android phone.

And, so, we are certainly willing and able to work through the places where they're saying this is a specific document that we believe that we should have. But, your Honor, I'm just asking the Court to understand what we were asked to do from the court orders was to engage in discovery, and discovery is not a perfect, it is a good-faith, diligent inquiry, which we did in spades in this case in the 14 days to do that.

**THE COURT:** The Court didn't give you 14 days to do that. And I understand you're saying you personally had 14 days. Ms. McKenna filed this case of 2024. She's had two years to comply with her discovery obligations, so I want to be clear about that. I don't want that we are making a record that Ms. McKenna only got 14 days to produce discovery in this

24-12347; Elyse McKenna v. Robert F. Riley, et al.

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 47*

case, and, therefore, she did the best that she could. Ms. McKenna got 14 days to finally comply with orders that she continually violated, and discovery obligations that she continually violated for the 18 months in which this case was pending.

      **MS. FAGAN:**  Fair, your Honor.  I just -- and in terms of demonstration of our good faith and diligence, I'm just saying the reality is, we had 14 days, we, as in my co-counsel and I.

      **THE COURT:**  Understood.

      **MS. FAGAN:**  And the point of that on the record, your Honor, and I appreciate the distinction is that we're demonstrating that we did what the discovery rules require, which is good-faith compliance, not perfection, but good-faith compliance.  And so any allegations that we intentionally gave them documents that -- that were not -- that were not -- that were intentionally a document dump.  That's just false.  And there was -- I mean, everyone in our team learned that there's a Robert Harper who's a, like, law columnist that she subscribes to, so they would just do entire searches for this name and remove everything, because he's not -- he's not relevant.  But there is a point at which we were saying, hey, if in doubt, we give it to them, because that's what the court orders requires, and so good-faith compliance.

      And, again, the defendants have not identified

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

Page 48

prejudice.  They -- in fact, they are able to raise new issues because of what we produced.  They're able to potentially serve new subpoenas because of what was produced.  And, so, to the extent that there is, you know, an imperfection or something that's actually missing.  Again, as I sit here today, I'm not aware of any documents that were intentionally withheld that are responsive, that's why we were able to certify compliance with the Court's order.

But, ultimately, what the FRCP 26 And how we Interpreted your orders in the context of that was, you got to do everything, no intentional misconduct, no bad-faith, no willful withholding and a diligent inquiry under the ESI protocol expanding the search terms beyond what defendants have asked for, and that's what we have done, your Honor, and we ask you to not dismiss this case, because there is -- you know, the discovery record of the past, you were here, your Honor, not me.  I don't dispute it; I own it.  What I can attest to is the good-faith and diligent inquiry that we performed that 13 people were dedicated to for two weeks to make sure the defendants got everything that they're entitled to.

          .    THE COURT:  Okay.

               MS. HARDY:  Your Honor, may I please speak just real briefly to the PHPA conversation I had with Ms. Fagan?

               THE COURT:  Yes.

               MS. HARDY:  Okay.  She's referenced me numerous

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 49*

times.  She didn't directly say that I authorized what they did, but she seems to be alluding to that.  I want to correct that impression because it's not accurate.

I did have a long conversation with her, and I made very clear that if you have privileged documents that meet the legal definition of privilege, as in, you know, articulated in the Upjohn case by the United States Supreme Court, those, of course, can go on a privilege log.  You're a lawyer.  Your client's a lawyer.  You understand what fits in that category, what -- versus what fits in the category of a business-sensitive document that the PHPA does not want out there because there is a counterclaim by defendant Riley that directly concerns the loss of the PHPA client.  Well, my client's relationship with the PHPA as a client related to the interference and defamation by Ms. McKenna.

So that -- the PHPA discussion is a perfect example of Ms. Fagan acknowledging and intentional withholding by herself and her client of documents they were compelled to produce by the Court's order.  They very clearly have withheld non-privileged documents and created their own definition of privilege to justify putting all those documents on the privilege log, and they are not -- they do not fit that definition of privilege.  That is --

**MR. DAVIS:**  And, your Honor, I wanted -- because I was asked -- if I may, your Honor, very briefly.  I was --

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

Page 50

suddenly we're trying to prove the nonexistence of documents or iMessages.  I never said the word "iMessage."  The phone number that we have for Jared Smith, there are four texts.  And what I think Ms. Fagan actually just let slip what happened here, and it's very interesting.  She says, well, we went through Jared Smith's and we produced the responsive ones.

So how is it we got, you know, everything from Emily the dog walker, but they curated the ones from Jared Smith.  And then what we from Jared Smith today -- like I said, great timing by Mr. Smith -- the text messages that he's withholding as privilege, do not line up with the four text messages that she produced.  There is -- there is no dispute, I think -- and we can provide all this to the Court, of course -- there's no dispute that there's an inconsistency between what's being withheld and produced.  But, more to the point, there is more than just -- I don't even know how she would have curated this down to four different texts, because I don't even believe all four of those texts even mentioned Riley, but it was curated.  Jared Smith had documents intentionally withheld, whereas Emily the dog walker, that was all delivered to us.

And one final thing, your Honor, just to -- you know, not to be blunt, but what we've just heard today is basically we have an Article 3 judge who issued a court order to an attorney, produce or your case will be dismissed, and she just decided, I'm going to listen to my client who allegedly told me

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 51*

not to produce any material in this lawsuit, and I don't really care if it's privileged or not.  And she decided to follow that person instead of an Article 3 judge's order.  That should be all the Court needs to hear.  This case really should Be dismissed based on that admission on this record, alone.

And we have been highly prejudiced.  I have -- we have an associate who's having to go through 47,000 documents to see if there's any nuggets in there that are relevant because we had a deposition coming up in a few weeks, and the Court gave us an additional month, thankfully, for summary judgment, but then we got 47,000 documents.

The case law is very clear on prejudices.  I can't imagine more prejudice than having to go a year and a half without getting documents, and then the last month we're still fighting over whether we can even subpoena this place that we shouldn't have had -- you know, we shouldn't be waiting for documents for a year and a half.  I shouldn't have to be subpoenaing this company now or asking for leave or getting into a meet and confer about something I should have been able to subpoena a year and a half ago.  We have been highly prejudiced, your Honor, and we really think it is time to dismiss this case.  Enough is enough.

**THE COURT:**  Thank you.

Ms. Gordon, you had your hand up.

**MS. GORDON:**  I was just going to add, your Honor,

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 52*

plaintiff counsel did not address this.  This is with regard to PHPA and, you know, the precious privileged documents.  There is no way in the world that her remuneration from PHPA, her bills and her time spent, there's no possible way that's privileged.  That was a concerted decision by McKenna.  She is not going to give us information about her income, nor did counsel mention tax returns in all this hustle-bustle.

I mean, this is just innately dishonest.  Counsel hasn't offered a single answer to this Court's question about why they have not complied with the order.  You know, I don't want to keep repeating myself.  The Judge has already said this very well, this case goes way, way back, and here we still are, so the case must be dismissed.

**THE COURT:**  Okay.  Thank you, Ms. Gordon.

Here's what I'm going to ask of the parties.  I know that you've submitted letters to the Court as a part of the Court's case management guidelines with summaries with respect to having a discovery conference.  Those documents are not physically a part of the record, so I am going to give the defense -- I'll give you one week until June 19th.  I'm going to ask that you file on the record any and all deficiencies that you have noted from your productions.

Ms. Fagan, I'm going to give you until June 26th to respond.  I think that you've noted that you are not aware of any document that has not been produced that as being withheld

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 53*

that should not be produced.  I think you said you're not aware of any documents that are responsive that are being withheld, so to the extent that you'd like to respond to these.  I mean, obviously, you've already written us letters, but I do need for you to make a formal record in this case.

And so I will give the defense until June 19th.  I will give plaintiff until June 26th to respond, and the Court will issue a ruling one way or the other with respect to dismissal of this action after having an opportunity to review those filings.

**MS. FAGAN:**  Thank you, your Honor.

**MR. DAVIS:**  Thank you, your Honor.

**MS. FAGAN:**  If I may ask for the Court's guidance for something that our client can take back to her client, because, again, the -- I'm not accusing defense of having been dishonest in any way.  I don't appreciate the accusations that I'm being dishonest.  I am -- you know, we're dealing with a client who has a client saying, no --

**THE COURT:**  Let me say this:  Your client has a court order.  She can choose to show that to her client or not.  I don't owe her client anything.  She owes a duty of candor to this Court to follow the orders of this Court.  So if she chooses she'd like to follow the orders of her client, as opposed to the orders of this Court, she can deal with the repercussions of that choice.

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 54*

She has been ordered to produce the documents.  I'm not creating anything for her to justify anything for some client.  She is an attorney.  She knows what attorney-client privilege is.  She can have that conversation with her client, but it is not my job to be involved in her discussions with her client.  She has the order of this Court; she can comply or she cannot.

**MS. FAGAN:**  Thank you, your Honor.

**MS. GORDON:**  May I, your Honor?

**THE COURT:**  Yes.

**MS. GORDON:**  Just based on the discussion, I want to be sure that we're not going to be getting additional documents between now and the date our filings to the Court are going be made to try to find a way out of this on their end.  I mean, they've been given the opportunity -- June 5 was the cutoff -- I don't expect to get any additional documents from them to now, again, once more, try to bolster whatever they think their arguments are.  So I just want to put that on the record:  I don't expect to get any new documents.  The date has come and gone.  That's OMP's position.

**THE COURT:**  Okay.

**MS. GORDON:**  The record is what it is.

**THE COURT:**  Your position is noted for the record.

**MS. HARDY:**  And the Riley parties agree with that.  We've incurred such immense expense getting through this

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 55*

discovery.  I don't think we should be obligated to review any more, to receive any more.  We should deal with what we have not received and have those addressed in terms of the Court's orders.

**THE COURT:**  Your position is noted for the record.

**MS. FAGAN:**  Thank you, your Honor.

So just so I understand, so with respect to, for example, the PHPA documents, so is it already a decision that was in the past, because they're telling me to not produce documents, so if our client does go through and -- I mean, I guess I'm confused about what we're supposed to do, then, with the PHPA documents, because they both just indicated they don't want any cure.  The PHPA documents are the only ones I'm aware of that -- again, our client was in a -- between a rock and hard place.  I identify the Court gave an order.  I respect the Court's position.  I'm just asking for some clarity on -- so their position is that they don't want any new documents.  Is the Court's position that we should not produce any new documents?

**THE COURT:**  If necessary, I'll order production of those documents upon making a decision on the record that's put before the Court.

**MS. GORDON:**  Okay.  OMP does not -- I mean, again this is more excuses.  OMP's position is the date came and went.  The Court generously gave them a date --

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 56*

**THE COURT:**  I understand your position, Ms. Gordon. It's noted for the record.

**MS. GORDON:**  I appreciate it.

**MS. HARDY:**  I'd like to note one additional thing for the record with respect to the Riley parties.

We do have a counterclaim, and that -- the PHPA documents are very germane to the counterclaim.  Right now we will -- we'd like to await the Court's ruling of dismissal of plaintiff's case, and then at that point in time, we could raise with the Court whether or not -- I don't know if we can resolve the counterclaim with plaintiff.  If we can't resolve the counterclaim with plaintiff, then at that point in time we would like to be able to identify what we need to advance that counterclaim.

**THE COURT:**  We will address those documents if necessary upon ruling of the Court.

**MS. HARDY:**  Thank you?

**MS. FAGAN:**  Thank you, your Honor.

**THE COURT:**  Thank you.

Everyone have a good weekend.

(At 12:23 p.m., proceedings adjourned.)

- - -

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*

*Pretrial Conference*
*Friday/June 12, 2026*

*Page 57*

# C E R T I F I C A T I O N

I certify that the foregoing is a correct transcription of the record of proceedings in the above-entitled matter.


s/ Timothy M. Floury, CSR-5780                    6/12/2026
Timothy M. Floury, CSR-5780                       Date
Official Court Reporter

-   -   -

*24-12347; Elyse McKenna v. Robert F. Riley, et al.*