## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ELYSE McKENNA, an individual,

               Plaintiff/Counterclaim
Defendant,

     v.

ROBERT F. RILEY, an individual; RILEY
& HURLEY, P.C., a Michigan corporation;
and OLSMAN, MACKENZIE, PEACOCK
& WALLACE, PC, a Michigan corporation,

         Defendants.

ROBERT F. RILEY and RILEY &
HURLEY, P.C.,

         Counterclaim Plaintiffs,

     v.

ELYSE McKENNA,

         Counterclaim Defendant.

Case No.: 2:24-cv-12347-BRM-EAS

BRIEF IN SUPPORT OF
COUNTERCLAIM DEFENDANT
ELYSE McKENNA'S MOTION FOR
SUMMARY JUDGMENT ON THE
RILEY PARTIES' COUNTERCLAIMS

Hon. Brandy R. McMillion
Mag. Judge Elizabeth A. Stafford

## BRIEF IN SUPPORT OF COUNTERCLAIM DEFENDANT ELYSE

## McKENNA'S MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS

## OF THE RILEY PARTIES' COUNTERCLAIMS

## STATEMENT OF THE ISSUES PRESENTED

1. Counts III and IV arise from a single access of Robert Riley's iPad that the Riley Parties allege occurred before McKenna left the firm in 2021, and that the undisputed record fixes at August 18, 2021. Michigan gives them three years, and the parties' Tolling Agreement adds at most 159 days, extending the deadline only to January 24, 2025. They filed on March 5, 2025. Should the Court grant summary judgment on Counts III and IV as time-barred?

McKenna answers: Yes.

2. Every statement Count II identifies is either a court filing, a fair and true report of a court filing, a pre-suit demand that is an absolutely privileged settlement communication, a communication to a shared client that the Riley Parties must overcome with clear and convincing evidence of actual malice, or an unidentified statement to no identified listener on no identified date. Should the Court grant summary judgment on Count II?

McKenna answers: Yes.

3. Riley testified that beyond the Detroit News article and the pleadings he has "no other examples" of anything McKenna said, and that Count I rests on the same material. Should the Court grant summary judgment on Count I?

McKenna answers: Yes.

i

4. Trespass to chattels requires dispossession, impairment, deprivation of use for a substantial time, or bodily harm. The Riley Parties plead none of the four and produced evidence of none. Should the Court grant summary judgment on Count III on that independent ground?

McKenna answers: Yes.

5. Intrusion upon seclusion protects a secret and private subject matter from a method objectionable to a reasonable person. Riley admits he photographed McKenna without asking, and he testified he has no evidence of the badgering he alleges. Should the Court grant summary judgment on Count IV on that independent ground?

McKenna answers: Yes.

6. MCL 600.2911(2)(b) bars exemplary and punitive damages in a libel or slander action unless the plaintiff demanded a retraction before suing. The Riley Parties never did. Should the Court strike those categories of damages?

McKenna answers: Yes.

## CONTROLLING AND MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

MCL 600.5805(2), (11); MCL 600.5827; MCL 600.5855; MCL 600.2911(2), (3).

*Trentadue v. Buckler Lawn Sprinkler*, 479 Mich. 378 (2007); *Sills v. Oakland Gen. Hosp.*, 220 Mich. App. 303 (1996); *Mitan v. Campbell*, 474 Mich. 21 (2005).

*Bedford v. Witte*, 318 Mich. App. 60 (2016); *Couch v. Schultz*, 193 Mich. App. 292 (1992); *Amway Corp. v. Procter & Gamble Co.*, 346 F.3d 180 (6th Cir. 2003); *Rouch v. Enquirer & News of Battle Creek (After Remand)*, 440 Mich. 238 (1992); *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 197 Mich. App. 48 (1992); *Ireland v. Edwards*, 230 Mich. App. 607 (1998); *Rosenboom v. Vanek*, 182 Mich. App. 113 (1989); *Oesterle v. Wallace*, 272 Mich. App. 260 (2006).

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83 (2005); *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 251 Mich. App. 125 (2002); *Mino v. Clio Sch. Dist.*, 255 Mich. App. 60 (2003); *Rockwell Med., Inc. v. Yocum*, 630 F. App'x 499 (6th Cir. 2015).

*Taylor v. City of Saginaw*, 620 F. Supp. 3d 655 (E.D. Mich. 2022); *Restatement (Second) of Torts* sec. 218; *Doe v. Mills*, 212 Mich. App. 73 (1995); *Dalley v. Dykema Gossett PLLC*, 287 Mich. App. 296 (2010).

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ................................................... i

CONTROLLING AND MOST APPROPRIATE AUTHORITY ........................ iii

INDEX OF AUTHORITIES .................................................................... vi

STATEMENT OF CONCURRENCE SOUGHT PER LR 7.1(a) ..................... viii

INTRODUCTION ....................................................................................1

STATEMENT OF FACTS ...........................................................................2

STANDARD ...........................................................................................2

ARGUMENT ..........................................................................................3

    I.  Counts III and IV are barred by the three-year statute of limitations .........3

        A.  The claims accrued in 2021 and the period expired before
            the Riley Parties filed .................................................................3

        B.  Michigan has no common-law discovery rule  ...............................5

        C.  The fraudulent-concealment statute does not help them,
            because they plead silence and because McKenna
            broadcast what she did ...............................................................5

    II.  Count II fails as to every category of statement the
       Riley Parties identify. ....................................................................6

        A.  The pleadings and litigation filings are absolutely privileged ..........7

        B.  The Detroit News article and the transmission of the filed
            complaint are protected by MCL 600.2911(3).................................7

        C.  The January 2024 pre-suit demand is absolutely privileged.............8

        D.  The two extrajudicial statements the counterclaim identifies are
            substantially what the filed complaint says.....................................9

        E.  The statements to the shared client are qualifiedly privileged,
            and the Riley Parties produced no evidence of actual malice.........11

        F.  The "Detroit legal community" allegation identifies no statement,
            no listener, and no date................................................................12

        G.  Riley & Hurley, P.C. identifies no statement about the firm..........12

III. Count I fails, and it fails for the same reasons Count II does ...................13

    A. The only interference alleged is the same speech, so the same privileges control ........................................................................13

    B. No per se wrongful act, and no affirmative acts corroborating an unlawful purpose ...........................................................14

    C. No valid expectancy, and no evidence that McKenna caused any loss ...........................................................................15

IV. Count III fails independently, because the Riley Parties allege none of the harms trespass to chattels requires ...................................17

V. Count IV fails independently on the elements ........................................18

VI. The damages claims fail, and exemplary and punitive damages are barred outright ...........................................................................19

CONCLUSION ............................................................................20

# INDEX OF AUTHORITIES

**Cases**

*Amway Corp. v. Procter & Gamble Co.*, 346 F.3d 180 (6th Cir. 2003)............. iii, 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)........................................ iii, 2

*Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*,
   898 F.3d 710 (6th Cir. 2018).....................................................................14

*Bedford v. Witte*, 318 Mich. App. 60 (2016) ........................................................ iii, 8

*Cataldo v. U.S. Steel Corp.*, 676 F.3d 542 (6th Cir. 2012)....................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................. iii, 2, 12

*CMI Int'l, Inc. v. Intermet Int'l Corp.*, 251 Mich. App. 125 (2002) .................. iii, 13

*Couch v. Schultz*, 193 Mich. App. 292 (1992).................................................. iii, 7, 9

*Dalley v. Dykema Gossett PLLC*, 287 Mich. App. 296 (2010) ........................ iii, 18

*Derderian v. Genesys Health Care Sys.*, 263 Mich. App. 364 (2004) ....................13

*Dillard v. Schlussel*, 308 Mich. App. 429 (2014).....................................................6

*Doe v. Mills*, 212 Mich. App. 73 (1995)........................................................... iii, 18

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*,
   268 Mich. App. 83 (2005)................................................................... iii, 13

*Ireland v. Edwards*, 230 Mich. App. 607 (1998)....................................... iii, 10, 11

*Kefgen v. Davidson*, 241 Mich. App. 611 (2000).................................................11

*Mahindra & Mahindra Ltd. v. FCA US LLC, No. 18-cv-12645,*
   2019 WL 3294114 (E.D. Mich. Apr. 2, 2019)(unpublished; copy submitted).....14

*Mino v. Clio Sch. Dist.*, 255 Mich. App. 60 (2003)......................................... iii, 15

*Mitan v. Campbell*, 474 Mich. 21 (2005) ................................................ iii, 7, 9, 13

*Oesterle v. Wallace*, 272 Mich. App. 260 (2006)............................................. iii, 8

*Rockwell Med., Inc. v. Yocum,*
   630 F. App'x 499 (6th Cir. 2015) (unpublished; copy submitted) ............. iii, 3, 14

*Rosenboom v. Vanek*, 182 Mich. App. 113 (1989)........................................... iii, 11

*Rouch v. Enquirer & News of Battle Creek (After Remand),*
   440 Mich. 238 (1992).................................................................. iii, 10

*Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*,

   197 Mich. App. 48 (1992)..........................................................................iii, 7, 10

*Sills v. Oakland Gen. Hosp.*, 220 Mich. App. 303 (1996)....................................iii, 6

*Taylor v. City of Saginaw*, 620 F. Supp. 3d 655 (E.D. Mich. 2022) .................iii, 17

*Trentadue v. Buckler Lawn Sprinkler*, 479 Mich. 378 (2007)............................iii, 5

## Statutes and Rules

Fed. R. Civ. P. 56 ........................................................................................................ iii

Fed. R. Civ. P. 26(a)(1)...............................................................................................16

LR 7.1(a) ................................................................................................................. viii

LR 7.1(a)(2)(A)........................................................................................................ viii

LR 7.1(a)(2)(B) ........................................................................................................ viii

MCL 600.2911(2)(b) ............................................................................................. ii, 20

MCL 600.2911(2)(3) .................................................................................................. iii

MCL 600.2911(3) .....................................................................................................1,7

MCL 600.2954..............................................................................................................10

MCL 600.5805(2) ................................................................................................... iii, 3

MCL 600.5805(11)........................................................................................................9

MCL 600.5827................................................................................................... iii, 3, 5

MCL 600.5855.................................................................................................... iii, 6

## Other Authorities

*Restatement (Second) of Torts* sec. 218.................................................................. iii, 17

## STATEMENT OF CONCURRENCE SOUGHT PURSUANT TO LR 7.1(A)

Pursuant to LR 7.1(a), counsel for Counterclaim Defendant Elyse McKenna sought concurrence in the relief requested in this motion by written correspondence dated July 31, 2026, which explained the nature of the motion and set forth its specific legal basis as to each count of the counterclaims. Counsel for the Riley Parties responded in writing the same day and expressly denied concurrence.

Counsel for McKenna replied the same day, addressing the Riley Parties' stated objections and offering to confer by telephone on any of four business days prior to the dispositive motion deadline, including August 3, 4, and 5, 2026.

Counsel for the Riley Parties responded only that they "will raise the issues with the court at the conference," referring to the conference scheduled before this Court on August 6, 2026 (the dispositive motion deadline), and did not provide a date or time to confer or otherwise respond to the request for a telephonic conference.

Concurrence was requested and denied, and despite these reasonable and timely efforts, counsel for McKenna was unable to conduct a telephonic conference because counsel for the Riley Parties declined to participate. This motion is therefore submitted pursuant to LR 7.1(a)(2)(A) and (B).

viii

## INTRODUCTION

Robert Riley sat for his deposition on December 15, 2025 and was asked to name everything McKenna said to defame him. He named the Detroit News article and her pleadings. Asked whether he knew of any other remark, he answered: "I have no other examples." Riley Dep. 240:11-17 (Ex. A). Asked next what he was relying on for tortious interference, he answered: "Essentially, everything I just told you applies equally here." *Id.* 240:19-23.

That testimony decides most of this motion. A complaint filed in this Court is absolutely privileged. A newspaper's account of that complaint, and the act of handing the complaint to the newspaper, are protected by MCL 600.2911(3). Riley's own economist confirmed the consequence. Asked by Riley's counsel whether the damages in his report are simply the damages from McKenna's statements, Andrew Perun said yes, and agreed that his number "wouldn't change based on a legal theory." Perun Dep. 85:18-86:6 (Ex. B); SMF para. 57. Strip out the privileged speech and nothing is left to value.

The two iPad counts are simpler still. The Riley Parties allege the access happened before McKenna left the firm in 2021. Her sworn testimony, her own complaint, a same-day text message, and a contemporaneous therapy record all put it on August 18, 2021. Michigan gives three years. The counterclaims arrived March 5, 2025, roughly six weeks after the period ran even when every day of the parties'

Tolling Agreement is credited. The Agreement stops the limitations clock from March 25 through August 30, 2024; excluding all 159 days moves the deadline only to January 24, 2025. Third Am. Tolling Agreement paras. 3, 6 (Ex. L). And McKenna had already filed the public complaint that told them about the access more than four months before even that extended deadline passed.

Discovery closed on March 6, 2026. Every fact this motion needs comes from the Riley Parties' own pleading, their own sworn interrogatory answers, their own expert, their own filed exhibits, and the certified deposition transcripts. McKenna asks the Court to enter judgment on all four counts.

## STATEMENT OF FACTS

McKenna relies on the separately filed Statement of Material Facts ("SMF") and cites it here by paragraph number.

## STANDARD

Summary judgment is required against a party who fails to make a showing sufficient to establish an element essential to its case and on which it bears the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine only if the evidence would let a reasonable jury return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the governing standard is clear and convincing evidence, the Court asks whether a rational factfinder could meet that standard on this record. *Id.* at 254. Michigan supplies the rules of

2

decision, and the Sixth Circuit applies Michigan's judicial proceedings privilege in this posture. *Rockwell Med., Inc. v. Yocum*, 630 F. App'x 499, 501 (6th Cir. 2015) (copy submitted with this brief).

## ARGUMENT

**I.      Counts III and IV are barred by the three-year statute of limitations.**

**A.      The claims accrued in 2021 and the period expired before the Riley Parties filed.**

Michigan gives three years to sue for injury to a person or property. MCL 600.5805(2). The claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827. The wrong alleged in Counts III and IV is a single event: McKenna obtained the passcode to Riley's iPad and looked at what was on it. Countercl. paras. 21-24, 86, 91 (ECF 29, PageID.1177-1178, 1188, 1190).

The Riley Parties plead that the access happened before McKenna left the firm. They allege she obtained the password "knowing she was already leaving the firm anyway," that she accessed the device, and that she "left Riley & Hurley without saying anything to Riley about her accessing his iPad." *Id.* paras. 21, 24, 29. They also plead that her resignation followed a June 12, 2021 text by "just five weeks." *Id.* para. 14. On their own allegations the three-year period expired in 2024.

The record fixes the date exactly. McKenna testified she accessed the iPad in "August around that time frame," and explained why. McKenna Dep. 147:18-148:2 (Ex. C). Her own complaint pleads August 18, 2021. ECF No. 1. That same day she sent a group text reading "I hacked onto Bob's iPad," with two images. Heid Dep. 61:1-6, 62:18-25 (Ex. D). Her therapist's August 2021 record says she went into his office and got on the iPad. Gialanelli Dep. 27:3-13 (Ex. E). SMF paras. 8-12.

Three years from August 18, 2021 would have expired August 18, 2024. The parties' Third Amended Tolling Agreement moves that date, but not far enough. Effective March 25, 2024, while the three-year period was still running, the parties agreed that the period from March 25, 2024 through August 30, 2024 (the "Tolling Period") "shall not be included in determining the applicability of any statute of limitations (contractual or otherwise) or statute of repose, laches or any other defense based upon delay or passage of time." Third Am. Tolling Agreement para. 3 (Ex. L). McKenna credits the Riley Parties with every day of it. Excluding all 159 days of the Tolling Period extends the deadline on Counts III and IV only to January 24, 2025. The counterclaims were filed March 5, 2025, forty days after even the extended deadline. ECF 29.

The Agreement gives them nothing more. Nothing in it "shall be deemed to revive any rights, claims or causes of action that were barred as of March 25, 2024," and no Party waived any defense it held before execution. Ex. L paras. 4, 6. Nor can

4

the Riley Parties claim surprise. McKenna filed the September 9, 2024 complaint that disclosed the access, the filing they concede is how they learned of it, Countercl. para. 25, with more than four months still to run on the extended clock. They knew, the clock was still open, and they filed forty days late anyway. Because the Agreement is confidential by its terms and is deemed a document in furtherance of resolution under FRE 408, and because timeliness turns on whether the Tolling Period counts, McKenna files it under seal as Exhibit L, as the Agreement contemplates. Ex. L para. 9.

Untimeliness that appears on the face of a pleading supports dismissal even at the pleading stage. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). It certainly supports summary judgment after discovery has closed.

### B.   Michigan has no common-law discovery rule.

The Michigan Supreme Court held that courts may not apply a common-law discovery rule to toll accrual where the Legislature has spoken. *Trentadue v. Buckler Lawn Sprinkler*, 479 Mich. 378, 389 (2007). MCL 600.5827 is the statute, and it starts the clock when the wrong is done. When the Riley Parties learned of the access does not matter.

### C.   The fraudulent-concealment statute does not help them, because they plead silence and because McKenna broadcast what she did.

5

MCL 600.5855 extends the period only where the defendant "fraudulently conceals the existence of the claim." That requires an affirmative act. The Court of Appeals has held that a plaintiff must show "affirmative acts or misrepresentations that were designed to prevent subsequent discovery" and that "mere silence is insufficient." *Sills v. Oakland Gen. Hosp.*, 220 Mich. App. 303, 310 (1996); accord *Dillard v. Schlussel*, 308 Mich. App. 429, 456 (2014) (tolling requires "an affirmative act or representation").

The Riley Parties plead silence in so many words. Their allegation is that McKenna "left Riley & Hurley without saying anything to Riley about her accessing his iPad," and that they did not learn of it "until late last year, when McKenna stated in her pro se Complaint that she had actually accessed the device personally." Countercl. paras. 25, 29. That is not concealment. That is an absence of disclosure followed by McKenna's own public disclosure.

The record goes further. On the day of the access McKenna told three people what she had done and sent them the photographs. Heid Dep. 61:1-6, 62:18-25. Within weeks she told a lawyer she was consulting and a partner at the firm she was joining. Studley Dep. 61:20-24; Peacock Dep. 67:1-4. SMF paras. 13-15. And McKenna told Sonia Mullins, a Riley & Hurley employee, that she had accessed the iPad and had found photographs. McKenna Decl. para. 15 (Ex. K); SMF para. 63. The word "conceal" does not appear anywhere in Riley's deposition. SMF para. 16.

6

Counts III and IV are time-barred, on the pleading and on the record.

## II. Count II fails as to every category of statement the Riley Parties identify.

Defamation requires a false and defamatory statement about the plaintiff, an unprivileged communication to a third party, fault, and either per se actionability or special harm. *Mitan v. Campbell*, 474 Mich. 21, 24 (2005). Michigan also requires a defamation plaintiff to plead the statements with specificity; general allegations do not state a claim. *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 197 Mich. App. 48, 52-53 (1992). Count II is a list of categories rather than statements, so the Court should take them one at a time.

### A. The pleadings and litigation filings are absolutely privileged.

Statements made in the course of judicial proceedings are absolutely privileged. The immunity "extends to every step in the proceeding and covers anything that may be said in relation to the matter at issue, including pleadings and affidavits," it is liberally construed, and good faith and malice are immaterial. *Couch v. Schultz*, 193 Mich. App. 292, 294-95 (1992). Whether the privilege attaches is a question of law for the Court. *Id.* at 294.

Countercl. paras. 62-63 and 69-70 complain about McKenna's complaints and her defense of this action. Those allegations are barred as a matter of law.

### B. The Detroit News article and the transmission of the filed complaint are protected by MCL 600.2911(3).

MCL 600.2911(3) provides that damages "shall not be awarded in a libel action for the publication or broadcast of a fair and true report of matters of public record." The Court of Appeals applied that statute to an exact copy of a party's own complaint published on the party's law firm website, and held the report fair and true "even if action was taken with malicious intent," because the statute "carves out no exception for malice or for so-called "self-reporters."" *Bedford v. Witte*, 318 Mich. App. 60, 66 (2016). The Sixth Circuit reads the statute the same way: "a party's publication of any actual court filing or statement made in a judicial proceeding is privileged." *Amway Corp. v. Procter & Gamble Co.*, 346 F.3d 180, 187 (6th Cir. 2003).

What went to the Detroit News is in the record, and it is the Riley Parties' own exhibit. On September 9, 2024, the day McKenna filed, her public relations consultant emailed the reporter a press release together with a copy of the complaint she filed that day. ECF No. 297-9, PageID.9816; SMF paras. 26-27. Handing a reporter a filed complaint is the conduct *Bedford* and *Amway* protect. To the extent Count II rests on the article's account of the complaint, or on the act of supplying the complaint, it fails as a matter of law.

### C.      The January 2024 pre-suit demand is absolutely privileged.

The Riley Parties allege that the demand reached Riley "[i]n or around January 22, 2024." Countercl. para. 57. A pre-suit demand made in the effort to resolve contemplated litigation is a statement made in the course of judicial proceedings, and

it is absolutely privileged. *Oesterle v. Wallace*, 272 Mich. App. 260, 264-65 (2006) (settlement negotiations are judicial proceedings for privilege purposes). That is what this demand was: counsel's communication of McKenna's claims in the pre-suit effort to resolve them, the same effort the parties then formalized in a tolling agreement so they could "exchange information and attempt resolution of this dispute prior to litigation being filed." Third Am. Tolling Agreement para. 3 (Ex. L). The privilege is absolute, and good faith and malice are immaterial. *Couch*, 193 Mich. App. at 294-95.

The one-year statute, MCL 600.5805(11), is not an alternative ground here. Standing alone, a January 22, 2024 statement would fall more than a year before the March 5, 2025 counterclaims. *Mitan*, 474 Mich. at 24-25 (the period runs from the date the statement was made). But the Tolling Agreement excludes March 25 through August 30, 2024 from any limitations computation, Ex. L para. 3, which brings the January 2024 demand within the one-year period as extended. McKenna therefore does not rest on limitations for this statement. She rests on the absolute privilege, which disposes of it as a matter of law.

**D.      The two extrajudicial statements the counterclaim identifies are substantially what the filed complaint says.**

Count II identifies exactly two statements McKenna is said to have made to a reporter beyond her filings: that Riley harassed and stalked her at conferences and events after her employment ended, and that he used his "influence" to prevent her

9

from working in Michigan. Countercl. para. 63. It also complains of a statement that no lawyers would take the case. *Id.* para. 65.

Each is substantially what her complaint pleads. Count VII of the complaint is captioned "MCL 600.2954 Stalking - Riley." ECF No. 1. The complaint pleads the shared client's Orlando annual conference, which post-dates her departure. *Id.* And it pleads that Michigan attorneys "would not file a lawsuit on her behalf given Riley's revered status in the legal field and the potential ramifications for their own careers," and that she was "unable to find an attorney in the state of Michigan who is willing to litigate this matter." *Id.* SMF paras. 28-30.

McKenna does not claim the article tracked her complaint word for word. Michigan does not require that. The test is the sting: "if the literal truth produced the same effect, minor differences were deemed immaterial." *Rouch v. Enquirer & News of Battle Creek (After Remand)*, 440 Mich. 238, 258-59 (1992). A report that Riley's standing in the legal community kept Michigan lawyers from taking her case has the same sting as a report that he used his influence to keep her from working in Michigan.

Two independent failures finish this category. First, the Riley Parties never identified the words McKenna herself spoke, as opposed to the reporter's own writing and the article's quotations from the complaint. *Royal Palace* requires that identification, 197 Mich. App. at 52-53, and Riley testified he has "no other examples." Riley Dep. 240:11-17. Second, falsity is their burden, and a statement that cannot be

10

reasonably interpreted as stating actual facts is not actionable at all. *Ireland v. Edwards*, 230 Mich. App. 607, 614, 616 (1998). "Influence" is a characterization, not a fact capable of being proved false.

### E. The statements to the shared client are qualifiedly privileged, and the Riley Parties produced no evidence of actual malice.

Michigan's shared interest qualified privilege "extends to all bona fide communications concerning any subject matter in which a party has an interest or a duty owed to a person sharing a corresponding interest or duty." *Rosenboom v. Vanek*, 182 Mich. App. 113, 117 (1989). McKenna was the client's own lawyer. She and the client shared a direct interest in who would handle the client's matters.

To defeat the privilege the Riley Parties must show actual malice, meaning knowledge of falsity or reckless disregard, and general allegations that the statements were false and malicious will not do it. *Kefgen v. Davidson*, 241 Mich. App. 611, 624-25 (2000). "[I]ll will, spite or even hatred, standing alone, do not amount to actual malice," and reckless disregard turns on whether the speaker "in fact entertained serious doubts concerning the truth." *Id.* at 624 (quoting *Ireland*).

They have no such evidence. Riley's account of the client conversation is secondhand: "It's my understanding that she went directly to the executive director." Riley Dep. 237:20-22. Their sworn interrogatory answer says only that the executive director "stated that McKenna had informed him of her allegations regarding Mr.

11

Riley," which describes the same allegations she filed. Rog. Ans. No. 15 (Ex. F); SMF paras. 35-36. Riley admits he took the photographs and did not ask permission. Riley Dep. 172:15-18. Truth defeats the claim, and on this record no rational factfinder could find clear and convincing evidence that McKenna doubted what she was saying.

### F.     The "Detroit legal community" allegation identifies no statement, no listener, and no date.

Countercl. para. 68 alleges that McKenna "spread false and misleading accusations throughout the Detroit legal community." It names no statement, no speaker other than McKenna, no listener, and no date. That fails *Royal Palace* at the threshold, 197 Mich. App. at 52-53, and it fails *Celotex* now.

Riley's own testimony explains where the allegation came from. He inferred it from her complaint: "with her complaint she makes a statement that she talked about me throughout Michigan." Riley Dep. 237:13-14. Then he conceded he had no other examples. *Id.* 240:11-17.

The witnesses closed the gap the other way. Lauren Studley, the one Detroit-area lawyer McKenna confided in, testified that she told no one: "It was told to me in confidence, so I didn't share it with anybody." Studley Dep. 61:23-24. Emily Peacock testified that she learned of the photographs from Donna MacKenzie, not from McKenna, and before McKenna joined her firm. Peacock Dep. 67:1-4. SMF paras. 14-15.

### G. Riley & Hurley, P.C. identifies no statement about the firm.

Element one requires a false and defamatory statement "concerning the plaintiff." *Mitan*, 474 Mich. at 24. Every statement Count II identifies concerns Riley personally: photographs, stalking, harassment, influence. Countercl. paras. 63-68. The firm's sworn interrogatory answer names three lost clients of Riley's, not of the firm. Rog. Ans. No. 15. The firm's Count II fails at the first element.

## III. Count I fails, and it fails for the same reasons Count II does.

Tortious interference with a business relationship or expectancy requires proof of: "(1) the existence of a valid business relationship or expectancy; (2) the defendant's knowledge of that relationship or expectancy; (3) intentional interference by the defendant inducing or causing its breach or termination; and (4) resulting damage." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 90 (2005). On top of the elements, Michigan requires a per se wrongful act, or a lawful act done with malice and without legal justification to invade another's business relationship. *Derderian v. Genesys Health Care Sys.*, 263 Mich. App. 364, 382 (2004). If the conduct was not wrongful per se, the plaintiff "must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 251 Mich. App. 125, 131 (2002).

### A. The only interference alleged is the same speech, so the same privileges control.

13

Count I alleges that McKenna interfered "by making false, misleading, and defamatory accusations." Countercl. para. 74. Riley confirmed it under oath. When asked to "[t]ell me everything that you are relying on for this claim," he answered: "Essentially, everything I just told you applies equally here." Riley Dep. 240:19-23.

Rockwell, 630 F. App'x at 501Michigan's judicial proceedings privilege is not confined to defamation labels. This Court dismissed tortious interference counts premised on a privileged filing in *Mahindra & Mahindra Ltd. v. FCA US LLC*, No. 18-cv-12645, 2019 WL 3294114 (E.D. Mich. Apr. 2, 2019) (copy submitted with this brief). The Sixth Circuit applied the Michigan privilege to defamation and interference claims together in. Thus, every statement that is privileged under Part II is unavailable to Count I. To the extent the alleged statements are privileged, they cannot supply the predicate conduct for an interference claim. And, to the extent the claim depends on allegedly defamatory statements that fail as defamation, it fails for the same reason.

**B.      No per se wrongful act, and no affirmative acts corroborating an unlawful purpose.**

Strip out the privileged speech, the only per se wrongful act left is defamation.If the defamation claim fails as to a statement, the interference claim fails with it. *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715-16 (6th Cir. 2018) (wrongful conduct alone does not supply improper interference).

14

What remains is a lawful conduct supported by an ordinary, non-tortious explanation: McKenna told a client she would not work under Riley's supervision because he had photographed her without asking her and without her consent.. Her contemporaneous email says exactly that, and offers to "reasonably cooperate in transitioning these projects so as to protect the client's interest." Riley Dep. 185:14-186:3 (reading the email into the record); SMF paras. 18-19. Riley's own account of why she left agrees: "I hurt her feelings.... She didn't like that I had taken these photographs." *Id.* 192:7-15.

Where a defendant's actions are motivated by legitimate business reasons, "its actions would not constitute improper motive or interference." *Mino v. Clio Sch. Dist.*, 255 Mich. App. 60, 78 (2003). And the Riley Parties' own pleading concedes the point: "McKenna had no obligation to continue representing that client." Countercl. para. 33.

**C.      No valid expectancy, and no evidence that McKenna caused any loss.**

Count I claims relationships with "the organizational client and other clients." Countercl. para. 72. The "other clients" are never named. Riley & Hurley's own Rule 30(b)(6) designee could name only one shared client: "The only one that sticks in my mind is the PHPA." Hurley 30(b)(6) Dep. 41:7-8 (Ex. G). SMF para. 21.

As to the hockey client, Riley himself rewrote the terms of that relationship in 2021. His own email, read into his deposition, says: "I will step aside as an attorney

15

for the PHPA. I will advise Larry to begin work independently with you.... You will be free to establish your own legal services agreements with PHPA." Riley Dep. 187:14-24. Whatever expectancy Riley retained in his own PHPA work, by 2021 he had agreed in writing that McKenna would work with the client independently of him and could contract with PHPA directly. An independent relationship that Riley himself invited in 2021 is not an expectancy McKenna wrongfully destroyed in 2024.

The causation evidence is equally deficient. Riley Parties' sworn interrogatory response names three clients and states that "all of the following occurred in the same timeframe of the publication of a Detroit News story containing McKenna's accusations about Riley," and that everything beyond those three is "circumstantial evidence." Rog. Ans. No. 15; SMF paras. 23-24. The article is privileged. A sworn admission that the losses track the article is a sworn admission that they track privileged speech.

The rest of the record points away from McKenna. Riley conceded he investigated no other cause. Riley Dep. 312:3-14. His Henry Ford account runs through William Hurley twice removed: "He used basically the words that I used and he told Bill.... Bill told me." *Id.* 56:1-6. Henry Ford, Sommers Schwartz, Ramar & Paradiso, and Michael Janes appear nowhere in the Riley Parties' Rule 26(a)(1) initial disclosures. SMF para. 25. Lauren Studley, the one lawyer in the record who stopped using Riley, testified she did so because of his conduct in this case: "You've sent emails

16

threatening to hold me in contempt, filed motions against me." Studley Dep. 140:16-25. And Riley testified his business is recovering. Riley Dep. 56:17-19.

## IV.   Count III fails independently, because the Riley Parties allege none of the harms trespass to chattels requires.

Trespass to chattels is not actionable on a touching alone. Liability attaches only if the actor dispossesses the other of the chattel, impairs its condition, quality, or value, deprives the possessor of its use for a substantial time, or causes bodily harm. *Restatement (Second) of Torts* sec. 218. This Court applied that framework and rejected a trespass to chattels claim because the conduct did not "impair ... [the] condition, quality, or value" of the property, "cause 'bodily harm'; or meet any of the other conditions for actionable trespass." *Taylor v. City of Saginaw*, 620 F. Supp. 3d 655, 664 (E.D. Mich. 2022).

Count III alleges that McKenna used or intermeddled with the iPad "by taking physical possession of the device, defeating its password protection, and reading and copying messages from the device." Countercl. para. 86. Its damages allegation is that she read and copied messages and has made "past and ongoing attempts to use that improperly-obtained evidence." *Id.* para. 87.

No dispossession. No impairment. No deprivation of use for a substantial time. No bodily harm. Riley's complete account of what she took is this exchange: "Q. How did she take the photos out of your iPad? A. She took pictures, apparently. Q. Took

17

pictures of the iPad? A. She made pictures within my iPad, period. Q. What do you mean by that? A. Just what I said." Riley Dep. 256:7-13. He used an iPad through his own deposition. SMF paras. 41-42.

The only damage they identify is McKenna's use of information in this litigation. That is a request to litigate an evidentiary question through a tort count, and the litigation conduct it targets is privileged. Count III has no damages element left.

## V. Count IV fails independently on the elements.

Intrusion upon seclusion requires a secret and private subject matter, a right to keep it private, and the obtaining of information about it "through some method objectionable to a reasonable man." *Doe v. Mills*, 212 Mich. App. 73, 88 (1995); *Dalley v. Dykema Gossett PLLC*, 287 Mich. App. 296, 306 (2010). The tort turns on how the information was obtained.

Start with what McKenna went looking for. She testified: "Because he had been taking photographs again of me that day and it was upsetting. And I wanted to know what was going on." McKenna Dep. 147:25-148:2. Her therapist's August 2021 record says the same. Gialanelli Dep. 27:10-13. She looked for photographs of herself, and she found them. Riley admits taking them: "I took pictures of her, correct. Did I ask for permission. I did not." Riley Dep. 172:15-18. Riley has no right to keep photographs of McKenna secret from McKenna, and the firm has no privacy interest in his personal photograph collection at all.

18

Then take the method. The Riley Parties' theory is that McKenna spent "several days badgering" an employee for the password. Countercl. para. 21. Riley was asked for his evidence and gave none: "I don't want to talk to Sonia to go find this answer. I will leave that to my attorneys.... No, the answer is it's in evolution." Riley Dep. 263:6-11. Discovery closed on March 6, 2026 and it never evolved. Sonia Mullins, the only percipient witness, sits on their own initial disclosures and was never deposed. SMF paras. 48-49. McKenna's testimony is that Riley himself had given her the passcode. McKenna Dep. 143:13-14. And her sworn declaration meets the badgering allegation head on: on August 18, 2021, Mullins provided the passcode, and McKenna did not beg her, plead with her, pressure her, or ask repeatedly over a period of several days. McKenna Decl. para. 5 (Ex. K); SMF para. 64.

A pleaded allegation is not evidence. After full discovery the Riley Parties cannot prove the one fact their theory of the method depends on.

## VI. The damages claims fail, and exemplary and punitive damages are barred outright.

Asked in discovery to state the damages and the basis for each count, the Riley Parties objected that the request was "premature" and pointed to their initial disclosures. Rog. Ans. No. 16. Those disclosures say the tortious interference damages are "in an amount to be determined and calculated." Initial Disclosures sec. C.1 (Ex. H). No per-count figure exists anywhere in this record. SMF paras. 52-53.

19

Their economist did not fill the gap. Perun assumed liability rather than analyzing it, testified "I did not" when asked whether he assigned any dollar figure to any specific statement on any specific date, and treated the entire post-September 2024 decline as one number. Perun Dep. 33:12-13, 44:25-45:13. He never spoke to anyone at Henry Ford or Sommers Schwartz, ran no market study, and did not look at William Hurley's hours as a control. *Id.* 47:5-15, 52:3-12, 55:5-8. SMF paras. 54-56.

And exemplary and punitive damages are barred by statute. Under MCL 600.2911(2)(b), "[e]xemplary and punitive damages shall not be recovered in actions for libel unless the plaintiff, before instituting his or her action, gives notice to the defendant to publish a retraction and allows a reasonable time to do so." The counterclaims plead no retraction demand. The word "retraction" appears nowhere in the counterclaims, nowhere in Riley's deposition, and nowhere in the Riley Parties' interrogatory answers. SMF para. 58. Their initial disclosures nonetheless claim both. Initial Disclosures secs. C.3-C.4. Those categories should be stricken.

**CONCLUSION**

The Riley Parties waited too long on the iPad counts, and they built the speech counts out of privileged material their own expert cannot separate from his number. Riley told the truth at his deposition when he said he had no other examples. He does not.

McKenna asks the Court to grant summary judgment on Counts I, II, III, and IV, and to enter judgment in her favor.

DATED: August 5, 2026.                    **HKM Employment Attorneys LLP**

By: */s/ Shemia Fagan*
Shemia Fagan
Email: sfagan@hkm.com
2014 Capitol Avenue #100
Sacramento, CA 95811
Tel: 916-764-3633
Fax: 206-260-3055

**THE LAW OFFICE OF
GEORGE MOSCHOPOULOS, APC**

George Moschopoulos
Email: georgem@logmapc.com
34197 Pacific Coast Highway, Suite 100
Dana Point, CA 92629
Tel: 949-498-5413
Fax: 949-272-0428

**TEMPERANCE LEGAL GROUP**

Karen Truszkowski (P56929)
   (*local counsel*)
Email: karen@temperancelegalgroup.com
503 Mall Ct #131
Lansing, MI 48912
Tel: 844-534-2560
Fax: 800-531-6527

*Attorneys for Plaintiff/Counterclaim
Defendant Elyse McKenna*

21

## CERTIFICATE OF SERVICE

I certify that on August 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Shemia Fagan
Shemia Fagan
