# EXHIBIT K

Declaration of Elyse McKenna

*McKenna v. Riley, No. 2:24-cv-12347-BRM-EAS (E.D. Mich.)*
*Exhibit to Counterclaim Defendant Elyse McKenna's Motion for Summary Judgment*
*on the Riley Parties' Counterclaims*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ELYSE McKENNA, an individual,

               Plaintiff/Counterclaim
Defendant,

    v.

ROBERT F. RILEY, an individual; RILEY
& HURLEY, P.C., a Michigan corporation;
and OLSMAN, MACKENZIE, PEACOCK
& WALLACE, PC, a Michigan corporation,

        Defendants.

ROBERT F. RILEY and RILEY &
HURLEY, P.C.,

        Counterclaim Plaintiffs,

    v.

ELYSE McKENNA,

        Counterclaim Defendant.

Case No.: 2:24-cv-12347-BRM-EAS

DECLARATION OF ELYSE
McKENNA IN SUPPORT OF
COUNTERCLAIM DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

Hon. Brandy R. McMillion
Mag. Judge Elizabeth A. Stafford

## DECLARATION OF ELYSE McKENNA IN SUPPORT OF

## COUNTERCLAIM DEFENDANT'S MOTION FOR SUMMARY

## JUDGMENT ON THE RILEY PARTIES' COUNTERCLAIMS

I, Elyse L. McKenna, declare as follows:

1

1.      I am Elyse McKenna. I am over eighteen years of age, I am competent to testify, and I make this declaration from my own personal knowledge. If called as a witness I would testify to the facts stated here.

2.      I was employed as an attorney at Riley & Hurley, P.C. from October 2019 until September 2021. I was then employed at Olsman, MacKenzie, Peacock & Wallace, P.C. from September 2021 until February 4, 2024.

**THE IPAD: I WAS AUTHORIZED TO USE IT AND I HAD THE PASSCODE**

3.      During my employment at Riley & Hurley, Robert Riley and I used his iPad for firm-related work. It is my recollection that Riley provided me with the passcode to his iPad.

4.      I had used Riley's iPad for firm work before August 2021. Riley is legally blind. As I observed it, Riley used the iPad for emails and Zoom calls, not to read documents. He frequently read paper documents.

5.      On August 18, 2021, Sonia Mullins provided me with the passcode. I did not beg her, I did not plead with her, and I did not pressure her. I did not ask her repeatedly over a period of several days.

**WHY I ACCESSED THE IPAD AND WHAT I DID**

6.      Beginning in 2021, after our office moved from Dearborn to Southfield, I came to suspect that Riley was photographing me while I sat in his

office. His iPad was not in his hands. It sat in a stand. In the reflection in the window, I saw that the camera was open and that Riley was photographing me with the iPad.

7. On August 18, 2021, Riley again took photographs of me while I was in his office. I accessed his iPad that day for one reason: to find out whether he had been photographing me and what photographs he had. I was not looking for anything else.

8. I opened the photograph application. I saw a collection of photographs of myself, including photographs taken while I was seated in Riley's office. I used my own phone to photograph the screen displaying those images. That collection was the only thing I photographed.

9. I did not open, read, copy, or photograph Riley's financial records or his medical records. I did not search for or open Riley's family photographs. The collection of photographs of me that I photographed on the screen also contained a picture of Riley's brother holding a fish.

10. I never removed the iPad from Riley's office. I did not take it with me, I did not keep it, and I did not hide it. I left it in his office, where I found it, the same day and within minutes.

11. I did not damage the iPad. I did not alter it, delete anything from it, or change any setting on it. No person was physically injured by anything I did.

12.     I am not aware of any occasion on which Riley was unable to use his iPad, or was without it, because of anything I did.

**I DID NOT CONCEAL THE ACCESS**

13.     I did not conceal what I had done. On the same day, August 18, 2021, I sent a text message to my then-husband Brandon Heid and to two friends telling them I had gone onto Riley's iPad, and I sent them two of the photographs.

14.     Within weeks I also told Lauren Studley, an attorney I was consulting, and Donna MacKenzie, a partner at the firm I was joining.

15.     I never made any false statement to Riley or to anyone at Riley & Hurley to keep them from learning that I had accessed the iPad, and I never took any step to hide it from them. I told Sonia Mullins that I had accessed the iPad and had found photographs.

**MY REASONS FOR DECLINING TO WORK UNDER RILEY'S SUPERVISION**

16.     In August 2021 I wrote to Riley that I was aware he had taken photographs of me surreptitiously while I was in his office, that this was extremely upsetting and inappropriate, and that I would not be working in any capacity in which he was my supervisor. In the same message I attached a memo containing the information necessary to transition my PHPA work, and I stated that I would

4

reasonably cooperate in transitioning those projects so as to protect the client's interest.

17.   My reason for declining to continue working under Riley's supervision was that he had photographed me without my knowledge or consent. I had no other reason, and my purpose was not to interfere with his business.

18.   Riley wrote to me that he would step aside as PHPA's counsel, that he would advise Larry Landon to begin working independently with me, that he would have no supervisory role of any kind, and that I would be free to establish my own legal services agreements with PHPA. I continued representing PHPA on that basis. Riley did not, however, actually step down as PHPA's counsel until September 2024.

19.   I never asked PHPA, Brian Ramsay, Larry Landon, or any other person at PHPA to end PHPA's relationship with Riley, to remove him as its counsel, or to stop using his services.

20.   I never communicated with anyone at Henry Ford Health System, with Ramar & Paradiso, or with Michael Janes for the purpose of causing any of them to stop using Riley as a mediator. To my knowledge I have never communicated with Bruce Leaman at all.

21.   I never asked any lawyer, law firm, or client to stop using Riley as a mediator or facilitator.

**THE TRUTH OF WHAT I SAID, AND THE PRESS**

22.     Every statement I have made about Riley's conduct toward me was true and was based on what I personally experienced. I have never made a statement about Riley that I believed to be false, and I have never made a statement about him while entertaining any doubt about whether it was true.

23.     Before filing this lawsuit I retained Real Solutions RS to assist with public communications. What was provided to the Detroit News was a press release and a copy of my Complaint as filed with the Court.

24.     I did not make any statement to any reporter about Riley that was not alleged in the Complaint I filed on September 9, 2024.

25.     I never authorized any person to make a statement about Riley on my behalf that went beyond what was alleged in my Complaint.

**NO RETRACTION WAS EVER REQUESTED**

26.     Neither Robert Riley nor Riley & Hurley, P.C. ever asked or demanded that I publish a retraction of anything, at any time. I received no such request or demand before they filed their counterclaims on March 5, 2025, and I have received none since.

**THE TOLLING AGREEMENT**

27.     In early 2024, through my attorneys, I informed Robert Riley of my intention to pursue legal claims, and my attorneys and counsel for Riley and Riley

& Hurley, P.C. thereafter communicated about resolving the dispute before any lawsuit was filed. As part of that process, I entered into a confidential tolling agreement with Robert F. Riley and Riley & Hurley, P.C., through counsel, with an effective date of March 25, 2024, and I later agreed to amendments of that agreement.

28.    I was advised of the terms of each tolling agreement, including the Third Amended Tolling Agreement, and I authorized my counsel, Sarah Prescott, to execute each of them on my behalf. My counsel executed the Third Amended Tolling Agreement on my behalf on June 14, 2024.

29.    I have reviewed the document filed with my motion as Exhibit L. It is a true and correct copy of the fully executed Third Amended Tolling Agreement between me, on the one hand, and Robert F. Riley and Riley & Hurley, P.C., on the other. The agreement is confidential by its terms, and I consent to Exhibit L being filed under seal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. sec. 1746.


Executed on   August 5th                    , 2026.

*Elyse L McKenna*
_____
Elyse L. McKenna

7